1  Mark E. Ellis - 127159
   Daniel C. Taylor - 221570
2  ELLIS LAW GROUP LLP
   740 University Avenue, Suite 100
3  Sacramento, CA  95825
   Tel: (916) 283-8820
4  Fax: (916) 283-8821
   mellis@ellislawgrp.com
5  dtaylor@ellislawsgrp.com

6  Attorneys for Defendant RASH CURTIS & ASSOCIATES

7

8                         UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                              OAKLAND DIVISION

11

12 | SANDRA McMILLION, JESSICA ADEKOYA, | Case No.:  4:16-cv-03396-YGR JSC
   | AND IGNACIO PEREZ, on Behalf of
13 | Themselves and all Others Similarly Situated, | **DEFENDANT RASH CURTIS &
                                                   | ASSOCIATES' NOTICE OF MOTION AND
14 |     Plaintiffs,                               | MOTION TO ENFORCE SETTLEMENT
                                                   | AGREEMENT**
15 | v.
                                                   | DATE: April 18, 2017
16 | RASH CURTIS & ASSOCIATES,                     | TIME:  2:00 p.m.
                                                   | CTRM: 1
17 |     Defendant.

18

19

20

21

22

23

24

25

26

27

28

---

## NOTICE OF MOTION

TO THE PLAINTIFFS AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on April 18, 2017 at 2:00 p.m., in Courtroom 1, 4th Floor, in the above entitled Court located at 1301 Clay Street, Oakland, California, Defendant Rash Curtis & Associates will, and hereby does, move this Court for an order enforcing the settlement between the parties.

This motion is made on the grounds a settlement agreement was entered into on January 13, 2017. Plaintiffs now refuse to honor the settlement which has necessitated this motion. *See, e.g. Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 505-508 (7th Cir. 2007); Schwarzer, et al., *Calif. Practice Guide: Federal Civ. Pro. Before Trial,* § 15:147-148 (Rutter Group, 2014 rev.) [When the action is still pending either party may move for an order to enforce a settlement].

## REQUEST FOR RELIEF

Defendant Rash Curtis & Associates ("Rash Curtis") hereby requests that this Court enforce the settlement between the parties and order Plaintiffs performance of the agreement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez are individually named plaintiffs who have brought this case as a putative class-action seeking injunctive relief and statutory damages by alleging that Rash Curtis violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Plaintiffs have also alleged that Rash Curtis violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Civil Code 1788 *et seq.* ("Rosenthal Act"). (Ellis Decl., ¶ 2; Steinheimer Decl., ¶ 2.)

Between December 12, 2016 and January 6, 2017, attorneys for the individually named Plaintiffs, and Rash Curtis, exchanged e-mail correspondence, in which they negotiated terms of a settlement. (Ellis Decl. ¶¶ 2—11, **Exhibits A—J**; Steinheimer Decl., ¶ 3.)

On January 13, 2017, counsel for Rash Curtis responded to the Plaintiffs attorney's written offer by e-mail and confirmed they had a "deal" regarding settlement and a more formal agreement

was to be prepared. (Ellis Decl., ¶ 12, **Exhibit K;** Steinheimer Decl., ¶ 2.)

On January 26, 2017, a settlement agreement was forwarded to Plaintiffs' attorney. (Ellis Decl., ¶¶ 13-14, **Exhibits L-M;** Steinheimer Decl., ¶ 4.)

On January 31, 2017, Plaintiffs attorney notified Rash Curtis' attorney that Plaintiffs were walking away from their agreement to settle, and instead demanded an exorbitant new amount to resolve the case. (Ellis Decl., ¶ 15, **Exhibit N**).

It is Plaintiffs' refusal to honor the settlement agreement and their extortionate post-settlement demand for a "new" settlement in the amount of $375,000 that has necessitated this motion to enforce the settlement.

## II.   FACTUAL BACKGROUND

Beginning on or about December 12, 2016, Andrew Steinheimer, one of the attorneys for Defendant Rash Curtis and Yeremey Kirovsey, the Plaintiffs' attorney commenced settlement negotiations. (Ellis Decl., ¶ 2, **Exhibit A**, December 12, 2106 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 3.) On December 12, 2016, Mr. Steinheimer wrote to Mr. Kirovsey that he had been authorized "to offer $30,000 to settle" all of Plaintiffs' claims globally. The proposed terms included a standard release of all known and unknown claims, including a Civil Code § 1542 waiver, and a dismissal with prejudice as to all of the named plaintiffs, but without prejudice to any putative class. (Ellis Decl., ¶ 2, **Exhibit A**; Steinheimer Decl., ¶ 3.)

