Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP LLP
740 University Avenue, Suite 100
Sacramento, CA  95825
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>     Defendant. | Case No.:  4:16-cv-03396-YGR JSC<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE:       AUGUST 29, 2017<br>TIME:        2:00 P.M.<br>CRTRM:     1<br><br> Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................1

II.   THE PROPOSED CLASSES ...............................................................2

III.  APPLICABLE LEGAL STANDARDS..................................................5

IV.  ARGUMENT .........................................................................................7

  A.    Plaintiffs Have Not Satisfied The Requirements Of Rule 23(a). ...................7

    1.    Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That There Are Common Questions Of Law And Fact.................................................................................7

    2.    Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That They Are Typical Members Of The Classes.................................................................................9

    3.    Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That Their Proposed Classes Are Ascertainable.................................................................................11

        a.    Plaintiffs' Exclusionary Language Creates An Impermissible "Fail-Safe" Class Which Is Shielded From An Adverse Judgment ..............12

        b.    Plaintiffs' Proposed Method For Ascertaining The Proposed Classes Is Not Feasible.................................................................................13

  B.    Plaintiffs Have Not Satisfied Their Requirements Of  Rule 23(b). ..............15

    1.    Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That Class Issues Predominate Over Individual Issues And That A Class Action Would Be A Superior Method Of Adjudication.................................................................................15

    2.    Individual Issues Predominate Over Class Issues. ...................................16

    3.    A Class Action Is Not The Superior Method Of Adjudicating This Controversy.................................................................................17

|   |   | a. | The predominance of individual issues and individualized proof precludes a finding of superiority. .................................................................18 |
|   |   | b. | A class action that could result in excessive, ruinous and unconstitutional statutory damages is not a superior method of adjudication. ...............................................................................................18 |
| **V.** |   | **CONCLUSION** ................................................................................................**21** |

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)........................................10, 15, 16

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ...................................................12

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .............................................................6

*BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996) ...........................................20

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970).....................................................12

*Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, (E.D. Pa. 1995).......6, 15, 17, 18, 19. 20

*G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528, 2011 WL 248511, at *8
    (N.D. Ill. Jan. 25, 2011)..............................................................................................9

*Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) .....................................................6

*Gene And Gene LLC v. BioPay LLC,* 541 F.3d 318 (5th Cir. 2008)...............................15

*Gutierrez v. Barclays Grp.*, 2011 WL 579238, at *2-3
    (S.D. Cal. Feb. 9, 2011)................................................................................11, 16, 17

*Hale v. Morgan*, 22 Cal.3d 388 (1978)....................................................................20, 21

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..........................................5

*Hicks v. Client Services, Inc.*, No. 07–61822–CIV, 2008 WL 5479111, at *7-8 (S.D.
    Fla. Dec. 11, 2008) ........................................................................................8, 15, 17

*In re AutoZone, Inc., Wage And Hour Employment Practices Litigation,* 289 F.R.D. 526
    (N.D. Cal. 2012)........................................................................................................12

*Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) ..........5, 6

*Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162 (S.D. Ind. 1997).................................8, 15

*Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974)....................................19

*Labou v. Cellco Partnership*, No. 2:13-cv-00844, 2014 WL 824225, *4
    (E.D. Cal. Mar. 3, 2014)..............................................................................................9

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .............. 17, 21

*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. 2011).................. 11

*Zinser v. AccuFix Research Institute, Inc.*, 253 F.3d. 1180 (9th Cir. 2001) ................. 18

**Statutes**

15 U.S.C. § 1692................................................................................................................ 1

28 U.S.C. § 2072(b) ........................................................................................................ 16

47 U.S.C. § 227................................................................................................................. 1

47 U.S.C. § 227(b)(3) .....................................................................................9, 18, 19, 20

Cal. Civ. Code § 1788 ....................................................................................................... 1

**Other Authorities**

137 Cong. Rec. S16204-01 (1991) ....................................................................18, 19, 20

**Rules**

Fed. R. Civ. Proc. 23.....................................................................................................5, 21

Fed. R. Civ. Proc. 23(a) ................................................................................................1, 7

Fed. R. Civ. Proc. 23(a)(2) ............................................................................................... 1

Fed. R. Civ. Proc. 23(a)(3)........................................................................................1, 9, 11

Fed. R. Civ. Proc. 23(b) .................................................................................................... 1

Fed. R. Civ. Proc. 23(b)(1)-(3) ........................................................................................ 6

Fed. R. Civ. Proc. 23(b)(2) ............................................................................................... 2

Fed. R. Civ. Proc. 23(b)(3) ............................................................................................... 1

Fed. R. Civ. Proc. 23(b)(3)(D)................................................................................1, 17 18

## I.   **INTRODUCTION**

Plaintiffs SANDRA McMILLION ("McMillion"), JESSICA ADEKOYA ("Adekoya"), and IGNACIO PEREZ ("Perez") have brought this putative class action against Defendant RASH CURTIS & ASSOCIATES for its alleged violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788, *et seq.* ("Rosenthal Act").

