**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SANDRA MCMILLION, ET AL.,**<br>Plaintiffs,<br>vs.<br>**RASH CURTIS & ASSOCIATES,**<br>Defendant. | CASE NO. 16-cv-03396-YGR<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**[1]<br>Re: Dkt. Nos. 47 |

Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez bring this putative class action against defendant Rash Curtis & Associates alleging that defendants called plaintiffs without consent, in violation of several laws. Specifically, plaintiffs claim that defendant violated the following: (i) Telephone Consumer Protection Act, 47 U.S.C. sections 227, *et seq.* (the "TCPA"); (ii) Fair Debt Collection Practices Act, 15 U.S.C. sections 1692, *et seq.* (the "FDCPA"); and (iii) the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code sections 1788, *et seq.*, (the "Rosenthal Act").

Plaintiffs[2] now seek to certify the following four classes as both injunctive relief classes pursuant to Rule 23(b)(2) and damages classes pursuant to Rule 23(b)(3):

**With Adekoya and Perez as Class Representatives:**

**(a) Skip-Trace Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global Connect dialer whose cellular telephone was obtained by Rash Curtis through skip tracing.

---

[1] The parties have waived oral arguments, and the Court finds that plaintiffs' motion can be resolved without hearing. Thus, the Court **VACATES** the hearing on this motion, currently set for September 26, 2017.

[2] Only plaintiffs Adekoya and Perez seek to be representatives of the classes described herein. Plaintiff McMillion does not seek certification of her claims, and intends to pursue them on an individual basis. Additionally, plaintiffs have moved for class certification with respect to their TCPA claims only, and intend to pursue their FDCPA and Rosenthal Act claims on individual bases. (Dkt. No. 66 at 2.)

**(b) Skip-Trace Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing.

**With Perez Only as Class Representative:**

**(a) Non-Debtor Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global Connect dialer whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis never had a debt-collection account in their name.

**(b) Non-Debtor Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis has never had a debt-collection account in their name.[3]

Excluded from the classes are "persons who provided their cellular telephone in an application for credit to a creditor that has opened an account with [d]efendant in such debtor's name prior to [d]efendant first placing a call using an automatic telephone dialing system and/or prerecorded voice," in addition to certain entities related to defendant, defendant's agents and employees, and any judge or magistrate judge to whom this action is assigned, their staff, and immediate families. (Dkt. No. 46-5 at 10.)

Having carefully considered the pleadings, the papers and exhibits submitted, and for the reasons set forth more fully below, the Court **GRANTS IN PART** plaintiffs' motion, as set forth herein.[4]

---

[3] Relevant to the classes plaintiffs seek to certify, the TCPA prohibits: (i) "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [(an "ATDS")] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" and (ii) "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," other than certain enumerated exceptions. 47 U.S.C. §§ 227(b)(1)(A)(iii) & 227(b)(1)(B).

[4] After briefing was completed on plaintiffs' motion for class certification, defendant requested permission to file a supplemental brief with additional exhibits, which they claimed demonstrated that plaintiffs Adekoya and Perez had provided prior express consent. The Court granted that request, and also allowed plaintiffs the opportunity to respond. The Court also considers these filings herein.

## I. BACKGROUND

Plaintiffs bring the instant action against defendant in connection with defendant's allegedly unlawful debt collection practices. Defendant is a "large, nationwide debt collection agency" and plaintiffs allege that defendant "uses repeated robocalls, pre-recorded voice messages, and auto-dialed calls to threaten and harass consumers in an attempt to collect" debts, in violation of the TCPA, the FDCPA, and the Rosenthal Act. (Dkt. No. 1 ("Compl.") at ¶ 1.)

Plaintiffs allege that defendant repeatedly called them on their cellular telephones using an autodialer and/or an artificial or prerecorded voice. (*Id*. at ¶¶ 2, 4, 6.) Plaintiffs further allege that they did not provide defendant with prior express written consent, and they specifically asked defendant to stop calling. (*Id.*) Defendant allegedly called McMillion thirty-three times, Adekoya forty-five times, and Perez four times. (*Id.* at ¶¶ 3, 5, 7.) The complaint further alleges that several consumer complaints have been filed against defendant regarding similarly unsolicited robocalls and autodialed calls. (*Id*. at ¶ 38.)

