**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Yeremey O. Krivoshey (SBN 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

**ELLIS LAW GROUP LLP**
Mark E. Ellis (SBN 127159)
Anthony P.J. Valenti (SBN 284642)
740 University Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 283-8820
Fax: (916) 283-8821
E-mail: mellis@ellislawgrp.com
          avalenti@ellislawgrp.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SANDRA MCMILLION, JESSICA ADEKOYA, and IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>                Plaintiff,<br><br>   v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>                Defendant. | Case No. 4:16-cv-03396-YGR<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:   October 2, 2017<br>Time:   2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers |

1

2

3

4

5

6

Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez ("Plaintiffs") and Defendant Rash Curtis & Associates ("Defendant"), the parties to the above-entitled action (collectively, "Parties") jointly submit this Joint Case Management Statement pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9 and the Court's September 6, 2017 Order Granting Plaintiffs' Motion for Class Certification (ECF Doc. No. 81).

7

## 1.   **Jurisdiction and Service**

8

9

10

11

12

13

14

15

16

17

18

Plaintiffs filed their complaint on June 17, 2016 and service was completed on Defendant on June 27, 2016.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).  This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of federal statutes, the TCPA and the FDCPA.  This Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. § 1367.

19

20

21

22

23

Defendant denies that this Court has jurisdiction over this action pursuant to CAFA. However, Defendant does not challenge this Court's jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Should Plaintiffs' federal law claims, for which this Court's original jurisdiction arises, be dismissed, Defendant does not consent to this Court's supplemental jurisdiction over any remaining state law claims.

24

There are no challenges to personal or subject matter jurisdiction or to venue.

25

## 2.   **Facts**

26

### A.   **Plaintiffs' Statement**

27

28

Defendant Rash Curtis & Associates ("Rash Curtis" or "Defendant") is a large, nationwide debt collection agency.  Defendant uses repeated robocalls, pre-recorded voice messages, and auto-

dialed calls to threaten and harass consumers in an attempt to collect.  Defendant called Plaintiffs' cellular telephones dozens of times using an autodialer and/or an artificial or prerecorded voiced without consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").   Defendant willfully continued to call Plaintiffs despite all Plaintiffs' demands that the calls cease.  Plaintiffs allege that Defendant's calls were part of a campaign of harassment to coerce payment of a consumer debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq. ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Civil Code 1788 et seq. ("Rosenthal Act").

### B.    Defendant's Statement

Defendant denies that it is a "large" debt collection agency or that it could be classified as "nationwide."  Rash Curtis primarily collects outstanding medical debt on behalf of medical facilities located in California.  Rash Curtis also denies it violated the TCPA, FDCPA, or Rosenthal Act with respect to Plaintiffs, and denies it skip-traced any of the Plaintiffs' cellular telephone numbers, including Mr. Perez's.

Mr. Perez provided his "prior express consent" to Sutter General Hospital when he voluntarily provided his cell phone number in connection with: (1) his own, personal medical treatment, (2) his uncle's medical treatment, and (3) in his capacity as an employee of Sacramento County's Health and Human Services Department.  During his deposition, Mr. Perez testified that he is employed by the County of Sacramento as a caregiver for the disabled and elderly as part of a program called In-Home Supportive Services.  He also testified that he always provides his cell phone number to Sutter General Hospital whenever he takes his patients there in case anyone ever needs to contact him.  In May 2015, Sutter General Hospital referred a debt to Rash Curtis for collection.  Although Mr. Perez was not the purported debtor, Sutter General Hospital provided Rash Curtis with Mr. Perez's cell phone number, which was contained on Sutter General Hospital's records for the purported debtor, Mr. Daniel Reynoso.  Rash Curtis did not skip-trace Mr. Perez's cell phone number; rather, Rash Curtis obtained Mr. Perez's cell phone number from its client, Sutter General Hospital.

Ms. Adekoya also provided her "prior express consent" to her creditor, Doctors Medical

Center when she voluntarily provided her cell phone number in January 2015. When Doctors Medical Center referred Ms. Adekoya's debt to Rash Curtis for collection in May 2015, it provided Rash Curtis with Ms. Adekoya's cell phone number, which was contained on Doctors Medical Center's records for both Ms. Adekoya and her minor son. Although Ms. Adekoya purportedly asked Rash Curtis to stop calling her place of employment (which it did), she never revoked her "prior express consent" to be called on her cell phone.

