Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP, LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Defendant RASH CURTIS & ASSOCIATES

DISTRICT COURT FOR THE STATE OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]**<br><br>Date: January 30, 3018<br>Time: 2:00 P.M.<br>Crtm: 1<br>Judge: Yvonne Gonzalez Rogers |

I, Bob Keith, declare that:

1. I am Executive Vice President at Rash Curtis & Associates. I have been in the collection business for over 20 years. I have been employed at Rash Curtis for over 10 years in several capacities, including Collection Manager, and, for the last several years, as Executive Vice President of Operations. I am familiar with the collection policies and procedures used by Rash Curtis during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra McMillion, Jessica Adekoya and Ignacio Perez. I have personally reviewed Rash Curtis' collection notes/business records reflecting Rash Curtis' collection activities and communications as to each Plaintiff. I have also reviewed the materials provided to Rash Curtis by its creditor-clients at the times the relevant accounts here were assigned to Rash Curtis for collection. I have also spoken with various managers at Rash Curtis, including Nick Keith and Dan Correa, from

- 1 -

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

Rash Curtis' Internet Technology and Collection Departments, respectively, to assist me in my review and understanding of the business records and collection policies and procedures. Finally, I have personally reviewed other records and information stored in Rash Curtis' electronic collection files as to each named Plaintiff – all of these file materials are kept by Rash Curtis in its ordinary course of its business. Based upon my knowledge of Rash Curtis' collection practices and my review of its business/collection files, I have personal knowledge of the facts stated herein, and I am competent to testify thereto if called as a witness at trial. I offer this sworn declaration in support of Rash Curtis' Motion for Summary Judgment as to each Plaintiff.

2. **Exhibit 3** to Defendant's Master List of Exhibits is a true and correct copy of Rash Curtis' collection notes reflecting its collection attempts as to Sandra McMillion. These collection notes are business records created and stored in Rash Curtis' collection software as part its regular course of business. Each of the entries or notations was created contemporaneously, by Rash Curtis' collection software or by its collectors, with the events noted. These collection notes/business records reflect every phone call placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software generates a record of when a call is placed by Rash Curtis. Rash Curtis' collectors are both trained and required by company policy to invariably and accurately document their collection efforts, including the substance of their conversations with debtors. My review of Rash Curtis' records show it did not obtain Ms. McMillion's cell phone number ending in 0589 by skip tracing. Rather the cell phone was obtained by Rash Curtis from its creditor client, Marin General Hospital, at the times it referred Ms. McMillion's various accounts to Rash Curtis for collection.

3. **Exhibit 4** to Defendant's Master List of Exhibits include true and correct copies of Ms. McMillion's medical records which Marin General Hospital ("MGH") provided to Rash Curtis when it assigned Sandra McMillion's debts for collection. These records document that Ms. McMillion voluntarily provided her cell phone number ending in 0589 to MGH related to medical services on at least five separate occasions, including on June 28, 2015, July 1, 2015, July 30, 2015, September 2, 2015 and October 1, 2015. My review of Rash Curtis' records confirms Rash Curtis did not obtain her

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

cell phone number ending in 0589 by skip-tracing; rather her phone number was supplied by MGH at the time of the assignments.

4. **Exhibit 6** to Defendant's Master List of Exhibits contains Rash Curtis' collection notes reflecting its collection communications to Jessica Adekoya related to collection attempts for the debt she incurred on behalf of her minor son, Adeleke. As stated above, these business records were generated and saved stored in the ordinary course of business and were made contemporaneously with the events reflected therein.

5. **Exhibit 7** to Defendant's Master List of Exhibits contains a true and correct copy of Rash Curtis' collection notes for Geraldine Caldwell, the mother of Ms. Adekoya. These collection notes/business records are kept in the ordinary course of business and reflect the phone calls placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software automatically records when a call is placed by Rash Curtis' or received. Rash Curtis' collectors are both trained and required by company policy to invariably document all of their collection communications accurately, including the substance of their conversations with debtors.

