Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP, LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Defendant RASH CURTIS & ASSOCIATES

DISTRICT COURT FOR THE STATE OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**DECLARATION OF BOB KEITH IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br>**[FED. R. CIV. P. 56]**<br><br>Date: January 30, 3018<br>Time: 2:00 P.M.<br>Crtm: 1<br>Judge: Yvonne Gonzalez Rogers |

I, Bob Keith, declare that:

1.      I am Vice President of Operations at Rash Curtis & Associates.  I have been in the collection business for over 28 years.  I have been employed at Rash Curtis for over 10 years in several capacities, including Collection Manager, and, for the last several years, as Vice President of Operations.  I am familiar with the collection policies and procedures used by Rash Curtis during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra McMillion, Jessica Adekoya and Ignacio Perez.  I have personally reviewed Rash Curtis' collection notes/business records reflecting Rash Curtis' collection activities and communications as to each Plaintiff.  I have also reviewed the materials provided to Rash Curtis by its creditor-clients at the times the relevant accounts here were assigned to Rash Curtis for collection.  I have also spoken with various managers at Rash Curtis, including Nick Keith and Dan Correa, from

- 1 -

Rash Curtis' Internet Technology and Collection Departments, respectively, to assist me in my review and understanding of the business records and collection policies and procedures. Finally, I have personally reviewed other records and information stored in Rash Curtis' electronic collection files as to each named Plaintiff – all of these file materials are kept by Rash Curtis in its ordinary course of its business. Based upon my knowledge of Rash Curtis' collection practices and my review of its business/collection files, I have personal knowledge of the facts stated herein, and I am competent to testify thereto if called as a witness at trial. I offer this sworn declaration in support of Rash Curtis' Opposition to Plaintiffs' Motion for Partial Summary Judgment.

2.   **Exhibit 3** to Defendant's Master List of Exhibits is a true and correct copy of Rash Curtis' collection notes reflecting its collection attempts as to Sandra McMillion. These collection notes are business records created and stored in Rash Curtis' collection software as part its regular course of business. Each of the entries or notations was created contemporaneously, by Rash Curtis' collection software or by its collectors, with the events noted. These collection notes/business records reflect every phone call placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software generates a record of when a call is placed by Rash Curtis. Rash Curtis' collectors are both trained and required by company policy to invariably and accurately document their collection efforts, including the substance of their conversations with debtors. My review of Rash Curtis' records show it did not obtain Ms. McMillion's cell phone number ending in 0589 by skip tracing. Rather the cell phone was obtained by Rash Curtis from its client, Marin General Hospital, at the times it referred Ms. McMillion's various accounts to Rash Curtis for collection. Moreover, the records demonstrate and confirm that Ms. McMillion had several collection accounts referred to Rash Curtis by her creditor, Marin General Hospital.

3.   **Exhibit 4** to Defendant's Master List of Exhibits include true and correct copies of Ms. McMillion's medical records which Marin General Hospital ("MGH") provided to Rash Curtis when it assigned Sandra McMillion's debts for collection. These records document that Ms. McMillion voluntarily provided her cell phone number ending in 0589 to MGH related to medical services on at least five separate occasions, including on June 28, 2015, July 1, 2015, July 30, 2015, September 2,

- 2 -

2015 and October 1, 2015. My review of Rash Curtis' records confirms Rash Curtis did not obtain her cell phone number ending in 0589 by skip-tracing; rather her phone number was supplied by MGH at the time of the assignments.

4. **Exhibit 6** to Defendant's Master List of Exhibits contains Rash Curtis' collection notes reflecting its collection communications to Jessica Adekoya related to collection attempts for the debt she incurred on behalf of her minor son, Adeleke. As stated above, these business records were generated and saved stored in the ordinary course of business and were made contemporaneously with the events reflected therein.

5. **Exhibit 7** to Defendant's Master List of Exhibits contains a true and correct copy of Rash Curtis' collection notes for Geraldine Caldwell, the mother of Ms. Adekoya. These collection notes/business records are kept in the ordinary course of business and reflect the phone calls placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software automatically records when a call is placed by Rash Curtis' or received. Rash Curtis' collectors are both trained and required by company policy to invariably document all of their collection communications accurately, including the substance of their conversations with debtors.

