Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]**<br><br>Date: January 30, 2018<br>Time: 2:00 p.m.<br>Ctrm: 1<br>Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFFS' TCPA CLAIMS ..................................................................................... 4

    A. Rash Curtis Possessed Prior Express Consent to Place All Calls to Ms. McMillion. ........ 4

    B. Rash Curtis Possessed Prior Express Consent to Place All Calls to Ms. Adekoya. .......... 7

    C. Rash Curtis Possessed Prior Express Consent to Place All Calls to Mr. Perez. ............... 9

III. PLAINTIFFS' FDCPA AND ROSENTHAL CLAIMS ............................................. 11

IV. PLAINTIFFS' LACK OF STANDING ....................................................................... 12

V. DEFENDANT'S EXHIBITS 18 AND 19 .................................................................... 13

VI. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................................................1, 11

*Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218 (E.D. Cal. 2010) ............................................11

*Baird v. Sabre, Inc.,* 636 Fed.Appx. 715 (9th Cir. 2016)......................................................................3, 8

*Bishop v. I.C. System, Inc.,* 713 F.Supp.2d 1361 (M.D. Fla 2010)....................................................2, 6, 8

*Bourne v. Mapother & Mapother, P.S.C.,* 998 F.Supp.2d 495 (S.D. W.V. 2014) ...........................2, 6, 8

*Chyba v. First Financial Asset Management, Inc.,* 2014 WL 1744136, at * 11-12
   (S.D. Cal. April 30, 2014)..................................................................................................2, 5, 6, 15

*FPI Development, Inc. v. Nakashima,* 231 Cal.App.3d 367 (3rd Dist. 1991)........................................1, 11

*Gagnon v. JPMorgan Chase Bank, N.A.,* 563 B.R. 835 (E.D. Ill. 2017)............................................2, 6, 8

*Hudson v. Sharp Healthcare*, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014) ..............................3, 8

*Jiminez v. Accounts Receivable Mgmt.*, 2010 WL 5829206, at *6 (C.D. Cal. 2010) .............................12

*Jones v. Rash Curtis & Associates,* 2011 WL 2050195, *3 (E.D. Cal. 2011) ........................................12

*O'Connor v. Nantucket Bank,* 992 F.Supp.2d 24 (D. Mass. 2014).......................................................2, 6

*Romero v. Department Stores National Bank,* 199 F.Supp.3d 1256 (N.D. Cal. 2016).................1, 12, 13

*Shields v. Sonora Quest Laboratories, LLC*, 2017 WL 3841489 (D. Az. 2017) ..................................4, 9

*Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301 (M.D. Fla. 2010) ...................................................12

*Udell v. Kansas Counselors, Inc.,* 313 F.Supp.2d 1135 (D. Kan. 2004) ...........................................2, 6, 8

*Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037 (9th Cir. 2017) .................3, 5, 7, 8, 9, 10, 11

*Wasco Products, Inc. v. Southwall Technologies, Inc.,* 435 F.3d 989 (9th Cir. 2006) .........................1, 11

*Williams v. National Healthcare Review*, 2017 WL 48190907 at *8 (D. Nev. 2017).........................4, 9

**Statutes**

15 U.S.C. § 1692..................................................................................................................................5, 11

15 U.S.C. § 1692c(c).................................................................................................................................6

15 U.S.C. § 1692d..............................................................................................................................11, 12

- ii -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

15 U.S.C. § 1692d(5) ..................................................................................................................... 11

15 U.S.C. § 1692d(6) ..................................................................................................................... 11

15 U.S.C. § 1692e ........................................................................................................................... 11

47 U.S.C. § 227 ................................................................................................................................ 5

Civ. Code § 1788.11(b) .................................................................................................................. 11

Civ. Code § 1788.11(d) .................................................................................................................. 11

Civ. Code § 1788.11(e) .................................................................................................................. 11

**Other Authorities**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23
   F.C.C.R. 559, 564, ¶ 9 (Jan. 4, 2008) ......................................................................................... 3

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30
   F.C.C.R. 7961, 7997, ¶ 67 (July 10, 2015) .......................................................................... 2, 5, 9

*In the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27
   F.C.C.R. 15391, 15394-94, ¶ 8 (November 29, 2012) ........................................................ 4, 10

**Treatises**

O'Connell & Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* § 14:125
   (Rutter Group 2017) ................................................................................................................ 1, 11

- iii -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

## I. INTRODUCTION

In opposition to Rash Curtis' summary judgment motion, Plaintiffs raise, *for the first time*, on summary judgment, phone calls to Ms. McMillion and Ms. Adekoya which were *never* pled in their Complaint. Such a tactic is wholly improper here, at the summary judgment stage. *See Romero v. Department Stores National Bank,* 199 F.Supp.3d 1256, 1261 (N.D. Cal. 2016) (each alleged phone call constitutes a *separate* claim under the TCPA); O'Connell & Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* § 14:125 (Rutter Group 2017) (motions for summary judgment are *limited to the matters alleged in the pleadings*); O'Connell, *et al.*, *supra*, § 14:340 (new claims may not be alleged after discovery has closed and a motion for summary judgment has been filed); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment may not be granted on the basis of claims or defenses *not pleaded*); *Wasco Products, Inc. v. Southwall Technologies, Inc.,* 435 F.3d 989, 991 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings"); *see also FPI Development, Inc. v. Nakashima,* 231 Cal.App.3d 367, 381 (3rd Dist. 1991) (summary judgment proceeding is intended to permit a party to show that material factual claims *arising from the pleadings* need not be tried because they are not in dispute).)

