# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**SANDRA MCMILLION, ET AL.,**

Plaintiffs,

vs.

**RASH CURTIS & ASSOCIATES,**

Defendant.

CASE NO. 16-cv-03396-YGR

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING MOTION FOR STAY**

Re: Dkt. Nos. 139, 140, 153, 156

Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez bring this putative class action against defendant Rash Curtis & Associates ("Rash Curtis") alleging that defendant called plaintiffs without consent, in violation of several laws. This case arises from Rash Curtis' alleged violations of the (i) Telephone Consumer Protection Act, 47 U.S.C. sections 227, *et seq.* (the "TCPA"); (ii) Fair Debt Collection Practices Act, 15 U.S.C. sections 1692, *et seq.* (the "FDCPA"); and (iii) the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code sections 1788, *et seq.*, (the "Rosenthal Act"). On September 6, 2017, this Court certified the four classes with Perez as the class representative, both for injunctive relief pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3).[1] (Dkt. No. 81, Order Granting Plaintiffs' Motion for Class Certification.)

---

[1] Plaintiffs moved for class certification with respect to their TCPA claims only, and intend to pursue their FDCPA and Rosenthal Act claims on individual bases. (Dkt. No. 66 at 2.)

Now before the Court are the parties' cross motions for partial summary judgment. (Dkt. Nos. 139, 140.) With respect to claims affecting the class, plaintiffs move for partial summary judgment on the issue of whether defendant's Global Connect, TCN, and DAKCS/VIC dialers (the "Dialers") constitute Automatic Telephone Dialing Systems ("ATDSs") within the meaning of the TCPA.[2] Both parties move on whether plaintiffs provided prior express consent.

With respect to the individual claims, defendant seeks summary judgment as to (i) Perez claiming that he lacks standing to assert a claim under the Section 1692e(11) of the FDCPA because he is not a "consumer" within the meaning of the FDCPA; (ii) plaintiffs' FDCPA claims under Section 1692d because plaintiffs cannot show that Rash Curtis engaged in harassing conduct, failed to disclose its identity, or acted with the intent to annoy; (iii) plaintiffs' Rosenthal Act claims because plaintiffs cannot show that Rash Curtis called plaintiffs to "annoy" or with such frequency as to be unreasonable and to constitute harassment under the circumstances; and (iv) all plaintiffs on the ground they lack Article III standing for their TCPA and FDCPA claims.

Having carefully considered the pleadings, the papers and exhibits submitted, and for the reasons set forth more fully below, the Court **ORDERS** as follows:[3]

1. With regard to defendant's Dialers, plaintiffs' motion for partial summary judgment is **GRANTED** and the Court holds that defendant's Dialers constitute ATDSs within the meaning of the TCPA.

2. On the issue of McMillion's prior express consent, defendant's motion for partial summary judgment is **GRANTED** with regard to calls received on or prior to February 2, 2016. By contrast, plaintiffs' motion is **GRANTED** as to calls after February 2, 2016.

3. With regard to Adekoya's prior express consent, defendant's motion for partial summary judgment is **GRANTED** with regard to calls received on or prior to April 18, 2016. By contrast, plaintiffs' motion is **GRANTED** as to calls received after April 18, 2016.

---

[2] Defendant has filed a request for judicial notice of the Ninth Circuit's (i) order deferring submission and (ii) transcript of oral argument held on December 6, 2016, in *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (9th Cir. 2016); and (iii) two briefs filed by petitioners in *ACA International v. Federal Communications Commission, et al*, Case No. 15-1211 (D.C. Cir. 2016). (Dkt. No. 153.) In light of the lack of opposition to either, the Court **GRANTS** both requests for judicial notice, but does not accept the truth of any matters asserted in the documents. The Court gives such documents their proper evidentiary weight.

[3] To the extent that a motion is granted, the corollary cross motion is denied.

4.     Plaintiffs' motion for partial summary judgment on the issue of prior express consent with regard to Perez is **GRANTED.**

5.     Defendant's motion for partial summary judgment on plaintiffs' FDCPA claims is **GRANTED**.

6.     Defendant's motion for partial summary judgment on plaintiffs' Rosenthal Act claims is **GRANTED** as to plaintiff Perez and **DENIED** as to plaintiffs Adekoya and McMillion.

7.     Defendant's motion to dismiss plaintiffs' TCPA and FDCPA claims for lack of Article III standing is **DENIED**.

## II.   BACKGROUND

Plaintiffs bring the instant class action[4] against defendant in connection with defendant's allegedly unlawful debt collection practices. Defendant is a "large, nationwide debt collection agency" and plaintiffs allege that defendant "uses repeated robocalls, pre-recorded voice

_____

[4] The classes are defined as follows:

**(a) Skip-Trace Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global Connect dialer whose cellular telephone was obtained by Rash Curtis through skip tracing.

**(b) Skip-Trace Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing.

**(c) Non-Debtor Class 1:** All persons who received a call on their cellular telephones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis' DAKCS VIC dialer and/or Global Connect dialer whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis never had a debt-collection account in their name.

**(d) Non-Debtor Class 2:** All persons who received a prerecorded message or robocall on their cellular telephones [or] landline phones within four years of the filing of the complaint until the date that class notice is disseminated from Rash Curtis whose telephone number was obtained by Rash Curtis through skip tracing and for whom Rash Curtis has never had a debt-collection account in their name.

