Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 173, 175 |

## I. INTRODUCTION

Defendant Rash Curtis & Associates ("Rash Curtis") hereby responds to the Court's Order to Show Cause (Dkt. No. 175) and FURTHER opposes Plaintiffs' request for sanctions as outlined in Plaintiffs' Motion to Extend Deadline to Serve Amended Expert Designations and to File Notice Plan and For Sanctions Pursuant to Civil L.R. 6-3 and 7-11 (Dkt. No. 173) ("Plaintiffs' Administrative Motion").[1]

Rash Curtis opposes Plaintiffs' Administrative Motion on the grounds that: (1) imposing sanctions under the circumstances here, without notice and opportunity to respond violates Rash Curtis' right to due process and is otherwise just unfair; (2) Plaintiffs' motion actually seeks to recover the shared costs of production, which Plaintiffs and Defendants were both ordered to share; and (3) good cause exists to *not* impose sanctions. As explained below, Rash Curtis, through its attorneys, has literally done everything in its power to timely comply with the Court's order directing it to produce the VIC call logs by February 15, 2018. (Dkt. No. 145.) In truth, the VIC call logs are plagued with problems, not of Rash Curtis' making, and Rash Curtis and its counsel have worked diligently with DAKCS to address these problems in an expedient manner.[2]

## II. BACKGROUND

Following the October 17, 2017 discovery hearing, the Court ordered a "rolling production" of certain Rash Curtis' computerized collection records, including the so-called "call logs." These included records from the so-called "VIC" dialer purchased by Rash Curtis from, and maintained by, DAKCS. (Valenti Decl., ¶¶ 3-4; **Exhibit A** thereto; Keith Decl., ¶ 3.) After contacting DAKCS, Rash Curtis was able to obtain the native files containing the historical call data from the VIC archives. (Valenti Decl., ¶¶ 6-7; Keith Decl., ¶ 5.) The VIC files were originally produced to class counsel in their "native" format on November 21, 2017. (Valenti Decl., ¶ 7; Keith Decl., ¶ 5.) It soon became

---

[1] Rash Curtis does *not* oppose Plaintiffs' request to extend the deadlines to serve amended expert designations or file a notice plan; indeed, Rash Curtis advised Plaintiffs it would stipulate to extend these deadlines. (Valenti Decl., ¶ 30; **Exhibit C** thereto.) This opposition is limited solely to Plaintiffs' request for sanctions.

[2] The other call logs from Global Connect and TCN were timely produced without any issues in November 2017. (Valenti Decl., ¶ 5; Keith Decl., ¶ 4.)

- 1 -

clear, however, that there were issues with the native format VIC files. (Valenti Decl., ¶¶ 8-11; Keith Decl., ¶ 6.) Rash Curtis agreed to work with DAKCS to manipulate the electronically-stored information ("ESI") into a more usable call log format. (Valenti Decl., ¶¶ 8-11; Keith Decl., ¶ 6.) DAKCS ultimately agreed to write a custom program to parse the native format VIC files into more useable call logs, at a cost of $13,212.50. (Valenti Decl., ¶¶ 12-16; Keith Decl., ¶¶ 6-7.) Defendants and Plaintiffs mutually agreed to each pay for half of these production costs, as ordered by the Court. (Valenti Decl., ¶¶ 4, 11, 16; Keith Decl., ¶ 7.)

Meanwhile, Plaintiffs filed an administrative motion to extend the deadline to serve amended expert designations because DAKCS could not provide an estimated target date for completion. (Valenti Decl., ¶¶ 14-15.) On December 19, 2017, Rash Curtis' counsel received authority to incur the production costs on behalf of Rash Curtis. (Valenti Decl., ¶ 17; Keith Decl., ¶ 7.) That same day, the Court responded to Plaintiff's administrative motion by ordering Rash Curtis to produce the VIC call logs one week later, on the Friday after Christmas, December 26, 2017, when virtually all offices were closed. (Valenti Decl., ¶ 18.)

Rash Curtis immediately notified DAKCS of the Court's order, but DAKCS stated it would not be able to meet the Court's deadline. (Valenti Decl., ¶¶ 18-19.) On January 2, 2018, DAKCS provided Rash Curtis' attorneys with a target completion date of February 15, 2018. (Valenti Decl., ¶ 21.) Given this target date, Rash Curtis stipulated to another extension of the pre-trial and trial deadlines. (Valenti Decl., ¶ 22.)

At the January 30, 2018 Case Management Conference, the Court ordered Rash Curtis to produce the VIC call logs by February 15th and indicated that failure to comply could result in daily sanctions in an amount "to be determined." (Valenti Decl., ¶ 23; **Exhibit B** thereto.) DAKCS timely generated the VIC call logs overnight on February 14, 2018 and provided them to Rash Curtis on February 15, 2018. (Valenti Decl., ¶¶ 26-27; Keith Decl., ¶ 8.)

