1  Mark E. Ellis - 127159
   Anthony P. J. Valenti - 284542
2  Lawrence K. Iglesias - 303700
   ELLIS LAW GROUP LLP
3  1425 River Park Drive, Suite 400
   Sacramento, CA 95815
4  Tel: (916) 283-8820
   Fax: (916) 283-8821
5  mellis@ellislawgrp.com
   avalenti@ellislawgrp.com
6  liglesias@ellislawgrp.com

7  Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' NOTICE OF MOTION AND MOTION TO AMEND THE COURT'S JUNE 18, 2018 ORDER DENYING MOTION FOR RECONSIDERATION [FRCP 59(e)]**<br><br>**Date:** August 21, 2018<br>**Time:** 2:00 p.m.<br>**Courtroom:** 1<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

# NOTICE OF MOTION

TO THE PLAINTIFFS AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on August 22, 2018, at 2:00 p.m., in Courtroom 1, 4th Floor, in the above entitled Court located at 1301 Clay Street, Oakland, California, Defendant Rash Curtis & Associates will, and hereby does, move this Court to amend its Order Denying Motion for Reconsideration, dated June 18, 2018 (ECF Doc. No. 199), to include the language required by 28 U.S.C. § 1292(b), that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

This motion is made on the grounds that Rash Curtis & Associates' Motion for Reconsideration involved controlling questions of law as to which there is a substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Court's Order Denying Motion for Reconsideration does not contain the prerequisite jurisdictional language which must be in an order before Rash Curtis may request certification for an interlocutory appeal from the of the order from the Ninth Circuit. Rash Curtis & Associates requests relief in the form of an amendment by this Court to its Order Denying Motion for Reconsideration to include the language that is a prerequisite to certification for an interlocutory appeal, that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see Fed. R. App. P. 5(a)(3).

Dated: July 16, 2018

                                            ELLIS LAW GROUP LLP

                                            By _/s/ Mark E. Ellis_
                                                  Mark E. Ellis
                                                  Attorney for Defendant
                                                  RASH CURTIS & ASSOCIATES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendant Rash Curtis & Associates hereby moves to amend this Court's Order Denying Motion for Reconsideration, dated June 18, 2018 (ECF Doc. No. 199) (the "Reconsideration Order"), to include the jurisdictional language required by 28 U.S.C. § 1292(b) so that Rash Curtis may apply for certification of an interlocutory appeal by the Ninth Circuit. *See* Fed. R. App. P. 5(a)(3) ("If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement."); 28 U.S.C. § 1292(b) ("When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it...").

## II. BACKGROUND

On February 2, 2018, the Court issued its Order Re: Cross Motions for Summary Judgment; Denying Motion for Stay (the "MSJ Order"). (ECF Doc. No. 167.) With respect to the parties' cross-motions for summary judgment, this Court granted summary judgment to Plaintiffs and denied summary judgment to Rash Curtis on the ATDS issue, finding that each of Rash Curtis' telephone dialing systems constituted an Automatic Telephone Dialing System, within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, because they were predictive dialers. (MSJ Order, pp. 6:7-8:18.)

On March 16, 2018, the D.C. Circuit Court issued its decision in *ACA Int'l v. FCC,* 855 F.3d 687 (D.C. Cir. 2018). That same day, this Court granted Rash Curtis leave to file a Motion for Reconsideration addressing the impact of the D.C. Circuit's decision in *ACA Int'l.* Rash Curtis filed

- 1 -

its Motion for Reconsideration of the Court's MSJ Order on March 30, 2018 (ECF Doc. No. 189).

On June 18, 2018, this Court issued its Reconsideration Order, in which the Court "den[ied] Rash Curtis' motion to reconsider the parties' motions for summary judgment, or, in the alternative, stay this case" until the outcome of *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (9th Cir. December 2016) which is currently pending before the Ninth Circuit. (Reconsideration Order, ECF Doc. No. 199, at p. 2:9-11.)

