**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
　　　　 ykrivoshey@bursor.com
　　　　 breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MCMILLION, JESSICA ADEKOYA, and IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>RASH CURTIS & ASSOCIATES,<br>　　　　　　　　　　Defendant. | Case No. 4:16-cv-03396-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION TO STRIKE OR EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT ANYA VERKHOVSKAYA**<br><br>Date: March 19, 2019<br>Time: 2:00 p.m.<br>Courtroom: 1<br><br>Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL STANDARD ..................................................................................................... 1
    A. Ms. Verkhovskaya's Methodology And Opinions Easily Pass *Daubert's* Admissibility Test ............................................................................. 3
    B. Defendant's Arguments Based On Opinions That Ms. Verkhovskaya Does *Not* Put Forward Should Be Ignored ................................................... 8
    C. Objections To Evidence ............................................................................... 11
III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
  2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) .............................................................................. 1

*AngioScore, Inc. v. TriReme Med., Inc.*,
  2015 WL 5258786 (N.D. Cal. Sept. 8, 2015) ........................................................................... 1, 2

*Bergen v. F/V St. Patrick*,
  816 F.2d 1345 (9th Cir. 1987) ................................................................................................... 2

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ................................................................................................... 8

*Burns v. First Am. Bank*,
  2006 WL 3754820 (N.D. Ill. Dec. 19, 2016) ............................................................................. 5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................. 1, 2

*Elsayed Mukhtar v. Cal State. Univ.*,
  299 F.3d 1053 (9th Cir. 2002) ................................................................................................... 2

*Gussack Realty Co. v. Xerox Corp.*,
  224 F.3d 85 (2d Cir. 2000) .......................................................................................... 5, 6, 7, 9

*Haiping Su v. Nat'l Aeronautics & Space Admin.*,
  2011 WL 7293396 (N.D. Cal. Apr. 7, 2011) ............................................................................. 2

*Kolbe v. O'Malley*,
  42 F. Supp. 3d 768 (D. Md. 2014) ............................................................................................ 6

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015) .............................................................................................. 5

*Krakauer v. Dish Network L.L.C.*,
  2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ........................................................... 5, 6, 11, 12

*Krakauer v. Dish Network L.L.C.*,
  2017 WL 2455095 (M.D.N.C. June 6, 2017) ........................................................................ 4, 5

*McClellan v. I-Flow Corp.*,
  710 F. Supp. 2d 1092 (D. Or. 2010) .......................................................................................... 2

*Primiano v. Cook*,
  598 F. 3d 558 (9th Cir. 2010) .................................................................................................... 3

*Reyes v. BCA Fin. Servs., Inc.*,
  2018 WL 3145807 (S.D. Fla. June 26, 2018) .................................................................. 5, 8, 11

| | |
|---|---|
| *Romero v. S. Schwab Co., Inc.*, 2017 WL 5885543 (S.D. Cal. Nov. 29, 2017) | 2 |
| *Shamblin v. Obama for America*, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015) | 4, 5 |
| *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164 (4th Cir. 2010) | 5, 6 |
| *Wendell v. GlaxoSmithKline LLC*, 858 F. 3d 1227 (9th Cir. 2017) | 2 |
| *West v. California Serv. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) | 1 |
| *Wilson v. Badcock Home Furniture*, 2018 WL 6660029 (M.D. Fla. Dec. 19, 2018) | 7, 8 |
| *Youngman v. A&B Ins. & Fin., Inc.*, 2018 WL 1832992 (M.D. Fla. Mar. 22, 2018) | 5 |
| *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014) | 10 |

**RULES**

| | |
|---|---|
| Fed. R. Civ. P. 37(c) | 11 |
| Fed. R. Evid. 702 | 2 |
| Fed. R. Evid. 703 | 5, 6 |