The next day, December 13, 2016, Mr. Kirovsey made a counteroffer to settle for $85,000 with a dismissal with prejudice as to the named plaintiffs without any prejudice to any putative class. (Ellis Decl., ¶ 3, **Exhibit B,** December 13, 2106 Kirovsey and Steinheimer e-mail; Steinheimer Decl., ¶ 3). Mr. Steinheimer responded on December 14, 2016 and increased Rash Curtis' offer to settle with Plaintiffs for $37,500. (Ellis Decl., ¶ 4, **Exhibit C,** December 14, 2016 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 3.)

Mr. Kirovsey responded on December 14, 2016 that it would be necessary to "meet in the middle" before he would recommend that his clients accept the offer. (Ellis Decl., ¶ 5, **Exhibit D,** December 14 2016 Kirovsey and Steinheimer e-mail; Steinheimer Decl., ¶ 3.) Mr. Steinheimer responded that it would be difficult to get Rash Curtis to $50,000; however, he would talk to his client

and see what could be done. (Ellis Decl., ¶ 6, **Exhibit E,** December 14, 2016 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 3.)

On December 19, 2016, Mr. Kirovsey wrote to Mr. Steinheimer and indicated his clients were reluctant to accept $50,000 but he thought he could "get this done" at "$65,000." (Ellis Decl., ¶ 7, **Exhibit F,** December 19, 2016 Kirovsey and Steinheimer e-mail; Steinheimer Decl., ¶ 3.) Mr. Steinheimer responded that he had authority to settle for $50,000. (Ellis Decl., ¶ 8, **Exhibit G,** December 19, 2016 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 3.)

Mr. Kirovsey next responded to Mr. Steinheimer, and communicated that normally he would not agree to payment plan for a settlement of this size; however, he was willing to enter into a payment plan if the settlement was for $60,000, with the last payment being made on June 15th. (Ellis Decl., ¶ 9, **Exhibit H**, December 19, 2016 Kirovsey and Steinheimer e-mail; Steinheimer Decl., ¶ 3.)

On January 3, 2017, Mr. Steinheimer counter-offered at $55,000 with payments ending June 15. The terms were to include a release of all claims, the dismissal of named plaintiffs' claims with prejudice and dismissal of putative class claims without prejudice, and confirmation Mr. Kirovsey's firm did not have another putative class member as a client on which they intended to file a new action. (Ellis Decl., ¶ 10, **Exhibit I,** January 3, 2017 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 3.)

Mr. Kirovsey responded this was acceptable, but the "deal" required a settlement of $60,000 with monthly payments. (Ellis Decl., ¶ 11, **Exhibit J,** January 3, 2017 Kirovsey and Steinheimer e-mail.) Mr. Kirovsey stated, "Please confer with your client and let me know if we have a deal." (Steinheimer Decl., ¶ 3, **Exhibit J.**)

On January 13, 2017 Mr. Steinheimer accepted the proposed settlement by replying: "Ok, _we have a deal_ on the $60,000 with payments." (Ellis Decl., ¶ 12, **Exhibit K,** January 13, 2017 Steinheimer and Kirovsey e-mail (emphasis added); Steinheimer Decl., ¶ 3.)

On January 26, 2017 Mr. Steinheimer forwarded the formal settlement agreement for review and execution by Plaintiffs. (Ellis Decl., ¶¶ 13-14, **Exhibit L,** January 26, 2017 Steinheimer and Kirovsey e-mail; **Exhibit M,** Settlement Agreement and Release attached to January 26, 2017 Steinheimer and Kirovsey e-mail; Steinheimer Decl., ¶ 4.)

However, on January 31, 2017, Mr. Kirovsey wrote to the Ellis Law Group and advised his firm had been in touch with Defendant's former Compliance Director, Steven Kizer, who Kirovsey indicated, was a "treasure trove" of information; Mr. Kirovsey claimed for the first time the "settlement draft was unacceptable," and instead made a new settlement demand in the amount of $375,000. (Ellis Decl., ¶ 15, **Exhibit N,** January 31, 2017 Kirovsey e-mail [stating the settlement draft was unacceptable and demanding a new settlement amount of $375,000].)

On the same day, January 31, 2017, Mr. Ellis responded to Mr. Kirovsey and stated that an enforceable agreement had been agreed to in writing on January 13, 2017. The fact that Mr. Kirovsey was talking with a disgruntled former employee of Rash Curtis (Kizer) did not change that fact. (Ellis Decl., ¶ 16, **Exhibit O,** January 31, 2017 Ellis e-mail.)