By way of their instant motion, Plaintiffs now seek to certify four different classes.  However, as established by both Plaintiffs' Complaint and Plaintiffs' Motion for Class Certification ("Motion"), Plaintiffs will be unable to satisfy the requirements of Federal Rule of Civil Procedure 23(a).

Specifically, Plaintiffs will be unable to establish that "there are questions of law or fact common to the class[es]."  *See* Fed. R. Civ. Proc. 23(a)(2).  Likewise, Plaintiffs will be unable to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[es]."  *See* Fed. R. Civ. Proc. 23(a)(3).

In addition, Plaintiffs will be unable to establish one or more proper grounds for a class action under Federal Rule of Civil Procedure 23(b).  For example, Plaintiffs cannot demonstrate that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, <u>and</u> that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. Proc. 23(b)(3).

With respect to the superiority requirement, Plaintiffs will also be unable to establish that the putative class action is manageable for various reasons, including the inability to objectively ascertain class members and the number of individual issues as compared to class issues.  *See* Fed. R. Civ. Proc. 23(b)(3)(D).

Plaintiffs will also be unable to establish that Defendant "has acted or refused to

DEFENDANT RASH CURTIS & ASSOCIATES' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting that class as a whole…" *See* Fed. R. Civ. Proc. 23(b)(2).

Finally, Plaintiffs seek certification of impermissible "fail-safe" classes which effectively preclude membership in the class unless Defendant's liability is first established. *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

For all of the foregoing reasons, Defendant respectfully submits that this court should deny Plaintiffs' Motion for Class Certification.

## II.   <u>THE PROPOSED CLASSES</u>

Plaintiffs' Complaint revolves around Defendant's alleged violations of the TCPA, FDCPA, and Rosenthal Act by using "repeated robocalls, pre-recorded voice messages, and auto-dialed calls to threaten and harass consumers in an attempt to collect." (Complaint, ¶ 1.)

To that end, Plaintiffs' Complaint alleged the five proposed classes:

1. **Robocall Class**: "All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of Defendant; (d) for whom Defendant had no record of prior express written consent; (e) and such phone call was made with the use of an artificial or prerecorded voice; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date class notice is disseminated." (Complaint, ¶ 40.)

2. **Autodialer Class**: "All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone; (c) made by or on behalf of Defendant; (d) for whom Defendant has no record of prior express written consent; (e) and such phone call was made with the

use of an automatic telephone dialing system as defined under the TCPA; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date class notice is disseminated." (Complaint, ¶ 42.)

**3.**    **Internal-Do-Not-Call-List ("IDNCL") Class**: "All persons within the United States who (a) after notifying Defendant that they no longer wished to receive calls from or on behalf of Defendant; (b) received one or more calls from or on behalf of Defendant; (c) using either an artificial or prerecorded voice or an automatic telephone dialing system as defined under the TCPA; (d) at any time in the period that begins four years before the filing of the complaint in this action to the date class notice is disseminated." (Complaint, ¶ 44.)

**4**.    **FDCPA Class**: "All persons within the United States who received harassing, oppressive, or abusive calls from Defendant including (a) repeated calls to annoy someone, or (b) calling at times in violation of curfew, such as before 8:00 a.m. or after 9:00 p.m., (c) threats to take any action that cannot legally be taken, or (d) representations or implications that nonpayment of any debt will result in the arrest or imprisonment of any person." (Complaint, ¶ 46.)

**5**.    **Rosenthal Act Class**: "All persons within the State of California who received harassing, oppressive, or abusive calls from Defendant including (a) repeated calls to annoy or harass, (b) calls at times in violation of curfew, such as before 8:00 a.m. or after 9:00 p.m., (c) threats to take any action that cannot legally be taken, or (d) representations or implications that nonpayment of any debt will result in the arrest or imprisonment of any person; (e) at any time in the period that begins four years before the filing of the complaint in this action to the date class notice is

DEFENDANT RASH CURTIS & ASSOCIATES' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

disseminated." (Complaint, ¶ 48.)

By way of their instant motion, however, Plaintiffs now seek to certify four entirely different proposed classes:

1. **Skip-Trace Class 1**: "All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from [Defendant]'s DAKCS VIC dialer and/or Global Connect dialer whose cellular telephone number was obtained by [Defendant] through skiptracing."