To make these calls, plaintiffs offer evidence indicating that defendant employs two autodialer systems, namely, the DAKCS/VIC Software System and the Global Connect system. (*See* Deposition of Steven Kizer ("Kizer Dep."), Dkt. No. 46-6, at 55:6–56:12.) The VIC dialer can allegedly dial about eighty phone numbers per minute, and the Global Connect dialer can dial approximately 60,000 phone numbers in a twelve-hour period. (*Id.* at 99:12–100:12.) Plaintiffs allege thus regarding defendant's business practices related to these calls:

Defendant generally receives debt-accounts from creditors. (*Id.* at 45:19–47:17.) While some of these accounts include debtors' phone numbers—such individuals are excluded from the class definitions as set forth above—defendant receives many accounts without any telephone numbers at all. (*Id.* at 47:23–48:1.) For these accounts, defendant uses a process referred to as "skip tracing" to obtain phone numbers associated with the names on the accounts. (*Id.* at 83:3–84:20; 91:9–92:6.) "Skip tracing" is a "method or process for locating individuals for the purpose of contacting them," using "data analysis of personal information obtained from various and multiple public and private databases." (Declaration of Randall A. Snyder ("Snyder Decl."), Dkt. No. 46-7, at ¶¶ 58–60.) According to plaintiffs, accounts where phone numbers were obtained

3

1 through skip tracing are marked with a unique status code and are, therefore, readily identifiable. (Kizer Dep. Tr. 86:7–9; 90:13–90:24.) At times, this process would produce a phone number not connected to any individual for whom defendant had a debt account from a creditor. Yet, defendant would often call these numbers despite not having any accounts related to those individuals.

On such bases, plaintiffs seek to certify four classes as set forth above, challenging defendant's use of autodialers, robocallers, and pre-recorded voice messages to contact individuals in an attempt to collect on their debt.

## II. LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).

Rule 23(b)(2) requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citation omitted).

Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

4

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Ellis*, 657 F.3d at 982. "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

**III. DISCUSSION**

Plaintiffs seek to certify the proposed classed under both Rule 23(b)(2) and 23(b)(3). For the sake of clarity, the Court first addresses certification as damages classes under Rule 23(b)(3), and then addresses plaintiffs' arguments for certification as injunctive relief classes under Rule 23(b)(2).

**A. Rule 23(b)(3) Damages Class**

Defendant challenges all elements for certification of a Rule 23(b)(3) class, except for numerosity.[5] The Court will first address commonality under Rule 23(a) together with

---

[5] Plaintiffs' evidence purports to demonstrate that defendant's dialers can "place about 120 connected calls per debt-collector per day during working hours and place roughly 15,000 and 30,000 calls total per day." (Dkt. No. 46-5 at 19.) A six-day sample of calls made by Global Connect, for instance, indicates more than 265,000 calls were made. (*Id.*) Plaintiffs contend that

5

predominance under Rule 23(b)(3). *See, e.g.*, *Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-1395, 2013 WL 6925827, at *3 (S.D. Cal. July 30, 2013) (addressing commonality and predominance together) (citing *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")). The Court will then address the remaining factors under Rules 23(a) and 23(b)(3)—Typicality, Adequacy, and Superiority—in turn.

### *1. Commonality and Predominance*

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The existence of common questions itself will not satisfy the requirement. Instead, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original). The predominance inquiry under Rule 23(b)(3) is "far more demanding." *See Amchem Prods.*, 521 U.S. at 623–24.

Defendant argues that the following issues require individualized inquiries and, therefore, defeat class certification, namely whether: (i) each call recipient provided prior express consent; (ii) defendant called a particular cell phone number belonging to a class member; (iii) any putative class member was actually charged for calls they received; and (iv) each class member will be entitled to different damage calculations.[6] None of defendant's arguments persuade.