Likewise, Ms. McMillion provided her "prior express consent" to her creditor, Marin General Hospital, when she voluntarily provided her cell phone number in mid-2015. When Marin General Hospital referred Ms. McMillion's debts to Rash Curtis for collection in December 2015, it provided Rash Curtis with Ms. McMillion's cell phone number, which was contained on Marin General Hospital's records for Ms. McMillion. Although Ms. McMillion purportedly revoked her "prior express consent" in February 2016, Marin General Hospital subsequently referred another one of Ms. McMillion's debts to Rash Curtis and provided her cell phone number to Rash Curtis again.

Rash Curtis' clients, Marin General Hospital, Doctors Medical Center, and Sutter General Hospital, possessed "prior express consent" to contact Ms. McMillion, Ms. Adekoya, and Mr. Perez, respectively. Rash Curtis, in turn, obtained this "prior express consent" from its clients. "Prior express consent" is a complete, affirmative defense to any TCPA claim. In addition, Rash Curtis never called the Plaintiffs' cell phones more than once per day or at times known to be inconvenient. There is no evidence that Rash Curtis ever intended to harass the Plaintiffs, and the call volumes alleged do not constitute violations of the FDCPA or Rosenthal Act – as a matter of law.

3.   **Legal Issues**

   A.   **Plaintiffs' Statement**

   On September 6, 2017, the Court certified four classes pursuant to the TCPA (the "Skip-Trace Class 1," "Skip-Trace Class 2," "Non-Debtor Class 1," and "Non-Debtor Class 2"), appointed Plaintiffs Perez as class representative, and appointed Bursor & Fisher, P.A. as Class Counsel. ECF No. 81. Plaintiffs Adekoya and McMillion are proceeding with their claims on an

1   individual basis.

2       Outstanding legal issues include whether to be proved at summary judgment or trial

3   include whether Defendant's telephone dialing equipment constitutes an automatic telephone

4   dialing system pursuant to the TCPA, whether Defendant had express prior written consent to

5   make the calls at issue, whether Defendant's conduct was willful, and, according to the FDCPA

6   and Rosenthal Act, whether Defendant's conduct was harassing.

7       **B.**    **Defendant's Statement**

8       **1.**    **Ms. McMillion**

9       As to Ms. McMillion, the outstanding legal issues are: (1) whether she provided her "prior

10  express consent" to Marin General Hospital in 2015; (2) whether Rash Curtis was acting as the

11  agent of Marin General Hospital such that it also possessed Ms. McMillion's "prior express

12  consent;" (3) whether Ms. McMillion ever validly revoked her "prior express consent" in February

13  2016; (4) whether Rash Curtis possessed Ms. McMillion's "prior express consent" to call her

14  regarding a different debt which Marin General Hospital subsequently referred to Rash Curtis for

15  collection in February 2016; (5) whether the alleged call volume constitutes a violation of the

16  FDCPA and/or Rosenthal Act; (6) whether Rash Curtis engaged in conduct the natural

17  consequence of which was to harass, oppress, or abuse Ms. McMillion; (7) whether Rash Curtis

18  maintained policies and procedures reasonably adapted to avoid violations of the FDCPA and/or

19  Rosenthal Act such that it has no liability for unintended violations under the *bona fide* error

20  defense; and (8) whether Ms. McMillion suffered a concrete, particularized injury sufficient to

21  confer upon her Article III standing.

22      **2.**    **Ms. Adekoya**

23      As to Ms. Adekoya, the outstanding legal issues are: (1) whether she provided her "prior

24  express consent" to Doctors Medical Center in January 2015; (2) whether Rash Curtis was acting

25  as the agent of Doctors Medical Center such that it also possessed Ms. Adekoya's "prior express

26  consent;" (3) whether Ms. Adekoya ever validly revoked her "prior express consent;" (4) whether

27  the alleged call volume constitutes a violation of the FDCPA and/or Rosenthal Act; (5) whether

28  Rash Curtis engaged in conduct the natural consequence of which was to harass, oppress, or abuse

Ms Adekoya; (6) whether Rash Curtis maintained policies and procedures reasonably adapted to avoid violations of the FDCPA and/or Rosenthal Act such that it has no liability for unintended violations under the *bona fide* error defense; and (7) whether Ms. Adekoya suffered a concrete, particularized injury sufficient to confer upon her Article III standing.