6. **Exhibit 8** to Defendant's Master List of Exhibits contains true and correct copies of Adeleke Adekoya's medical records from Doctors Medical Center ("DMC"). Adeleke is Ms. Adekoya's son. These records were provided to Rash Curtis by DMC when it assigned her account to Rash Curtis for collection and are kept in the ordinary course of business. These records indicate that Ms. Adekoya, provided her phone number ending in 5496, without restriction, to DMC in connection with her son's treatment. DMC, in turn, provided that phone number to Rash Curtis at the time of its referral of Ms. Adekoya's debt for collection. My review of the records confirms Rash Curtis did not obtain Adekoya's phone number ending in 5496 by skip tracing.

7. **Exhibit 9** to Defendant's Master List of Exhibits contains true and correct copies of Jessica Adekoya's medical records from DMC. These records were provided to Rash Curtis by DMC, are kept in the ordinary course of business by Rash Curtis, and indicate that Ms. Adekoya, provided her phone number ending in 5496, without restriction, to DMC in connection with her own treatment. DMC, in turn, provided that phone number to Rash Curtis.

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

8.  **Exhibit 10** to Defendant's Master List of Exhibits contains true and correct copies of Geraldine Caldwell's medical records from DMC. These records were provided to Rash Curtis by DMC, have been kept in the ordinary course of business by Rash Curtis, and they indicate that Ms. Caldwell's daughter, Jessica Adekoya, is listed as a contact.

9.  **Exhibit 14** to Defendant's Master List of Exhibits is a screenshot of an "ECA Advanced Trace Report" which Rash Curtis obtained on Ms. Adekoya. Rash Curtis uses "ECA Advanced Trace Reports," which it obtains from Experian to "fill in the blanks" as to demographic information it may be missing as to particular debtors. The screenshot here does not show or reflect a cell phone number ending in 5496. This means Rash Curtis did not obtain the cell phone number ending in 5496 by skip tracing. If the number had been skip traced, it would be listed on this report.

10. **Exhibit 15** to Defendant's Master List of Exhibits contains true and correct copies of Rash Curtis' collection notes as to debtor Daniel Reynoso. These collection notes are created and stored by Rash Curtis' collection software as part of its regular business practices, and each of the entries therein is created contemporaneously, as discussed above, at the time of the events noted, and the system is designed for accuracy and the collectors are also so trained.

11. **Exhibit 16** to Defendant's Master List of Exhibits contains true and correct copies of Daniel Reynoso's medical records from Sutter General Hospital. These records were provided to Rash Curtis by Sutter General Hospital when it assigned Mr. Reynoso's account to Rash Curtis for collection, and have been kept in the ordinary course of business by Rash Curtis. The records show that Mr. Reynoso provided his phone number ending in 5193, with no restrictions, to Sutter General Hospital in connection with his treatment. Sutter General Hospital, in turn, provided that phone number to Rash Curtis in connection with its referral to Rash Curtis of Daniel Reynoso's debt for collection. My review of the records confirm Rash Curtis did not skip-trace Reynoso's phone number to obtain the number ending in 5193.

12. **Exhibit 18** to Defendant's Master List of Exhibits is a screenshot of an "ECA Advanced Trace Report" which Rash Curtis obtained from Experian on Reynoso. It does not show a phone number ending in 5193. These records are generated and kept in the ordinary course of

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

business. The absence of the phone number ending in 5193 on this report means Rash Curtis did not obtain the phone number it called ending in 5193, by skip tracing.

13. **Exhibit 19** to Defendant's Master List of Exhibits is a screenshot of a so-called "Edit Tracking Report" for Daniel Reynoso's account. This record is generated and kept by Rash Curtis in the ordinary course of its business. This edit tracking report details that on June 7, 2016, at 3:27 p.m., the phone number ending in 5193 was removed from Rash Curtis' database. If one of Rash Curtis' collection employees had manually added the phone number ending in 5193 to Reynoso's account, it would be shown on this report as a "new value;" however, it does not. This also confirms the phone number ending in 5193 was provided to Rash Curtis by Sutter General Hospital when it electronically assigned Reynoso's debt to Rash Curtis for collection and not added by skip-tracing. This document establishes that Rash Curtis did not skip-trace the phone number ending in 5193; rather, it was provided to Rash Curtis by its creditor-client, Sutter General Hospital, when Rash Curtis received the debt referral.