6. **Exhibit 8** to Defendant's Master List of Exhibits contains true and correct copies of Adeleke Adekoya's medical records from Doctors Medical Center ("DMC"). Adeleke is Ms. Adekoya's son. These records were provided to Rash Curtis by DMC when it assigned her account to Rash Curtis for collection and are kept in the ordinary course of business. These records indicate that Ms. Adekoya, provided her phone number ending in 5496, without restriction, to DMC in connection with her son's treatment. DMC, in turn, provided that phone number to Rash Curtis at the time of its referral of Ms. Adekoya's debt for collection. My review of the records confirms Rash Curtis did not obtain Adekoya's phone number ending in 5496 by skip tracing.

7. **Exhibit 9** to Defendant's Master List of Exhibits contains true and correct copies of Jessica Adekoya's medical records from DMC. These records were provided to Rash Curtis by DMC, are kept in the ordinary course of business by Rash Curtis, and indicate that Ms. Adekoya, provided

1 her phone number ending in 5496, without restriction, to DMC in connection with her own treatment.

2 DMC, in turn, provided that phone number to Rash Curtis.

3     8.    **Exhibit 10** to Defendant's Master List of Exhibits contains true and correct copies of

4 Geraldine Caldwell's medical records from DMC. These records were provided to Rash Curtis by

5 DMC, have been kept in the ordinary course of business by Rash Curtis, and they indicate that Ms.

6 Caldwell's daughter, Jessica Adekoya, is listed as a contact.

7     9.    **Exhibit 14** to Defendant's Master List of Exhibits is a screenshot of an "ECA

8 Advanced Trace Report" which Rash Curtis obtained on Ms. Adekoya. Rash Curtis uses "ECA

9 Advanced Trace Reports," which it obtains from Experian to "fill in the blanks" as to demographic

10 information it may be missing as to particular debtors. The screenshot here does not show or reflect a

11 cell phone number ending in 5496. This means Rash Curtis did not obtain the cell phone number

12 ending in 5496 by skip tracing. If the number had been skip traced, it would be listed on this report.

13     10.    **Exhibit 15** to Defendant's Master List of Exhibits contains true and correct copies of

14 Rash Curtis' collection notes as to debtor Daniel Reynoso. These collection notes are created and

15 stored by Rash Curtis' collection software as part of its regular business practices, and each of the

16 entries therein is created contemporaneously, as discussed above, at the time of the events noted, and

17 the system is designed for accuracy and the collectors are also so trained.

18     11.    **Exhibit 16** to Defendant's Master List of Exhibits contains true and correct copies of

19 Daniel Reynoso's medical records from Sutter General Hospital. These records were provided to Rash

20 Curtis by Sutter General Hospital when it assigned Mr. Reynoso's account to Rash Curtis for

21 collection, and have been kept in the ordinary course of business by Rash Curtis. The records show

22 that Mr. Reynoso provided his phone number ending in 5193, with no restrictions, to Sutter General

23 Hospital in connection with his treatment. Sutter General Hospital, in turn, provided that phone

24 number to Rash Curtis in connection after its referral to Rash Curtis of Daniel Reynoso's debt for

25 collection. My review of the records confirm Rash Curtis did not skip-trace Reynoso's phone number

26 to obtain the number ending in 5193.

27     12.    **Exhibit 18** to Defendant's Master List of Exhibits is a screenshot of an "ECA

28 Advanced Trace Report" which Rash Curtis obtained from Experian on Reynoso. It does not show a

- 4 -

phone number ending in 5193. These records are generated and kept in the ordinary course of business. The absence of the phone number ending in 5193 on this report means Rash Curtis did not obtain the phone number it called ending in 5193, by skip tracing.

13. **Exhibit 19** to Defendant's Master List of Exhibits is a screenshot of a so-called "Edit Tracking Report" for Daniel Reynoso's account. This record is generated and kept by Rash Curtis in the ordinary course of its business. This edit tracking report details that on June 7, 2016, at 3:27 p.m., the phone number ending in 5193 was removed from Rash Curtis' database. If one of Rash Curtis' collection employees had manually added the phone number ending in 5193 to Reynoso's account, it would be shown on this report as a "new value;" however, it does not. This also confirms the phone number ending in 5193 was provided to Rash Curtis by Sutter General Hospital when it electronically assigned Reynoso's debt to Rash Curtis for collection and not added by skip-tracing. This document establishes that Rash Curtis did not skip-trace the phone number ending in 5193; rather, it was provided to Rash Curtis by its creditor-client, Sutter General Hospital, when Rash Curtis received the debt referral.