Significantly, Plaintiffs have known about the newly-raised phone calls for more than a year, but they failed to amend their Complaint to allege their existence. (*See* Defendant's Opposition, Dkt. No. 152, pp. 7:19-27; **Exh. 1**, ¶¶ 2-5; **Exh. 7**, pp. RCA 258, 263; **Exh. 28**, pp. RCA 5, 9; **Exh. 29**, p. 1; **Exh. 30**, p. 1-7; **Exh. 31**, pp. 1-6; **Exh. 32**, pp. RCA 258, 263.) If Plaintiffs are permitted to raise these unpled calls (claims) here, at the summary judgment stage, it would substantially prejudice Rash Curtis because discovery is now closed, and Rash Curtis is, therefore, precluded from investigating these new claims.

Plaintiffs' own "sandbagging" tactics are, in any event, doomed to fail. As explained below (and in Defendant's Opposition to Plaintiffs' Motion for Summary Judgment), Rash Curtis possessed prior express consent to place all of the calls made to the Plaintiffs, *including the new calls raised by Plaintiffs here, for the first time, on summary judgment*. (*See* Defendant's Opposition, pp. 8:11-12:7.)

- 1 -

**The newly-raised calls as to Ms. McMillion, for example, were made on January 25, 2017, in reference to Account 2763532, <u>*one of the seven new collection accounts referred to Rash Curtis after this case was initiated.*</u>** (Declaration of Bob Keith, Dkt. No. 152-3, ¶ 29; **Exh. 22**, p. 1.) As explained below, Ms. McMillion's prior revocations could not have applied to this account, because the underlying debt was not incurred until June 27, 2016, four months after her purported February 2016 revocations, and two weeks after she initiated this action.[1] The Ninth Circuit has explained that analogous issues under the FDCPA may be used to interpret the TCPA. *See, e.g., Chyba v. First Financial Asset Management, Inc.,* 2014 WL 1744136, at * 11-12 (S.D. Cal. April 30, 2014) (*aff'd* 671 Fed.Appx. 989, 990 (9th Cir. 2016). As such, FDCPA cases are helpful on the scope of revocation. *See Udell v. Kansas Counselors, Inc.,* 313 F.Supp.2d 1135, 1140-1143 (D. Kan. 2004) (cease-and-desist request necessarily pertains only to a "debt the debt collector has already engaged in efforts to attempt to collect – that is, already existing debts, not future debts."); *accord Bishop v. I.C. System, Inc.,* 713 F.Supp.2d 1361, 1366 (M.D. Fla 2010) (even after a debt collector receives a consumer's request, the debt collector may contact the consumer about *other* different or *future* debts); *Gagnon v. JPMorgan Chase Bank, N.A.,* 563 B.R. 835, 851 (E.D. Ill. 2017) (no violation where debt collector communicated with consumer regarding newly-assigned debts); *O'Connor v. Nantucket Bank,* 992 F.Supp.2d 24, 31 (D. Mass. 2014) (cease-and-desist request does not prohibit communications regarding future debts); *Bourne v. Mapother & Mapother, P.S.C.,* 998 F.Supp.2d 495, 505 (S.D. W.V. 2014) (no violation where debt collector contacts consumer regarding different, newly-assigned debts).

Rash Curtis possessed Ms. McMillion's prior express consent to place the January 25, 2017

---

[1] Plaintiffs half-heartedly argue that the filing of this action acted as a "revocation" of Ms. McMillion's prior express consent by some silent "operation of law." (*See* Plaintiffs' Supporting Separate Statement, Dkt. No. 139-1, p. 7, Fact No. 34 ("On June 17, 2016, Plaintiff McMillion filed the Class Action Complaint in *McMillion , et al., v. Rash Curtis & Associates,* Case No. 4:16-cv-03396-YGR in the Northern District of California, and thereby revoked any purported consent Defendant may have had in calling her cellphone.").) Revocation, however, must be <u>clear and unambiguous</u>. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C.R. 7961, 7997, ¶ 67 (July 10, 2015) ("2015 Order"); *Van Patten, supra,* 847 F.3d at 1048. It is unclear how the filing of an action clearly and unambiguously communicates a desire not to receive further calls. There is no precedent for this position, and it is one of the reasons the issue of revocation is now pending before the D.C. Circuit in *ACA International v. FCC, et al.,* United States Court of Appeals, D.C. Circuit, Case No. 15-1211. (*See* **Exhs. 24-27** to Defendant's Opposition, Dkt. No. 152-10, and Rash Curtis' Administrative Motion to Stay Action, Dkt. No. 156.)

- 2 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

calls, because she had again voluntarily provided her cell phone number (ending in 0589) to her creditor, Marin General Hospital, for new, different treatment, for which Rash Curtis was calling. *Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037, 1044-1045 (9th Cir. 2017); *Baird v. Sabre*, *Inc.,* 636 Fed.Appx. 715, 716 (9th Cir. 2016); *see Hudson v. Sharp Healthcare*, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 564, ¶ 9 (Jan. 4, 2008) ( "2008 Order").