Excluded from the classes are "persons who provided their cellular telephone in an application for credit to a creditor that has opened an account with [d]efendant in such debtor's name prior to [d]efendant first placing a call using an automatic telephone dialing system and/or prerecorded voice," in addition to certain entities related to defendant, defendant's agents and employees, and any judge or magistrate judge to whom this action is assigned, their staff, and immediate families. (Dkt. No. 46-5 at 10.)

messages, and auto-dialed calls to threaten and harass consumers in an attempt to collect" debts, in violation of the TCPA, the FDCPA, and the Rosenthal Act. (Dkt. No. 1, Complaint ¶ 1.)

Plaintiffs allege that defendant repeatedly called them on their cellular telephones using an autodialer and/or an artificial or prerecorded voice. (*Id*. ¶¶ 2, 4, 6.) Plaintiffs further allege that they did not provide defendant with prior express consent, and they specifically asked defendant to stop calling. (*Id.*) Defendant allegedly called McMillion thirty-three times, Adekoya forty-five times, and Perez four times. (*Id.* ¶¶ 3, 5, 7.) The complaint further alleges that several consumer complaints have been filed against defendant regarding similarly unsolicited robocalls and autodialed calls. (*Id*. ¶ 38.)

To make these calls, plaintiffs offer evidence indicating that defendant employs three Dialers, namely, the (i) DAKCS/VIC Software System ("DAKCS/VIC"), (ii) Global Connect system ("Global Connect"), and (iii) TCN. (Dkt. No. 46-6, Deposition of Steven Kizer ("Kizer Dep.") at 55:6–56:12.) The DAKCS/VIC dialer can allegedly dial eighty phone numbers per minute, and the Global Connect dialer can dial approximately 60,000 phone numbers in a twelve-hour period. (*Id.* at 99:12–100:12.) Plaintiffs allege thus regarding defendant's business practices related to defendant's debt collection calls:

Defendant generally receives debt-accounts from creditors. (*Id.* at 45:19–47:17.) While some of these accounts include debtors' phone numbers—such individuals are excluded from the class definitions as set forth above—defendant receives many accounts without any telephone numbers at all. (*Id.* at 47:23–48:1.) For these accounts, defendant uses a process referred to as "skip tracing" to obtain phone numbers associated with the names on the accounts. (*Id.* at 83:3–84:20; 91:9–92:6.) "Skip tracing" is a "method or process for locating individuals for the purpose of contacting them," using "data analysis of personal information obtained from various and multiple public and private databases." (Declaration of Randall A. Snyder ("Snyder Decl."), Dkt. No. 46-7, at ¶¶ 58–60.) According to plaintiffs, accounts where phone numbers were obtained through skip tracing are marked with a unique status code and are, therefore, readily identifiable. (Kizer Dep. Tr. 86:7–9; 90:13–90:24.) At times, this process would produce a phone number not connected to any individual for whom defendant had a debt account from a creditor. Yet,

defendant would often call these numbers despite not having any accounts related to those individuals.

### III.    LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party has the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

The Court will first address whether defendant's Dialers constitute ADTSs within the meaning of the TCPA. Next, the Court will analyze whether triable issues exist with regard to each plaintiff's express prior consent. The Court will then turn to defendant's challenge to plaintiffs' individual FDCPA and Rosenthal Act claims. Finally, the Court will address defendant's Article III standing arguments.

### A. Automatic Telephone Dialing Systems

The TCPA defines ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Predictive Dialers, "unlike prior versions of automated dialing technology [that] created and dialed 10-digit phone numbers arbitrarily . . . [employ] a stored database of numbers which could then be dialed at a rate to ensure that when a consumer answered the phone, a sales person would be available to take the call." *Hernandez v. Collection Bureau of Am., Ltd.*, 2014 WL 4922379, at *2 (C.D. Cal. 2014) (quoting 43 F.C.C. 2003, 1953 WL 83579, at 14092 ("2003 Federal Communication Commission ('FCC') Order")). The FCC and several district courts have "recognized that[,] technological advances aside, 'the basic function of such equipment . . . has not changed – the capacity to dial numbers without human intervention.'" *Id.*; *see Warnick v. Dish Network LLC*, 2014 WL 12537066, at *12 (D. Col. 2014); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (finding that even though the dialer at issue "cannot generate and dial random or sequential numbers, it is still an 'automatic telephone dialing system," because the dialer "automatically dials numbers stored in [a database of numbers] routes answered calls to available collectors"). "Therefore, because predictive dialers had the capacity to dial numbers without human intervention, the Commission concluded that they fell within the statutory definition of automatic telephone dialing system and the intent of Congress." *Id.*; *see also Warnick*, 2014 WL 12537066, at *12; *Griffith,* 838 F. Supp. 2d at 727. In 2008, the FCC issued a declaratory ruling affirming the 2003 FCC Order. *See id.* (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 92-90, 23 FCC Rcd. 559 (2008) ("2008 FCC Ruling")). Interpreting

United States District Court
Northern District of California

United States District Court
Northern District of California

the 2008 FCC Ruling, the Ninth Circuit held in *Meyer* that "predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system.'" *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

The record reflects that defendants used three dialers during the class period, namely (i) DAKCS/VIC, (ii) Global Connect, and (iii) TCN. Plaintiffs offer the testimony of Rash Curtis executives who state DAKCS/VIC and TCN are predictive dialers. (Dkt. No. 139-2, Declaration of Yeremy Krivoshey ("Krivoshey Decl."), Ex. 1, Deposition of Daniel Correa ("Correa Dep.") at 23:10-13 (DAKCS/VIC dialer), 30:9-21 (TCN dialer); Ex. 2, Deposition of Nick Keith ("Keith Dep.") at 26:22-27:11 (DAKCS/VIC dialer).) With regard to Global Connect, plaintiffs proffer that Global Connect offers "predictive" functionality and enables defendant to make ten simultaneous calls per agent to reach "thousands of contacts within minutes." (Dkt. No. 46-4, Declaration of Randall A. Snyder ¶ 39, Ex. C; Krivoshey Decl., Ex. 9.) Further, defendant's advertising materials highlight that Rash Curtis uses "predictive dialers" to increase productivity. (Krivoshey Decl. Ex. 9 at 8; Ex. 12 at 18.) Accordingly, defendant's Dialers "fall squarely within the FCC's definition of 'automatic telephone dialing system.'" *Meyer*, 707 F.3d at 1043.