However, again, when the call logs were opened, they were unreadable. (Valenti Decl., ¶ 27; Keith Decl., ¶ 8.) Rash Curtis' counsel immediately communicated with DAKCS in order to resolve the issue, but it did not receive a response until 9:39 p.m. on Friday night, February 16, 2018. (Valenti Decl., ¶¶ 27-28; Keith Decl., ¶ 8.)

- 2 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DEADLINE TO SERVE AMENDED EXPERT DESIGNATIONS AND TO FILE NOTICE PLAN AND FOR SANCTIONS

1  Over the weekend of February 17 and 18, DAKCS worked to resolve the formatting issue; new reports were generated on Sunday, February 18, 2018. (Valenti Decl., ¶¶ 28-29; Keith Decl., ¶ 8.) The new reports were provided to Rash Curtis' counsel on Tuesday, February 20, 2018, and were immediately transmitted to Plaintiffs' counsel via overnight mail. (Valenti Decl., ¶¶ 29-30; Keith Decl., ¶ 8.)

Nonetheless, still other issues plagued the call logs, including missing information and extraneous entries. Plaintiffs' counsel asked Rash Curtis to stipulate to a further extension of the deadline to amend expert designations and file a motion for approval of a notice plan. (Valenti Decl., ¶ 29.) Rash Curtis agreed to stipulate to the requested extension. (Valenti Decl., ¶ 30; **Exhibit C** thereto.)

In the meantime, Plaintiffs' counsel began analyzing the call logs and discovered yet additional issues with the data. (Valenti Decl., ¶ 30 Keith Decl., ¶ 8.) Plaintiffs' counsel sent several emails to Rash Curtis' counsel who, in turn, forwarded these inquiries to DAKCS for answers. (Valenti Decl., ¶¶ 30-31; Keith Decl., ¶ 8.) DAKCS, however, failed to respond until Monday, February 26, 2018, the same date on which Plaintiffs filed this Administrative Motion. (Valenti Decl., ¶ 32; Dkt. No. 173.) Over the course of this week, Rash Curtis has been in constant communications with DAKCS to see if the additional issues can be resolved. (Valenti Decl., ¶¶ 32-36.) On Wednesday, February 28, 2018, DAKCS agreed to participate in a conference call on March 1, 2018, to discuss these issues. (Valenti Decl., ¶¶ 34.) Meanwhile, the Court issued the Order to Show Cause (Dkt. No. 175) and Order Re: Plaintiffs' Motion to Extend Deadlines and for Sanctions (Dkt. No. 173) only one day after the administrative motion was filed. Rash Curtis was not afforded an opportunity to respond to Plaintiffs' Administrative Motion before the Court issued the foregoing orders. Civil L.R. 7-11(b).

Earlier today, on Thursday, March 1, 2018, DAKCS finally acknowledged that the call logs generated by its custom program were over-inclusive and included extraneous entries and files which were not outbound calls placed by Rash Curtis using the VIC dialer. (Valenti Decl., ¶¶ 37-39; Keith Decl., ¶ 9.) In order to address these issues, DAKCS proposed writing a new program, at a cost of approximately $5,600 which would sort through the original call logs and remove the extraneous entries. (Valenti Decl., ¶¶ 37-39; Keith Decl., ¶ 9.) Rash Curtis' attorneys agreed to the plan, signed

- 3 -

the new job order, and authorized DAKCS to commence the project.  (Valenti Decl., ¶ 39; **Exhibit D** thereto; Keith Decl., ¶ 9.)

## III.  ARGUMENT

**A.     Imposing Sanctions without Proper Notice and an Opportunity to be Heard Violates Rash Curtis' Right to Due Process and is Just Unfair.**

"During the course of case proceedings, a party may require a Court order with respect to miscellaneous administrative matters…"  Civil L.R. 7-11.  Any opposition to or support for a so-called Motion for Administrative Relief "*must be filed* no later than *4 days* after the motion has been filed."  Civil L.R. 7-11(b).  "Unless otherwise ordered, a Motion for Administrative Relief is deemed submitted for immediate determination without hearing ***on the day after*** the ***opposition*** is due."  Civil L.R. 7-11(c) (emphasis added).

Plaintiffs' Administrative Motion was filed on February 26, 2018.  (Dkt. No. 173.)  Therefore, Rash Curtis' opposition was not due until March 2, 2018.  Civil L. R. 7-11(b).  Plaintiffs' motion is *not* deemed submitted for immediate determination until the following day, March 3, 2018.  Civil L. R. 7-11(c).  However, this Court issued the subject orders (Dkt. Nos. 174-175) on February 28, 2018 – a mere two days after Plaintiffs' motion was filed, and three days *before* the time allowable under the local rules.  Further, the Court gave Rash Curtis one *less* day to file its response.  Civil L. R. 7-11(c).  Rash Curtis respectfully submits this is unfair, and it was deprived of its full rights to respond to Plaintiffs' Administrative Motion.