Notwithstanding its denial, the Court observed that "[t]he impending decision in *Marks* will constitute controlling law and will likely clarify the Ninth Circuit's position on the type of device or system that qualifies as an ATDS within the meaning of the TCPA." (Reconsideration Order, ECF Doc. No. 199, at p. 7:4-7.)

On June 26, 2018, and June 29, 2018, decisions interpreting *ACA Int'l* were issued by the Third and Second Circuits, respectively. *See Dominguez v. Yahoo, Inc.*, 2018 WL 3118056 (3d Cir. June 26, 2018); *see also King v. Time Warner Cable Inc.*, 2018 WL 3188716 (2d Cir. June 29, 2018).[1] Both decisions came to positions interpreting *ACA Int'l* consistent with Rash Curtis' positions as advanced in its motion for reconsideration, as discussed *infra*. Neither of these decisions had been issued at the time that this Court ruled on Rash Curtis' motion for reconsideration. A true and correct copy of the Third Circuit's decision in *Dominguez v. Yahoo, Inc.* is attached hereto as "**Exhibit A**". A true and correct copy of the Second Circuit's decision in *King v. Time Warner Cable Inc.* is attached hereto as "**Exhibit B**".

### III. LEGAL STANDARD

A party may only apply for an interlocutory appeal under 28 U.S.C. § 1292(b) if the order contains the requisite jurisdictional language, *i.e.*, that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." This Court's Reconsideration Order did not contain the requisite jurisdictional language. (Reconsideration Order,

---

[1] As of the date of this motion (July 16, 2018), the *King* and *Dominguez* decisions are the only U.S. Circuit Court of Appeals decisions to interpret *ACA Int'l*.

- 2 -

ECF Doc. No. 199, *passim*.)

A Rule 59(e) motion is the appropriate procedural device for a party who seeks to amend an order to include the jurisdictional language required to apply for an interlocutory appeal under 28 U.S.C. § 1292(b). *See Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962) ("the trial court ha[s] the power to supplement the original order to include the § 1292(b) statement."); *see also Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2016 WL 6094446, at *2 (E.D. Cal. 2016) ("Rule 59(e) authorizes district courts to 'alter or amend a judgment,' Fed. R. Civ. P. 59(e), including appealable interlocutory orders") (citing *Balla v. Idaho State Bd. Of Corr.*, 869 F.2d 461, 466 (9th Cir. 1989)).[2]

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).[3]

Courts in the Ninth Circuit have traditionally found that an interlocutory appeal is appropriate, and that a substantial ground for difference of opinion exists, where, like here, the other circuits are in dispute on a question and the Ninth Circuit has not spoken on the point. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally find that a substantial ground for difference of opinion exists where 'the circuits are in

---

[2] This motion is timely. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.")

[3] If the district court amends the order to contain the required jurisdictional language, the 10 day window to certify an interlocutory appeal under 28 U.S.C. § 1292(b) is reset and "the appeal time [runs] from the entry of the supplemental order." *Houston Fearless Corp., supra*, 313 F.2d at 92.

- 3 -

dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'"). Furthermore, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final dispositive effect on the litigation, only that it 'may materially' advance the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

## IV. ARGUMENT

Under these circumstances, where the circuits are in dispute, and the Ninth Circuit has not spoken on the point, substantial grounds for difference of opinion exist as to each of several controlling questions of law raised in Rash Curtis' motion for reconsideration, including:

(1) whether *ACA Int'l* caused a substantial change in controlling law;

(2) whether, after *ACA Int'l*, Rash Curtis' dialers constitute an "ATDS"; and

(3) whether Rash Curtis may be held liable under the TCPA for dialing a reassigned cell phone number, where Rash Curtis had a good-faith belief that the information provided by its creditor-client established "prior express consent."