## I. INTRODUCTION

Defendant has not put forth a single piece of evidence contesting any of the opinions in Anya Verkhovskaya's expert report. Krivoshey Decl., Ex. 1 ("Verkhovskaya Report"). Defendant also does not challenge Ms. Verkhovskaya's qualifications. Instead, Defendant states that Ms. Verkhovskaya's opinions should be excluded because Defendant found them too confusing and because she relies on third-party data processors (LexisNexis) whose data is purportedly not "testable." *See* Def's Br. at 6. Critically, of the 40,420 cellphone numbers belonging to non-debtors that Defendant called using its autodialers identified in Ms. Verkhovskaya's Report, Defendant has not put forward any evidence (1) that even one of the 40,420 numbers are not assigned to cellular telephones or (2) that even one of the 40,420 numbers belonged to a debtor on the associated account. *See* Verkhovskaya Report, at ¶ 26. Ms. Verkhovskaya's methodology employed in this case, including the reliance on LexisNexis, has been nearly universally held to be admissible under the requirements of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See, e.g., West v. California Serv. Bureau, Inc.*, 323 F.R.D. 295, 302, 304-305 (N.D. Cal. 2017) (Gonzalez Rogers, Hon.) (denying motion to exclude expert testimony regarding reverse look-up methodology that relied on LexisNexis data). To the extent that Defendant believes that the sources for Ms. Verkhovskaya's methodology are inaccurate, such arguments go to the weight to be afforded to Ms. Verkhovskaya's testimony, not admissibility. Accordingly, Defendant's motion to strike or exclude Ms. Verkhovskaya's opinions should be denied in full.

## II. LEGAL STANDARD

"[S]cientific, technical, or other specialized knowledge' by a qualified expert is admissible if it will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *AngioScore, Inc. v. TriReme Med., Inc.*, 2015 WL 5258786, at *6 (N.D. Cal. Sept. 8, 2015). "An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018).

"The Ninth Circuit has determined that a 'trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability.'" *AngioScore, Inc.*, 2015 WL 5258786, at *6 (quoting *Elsayed Mukhtar v. Cal State. Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002)). "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (citation omitted). "The focus [of a district court] must be solely on principles and methodology, not on the conclusions that they generate." *Id.*, 509 U.S. at 595.

However, "[d]isputes as to the strength of [an expert's] credentials, faults in his use of a [particular] methodology, or lack of textual authority of his opinion, go to the weight, not admissibility, of his testimony." *Romero v. S. Schwab Co., Inc.*, 2017 WL 5885543, at *2 (S.D. Cal. Nov. 29, 2017) (quotations omitted). "The relative weakness or strength of the factual underpinnings of the expert's opinion goes to the weight and credibility, rather than admissibility." *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5 (9th Cir. 1987). Likewise, "[a]rguments that an expert relied on unfounded assumptions in forming his opinion go to the weight, not the admissibility of expert testimony." *Haiping Su v. Nat'l Aeronautics & Space Admin.*, 2011 WL 7293396, at *2 (N.D. Cal. Apr. 7, 2011). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Further, in consideration of the burden of proof and the "liberal thrust" of Fed. R. Evid. 702, experts are not required to establish causation to a scientific or statistical certainty. *See, e.g., McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1106 (D. Or. 2010) ("In keeping with the court's proper role and the 'liberal thrust' of Rule 702, I will not exclude plaintiffs' expert testimony simply because the evidence supporting it does not establish causation to a scientific or medical certainty.") (citing *Daubert*, 509 U.S. at 588). Experts are also not required to eliminate all alternative explanations or potential causes, so long as the cause identified is a substantial causative factor. *See Wendell v. GlaxoSmithKline LLC*, 858 F. 3d 1227, 1237 (9th Cir. 2017) ("We do not

require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause be a substantial causative factor.") (quotations and citation omitted). "Lack of certainty is not, for a qualified expert, the same thing as guesswork." *Primiano v. Cook*, 598 F. 3d 558, 565 (9th Cir. 2010).

### A. Ms. Verkhovskaya's Methodology And Opinions Easily Pass *Daubert's* Admissibility Test

Defendant appears to make two arguments for excluding Ms. Verkhovskaya's testimony. Def's Br. at 6-7. First, Defendant states that Ms. Verkhovskaya's "task" of determining "how many cell phone numbers – not associated with a debtor – Rash Curtis called during the class period" is not relevant to any issue at trial, and will not be "helpful" to the jury. *See id*., at 6 ("Exactly what the relevance of the results of this inquiry to the issues here is elusive.").