Mr. Kirovsey responded later on January 31, 2017; he erroneously and self-servingly represented: "We never agreed on the material terms," and "[o]bviously, no agreement has been signed and no agreement is enforceable." Mr. Kirovsey also threatened: "*We both know that Mr. Kizer's information could bankrupt the company*. I urge you to take our offer seriously." (Ellis Decl., ¶ 17, **Exhibit P**, January 31, 2017 Kirovsey e-mail (emphasis added).)

Defendant forwarded to Plaintiffs' attorney its first payment for $10,000.00 in accord with the parties' agreement. (Ellis Decl., ¶ 18, **Exhibit Q,** check for $10,000 payable to Bursor & Fisher.) Plaintiffs' attorney returned the check uncashed to Defendant. (Ellis Decl., ¶ 19.)

### III.   ANALYSIS

A federal court possesses inherent authority to enforce settlements (even if reached outside of court) pursuant to motion. *See Decanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir. 1978); Schwarzer, et al., *Calif. Practice Guide: Federal Civ. Pro. Before Trial,* § 15:140 (Rutter Grp. 2014 rev.). The 9th Circuit in *Decanay* explained, at page 278"

> If this controversy did not involve a minor litigant, there would be no serious issue concerning the ability of a party unilaterally to rescind a contract in settlement of litigation. Assuming both the power of the attorney to bind his client and the validity of the agreement struck, *a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship.* Autera v. Robinson, 136 U.S.App.D.C. 216, 220, 419 F.2d 1197, 1201 n. 17 (1969) (*dictum*) & cases cited *id.* at 1200 n. 9; *Cia Anon Venezolana De Navegacion v.*

*Harris* 374 F.2d 33, 35 (5th Cir. 1967) & cases cited *id.* at 35 n. 1. Moreover, <u>it is equally well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it</u>; the actual merits of the controversy become inconsequential. *Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714, 717 (2nd Cir. 1974); *Kukla v. National Distillers Prods. Co.,* 483 F.2d 619, 621 (6th Cir. 1973); *Autera v. Robinson, supra;* see *Pope & Talbot v. Matson Navigation Co.,* 347 F.2d 225 (9th Cir. 1965). The authority of a trial court to enter a judgment enforcing a settlement agreement had as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation. *Kukla v. National Distillers Prods. Co., supra.* (Emphasis added.)

Disputes concerning a settlement agreement are governed by applicable state law, regardless of whether the underlying claim is state or federal. *Dillard v. Starcon Int'l, Inc.,* 483 F.3d 502, 506 (7th Cir. 2007) (settlement of federal claim is enforced "just like any other contract"]; Schwarzer, *supra,* § 15:145. The *Dillard* court, in affirming the Magistrate's determination that oral negotiations had led to the settlement of a discrimination case, noted: "His claim of involuntariness simply repeats his primary argument that the parties never achieved a meeting of the minds, which is a challenge to the elements of contract formation and is governed by state law." *Dillard, supra,* at p. 507.

A settlement agreement is, of course, a contract. Parties often engage in preliminary negotiations, oral or written, in order to reach an agreement to settle a lawsuit. Such negotiations may result in a binding contract "even though the parties may have intended that a formal writing embodying these terms would be executed later." 1 Witkin, *Summary California Law: Contracts* § 133 (West 10th ed. 2005) (some text omitted) (*citing Gavina v. Smith,* 25 C.2d 501, 504 (1944) and *King v. Stanley,* 32 C.2d 584, 588 (1948) [An agreement may be found in one paper or in several documents, including an exchange of letters or telegrams or both], <u>disapproved on other grounds by</u> *Patel v. Libermensch,* 45 Cal. 4th 344, 349 (2008).

Under basic California contract law, a contract is created by an offer, and an acceptance, supported by consideration. Cal. Civ. Code §§ 1585, 1586, 1587, and 1550, 1650, 1614 and 1615; *accord Ladas v. CSAA,* 19 Cal. App. 4th 761, 770 (1993); Cal. Civ. Jury Instructions (CACI) 302, 307, 308, 309 ["Both an offer and acceptance are required to create a contract"].

In order for an acceptance of an offer to result in the formation of a contract, the offer must be sufficiently definite, and the promised performance reasonably certain. *Wedding Productions, Inc. v.*

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO ENFORCE SETTLEMENT AGREEMENT

*Flick,* 60 Cal. App. 4th 793, 811 (1998). Significantly, whether a contract is sufficiently definite is a question of law for the Court. *Ladas, supra,* 19 Cal. App. 4th at 770, fn. 2.