2. **Skip-Trace Class 2**: "All persons who received a prerecorded message or robocall on their cellular telephones OR landline phones within four years of the filing of the complaint until the date that class notice is disseminated from [Defendant] whose telephone number was obtained by [Defendant] through skiptracing."

3. **Non-Debtor Class 1**: "All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from [Defendant]'s DAKCS VIC dialer and/or Global Connect dialer whose cellular telephone number was obtained by [Defendant] through skiptracing and for whom [Defendant] has never had a debt-collection account in their name.

4. **Non-Debtor Class 2**: "All persons who received a prerecorded message or robocall on their cellular telephones OR landline phones within four years of the filing of the complaint until the date that class notice is disseminated from [Defendant] whose telephone number was obtained by [Defendant] through skiptracing and for whom [Defendant] has never had a debt-collection account in their name."

(Motion, p. 2.)

Although not entirely clear, it appears Plaintiffs have attempted to split their

- 4 -

Autodialer class into Skip-Trace Class 1 (for debtors) and Non-Debtor Class 1 (for non-debtors).   Likewise, Plaintiffs have apparently attempted to split their Robocall class into Skip-Trace Class 2 (for debtors) and Non-Debtor Class 2 (for non-debtors).

The fate of Plaintiffs' IDNCL class, FDCPA class, and Rosenthal Act class is also not clear.   It may be that Plaintiffs seek to segregate the debtors from non-debtors because non-debtors lack standing to assert violations of the FDCPA or Rosenthal Act. *Sanchez v. Client Services, Inc.*, 520 F.Supp.2d 1149, 1155 (N.D. Cal. 2007).

### III.   APPLICABLE LEGAL STANDARDS

Class certification proceedings are governed by Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011); *Saulsberry v. Meridian Financial Services, Inc.*, 2016 WL 3456939 at *2 (C.D. Cal. 2016).

"A party seeking class certification must demonstrate the following prerequisites: '(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class.'" *Saulsberry, supra,* 2016 WL 3456939 at *2 (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Although not mentioned in Rule 23(a), the party seeking certification must also demonstrate that the class is ascertainable. *Saulsberry, supra,* 2016 WL 3456939 at *2 (*citing Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) ).

"After satisfying the five prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability, a party must also demonstrate one of the following: (a) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (b) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (c) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action."

*Saulsberry, supra,* 2016 WL 3456939 at *2 (*citing* Fed. R. Civ. Proc. 23(b)(1)-(3)).

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart, supra,* 564 U.S. at 348.  As such, the party seeking class certification bears a heavy burden of demonstrating that he or she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Wal-Mart, supra,* 564 U.S. at 348;  Courts may approve a class action only "after a rigorous analysis," and after making express findings that the class satisfies all the requirements of Rule 23. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D. Pa. 1995).

When ruling on a motion for class certification, the court generally accepts the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Nonetheless, the court's "rigorous analysis…may require it to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart, supra,* 564 U.S. at 350-351..

In short, a plaintiff's evidentiary burden in satisfying the requirements of Rule 23 is difficult: "Rule 23 does not set forth a *mere* pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350 (original emphasis).

Plaintiff must do so by a preponderance of the evidence.  *See, e.g., Keegan, supra,* 284 F.R.D. at 521, fn. 83 (applying the preponderance standard because it is the "general standard of proof used in civil cases").

/ / /

/ / /

/ / /

/ / /

## IV.   ARGUMENT

**A.   Plaintiffs Have Not Satisfied The Requirements Of Rule 23(a).**

> **1.   Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That There Are Common Questions Of Law And Fact.**

In order to satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." *Wal-Mart, supra*, 564 U.S. at 349.  The requirements of Rule 23(a)(2) are often misunderstood, since "any competently crafted class complaint literally raises common 'questions.'" *Id*.  What matters under Rule 23(a)(2) "is not the raising of common 'questions' – even in droves – but, rather the capacity of a class wide proceeding to generate common answers apt to derive the resolution of the litigation." *Id.* at 350.

"Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*  True class claims must hinge on a common contention.  The Supreme Court has explained:  "That common contention . . . must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.  Importantly, commonality is not satisfied merely because the class members have all suffered a violation of the same provision of law. *Id*.

Here, Plaintiffs' proposed classes directly relate to Defendant's alleged TCPA violations.   For example, Skip-Trace Class 1 attempts to "capture" the class of individuals who received a call on their cell phone where the call was placed by Defendant via an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.  In contrast, Non-Debtor Class 1 attempts to "capture" a subset of Skip-Trace Class 1, *i.e.,* those individuals in Skip-Trace Class 1 who also did not have any debt collection accounts with Defendant.

Skip-Trace Class 2 and Non-Debtor Class 2 are similar attempts to "capture" the class of individuals who received a call from Defendant where the call included the use of a prerecorded or artificial voice without the call recipient's prior express consent.