---

at least thousands of these calls were to members of the putative classes—*i.e.*, persons whose numbers were acquired through skip tracing. On this basis, plaintiffs argue that the numerosity requirement is satisfied. The Court agrees.

[6] Defendant also vaguely argues without any citations or explanation that questions related to whether it has any good faith or common law defenses would predominate. Without further explanation, such hypothetical "defenses" are merely speculative and cannot defeat class certification.

6

1   First, defendant contends that individualized issues regarding consent will predominate, yet offers no evidence demonstrating that that will be an issue with respect to the proposed classes. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (rejecting argument that individualized issues of consent would predominate where defendant "did not show a single instance where express consent was given before the call was placed"); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) ("The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer." (citing *Meyer*, 707 F.3d at 1036, 1042)). Particularly here, where the classes are limited to those whose phone numbers defendant obtained through skip tracing rather than from a third-party debt owner or the individuals themselves, "there is no need for an individualized inquiry" regarding consent. *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11-CV-1008-AJB, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011), *aff'd*, *Meyer*, 707 F.3d 1036. Defendant engaged in the same practice with respect to all class members, and whether that practice was performed without prior express consent is common to the classes.[7]

Second, defendant's arguments regarding plaintiffs' ability to prove that defendant called the cell phones of any other putative class member are equally unsupported. Rather, the evidence before the Court demonstrates that plaintiffs are capable of determining whether defendant called the cell phone or landline phone numbers of other putative class members. (Kizer Dep. Tr. 72:18–73:9 (testifying that defendant's software can identify whether a telephone number is a cell phone or landline); *see also* Snyder Decl. at ¶¶ 13, 61–68 (explaining process for determining whether telephone number belongs to a cell phone or landline), ¶¶ 86–92 (demonstrating feasibility of identifying owner of phone numbers called by defendant).)

Third, defendant's argument that issues relating to whether class members were charged for any calls contradicts established case law finding that receiving charges for the unlawful calls

---

[7] Defendant has proffered evidence suggesting that Adekoya and Perez had provided prior express consent, and that it did not acquire their phone numbers through skip tracing. If true, however, that does not constitute evidence that anyone in the proposed classes—*i.e.*, those whose phone numbers were obtained through skip tracing—provided prior express consent. The Court considers defendant's evidence relative to Adekoya and Perez in the context of typicality.

7

is not an element of a TCPA claim. *See Nghiem v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 811 (C.D. Cal. 2016) ("It does not matter whether a plaintiff lacks additional tangible harms like wasted time, actual annoyance, and financial losses. Congress has identified that unsolicited telephonic contact constitutes an intangible, concrete harm . . . ."); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-267-YGR, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) ("[C]ourts have found an injury in fact for a purported TCPA violation even where the plaintiff did not receive an additional charge for the messages received." (citing cases)); *Smith v. Microsoft Corp.*, No. 11-CV-1958-JLS, 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) ("Accordingly, based on the plain language of the TCPA and supported by the legislative history as set forth above, the Court finds that by alleging he received a text message in violation of the TCPA, [plaintiff] has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy, even absent any economic harm.").

Fourth, and finally, the Ninth Circuit has held that "potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). Especially given the present circumstances, assuming liability is determined, the damages calculation will depend only upon the number of times an individual class member received a call and whether defendant acted knowingly and willfully, which would result in treble damages under the TCPA. Defendant argues that the latter inquiry requires an individualized determination as to whether each call was made knowingly and willfully. However, as this Court has previously found in similar contexts, the question of defendant's willfulness and knowledge is a common question. *See Meyer v. Bebe Stores, Inc.*, No. 14-CV-267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016) ("[A] determination of whether [a defendant's] conduct was willful would appear to depend on [the defendant's] intent, not any unique or particular characteristics related to potential class members."); *see also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (finding that the issue of whether defendant's "conduct was willful will be common"); *Zyburo v. NCSPlus*, *Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2015) (finding that willfulness determination

will "depend on defendant's general practices and procedures," which "is entirely suitable for class determination").