### 3.   Mr. Perez

As to Mr. Perez, the outstanding legal issues are: (1) whether he provided his "prior express consent" to Sutter General Hospital; (2) whether the scope of Mr. Perez's "prior express consent" included calls placed by Rash Curtis on behalf of Sutter General Hospital in connection with normal hospital business; (3) whether Rash Curtis was acting as the agent of Sutter General Hospital such that it also possessed Mr. Perez's "prior express consent;" (4) whether Mr. Perez ever validly revoked his "prior express consent;" (5) whether Mr. Perez, a non-debtor, lacks standing to assert violations of the FDCPA or Rosenthal Act; (6) whether Rash Curtis engaged in conduct the natural consequence of which was to harass, oppress, or abuse Mr. Perez; (7) whether Rash Curtis maintained policies and procedures reasonably adapted to avoid violations of the FDCPA and/or Rosenthal Act such that it has no liability for unintended violations under the *bona fide* error defense; and (8) whether Mr. Perez suffered a concrete, particularized injury sufficient to confer upon him Article III standing.

### 4.   **Motions**

There are no motions currently pending before the Court.  Pursuant to the Court's October 7, 2016 Case Management and Pretrial Order (ECF No. 23), Dispositive Motions/Daubert Motions are to be filed by November 21, 2017.  Both Parties seek to file motions for summary judgment. Plaintiffs anticipate filing a motion for summary judgment on the issue of whether Defendant's dialers constitute ATDS within the meaning of the TCPA and on the issue of consent as to the named Plaintiffs.

As discussed in further detail below regarding discovery, the Parties need additional time to take depositions, complete discovery, and, as for Plaintiffs, update the Expert Disclosures. Accordingly, the Parties ask for an extension to the deadline to file dispositive motions and Daubert motions, pursuant to the schedule set forth below.

Defendant anticipates filing a motion for summary judgment as to each of the Plaintiffs' respective claims and, to that extent, renews its request for a pre-filing conference as required by Judge Gonzalez Rogers' Standing Order In Civil Cases.  Defendant also contemplates filing a Daubert motion as to both of Plaintiffs' experts, Mr. Randall Snyder and Mr. Colin Weir.  As explained below, Defendant is also considering filing a motion for decertification following the deposition of Mr. Snyder.  Finally, Defendant is considering the merits of a motion to disqualify Plaintiffs' counsel, Bursor & Fisher, P.A., based on its improper acquisition of Rash Curtis' attorney-client privileged and trade-secret protected information by and through one of Rash Curtis' former compliance directors, Mr. Steven Kizer.  Specifically, Mr. Kizer admittedly transmitted confidential information to Plaintiffs' counsel, who knew or should have known that such information was being improperly disclosed by a non-party who could not validly waive Rash Curtis' attorney-client privilege or trade-secret protections.

Plaintiffs will oppose any motion filed by Defendant.  Specifically, as to a potential motion to disqualify Plaintiffs' counsel, Plaintiffs note that all documents Plaintiffs obtained from Mr. Kizer were obtained through a valid subpoena, notice of which was timely provided to Defendant. Defendant never moved to quash the subpoena or for a protective order.

5.    **Amendment of Pleadings**

No amended pleadings have been filed.

6.    **Evidence Preservation**

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7.    **Disclosures**

Defendant made its initial disclosures on September 13, 2016.  Plaintiffs made their initial disclosures on September 30, 2016.

8. **Discovery**

  A.   **Plaintiffs' Statement**

  Plaintiffs served an initial set of requests for production and interrogatories on September 21, 2016.  Plaintiffs served a second set of requests for production on February 8, 2017, and more interrogatories on May 24, 2017.  Plaintiffs served a third set of requests for production and interrogatories on August 25, 2017.

  Although Plaintiffs have diligently pursued discovery since the inception of this case, Defendant has only this week made its first substantial production.  After Defendant failed to produce a single internal communication in response to Plaintiffs' first and second discovery requests, Plaintiffs attempted for months to meet and confer with Defendant regarding the production.  Once it became clear that Defendant did not wish so much as to meet and confer, Plaintiffs filed a Joint Statement Regarding Discovery Dispute pursuant to Magistrate Judge Corley's standing order.  *See* ECF No. 40.  At the May 1, 2017 hearing, Defendant's counsel spent the entire hearing "falling on his sword" for failing to engage in the meet and confer process. Because Defendant failed to meet and confer, Judge Corley ordered the Parties to meet and confer in person at the Courthouse following the hearing.  Defendant took advantage of the ruling to effect more delay.