14. **Exhibit 20** is Rash Curtis' Abbreviations Key and provides the list of abbreviations which Rash Curtis' collection employees are trained to use when manually entering notes on a debtor's account. This document was provided during discovery pursuant to the court's order so that the collection notes mentioned above, at Exhibits 3, 6, 7 and 15, could be more easily interpreted.

15. **Exhibit 21** is a letter from Plaintiffs' counsel to Rash Curtis and associates and purports to serve as a "cease and desist" request made by Plaintiffs' counsel on behalf of Ms. McMillion. The letter is dated March 4, 2016 and was provided by Plaintiffs' counsel to Rash Curtis and is kept in the ordinary course of business. My review of Rash Curtis' collection notes confirms this is the first written "cease and desist" request which Rash Curtis received from Ms. McMillion. The letter indicates it was received by Rash Curtis on March 9, 2016.

16. Ms. McMillion was treated on various dates by various health care providers for which she was charged. Ms. McMillion did not fully pay for treatment, and her *multiple collection accounts* were sent to Rash Curtis for collection by Marin General Hospital.

17. Rash Curtis' collection notes indicate it really only spoke with Ms. McMillion on only two occasions. I understand Ms. McMillion has testified she may have spoken with Rash Curtis

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

collectors numerous times in 2016. This is categorically untrue. Rash Curtis records demonstrate it spoke with her on only two occasions on February 2 and 17, 2016, and never thereafter.

18. Rash Curtis was provided Ms. McMillion's cell phone number ending in 0589 on December 17, 2015, when our client (and Ms. McMillion's creditor), Marin General Hospital, referred two Accounts (Nos. 2578480 and 2578480) to Rash Curtis for collection. Rash Curtis began calling Ms. McMillion's cell phone number ending in 0589 on December 23, 2015. Rash Curtis called Ms. McMillion again on December 24, 2015; it spoke to an unidentified woman who stated she was a "representative" of Ms. McMillion and wanted to know about the nature of the call. The Rash Curtis collector properly terminated the call without providing any information because the call recipient could not be positively identified as the debtor herself, and the FDCPA prohibits a collection agency from talking to a third party about the debtor's account, except in certain specified situations.

19. Despite calling the 0589 number a number of times between December 24, 2015 and February 2, 2016 (a period of 40 days), Rash Curtis was never able to actually communicate orally with Ms. McMillion in person. Our attempts to call were not intended to harass her, but to talk to her.

20. At 4:00 p.m. on February 2, 2016, Rash Curtis left a voice message on Ms. McMillion's cell phone number ending in 0589. Thirty minutes later, Ms. McMillion called into Rash Curtis and orally requested that Rash Curtis stop calling her. Rash Curtis honored Ms. McMillion's oral cease-and-desist request and made no further calls to her *on that account* between February 2, 2016 and February 15, 2016.

21. However, on February 15, 2016, MGH referred to Rash Curtis a new McMillion medical account (No. 2603552) for collection for medical services rendered to Ms. McMillion on September 2, 2015. That account also showed Ms. McMillion's cell phone number ending in 0589 had been provided to MGH on the September 2, 2015 date of service.

22. The next day, February 16, 2016, Rash Curtis called Ms. McMillion's cell phone number at 8:09 a.m. *on this new and different collection account*, but was unable to reach her. Rash Curtis called her again on Account No. 2603552 on the following day, February 17, 2016. This time, Rash Curtis was able to reach Ms. McMillion. She cut off our collector while receiving the "mini-Miranda" admonition by making an oral cease-and-desist request. Rash Curtis terminated the call, and

- 6 -

placed no further calls to her *on this account* (No. 2603552). I have reviewed our collection notes as to Ms. McMillion; all of the phone calls were made between 8:00 a.m. and 9:00 p.m. Virtually all of our attempts to talk with her were unsuccessful.