14. **Exhibit 20** is Rash Curtis' Abbreviations Key and provides the list of abbreviations which Rash Curtis' collection employees are trained to use when manually entering notes on a debtor's account. This document was provided during discovery pursuant to the court's order so that the collection notes mentioned above, at Exhibits 3, 6, 7 and 15, could be more easily interpreted.

15. **Exhibit 21** is a letter from Plaintiffs' counsel to Rash Curtis and associates and purports to serve as a "cease and desist" request made by Plaintiffs' counsel on behalf of Ms. McMillion. The letter is dated March 4, 2016 and was provided by Plaintiffs' counsel to Rash Curtis and is kept in the ordinary course of business. My review of Rash Curtis' collection notes confirms this is the first written "cease and desist" request which Rash Curtis received from Ms. McMillion. The letter indicates it was received by Rash Curtis on March 9, 2016.

16. Ms. McMillion was treated on various dates by various health care providers for which she was charged. Ms. McMillion did not fully pay for treatment, and her *multiple collection accounts* were sent to Rash Curtis for collection by Marin General Hospital.

- 5 -

17.     Rash Curtis' collection notes indicate it really only spoke with Ms. McMillion on only two occasions.  I understand Ms. McMillion has testified she may have spoken with Rash Curtis collectors numerous times in 2016. This is categorically untrue.  Rash Curtis records demonstrate it spoke with her on only two occasions on February 2 and 17, 2016, and never thereafter.

18.     Rash Curtis was provided Ms. McMillion's cell phone number ending in 0589 on December 17, 2015, when our client (and Ms. McMillion's creditor), Marin General Hospital, referred two Accounts (Nos. 2578480 and 2578480) to Rash Curtis for collection.  Rash Curtis began calling Ms. McMillion's cell phone number ending in 0589 on December 23, 2015.  Rash Curtis called Ms. McMillion again on December 24, 2015; it spoke to an unidentified woman who stated she was a "representative" of Ms. McMillion and wanted to know about the nature of the call.  The Rash Curtis collector properly terminated the call without providing any information because the call recipient could not be positively identified as the debtor herself, and the FDCPA prohibits a collection agency from talking to a third party about the debtor's account, except in certain specified situations.

19.     Despite calling the 0589 number a number of times between December 24, 2015 and February 2, 2016 (a period of 40 days), Rash Curtis was never able to actually communicate orally with Ms. McMillion in person.  Our attempts to call were not intended to harass her, but to talk to her.

20.     At 4:00 p.m. on February 2, 2016, Rash Curtis left a voice message on Ms. McMillion's cell phone number ending in 0589.  Thirty minutes later, Ms. McMillion called into Rash Curtis and orally requested that Rash Curtis stop calling her.  Rash Curtis honored Ms. McMillion's oral cease-and-desist request and made no further calls to her *on that account* between February 2, 2016 and February 15, 2016.

21.     However, on February 15, 2016, MGH referred to Rash Curtis a new McMillion medical account (No. 2603552) for collection for medical services rendered to Ms. McMillion on September 2, 2015.  That account also showed Ms. McMillion's cell phone number ending in 0589 had been provided to MGH on the September 2, 2015 date of service.

22.     The next day, February 16, 2016, Rash Curtis called Ms. McMillion's cell phone number at 8:09 a.m. *on this new and different collection account*, but was unable to reach her.  Rash Curtis called her again on Account No. 2603552 on the following day, February 17, 2016.  This time,

- 6 -

Rash Curtis was able to reach Ms. McMillion. She cut off our collector while receiving the "mini-Miranda" admonition by making an oral cease-and-desist request. Rash Curtis terminated the call, and placed no further calls to her *on this account* (No. 2603552). I have reviewed our collection notes as to Ms. McMillion; all of the phone calls were made between 8:00 a.m. and 9:00 p.m. Virtually all of our attempts to talk with her were unsuccessful.