For the same reasons, Ms. McMillion's purported February 2, 2016 revocation could not have applied the calls placed on February 16, 2016 and February 17, 2016, because those calls were made in reference to to Account 2603552, which was referred to Rash Curtis two weeks later, on February 15, 2016.[2]

Likewise, the newly-raised calls to Ms. Adekoya, which were made in January 2014 and April 2016, were made in connection with her mother's debt (Account 1993006), not her own debt (Account 2446237). (Keith, Decl., ¶ 31; **Exh. 7**, pp. RCA 258, 263.) Consequently, Ms. Adekoya's purported April 18, 2016 revocation as to her own account is simply inapposite. As explained in Defendant's Opposition to Plaintiffs' cross-motion, Rash Curtis independently was given prior express consent to contact Ms. Adekoya regarding *her mother's debt* because, as Ms. Adekoya admits, she was responsible for her mother's finances and agreed to assist her mother in dealing with Rash Curtis. (*See* Defendant's Opposition, pp. 11:3-21; **Exh. 6**, pp. RCA 255; **Exh. 7**, RCA 258, 260-262; **Exh. 10**, p. RCA 281.) Both Ms. Adekoya and Ms. Caldwell confirmed, during their depositions, that Ms. Adekoya agreed to receive calls from Rash Curtis regarding her mother's debt. (**Exh. 11**, pp. 98:5-99:2, 108:25-109:20, 111:23-112:2; **Exh. 12**, pp. 25:6-26:20, 27:12-24; 28:1-23, 29:2-11, 31:10-22; 35:9-25.)

As for Mr. Perez, Plaintiffs conflate the proper standard for determining whether prior express consent exists. As the Ninth Circuit recently clarified, "effective consent is one that *relates to the same subject matter* as is covered by the challenged calls or text messages." *Van Patten*, *supra*, 847

---

[2] It is undisputed that the February 16, 2016 and February 17, 2016 calls to Ms. McMillion were made in reference to new Account 2603552. (*See* Plaintiffs' Opposition, pp. 2:11-20, 15:4-14.)

- 3 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

F.3d at 1044-45.  Prior express consent "must be considered to *relate to the type of transaction* that evoked it."  *Id*. at 1045 (emphasis added).  The decision does not suggest that the person to whom the call is directed is a determining factor.

Rash Curtis, therefore, possessed prior express consent to place the calls to Mr. Perez because he voluntarily provided his cell phone number (ending in 5193) to Sutter General Hospital in order to receive normal, expected business communications regarding, among other things, medical treatment ***and billing***.  *In the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 F.C.C.R. 15391, 15394-94, ¶ 8 (November 29, 2012) ("2012 Order"); *Shields v. Sonora Quest Laboratories, LLC*, 2017 WL 3841489 (D. Az. 2017); *Williams v. National Healthcare Review*, 2017 WL 48190907 at *8 (D. Nev. 2017).

## II.     PLAINTIFFS' TCPA CLAIMS

### A. Rash Curtis Possessed Prior Express Consent to Place All Calls to Ms. McMillion.

In her Complaint, Ms. McMillion alleges Rash Curtis repeatedly called her **"[b]etween June 2015 and March 2016."**  (**Exhibit 1**, Class Action Complaint, ¶ 2.)  She specifically lists thirty-three distinct phone calls **by date *and time*, beginning on December 23, 2015 and ending on February 17, 2016.**  (*Id.* at ¶ 3.)  Notably, Ms. McMillion does ***not*** allege that she ever revoked her prior express consent; instead, she alleges that *she never gave her prior express consent in the first place*.  (**Exh. 1**, ¶ 2.)

Now, a year and a half later, **Plaintiffs concede the allegations in their Complaint are *false*, stating: "Plaintiffs do *not* challenge that Defendant initially had prior express consent to call McMillion."**  (Plaintiffs' Opposition, p. 1:25-26.)  In fact, Plaintiffs concede that Rash Curtis had prior express consent from Ms. McMillion to place all but two of the thirty-three calls listed in her Complaint.  (*See* **Exh. 1**, ¶ 3.)  Indeed, Plaintiffs' own cross-motion (Dkt. No. 139) addresses just ***four*** phone calls to Ms. McMillion.  (Plaintiffs' Motion, p. 15:20-16:8.)[3]

---

[3] Rash Curtis is, therefore, entitled, at the very least, to partial summary judgment on Ms. McMillion's TCPA claims as to all other phone calls not raised in her opposition.  *See* Fed. R. Civ. P. 56(c).

- 4 -

The first two phone calls raised by Plaintiffs were made on February 16, 2016 and February 17, 2016. (**Exh. 1**, ¶ 3; Plaintiffs' Opposition, p. 2:11-24, 14:25-17:2.) Plaintiffs assert Rash Curtis did not possess prior express consent to place these calls because Ms. McMillion's purported February 2, 2016 revocation applied to <u>all</u> of her debts, including all of her <u>future</u> debts – even those which had not yet been incurred or had not yet been referred to Rash Curtis, or both. (Plaintiffs' Opposition, p. 1:26-2:24, 14:25-17:2.)

But this is <u>not</u> the law.

In its 2015 TCPA order, the FCC confirmed that a called party may revoke consent "through any reasonable means." (*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 7989-90, ¶ 47 (July 10, 2015) ("2015 Order"). But "[r]evocation of consent must be clearly made…" *Van Patten, supra,* 847 F.3d at 1048.