Defendant counters that this case should be stayed on the ground that the Ninth Circuit deferred submission on the issue of whether a predictive dialer constitutes an ATDS in *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (9th Cir. 2016), pending the D.C. Circuit's decision in *ACA International v. Federal Communications Commission, et al.,* No. 15-1211 (argued on October 19, 2016). *ACA International* concerns a a related issue, namely whether the 2003 FCC Order and 2008 FCC Ruling which indicate that predictive dialers constitute ATDSs are unlawful on due process grounds and under the Administrative Procedure Act. (Dkt. No. 159.)

Rash Curtis does not persuade. First, defendant offers no explanation as to why it waited until after plaintiffs incurred the costs of fact and expert discovery to seek a stay when the Ninth Circuit's deferral in *Marks* occurred more than one year ago. Second, the mere deferral of a case does not displace the existing law on the issue of whether predictive dialers constitute ATDSs. Third, even if the FCC's Orders are overturned, defendant could still face liability if plaintiffs

show that defendant made calls using prerecorded messages or artificial voices which are not at issue in *ACA International*.

Defendant further argues that *ACA International* implicates another issue in this case, namely the meaning of "called party" under the TCPA. While the Ninth Circuit has not addressed the definition of "called party" under section 227(b)(1)(A), district courts in this circuit have generally rejected the "intended recipient" definition proffered by defendant here. *See Olney v. Progressive Cas. Ins. Co.*, 2014 WL 294498, at *3 (S.D. Cal. 2014); *Jordan v. Nationstar Mortgage LLC*, 2014 WL 5359000, at *12 (N.D. Cal. 2014) (describing a brief history of how the federal courts have interpreted the term "called party" to conclude that continuing a stay would unnecessarily delay the case). Likewise, the Courts of Appeal in the Seventh and Eleventh Circuits have held that "called party" means current subscriber, not "intended recipient." *See Soppet v. Enhanced Recovery Company., LLC,* 679 F.3d 637, 643 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.,* 2014 WL 1258023, at *7 (11th Cir. 2014). Nothing about the interpretation of this statutory term appears to require any special expertise. The fact that numerous courts have interpreted the term "called party" weighs against a stay.

Accordingly, Defendant's motion to stay the case is **DENIED**. Plaintiffs' motion for summary judgment as to defendant's Dialers is **GRANTED** and the Court holds that Rash Curtis' Dialers constitute ATDSs within the meaning of the TCPA.

## B.  Prior Express Consent

The Ninth Circuit has held that "prior express consent is a complete defense to [a] TCPA clam." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Defendant argues that plaintiffs' TCPA claims fail as a matter of law because each plaintiff provided express prior consent. Plaintiffs disagree arguing that as a matter of law each plaintiff (i) did not provide express prior consent, and/or (ii) revoked consent prior to receiving certain calls. The Court addresses the parties' arguments with respect to each plaintiff.

### 1.  McMillion

Defendant offers evidence that plaintiff McMillion voluntarily provided her cell phone number ending in 0589 to Marin General Hospital ("Marin General") on several occasions. (Keith

Decl. ¶ 3, Ex. 4; Dkt. No. 140, Declaration of Mark E. Ellis ("Ellis Decl.") ¶ 4, Ex. 5, Deposition of Sandra McMillion ("McMillion Dep.") at 44:615, 92:9-93:3, 93:16-22, 94:2-8, 94:16-18, 95:105.) The record reflects that Rash Curtis obtained McMillion's cell phone ending in 0589 from Marin General which was defendant's client. (Keith Decl. ¶ 18, Ex. 3.)

Plaintiffs concede that defendant "initially had prior express consent to call McMillion." (Dkt. No. 151 at 6.) Accordingly, the Court **GRANTS IN PART** defendant's motion for partial summary judgment and holds that Rash Curtis had prior express consent with regard to calls received on or prior to February 2, 2016.

However, plaintiffs assert that McMillion revoked consent and was subsequently called by defendant on at least two occasions, namely on February 16, 2016 and February 17, 2016.[5] Plaintiffs proffer Rash Curtis' account notes for February 2, 2016, which state that McMillion "ASKED FOR NO MORE CALLS AT ALL SHE HAS A ATTY SO I ASKED FOR HIS INFO SHE SAID DNC [do not call] ME AGAIN [] AND REMOVE ALL NUMBER." (Krivoshey Decl. Ex. 18 at RCA000227 (capitalization in original).) Further, plaintiffs offer Rash Curtis call logs which show that McMillion's cellphone was called by Global Connect on February 16, 2016 and again on February 17, 2016.[6] (*Id.* at RCA000227.)