Moreover, Plaintiffs' Administrative Motion is not the proper vehicle to request discovery sanctions.

In *Hess v. Astrazeneca Pharmaceuticals, L.P.*, 2006 WL 2092068, at *1 (N.D. Cal. July 26, 2006) (per Hamilton, District Judge), the court observed that an administrative motion is *not* the appropriate vehicle for resolution of substantive arguments.  *Id.*  "[T]he administrative motion procedure fails to give the parties – and specifically, the non-responding defendants here – adequate opportunity to be heard."  *Id.*  Here, as in *Hess*, Rash Curtis has not been afforded an adequate opportunity to respond in accordance with Civil Local Rule 7-11(b).

More importantly, this administrative motion addresses substantive issues which should be

- 4 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DEADLINE TO SERVE AMENDED EXPERT
DESIGNATIONS AND TO FILE NOTICE PLAN AND FOR SANCTIONS

resolved, if at all, through a noticed motion for sanctions under Civil Local Rule 37-4.  Civil Local Rule 37-4 requires that any motion for discovery sanctions must comply with Civil Local Rule 7-2 which, in turn, mandates that the motion be noticed for a hearing not less than 35 days after filing of the motion.  Plaintiffs' use of the administrative motion procedure is improper to seek sanctions and deprives Rash Curtis of an opportunity to respond and be heard.  *See Hess, supra,* 2006 WL 2092068, at *1, fn. 1.  This Court has issued an order imposing sanctions starting March 1st without giving Rash Curtis a chance to explain the circumstances.

**B.     Plaintiffs' Motion Seeks "Sanctions" to Recover Costs Plaintiffs Were Ordered to Pay.**

Plaintiffs claim they would never have <u>*volunteered*</u> to pay the $6,606.24 they now seek in "sanctions" had they known that there would be issues with the VIC call logs.  (Plaintiffs' Administrative Motion, Dkt. No. 173, p. 1:15-19.)  But Plaintiffs were <u>*ordered*</u> to pay half of the production costs, and the Defendants the other half.  (Order Re Five Joint Discovery Letter Briefs, Dkt. No. 109, pp. 1:26-2:1 ("Plaintiffs and Defendant ***shall*** split the cost associated with producing the call log data.") (emphasis added); Valenti Decl., ¶ 5.)  Defendant did not ask for these problems.  It is not the cause of the problems.  Defendant had no control whatsoever over the failure of the DAKCS conversion program to be 100% effective.

Plaintiffs' request for "sanctions" in the amount of $6,606.24 is an obvious attempt to recoup costs of discovery previously ordered by the Court.  But, again, Rash Curtis is not to blame for DAKCS' failure to create a conversion program which worked perfectly; as the Court can see, Rash Curtis and its attorneys have worked diligently to resolve the issues affecting the VIC call logs.

**C.     Good Cause Exists Not to Impose Sanctions.**

Had Rash Curtis produced the original, unformatted reports on February 15, 2018, Plaintiffs' counsel would have surely thrown a fit.  Instead, Rash Curtis notified Plaintiffs of the issue and attempted to remedy the issue, and, as such, subsequently produced the VIC call logs five days later, and as soon as they were properly formatted.  (Valenti Decl., ¶¶ 26-29.)  The call logs *were* produced!

Rash Curtis has worked diligently to resolve other outstanding issues plaguing the call logs, including sending emails to DAKCS on a daily, or almost daily, basis in an effort to get the call logs

- 5 -

perfect. (*Id*. at ¶¶ 29-36.) But Rash Curtis is at the mercy of DAKCS, the third-party vendor who wrote and implemented the custom program to convert the native format VIC files into "useable" call logs. (Keith Decl., ¶ 10.) On March 1, 2018, DAKCS acknowledged that the call logs were over-inclusive due to a problem with its custom program. (*Id*. at ¶¶ 37-39.) Rash Curtis immediately authorized DAKCS to proceed with writing a new program at an additional cost to itself of about $5,600. (Valenti Decl., ¶ 39; **Exhibit D** thereto.)

To impose sanctions against Rash Curtis under these circumstances, where Rash Curtis is itself unable to comply with the Court's order and is instead relying upon a non-party to provide the ordered information, is improper and gratuitous. *See United States v. Drollinger,* 80 F.3d 389, 393 (9th Cir. 1996) (present inability to comply with court order requiring the production of documents is a complete defense to civil contempt); *see also United States v. Bright,* 596 F.3d 683, 695 (9th Cir. 2010) (same).

Dated: March 1, 2018

ELLIS LAW GROUP LLP

By /s/ *Anthony P. J. Valenti*
Anthony P. J. Valenti
Attorney for Defendant
RASH CURTIS & ASSOCIATES

- 6 -

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DEADLINE TO SERVE AMENDED EXPERT DESIGNATIONS AND TO FILE NOTICE PLAN AND FOR SANCTIONS