As evidenced by (i) the conflicting treatment of these issues following *ACA Int'l* by District Courts within this circuit,[4] (ii) with other circuit decisions coming to conclusions which are consistent with the positions advanced by Rash Curtis in its motion for reconsideration, discussed *infra*, and (iii) that the Ninth Circuit has not yet spoken on the point, Rash Curtis respectfully submits that a "substantial ground for difference of opinion" exists for the purposes of an interlocutory appeal under 28 U.S.C. § 1292(b). *See Couch, supra,* 611 F.3d at 633 ("Courts traditionally find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point...'"); *see also Reese, supra,* 643 F.3d at 688 ("'this [request for interlocutory] appeal involves an issue over which reasonable judges might differ'

---

[4] Compare, *e.g., Herrick v. GoDaddy.com LLC*, 2018 WL 2229131, at *7 (D. Ariz. May 14, 2018) ("As a result of the D.C. Circuit's holding on the issue, this Court will not defer to any of the FCC's 'pertinent pronouncements' regarding the first required function of an ATDS, i.e., whether a device that has the capacity to store or produce telephone numbers 'using a random or sequential number generator.'") with *O'Shea v. Am. Solar Sol., Inc.*, 2018 WL 3217735, at *2 (S.D. Cal. July 2, 2018) ("The *ACA* decision left intact the holding of both the FCC's 2003 and 2008 Order that an autodialer is an ATDS.").

- 4 -

and such 'uncertainty provides a credible basis for a difference of opinion' on the issue.").

Furthermore, Rash Curtis submits that an immediate appeal from the Reconsideration Order "may materially advance the ultimate termination of the litigation" by potentially narrowing the issues for trial, and by potentially bringing clarity as to Rash Curtis' potential class exposure, if any. *Reese, supra,* 643 F.3d at 688. As the Court's MSJ Order states, Rash Curtis "could still face liability if plaintiffs show that defendant made calls using prerecorded messages or artificial voices which are not at issue in *ACA International*". (MSJ Order, at pp. 7:27-8:2). However, any potential liability Rash Curtis faces for any violation of the TCPA predicated upon the use of prerecorded or artificial voice messages involves significantly different factual issues, not yet advanced to date, much less tried because the use of artificial or prerecorded voice *systems* is not barred by the TCPA. *See Ybarra v. Dish Network, L.L.C.,* 807 F.3d 635, 641 (9th Cir. 2015).[5]

### A. *ACA Int'l* Caused a Significant Change in Controlling TCPA Law

First, the Ninth Circuit has not yet spoken on whether *ACA Int'l* caused a significant change in controlling law, but multiple district courts within this circuit have so found. *See, e.g., Marshall v. CBE Group, Inc.,* 2018 WL 1567852, at *5 fn. 4 (D. Nev. Mar. 30, 2018) ("The Court rejects Plaintiff's argument that *ACA Int'l* does not bind this Court."); *Herrick v. GoDaddy.com LLC,* 2018 WL 2229131, at *5 fn. 5 (D. Ariz. May 14, 2018) ("This Court finds that the decision in *ACA Int'l* is binding on district courts in this circuit.").[6] This Court, nonetheless, found that "*ACA*

---

[5] In *Ybarra*, the Ninth Circuit, parsing the language of the TCPA's bar on "automatic telephone dialing system[s] or an artificial or prerecorded voice" found that "it is not unlawful under the TCPA to make a call using an artificial or prerecorded voice *system*. ... We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must 'speak' *during the call*." *Ybarra, supra,* 807 F.3d at 641 (emphasis added). This Court's Reconsideration Order provides that plaintiffs' TCPA claims "concern defendant's use of an artificial or prerecorded voice *system*". (Reconsideration Order, ECF Doc. No. 199, at p. 7:7-9.) *See* 47 U.S.C. § 227(b)(1)(A) (emphasis added).