Each of the certified classes excludes the following people: "persons who provided their cellular telephone in an application for credit to a creditor that has opened an account with [d]efendant in such debtor's name prior to [d]efendant first placing a call using an automatic telephone dialing system and/or prerecorded voice." Order Granting Plaintiffs' Motion for Class Certification, ECF No. 81, at 2. Further, two of the certified classes require that "Rash Curtis has never had a debt-collection account in [class members'] name." *Id*. Thus, to ascertain the total number of calls made to class members, Plaintiff's methodology, *inter alia*, removed all persons that were the debtors on the accounts being called by Defendant.

At Ms. Verkhovskaya's deposition, Defendant's counsel's questioning of the goals of her methodology makes it obvious that Defendant understands the relevance of Ms. Verkhovskaya's opinion:

> Q. [Y]ou got three spreadsheets from the plaintiffs' counsel, and it had all the calls that were made by the dialers and all of the debtor account records associated with those accounts, correct?
>
> A. Correct.
>
> Q. And then you went out and obtained information from third parties to try and determine who owned or used that cell phone at the time that the calls were placed, correct?
>
> A. Correct.

|   |   |   |
|---|---|---|
| 1 |  | … |
| 2 | Q. | So you took data from plaintiffs' counsel, and you took data from their party vendors, and you compared the two to try **to figure out which telephone calls were made to non-debtors?** |
| 4 | A. | **Yes.** |
| 5 |  | … |
| 6 | Q. | So the spreadsheet that was provided by plaintiffs' counsel, along with your report, that's the list of non-debtors or the list of debtors? |
| 7 | A. | Non-debtors. |

Krivoshey Decl., Ex. 2 ("Verkhovskaya Dep."), at 78:11-80:15 (emphasis added). The relevance of this methodology is self-evident.

Second, Defendant argues that "no lay juror is going to understand Ms. Verkhovskaya's Rule 26 Report" because the source for of some of the data Ms.Verkhovskaya relies on is "unobservable, proprietary processes of LexisNexis and others." *See* Def's Br. at 6. Defendant has too little faith in the jury system. In fact, jurors have been able to understand nearly identical opinion testimony from Ms. Verkhovskaya in the past. *See, e.g., Krakauer v. Dish Network L.L.C.*, 2017 WL 2455095, at *6 (M.D.N.C. June 6, 2017) ("Ms. Verkhovskaya provided clear, cogent testimony explaining her methodology and the bases for her opinions. To the extent there was conflicting evidence that questioned the validity, credibility, and weight of Ms. Verkhovskaya's opinions, the jury weighed that evidence and rejected Dish's evidence."). Further, the technical nature of her testimony has, in the past, been a factor *in support of* allowing Ms. Verkhovskaya to explain her opinions to the jury. *See Shamblin v. Obama for America*, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015) ("Due to the highly technical nature of the proceedings, the Court determines that [Ms. Verkhovskaya is] in a position to substantially assist the trier of fact.").

Courts across the country have repeatedly found that Ms. Verkhovskaya is "amply qualified" to offer her opinions and that her methodology satisfies the admissibility requirements of *Daubert*. For instance, on June 26, 2018, Judge Jonathan Goodman summarized the case law concerning nearly identical methodology put forward by Ms.Verkhovskaya in other cases:

> As an initial, threshold decision, I reject BCA's bid to strike Verkhovskaya's expert opinion under Daubert. The Court finds persuasive the opinion in *Shamblin v. Obama for America*, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015)

> on this point. That Court denied a motion to strike Verkhovskaya's expert opinion in a TCPA case (although it then denied certification of the TCPA class).
>
> The Court found that Verkhovskaya was "amply qualified" to "offer expert testimony in TCPA case." *Id*. at 3. The Court also found that Verkhovskaya "employ[ed] generally reliable methodologies which entail, *inter alia*, **performance of detailed statistical analysis and utilization of LexisNexis data that has been independently verified by Verkhovskaya's company**[.] *Id*. Thus, the Court concluded, Verkhovskaya's testimony "satisfied the strictures of *Daubert*." *Id*.
>
> Several other district courts have also relied on Verkhovskaya's expertise when deciding whether to certify TCPA and other classes. *See Youngman v. A&B Ins. & Fin., Inc.* 2018 WL 1832992, at *4 (M.D. Fla. Mar. 22, 2018) *report and recommendation adopted*, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 599 (N.D. Ga. 2017); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 n. 3 (M.D.N.C. 2015); *Burns v. First Am. Bank*, 2006 WL 3754820, at *11 (N.D. Ill. Dec. 19, 2016). The Court will do the same here.