Consideration sufficient to support a contract may be any act, forbearance, change in legal relations, or a promise. 1 Witkin, *supra* § 202; Cal. Civil Code § 1605; *Flojo Int't., Inc. v. Lassleben,* 4 Cal. App. 4th 713, 719 (1992).

California Courts follow the "objective" theory of contract formation used to determine mutual consent (meeting of the minds); the test is whether a reasonable person, from the words and conduct of the parties, would objectively conclude the parties reached an agreement. *Hilleary v. Garvin,* 193 Cal.App.3rd 322, 327 (1987).

The mere fact the parties did not "formalize" their agreement in a final written contract "does not negate the existence of the parties' contract." *See Harris v. Rudin, Richman & Appel,* 74 Cal. App. 4th 299, 207 (1999). The execution of a formalized written agreement is not essential to the formation of a contract since it may be made, as here, by e-mail communications or even orally. *Banner Entertainment, Inc. v. Superior Court,* 62 Cal. App. 4th 348, 358 (1998). Once a contract comes into existence by virtue of a definite offer and acceptance, and the circumstances demonstrate the parties made a "deal," the mere fact that a "formal written agreement to the same effect has not yet been signed does not alter the binding validity of . . . the agreement." *Banner, supra,* 62 Cal. App. 4th at 358; *Dillard, supra,* 483 F.3d at 505-508.

In *Dillard*, the 7th Circuit explained:

> At a settlement conference before the magistrate judge on May 25, 2005, Starcon asserted that the parties had reached an oral agreement on all material terms of the settlement and that the disputes over the terms of the written agreement were immaterial to the enforceability of the oral settlement. On June 15, 2005, Starcon filed a motion to enforce the oral settlement. The magistrate judge granted Starcon's motion, finding that the parties orally agreed to the following terms: (1) Starcon would pay Dillard $65,000; (2) Dillard would be reinstated as an A-Mechanic; (3) Starcon would pay for Dillard's B-Welder training provided he maintained a B average; (4) Starcon would give Dillard two opportunities to pass the B-Welder test; and (5) Dillard would be reinstated in the Chicago area for the time being.
>
> The magistrate judge held that the parties had reached a meeting of the minds on all material terms of their agreement. The court pointed to objective, undisputed evidence to support this conclusion. For one thing, *the parties' initial oral negotiations whittled matters down to the parties'*

> *dispute about the cash payment which was finally settled at $65,000. At the point Dillard's counsel did not suggest that other important matters needed to be ironed out.* The court also noted the looming March 21 deadline set by Starcon under which the negotiations were being conducted. *The magistrate judge found that, on that date, both parties understood their agreement to be final; Dillard did not make his acceptance contingent on approval of a written instrument.* The court concluded the oral agreement was sufficiently definite on all material terms and disputes that subsequently arose over the written agreement "center[ed] upon non-material terms." Accordingly, the court ordered the oral settlement agreement enforced.

*Dillard, supra,* 505-506 (emphasis added). The Court continued:

> Dillard does not contest that the parties' oral discussions resulted in agreement on certain material terms. Instead, he argues that their oral agreement could not have been final because there were other material terms that the parties did not agree to, as evidenced by the contentious exchange of written drafts. The magistrate judge was not persuaded by this argument and held that the oral agreement was enforceable.

*Id.* at 507. Ultimately, the Court found:

> For the foregoing reasons, the magistrate judge did not abuse his discretion in holding that Dillard and Starcon had a meeting of the minds on all material terms essential to their settlement. The order enforcing the oral settlement is AFFIRMED.

*Id.* at 509. And, so it is here.

In the absence of ambiguity, whether a contract was created is determined by a construction of the writings taken as a whole. It is the objective intent as evidenced by the words of the parties that governs the interpretation. Thus, where, as here, the writings (e-mails) demonstrate no further intent to negotiate because the parties have objectively reached a meeting of the minds, the failure to sign a more formal writing does not negate the existence of a valid, enforceable, contract. 1 Witkin, *supra* § 133; *Dillard, supra,* at 506.

A District Court possesses the authority to determine disputed issues of fact relating to the settlement. *Chavez v. New Mexico,* 397 F.3d 826, 830-831 (10th Cir. 2005). The court may even conduct an evidentiary hearing, if necessary, to make findings on the disputed facts, if necessary. *Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir. 1983); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987).