Based on the foregoing, there are many common questions of law or fact, such as:

1.      Was the number that Defendant called a cell phone or a residential landline?

2.      Did Defendant use an ATDS to place the call?

3.      Did Defendant use a prerecorded or artificial voice when it placed the call?

4.      Did Defendant have the call recipient's "prior express consent?"

5.      Did the call recipient incur a charge for Defendant's call?

However, as explained above, it is the _answers_ to these common questions which are important, and they will certainly vary greatly from person to person.  While some call recipients may not have provided "prior express consent," others may have.  In short, the very nature of TCPA claims require individual inquiries into a number of different factors, including whether each call recipient provided his or her "prior express consent" to be contacted by Defendant.

Each individual inquiry serves as a knife, the sum of which amounts to "death by a thousand cuts" for the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2).  *See, e.g., Forman,* 164 F.R.D. at 403-405 (denying TCPA class certification in part based on plaintiff's failure to establish common nucleus of operative facts as required by Rule 23(a)(2)); *Hicks v. Client Services, Inc*., No. 07–61822–CIV, 2008 WL 5479111, at *7-8 (S.D. Fla. Dec. 11, 2008); *Levitt v. Fax.com*, No. WMN–05–949, 2007 WL 3169078, at *8 (D. Md. May 25, 2007) (decertifying TCPA class due to individualized determinations required to determine single "common" question of "prior express consent"); *Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying TCPA class certification due to individualized determinations required on issue of "prior express consent"); *G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528,

2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (same); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (same).

Of course, the other elements of Plaintiffs' TCPA claims are not subject to common, class-wide resolution either.  For example, whether a call was made to a particular cell phone number cannot be answered on a class-wide basis.  Even if Plaintiffs prove Defendant called cell phones they owned, this will not establish that Defendant called the cell phone numbers of any other putative class member.  Similarly, even if Plaintiffs can establish they were charged for the alleged calls to their cell phones, this will not answer the question of whether any other putative class member was charged for a phone call.    *See, e.g., Labou v. Cellco Partnership*, 2014 WL 824225, *4 (E.D. Cal. Mar. 3, 2014).

The same is true for Plaintiffs' damages calculations.  The TCPA provides for statutory damages based on the total number of violative calls received.  47 U.S.C. § 227(b)(3).  Some call recipients may have only received one call, while others may have received hundreds depending on how many different collection accounts were involved.  Furthermore, whether each particular call constitutes a knowing and willful (as opposed to simply negligent) violation also requires an individualized inquiry and will affect each individual class member's potential share of any monetary recovery.  *Id.*  Moreover, whether one call was made in knowing or willful violation does not mean another call was done so; in sum, there are simply <u>no</u> common answers to the common questions plaguing the claims of every putative class member.

For these reasons alone, this court should deny Plaintiffs' Motion for Class Certification.

### 2.   Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That They Are Typical Members Of The Classes.

"Typicality" is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This

requirement "looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019 (9th Cir.2011) (internal citation and quotation marks omitted).  Thus, the Rule 23(a)(3) typicality inquiry overlaps with the Rule 23(a)(4) adequacy requirement because "both look to the potential for conflicts in the class." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 611 (1997) (internal citations omitted).

Here, McMillion has already "stepped down" as a potential class representative based on Defendant's production of evidence clearly demonstrating that she provided her cell phone number to her creditor, thereby giving Defendant "prior express consent" to contact her.  Declaration of Anthony Valenti, ¶ 2.  Accordingly, she cannot properly serve as a class representative given the express exclusionary language contained in Plaintiffs' newly proposed classes (s*ee* Motion, p. 2) and the fact that Defendant has a clear and absolute affirmative defense to her claims.

Defendant is still attempting to obtain various records from one of Adekoya's creditors, Doctor's Medical Center ("DMC").  Valenti Decl., ¶ 3.  DMC closed down several years ago, and the storage of their patients' records is being handled by a third-party entity known as GRM Document Solutions.  Valenti Decl., ¶ 3.  Defendant expects that GRM will ultimately provide Defendant with documents establishing that Adekoya provided her cell phone number to DMC, thereby precluding her from serving as a class representative as well.  *See Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (finding lack of typicality where no named plaintiff suffered one of the most serious of the alleged adverse consequences of taking the drug at issue); *Slaven v. BP America, Inc.* 190 F.R.D. 649, 656 (C.D. Cal. 2000) ("the typicality standard measures the degree to which the representatives' claims mirror the absent class members' claims"); *Peviani v. Natural Balance Inc.,* No. 3:10–cv–2451 AJB (BGS), 2011 WL 1648952, at *3 (S.D. Cal. May 2, 2011) (plaintiff did not possess the same

interest or suffer the same injury because she did not purchase the product for her own use and never consumed the product).