Accordingly, the Court finds that plaintiffs have satisfied the commonality requirement under Rule 23(a)(2) and the predominance requirement under Rule 23(b)(3).

### *2. Typicality*

To satisfy typicality, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted).

In defendant's supplemental briefing, defendant proffers evidence it claims shows (i) that both Adekoya and Perez provided prior express consent, as demonstrated in their depositions; and (ii) that defendant did not acquire their phone numbers via skip tracing.[8] The Court addresses each.[9]

---

[8] Defendant also argues that plaintiffs have not demonstrated that they incurred any charges as a result of the allegedly unlawful calls. For the same reasons discussed above, the Court rejects that argument in this context. Additionally, defendant argues that evidence of prior express consent with regard to plaintiff McMillion disqualifies her from serving as a class representative. (Dkt. No. 50 at 15.) Plaintiff McMillion, however, has not been put forward as a potential class representative, and, thus, defendant's arguments in this regard are moot.

[9] Plaintiffs argue that the Court should strike the new documents submitted by defendant in connection with its supplemental briefing because such were not disclosed to plaintiffs in discovery. However, discovery in this matter is still on-going and remains open until October 25, 2017, under the current pretrial order. Additionally, as a practical matter, even if the Court were to accept plaintiffs' position that the Court reject these documents for the purposes of the instant motion for class certification, defendants may simply bring a motion for decertification on the basis of the very same documents. While the Court does not condone defendant's blatant delaying and sandbagging tactics, for the purposes of judicial efficiency, the Court will consider the additional evidence at this time. Defendant is warned, however, that the use of such tactics in the future may result in evidentiary or monetary sanctions.

9

First, defendant argues that Adekoya's and Perez's depositions demonstrate that both provided prior express consent. Plaintiffs concede that Adekoya's admissions in her deposition and defendant's records show that she falls into the class definition's exclusion of persons who provided their cellular telephone number in an application for credit to a creditor that has opened an account with defendant. Thus, the Court finds that Adekoya is an atypical representative and, therefore, cannot serve as a class representative. Defendant, however, does not persuade with regard to Perez. Perez's deposition does, indeed, indicate that Perez gave his phone number to Sutter General Hospital, which is the entity on whose behalf defendant called Perez. However, according to a declaration submitted by defendant, Perez's provision of his phone number was not in connection with any particular debt owed by Perez. Rather, Sutter General Hospital referred a debt account associated with another individual. (Dkt. No. 71-2, Keith Decl. ¶ 4; *see also* Exhibit 6 thereto.) Sutter General Hospital then allegedly forwarded to defendant that individual's patient information sheet at some point, which included a cell phone number that belonged to Perez. That sequence of events does not constitute prior express consent. *See Meyer*, 707 F.3d at 1042 (stating that "prior express consent is consent to call a particular telephone number *in connection with a particular debt* that is given before the call in question is placed") (emphasis supplied).

Second, defendant argues that the referral from Sutter General Hospital, which included a document containing Perez's phone number, demonstrates that it did not obtain Perez's phone number through skip tracing. Defendant's lawyer avers that this document was transmitted to it by Sutter General Hospital on May 7, 2015, when Sutter General Hospital opened that debtor account. Thus, Perez would not fall into the classes here, which are specifically defined as those individuals whose numbers defendant obtained through skip tracing. (Keith Decl., Exhibit 6.) Plaintiffs argue that the evidence in the record suggests otherwise. For instance, Kizer testified that defendant does not generally obtain documents from creditors providing proof of debt or the debtor's original phone number, and specifically testified that Sutter General Hospital is one such creditor that does not routinely do so. (Kizer Dep. Tr. 45:25–46:5; 47:7–17.) Additionally, plaintiffs' expert Snyder, who reviewed the account records produced by defendant, observed that Perez's consumer account record did not include any telephone contact information and included

10

1  an "ECA Advanced Trace" notation, indicating that Perez's number was obtained via skip tracing.