  Over the course of the next few weeks following the hearing, the Parties met and conferred regarding search terms and custodians for Defendant's anticipated production.  On May 23, 2017, Defendant agreed to produce emails using all of the Parties' agreed-upon search terms through searching the records of five custodians.  *See* Joint Discovery Statement Regarding Discovery Dispute, at 1-2 (ECF No. 51).  Because Defendant's production was anticipated to be voluminous, Plaintiffs gave Defendant roughly a month to make the production.  On June 26, 2017, after heavy prodding from Plaintiffs, Defendant stated that it needed yet more time but asserted that its "estimated date certain for the production of the documents you've requested is July 10, 2017." *Id.* at 2.  Plaintiffs agreed to withhold moving to compel a second time so long as Defendant made a full production at that time.

  On July 10, 2017, the agreed-upon date certain for Defendant's production, Defendant

switched course and stated that it would not agree to produce a single email due to purported burden concerns.  Plaintiffs were again forced to bring the matter to Judge Corley's attention – regarding the exact discovery requests at issue the first time the Parties were before Judge Corley. Plaintiffs filed their second Joint Discovery Statement Regarding Discovery Dispute on July 25, 2017.  *Id.*  The Parties appeared before Judge Corley for the second time on August 17, 2017.

Judge Corley ordered Defendant to produce documents responsive to a number of search terms from four different custodians.  *See* 8/18/17 Order Re Discovery Dispute (ECF No. 63). Judge Corley also scheduled another discovery hearing for September 28, 2017, as Defendant's production is anticipated to come in piecemeal fashion and future disputes are almost certain to arise.

On September 1, 2017, Defendant filed a Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge in an attempt to set aside Judge Corley's Order.  ECF No. 79.  This Court denied Defendant's motion on September 9, 2017.  ECF No. 82.  On September 19 and 20, Defendant made its first production in accordance with the Court's order.  The production contains thousands of emails and attachments, and Plaintiffs will require significant time to review it.  In addition, Plaintiffs anticipate taking the depositions of several custodians identified in Defendant's production after completing their review.

Defendant have also yet to produce call logs for the entire class period.[1]  Further, Defendant has not produced documents or a list sufficient to identify any numbers that it obtained through skip tracing.  Defendant has also yet to produce a list of all debtors in its accounts so that Plaintiffs can filter out the debtors and non-debtors for the purposes of providing class notice.  The Parties are currently meeting and conferring regarding each of these topics.  Due to Defendant's discovery practices to date in this case, Plaintiffs anticipate that further motion practice may be required. After these documents are obtained, Plaintiffs' experts will need significant time to update their expert disclosures (which were timely made on August 25, 2017).

Each of the named Plaintiffs have been deposed.  Defendant has indicated that it wishes to depose Plaintiffs' experts, and other potential third party witnesses.

---

[1] Defendant produced a one week sample early in the case.

**B.      Defendant's Statement**

Contrary to Plaintiffs' assertions, Defendant has not intentionally dragged its feet in discovery.  Rather, Defendant has served timely responses to each of Plaintiffs' first and second sets of written discovery requests.  As noted by Plaintiffs, the Parties have met and conferred extensively regarding these discovery requests and, to date, Defendant submits it has produced nearly 200 pages of documents, including all relevant collection account notes, company policies and procedures, telephone dialer manuals, and hospital records.  The only remaining issues related to these discovery requests involve the production of Defendant's emails and call logs, which are described in more detail below.

As to Plaintiffs' third set of written discovery requests, which were served by mail on August 25, 2017, Defendant plans on providing timely responses by no later than September 27, 2017.  These discovery requests include interrogatories and requests for production aimed at ascertaining potential class members.  For example, one interrogatory asks Defendant to identify all debtors (by name, account number, and telephone number) for the entire 5-year class period. Another asks Defendant to identify all telephone numbers which it obtained by skip-tracing during the 5-year class period.  Plaintiffs' accompanying document requests ask Defendant to produce all documents sufficient to identify all such persons.  In essence, Plaintiffs are requesting that Defendant identify every single collection account and produce a call log for every single call ever placed by Rash Curtis during the 5-year class period.  Given that a one-week sample call log contained more than 250,000 discrete telephone calls, Defendant anticipates that the universe of all calls placed by Rash Curtis during the 5-year class period exceeds 60,000,000 calls.  Although Defendant's counsel believed these issues were previously resolved during the Parties' previous meet and confer efforts, Plaintiffs' counsel recently changed courses and decided it wanted all telephone calls rather than the seven, one-month samples previously proposed by Plaintiff's counsel.  In response to Plaintiffs' demand, Defendant recently proposed that the Parties use sample call logs containing 50 calls per month or 600 calls per year.  This would give the Parties a more manageable database of approximately 3,000 total calls from which accurate estimates of the potential class size could be statistically extrapolated.