23. As shown by Rash's records, on January 5, 2015, Ms. Adekoya took her minor son, Adeleke Adekoya, to Doctors Medical Center ("DMC") in San Pablo, California. As shown in our records, Ms. Adekoya provided her cell phone number ending in 5496 to DMC, and listed herself as her son's contact, during this visit. Ms. Adekoya ultimately became indebted in connection with the medical services DMC rendered to her son. This debt (No. 2446237) for Adekoya's son's treatment, was referred to Rash Curtis for collection on May 14, 2015. The records also show Ms. Adekoya personally sought treatment at DMC in 2015, and she *voluntarily* provided her cell phone number ending in 5496. Rash Curtis was provided with the cell phone number she had provided to DMC when DMC referred her son's debt (No. 2446237) for collection on May 14, 2015. From May 15, 2015, to March 10, 2016, the collection notes indicate that despite numerous attempts to reach her, it was unsuccessful in reaching Ms. Adekoya by phone. Our repeated attempts to reach her were not for purposes of harassment, but to talk to her. On March 10, 2016, Ms. Adekoya finally answered her cell phone; she told the Rash Curtis representative that she was in a "hurry" because she was at work, and she asked the representative to email her at an email address she provided. Between March 14 and March 16, 2016, Rash Curtis placed three more calls to Ms. Adekoya's cell phone, but, again, was unable to reach her. Our notes reflect our collectors made attempts to talk to Ms. Adekoya's mother, Geraldine Denise Caldwell, about her own debt at the same phone number ending in 5496.

24. On March 16, 2016, Rash Curtis' collection notes indicate it called Ms. Adekoya at her work number ending in 9400. Ms. Adekoya orally told Rash Curtis not to call her work number ending in 9400; she did not tell Rash Curtis to cease calling the 5496 number. Rash Curtis' notes demonstrate Rash Curtis honored Ms. Adekoya's request, removed her work number ending in 9400, and placed no further calls to that number. On April 18, 2016, at 6:40 p.m., the collection notes indicate Rash Curtis received a cease and desist as to the number ending in 5496 from Ms. Adekoya, and the notes establish Rash Curtis never called that number again. My review of the collection notes confirms all of the calls were made between 8:00 a.m. and 9:00 p.m.

25. On May 7, 2015, Sutter General Hospital referred the collection account of Daniel Reynoso to Rash Curtis. A review of our records demonstrates Reynoso had provided a cell phone ending in 5193 to Sutter, which, in turn, provided the number to Rash Curtis when it assigned his account for collection. Ancillary business records associated with Mr. Reynoso's account at Rash Curtis, such as an ECA Edit Tracking Report, fail to show the 5193 number as a listed number; this means it was not skip traced and only was obtained from Sutter.

26. On June 7, 2016, Rash Curtis talked with Mr. Perez for the first and only time. Perez told Rash Curtis he was not the debtor they were looking for, and Rash Curtis never called him again. Our internal business records and collection notes indicate Mr. Perez's number ending in 5193 was removed from Rash Curtis' records on June 7, after it talked with Perez, so it could not be called.

27. Rash Curtis' collection records clearly indicate that for each actual conversation it had with Ms. McMillion, Ms. Adekoya, or Mr. Perez, Rash Curtis first "qualified" the call recipient, *i.e.*, it confirmed the person on the phone was the debtor, and then provided the "mini-Miranda" warning that the caller was a debt collector and that any information provided would be used for the purpose of collecting debts. My review of the collection notes confirms Mr. Perez was only called between 8:00 a.m. and 9:00 p.m.

28. Rash Curtis' training of its collection employees includes how to properly skip-trace a debtor's contact information, and how to note in the debtor's file any skip traced, newly-discovered information related to a debtor's account file. For example, Rash Curtis' employees are trained to place numbers obtained from creditors, who have in turn been provided the numbers from debtors, into Rash Curtis' database in phone fields 1 to 4; these numbers obtained by Rash Curtis' clients are also placed in phone fields 1 to 4. Only these numbers are dialed using a dialer technology or other software; Rash Curtis' collectors are also trained that skip-traced phone numbers or numbers obtained from other third party sources are to be placed in phone fields 5 and above within Rash Curtis' collection software database. These "higher" fields are not used when Rash Curtis loads phone numbers into its dialing software in order to avoid calling a cell phone number for which it does not have consent.

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Vacaville, California, on December 11, 2017.

By: _____
Bob Keith
Vice President of Operations

DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [FRCP 56(c)]