23.     As shown by Rash's records, on January 5, 2015, Ms. Adekoya took her minor son, Adeleke Adekoya, to Doctors Medical Center ("DMC") in San Pablo, California. As shown in our records, Ms. Adekoya provided her cell phone number ending in 5496 to DMC, and listed herself as her son's contact, during this visit. Ms. Adekoya ultimately became indebted in connection with the medical services DMC rendered to her son. This debt (No. 2446237) for Adekoya's son's treatment, was referred to Rash Curtis for collection on May 14, 2015. The records also show Ms. Adekoya personally sought treatment at DMC in 2015, and she *voluntarily* provided her cell phone number ending in 5496. Rash Curtis was provided with the cell phone number she had provided to DMC when DMC referred her son's debt (No. 2446237) for collection on May 14, 2015. From May 15, 2015, to March 10, 2016, the collection notes indicate that despite numerous attempts to reach her, it was unsuccessful in reaching Ms. Adekoya by phone. Our repeated attempts to reach her were not for purposes of harassment, but to talk to her. On March 10, 2016, Ms. Adekoya finally answered her cell phone; she told the Rash Curtis representative that she was in a "hurry" because she was at work, and she asked the representative to email her at an email address she provided. Between March 14 and March 16, 2016, Rash Curtis placed three more calls to Ms. Adekoya's cell phone, but, again, was unable to reach her. Our notes reflect our collectors made attempts to talk to Ms. Adekoya's mother, Geraldine Denise Caldwell, about her own debt at the same phone number ending in 5496.

24.     On March 16, 2016, Rash Curtis' collection notes indicate it called Ms. Adekoya at her work number ending in 9400. Ms. Adekoya orally told Rash Curtis not to call her work number ending in 9400; she did not tell Rash Curtis to cease calling the 5496 number. Rash Curtis' notes demonstrate Rash Curtis honored Ms. Adekoya's request, removed her work number ending in 9400, and placed no further calls to that number. On April 18, 2016, at 6:40 p.m., the collection notes indicate Rash Curtis received a cease and desist as to the number ending in 5496 from Ms. Adekoya,

- 7 -

and the notes establish Rash Curtis never called that number again. My review of the collection notes confirms all of the calls were made between 8:00 a.m. and 9:00 p.m.

25. On May 7, 2015, Sutter General Hospital referred the collection account of Daniel Reynoso to Rash Curtis. A review of our records demonstrates Reynoso had provided a cell phone ending in 5193 to Sutter, which, in turn, provided the number to Rash Curtis when it assigned his account for collection. Ancillary business records associated with Mr. Reynoso's account at Rash Curtis, such as an ECA Edit Tracking Report, fail to show the 5193 number as a listed number; this means it was not skip traced and only was obtained from Sutter.

26. On June 7, 2016, Rash Curtis talked with Mr. Perez for the first and only time. Perez told Rash Curtis he was not the debtor they were looking for, and Rash Curtis never called him again. Our internal business records and collection notes indicate Mr. Perez's number ending in 5193 was removed from Rash Curtis' records on June 7, after it talked with Perez, so it could not be called.

27. Rash Curtis' collection records clearly indicate that for each actual conversation it had with Ms. McMillion, Ms. Adekoya, or Mr. Perez, Rash Curtis first "qualified" the call recipient, *i.e.,* it confirmed the person on the phone was the debtor, and then provided the "mini-Miranda" warning that the caller was a debt collector and that any information provided would be used for the purpose of collecting debts. My review of the collection notes confirms Mr. Perez was only called between 8:00 a.m. and 9:00 p.m.

28. Rash Curtis' training of its collection employees includes how to properly skip-trace a debtor's contact information, and how to note in the debtor's file any skip traced, newly-discovered information related to a debtor's account file. For example, Rash Curtis' employees are trained to place numbers obtained from creditors, who have in turn been provided the numbers from debtors, into Rash Curtis' database in phone fields 1 to 4; these numbers obtained by Rash Curtis' clients are also placed in phone fields 1 to 4. Only these numbers are dialed using a dialer technology or other software; Rash Curtis' collectors are also trained that skip-traced phone numbers or numbers obtained from other third party sources are to be placed in phone fields 5 and above within Rash Curtis' collection software database. These "higher" fields are not used when Rash Curtis loads phone

- 8 -

numbers into its dialing software in order to avoid calling a cell phone number for which it does not have consent.