The FCC's orders are silent as to whether revocation is limited to <u>existing</u> collection accounts only or applies to <u>future</u> debts which: (1) have not yet been incurred, or (2) have been incurred but have not yet been referred to collections.

As noted above, in the absence of other guiding principles, courts have traditionally looked to other so-called "consumer protection" statutes, including the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, to interpret the Telephone Consumer Protection Act, 47 U.S.C. § 227. (*See, e.g., Chyba, supra,* at * 11-12.)

In *Chyba*, the court found that the debt collector's good-faith belief that the plaintiff had given her consent precluded TCPA liability even if no such consent was actually given. *Id.* In so doing, the court considered the FDCPA and the cases interpreting it and, by analogy, reasoned:

> ***In the context of FDCPA, the Ninth Circuit has found that debt collectors have a limited obligation to verify the underlying debt***. In *Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1174 (9th Cir. 2005), the Ninth Circuit found that a debt collector was entitled to rely on the creditor statement's to verify the debt. The Ninth Circuit cited to case law suggesting that a collector could reasonably rely upon information provided by a creditor who had been accurate in the past. *Id*. It also held that the FDCPA did not impose any duty on the debt collector to independently investigate the claims. *Id*. (citations omitted). ***It would be incongruous with the larger statutory and regulatory scheme to interpret***

- 5 -

***TCPA to require that a debt collector be liable for acting where it had a good-faith basis for doing so.***

*Chyba, supra,* 2014 WL 1744136, at *11 (emphasis added).

Under this line of reasoning, the case law interpreting the FDCPA clearly demonstrates that Ms. McMillion's purported revocations could not have applied to her future debts which had not yet been incurred, much less referred to collections. (*See, e.g., Udell, supra,* 313 F.Supp.2d at 1140-1143; *accord Bishop, supra,* 713 F.Supp.2d at 1366; *Gagnon, supra,* 563 B.R. at 851; *O'Connor, supra,* 992 F.Supp.2d at 31; *Bourne, supra,* 998 F.Supp.2d at 505.

In *Udell,* the court analyzed the FDCPA, which states in part: **"*If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer…*"** 15 U.S.C. § 1692c(c) (emphasis added). The *Udell* plaintiffs contended the debt collector violated this provision of the FDCPA by contacting plaintiffs *after receiving their cease-and-desist request*. *Udell, supra,* 313 F.Supp.2d at 1140. The plaintiffs pointed out that their cease-and-desist letter referred to "All Accounts" and directed the debt collector to "CEASE AND DESIST all attempts to collect the above debt." *Id.* As the *Udell* court noted, "**[t]his language, by its plain terms, could arguably be read to apply to currently existing debts *as well as future debts*.**" *Id.* Ultimately, however, the court held that *a cease-and-desist request did not apply to the subsequent assignment of a separate debt to a debt collecto*r. *Id.* at 1141. If the consumer did not wish to be contacted regarding the new debt, she must issue another cease-and-desist request. *Id.*

Ms. McMillion's purported February 2, 2016 revocation could not have applied to the "debt" which was not assigned to Rash Curtis until February 15, 2016 (Account 2603552). Likewise, her purported February 17, 2016 revocation could not have applied to the "debt" which did not yet exist, and which was not assigned to Rash Curtis until December 13, 2016 (Account 2763532). To hold otherwise would be, in the words of the *Chyba* court, "incongruous with the larger statutory and regulatory scheme…" *Chyba, supra,* 2014 WL 1744136, at *11.

Furthermore, allowing debtors to revoke their prior express consent as to future debts would also permit the unscrupulous debtor to trap debt collectors by revoking consent to be called while

- 6 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

intentionally continuing to accrue new debts in an attempt to trap debt collectors in a "gotcha" scenario (like Ms. McMillion has done here). This is one of the very issues raised in the *ACA International* briefing. (*See* **Exh. 26**, pp. 55-64; **Exh. 27**, pp. 29-31.)

Accordingly, this Court should find, as a matter of law, Rash Curtis possessed prior express consent to place the February 16, 2016 and February 17, 2016 phone calls to Ms. McMillion, because those two phone calls were made in reference to Account 2603552, an account which was not assigned to Rash Curtis until February 15, 2016, two weeks <u>after</u> her purported February 2, 2016 revocation. (Keith Decl., ¶ 21; **Exh. 3,** RCA 216.)

This Court should also find, as a matter of law, Rash Curtis possessed prior express consent to place the other two calls now at issue. Those two calls, which were placed on January 25, 2017, were made in reference to Account 2763532, another new debt which was not incurred by Ms. McMillion until June 27, 2016, two weeks *after* she filed this action, and which was not assigned to Rash Curtis until six months later, on December 13, 2016. (Keith Decl., ¶ 28; **Exh. 22**, p. 1.) Rash Curtis submits, the mere filing of a lawsuit is not an "express" revocation under *Van Patten, supra,* 847 F.3d at 1048.

In the alternative, this Court should grant Rash Curtis' motion to stay this action pending the D.C. Circuit's decision in *ACA International v. FCC, et al.,* United States Court of Appeals, D.C. Circuit, Case No. 15-1211, because the FCC's TCPA orders present an "unworkable" regime of revocation which is sure to be clarified by that court. (*See* **Exh. 26,** pp. 55-60.)