---

[5] Defendant asserts that these two calls are not at issue because they were "never expressly listed" in plaintiffs' complaint. (Dkt. No. 152 at 6.) Defendant makes similar arguments with regard to calls made to Adekoya and Perez which were not specifically listed in the complaint. Defendant does not persuade, as the complaint states that defendant called McMillion, Adekoya, and Perez "at least" on the dates specifically listed in the complaint. The complaint does not indicate that the lists are exhaustive. These additional calls are simply new facts supporting plaintiffs' claims and do not constitute a new theory of liability or an attempted amendment. *See Rezaipour v. County of Los Angeles*, 2014 WL 12674923, at *5 (C.D. Cal. 2014) (considering "new facts" at summary judgment where "the new facts are also logically related to those related in the [complaint]"); *McHenry v. Ford Motor Co*., 269 F. 2d 18, 25 (6th Cir. 1959) ("As a general rule plaintiffs should be liberally allowed to set up new facts which really are part of the original case.")

[6] Defendant argues in passing that that it had consent to make these calls because it received another account from Marin General on February 15, 2016, which was associated with McMillion. However, the record reflects that this account was related to a debt incurred on September 2, 2015, which was six months before McMillion allegedly revoked consent. Defendant makes no showing that McMillion's alleged revocation of consent was limited to a specific debt account.

United States District Court
Northern District of California

Defendant counters that McMillion incurred a new debt from Marin General on June 27, 2016, and never revoked consent to be called with regard to that debt. This debt was referred to Rash Curtis on December 10, 2016. Plaintiffs argue that the filing of this lawsuit which seeks damages and injunctive relief constitutes revocation of consent to be called by defendant in connection with *all* debts. Defendant was served on June 27, 2016. The Court finds that the service of plaintiffs' complaint effectively revoked consent to be called by Rash Curtis regarding all debts which McMillion allegedly owed.

Accordingly, the Court **GRANTS IN PART** plaintiff's motion for partial summary judgment with regard to calls received after February 2, 2016.

### 2. Adekoya

Adekoya provided her cell phone number ending in 5496 to Doctors Medical Center (the "DMC") in San Pablo, California, in connection with treatment administered to her minor son on January 5, 2015. (Keith Decl. ¶ 23, Ex. 8 at RCA 264; Ex. 9 at RCA 265.) According to defendant, Adekoya became indebted to the DMC in connection which the treatment of her son and the DMC referred the debt to Rash Curtis. (*Id.*)

Plaintiffs proffer Rash Curtis' audio call files which reflect that Adekoya revoked consent on April 18, 2016. During that call, Adekoya stated that "I believe you sent something to my mom already. I told you guys to stop called me, but you guys keep calling me . . . . I asked you nicely to stop calling and that I didn't have anything that you needed at the moment but if I do [] come across it I'll definitely give you guys a call. But you guys are not supposed to be contacting me."[7] (Dkt. No. 151-4 at 6:18–6:44.) Defendant's representative replied that she didn't "see where we've got down not to call you." (*Id*. at 6:46-6:52.) Adekoya responded that she had "been saying that for a long time" and that another Rash Curtis representative "called my job. She's not supposed to do that at all. That could get me terminated and then how am I supposed to pay any

---

[7] Defendant argues that Adekoya's alleged revocation applied only to her own debt and not to a separate debt incurred by Adekoya's mother. However, the record does not support a finding that Adekoya's alleged revocation of consent was limited to her own debt as her request to "stop calling me" does not appear ambiguous or equivocal. In any event, as noted above Adekoya specifically references contacts with regard to her mother.

bill? That's not something that should be happening so definitely she went too far." (*Id.* at 6:52-7:22.) Further, plaintiffs offer defendant's records which show that defendant called Adekoya's cellphone on April 27, 2016, and again on April 28, 2016. (*Id.* ¶ 21.)

Defendant counters that to revoke consent a plaintiff must "clearly express his or her desire not to receive further calls." *Van Patten*, 847 F.3d at 1048 (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7997 ¶ 67 (July 10, 2015)). The Court has reviewed the audio file of the April 18, 2016, call and finds that Adekoya "clearly express[ed] . . . her desire not to receive further calls." *Id.* Accordingly, the Court **GRANTS IN PART** plaintiff's motion for partial summary judgment as to whether defendant had prior express consent to call Adekoya with regard to calls received after April 18, 2016. By contrast, in light of defendant's unrebutted showing that Rash Curtis had express consent to call Adekoya prior to the call quoted above, the Court **GRANTS IN PART** defendant's motion for summary judgment as to calls received on or prior to April 18, 2016.

### 3. Perez

Perez alleges four calls in violation of the TCPA to his cell phone number ending in 5193. (Complaint ¶ 7.) According to defendant, non-party Daniel Reynoso voluntarily provided a cell phone ending in 5193 to Sutter General Hospital ("Sutter"). (Keith Decl. ¶ 26, Ex. 15.) Sutter then provided that number to Rash Curtis.[8] (Keith Decl. ¶ 26, Ex. 15.) Defendant argues that this constitutes prior express consent to call the cell phone ending in 5193 regardless of the account holder.

Defendant does not persuade. First, defendant concedes that that Rash Curtis "was attempting to reach a different individual when it called Mr. Perez's cell phone number," namely Reynoso. (Dkt. No. 71 at 3; 71-2, Ex. 6.) During his deposition, Perez testified that he had never

---

[8] Rash Curtis offers the testimony of Perez who states that on several occasions he voluntarily provided his cell phone number ending in 5193 to Sutter. (Ellis Decl. ¶ 6, Ex. 17, Deposition of Ignacio Perez ("Perez Dep.") at 49:9-24, 50:12-51:7.) However, defendant does not dispute that Perez provided this number to Sutter in connection with treatment which did *not* result in a debt and which was never referred to defendant for the purposes of debt collection. (Dkt. No. 152-7 at No. 21.)