[6] District Courts outside the Ninth Circuit have also found that *ACA Int'l* is binding authority. *See, e.g., Maddox v. CBE Group, Inc.,* 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) ("the Court is persuaded that [*ACA Int'l*] is binding in this Circuit as well"); *Ammons v. Ally Fin., Inc.,* 2018 WL 3134619, at *6 fn. 8 (M.D. Tenn. June 27, 2018) ("Although ACA International was decided by the D.C. Circuit, the decision is binding in this Circuit as well."); *Sessions v. Barclays Bank Delaware,* 2018 WL 3134439, at *2 (N.D. Ga. June 25, 2018) ("The decisions in those consolidated actions [referring specifically to *ACA Int'l*] are binding outside of the circuit in which they occur, including on this Court."); *Lord v. Kisling, Nestico & Redick, LLC,* 2018 WL 3391941, at *2 (N.D. Ohio July 12, 2018) ("After the D.C. Circuit's ruling, the TCPA does not completely prohibit calling or texting

- 5 -

*International*...does not itself constitute a change in the controlling law." (Reconsideration Order, ECF Doc. No. 199, at p. 5:5-7.)

Likewise, the only two United States Circuit Court of Appeals decisions to have reviewed and interpreted *ACA Int'l* as of the date of this motion have both found that *ACA Int'l* has worked a significant change in controlling law on issues pertinent to the instant case. *See King, supra*, 2018 WL 3188716, at *1 ("The district court's interpretation of the [TCPA] relied primarily on a Declaratory Ruling and Order issued by the [FCC] in 2015 that has since been invalidated by the D.C. Circuit. … We now conclude that the district court's analysis was based on an incorrect interpretation of the statutory text."); *see also Dominguez, supra*, 2018 WL 3118056, at *2 ("The decision in *ACA International* has narrowed the scope of this appeal."). The fact that the Ninth Circuit has yet to rule on the controlling or precedential value of *ACA Int'l* in the Ninth Circuit, and that the only two Circuit Courts of Appeal which have ruled on the issue both found that *ACA Int'l* caused a significant change in controlling law is sufficient to create a "substantial ground for difference of opinion" for the purposes of an interlocutory appeal under 28 U.S.C. § 1292(b). *See Couch, supra*, 611 F.3d at 633.

**B.    *ACA Int'l* Impacts What Dialing Equipment Constitutes an "ATDS"**

Second, courts within this circuit have been split as to what impact *ACA Int'l* has on the definition of an "ATDS" under Ninth Circuit precedent. The court in *Herrick* explained:

> To date, several courts in the Ninth Circuit have adopted the FCC's interpretation that a device may nevertheless meet the autodialer definition even when it only dials from a fixed set of numbers, e.g., when the device itself lacks the capacity to generate random or sequential numbers to be dialed. **But in so finding, these courts were bound and guided by the now-defunct FCC interpretations regarding this function. As such, the Court is also not persuaded to follow these holdings, particularly because the FCC interpretations relied upon by these courts were driven by policy considerations and not the plain language of the statute.**

*Herrick, supra,* 2018 WL 2229131, at *8 (internal quotations and citations omitted, emphasis

---

cellular telephones as long as an ATDS is not utilized. An ATDS is defined as 'equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.").

- 6 -

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO AMEND THE COURT'S JUNE 18, 2018 ORDER
DENYING MOTION FOR RECONSIDERATION [FRCP 59(e)]

added); *see also ACA Int'l, supra,* 855 F.3d at 701 ("While the Commission's latest ruling purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review. The agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform.").

Notwithstanding the FCC's now-defunct or otherwise "significantly uncertain" pronouncements as to the definition of an autodialer, the definition of an "ATDS" in the Ninth Circuit is in limbo. *See, e.g., Marks, supra,* Case No. 14-56834; *see also Herrick, supra,* 2018 WL 2229131, at *8.

In the Court's Reconsideration Order, the Court quotes *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) stating an "ATDS" "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it"; however, the *Satterfield* court <u>did not</u> determine that the dialer in that case was an "ATDS". *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (remanding the "ATDS" issue).

As noted in *Herrick*, the *Satterfield* decision stands for the position that the <u>TCPA</u> must be given its plain language meaning as to the definition of an "ATDS". "The Ninth Circuit has held that '[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Herrick, supra,* 2018 WL 2229131, at *3 (quoting *Satterfield, supra,* 569 F.3d at 951).