*Reyes v. BCA Fin. Servs., Inc.*, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018) (bracketing in original) (emphasis added).

In *Krakauer v. Dish Network L.L.C.*, 2015 WL 5227693, at *8-9 (M.D.N.C. Sept. 8, 2015), the defendant argued that Ms. Verkhovskaya's "report should be excluded because she did not test the reliability of data from Lexis or Nexxa." Judge Catherine C. Eagles disagreed:

> "[A]n expert may rely on data that she did not personally collect" and "need not have conducted her own tests." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) (per curiam). Rule 703 provides that an expert may rely on facts or data of which the expert has been made aware "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion." Fed. R. Evid. 703; *see also Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 182 (4th Cir. 2010).
>
> First, Dish does not dispute Ms. Verkhovskaya's testimony and statements in her report that Lexis and Nexxa provide "maximum accuracy and reliability," or that it is common practice in her industry to rely on such data vendors. Ms. Verkhovskaya testified that she has never had concerns about the work provided by Lexis or Nexxa. This may well be enough to allow Ms. Verkhovskaya to rely on the data under Rule 703…
>
> As to Lexis, contrary to Dish's assertion, A.B. Data[1] has conducted an independent examination to ensure the reliability of Lexis's data generally. Ms. Verkhovskaya testified that A.B. Data has, in the past, "perform[ed] a number of data tests with Lexis[] where [A.B. Data] run[s] known files against [Lexis] databases and measure[s] the output results against known data," and these tests have shown 86-97% accuracy. As discussed *supra* concerning Nexxa, there is

---

[1] A.B. Data is Ms. Verkhovskaya's former employer from 2001 until 2016. *See* Verkhovskaya Dep., at 6:17-18, 21:17-20.

> **no requirement that an expert conduct an independent evaluation of data and results each time she uses them**. *See Ward*, 595 F.3d at 182; Fed. R. Evid. 703. And, "[i]n any event, [Dish has] offered nothing to suggest the [Lexis] data are unreliable or inaccurate." *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 780 (D. Md. 2014).

*Krakauer*, 2015 WL 5227693, at *8-9 (bracketing in original) (emphasis added).

Ms. Verkhovskaya attached two exhibits to her report listing over twenty cases where her methodology was used in either certified and settlement class actions. *See* Verkhovskaya Report, Exs. B and C. Like in *Krakauer*, Ms. Verkhovskaya explained why she believes that data gathered from LexisNexis is reliable, an opinion that Defendant *does not challenge herein*:

> There's several factors that help me form my opinions over the reliability of [Lexis]' information. First is that [Lexis] is a company that's been around for over a hundred years that's been aggregating the data for decades and supporting thousands of industries, including the legal industry. My experience of nearly 20 years specifically in the class action administration industry tells me that out of approximately 300 class actions, 400 class action administrations that occur every year, about 90 percent of cases when it comes to class member location identification rely on [Lexis]' data for the past 35, 40 years.
>
> Second, I performed a testing of live cases for the past 20 years or so where I compared claims data against the reverse append data that I received from [Lexis]' reverse append files. Third, I performed intensive independent testing of the results of [Lexis'] database, and all of that, plus my experience led me to formulating an opinion that the data provided to me by [Lexis] is reliable and I can form an opinion expressed in my report.

Verkhovskaya Dep., at 87:13-88:20.