Here, however, there are no disputed facts. The e-mails between Messrs. Steinheimer and Kirovsey, attached to Mr. Ellis' declaration, when reviewed as a whole, provide all the material terms

**DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

of the agreement, and that a settlement was objectively reached upon Mr. Kirovsey's offer and Mr. Steinheimer's acceptance of January 13, 2016. (Ellis Decl., ¶¶ 11-12, **Exhibits J-K;** Steinheimer Decl., ¶ 3.) The e-mails dated December 12, 2016, December 14, 2016, December 19, 2016, and January 3, 2017 (**Exhibits A—I**) between Steinheimer and Kirovsey are clearly preliminary negotiations, and do not suggest that either party had agreed to a settlement. *See* 1 Witkin, *supra*, § 133. However, as stated in *Dillard*, these communications whittled down the differences between the parties, leaving only the payment amount and terms to be agreed upon.

The writings covering December 19, 2016, when Mr. Kirovsey, on behalf of his clients, offered to agree to a payment plan through June 15th for a settlement of $60,000, which he confirmed again on January 3, 2017 manifested an offer. (*See* Ellis Decl., ¶¶ 9 and 11, **Exhibits H and J**). On January 13, 2017, Mr. Steinheimer accepted by confirming, "we have a deal" (**Exhibit K**) on behalf of Rash Curtis, and, upon his acceptance of the "deal" for $60,000, a contract came into existence. 1 Witkin, *supra*, § 133.

The arc of all of these e-mails establish that on January 13, 2017 an agreement was entered into by litigants to settle the case for $60,000 with $10,000 monthly payments to be made, and completed by June 15, 2017. The additional agreed upon material terms included, (1) a release of all claims, (2) the dismissal of named plaintiffs' claim, with prejudice, and (3) dismissal of putative class claims without prejudice. (**Exhibits A, H, I, J, K and M.**) These same terms, with no material variance from the e-mails exchanged, were included in the agreement forwarded to Mr. Kirovsey by Mr. Steinheimer on January 26, 2016. (*Cf.* **Exhibits I—L and Q with Exhibit M** [Settlement Agreement].) On February 14, 2017, Defendant sent to Plaintiffs attorney their check for $10,000 representing the first payment of the settlement.

Clearly, Plaintiffs' attorney's statements, "We never agreed on the material terms" and "[o]bviously, no agreement has been signed and no agreement is enforceable" are incorrect and contrary to California law. *See Clark v. Fiedler,* 44 Cal. App. 2d 838, 846 (1941). Here, the writings exchanged (e-mails) demonstrate an agreement was entered into with a meeting of the minds. *Dillard, supra,* 483 F.3d at 505-508. Mr. Kirovsey's claims there was no written agreement on the material terms, or that the agreement is incomplete are self-serving and incorrect. Cal. Civ. Code §§ 1550 and

**DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

1565.

Mr. Kirovsey's January 31, 2017 e-mail demonstrates the real reason he is claiming there is no agreement – is based on his reliance on information purportedly provided by the disgruntled former Compliance Director of Rash Curtis. In Mr. Kirovsey's e-mails on January 31, 2017, he states there was no settlement agreement, but simultaneously states that he had been talking with a Mr. Kizer, whose statements led him to issue a new demand for $375,000, and that he could "bankrupt" Rash Curtis. (Ellis Decl., ¶ 17, **Exhibit P**.) Mr. Kirovsey stated: "We both know that Mr. Kizer's information could bankrupt the company." Defendant submits this statement is tantamount to extortion. *See Flatley v. Mauro,* 39 Cal. 4th 299, 326-327 (2006); *see also Mendoza v. Hamzeh,* 215 Cal. App. 4th 799, 806-807 (2013). In short, there is no legitimate basis for Plaintiffs denying the validity of the settlement, and instead it appears Plaintiffs' simply want a new, "better" deal than that to which they had earlier agreed.[1]

Based on these facts, there was a settlement reached on January 13, 2017, which may be enforced by the Court.

## IV.  CONCLUSION

For the foregoing reasons, Rash Curtis respectfully requests that this court enforce the parties' settlement agreement, and order that Plaintiffs perform according to the terms of the settlement agreement.

Dated: March 10, 2017

ELLIS LAW GROUP LLP

By  /s/ Mark E. Ellis
Mark E. Ellis
Attorney for Defendant
RASH CURTIS & ASSOCIATES

---

[1] An attorney is deemed an agent of the client, and the client is bound by the acts of the attorney within the scope of the attorney's actual, apparent or ostensible authority. *See* 1 Witkin, Cal. Proc: Attorneys § 261 (4th ed. 1996).