Furthermore, it appears Adekoya's mother, Geraldine Caldwell, may have provided Adekoya's cell phone number to Defendant and instructed Defendant to contact Adekoya regarding her own debt. Consequently, it appears Defendant obtained "prior express consent" to call Adekoya from a related third-party. *See Gutierrez v. Barclays Grp.*, 2011 WL 579238 at *2-3 (S.D. Cal. 2011). If so, then Adekoya is not an appropriate class representative as her claims are not typical of the class she seeks to represent. Fed. R. Civ. Proc. 23(a)(3).

In any event, it is the Plaintiffs' burden to satisfy the requirements of Rule 23, including a demonstration that their claims are typical of the class they seek to represent. To date, neither Adekoya nor Perez have produced any documents or other evidence demonstrating the material facts necessary to allege a *prima facie* TCPA violation, including the fact that the phone numbers Defendant allegedly called actually belonged to Plaintiffs. Valenti Decl., ¶ 4. Likewise, neither Adekoya nor Perez have produced any documents or other evidence demonstrating that they incurred any charges as a result of Defendant's alleged calls. Valenti Decl., ¶ 4. In short, none of the Plaintiffs have established, by a preponderance of the evidence that their claims are typical of the claims of the class they seek to represent. Accordingly, this court should deny Plaintiffs' Motion for Class Certification.

### 3. Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That Their Proposed Classes Are Ascertainable.

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209

F.R.D. 159, 163 (C.D. Cal. 2002).

"Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999).  "Although the identity of the class members need not be known at the time of certification, class membership must be objectively ascertainable…" *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013).

Here, Plaintiffs' proposed classes are simply not objectively ascertainable.  In an attempt to skirt the issue of "prior express consent," which necessarily involves individualized inquiries into each and every putative class member, Plaintiffs expressly exclude from their newly proposed classes "all persons who provided their cellular telephone in an application for credit to a creditor that has opened an account with Defendant in such debtor's name prior to Defendant first placing a call using an automatic telephone dialing system and/or prerecorded voice."  (Motion, p. 2.)

### a.   Plaintiffs' Exclusionary Language Creates An Impermissible "Fail-Safe" Class Which Is Shielded From An Adverse Judgment

However, this exclusionary language impermissibly creates a "fail-safe" class, *i.e.*, a class who, by its very definition, is shielded from receiving an adverse judgment. *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d at 352.  A "fail-safe" class is problematic because it defines the class in such a way that "the class members either win or are not in the class… the Court cannot enter an adverse judgment against the class."  *In re AutoZone, Inc., Wage And Hour Employment Practices Litigation,* 289 F.R.D. 526, 545-546 (N.D. Cal. 2012).  Put another way, "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman, supra,* 646 F.3d at 352.

Here, specifically excluding those individuals who provided their cell phone number to their creditor before Defendant first called them ensures that such individuals

are not part of a class that would be subject to the affirmative defense of prior express consent. This, in turn, assures that they are not subject to an adverse judgment by this court. This is improper and impermissible. *Id.*

### b. Plaintiffs' Proposed Method For Ascertaining The Proposed Classes Is Not Feasible.

The methodology which Plaintiffs propose for ascertaining the actual members of their newly proposed classes suffers from its own inherent defects as well. Chiefly, Plaintiffs seek to cross-reference Defendant's business records, *e.g.,* its call logs, account histories, and collection notes, to determine which telephone numbers Defendant skip-traced before calling. Plaintiffs believe that obtaining the account numbers (and related telephone numbers) for all collection accounts marked with the "SKP" status code will provide them with all of the accounts containing a phone number that was obtained via skip-tracing. (Motion, p. 5.) Plaintiffs also believe that obtaining the call logs for all calls placed to phone numbers stored in phone fields 4 through 10 (in Defendant's debt collection software) will also provide a list of putative class members because those phone fields "are reserved for telephone numbers of third parties and skip-traced telephone numbers." (Motion, p. 7, fn. 7.)

Plaintiffs mistakenly believe this method will allow them to ascertain which debtors (and non-debtors) received violative calls on their cell phones placed by one of Defendant's alleged "autodialers." Plaintiffs also mistakenly believe this method will allow them to ascertain which debtors (and non-debtors) received violative "robocalls" from Defendant. Unfortunately, Plaintiffs' contemplated method of ascertaining the class members is simply impossible in light of the way Defendant's debt collection software interacts with Global Connect's software system. Declaration of Darrin Bird, ¶¶ 3-6.