2  (Snyder Decl. ¶¶ 87–89.) If defendant truly had definitive evidence as of May 7, 2015 that it did

3  not use skip tracing to obtain Perez's phone number, it defies all logic that defendant would only

4  raise this evidence now, almost two months after filing its opposition.

Thus, the Court finds that plaintiffs' showing at this stage is sufficient to demonstrate that Perez satisfies the typicality requirement of Rule 23(a).[10] Plaintiffs have demonstrated that Perez's claims are typical of the claims of the classes, which he seeks to represent, namely that defendants called Perez after obtaining his phone number through skip tracing, allegedly without his consent. That is the general theory of liability for all of the proposed classes. Additionally, with respect to Perez, the analysis conducted by plaintiffs' expert demonstrates that he, like the members of the Non-Debtor classes, never had a debt collection account with Rash Curtis. (*See* Snyder Decl. ¶¶ 88–89.) Accordingly, the Court finds that Perez has satisfied Rule 23(a)(3)'s typicality requirement, and proceeds with the analysis as to Perez only.

### *3.  Adequacy*

Rule 23(a)'s adequacy requirement considers "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Defendant argues only that Rule 23(a)(3)'s typicality inquiry may overlap with Rule 23(a)(4)'s adequacy requirement because both look to the potential for conflicts in the class.[11] Thus, for the same reasons the Court rejected defendant's arguments in the context of typicality, the Court rejects them here.

---

[10] Defendant also argues that plaintiffs lack evidence demonstrating their ownership of the cell phone numbers. Defendant ignores the uncontroverted evidence submitted by plaintiffs' expert, as set forth above. In the face of this evidence, defendant submits only the affidavit of its attorney, Anthony Valenti, in which Valenti avers that he has "not received any documents or other evidence which demonstrates that [p]laintiffs Jessica Adekoya or Ignacio Perez actually owned the alleged cell phone numbers called by [d]efendant." (Dkt. No. 50-1 at 2.) Defendant's "evidence," does not suffice.

[11] Defendant raises additional arguments in its supplemental briefing pertaining to Perez's alleged lack of detailed knowledge regarding his claims and the relief he is seeking. The Court rejects those arguments, and finds that Perez's understanding and participation in this action are sufficient to satisfy the adequacy requirement of Rule 23(a).

United States District Court
Northern District of California

1  Plaintiffs have made a sufficient showing for purposes of Rule 23(a) that Perez and his counsel are adequate representatives. Specifically: The record before the Court indicates that plaintiff Perez has been an active participant in the litigation, frequently requesting case updates from his attorneys. (Declaration of Krivoshey ("Krivoshey Decl."), Dkt. No. 46-6, at ¶ 5.) Additionally, plaintiffs' counsel, Bursor & Fisher, P.A., have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously. Defendant raises no arguments to the contrary.

Accordingly, the Court finds that plaintiffs have satisfied the adequacy requirement under Rule 23(a)(4).

### *4. Superiority*

Lastly, the Court may certify a class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996).

Defendant raises two arguments in this regard: First, the predominance of individualized issues precludes a finding of superiority. And, second, certification of a class action here could result in excessive statutory damages, thus defeating superiority, particularly because Congress allowed for sufficiently high statutory damages for individual actions under the TCPA. Defendants do not present any other arguments relating to the other superiority factors.[12]

---

[12] Defendant also contends that, in addition to the explicit requirements of Rule 23, courts have found an implied threshold requirement that the classes are identifiable and ascertainable, and that plaintiffs have failed to so demonstrate here. That argument directly contradicts controlling authority issued by the Ninth Circuit earlier this year, and defendant's failure to