As noted above, Defendant has also recently produced more than 28,000 emails pursuant to this Court's discovery order dated August 18, 2017.  As conceded by Plaintiffs' counsel, this email production is extremely voluminous, and it will take some time for Defendant's counsel to properly review it all.  In order to comply with the Court's order without waiving any valid privileges, privacy objections, or other disclosure protections, the Parties recently entered into (and the Court signed) a Stipulated "Clawback" Agreement and F.R.E. 502 Order.

Based on a preliminary review, Defendant's counsel expects that many of the emails produced include attorney-client privileged information which will need to be returned to Defendant subject to the Parties' Stipulated "Clawback" Agreement and F.R.E. 502 Order.  In addition, many of the emails produced contain Defendant's confidential, trade-secret protected information (which is subject to the Parties' Stipulated Protective Order), such as its clients' Requests for Proposals, Defendant's responses thereto, etc.  Yet more of the emails produced contain the respective custodian's personal, medical, or financial information which is also subject to a plethora of privacy rights under common law, the California Constitution, and the Constitution of the United States.  Finally, many of the emails produced are simply irrelevant, including the various email advertisements sent by companies such as Expedia, Southwest Airlines, Yelp, etc.

As anticipated and argued by Defendant's counsel, the search terms proposed by Plaintiffs' counsel are grossly overbroad, and compliance with Plaintiffs' requests impose an undue expense and burden on Defendant and its counsel.  Nonetheless, Defendant's counsel anticipates that Plaintiffs' counsel will use the discovery hearing currently set for September 28, 2017 as a platform to request that further email searches be conducted by Defendant.  Without a doubt, these search terms will also be overbroad and return thousands upon thousands of irrelevant results, thereby imposing yet another undue burden and expense on Defendant.  Accordingly, Defendant recently requested that Plaintiffs at least share the cost of producing Defendant's electronically-stored information ("ESI").  If Plaintiffs' refuse Defendant's request, Defendant anticipates that it will be forced to request a fully-briefed motion for protective order related to shifting the cost-burden imposed on Defendant.  Defendant may also request a fully-briefed motion to compel given the serious manageability issues plaguing Plaintiffs' document production requests.

1   In addition to the issues described above, the Parties are also in the process of meeting and

2   conferring regarding the availability for the depositions of Defendant's custodians, Plaintiffs'

3   disclosed experts (Mr. Randall Snyder and Mr. Colin Weir) and other non-party, percipient

4   witnesses, including: (1) Ms. Adekoya's mother, Geraldine Caldwell; (2) Ms. Adekoya's

5   supervisor, Teresa Magtibay; and (3) Sutter General Hospital's purported debtor, Daniel Reynoso.

6   After originally demanding that Defendant would have to take Plaintiffs' experts' depositions on

7   the East Coast, Plaintiffs' counsel conceded that they needed to produce their experts in California,

8   and Defendant agreed to pay for their travel.  Unless unforeseen circumstances arise, Defendant

9   anticipates completing these depositions within the current discovery cut-off deadline of October

10  25, 2017.

11  9.  **Class Actions**

12  On September 6, 2017, the Court certified four classes pursuant to the TCPA (the "Skip-

13  Trace Class 1," "Skip-Trace Class 2," "Non-Debtor Class 1," and "Non-Debtor Class 2"),

14  appointed Plaintiffs Perez as class representative, and appointed Bursor & Fisher, P.A. as Class

15  Counsel.  ECF No. 81.

16  **A.   Defendant's Statement**

17  Following the anticipated deposition of Plaintiffs' expert, Mr. Randall Snyder, Defendant

18  intends on moving for de-certification on the grounds that there is no admissible evidence to

19  suggest Mr. Perez meets the definition of any of the certified classes.  As explained above, Mr.