29. **Exhibit 22** to Defendant's Master List of Exhibits is a true and correct copy of an excerpt from Rash Curtis' collection notes which reflects the referral of a new collection account from Marin General Hospital to Rash Curtis (Account 2763532) on December 13, 2016. This account was for a debt owed by Ms. McMillion to Marin General Hospital in connection with Ms. McMillion's June 27, 2016 date of service. My review of Rash Curtis' other supplemental collection notes and business records indicate that, in addition to Account 276353, Marin General Hospital referred Rash Curtis an additional six accounts owed by Ms. McMillion since this lawsuit was filed. **Exhibit 22** is now being produced because of the new claim being asserted as to collection calls made in 2017. Rash Curtis did not understand these calls were at issue in this case. My review of the TCN call logs produced by Rash Curtis indicate that the January 25, 2017 calls to Ms. McMillion were made in reference to Account 2763532, and not in reference to any of her prior accounts on which she purportedly revoked her prior express consent.

30. **Exhibit 23** to Defendant's Master List of Exhibits are true and correct copies of Ms. McMillion's medical records from Marin General Hospital provided by Marin General Hospital to Rash Curtis when it sent these new collection accounts. The records indicate that Ms. McMillion was admitted to Marin General Hospital on June 27, 2016, and she provided her cell phone number ending in 0589 on that visit. The records further indicate that Ms. McMillion signed Marin General Hospital's Conditions of Admission form on June 27, 2016, agreeing to "promptly pay all hospital bills..." Finally, the records indicate that, Ms. McMillion continued to provide her cell phone number ending in 0589 to Marin General Hospital even after this lawsuit was filed, such as on June 27, 2016, and again on November 15, 2016.

31. **Exhibit 28** to Defendant's Master List of Exhibits are true and correct copies of Rash Curtis' initial document production in response to Plaintiffs' first set of requests for production of documents which were produced on October 24, 2016. Within these documents are the redacted collection notes for Ms. Caldwell's debt (Account 1993006). These collection notes indicate that Rash Curtis made calls to the cell phone number ending in 5496 in connection with Ms. Adekoya's mother's

- 9 -

(Ms. Caldwell's) account between January 8, 2014 and January 11, 2014. My review of the call logs produced by Rash Curtis indicate that the January 8, 2014 call was placed before Rash Curtis requested a skip-tracing report on Ms. Caldwell. Rash Curtis, therefore, must have necessarily received the 5496 number when Doctors Medical Center referred the Account 1993006 to Rash Curtis on January 8, 2014. My review of the Global Connect call logs confirms that the January 2014 phone calls were made in reference to Account 1993006, and not in reference to Ms. Adekoya's debt (Account 2446237). Likewise, the phone calls placed on April 27, 2016 and April 28, 2016 were also made in reference to Account 1993006, not Account 2446237.

32. During the relevant time periods of the class, including during the collection communications made by Rash Curtis to Plaintiffs, Rash Curtis employed three different telephone dialing systems: (1) VIC; (2) Global Connect; and (3) TCN. None of these three telephone dialing systems contain an active random or sequential number generator which can dial numbers. Rather, these platforms only dial phone numbers from a pre-generated list compiled by an individual.

33. The collection notes as to each Plaintiff (*see, e.g.,* **Exhibits 3, 6, 7, and 15**) reflect collection calls that were made manually or by the three telephone dialing systems Rash Curtis used from 2012 to the present ("VIC," "Global Connect," and "TCN.") The collection notes further reflect almost all of the attempted phone calls were dropped with no connection to the recipient's cell phone or voicemail, some phone calls "skipped" which means they did not connect (not that they were skip-traced), some phone calls were never answered, and some phone calls connected but no pre-recorded or artificial message was left. From my review of the records, these (no contact/no connection) scenarios reflect the overwhelming majority of the attempted calls. My review of Rash Curtis' collection notes indicate we talked with Mr. Perez on one occasion and when he told us to cease calling, we honored that request. Likewise, my review of the collection notes as to Ms. McMillion and Ms. Adekoya reflect we talked with each on a couple of occasions, and whenever they asked us to stop calling (on a particular account) Rash Curtis, in fact stopped on that account.

///

///

///

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Vacaville, California, on January 8, 2017.

By: _____
Bob Keith
Vice President of Operations