**B.   Rash Curtis Possessed Prior Express Consent to Place All Calls to Ms. Adekoya.**

Ms. Adekoya also raises, for the first time, new calls not pled in her Complaint. The new calls fall into two groups: (1) those made between January 8, 2014 and January 11, 2014; and (2) those made on April 27, 2016 and April 28, 2016.[4] (*See* Plantiffs' Opposition, pp. 4:3-6:5.) All of the new calls were made in reference to Ms. Adekoya's mother's debt (Account 1993006), rather than Ms. Adekoya's own debt (Account 2446237). (Keith Decl., ¶ 31; **Exhibit 7**, pp. RCA 000258, 000263.)

---

[4] Plaintiffs do not dispute Rash Curtis possessed prior express consent to call Ms. Adekoya regarding any of the calls alleged in her Complaint. Consequently, Rash Curtis is entitled to partial summary judgment as to each of those claims. *See* Fed. R. Civ. P. 56(c).

- 7 -

The first new call raised by Plaintiffs occurred on January 8, 2016, the day <u>before</u> Rash Curtis requested an ECA Advanced Trace skip-tracing report on Ms. Caldwell. (Keith Decl., ¶ 31; **Exh. 7**, pp. RCA 258.) Accordingly, Rash Curtis could <u>not</u> have obtained the cell phone number in question (ending in 5496) via skip-tracing; rather, the number <u>must</u> have been provided by Ms. Caldwell's creditor, Doctors Medical Center, when it referred Ms. Caldwell's debt (Account 1993006) to Rash Curtis on January 8, 2014. (Keith Decl., ¶ 31.)

Accordingly, this court should find, as a matter of law, that Rash Curtis possessed prior express consent to call the 5496 number in connection with Ms. Caldwell's debt (Account 1993006) between January 8, 2016 and January 11, 2016. *Van Patten, supra,* 847 F.3d at 1044-1045; *Baird*, *supra,* 636 Fed.Appx. at 716; *see Hudson, supra,* 2014 WL 2892290, at *3; *2008 Order,* 23 F.C.C.R. at 564, ¶ 9.

Likewise, this court should find, as a matter of law, that Rash Curtis possessed prior express consent to call the 5496 number in connection with Ms. Caldwell's debt (Account 1993006) on April 27, 2016 and April 28, 2016. As explained above, Ms. Adekoya's purported revocation on April 18, 2016, simply did not apply to any calls made in reference to her mother's debt (Account 1993006).[5] *See, e.g., Udell, supra,* 313 F.Supp.2d at 1140-1143; *Bishop, supra,* 713 F.Supp.2d at 1366; *Gagnon, supra,* 563 B.R. at 851; *O'Connor,* 992 F.Supp.2d at 31; *Bourne, supra,* 998 F.Supp.2d at 505. Rather, Rash Curtis independently possessed prior express consent to contact Ms. Adekoya regarding <u>*her mother's debt*</u> because, as Ms. Adekoya admits, she separately agreed to receive calls from Rash Curtis regarding her mother's debt. (**Exh. 11**, pp. 98:5-99:2, 108:25-109:20, 111:23-112:2; **Exh. 12**, pp. 25:6-26:20, 27:12-24; 28:1-23, 29:2-11, 31:10-22; 35:9-25.)

In the alternative, this Court should grant Rash Curtis' motion to stay this action pending the D.C. Circuit's decision in *ACA International v. FCC, et al.,* United States Court of Appeals, D.C. Circuit, Case No. 15-1211, because the FCC's current orders present an "unworkable" regime of revocation which is sure to be clarified by the court. (**Exh. 26,** pp. 55-60.)

---

[5] Defendant's Opposition (Dkt. No. 152) mistakenly refers to the date of Ms. Adekoya's purported revocation as April **14**, 2016, not April **18**, 2016. (*See* Defendant's Opposition, Dkt. No. 152, p. 11:3-10.) Rash Curtis apologizes for this error and any confusion which it may have caused.

- 8 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

C. **Rash Curtis Possessed Prior Express Consent to Place All Calls to Mr. Perez.**

Notably, Plaintiffs do not raise any new phone calls made to Mr. Perez. Rather, Plaintiffs continue to assert that Rash Curtis did not have prior express consent to place the calls at issue because those calls were made in reference to a debt owed by Mr. Reynoso. (*See* Plaintiffs' Opposition, pp. 6:7-9:3, 18:11-20:10.)

But this is simply irrelevant under the current state of the law. In fact, the FCC has made clear that the identity of the "intended recipient" is not part of the prior express consent analysis. (*2015 Order*, 30 F.C.C.R. at 7999, ¶ 72.) Rather, it is the type of call which matters. *Van Patten*, *supra*, 847 F.3d at 1044-45. Whether Rash Curtis was intending to call Mr. Perez or Mr. Reynoso is irrelevant; the type of call is what is important, and both men had given unrestricted consent to be called by Sutter (and hence Rash Curtis) on billing issues.

Defendant submits the Ninth Circuit decision in *Van Patten* controls here. There, the court explained that "effective consent is one that *relates to the same subject matter* as is covered by the challenged calls or text messages." *Van Patten*, *supra*, 847 F.3d at 1044-45. Importantly, the court wrote that prior express consent "must be considered to *relate to the type of transaction* that evoked it." *Id*. at 1045 (emphasis added). The decision does not indicate that the person to whom the call is directed is a determining factor.