United States District Court
Northern District of California

heard of Reynoso.  (Perez Dep. at 46:19-25, 48:18-49:6.)  Second, the Court reaffirms its previous

rejection of defendant's argument:

> Perez's provision of his phone number was not in connection with any particular
> debt owed by Perez.  Rather, Sutter [] referred a debt account associated with
> another individual.  Sutter [] then allegedly forwarded to defendant that
> individual's patient information sheet at some point, which included a cell phone
> number that belonged to Perez.  *That sequence of events does not constitute prior
> express consent.*

(Order Granting Plaintiffs' Motion for Class Certification at 10 (emphasis supplied).)  As in

*Meyer*, *supra*, "prior express consent is consent to call a particular telephone number *in connection*

*with a particular debt* that is given before the call in question is placed."  *See Meyer*, 707 F.3d at

1042 (emphasis supplied).  Here, it is undisputed that defendant did not call Perez "in connection

with a particular debt" owned by Perez.  Rather, the calls were in connection with a debt

apparently owed by non-party Reynoso.  Accordingly, the Court GRANTS plaintiffs' motion for

partial summary judgment and holds that defendant lacked prior express consent to call Perez.[9]

---

[9] Plaintiffs move to strike Exhibits 18 and 19 to the declaration of Bob Keith which was
filed on January 8, 2018.  (Dkt. No 140, Declaration of Bob Keith ("Bob Keith Decl."), Exs. 18
and 19.)  According to Keith, Exhibit 18 "is a screenshot of an 'ECA Advanced Trace Report'"
and "does not show a phone number ending in 5193" which is the number associated with plaintiff
Perez.  (*Id*. ¶ 12.)  Exhibit 19 is a screenshot of a defendant's "'Edit Tracking Report' for Daniel
Reynoso's account."  (*Id*. ¶ 13.)  Defendant argues that these reports show that Perez's number was
not skip-traced and therefore Perez cannot meet the class definition.

Plaintiffs aver that these exhibits should be stricken pursuant to Fed. R. Civ. Pro. 37(c)(1)
because defendant failed to "provide [this] information as required by Rule 26(a)."  Specifically,
plaintiffs proffer evidence that defendant represented on May 8, 2017, that no "ECA reports were
generated for . . . Perez."  (Dkt. No. 151, Ex. 38.)  Counsel further represented on May 8, 2017,
that plaintiffs "already have everything which my client can produce in this regard."  (*Id*.)

Defendant counters that these reports were generated for Reynoso, not for Perez.  Rash
Curtis does not persuade.  The Court finds defendant's representation that plaintiffs "already [had]
everything that [Rash Curtis] can produce" in regard to ECA Advanced Trace and Edit Tracking
Reports relevant to Perez's claims inconsistent with defendant's current position that Exhibits 18
and 19 "conclusively establish that Mr. Perez's 5194 number was not skip-traced."  Accordingly,
the Court STRIKES Exhibits 18 and 19 to the declaration of Bob Keith.

Plaintiffs also move to strike Exhibit 14 which an ECA Advanced Trade Report for
plaintiff Adekoya pursuant to (i) Federal Rule of Evidence 1002, (ii) the best evidence rule, and
(iii) defendant's production of these exhibits three days after plaintiffs deposed defendant's
30(b)(6) witness.  The Court previously warned defendant that "delaying and sandbagging tactics"
would not be tolerated and would result in monetary and/or evidentiary sanctions.  (Order
Granting Plaintiffs' Motion for Class Certification at 9 n.9.)  Accordingly, Exhibit 14 is hereby

### C.     Fair Debt Collection Practices Act

Under Section 1692d of the FDCPA, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Further, pursuant to Section 1692e, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id*. § 1692e.  The FDCPA enumerates sixteen specific types of conduct which constitute violations of Section 1692e, including failure to disclose during the "initial communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." *Id*. § 1692e(11).  The term "'consumer' means any natural person obligated or allegedly obligated to pay any debt." *Id*. § 1692a(3).

#### 1.     Section 1692d

The Court finds that plaintiffs' Section 1692d claims fail because plaintiff fail to show that defendant "acted with the requisite 'intent to annoy, abuse, or harass' in making the telephone calls at issue." *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009).  "Although the term 'harass' is not defined in the FDCPA, the Act's legislative history sheds light on what abusive practices violate § 1692d: obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a

---

STRICKEN.

Finally, plaintiffs seek to exclude the testimony of Mr. Keith and Mr. Paff which indicates that none of defendant's Dialers "contain an active random or sequential number generator which can dial numbers" on the ground that neither is qualified as an expert in the field and, in any event, they have not stated the basis for their opinions.  (Keith Decl. ¶ 32; Declaration of Chris Paff, ("Paff Decl.") ¶ 2.)  Plaintiffs do not persuade, as Mr. Keith serves as defendant's Collection Manager and Mr. Paff has served as Collection Manager and is currently President of Operations.  Both testify that through their work at Rash Curtis they are familiar with the "collection policies and procedures used by Rash Curtis during the relevant time periods, including the collection communications made" to plaintiffs.  (Keith Decl. ¶ 2; Paff Decl. ¶ 2.)  The declarants' first-hand professional experience provides a sufficient basis for them to testify regarding the capabilities and functionality of defendant's Dialers.  Plaintiffs' motion in this regard is **DENIED**.

consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 654 (E.D. Pa. 2012) (citing S.Rep. No. 95–382, at 2; 1977 U.S.C.C.A.N. 1695, 1696)). Several district courts have granted summary judgment in favor of a debt collector defendant on the ground that plaintiffs failed to show that defendant "placed each of its telephone calls with [the] intent to . . . harass or annoy." *Tucker v. The CBE Group Inc.*, 710 F. Supp. 2d 1301, 1305-1306 (M.D. Fla. 2010); *see also Chavious v. The CAE Group*, 2012 WL 113509, at *2 (E.D.N.Y. 2012); *Jones v. Rash Curtis*, 2011 WL 2050185, at *2-3 (N.D. Cal. 2011); *Lynch v. Nelson, Watson & Assoc.*, LLC, 2011 WL 2472588 (D. Kan. 2011); *Carmen v. CBE Group,* 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011); *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350, *3, 6 (M.D. Fla. 2010).

Here, plaintiffs' complaint alleges that defendant called them four (Perez), 33 (McMillion), and 45 times (Adekoya), respectively, and that such calls were made with "the intent to annoy and harass." (Complaint ¶¶ 3, 5, 7, 25, 30, 36.) The Court finds that plaintiffs' allegations are insufficient to create a triable factual issue at this juncture. First, the majority of cases cited above involved a *greater* number of calls than plaintiffs allege here. *See Carmen,* 782 F. Supp. 2d at 1232 (149 calls); *Lynch*, 2011 WL 247588 at *2 (86 calls); *Jones*, 2011 WL 2050185 at * 2-3 (179 calls); *Waite*, 2010 WL 5209350, at *3, 6 (132 calls). Second, plaintiffs cite "no evidence in the record from which a reasonable trier of fact could infer that [d]efendant acted with the requisite *intent* to annoy or harass in making the telephone calls at issue."[10] *Saltzman*, 2009 WL 3190359, at *7 (emphasis supplied). Although plaintiffs offer evidence that they requested Rash Curtis to stop calling them, plaintiffs did "not send [Rash Curtis] a cease and desist letter,[11] dispute the amount owed, or provide evidence that [Rash Curtis] has acted in a manner that would be

---

[10] The fact that McMillion was suffering from a serious illness does not establish defendant's *intent* to harass or annoy. Similarly, the mere fact that defendant allegedly called McMillion and Perez more than once on certain days is insufficient to establish the intent element.

[11] Even though a lawsuit was filed, virtually all of the conduct at issue occurred before Rash Curtis was served.

United States District Court
Northern District of California

actionable as harassment, oppression or abuse." *Id.* Further, plaintiffs present no evidence that defendant "called [plaintiffs] immediately after [plaintiffs] hung up . . . [or] called at odd hours." *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1239 (E.D. Cal. 2010).

In light of the legislative history of the Section 1692d and district court decisions interpreting the same, the Court **GRANTS** defendant's motion for partial summary judgment as to plaintiffs' claims under 15 U.S.C. § 1692d.

### 2. Section 1692e(11)

Defendant also argues that it is entitled to summary judgment with regard to Perez's FDCPA claim under Section 1692e(11) because plaintiffs concede that Perez was not obligated to pay any debt referred to defendant for collection and is thus not a "consumer" within the meaning of the FDCPA. (Perez Dep. at 29:4-30:16.) As noted Section 1692e(11) applies to "consumers" which the FDCPA defines as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Court finds that Perez does not qualify as a "consumer" as defined under the FDCPA because Perez was "not obligated on the [Rash Curtis] debt. Further, he is not the debtor's spouse, guardian, executor, or administrator." *Christy*, 905 F. Supp. 2d. at 653 (internal quotations omitted). Therefore, the Court **GRANTS** defendant's motion for partial summary judgment on Perez's claim under 15 U.S.C. § 1692e(11).[12]

### D. Rosenthal Act

The Rosenthal Act prohibits debt collectors from "(d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or (e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Civ. Code § 1788.11(d), (e). Under Section 1788.11, a "communication" requires "actual contact between the debt collector and the debtor." *Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323, at *4 (C.D. Cal. 2010).

---

[12] At the hearing held on January 30, 2018, plaintiffs' counsel conceded that Perez could not proceeded on his claim under 15 U.S.C. § 1692e(11). To the extent that plaintiffs seek recovery under Section 1788.11(b) and 1692d(6), the Court declines to address those claims as they were never pled.

The Court finds that Perez fails to make a sufficient showing show that defendant's "actual contact" was "with such frequency as to be unreasonable and to constitute [] harassment to the debtor under the circumstances." *Id.*; Cal. Civ. Code § 1788.11(e). As noted Perez alleges only four calls. Therefore, the Court **GRANTS** defendant's motion for partial summary judgment as to the Section 1788.11(e) claims of plaintiff Perez.

By contrast, plaintiff McMillion has proffered evidence sufficient to establish a triable with regard to her claim under Section 1788.11(e). Specifically, McMillion testified that she spoke with Rash Curtis as many as thirty times and that she obtained professional medical help to deal with the stress which defendant's automated calls caused her. (McMillion Dep. at 29:9-27:22, 72:7-74:19, 81:23- 82:20.) Defendant counters that the testimony of McMillion is not credible because it is inconsistent with Rash Curtis' call records. Defendant does not persuade, as the discrepancy between McMillion's testimony and defendant's call records reflects a disputed issue of material fact. Further, whether thirty instances of actual contact are "unreasonable and [] constitute an harassment to the debtor under the circumstances" presents a triable issue.