Likewise, the Court cited to *Meyer v. Portfolio Recovery Assocs.,* 707 F.3d 1036, 1043 (9th Cir. 2012), stating that "[i]n 2012, the court held that 'capacity' is not limited to present ability…" (Reconsideration Order, ECF Doc. No. 199, at p. 5:15-20). But the D.C. Circuit held that "even if the [TCPA] does not foreclose the Commission's interpretation [of "capacity"], *the interpretation [can] fall[] outside the bounds of reasonableness*". *ACA Int'l, supra,* 885 F.3d at 698 (emphasis added. In *Meyer*, "[the defendant] [did] ***not dispute*** that its predictive dialers have the capacity described in the TCPA." *Meyer v. Portfolio Recovery Assocs.,* 707 F.3d 1036, 1043 (9th Cir. 2012)

- 7 -

(emphasis added); *see also Marks v. Crunch San Diego, LLC,* 55 F.Supp.3d 1288, 1293 (S.D. Cal. 2014).[7] Thus, because the *Meyer* court did not address the question of whether that interpretation of "capacity" is a reasonable interpretation on the merits, *Meyer* lacks precedential value. *Id.* Respectfully, a substantial ground for a difference of opinion may exist as to whether the interpretation of "capacity" in *Meyer* is still tenable following *ACA Int'l*, where the D.C. Circuit found that "at least some predictive dialers…have no capacity to generate random or sequential numbers." *ACA Int'l, supra,* 885 F.3d at 703; *see also King, supra,* 2018 WL 3188716, at *3.[8]

Rash Curtis is not alone in its position that the definition of an "ATDS" now simply turns on whether the plain language of the statute, and not the FCC's prior rulings. To the contrary, *the only two United States Circuit Court of Appeals decisions* interpreting the D.C. Circuit's decision in *ACA Int'l* are consistent with Rash Curtis' position that a dialing "system" cannot be deemed an "ATDS" as a matter of law where it lacks the **present capacity** to generate random or sequential numbers and dial those numbers. The *Dominguez* court explains:

> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the **present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers**. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user. There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. **But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation**. The TCPA's prohibition on autodialers is therefore not the proper means of redress.

*Dominguez, supra,* 2018 WL 3118056, at *4 (emphasis added, footnote omitted) (**Exhibit A**).

Likewise, the *King* court explained the impact of *ACA Int'l* on its understanding of what

---

[7] In *Marks*, the district court found that "In *Meyer*, challenges to the FCC's authority to interpret the [TCPA] were waived because they were not raised at the district court level. … Here, the Court is able to address the argument and has addressed its merits. The Court finds that the FCC has no authority to modify or definitively interpret any language in § 227(a) of the TCPA."

[8] The *King* court, interpreting *ACA Int'l*, found that "the FCC's definition of 'capacity' in the 2015 Order, which includes a device's 'potential functionalities' after modification…would allow the statute to extend well past what Congress intended, and that the 2015 Order therefore failed 'the requirement of reasoned decisionmaking,'" [sic].

- 8 -

equipment constitutes an "ATDS":

> **We view the D.C. Circuit's decision as correctly drawing a distinction between a device that currently has features that enable it to perform the functions or an autodialer** – whether or not those features are actually in use during the offending call – *and a device that can perform those functions only if additional features are added*. We find that distinction persuasive; accordingly, **we would conclude that the former category of devices falls within the definition of an ATDS, and the latter does not**. ... In sum we conclude that the term **"capacity" in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions**, absent any modifications to the device's hardware or software.

*King, supra,* 2018 WL 3188716, at *5, 7 (*citing Herrick, supra,* 2018 WL 2229131, at *6) (emphasis added, footnote omitted) **(Exhibit B)**.