Further, Defendant's suggestion that Ms. Verkhovskaya's use of the "fuzzy match" process is not "testable" is also not true. Defendant's reference to the "fuzzy match" process refers to Ms. Verkhovskaya's methodology of comparing the names of the debtors on Defendant's accounts to the customary users of the telephone numbers that received calls from Defendant. A match is "fuzzy" when it is not immediately apparent whether the debtor and the called party are the same, such as when the names are similar but not identical. *See* Verkhovskaya Report, at ¶¶ 26-33. Due to the large volume of data, Ms. Verkhovskaya used an algorithm whereby a computer program would "kick out" the "fuzzy" matches for manual review by Ms. Verkhovskaya personally, so that she could determine whether the name of the debtor and called party actually matched. *See* Verkhovskaya Dep., at 132:13-135:11. Ms. Verkhovskaya testified that the "fuzzy match" algorithm was also tested repeatedly when it was developed. *See gen. Id.* at 125:12-136:3.

Further, Ms. Verkhovskaya testified that she has "tremendous expertise on fuzzy matches." *See Id.* at 127:12-5.

Further, the demographic data Ms. Verkhovskaya obtained from Lexis to complete the "matching" process was produced to Defendant. *See Id.* at 124:11-15 ("Q. I'm asking, have you produced every version of the steps you took to so-call show your work? A. Everything that was exported into spreadsheet, submitted to third party vendors, relied upon or received from third party vendors was produced."). Thus, if Defendant thought that Ms. Verkhovskaya's methodology resulted in even one incorrect "match" between the debtor on Defendant's account and the called party, Defendant could have completed the "matching" process itself and have pointed out inconsistencies.

However, Defendant does not contend that Ms. Verkhovskaya's opinions are factually incorrect. Of the 40,420 non-debtor class member telephone numbers Ms. Verkhovskaya identified in her report, Defendant has not submitted evidence that a *single one* of these numbers actually belonged to a debtor. *See* Verkhovskaya Report, at ¶ 26. Defendant is in possession of the account records for every one of the 40,420 numbers Ms. Verkhovskaya identified, and could not find one that actually belonged to the debtor on the account. Further, Defendant does not challenge Ms. Verkhovskaya's opinion that each of the 40,420 numbers are assigned to cellular telephones. *See id.*, at ¶¶ 16-19, 26. Defendant's Rule 30(b)(6) witness (Dan Correa) testified that Defendant's systems have the of determining which phone numbers are cell phones, and to exclude such numbers from its calling campaigns. *See* Krivoshey Decl., Ex. 3 ("Correa Dep."), at 58:16-59:6, 60:24-61:16. Here, however, Defendant could not identify even one number out of 40,420 that was not assigned to a cellular telephone.

In Defendant's only cited case in support of striking Ms. Verkhovskaya's testimony, *Wilson v. Badcock Home Furniture*, 2018 WL 6660029, at *3 (M.D. Fla. Dec. 19, 2018), the court *did not strike* Ms. Verkhovskaya's testimony. Rather, the Court denied class certification on predominance grounds. *Wilson*, 2018 WL 6660029, at *4. Although the court took some issue with Ms. Verkhovskaya's methodology *in that case*, the Court explicitly did "not base its ruling

upon, nor definitively resolve" whether Ms. Verkhovskaya's methodology could be used to identify class members under an ascertainability prong. Notably, in the Ninth Circuit, as this Court has ruled, ascertainability is not even a requirement. *See* Order Grating Plaintiffs' Motion for Class Certification, ECF No. 81, at 12 n. 12 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017)).

Further, in *Wilson*, the court cited to "a defense expert" that disputed the accuracy of Lexis data. *Wilson*, 2018 WL 6660029, at *4. Here, Defendant has not submitted any expert testimony, and, most glaringly, has not actually disputed a single factual finding expressed in Ms. Verkhovskaya's report. And, as discussed above, to the extent that *Wilson* suggests that Ms. Verkhovskaya categorically cannot use Lexis as a resource, which *Wilson* does not, it is an outlier opinion that is not persuasive. *See e.g., Reyes*, 2018 WL 3145807, at *13 (summarizing case law supporting Ms. Verkhovskaya's methodology).