When one of Defendant's managers wants to generate a list of phone numbers he or she wants Global Connect to call, he or she does so using Defendant's debt collection

software.  Declaration of Robert Keith, ¶ 2.  First, the manager enters certain criteria (such as account age, balance owed, etc.) which filters through all of Defendant's active collection accounts and narrows the universe of accounts to some subset.  Keith Decl., ¶ 2.  The debt collection software then exports certain information, usually including the collection account numbers, the debtors' first and last name, and one or more phone numbers for each account, into what is known as a "tab-delimited" file.  Keith Decl., ¶ 2.  This file is then uploaded to the Global Connect software system via Global Connect's website.  Keith Decl., ¶ 2.  However, because the "tab-delimited" file contains raw data in the form of text, it is impossible for Global Connect to know which phone numbers are associated with accounts marked with the "SKP" status code and/or which phone fields from which the numbers were pulled (within Defendant's debt collection software).  Bird Decl., ¶¶ 3-6.

This presents a major flaw in Plaintiffs' method to objectively ascertain the class members.  There is simply no way to use Defendant's call logs to determine which numbers were skip-traced and which were not.  Obviously, it is also impossible to use Defendant's call logs to determine whether a particular individual provided his or her cell phone number to his or her creditor and/or Defendant prior to Defendant calling the number in question.

Indeed, even the collection notes themselves are of little assistance.  They are not "searchable."  Keith Decl., ¶ 3.  In order to ascertain whether Defendant called a "wrong" number (as alleged in Perez's case), Defendant would need to examine every line entry of every collection note for every account referred to Defendant during the last five years.  Keith Decl., ¶ 3.  Accordingly, it is impossible to know whether a particular number called is a wrong number and belongs to a third party or non-debtor, and compiling a list of wrong numbers is simply not feasible given the limitations of Defendants' debt collection software.  Keith Decl., ¶ 3.

/ / /

**B.     Plaintiffs Have Not Satisfied Their Requirements Of  Rule 23(b).**

**1.     Plaintiffs Have Not Met Their Burden Of Establishing, By A Preponderance Of The Evidence, That Class Issues Predominate Over Individual Issues And That A Class Action Would Be A Superior Method Of Adjudication.**

The Supreme Court has explained that the "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, *supra,* 521 U.S. at 623.  "The focus of the inquiry is directed primarily toward the issue of liability."  *Forman, supra*, 164 F.R.D. at 404- 405 (in TCPA class action, "Even if plaintiff could meet the commonality and typicality requirements, he could not carry the higher burden of Fed. R. Civ. P. 23(b)(3)").   In practice, determining whether common issues predominate "entails identifying the *substantive issues that will control the outcome*, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."  *Gene And Gene LLC v. BioPay LLC,* 541 F.3d 318, 326 (5th Cir. 2008) (TCPA class rejected) (emphasis added); *see also Forman,, supra,* 164 F.R.D. at 404 (predominance requirement is not satisfied in TCPA class action because of individual inquiry into consent); *Kenro, supra*, 962 F. Supp. at 1169 (same); *G.M. Sign, Inc.,* 2011 WL 248511, at *8 (same); *Versteeg*, *supra,* 271 F.R.D. at 674 (same).

The proof necessary to establish the elements of a TCPA claim (or, in the alternative, affirmative defenses to it) may, and, indeed, must, be taken into consideration if they create individually determined issues that predominate the litigation. *Wal-Mart, supra,* 564 U.S. at 359.  For example, in *Hicks*, *supra*, a TCPA case, the court explained on the issue of prior express consent:  "[W]e feel that it is irrelevant who has the burden. Whether the burden is on the Plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an individual basis at trial.  *Hicks*, 2008 WL 5479111 at *7-*8 (citation omitted).

As so it is here; the TCPA class action contemplated by Plaintiffs necessarily

entails particularized inquiries into the individual facts and circumstances of each class member's claims and Defendant's defenses thereto. *See, e.g.*, *Forman,* 164 F.R.D. at 403-405.

### 2.    Individual Issues Predominate Over Class Issues.

The TCPA claim pled by Plaintiffs (and the potential affirmative defenses thereto) raise numerous individual issues that must be determined on a case-by-case basis with respect to each individual class member, established by individualized proof. These issues include, for instance,  (a) whether a cell phone number was called by Defendant, (b) whether Defendant had prior consent to call that cell phone number (directly or indirectly), (c) whether Defendant left a message with a prerecorded voice, (d) whether the person was charged for the call, (e) whether the person suffered damages and the extent of those damages, (f) whether Defendant *intentionally* violated the TCPA with respect to the individual class member, and (g) whether Defendant has a good faith defense or other common law defense such as unclean hands, failure to mitigate, or assumption of risk.