12

Defendant does not persuade. For the same reasons set forth above in the context of predominance, the Court rejects defendant's first argument. With respect to defendant's second argument, courts routinely certify classes where certification of the classes creates large liability risks for defendants. In fact, the Ninth Circuit has held that such a consideration—*i.e.* whether "class treatment would render the magnitude of the defendant's liability enormous"—"is not an appropriate reason to deny class certification under Rule 23(b)(3)." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010). It would certainly be perverse to deny certification on the basis that defendant harmed too many people and, thus, has too much exposure to liability. *See id.* ("If the size of defendant's potential liability alone was a sufficient reason to deny class certification, however, the very purpose of Rule 23(b)(3)—'to allow integration of numerous small individual claims into a single powerful unit'—would be substantially undermined." (citation omitted)). To the contrary, several courts have certified similar TCPA class actions, finding that the statutory damages provided by the TCPA are "not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a

---

address the same is borderline sanctionable. *See Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, No. 04-CV-4483, 2005 WL 1876103, at *4 (N.D. Cal. Aug. 8, 2005) ("[T]he fact that plaintiff's counsel failed to cite such adverse controlling authority raises serious questions concerning his compliance with his ethical obligations as a member of the bar."). On January 3, 2017, the Ninth Circuit held that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification," rejecting the line of authority upon which defendant relies for the proposition that a threshold, ascertainability requirement exists. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017). This Court has previously addressed *Briseno*, explaining that "class proponents are not required to demonstrate that there is an administratively feasible way to determine who is in the class in order for the class to be certified." *Bebe Stores*, 2017 WL 558017, at *3. Rather, the Ninth Circuit instructs that concerns related to "ascertainability" should be addressed within the context of the Court's superiority analysis under Rule 23(b)(3). *Briseno*, 844 F.3d at 1126. For the reasons set forth herein, the Court finds that plaintiffs have satisfied that standard.

Furthermore, and in any event, plaintiffs have sufficiently demonstrated that the classes are feasibly ascertainable, and defendant offers no evidence to the contrary, except for attorney argument and unpersuasive declarations that fail to address plaintiffs' expert's opinions in this regard. (*See* Snyder Decl. ¶¶ 70–74, 82–83 (explaining that defendant's database can identify which numbers were obtained through skip tracing and which numbers belong to individuals for whom defendant did not have a debt collection account, and that the list could then be cross-checked against the list of all calls made by defendant's dialers).)

small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wash. 2012) (citing cases); *see also Bebe Stores*, 2016 WL 8933624, at *11.[13]

Thus, the Court finds that plaintiffs have satisfied the superiority requirement here.[14] Accordingly, plaintiffs have satisfied all the requirements for certification of Rule 23(b)(3) classes as to all four of their proposed classes in this action.

**B.  Rule 23(b)(2) Injunctive Relief Class**

Rule 23(b)(2) allows a Court to certify a class when the requirements of Rule 23(a) are satisfied and the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting that class as a whole." Fed. R. Civ. P. 23(b)(2). District courts may certify both a 23(b)(2) class for the

---

[13] Defendant also argues that such high and "excessive" damages would violate their rights to due process because the monetary amount is unrelated to the actual harm suffered by plaintiffs. However, two of the cases upon which plaintiffs rely relate to the imposition of excessive punitive damages, and are inapposite to the statutory damages at issue here. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 425 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996). The final case upon which defendant relies involves the mandatory imposition of a $100 penalty on a landlord for each day that they failed to correct certain deficiencies. *Hale v. Morgan*, 22 Cal.3d 388, 399 (1978) (noting that "importantly, the duration of the penalties is potentially unlimited, even though the landlord has done nothing after the initial wrongful termination of utility service except fail to restore it"). The circumstances of that case run far afield of the circumstances involved in this litigation, wherein defendant allegedly performed a wrongful and illegal act every time that it called a putative class member. Additionally, *Hale* involved a challenge to the statutory damage scheme established by the California legislature. No such challenge has been presented here.