20  Perez's cell phone number was _**not**_ skip-traced by Rash Curtis; rather, it was provided to Rash

21  Curtis by Sutter General Hospital when Sutter General Hospital referred Mr. Daniel Reynoso's

22  debt to Rash Curtis for collection.

23  **B.   Plaintiff's Statement**

24  Defendant had an opportunity to depose Mr. Snyder ever since Plaintiffs first filed his

25  report in support of Plaintiffs' motion for class certification on May 30, 2017.  Defendant chose not

26  to take his deposition in support of its opposition.  Defendant again chose to not take his deposition

27  in support of its surreply in support of its opposition.  Defendant's indication that it now wishes to

28  file a motion to decertify on the basis of Mr. Snyder's potential testimony is absurd.  Defendant's

proposal to have never-ending class certification briefing is on the one hand, understandable now that Defendant lost its bid to oppose class certification.  However, multiple "do-overs" regarding the same motion should not be permitted or encouraged, and does not promote the "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Plaintiffs oppose any request for decertification motion practice on the basis of old evidence that has been at Defendant's disposal since May 30, 2017, when Plaintiffs filed their motion for class certification.

10.    **Related Cases**

According to Defendant, none.  Plaintiffs note that it appears that Defendant has a number of pending TCPA, FDCPA, and Rosenthal Act actions pending against it.  However, to Plaintiffs' knowledge, class certification has not been granted in any other cases and such other cases appear to be at the pleading stage.

11.    **Relief**

A.    **Plaintiffs' Statement**

Plaintiffs seek (a) Injunctive relief prohibiting such violations of the TCPA, FDCPA, and the Rosenthal Act by Defendant in the future; (b) Plaintiffs seek for themselves and each member of the certified TCPA classes treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA; (c) Plaintiffs seek for themselves and each member of the certified TCPA classes $500.00 in statutory damages for each and every call that violated the TCPA; (d) an award of damages as permitted by the FDCPA; (e) and award of damages as permitted by the Rosenthal Act; (f) an award of attorneys' fees and costs to counsel for Plaintiffs and the certified classes; and (g) such other relief as the Court deems just and proper.

B.    **Defendant's Statement**

As to the TCPA, Defendant alleges that none of the Plaintiffs are entitled to relief because Rash Curtis' clients possessed "prior express consent" which Rash Curtis, in turn, obtained from its clients.  "Prior express consent" is a complete, affirmative defense to any TCPA claim.

Defendant further alleges that Mr. Perez lacks standing to assert any FDCPA or Rosenthal Act claims because he is allegedly a non-debtor.  In addition, Defendant alleges that none of the Plaintiffs are entitled to relief under the FDCPA or Rosenthal Act because Rash Curtis did not

1    engage in conduct the natural consequence of which was intended to harass, oppress, or annoy.

2    Rash Curtis did not call Plaintiffs' respective cell phones more than once per day or at hours that

3    were known to be inconvenient.  Simply put, the call volumes alleged do not constitute violations

4    of the FDCPA or Rosenthal Act – as a matter of law.

5         The key issues going forward as to Mr. Perez, the sole class representative as to the four

6    classes this Court has certified, are: (1) was his cell phone number skip-traced by Rash Curtis, and

7    did Rash Curtis use that skip-traced number to call him, or was his cell phone number provided by

8    Sutter General Hospital (mistakenly or not) when it referred Mr. Daniel Reynoso's debt to Rash

9    Curtis for collection; and (2) did Mr. Perez provide his cell phone number to Sutter General

10   Hospital thereby giving his consent to be called by Sutter General Hospital (or its agents) regarding

11   medical service-related issues, including payment.

12   12.  **Settlement and ADR**

13        The Parties filed a Stipulation Selecting ADR Process pursuant to Civil L.R. 16-8 and ADR

14   L.R. 3-5 on August 30, 2016.  *See* ECF Doc. 17.  The Parties agree to participate in a mediation

15   pursuant to ADR L.R. 6.  The Parties participated in a mediation on August 16, 2017 before Doug

16   deVries of Judicate West.  The mediation did not result in a settlement.  The Parties are amenable

17   to another mediation in the future.

18   13.  **Consent to Magistrate Judge For All Purposes**

19        The Parties do not consent to assignment of this case to a magistrate judge.

20   14.  **Other References**

21        The Parties do not believe the case is suitable for reference to binding arbitration, a special

22   master, or the Judicial Panel on Multidistrict Litigation at this time.