Thus, the proper way to analyze prior express consent is by determining if the provision of the cell phone number relates to the same *type or purpose* of transaction for which the number was originally provided, and not by looking at who received the call. The focus is on whether: (1) the called number was provided to the medical provider, and hence its agent, and (2) if the call made was of the same *type or purpose* for which the recipient consented in the first place. *Van Patten, supra,* 847 F.3d at 1044-45.

There is no doubt Mr. Perez gave prior express consent to be contacted by Sutter General Hospital for billing purposes. *Shields, supra,* 2017 WL 3841489; *Williams v. National Healthcare Review*, 2017 WL 48190907 at *8 (D. Nev. 2017). The type of call Mr. Perez received here was a medical billing call, which is the same "type" of call to which he consented. *See Van Patten, supra,* 847 F.3d at 1045. The mere fact that it was to the wrong person is *not* part of the TCPA analysis, since

- 9 -

the analysis does not relate to who was called, but why. *Id.; 2012 Order*, 27 F.C.C.R. at 15394-94, ¶ 8. Thus, Defendant submits there was prior express consent for receiving billing calls here, acknowledging this is an issue of first impression. *Van Patten, supra,* 847 F.3d at 1046.

Mr. Perez's situation is unique because he had given the same consent, to the same type of transaction, and to the exact same creditor as the actual debtor, Mr. Reynoso. *See Van Patten, supra,* 847 F.3d at 1045; **Exh. 17**, pp. 45:1-7, 47:1-17. Mr. Perez did not put any explicit restrictions about the types of calls he would be receiving from Sutter General Hospital. (**Exh. 17**, p. 47:12-18.) Mr. Perez received a telephone call, on the number he provided, in connection with medical billing – a normal, business communication one might expect to receive on behalf of Sutter General Hospital. *2012 Order*, 27 F.C.C.R. at 15394-94, ¶ 8.

Accordingly, this court should find, as a matter of law, that Rash Curtis possessed prior express consent to make each of the calls placed to Mr. Perez, because he voluntarily provided his cell phone number to Sutter General Hospital, the creditor on whose behalf Rash Curtis was calling.

Alternatively, this court should stay this action pending the outcome of *ACA International*, which will undoubtedly clarify whether prior express consent follows the number or the name, *i.e.*, whether the TCPA's reference to "called party" means "intended recipient" or the cell phone's subscriber or customary user. (*See* Exh. 26, pp. 39-54; **Exh. 27**, pp. 22-29.)

This is especially critical given that the evidence suggests the 5193 number was reassigned from Mr. Reynoso to Mr. Perez. (*See* **Exh. 16**, pp. RCA 272-273.) As noted in the *ACA International* briefing, more than 100,000 cell phone numbers are reassigned every day. (**Exh. 26**, pp. 10 (*citing* Commisioner Pai's Dissenting Opinion to the FCC's *2015 Order*).) The FCC's "one call rule" does not provide callers with adequate protection against the TCPA's strict liability, especially when the phone number in question gets reassigned to a new individual who purposefully conceals this fact in attempt to trap callers. (*See* **Exhibit 26**, pp. 10-11 ("Some plaintiffs have even refused to tell the caller about the reassignment – letting the call roll into an uninformative voicemail or answering without identifying themselves – and then sued over 'unwanted' calls.").) As the ACA points out, "[o]ne law firm even created an app that lets plaintiffs and the firm 'laugh all the way to the bank' by matching

incoming calls to a database of callers and forwarding the information to the firm so it can file a class action."[6] *Id.*

### III. PLAINTIFFS' FDCPA AND ROSENTHAL CLAIMS

Once again, Plaintiffs' Complaint proves to be misleading. Here, on summary judgment, Plaintiffs have seemingly dropped their claims under 15 U.S.C. § 1692e. (*See* **Exh. 1**, ¶ 69 ("Defendant's course of conduct as more fully described above constitutes numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, ***including but not limited to 15 U.S.C. § 1692d and e***.") (emphasis added).) Now, "Plaintiffs allege Defendant violated Civil Code § 1788.11(d), § 1788.11(e), and 15 U.S.C. § 1692d(5) by repeatedly and continuously calling with the intent to annoy and harass Plaintiffs." (*See* Plaintiffs' Opposition, pp. 21:15-16.) In addition, Plaintiffs seek to, *sub silencio,* add more, new claims which were never pled, claiming "Defendant also violated FDCPA and the Rosenthal Act by failing to properly identify itself pursuant to *§ 1788.11(b)* and § 1692d(6)…" (*See* Plaintiffs' Opposition, pp. 24:23-24.) These issues, outside of the four corners of the Complaint, must be rejected.

As explained above, Plaintiffs cannot allege a new claim under Civil Code § 1788.11(b) here, at the summary judgment stage, when no such claim was ever pled. *See* O'Connell, *et al., supra,* at §§ 14:125, 14:340; *Anderson, supra,* 477 U.S. at 248; *Wasco Products, supra,* 435 F.3d at 991; *see also FPI Development, supra,* 231 Cal.App.3d at 381.