Similarly, Adekoya proffers sufficient evidence to establish a triable issue as to her claim under Section 1788.11(e). Specifically, the record reflects that defendant called Adekoya twice per day on at least a dozen occasions, and three times on May 27, 2015. (Dkt. No. 151, Fisher Decl., Ex. 22.) Further, plaintiffs proffer evidence that defendant called her at work on March 16, 2016, after Adekoya specifically asked defendant not to do so, and sent a fax to her work also after Adekoya specifically asked defendant not to do so. (*Id.*, Ex. 31 at 3:07, 7:05; Ex. 36 at 1:08, 1:30.)

Defendant's final point that plaintiffs' Rosenthal Act claims does not persuade because plaintiffs' "medical debt" does not constitute a "consumer credit transaction" under the Rosenthal Act also fails. "Credit" is defined as the "time that a seller gives the buyer to make the payment that is due." Black's Law Dictionary (10th ed. 2004.) "Consumer credit" is defined as credit "extended to an individual to facilitate the purchase of consumer goods and services."[13] *Id.* Here,

_____

[13] "Consumer goods" are undefined in Black's Law Dictionary, but are defined in the Uniform Commercial Code as "goods that are used or bought for use primarily for personal,

plaintiffs obtained medical services from various healthcare providers without immediate payment. Stated another way, the medical providers afforded plaintiffs "time . . . to make the payment that is due" and therefore extended "credit." Finally, the medical services at issue were used for personal and family purposes, namely maintaining the health of plaintiffs and their families. Giving the plain meaning to the statutory terms, the transaction here falls within the purview of "consumer credit transaction."

Accordingly, the Court **DENIES** defendant's motion for partial summary judgment as to the Section 1788.11(e) claim of plaintiffs McMillion and Adekoya.

### E.    Article III Standing

####    1.    Legal Standard

The constitutional standing doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 191 (2000). This "case or controversy" requirement is jurisdictional and cannot be waived. *City of L.A. v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). The party asserting federal jurisdiction must carry the burden of establishing standing under Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

The Supreme Court has held that the "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560-561; *Friends of the Earth,* 528 U.S. at 180–181.) "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the

family, or household purposes." UCC § 9-102(23).

plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).

"Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (Emphasis in original.) However, a "concrete" injury need not be "tangible." *Id.* at 1549. For example, intangible harm may nevertheless be concrete where the intangible harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1549. Further, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578).

### 2. Discussion

Defendants attack plaintiffs' Article III standing with regard to plaintiffs' claims under the TCPA and FDCPA. The Court addresses each.

### a. TCPA Claims

According to Rash Curtis, plaintiffs lack standing with regard to their TCPA claims because plaintiffs fail to allege "injury in fact" as a result of defendant's telephone calls. (Dkt. No. 140, Defendant's MSJ at 32.) Specifically, defendant argues that plaintiffs' alleged TCPA violations are insufficient to establish an "invasion of a legally protected interest" which is "actual" and not "conjectural or hypothetical."

Defendant relies primarily on *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1262 (S.D. Cal. 2016), which held that a TCPA violation was insufficient to satisfy the "concrete" requirement of Article III. Defendant does not persuade, as *Romero* is distinguishable.[14] There,

---

[14] Further, the Court notes that *Romero* does not constitute binding precedent and has been criticized by more than a dozen district courts. *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, 2017 WL 733123, at *7 (N.D. Cal. 2017) (finding that the reasoning of *Romero* was not consistent with *Spokeo*); *DeClue v. United Consumer Fin. Servs. Co.*, 2017 WL 1400144, at *3 (S.D. Cal. 2017); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 820 (C.D. Ill. 2017); *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1147 (D.N.M. 2016) (the "draconian analysis" of *Romeo* "ignores the existence of intangible harms that have been recognized in the legislative history and in the case law" and represents "an outlier in holding that a violation of the TCPA is a bare *procedural* violation and that some additional harm must be shown to establish standing") (emphasis in original); *Smith v. Blue Shield of California Life &*

the court found that it was "possible that the recipient's phone was not turned on or did not ring, that the recipient did not hear the phone ring, or the recipient for whatever reason was unaware that the call occurred." *Id.* Here, by contrast, the record reflects that plaintiffs answered defendant's calls.[15]

In any event, the Ninth Circuit specifically recognized in *Satterfield* that the "TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S.Rep. No. 102–178, at 1, 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968) (internal citations omitted)). The *Satterfield* Court further stated that the "TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. The consumers complained that such calls are a 'nuisance and an invasion of privacy.'" *Id.* The Court thus finds plaintiffs' showing sufficient to satisfy the "concrete" injury requirement of Article III and **DENIES** defendant's motion to for summary judgment as to plaintiffs' TCPA claims based on lack of standing.[16]

---

*Health Ins. Co.*, 228 F. Supp. 3d 1056, 1062 (C.D. Cal. 2017), *judgment entered,* 2017 WL 149798 (C.D. Cal. 2017) (agreeing with "those federal courts that have criticized [] *Romero*"); *Mbazomo v. Etourandtravel, Inc.*, 2016 WL 7165693 (E.D. Cal 2016) (rejecting the reasoning of *Romero*); *Wilkes v. CareSource Mgmt. Grp., Co.*, 2016 WL 7179298, at *5 (N.D. Ind. 2016).