The circumstance that the only United States Circuit Court of Appeals decisions interpreting *ACA Int'l* to date have taken the same stance as Rash Curtis supports its position that a substantial ground for difference of opinion exists, particularly where the Ninth Circuit has not yet ruled on the definition of an "ATDS" following *ACA Int'l. Couch, supra,* 611 F.3d at 633.[9]

## C. A Good-Faith Belief That "Prior Express Consent" Exists Precludes TCPA Liability

Lastly, although *ACA Int'l* "set aside the Commission's treatment of reassigned numbers as a whole" because of the arbitrary nature of the one-call safe harbor, the Ninth Circuit has "echoed the same 'reasonable reliance' understanding" of "prior express consent." *ACA Int'l, supra,* 885 F.3d at 707, 709; *Chyba v. First Fin. Asset Mgmt., Inc.,* 2014 WL 1744136, at *11-12 (S.D. Cal. 2014), aff'd 671 F.App'x 989 (9th Cir. 2016). Rash Curtis submits that this Court's application of *Meyer* results in strict liability as to Rash Curtis' calls to Mr. Perez. (Reconsideration Order, ECF Doc. No. 199, at p. 6:3-7.) Since *ACA Int'l* vacated the FCC's unreasonable one-call safe harbor, pre-existing Ninth Circuit precedent which is grounded in conceptions of reasonable good-faith reliance controls, as the court in *Chyba* explained:

---

[9] The *King* court declined to undergo any analysis as to the amount of "human involvement" a dialer which cannot generate random or sequential telephone numbers to call must require in order to constitute an "ATDS", noting that the "'human involvement' standard...is not reflected in the [TCPA]" and that "the FCC expressly declined to adopt such a standard in its 2015 Order." *King, supra,* 2018 WL 3188716, at *7.

- 9 -

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO AMEND THE COURT'S JUNE 18, 2018 ORDER
DENYING MOTION FOR RECONSIDERATION [FRCP 59(e)]

> It would be incongruous with the larger statutory and regulatory scheme to interpret the TCPA to require that a debt collector be liable for acting where it has a good-faith basis for doing so. ...[T]he documents provided [by the debt collector's creditor-client] gave Defendant a good-faith basis to believe that it had consent to contact Plaintiff at that number. ... **Thus, although Plaintiff did not consent directly to Defendant to call her cell phone, it is sufficient that Defendant had a good-faith basis to believe that Plaintiff had provided consent to the creditor on whose behalf Defendant sought to collect debt**. Even if...there was no *actual* prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it.

*Chyba, supra,* 2014 WL 17144136, at *11-12 (emphasis added).

There is a substantial ground for difference of opinion as to the impact of *ACA Int'l* on how the Ninth Circuit treats debt collectors who dial reassigned numbers more than once with a good-faith belief that "prior express consent" exists. Specifically, whether Rash Curtis lacked the requisite "prior express consent" *as a matter of law* to dial Mr. Perez's phone number while Rash Curtis was acting without notice that the number had been reassigned, and with a good-faith basis to believe that it had "prior express consent" to call the previous subscriber who had provided the consent based on the information provided by its client. Under *Chyba*, "it is sufficient that Defendant had a good-faith basis to believe that Plaintiff had provided consent to the creditor on whose behalf Defendant sought to collect a debt." *Chyba, supra,* 2014 WL 17144136, at *12.

## V. CONCLUSION

For the foregoing reasons, Rash Curtis respectfully requests that the Court amend its Reconsideration Order to acknowledge that a substantial ground for difference of opinion exists and certify that an immediate interlocutory appeal to the Ninth Circuit from the order may materially advance the ultimate decision of this litigation.

Dated: July 16, 2018

                                      ELLIS LAW GROUP LLP

                                      By  */s/ Mark E. Ellis*
                                            Mark E. Ellis
                                            Attorney for Defendant
                                            RASH CURTIS & ASSOCIATES

- 10 -

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION TO AMEND THE COURT'S JUNE 18, 2018 ORDER DENYING MOTION FOR RECONSIDERATION [FRCP 59(e)]