Accordingly, Defendant's motion to strike Ms. Verkhovskaya's report should be denied. Defendant does not challenge Ms. Verkhovskaya's experience or expertise. To the extent that Defendant contends that the third-party sources Ms. Verkhovskaya used provided inaccurate data, the argument goes to the weight to be afforded to Ms. Verkhovskaya's testimony, not its admissibility. And, because Defendant has not submitted any *evidence* undermining the reliability of Ms. Verkhovskaya report, her report should not be excluded.

### B. Defendant's Arguments Based On Opinions That Ms. Verkhovskaya Does *Not* Put Forward Should Be Ignored

In the introduction, Defendant states that Ms. Verkhovskaya's testimony should be excluded because she "has assumed every number found in phone fields 5 through 10 at Rash Curtis was skip traced; she then subtracted any common numbers found in phone fields 1 through 4; and arrived at her estimate of the number of skip trace numbers called." Def's Br. at 2. Ms. Verkhovskaya has not made such assumptions, and, further, she has not provided an opinion concerning the amount of skip traced phone numbers that Defendant called. Notably, to the extent that was no clear from her report, Defendant knows this from her deposition testimony:

> Q. Okay. Have you ever been asked to determine whether any of the telephone numbers listed in your final spreadsheet were skip traced by Rash Curtis?
>
> A. No.
>
> Q. When I say skip traced, I mean obtained from third party data aggregators much the same way you obtained information from [Lexis]. Do you understand that? Because you had given a different kind of definition for skip tracing for your industry earlier.
>
> A. I was not asked to do that.

Verkhovskaya Dep., at 143:5-14. Ms. Verkhovskaya also has not been asked to and has not provided any opinion concerning whether Plaintiff Perez's phone number was obtained through skip tracing or his debtor status:

> Q. Okay. You have no opinion whether any of the plaintiffs' phone numbers were skip traced in this case, correct?
>
> A. Correct.
>
> Q. You have no opinion whether any of the plaintiffs are debtors or non-debtors in this case, correct?
>
> A. I have no opinions.
>
> Q. Is that because you were never asked to determine that or because you just don't know.
>
> …
>
> A. … I did not do any work to look for their telephone numbers in the source data or in the final product, nor do I know their telephone numbers.

*Id.* at 143:15-144:8.

Defendant's statement that Ms. Verkhovskaya "subtracted any common numbers found in phone fields 1 through 4" is also factually incorrect. *See* Def's Br. at 2. Plaintiff's expert Colin B. Weir was the person that assembled a list of phone numbers in phone fields 5-10 and then removed all instances where such numbers were also contained in phone fields 1-4. Krivoshey Decl., Ex. 4 ("Weir Decl."), at ¶¶ 6-12. After performing this analysis, Mr. Weir gave the resulting dataset to Ms. Verkhovskaya to perform the analysis discussed in her report. *Id.*, at ¶ 12. Ms. Verkhovskaya then took Mr. Weir's data (through Plaintiff's counsel) and identified calls made to cellular telephone numbers and to non-debtors within that dataset. *See id.*, at ¶ 13; Verkhovskaya Report,

at ¶ 14.  Critically, Plaintiff's expert Randall A. Snyder will testify that the resulting 40,420 class member telephone numbers identified in Ms. Verkhovskaya's Report were obtained through skip tracing, not Ms. Verkhovskaya or Mr. Weir.

Further, as discussed at length in Plaintiff's opposition to Defendant's motion to exclude the testimony of Mr. Snyder, it is Mr. Snyder, not Ms. Verkhovskaya, who will testify that Plaintiff Perez's cellphone was obtained through skip tracing and that Plaintiff was not a debtor.  The admissibility of Mr. Snyder's testimony, however, is addressed in Plaintiff's opposition to Defendant's motion to exclude Mr. Snyder's testimony, and is incorporated herein to the extent it is relevant.  Plaintiff will not repeat those same arguments again herein.