The Rules Enabling Act prohibits application of the Federal Rules of Civil Procedure where they would abridge a substantive right. 28 U.S.C. § 2072(b); *Amchem Prods. Inc. v. Amchem Products*, *supra*, 521 U.S. at 629 (Rule 23 "must be interpreted with fidelity to the Rules Enabling Act.").  Specifically, Rule 23 cannot be used to abridge or modify a defendant's right to present affirmative defenses to each individual's claim.  *Wal-Mart, supra,* 564 U.S. at 367.  And the issue of prior express consent must be determined for each individual class member whether it is a part of Plaintiffs *prima facie* case or Defendant's affirmative defense.

As recognized by the courts, individuals can, under certain circumstances, provide prior express consent to be called at a telephone number other than their own. *See Gutierrez, supra,* 2011 WL 579238 at *2-3.  Indeed, whether a person can provide prior express consent under the TCPA for someone else's number depends on the individual factual circumstances surrounding that person's relationship to the third party

number.  *Id.*; *see also Osorio v. State Farm Bank, F.S.B.*, 2014 WL 1258023 at *5-9 (11th Cir. 2014) (finding that whether an applicant could provide prior express consent for someone else's number was an issue that needed to "be submitted to a factfinder"). This will be an important issue that is dependent upon individualized evidence not only with respect to Adekoya (whose mother, Geraldine Caldwell, provided Defendant with "prior express consent"), but also with respect to other putative class members who may have provided a telephone number not their own, along with consent to call that number at *any point* in their dealings with their respective creditors.

Simply stated, in this case, common questions do not predominate over individual questions because of the need to develop the facts pertinent to each of these issues, and then to present evidence of same on a per-claimant basis.  *See*, *e.g.*, *Hicks, supra*, 2008 WL 5479111 at *7-*8 (individual issues with respect to prior express consent predominate over class issues).   Certifying a class would lead to innumerable, unmanageable "mini-trials" on the issues of prior express consent, restriction of consent, payment and other issues dependent upon individualized proof.  *Id.*

### 3.    A Class Action Is Not The Superior Method Of Adjudicating This Controversy.

Superiority requires that the class action be the most efficient, effective, and fair method of resolving the claims.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).  This means that the proposed class action is superior to *all* other alternative methods of adjudication.  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-35 (9th Cir. 1996). This alleged TCPA putative class action fails to meet the superiority requirement of Rule 23(b)(3); it is not "superior" to other available methods for fairly and efficiently adjudicating the controversy.  *See, e.g. Forman, supra,* 164 F.R.D. at 404-405 (declining TCPA class certification as not superior).

Among other things, a court assessing the superiority requirement of Rule 23(b)(3) may consider the manageability of the proposed class action.  Fed. R. Civ. P. 23(b)(3)(D).  "When the complexities of class action treatment outweigh the benefits of

- 17 -

considering common issues in one trial, class action treatment is not the superior method." *Zinser v. AccuFix Research Institute, Inc.,* 253 F.3d. 1180, 1192 (9th Cir. 2001) (*opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)). Here, Plaintiffs have failed to offer any solution to the myriad manageability concerns presented by their proposed classes, and have therefore failed to demonstrate that a class action is a "superior" alternative to individual lawsuits under the circumstances of this case. *Forman, supra,* 164 F.R.D. at 404-405.

### a.   The predominance of individual issues and individualized proof precludes a finding of superiority.

As set forth above, individual issues predominate over class issues. One of the benefits of class certification is intended to be the resolution of many individual claims in one more efficient lawsuit. However, where individual claims will overwhelm class issues, requiring individual discovery and devolving into numerous mini-trials, the benefits of the class action form are lost and a class action is not superior. *See* Fed. R. Civ. Proc. 23(b)(3)(D).

### b.   A class action that could result in excessive, ruinous and unconstitutional statutory damages is not a superior method of adjudication.

Assuming Plaintiffs are correct that there exists a class of thousands, perhaps millions, of people entitled to recover statutory damages from Defendant, the resultant liability will far exceed Defendant's ability to pay and will put Defendant out of business. This is antithetical to congressional intent that the TCPA be enforced through private actions, preferably in small claims court. 137 Cong. Rec. S16204-01 (1991). Indeed, the TCPA's statutory damages ($500) and the treble damages penalty ($1,500) were calculated to be sufficiently large to entice *individuals* to enforce their own specific and individual rights. 47 U.S.C. § 227(b)(3); 137 Cong. Rec. S16204-01 (1991); *Forman, supra,* 164 F.R.D. at 403-405.