[14] Defendant additionally contends that the class definitions here are impermissible "fail-safe" classes because they specifically exclude people who provided their numbers to creditors, who, in turn, opened an account with defendant. By way of background, a fail-safe class definition is one which would require the court to "reach a legal determination" in order to "determine who should be a member of the[] classes." *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008). For instance, a fail-safe class definition in this context would define the class as "all persons who were called by defendant and did not give prior express consent." *See, e.g.*, *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-532-JCS, 2015 WL 3750112, at *9 (N.D. Cal. June 15, 2015) (finding no fail-safe class because the "definitions do not require the court to legally conclude whether a person gave 'prior consent' in order to determine whether that person is in the class").

As an initial matter, the Ninth Circuit has not explicitly held that fail-safe classes are *per se* impermissible. *See In re AutoZone, Inc., Wage & Hour Employment Pracs. Litig.*, 289 F.R.D. 526, 546 (N.D. Cal. 2012) (citing *Vizcaino v. U.S. Distr. Ct. for W.D. Wash.*, 173 F.3d 713, 722 (9th Cir. 1999)). In any event, the class definitions here are not fail-safe classes. The exclusion of which defendant complains only eliminates categorically any person who may have consented by virtue of their provision of their phone number to a creditor. The Court need not make any legal conclusions establishing defendant's liability to determine whether a person belongs in one of the classes defined herein.

14

portion of the case concerning injunctive and declaratory relief and a 23(b)(3) class for the portion of the case requesting monetary damages. *See* Newberg on Class Actions § 4:38 (5th ed. 2017); *see, e.g.*, *Barrett v. Wesley Fin. Grp., LLC*, No. No. 13-CV-554-LAB, 2015 WL 12910740, at *6–7 (S.D. Cal. Mar. 30, 2015) (certifying both classes in the context of the TCPA); *Kavu*, 246 F.R.D. at 649 (same). However, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986 (citation omitted). "Although the Ninth Circuit previously held that, in Rule 23(b)(2) cases, monetary damage requests were generally allowable if they were incidental to the litigation, the Supreme Court has called this standard into doubt." *Barrett*, 2015 WL 12910740, at *6 (citing *Wal-Mart*, 131 S. Ct. at 2560).

Here, the large amount of potential liability undermines the proposition that declaratory or injunctive relief is primary to plaintiffs' action. However, in cases "where a plaintiff seeks both declaratory and monetary relief, [courts] may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." *Barrett*, 2015 WL 12910740, at *7 (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)). The Court finds that certifying the classes here as both damages-seeking classes under Rule 23(b)(3) and injunctive relief only classes under Rule 23(b)(2) is appropriate and promotes judicial efficiency. In the event that plaintiffs are able to demonstrate liability under the TCPA, but ultimately fail to establish classwide damages, the Court may still enter an injunction against defendant.

Accordingly, the Court finds that plaintiffs have satisfied the requirements for certification under Rule 23(b)(2).

**IV. CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification under both Rule 23(b)(2) and Rule 23(b)(3) is **GRANTED IN PART**. The Court, therefore, **CERTIFIES** the following classes with Perez as the class representative, both for injunctive relief only pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3):

> **(a) Skip-Trace Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global

15

Connect dialer whose cellular telephone was obtained by Rash Curtis through skip tracing.

**(b) Skip-Trace Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing.

**(c) Non-Debtor Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global Connect dialer whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis never had a debt-collection account in their name.

**(d) Non-Debtor Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis has never had a debt-collection account in their name.

The Court further **APPOINTS** plaintiffs' counsel, Bursor & Fisher, P.A., as class counsel.

The Court **SETS** a case management conference for **Monday, October 2, 2017**. No later than **September 25, 2017**, the parties must file updated joint case management statements, in accordance with the Civil Local Rules and this Court's Standing Order, including any remaining requests for extensions to the discovery and dispositive motion schedule.[15]

This Order terminates Docket Numbers 47 and 70.

**IT IS SO ORDERED.**

Dated: September 6, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[15] The Court **DENIES WITHOUT PREJUDICE** plaintiffs' administrative motion at Docket Number 70.

16