23   15.  **Narrowing of Issues**

24        The Parties do not see any issues that can be narrowed at this time.  The Parties will

25   continue to meet and confer about issues that can be narrowed.

26   16.  **Expedited Trial Procedure**

27        The Parties agree that this action cannot proceed on an expedited basis.

28

17.   **Scheduling**

In its October 7, 2016 Order, the Court set the following schedule:

| | |
|---|---|
| Expert Disclosures Served[2] | August 25, 2017 |
| Expert Discovery Cutoff | October 25, 2017 |
| Dispositive Motions/Daubert Motions to be Filed by | November 21, 2017 |

Due to outstanding discovery issues discussed above, the Parties suggest the following schedule:

| | |
|---|---|
| Amended Expert Designations Served[3] | December 12, 2017 |
| Rebuttal Expert Designation Served | January 9, 2018 |
| Discovery Cutoff | January 29, 2018 |
| Dispositive Motions/Daubert Motions | February 20, 2018 |

Defendant does not object to Plaintiffs' request to continue the deadlines listed above.

18.   **Trial**

Plaintiffs have demanded a jury trial, and expect the trial to last approximately one to two weeks.

Defendant has demanded a jury trial and expect the trial to last approximately two weeks.

19.   **Disclosure of Non-party Interested Entities or Persons**

The Parties have complied with Civil Local Rule 3-15 by filing a Certification of Interested Entities or Persons.

20.   **Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.   **Other Issues**

A.   **Defendant's Statement**

At this time, the main issues affecting the just, speedy, and inexpensive disposition of this matter involve Plaintiffs' requests for production of Defendant's ESI.  Defendant is chiefly

---

[2] Presumably due to clerical error, the Court only set a "Rebuttal Expert" disclosure deadline, but not an initial "Expert Disclosure" deadline.
[3] Plaintiffs made their initial expert disclosures on August 25, 2017.

1   concerned that the production of Defendant's emails, call logs, and collection accounts will be

2   incredibly onerous, burdensome, expensive, and time-consuming.  The precise costs of compiling,

3   reviewing, and producing the massive amounts of ESI requested by Plaintiffs are currently

4   unknown, but Defendant has already incurred thousands upon thousands of dollars in production

5   costs and attorneys' fees in connection with the recent email production.  That figure is expected to

6   continue multiplying as Defendant's counsel completes its review of the more than 28,000 emails

7   produced to date.  In short, the immense burden of complying with Plaintiffs' recent requests calls

8   into question the scope of the requests, the relative importance of the information sought with

9   respect to the key issues, and which of the Parties should bear the costs of production.

10          **B.      Plaintiffs' Statement**

11          Defendant has not offered any reason to think that discovery in this case is any more

12   burdensome or complicated than any other class action that has passed the class certification stage.

13   Without providing any evidence of the amount of costs or its burden, any complaints regarding

14   burden are conclusory.

15   Dated: September 25, 2017                    Respectfully submitted,

16                                               **BURSOR & FISHER, P.A.**

17                                               By:  ___*/s/ Yeremey Krivoshey*___
18                                                      Yeremey Krivoshey

19                                               L. Timothy Fisher (State Bar No. 191626)
                                                 Yeremey Krivoshey (State Bar No.295032)
20                                               1990 North California Blvd., Suite 940
                                                 Walnut Creek, CA  94596
21                                               Telephone: (925) 300-4455
                                                 Email:  ltfisher@bursor.com
22                                                         ykrivoshey@bursor.com

23                                               **BURSOR & FISHER, P.A.**
                                                 Scott A. Bursor (State Bar No. 276006)
24                                               888 Seventh Avenue
                                                 New York, NY  10019
25                                               Telephone: (212) 989-9113
                                                 Facsimile:  (212) 989-9163
26                                               E-Mail: scott@bursor.com

27
                                                 *Attorneys for Plaintiffs*
28

---

1    Dated:  September 25, 2017        **ELLIS LAW GROUP LLP**

2

3    By: */s/ Anthony P.J. Valenti*
             Anthony P.J. Valenti

4    Mark E. Ellis (State Bar No. 127159)
    Anthony P.J. Valenti (State Bar No. 127159)

5    740 University Avenue, Suite 100
    Sacramento, CA 95825

6    Tel: (916) 283-8820
    Fax: (916) 283-8821

7    Email: mellis@ellislawgrp.com
           avalenti@ellislawgrp.com

8

9    *Attorneys for Defendant*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28