As to their remaining claims for call harassment, Plaintiffs have failed to demonstrate any triable issue of fact exists as to whether Rash Curtis actually intended to harass, oppress, or abuse Plaintiffs. Rather, the evidence strongly suggests that Rash Curtis was merely attempting to contact the Plaintiffs regarding their various debts. *See, e.g., Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (daily calls did not constitute actionable harassment as a matter of law where there was no evidence that creditor called debtor immediately after she hung up, called multiple times in a single day, called at odd hours, or called after she requested creditor cease calling); *Jiminez*

---

[6] This is precisely what happened in this case; each of the Plaintiffs used a cell phone application to capture Rash Curtis' calls and make the initial contact with class counsel, Bursor & Fisher, P.A. (**Exh. 4**, pp. 45:5-18; **Exh. 11**, 57:23-58:2, 59:7-13, 62:2-10, 72:21-73:21, **Exh. 17**, pp. 34:3-21.)

- 11 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

*v. Accounts Receivable Mgmt.*, 2010 WL 5829206, at *6 (C.D. Cal. 2010) (summary judgment granted on 15 U.S.C. § 1692d claim where defendant placed 69 calls over a 115 day period and placed more than 2 calls in one day); *Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301, 1305-1306 (M.D. Fla. 2010) (57 calls to plaintiff including 7 calls in one day did not constitute actionable harassment).

Rather, a high frequency or volume of calls is actionable only when it demonstrates an intent to annoy, abuse or harass. Merely calling, without more, simply does not evince such an intent - as a matter of law. *See, e.g., Jones v. Rash Curtis & Associates,* 2011 WL 2050195, *3 (E.D. Cal. 2011) (court granted summary judgment upon finding that there was no triable issue of fact where Defendant initiated 179 phone calls with no intent to harass). Here, the number of calls made in an attempt to reach Plaintiffs is not excessive, as a matter of law, and once Rash Curtis was asked to stop calling on a particular debt, it did. (**Exh. 3**, p. RCA 227, **Exh. 6**, pp. RCA 255-256; **Exh. 7**, p. RCA 263; **Exh. 15**, p. RCA 271; Keith Decl., ¶¶ 20-22, 24, 26.)

### IV. PLAINTIFFS' LACK OF STANDING

Notwithstanding the foregoing, Plaintiffs' must still present evidence demonstrating they have standing as to each of their claims. As to their respective TCPA claims, Plaintiffs must demonstrate some cognizable harm - some injury-in-fact - for <u>each</u> phone call in question. *Romero, supra,* 199 F.Supp.3d at 1261.

The *Romero* court correctly observed:

> The private right of action section of the TCPA provides for a separate statutory $500 damage award for each call that violates its provisions. 47 U.S.C. § 227(b)(3). ***<u>Each alleged violation is a separate claim, meaning that Plaintiff must establish standing for each violation, which in turn means that Plaintiff must establish an injury in fact caused by each individual call. In other words, for each call Plaintiff must establish an injury in fact as if that was the only TCPA violation alleged in the complaint. The determination of standing to bring a TCPA claim based on a call made using an ATDS does not change whether it is the only call alleged to have violated the TCPA or 1 of 290 calls that allegedly violated the TCPA. Accordingly, the Court must determine whether Plaintiff has evidence of an injury in fact specific to each individual call, and not in the aggregate based on the total quantity of calls</u>***.

- 12 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

*Id.* (emphasis added).

This requires that Plaintiffs demonstrate harm stemming from the different types of calls, including: (1) calls that Plaintiffs did not hear; (2) calls that Plaintiffs heard but did not answer; and (3) calls that Plaintiffs answered.  *Id.* at 1263.  Plaintiffs have apparently attempted to do this, but their efforts are in vain.

In analyzing Rash Curtis' call logs, Plaintiffs have made a critical mistake.  They believe the call result "Answered" necessarily means someone picked up the phone.  As noted by Plaintiffs, the "Answered" calls really mean "Call Answered – No Linkback," *i.e.,* the call was answered but no button was pressed to connect the call to one of Rash Curtis' collectors. This situation arises out of two distinct possibilities: (1) someone answers the phone but chooses not to press a button (as Plaintiffs argue); or (2) the phone's voicemail answers the phone and cannot (obviously) press a button to connect the call.  (*See* Keith Decl., ¶ 33.)  In short, Plaintiffs have failed to demonstrate that the Plaintiffs actually answered each such call rather than the call going to voicemail.  Worse yet, Plaintiffs have introduced no such evidence on a call by call basis, relying instead on their misguided interpretations of Rash Curtis' collection notes.

## V.  DEFENDANT'S EXHIBITS 18 AND 19

Plaintiffs have asked this court to strike Defendant's **Exhibits 18 and 19** on the grounds that they were not timely produced.[7]  But this is wholly incorrect and misleading.  *Plaintiffs admit these documents were produced on October 23, 2017, more than a month before the December 1, 2017 discovery cutoff*.  (*See* Plaintiffs' Opposition, pp. 11:15-16; Declaration of Anthony P. J. Valenti, ¶ 3.) And they were.  (*See* **Exh. 32**, pp. RCA 279-280; Valenti Decl., ¶¶ 3-4.)  Nonetheless, Plaintiff argues that Rash Curtis should be precluded from using this evidence based on various representations made during the course of discovery.  As shown below, each of its representations was correct.