[15] In any event, as stated in this Court's order granting plaintiff's motion for class certification, it "does not matter whether a plaintiff lacks additional tangible harms like wasted time, actual annoyance, and financial losses. Congress has identified that unsolicited telephonic contact constitutes an intangible, concrete harm." (Order Granting Plaintiffs' Motion for Class Certification at 7–8 (quoting *Nghiem v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 811 (C.D. Cal. 2016)); *see also Smith v. Microsoft Corp.*, 2012 WL 2975712, at *6 (S.D. Cal. 2012).

[16] Defendant also argues that plaintiffs lack standing because plaintiffs have not suffered a "financial injury" as they "were not charged for any call." (Defendant's MSJ at 33.) This argument fails in light of *Spokeo* which held that intangible injuries can satisfy Article III's standing requirements.

Further, Rash Curtis asserts that plaintiffs cannot show that their injuries were "fairly traceable to the challenged conduct of the defendant" because each plaintiff "voluntarily provided his or her cell phone numbers." (*Id.*) Defendant's challenge is more aptly addressed as an argument that Rash Curtis is entitled to an affirmative defense of prior express consent, not as an attack on plaintiffs' Article III standing. In any event, as noted herein, defendant fails to establish as a matter of law that it is entitled to this defense. *See* Section II.B, *supra*.

19

United States District Court
Northern District of California

### b. FDCPA Claims

Defendant argues that plaintiffs lack standing for their FDCPA claims because plaintiffs fail to allege "actual concrete harm" as a result of defendant's telephone calls. (Defendant's MSJ at 32.) Rash Curtis relies primarily on *May*, which held that a "violation of the FDCPA alone . . . does not automatically amount to an injury in fact." *May v. Consumer Adjustment Co., Inc.*, 2017 WL 227964, at *4 (E.D. Mo. 2017.) Defendant does not persuade. As an initial matter, *May* is not binding on this Court. Second, "successful post-*Spokeo* standing challenges to FDCPA claims are a small minority" and "[m]any other recent district court opinions have also recognized that" an FDCPA "violation, standing alone, creates a sufficiently concrete injury." *Byrne v. Oregon One, Inc.*, 2017 WL 3568412 (D. Or. 2017), at *6 (citing *Feldheim v. Fin. Recovery Serv., Inc.*, 2017 WL 2821550, at *6 (S.D.N.Y. 2017) ("[M]aking a false statement in connection with an attempt to collect a debt is sufficient harm for standing purposes. In other words, a plaintiff who receives such a misrepresentation has suffered injury in precisely the form [§] 1692e of the FDCPA was intended to guard against.") (citation and internal quotation marks omitted)).[17] Accordingly, defendant's motion for summary judgment on plaintiff's FDCPA claims based on lack of standing is **DENIED**.

//

//

//

---

[17] *See also Gonzalez v. Credit Prot. Ass'n, LP*, 2017 WL 2798404, at *2 (N.D. Ill. 2017) ("Although any actual concrete injury to either of the Plaintiffs appears to be minimal, even bordering on invisible . . . the type of violations of the FDCPA alleged in this case are sufficient to confer Article III standing."); *Dunham v. Robert Crane & Assoc., LLC*, 2017 WL 2664287, at *5 (S.D. Ind. 2017) ("[C]ourts routinely find that FDCPA violations establish concrete injuries for standing purposes."); *Balke v. Alliance One Receivables Mgmt., Inc.*, 2017 WL 2634653, at *3 (E.D.N.Y. 2017) ("[T]he Court finds that the Plaintiff's alleged failure to plead facts showing an injury beyond the statutory violations themselves does not divest her of Constitutional standing to maintain this action."); *Matute v. A.A. Action Collection Co., Inc.*, 2017 WL 2573714, at *5 (D. N.J. 2017); *Pogorzelski v. Patenaude & Felix APC*, 2017 WL 2539782, at *5 (E.D. Wis. 2017); *Kaiser v. Cascade Capital LLC*, 2017 WL 2332856, at *5 (D. Or. 2017); *Hill v. Accounts Receivable Servs., LLC*, 2016 WL 6462119, at *4 (D. Minn. 2016) (stating that section 1692e establishes a right to truthful information regarding the collection of a debt," the violation of which constituted "real harms and not merely procedural violations"); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 71–73 (N.D. Ill. 2016) (holding that alleged violations of §§ 1692e and 1692f constitute concrete injuries sufficient for Article III standing).

## V. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

1.  Plaintiffs' motion for partial summary judgment is **GRANTED** with regard to Rash Curtis' Dialers and the Court holds that the Dialers constitute ATDSs within the meaning of the TCPA.

2.  On the issue of McMillion's prior express consent, defendant's motion for partial summary judgment is **GRANTED** with regard to calls received on or prior to February 2, 2016; plaintiffs' motion is **GRANTED** as to calls after February 2, 2016.

3.  With regard to Adekoya's prior express consent, defendant's motion for partial summary judgment is **GRANTED** with regard to calls received on or prior to April 18, 2016; plaintiffs' motion is **GRANTED** as to calls received after April 18, 2016.

4.  Plaintiffs' motion for partial summary judgment on the issue of prior express consent with regard to Perez is **GRANTED.**

5.  Defendant's motion for partial summary judgment on plaintiffs' FDCPA claims is **GRANTED**.

6.  Defendant's motion for partial summary judgment on plaintiffs' Rosenthal Act claims is **GRANTED** as to plaintiff Perez and **DENIED** as to plaintiffs Adekoya and McMillion.

7.  Defendant's motion to dismiss plaintiffs' TCPA and FDCPA claims for lack of Article III standing is **DENIED**.

This Order terminates Docket Numbers 139–140, 153, 156.

**IT IS SO ORDERED.**

Dated: February 2, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**