Defendant also states that Mr. Perez's cell number was not "identified by the process used by Ms. Verkhovskaya."  Def's Br. at 6.  As discussed above, Ms. Verkhovskaya did not set out to find his number, did not know his number, and has no opinion concerning whether his number was obtained through skip tracing or whether he is a debtor.  She simply analyzed the data provided to her by Mr. Weir, not the entire universe of data in Defendant's accounts.  The data provided by Mr. Weir, however, is *underinclusive*.  It does not necessarily capture *all* calls to *all* class members.  It only captures class member calls for which data still *exists* and for which Defendant *provided* data.  For instance, according to Defendant, Plaintiff's cellphone number may have been removed entirely from Defendant's database.  *See* Defendant's Motion to Strike or Exclude the Opinions of Plaintiffs' Expert Witness Randall A. Snyder, ECF Doc. No. 254, at 19 (stating that Defendant "removed the 5193 number from Rash Curtis' database").  If, in fact, Defendant removed Plaintiff's number from its database, then of course Plaintiff's phone number could not show up through Ms. Verkhovskaya's methodology, as it relied on phone numbers *that have not been wiped from Defendant's records*.  That does not mean, however, that her methodology is unreliable as to the numbers actually identified – all of them are cellphones belonging to non-debtors.  Defendant should not be able to use its own inadequate record-keeping as an argument for striking Ms. Verkhovskaya's report.  *See, e.g., Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (granting class certification in a TCPA case where "Defendant [was] in effect asking the

Court to reward its imperfect record-keeping practices"). *See also Reyes*, 2018 WL 3145807, at *13 ("To be sure, BCA's expert does raise salient gaps in Verkhovskaya's methodology. But a less-than-perfect opinion may still be admissible even if it contains gaps."); *Krakauer*, 2015 WL 5227693, at *10 ("The alleged deficiencies with Ms. Verkhovskaya's results go more to the weight of the expert [evidence] than to its *Daubert* admissibility.").

### C. Objections To Evidence

Defendant states that "records do exist that would reveal the so-called 'SKP' or skip-trace status code" and that "[i]t is in the collection notes used by Rash Curtis' collectors that the unique 'SKP' skip-trace status code is to be found." As discussed at length in Plaintiff's opposition to Defendant's motion to exclude the opinions of Mr. Snyder, Defendant maintained through all of fact discovery that records bearing the 'SKP' marking do not exist, and even stated in response to an Interrogatory that it had no such records. Accordingly, Defendant's references to the "SKP" marking should be stricken pursuant to Fed. R. Civ. P. 37(c). Plaintiff incorporates all arguments and objections made to references to the "SKP" status code in his opposition to Defendant's motion to strike Mr. Snyder's opinions herein.

Defendant has attached as Exhibit 2 to its Master List of Exhibits a copy of the *full* deposition transcript from Ms. Verkhovskaya's deposition. *See* ECF Doc. No. 252-3, 252-4. However, on the record at the deposition, Plaintiff and Defendant's counsel agreed to "designate the entire record as confidential" and to later "confer which portions of the record" should remain confidential. ECF Doc. No. 252-4, at 155:12-21. Specifically, Plaintiff's counsel wished to designate testimony regarding Ms. Verkhovskaya's salary and the salaries of her employees confidential pursuant to the protective order. *See id*. *See also* Stipulated Protective Order for Standard Litigation As Modified By The Court, ECF Doc. No. 29. While Plaintiff agrees that the vast majority of Ms. Verkhovskaya's deposition testimony should not be confidential, Defendant never reached out to Plaintiff to meet and confer about which sections should remain confidential before filing *the entire transcript* publicly. Krivoshey Decl., at ¶ 6. Plaintiff requests that the Court strike the deposition transcript in its entirety and order Defendant to refile only the portions

of the transcript that are deemed non-confidential after a meet and confer process. Notably, as the designating party, Plaintiff hereby de-designated the portions of Ms. Verkhovskaya's deposition testimony attached to Mr. Krivoshey's declaration in support of this motion. *Id*. Plaintiff agrees that all portions of the deposition transcript cited herein are not confidential pursuant to the protective order. *Id*.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to strike or exclude the opinions of Ms. Verkhovskaya should be denied in its entirety.

Dated: February 11, 2019　　　　　　　　　　Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ＿＿*/s/ Yeremey Krivoshey*＿＿
　　　Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No.295032)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email: ltfisher@bursor.com
　　　　ykrivoshey@bursor.com
　　　　breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*