Aggregation of such sufficiently large statutory damages in a class action, results in threatened liability that greatly exceed any actual damages sustained by the class

members (if any) that would destroy Defendant as a business.  Given the remedial scheme, the intent of Congress in imposing liability under the TCPA was certainly not to subject defendants to such crushing, ruinous liability.  *Forman, supra,* 164 F.R.D. at 404-05 (denying class certification in TCPA case because class action is not a superior method of adjudication where certification would be inconsistent with the specific recovery provided by Congress); *see also* 47 U.S.C. § 227(b)(3); 137 Cong. Rec. S16204-01 (1991).

If even a small percentage of the estimated 60,000,000 calls falling within the putative class period are violative of the TCPA, the resulting liability to Defendant would be so crushing it could not hope to survive.  A class action is not "superior" where, as here, the potential statutory damages greatly exceed any actual damages, and the level of potential liability rises to a level inconsistent with legislative intent in enacting the statutory damages provision.  *See Kline v. Coldwell Banker & Co*., 508 F.2d 226, 233-34 (9th Cir. 1974); *Forman, supra,* 164 F.R.D. at 405.  In *Kline,* for example, the Ninth Circuit reversed class certification because the potential damage figure "would shock the conscience."  *Kline, supra*, 508 F.2d at 234-35.  Numerous other courts have found that class actions are not "superior" to individual suits when the damages sought pose "disastrous consequences" to the defendant despite a lack of actual harm.  *See Forman, supra*, 164 F.R.D. at 405 (TCPA class certification denied); *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y 1972) (denying class certification where minimum recovery of $100 for each of the 130,000 class members would be "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant"); *Torossian v. Vitamin Shoppe Industries*, 2007 WL 7648594, at * 5 (C.D. Cal. 2007) ("The Court believes putting a company out of business…without proof of actual harm, is the type of undesirable, result that…the Ninth Circuit warned against."); *Legge, et al. v. Nextel Communications, Inc., et al.,* No. CV 02–8676DSF(VNKX), 2004 WL 5235587, at *13 (C.D. Cal. June 25, 200) (denying class certification and noting that "[a]llowing this

case to proceed as a class action has potentially ruinous results-without concomitant benefit to the class.").

The potential for ruinous liability in TCPA class actions is demonstrated by the fact that the statutory award mandated by the TCPA replaces reasoned discretion by a veritable "adding machine."  47 U.S.C. § 227(b)(3); *Hale v. Morgan*, 22 Cal.3d 388, 402 (1978); *Starbucks Corp. v. Superior Court*, 168 Cal.App.4th 1436, 1450 (4th Dist. 2008) (court refused class action where potential statutory damages were wholly disproportionate to any discernible legislative goal); *Forman*, 164 F.R.D. at 405.  The use of an "adding machine" approach to calculate statutory damages removes the relation of damages to the alleged harm and can produce massive, ruinous liability unintended and inconsistent with the remedial scheme of the TCPA.  *Hale,* 22 Cal.3d at 402; 137 Cong. Rec. S16204-01 (1991).

While Plaintiffs may attempt to argue that the notion of allowing Defendant to "escape" class certification because it possibly violated the TCPA too significantly may at first blush may seem incongruous, but that issue remains "an issue best addressed in a different forum" – that is, by Congress.  *See Legge*, 2004 WL 5235587 at *17. Statutory "adding machine" damages, when aggregated in the manner threatened by Plaintiffs, which would result in annihilating liability for Defendant, supports denial of class certification for lack of superiority.  *Forman*, *supra,* 164 F.R.D. at 405; *accord Hale, supra*, 22 Cal.3d at 404-405 (where the damages are "mandatory, mechanical, potentially limitless in its effect, regardless of circumstance. . .We are of the view. . .the amount of the penalties is constitutionally excessive").

Indeed, such ruinous liability, unrelated to actual harm, stands to violate Defendant's right to due process.  *Compare State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 425 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor"); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 580 (1996) (The "most commonly cited indicium of an unreasonable or excessive punitive damages award is its

ratio to the actual harm inflicted on the plaintiff."); *accord Hale, supra*, 22 Cal.3d at 399 ("Courts have consistently assumed that 'oppressive' or 'unreasonable' statutory penalties may be invalidated as violative of due process.").

The risk of unconstitutionally high statutory damages raises issues of fairness that are evaluated under the superiority requirement. *Wolin, supra*, 617 F.3d at 1175-76. ("Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action…is fair.").

## V.     CONCLUSION

For all of the forgoing reasons, Defendant respectfully submits that Plaintiffs' Motion for Class Certification should be denied for failing to satisfy all of the requirements of Federal Rule of Civil Procedure 23.

Dated: July 3, 2017

ELLIS LAW GROUP LLP

By  */s/ Anthony P. J. Valenti*
Mark E. Ellis
Anthony P. J. Valenti
Attorneys for Defendant
RASH CURTIS & ASSOCIATES