First, Plaintiffs argue that Rash Curtis stated, in its May 8, 2017 meet and confer letter, that

---

[7] **Exhibit 18** is a screenshot of the ECA Advanced Trace Report for Mr. Reynoso. It demonstrates Mr. Perez's 5193 number was not obtained by Rash Curtis via skip-tracing as the number in question is not contained in the report. **Exhibit 19** is a screenshot of the Edit Tracking Report for Mr. Reynoso. It demonstrates that the 5193 number was provided by Sutter General Hospital when it referred Mr. Reynoso's account to Rash Curtis on May 7, 2015. (Keith Decl., ¶¶ 12-13.)

- 13 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

"[n]o ECA reports were generated for … *Mr. Perez*." (*See* Plaintiffs' Opposition, pp. 10:12-13, 10:20.) But this is undisputedly true; the ECA report in question (**Exhibit 18**) is for *Mr. Reynoso*.

<u>Second</u>, Plaintiffs argue that Rash Curtis stated, in the same May 8, 2017 letter, that "there is simply no way to generate any additional, responsive documents <u>*using the 'Beyond' software*</u> besides the collection notes which have already been produced." (*See* Plaintiffs' Opposition, pp. 10:13-15.) But this is also true. The documents were not generated using any part of the "Beyond" software platform created by DAKCS and used as the basic collection platform; rather, the ECA report is obtained from Experian through LexisNexis. Neither the ECA report nor the Edit Tracking report may be printed, *i.e.,* there <u>is</u> no way to generate these files <u>*using the "Beyond" software*</u>. The only way to obtain printable images of the ECA Report (**Exhibit 18**) and the Edit Tracking Report (**Exhibit 19**) from "Beyond" is to capture a screenshot and save it as an image file, which is exactly what Rash Curtis did on October 12, 2017. (*See* Plaintiffs' Opposition, pp. 11:26-12:1; Valenti Decl., ¶ 4.)

<u>Third</u>, Plaintiffs argue the documents are not "records generated and kept in the ordinary course of business." To the contrary, the ECA report and Edit Tracking Report *are* generated and kept in the ordinary course of Rash Curtis' business. (Keith Decl., ¶¶ 12-13.) As explained above, <u>*there is no way to print these reports using "Beyond,"*</u> and the only option was to take a screenshot and save it as an image file. Plaintiffs claim that these documents are "as probative as a screenshot of an editable word document that has been created for the purposes of litigation…" (*See* Plaintiffs' Opposition, pp. 12:2-3.) Rash Curtis takes offense to Plaintiffs' insinuations that it would fabricate evidence.

<u>Finally</u>, Plaintiffs argue that Defendant has "sandbagged" them. However, they admit that the timestamp on **Exhibit 18** shows that it was created on October 12, 2017. (*See* Plaintiffs' Opposition, pp. 11:26-12:1.) This "timestamp" is actually the date and time overlay on the Microsoft Windows toolbar from the computer used to generate the screenshots and demonstrates that **Exhibit 18** was created on October 12, 2017. **Exhibit 18** was subsequently bate stamped as RCA 194 and produced *three days later*, on October 15, 2017, as part of Rash Curtis' third supplemental production of documents. (Valenti Decl., ¶ 4.) **Exhibit 18** was produced again a week later, on October 23, 2017, along with **Exhibit 19**, both of which were part of Rash Curtis' fourth supplemental production of

- 14 -

DEFENDANT RASH CURTIS & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]

documents. (Valenti Decl., ¶ 4.) Plaintiffs elected not to question Rash Curtis' employees about these documents during their depositions, which were held on October 16, 2017, October 20, 2017 and October 24, 2017. (Valenti Decl., ¶ 4.) Plaintiffs' also elected not to propound any interrogatories or requests for admissions regarding these documents, despite the fact that fact discovery did not close until December 1, 2017. (Valenti Decl., ¶ 4.)

In sum, **Exhibit 18** and **Exhibit 19** both conclusively establish that Mr. Perez's 5193 number was not skip-traced. Consequently, Mr. Perez does not meet the class definitions certified by this court and, more importantly, the 5193 number must have been provided to Rash Curtis by Sutter General Hospital when it referred Mr. Reynoso's account. (Keith Decl., ¶¶ 12-13.) Accordingly, these documents are essential to establish Rash Curtis' defense of good-faith reliance upon the information received by its creditor. *See Chyba, supra,* 2014 WL 1744136, at * 11-12. They will also prove critical in the event the D.C. Circuit ultimately finds that "called party" really means "intended recipient" rather than the cell phone's subscriber or customary user. (*See* **Exh. 26**, pp. 39-541; **Exh. 27**, pp. 22-29.)

## VI.    CONCLUSION

Rash Curtis is entitled to summary judgment as to each and every claim raised by the Plaintiffs, including those which were never pled, because each Plaintiff provided prior express consent to be contacted on their cell phones when they provided those phone numbers to their health care providers, and because there is simply no evidence to suggest Rash Curtis' attempts to contact Plaintiffs were intended to harass, oppress, or abuse Plaintiffs. In the alternative, this Court should stay this matter pending the outcome of *ACA International* as the issues of law pending before the D.C. Circuit will be either dispositive of, or (at the very least) clarify, the issues here.

Dated: January 15, 2018

            ELLIS LAW GROUP LLP


            By:   /s/ *Mark E. Ellis*
              Mark E. Ellis
              Anthony P. J. Valenti
              Attorneys for Defendant
              RASH CURTIS & ASSOCIATES