1   **BURSOR & FISHER, P.A.**
    L. Timothy Fisher (State Bar No. 191626)
2   Yeremey O. Krivoshey (State Bar No. 295032)
    Blair E. Reed (State Bar No. 316791)
3   1990 North California Blvd., Suite 940
    Walnut Creek, CA 94596
4   Telephone: (925) 300-4455
    Facsimile: (925) 407-2700
5   E-Mail:  ltfisher@bursor.com
            ykrivoshey@bursor.com
6            breed@bursor.com

7   **BURSOR & FISHER, P.A.**
    Scott A. Bursor (State Bar No. 276006)
8   888 Seventh Avenue
    New York, NY  10019
9   Telephone: (212) 989-9113
    Facsimile:  (212) 989-9163
10  E-Mail: scott@bursor.com

11  *Attorneys for Plaintiff*

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15

16  SANDRA MCMILLION, JESSICA            Case No. 4:16-cv-03396-YGR
    ADEKOYA, and IGNACIO PEREZ, on
17  Behalf of Themselves and all Others  **DECLARATION OF YEREMEY**
    Similarly Situated,                  **KRIVOSHEY IN SUPPORT OF**
18                                        **PLAINTIFF'S OPPOSITION TO**
                                          **DEFENDANT'S *DAUBERT* MOTION TO**
19                        Plaintiffs,     **STRIKE OR EXCLUDE THE OPINIONS**
                                          **OF PLAINTIFF'S EXPERT COLIN B.**
20         v.                             **WEIR**

21  RASH CURTIS & ASSOCIATES,
                                          Date:  March 19, 2019
22                        Defendant.      Time: 2:00 p.m.
                                          Courtroom: 1
23

24                                        Hon. Yvonne Gonzalez Rogers

25

26

27

28

I, Yeremey Krivoshey, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the November 12, 2018 Declaration of Colin B. Weir.

3.     Attached hereto as **Exhibit 2** is a true and correct copy of the November 12, 2018 Class Member Data Tabulation Report of Anya Verkhovskaya.

4.     Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiffs' Second Set of Requests for Production of Documents to Defendant Rash Curtis & Associates dated February 8, 2017.

5.     Attached hereto as **Exhibit 4** is a true and correct copy of Plaintiffs' Third Set of Requests for Production of Documents to Defendant Rash Curtis & Associates dated August 25, 2017.

6.     Attached hereto as **Exhibit 5** is a true and correct copy of Defendant's Responses to Plaintiffs' Second Set of Interrogatories dated June 26, 2017.

7.     Attached hereto as **Exhibit 6** is a true and correct copy of an email from Defendant's counsel Anthony Paul John Valenti to me dated June 28, 2017.

8.     Attached hereto as **Exhibit 7** is a true and correct copy of an email from Defendant's counsel Anthony Paul John Valenti to me dated July 22, 2017.

9.     Attached hereto as **Exhibit 8** are true and correct copies of excerpts from the transcript of the October 16, 2017 deposition of Nick Keith.

10.     Attached hereto as **Exhibit 9** are true and correct copies of excerpts from the transcript of the October 20, 2017 deposition of Daniel Correa.

11.     Attached hereto as **Exhibit 10** is a true and correct copy of a February 2014 email exchange between Nick Keith and others at Rash Curtis.  In an email dated February 24, 2014 at 4:57 p.m., Mr. Keith stated: "I was talking to Chris [Paff] and Bob [Keith] and Chris's Theory is if

we have all ECA, and Accurint skip tracing phone numbers placed in fields 5-10 we can make the dialer and global not call these phone numbers and only the first four fields which are ALWAYS reserved for client given phone numbers or approved phone numbers by the debtor."

12.     Attached hereto as **Exhibit 11** is a true and correct copy of a May 12, 2016 email exchange between Nick Keith and others at Rash Curtis.  In an email dated May 12, 2016 at 8:22 a.m., Mr. Keith stated: "We made it so ECA's don't put phone numbers in the top fields and the rest of the numbers would be what came from the client.  The collectors should be putting skip traced number[s] into the lower fields."

13.     Attached hereto as **Exhibit 12** is a true and correct copy of an August 2015 email exchange between Nick Keith and others at Rash Curtis.  In an email dated August 4, 2015 at 3:01 p.m., Mr. Keith stated: "We are currently waiting [for] a spin from Dakcs that will get all phone numbers (sequence 1-4) that were ... [obtained] from any ECA's or batching from skip tracing vendors.  When these are gathered they will place them into sequence 5-10."

14.     Attached hereto as **Exhibit 13** are true and correct copies of excerpts from the transcript of the December 11, 2018 deposition of Colin B. Weir.

15.     Attached hereto as **Exhibit 14** are true and correct copies of excerpts from the transcript of the December 17, 2018 deposition of Randall A. Snyder.

16.     Attached hereto as **Exhibit 15** is a true and correct copy of Defendant's September 27, 2017 Responses to Plaintiff's Third Set of Interrogatories.

17.     Pursuant to the Court's 11/6/2018 Scheduling Order No. 2, Defendant's deadline to serve rebuttal reports was on November 26, 2018.  Defendant did not disclose any rebuttal witnesses, and did not served any rebuttal reports.

18.     Along with Plaintiff's expert reports, and in the course of expert discovery, Plaintiff produced records underlying Plaintiff's expert reports such that Defendant has had ample opportunity to ascertain the veracity of Plaintiff's experts' opinions.

///

///

///

DECLARATION OF YEREMEY KRIVOSHEY
CASE NO. 4:16-cv-03396-YGR

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed in Walnut Creek, California this 11th day of February, 2019.

*/s/ Yeremey Krivoshey*
Yeremey Krivoshey

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SANDRA MCMILLION, JESSICA
ADEKOYA AND IGNACIO PEREZ, on
Behalf of Themselves and all Others Similarly
Situated,

                              Plaintiffs,

        v.

RASH CURTIS & ASSOCIATES,

                              Defendant.

Case No. 16-cv-03396-YGR

Declaration

of

**COLIN B. WEIR**

November 12, 2018

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a number of cases involving telecommunications issues, including the TCPA, broadband technology and Internet access; technical issues associated with net neutrality; Early Termination Fees (ETFs); Late Fees; wireless handset locking practices, merger/antitrust analysis, determination of Federal Excise Tax burden, ISP-bound traffic studies, area code splits and related numbering policy, Universal Service Fund issues, pricing and regulation of Unbundled Network Elements, analysis of special access rates and pricing trends, and development of a macroeconomic analysis quantifying the economic impact upon the US economy and job markets of overpricing special access services; wireless pricing; and wireline telecommunications tariff and contract pricing.  I have also consulted on a variety of consumer and wholesale products cases, calculating damages relating to telecom products, food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1.  This includes a list of all cases in



Declaration of Colin B. Weir
November 12, 2018
Page 2 of 9

which, during the previous four years, I have testified as an expert at trial or by deposition.  Prior

to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as

a cash department head, grocery/receiving clerk, and price-file maintenance head.


## II.  ENGAGEMENT

2.    I have been asked by Counsel for Plaintiff to examine Defendant's call detail records,

and to summarize some of Defendant's calling behavior.  I have also been asked to tabulate

statutory damages.  I make this declaration based upon my own personal knowledge and, if

called as a witness in this action, I would be able to competently testify as to the facts and

opinions set forth herein

3.    ETI is being compensated at the rate of $600 per hour for my work on this case.  The

opinions expressed in this declaration are my own, and my compensation is not dependent upon

the substance of these opinions or the outcome of the litigation.

4.    The documents, data and other materials that I relied upon in forming my opinions

are identified throughout my report and in Exhibit 2, attached hereto.  In addition, I have relied

upon my educational background and more than 15 years of experience.


## III.  CALL DATA

5.    Counsel for Plaintiff has asked me to analyze Defendant's call detail records

("CDRs") and account data, and to provide information summarizing those records.  The CDRs

contain a record of each call placed on behalf of Defendant.  The CDRs include, among other

things, the date of the call, the dialed telephone number, the account number associated with the

call, and the call disposition (whether the call was answered, busy, went to voicemail, etc.).  The

account data includes a list of each of the accounts managed by Defendant, and "phone fields one

through ten."



Declaration of Colin B. Weir
November 12, 2018
Page 3 of 9

6.   I have been asked to review the telephone numbers that appear in "phone fields five through ten"[1] of Defendant's account data for which phone fields one through four are also currently available, and compare fields five through ten to the telephone numbers in "phone fields one through four" to identify if, and to what extent, there is any overlap between those two groups of fields.  I have then been asked to compare any telephone numbers in fields five through ten that do not overlap fields one through four against the CDRs.

7.   To create the tabulations, I followed the following steps

- Import the Call Detail Records;

- Import the Account/Fields One through Ten data;

- Run a duplicates analysis to identify any overlap between telephone numbers in Fields One through Four and Fields Five through Ten and count and remove any such duplicates;

- Match Account and Telephone Number from CDR to Account data;

- Eliminate non-matched calls;

- Format a month-year date field for each call; and

- Tabulate records by month and call disposition.

8.   I conducted my analysis using Stata.[2]  Stata is commercially available (for sale) to all researchers who conduct statistical analysis, and is widely used in the profession: "Stata is distributed in more than 200 countries and is used by hundreds of thousands of professional

---

[1] In order to be considered a match, the call detail record must first match the account number, and then match a telephone number from fields five through ten for that account.

[2] http://www.stata.com/products/

ETI  ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 4 of 9

researchers in many fields of research."[3] Stata has been used numerous times in litigation damages contexts.[4]

9.    Defendant has produced a number of instances of "phone fields one through four," including as it exists currently, as it existed historically, and as part of several historical data sets. To be as conservative as possible, I have aggregated all of the available "phone fields one through four" data.  Using this data, I analyzed the same Fields Five through Ten data as in my August 10, 2018 Declaration.  This dataset contains 1,498,684 unique account/telephone number combinations.[5]  Of those, only 1.0% are account/telephone numbers that appear in both Fields One through Four and Fields Five through Ten.  In other words, 99% of telephone numbers in Fields Five through Ten are not also contained in Fields One through Four--a total of 1,484,646 unique account/telephone numbers.

10.    I have prepared such tabulations for each of three vendors making calls on behalf of Defendant.  I provide a high level summary of calls and dispositions below in Tables 1-3, and provide month-by-month detail and all disposition codes in Exhibits 3-5, attached hereto.

| TABLE 1.<br><br>Calls to Fields Five through Ten, by Disposition, June 2012-May 2017, Global Connect | | | | | |
|---|---|---|---|---|---|
| Answered | Busy | Invalid | Machine | No Answer | Total[6] |
| 2,943,367 | 707,454 | 1,826,851 | 2,646,162 | 1,560,958 | 9,715,452 |

---

[3] http://www.stata.com/why-use-stata/

[4] *See, e.g.*, *In re: Cellphone Termination Fee Cases,  Ayyad, et al.,  v. Sprint Spectrum, L.P*.,  JCCP No. 4332, Case No. RG03-121510; *In re: ConAgra Foods Inc., 90 F. Supp. 3d 919,  (C.D. Cal. February 23, 2015).

[5] Where each telephone number is a valid, 10-digit, US telephone number.

[6] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 3.



Declaration of Colin B. Weir
November 12, 2018
Page 5 of 9

| TABLE 2. | | | | | |
|---|---|---|---|---|---|
| Calls to Fields Five through Ten, by Disposition, January-October 2017, TCN | | | | | |
| Answered | Busy | Invalid | Machine | No Answer | Total[7] |
| 120,088 | 34,134 | 340,461 | 2,252,642 | 956,447 | 3,750,401 |

| TABLE 3. | | | | | |
|---|---|---|---|---|---|
| Calls to Fields Five through Ten, by Disposition, June 2012-August 2017, VIC | | | | | |
| Answered | Busy | Invalid | Voicemail | No Answer | Total[8] |
| 39,935 | 11,757 | N/A | 297,038 | 184,846 | 665,181 |

11.   As can be seen from the Tables above and the corresponding Exhibits, all three vendors placed calls to numbers located in phone fields five through ten of Defendant's account data on a regular basis, totaling more than 14-million calls, including some 3-million calls that were answered.

12.   I was asked to provide subsets of this data to Anya Verkhovskaya, President of Class Experts Group, for further analysis.  From the data as described above, I provided the following:

- A list of all calls placed by Global Connect to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Answered," and that were at least six seconds or longer in duration;

---

[7] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 4.

[8] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 5.


ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 6 of 9

- A list of all calls placed by TCN to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Answered," and that were at least six seconds or longer in duration;

- A list of all calls placed by VIC to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Message - Party Connect," "Message - Hang Up," and "Message - VIC Voice Mail."

13.    I understand that Ms. Verkhovskaya has analyzed the telephone numbers in each of these data sets to determine which telephone numbers were mobile telephone numbers at the time of the call, and to identify telephone numbers where none of the customary, historic users of the number matched, or were a close match to the name of debtor.[9]  Of the telephone records that I provided to Ms. Verkhovskaya, the following data reflect calls to mobile numbers with customary users other than the debtor.

| TABLE 4. | | | |
|---|---|---|---|
| **Calls to Class Members by Call Disposition** | | | |
| Vendor | Disposition | Unique Phone Count | Call Count |
| Global Connect | Answered, ≥6 Seconds | 37,674 | 501,043 |
| TCN | Answered, ≥6 Seconds | 8,478 | 31,064 |
| VIC | Message - Hang Up | 879 | 1,679 |
| VIC | Message - VIC Voice Mail | 153 | 237 |
| VIC | Message - Party Connect | 282 | 675 |

---

[9] Declaration of Anya Verkhovskaya, November 12, 2018.

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 7 of 9

## IV. STATUTORY DAMAGES

14.  Plaintiffs allege that Defendant knowingly and willfully has placed calls to individuals in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").[10]  I have been informed by Counsel for Plaintiffs that Plaintiffs and members of the proposed classes are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).  Or in the alternative, Plaintiffs and members of the classes are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).[11]

15.  I also understand that the calls identified by Ms. Verkhovskaya (as summarized above in Table 4) are the calls for which Plaintiffs are seeking such statutory damages.  Using these data, I have tabulated statutory damages as below in Table 5-6.

| TABLE 5. | | | |
|---|---|---|---|
| **Statutory Damages: ATDS Class** | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 501,043 | $751,564,500 | $250,521,500 |
| TCN | 31,064 | $46,596,000 | $15,532,000 |
| VIC | 1,679 | $2,518,500 | $839,500 |
| VIC | 237 | $355,500 | $118,500 |
| VIC | 675 | $1,012,500 | $337,500 |
| TOTAL | 534,698 | $802,047,000 | $267,349,000 |

---

[10] *See, generally,* Class Action Complaint, filed June 17, 2016.

[11] *Id.*, at 14.


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 8 of 9

| TABLE 6. Statutory Damages: Pre-Recorded/Artificial Voice Class[12] | | | |
|---|---|---|---|
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 501,043 | $751,564,500 | $250,521,500 |
| VIC | 1,679 | $2,518,500 | $839,500 |
| VIC | 237 | $355,500 | $118,500 |
| VIC | 675 | $1,012,500 | $337,500 |
| TOTAL | 503,634 | $755,451,000 | $251,817,000 |

16.   I have also been asked to tabulate damages for the named Plaintiffs: Perez, McMillion, and Adekoya.  I present these tabulations in Tables 7-9 below.

| TABLE 7. Statutory Damages: Perez | | | |
|---|---|---|---|
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 14 | $21,000 | $7,000 |
| Note: Call count reflects calls of Disposition Answered, ≥6 Seconds. | | | |

| TABLE 8. Statutory Damages: McMillion | | | |
|---|---|---|---|
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 2 | $3,000 | $1,000 |
| TCN | 2 | $3,000 | $1,000 |
| Note: Call count reflects calls of Disposition Answered, for dates after February 2, 2016. | | | |

---

[12] Declaration of Randall Snyder, November 12, 2018, at 20-21.



Declaration of Colin B. Weir
November 12, 2018
Page 9 of 9

| TABLE 9. | | | |
|---|---|---|---|
| **Statutory Damages: Adekoya** | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 2 | $3,000 | $1,000 |
| Note: Call count reflects calls of Disposition Answered, for dates after April 18, 2016. | | | |

## V.  RESERVATION OF RIGHTS

My testimony is based upon the information and data presently available to me.  I understand that discovery is ongoing.  Additional, different and/or updated data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony, and anticipate supplementing this testimony when such data becomes available.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts, this 12th day of November, 2018.

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

**Statement of Qualifications**

**COLIN B. WEIR**

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony:

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC,* Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018.

3


ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50*, Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated), on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.



**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated,  v.  Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.



**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.,* Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC,* Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.,* Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation,* Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.,* Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates,* Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

7



**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.

8



**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016; Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.



**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March 31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted August 11, 2014; Deposition on September 30, 2014; Declaration submitted July 9, 2018.



**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.

12



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc,* Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of  Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,**  *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.



*Statement of Qualifications – Colin B. Weir*

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation,* Master Case No. 10-6334 (SDW) MDL No. 2228, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL)*, on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.



**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.



**Exhibit 2**

**Documents Reviewed**

- Class Action Complaint, filed June 17, 2016

- 47 U.S. Code  227

- May 30, 2017 Declaration of Randall Snyder

- October 16, 2017 Declaration of Randall Snyder

- November 12, 2018 Declaration of Randall Snyder

- November 12, 2018 Declaration of Anya Verkhovskaya

- Deposition of Steven Kiser, April 13, 2017

- GC Call Detail Records

- TCN Call Detail Records

- VIC Call Detail Records

- Defendant's Account Data (including account number and fields one through ten)

- TransUnion reverse call data

- North American Numbering Plan Administration, valid US NPA, NXX codes

https://www.nationalnanpa.com/

**Exhibit 3**

**Global Connect Data**

Global Connect

| Month | Answered | Busy | Fax | Invalid | Machine | No Answer | Total |
|---|---|---|---|---|---|---|---|
| June-2012 | 14,611 | 4,767 | 207 | 12,282 | 17,236 | 12,886 | 61,989 |
| July-2012 | 31,278 | 9,158 | 556 | 28,415 | 32,633 | 24,951 | 126,991 |
| August-2012 | 33,046 | 5,408 | 582 | 34,879 | 29,697 | 21,625 | 125,237 |
| September-2012 | 23,825 | 1,607 | 360 | 25,844 | 19,652 | 12,600 | 83,888 |
| October-2012 | 32,724 | 2,986 | 458 | 37,359 | 28,693 | 22,651 | 124,871 |
| November-2012 | 29,915 | 3,063 | 445 | 33,957 | 25,421 | 18,614 | 111,415 |
| December-2012 | 24,459 | 2,441 | 587 | 26,282 | 21,997 | 12,132 | 87,898 |
| January-2013 | 13,868 | 1,490 | 274 | 15,296 | 12,218 | 7,062 | 50,208 |
| February-2013 | 26,809 | 3,096 | 705 | 27,853 | 23,394 | 14,291 | 96,148 |
| March-2013 | 23,539 | 3,535 | 746 | 21,309 | 21,417 | 11,014 | 81,560 |
| April-2013 | 8,601 | 797 | 228 | 7,411 | 8,096 | 4,559 | 29,692 |
| May-2013 | 27,193 | 2,760 | 646 | 28,253 | 24,201 | 12,426 | 95,479 |
| June-2013 | 23,538 | 4,139 | 567 | 23,087 | 18,877 | 11,260 | 81,468 |
| July-2013 | 23,013 | 4,218 | 571 | 24,530 | 20,960 | 11,253 | 84,545 |
| August-2013 | 29,841 | 11,174 | 694 | 23,335 | 26,939 | 17,946 | 109,929 |
| September-2013 | 26,420 | 9,985 | 751 | 18,593 | 25,620 | 16,365 | 97,734 |
| October-2013 | 26,817 | 7,732 | 626 | 15,854 | 24,416 | 14,264 | 89,709 |
| November-2013 | 32,237 | 8,820 | 750 | 24,558 | 27,661 | 13,535 | 107,561 |
| December-2013 | 22,022 | 4,663 | 383 | 21,279 | 20,356 | 15,363 | 84,066 |
| January-2014 | 31,583 | 6,481 | 654 | 30,113 | 29,527 | 12,754 | 111,112 |
| February-2014 | 42,151 | 8,195 | 730 | 41,807 | 39,756 | 18,212 | 150,851 |
| March-2014 | 59,395 | 42,405 | 839 | 49,665 | 47,954 | 34,496 | 234,754 |
| April-2014 | 77,626 | 22,283 | 1,181 | 53,636 | 57,841 | 61,522 | 274,089 |
| May-2014 | 52,402 | 7,576 | 669 | 27,577 | 34,296 | 32,277 | 154,797 |
| June-2014 | 49,055 | 14,495 | 627 | 26,467 | 36,314 | 23,128 | 150,086 |
| July-2014 | 60,244 | 14,277 | 943 | 46,248 | 49,591 | 24,745 | 196,048 |
| August-2014 | 54,190 | 14,695 | 1,006 | 42,650 | 46,475 | 34,512 | 193,528 |
| September-2014 | 27,705 | 17,712 | 449 | 47,691 | 30,058 | 139,108 | 262,723 |
| October-2014 | 48,209 | 16,012 | 666 | 25,834 | 42,608 | 34,762 | 168,091 |
| November-2014 | 50,568 | 16,134 | 605 | 27,090 | 46,336 | 27,609 | 168,342 |
| December-2014 | 69,028 | 19,564 | 855 | 38,085 | 61,743 | 30,694 | 219,969 |
| January-2015 | 68,502 | 31,277 | 766 | 44,650 | 65,318 | 32,311 | 242,824 |
| February-2015 | 67,008 | 15,191 | 665 | 37,582 | 58,496 | 35,843 | 214,785 |
| March-2015 | 65,178 | 12,625 | 328 | 38,492 | 51,555 | 36,754 | 204,932 |
| April-2015 | 55,953 | 7,776 | 463 | 36,488 | 56,902 | 21,910 | 179,492 |
| May-2015 | 42,286 | 9,102 | 316 | 28,439 | 42,541 | 17,589 | 140,273 |
| June-2015 | 46,782 | 10,538 | 200 | 34,823 | 50,190 | 22,482 | 165,015 |
| July-2015 | 57,727 | 10,395 | 288 | 38,340 | 59,410 | 28,579 | 194,739 |
| August-2015 | 58,678 | 37,575 | 486 | 28,856 | 48,221 | 33,095 | 206,911 |
| September-2015 | 70,659 | 35,835 | 431 | 25,264 | 57,842 | 34,149 | 224,180 |
| October-2015 | 65,651 | 18,827 | 488 | 25,874 | 55,650 | 34,611 | 201,101 |
| November-2015 | 62,155 | 13,110 | 694 | 26,470 | 46,243 | 31,394 | 180,066 |
| December-2015 | 60,969 | 7,263 | 631 | 29,160 | 48,359 | 28,421 | 174,803 |
| January-2016 | 47,092 | 4,971 | 379 | 20,465 | 40,146 | 20,321 | 133,374 |
| February-2016 | 52,121 | 5,832 | 302 | 22,398 | 50,325 | 24,401 | 155,379 |

Global Connect

| Month | Answered | Busy | Fax | Invalid | Machine | No Answer | Total |
|---|---|---|---|---|---|---|---|
| March-2016 | 67,925 | 7,206 | 385 | 33,440 | 59,726 | 27,782 | 196,464 |
| April-2016 | 66,729 | 7,075 | 268 | 32,142 | 67,426 | 23,605 | 197,245 |
| May-2016 | 34,557 | 3,793 | 153 | 14,643 | 35,706 | 13,285 | 102,137 |
| June-2016 | 27,899 | 3,807 | 118 | 12,293 | 25,684 | 9,775 | 79,576 |
| July-2016 | 77,166 | 18,461 | 369 | 41,092 | 72,247 | 32,613 | 241,948 |
| August-2016 | 121,338 | 25,585 | 693 | 60,597 | 107,787 | 47,151 | 363,151 |
| September-2016 | 115,107 | 22,572 | 625 | 54,093 | 106,116 | 52,478 | 350,991 |
| October-2016 | 99,517 | 13,176 | 485 | 41,264 | 91,669 | 40,396 | 286,507 |
| November-2016 | 109,307 | 16,158 | 546 | 53,596 | 106,566 | 47,856 | 334,029 |
| December-2016 | 95,463 | 17,488 | 422 | 44,187 | 87,425 | 37,108 | 282,093 |
| January-2017 | 94,461 | 26,125 | 350 | 41,275 | 90,011 | 32,880 | 285,102 |
| February-2017 | 71,598 | 22,970 | 273 | 34,005 | 67,155 | 30,150 | 226,151 |
| March-2017 | 42,288 | 10,515 | 164 | 18,495 | 41,028 | 14,141 | 126,631 |
| April-2017 | 2,982 | 507 | 11 | 1,117 | 3,853 | 1,117 | 9,587 |
| May-2017 | 357 | 31 | 1 | 72 | 582 | 145 | 1,188 |
| | | | | | | | |
| Total | 2,943,367 | 707,454 | 30,660 | 1,826,851 | 2,646,162 | 1,560,958 | 9,715,452 |

**Exhibit 4**

**TCN Data**

| Month | Answered | Answered Hangup | Answered Linkcall | Answered Linkcall Abandoned | Busy | TCN Invalid | Invalid Unknown NPA-NXX | Machine Delivered | Machine Hangup | Machine Undeliverable | No Answer | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January-2017 | 1,576 | 0 | 82 | 9 | 565 | 4,641 | 37 | 0 | 30,255 | 0 | 11,778 | 48,943 |
| February-2017 | 5,852 | 0 | 196 | 32 | 1,556 | 13,491 | 59 | 0 | 77,474 | 0 | 33,510 | 132,170 |
| March-2017 | 9,872 | 1 | 688 | 186 | 2,250 | 24,026 | 93 | 0 | 154,907 | 0 | 66,706 | 258,729 |
| April-2017 | 17,853 | 11 | 1,162 | 247 | 3,407 | 41,102 | 281 | 0 | 282,662 | 0 | 126,349 | 473,074 |
| May-2017 | 16,742 | 8 | 1,655 | 261 | 2,986 | 43,941 | 174 | 0 | 285,125 | 0 | 118,961 | 469,853 |
| June-2017 | 18,691 | 4 | 1,088 | 150 | 2,883 | 50,206 | 152 | 1,066 | 312,006 | 784 | 130,888 | 517,918 |
| July-2017 | 17,426 | 11 | 1,827 | 127 | 2,911 | 45,724 | 177 | 4,428 | 305,125 | 3,191 | 125,980 | 506,927 |
| August-2017 | 10,557 | 0 | 2,965 | 127 | 4,990 | 42,097 | 307 | 3,236 | 270,665 | 2,218 | 113,182 | 450,344 |
| September-2017 | 11,123 | 2 | 3,183 | 148 | 6,300 | 39,468 | 305 | 7,267 | 273,844 | 5,290 | 113,158 | 460,088 |
| October-2017 | 10,396 | 0 | 2,051 | 76 | 6,286 | 35,765 | 325 | 608 | 260,579 | 334 | 115,935 | 432,355 |
| Total | 120,088 | 37 | 14,897 | 1,363 | 34,134 | 340,461 | 1,910 | 16,605 | 2,252,642 | 11,817 | 956,447 | 3,750,401 |

**Exhibit 5**

**VIC Data**

| Month | 3 Tone Intercept | Area Code Changed | Busy | Call Error | DIAL NEW ENTRY | Fax | Hang Up Salutation | Link Back Transfer | Message - Hang Up | Message - Party Connect | Message - VIC Voice Mail | No Answer | No Ring | On Hold Hang Up | Other | Party Connect | Party Transfer Hang Up | Phone In The Skip Table | UNKNOWN DIRECTIVE 8454 | Unable To Transfer Party | Voice Mail - Hang Up | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| June-2012 | 435 | 0 | 187 | 0 | 0 | 115 | 0 | 0 | 138 | 0 | 0 | 1,294 | 24 | 232 | 45 | 390 | 0 | 0 | 102 | 237 | 2,329 | 5,528 |
| July-2012 | 795 | 0 | 291 | 0 | 0 | 119 | 0 | 0 | 168 | 0 | 0 | 2,030 | 23 | 314 | 46 | 409 | 0 | 0 | 97 | 326 | 2,918 | 7,536 |
| August-2012 | 954 | 0 | 452 | 1 | 0 | 215 | 0 | 1 | 278 | 16 | 17 | 2,764 | 18 | 392 | 99 | 602 | 0 | 0 | 18 | 992 | 3,007 | 9,826 |
| September-2012 | 307 | 0 | 116 | 1 | 0 | 46 | 0 | 2 | 86 | 39 | 76 | 729 | 9 | 154 | 33 | 205 | 0 | 0 | 20 | 190 | 1,299 | 3,312 |
| October-2012 | 861 | 0 | 309 | 0 | 0 | 143 | 0 | 0 | 221 | 0 | 0 | 1,724 | 17 | 249 | 59 | 400 | 0 | 0 | 16 | 219 | 2,679 | 6,897 |
| November-2012 | 797 | 0 | 265 | 1 | 0 | 127 | 0 | 1 | 179 | 47 | 0 | 1,912 | 11 | 194 | 74 | 334 | 2 | 0 | 4 | 371 | 2,436 | 6,755 |
| December-2012 | 948 | 0 | 353 | 1 | 0 | 193 | 0 | 2 | 322 | 29 | 0 | 3,313 | 19 | 225 | 71 | 388 | 0 | 2 | 38 | 888 | 2,946 | 9,738 |
| January-2013 | 1,911 | 0 | 720 | 0 | 102 | 447 | 0 | 0 | 467 | 0 | 0 | 4,625 | 41 | 341 | 126 | 936 | 8 | 0 | 1,802 | 950 | 4,632 | 17,108 |
| February-2013 | 920 | 0 | 411 | 0 | 0 | 183 | 0 | 0 | 215 | 0 | 0 | 2,497 | 22 | 320 | 67 | 465 | 2 | 0 | 20 | 1,404 | 3,483 | 10,009 |
| March-2013 | 745 | 0 | 383 | 0 | 0 | 207 | 0 | 0 | 204 | 0 | 0 | 2,119 | 44 | 299 | 91 | 407 | 0 | 0 | 25 | 1,589 | 3,571 | 9,684 |
| April-2013 | 679 | 0 | 341 | 0 | 0 | 161 | 0 | 0 | 276 | 0 | 0 | 2,326 | 30 | 273 | 109 | 435 | 0 | 0 | 32 | 1,550 | 3,537 | 9,749 |
| May-2013 | 591 | 0 | 297 | 0 | 0 | 143 | 0 | 0 | 182 | 0 | 0 | 1,661 | 20 | 223 | 62 | 323 | 1 | 0 | 10 | 670 | 2,494 | 6,677 |
| June-2013 | 771 | 0 | 388 | 0 | 0 | 132 | 0 | 0 | 192 | 0 | 0 | 2,901 | 20 | 272 | 54 | 437 | 0 | 0 | 6 | 649 | 2,716 | 8,538 |
| July-2013 | 189 | 0 | 142 | 0 | 0 | 34 | 0 | 0 | 54 | 0 | 0 | 651 | 6 | 72 | 51 | 113 | 0 | 0 | 3 | 48 | 1,088 | 2,451 |
| November-2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 |
| December-2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29 | 0 | 0 | 29 |
| January-2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 |
| February-2014 | 971 | 0 | 498 | 0 | 0 | 213 | 0 | 0 | 298 | 0 | 0 | 2,405 | 40 | 315 | 92 | 799 | 0 | 0 | 19 | 229 | 4,027 | 9,906 |
| March-2014 | 323 | 0 | 278 | 0 | 0 | 88 | 0 | 0 | 102 | 0 | 0 | 770 | 17 | 137 | 61 | 395 | 0 | 0 | 11 | 152 | 2,137 | 4,471 |
| April-2014 | 724 | 0 | 333 | 0 | 0 | 164 | 0 | 0 | 176 | 0 | 0 | 1,651 | 42 | 225 | 73 | 744 | 0 | 0 | 12 | 198 | 3,457 | 7,799 |
| May-2014 | 331 | 0 | 302 | 0 | 0 | 114 | 0 | 0 | 115 | 0 | 0 | 1,487 | 52 | 149 | 35 | 459 | 0 | 0 | 16 | 393 | 2,780 | 6,233 |
| June-2014 | 548 | 0 | 788 | 0 | 0 | 330 | 0 | 0 | 224 | 0 | 0 | 2,299 | 48 | 196 | 138 | 904 | 0 | 0 | 3 | 364 | 4,980 | 10,822 |
| July-2014 | 333 | 0 | 207 | 0 | 0 | 182 | 0 | 0 | 136 | 0 | 0 | 1,100 | 29 | 117 | 31 | 373 | 0 | 0 | 4 | 325 | 2,582 | 5,419 |
| August-2014 | 739 | 0 | 358 | 0 | 0 | 200 | 0 | 0 | 174 | 0 | 0 | 1,570 | 18 | 200 | 95 | 522 | 0 | 0 | 5 | 180 | 3,036 | 7,097 |
| September-2014 | 405 | 0 | 224 | 0 | 0 | 171 | 0 | 0 | 206 | 0 | 0 | 1,991 | 182 | 157 | 125 | 352 | 0 | 0 | 10 | 138 | 2,076 | 6,037 |
| October-2014 | 1,476 | 0 | 348 | 1,481 | 0 | 620 | 91 | 71 | 393 | 1,153 | 2,575 | 5,554 | 8 | 134 | 306 | 1,047 | 0 | 0 | 16 | 87 | 5,151 | 20,511 |
| November-2014 | 536 | 0 | 180 | 350 | 0 | 432 | 27 | 22 | 166 | 352 | 800 | 3,208 | 1 | 177 | 174 | 657 | 1 | 0 | 10 | 341 | 5,064 | 12,498 |
| December-2014 | 68 | 0 | 116 | 66 | 0 | 171 | 3 | 2 | 150 | 46 | 89 | 2,241 | 1 | 119 | 203 | 604 | 1 | 0 | 12 | 857 | 4,725 | 9,474 |
| January-2015 | 41 | 0 | 75 | 0 | 0 | 135 | 0 | 0 | 116 | 0 | 0 | 2,049 | 0 | 105 | 143 | 455 | 0 | 0 | 11 | 621 | 3,497 | 7,248 |
| February-2015 | 36 | 0 | 58 | 0 | 0 | 141 | 0 | 0 | 149 | 0 | 0 | 2,373 | 4 | 111 | 123 | 496 | 0 | 0 | 0 | 397 | 3,633 | 7,521 |
| March-2015 | 120 | 0 | 81 | 145 | 0 | 145 | 15 | 8 | 179 | 164 | 367 | 2,562 | 6 | 126 | 122 | 607 | 0 | 0 | 5 | 104 | 4,031 | 8,787 |
| April-2015 | 69 | 0 | 59 | 54 | 0 | 153 | 2 | 7 | 161 | 104 | 0 | 1,952 | 3 | 109 | 70 | 455 | 0 | 0 | 20 | 416 | 3,196 | 7,014 |
| May-2015 | 33 | 3 | 50 | 0 | 0 | 102 | 0 | 0 | 116 | 0 | 0 | 1,823 | 3 | 112 | 62 | 486 | 0 | 0 | 14 | 465 | 3,458 | 6,727 |
| June-2015 | 40 | 0 | 70 | 0 | 0 | 122 | 0 | 0 | 124 | 0 | 0 | 2,656 | 2 | 133 | 181 | 456 | 0 | 0 | 13 | 668 | 3,384 | 7,849 |
| July-2015 | 91 | 1 | 79 | 0 | 0 | 215 | 0 | 0 | 205 | 0 | 0 | 3,926 | 7 | 144 | 121 | 802 | 0 | 0 | 22 | 521 | 4,930 | 11,064 |
| August-2015 | 32 | 0 | 53 | 0 | 0 | 105 | 0 | 0 | 97 | 0 | 0 | 1,412 | 1 | 84 | 37 | 329 | 0 | 0 | 16 | 422 | 2,356 | 4,944 |
| September-2015 | 72 | 2 | 107 | 0 | 0 | 239 | 0 | 0 | 228 | 0 | 0 | 3,167 | 4 | 167 | 95 | 691 | 0 | 0 | 54 | 428 | 5,098 | 10,352 |
| October-2015 | 77 | 0 | 94 | 0 | 0 | 216 | 0 | 0 | 242 | 0 | 0 | 3,920 | 1 | 140 | 98 | 620 | 0 | 0 | 23 | 1,264 | 5,564 | 12,259 |
| November-2015 | 77 | 1 | 105 | 0 | 0 | 183 | 0 | 0 | 183 | 0 | 0 | 3,145 | 2 | 113 | 87 | 610 | 0 | 0 | 10 | 584 | 5,029 | 10,129 |
| December-2015 | 123 | 0 | 209 | 0 | 0 | 313 | 0 | 0 | 288 | 0 | 0 | 6,236 | 1 | 231 | 194 | 1,045 | 0 | 0 | 14 | 717 | 7,856 | 17,227 |
| January-2016 | 65 | 0 | 127 | 0 | 0 | 147 | 0 | 0 | 217 | 0 | 0 | 3,083 | 3 | 201 | 254 | 675 | 3 | 0 | 16 | 1,568 | 5,692 | 12,051 |
| February-2016 | 78 | 0 | 171 | 0 | 0 | 225 | 0 | 0 | 299 | 0 | 0 | 4,911 | 3 | 316 | 159 | 1,347 | 1 | 1 | 78 | 1,399 | 8,853 | 17,841 |
| March-2016 | 63 | 0 | 111 | 0 | 0 | 141 | 0 | 0 | 318 | 0 | 0 | 3,912 | 4 | 264 | 101 | 1,116 | 4 | 0 | 29 | 2,571 | 9,528 | 18,162 |
| April-2016 | 121 | 0 | 177 | 0 | 0 | 212 | 0 | 0 | 407 | 0 | 0 | 5,664 | 10 | 419 | 931 | 2,001 | 1 | 0 | 4 | 2,210 | 13,500 | 25,657 |
| May-2016 | 133 | 0 | 160 | 0 | 0 | 262 | 0 | 0 | 416 | 0 | 0 | 7,316 | 21 | 430 | 155 | 1,935 | 1 | 0 | 5 | 1,923 | 13,846 | 26,602 |
| June-2016 | 132 | 0 | 208 | 0 | 0 | 316 | 0 | 0 | 445 | 0 | 0 | 7,585 | 14 | 474 | 234 | 1,755 | 2 | 0 | 33 | 968 | 12,946 | 25,112 |
| July-2016 | 155 | 0 | 159 | 0 | 0 | 354 | 0 | 0 | 336 | 0 | 0 | 6,711 | 5 | 323 | 297 | 1,357 | 3 | 0 | 17 | 847 | 10,679 | 21,243 |
| August-2016 | 201 | 0 | 200 | 0 | 0 | 358 | 0 | 0 | 435 | 0 | 0 | 11,479 | 8 | 445 | 347 | 1,577 | 2 | 0 | 50 | 2,009 | 13,279 | 30,390 |
| September-2016 | 292 | 0 | 334 | 0 | 0 | 455 | 0 | 0 | 629 | 0 | 0 | 12,442 | 9 | 450 | 3,170 | 2,365 | 0 | 0 | 31 | 2,293 | 18,810 | 41,280 |
| October-2016 | 271 | 0 | 253 | 0 | 0 | 357 | 0 | 0 | 621 | 0 | 0 | 10,596 | 7 | 394 | 3,734 | 2,253 | 4 | 0 | 35 | 3,481 | 20,526 | 42,532 |
| November-2016 | 204 | 0 | 227 | 0 | 0 | 250 | 0 | 0 | 496 | 0 | 0 | 8,714 | 5 | 282 | 2,711 | 1,559 | 2 | 0 | 65 | 1,800 | 14,216 | 30,531 |
| December-2016 | 53 | 0 | 55 | 0 | 0 | 82 | 0 | 0 | 215 | 0 | 0 | 5,005 | 5 | 132 | 407 | 468 | 0 | 0 | 40 | 741 | 6,989 | 11,796 |
| January-2017 | 142 | 0 | 145 | 0 | 0 | 226 | 0 | 0 | 364 | 0 | 0 | 6,188 | 11 | 292 | 576 | 971 | 0 | 0 | 19 | 1,904 | 9,016 | 19,854 |
| February-2017 | 60 | 0 | 89 | 0 | 0 | 78 | 0 | 0 | 210 | 0 | 0 | 3,089 | 2 | 236 | 177 | 684 | 0 | 0 | 54 | 2,733 | 6,286 | 13,698 |
| March-2017 | 12 | 0 | 14 | 0 | 0 | 7 | 0 | 0 | 58 | 0 | 0 | 499 | 0 | 58 | 33 | 120 | 0 | 0 | 19 | 530 | 1,691 | 3,041 |
| April-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 0 | 46 |
| May-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 0 | 1 | 0 | 0 | 26 |
| June-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57 | 0 | 0 | 57 |
| July-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 |
| August-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 2 |
| Total | 20,150 | 7 | 11,757 | 2,100 | 102 | 10,489 | 138 | 116 | 12,676 | 1,950 | 4,108 | 184,846 | 883 | 11,777 | 16,964 | 39,935 | 38 | 3 | 3,172 | 46,932 | 297,038 | 665,181 |

**EXHIBIT 2**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANDRA MCMILLION, JESSICA
ADEKOYA, and IGNACIO PEREZ,
on Behalf of Themselves and all Others
Similarly Situated,

       Plaintiffs,

v.

RASH CURTIS & ASSOCIATES,

       Defendant.

Case No. 3:16-CV-03396

## <u>CLASS MEMBER DATA TABULATION REPORT OF ANYA VERKHOVSKAYA</u>

I, Anya Verkhovskaya, hereby certify as follows:

    1.    I am the President of Class Experts Group, LLC ("CEG"). CEG offers litigation support services with a focus on data management and data analysis, particularly in the area of Telephone Consumer Protection Act, class administration and consumer class action litigation support services.

    2.    I have more than 19 years of experience serving as a data analysis in various class action matters, including hundreds of TCPA, consumer, employment, antitrust, securities fraud, ERISA, civil rights, discrimination and other claims. My resume is attached hereto as Exhibit A.

    3.    I have extensive experience identifying and locating class members in order to administer some of the largest and most complex class actions and other administration matters, involving all aspects of direct, media and third-party notice programs, data management, claims administration and settlement fund distribution, both domestically and internationally.

4.    In my professional experience, I have personally analyzed, overseen and directed pre-class-certification data analysis engagements, including but not limited to the analysis of call records and other large-volume data sets.

5.    Specifically, during my professional career, I have acted as project director in dozens of class actions brought under the TCPA and other state statutes protecting telephone related consumer privacy and other laws. As a result, I am extremely familiar with the various methodologies used to perform reliable call record analysis.

6.    Plaintiff has retained me at an hourly rate of $525.00 an hour.

7.    I reserve the right to amend this Class Member Data Tabulation Report should additional information or data become available.

**General Information Regarding Data Analysis**

8.    In cases brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, I routinely analyze call records to identify class members. As part of this analysis, I regularly partner with established and reputable data vendors, such as Tel-Lingua, LexisNexis, Nexxa Group, Inc. ("Nexxa"), Microbilt Corp., TransUnion, and others (the "Data Processors").

9.    The Data Processors are able to provide reliable information via access to numerous records and sources. *See* Supplemental Declaration of Randall A. Snyder, at ¶¶ 83-101.

10.   I regularly use these Data Processors in coordinating data analysis prior to class certification and in administering class action settlements, a context in which maximum accuracy and reliability are critical.

11.   Interactive Marketing Solutions ("IMS") provides access to the wireless block file, landline-to-wireless and wireless-to-landline ported numbers files, and audit file.

12.   The Data Processors can provide information via access to numerous records and sources, including, but not limited to, whether certain telephone numbers were cellular as of a given timeframe and also the names and addresses of the customary users of those telephone numbers as of a given timeframe.

13.   I regularly use the Data Processors in coordinating data analysis prior to class certification and in administering class action settlements, a context in which maximum accuracy and reliability is critical.

**Specific Information Regarding Data Analysis**

*Initial Processing*

14.   Plaintiffs' counsel retained me to tabulate call records pursuant to certain parameters they set forth. The parameters for the tabulation began with the following:

    a.   Identify records within the source files: GC_calls2; TCN_calls-2; and VIC_calls-2 (the "Source Data");

    b.   Exclude records that are exact duplicate records;

    c.   Exclude records without a full 10-digit telephone number;

    d.   Exclude records with area codes 800, 833, 844, 855, 866, 877, 888 or area codes not between 201-989; and

    e.   Excluded records that were outside of Class Period 6/17/2012 - 3/8/2018.

15.   The tabulation in Paragraph 14 resulted in a remaining 3,081,275 telephone calls to 184,621 unique telephone numbers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

*Wireless Processing*

16.    I next tabulated the telephone numbers remaining to find the telephone numbers that were wireless at the time of the calls made to them.

17.    The methodology of utilizing the wireless block and ported telephone numbers is a very standard process that has been approved by many courts in various cases.

18.    In order to identify telephone numbers that were called when they were wireless I utilized the standard protocol of cross-referencing the relevant telephone numbers against the IMS wireless block, landline-to-wireless, and wireless-to-landline ported telephone numbers and audit files (the "IMS Files").

19.    In order to complete this analysis, I cross-referenced the telephone numbers and timeframe of calls thereto, against the IMS Files. Doing so, I was able to find which telephone numbers had been wireless at the time of the calls. There were 92,766 telephone numbers which had been wireless at the time of the calls (the "Wireless Numbers") and received 1,301,111 telephone calls.

*Reverse-Append of Name and Address*

20.    I next tabulated the "match" or "no-match" status of the historical users of the 92,766 Wireless Numbers. To do this, I compared the customary user names to the intended recipient names (the names on the debt accounts).

21.    In similar cases, I have sought to identify, within a historical timeframe, the names and addresses of customary users of the telephone numbers. I submitted a file of 92,766 Wireless Numbers to the LexisNexis online batch interface from which a custom data process can be performed. The file is then processed by LexisNexis and the output was posted by LexisNexis to the batch interface system for download by CEG (the "Output").

Reverse-append through LexisNexis had 84,944 telephone numbers' customary user names appended through this process.

22.   In some instances, LexisNexis did not return any name(s)/address(es) for a telephone number. These telephone numbers are categorized as "No Append."

23.   After the LexisNexis reverse-append process, I performed secondary reverse-append via TransUnion for those records that did not have results from LexisNexis, "No Append" records.

24.   Similar to the LexisNexis reverse-append process, TransUnion also provides reliable customary user names and address data. 6,378 telephone numbers had customary user names appended through this process.

25.   There were 1,444 telephone numbers which did not have names appended through primary or secondary append processes. It would be possible to conduct tertiary or quaternary append processes, if requested.

*Analysis of Appended Name Versus Intended Name "Match" or "No-match"*

26.   Of the 91,322 telephone numbers with names appended, 40,420 telephone numbers were identified as having a customary user(s), at the time of the calls, whose name(s) do(es) not "match" to the Source Data name (either as an exact match, a fuzzy match, or apparent marriage-name-change match) (the "No Match Numbers").

27.   There were 50,902 telephone numbers where at least one or more of the customary user names did "match" to the Source Data name for the relevant timeframe (the "Match Numbers").

28.   Because LexisNexis/TransUnion ("LN/TU") list users of a phone number for the period searched, many of the telephone numbers searched returned names of multiple

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

users. If any of the listed users matched the Source Data, those numbers were considered a "match."

29.   Below is an example of data analysis performed for an example record with an individual named "Les Johns" as the intended recipient.

| LN/TU Start Date | LN/TU End Date | LN/TU First Name | LN/TU Last Name | *Source Data Name* |
|---|---|---|---|---|
| 20111021 | 20181107 | LES | JOHNS | *Les Johns* |
| 20111021 | 20181107 | MIKE | JOHNS | *Les Johns* |

30.   In the example LexisNexis/TransUnion shows that for the timeframe, Les was listed as a customary user of the telephone number, in addition to Mike Johns.

31.   Because the Source Data name matches one of the LexisNexis/TransUnion customary user names during the same time period as the calls, this telephone number would be a "match."

32.   In contrast, below is an example of data analysis for a telephone number that has a customary user name appended that does not match the Source Data. Here, "Kim Kuehl" was the intended recipient.

| LN/TU Start Date | LN/TU End Date | LN/TU First Name | LN/TU Last Name | *Source Data Name* |
|---|---|---|---|---|
| 20010221 | 20171030 | JAN | LIEBE | *Kim Kuehl* |

33.   In the example LexisNexis/TransUnion shows that for the timeframe there is a customary user Jan Liebe. Therefore, this telephone number would not be considered a "match."

34.   Table 1 below outlines results for "No Match Numbers" broken down by unique telephone numbers, number of calls those telephone numbers received, per Source Data File,

1

per disposition.

2

Table 1

| Source File | Disposition | Unique Phone Count | Call Count |
|---|---|---|---|
| GC_calls2 | answered | 37,674 | 501,043 |
| | Message - Hang Up | 0 | 0 |
| | Message - VIC Voice Mail | 0 | 0 |
| | Message - Party Connect | 0 | 0 |
| TCN_calls-2 | answered | 8,478 | 31,064 |
| | Message - Hang Up | 0 | 0 |
| | Message - VIC Voice Mail | 0 | 0 |
| | Message - Party Connect | 0 | 0 |
| VIC_calls-2 | answered | 0 | 0 |
| | Message - Hang Up | 879 | 1,679 |
| | Message - VIC Voice Mail | 153 | 237 |
| | Message - Party Connect | 282 | 675 |

*Email Address Append*

35.   For the telephone numbers identified as "No Match Numbers" I coordinated a reverse-append process through TransUnion to identify email addresses.

36.   Email addresses were identified for users of 27,185 telephone numbers.

37.   Of the 13,235 telephone numbers without identified email addresses, 8,966 have full or partial mailing addresses. Of the 40,420 No Match telephone numbers, full or partial mailing addresses were located for users of 35,126 of those telephone numbers.

38.   The process by which cellular telephone numbers are identified is routine, and I have regularly coordinated this process for both litigated classes and settlement classes. A listing of representative cases where the cellular-identification process was used in a Court-approved setting (whether certified class or settlement class) is attached as Exhibit B.

39.   Similarly, the process by which I identify the historical names and addresses of

users of telephone numbers is routine, and I have regularly coordinated this process for both litigated classes and settlement classes. A listing of several cases where this process was used in a Court-approved setting is attached as Exhibit C.

Executed at Milwaukee, Wisconsin, this November 12, 2018.

_____
Anya Verkhovskaya

# EXHIBIT A

# ANYA VERKHOVSKAYA

President

Class Experts Group, LLC
Milwaukee, WI

anyav@classexpertsgroup.com
262-302-4443

---------------------------------------------------------------------------------------------------------------

Anya Verkhovskaya is the President of Class Experts Group, LLC, a boutique firm which offers litigation support services with focus on data and expert services in the area of Telephone Consumer Protection Act (TCPA), class notice, and consumer class action support services.

Verkhovskaya has extensive experience administering some of the largest and most complex class action settlements in history, involving all aspects of direct, media and third party notice programs, data management, claims administration and settlement fund distribution.

Verkhovskaya has been a pioneer in class member identification and location in TCPA and other consumer cases for purposes of class certification and effectuating notice programs. Verkhovskaya regularly provides opinions and testimony concerning ascertainability, class certification, notice adequacy and settlement issues in connection with TCPA matters as well as a variety of other types of class actions.

Verkhovskaya has directed data analysis in connection with notice and/or settlement administration in hundreds of consumer, TCPA, civil rights, insurance, antitrust, ERISA, securities, employment, human rights, environmental and other types of class action and Securities and Exchange Commission (SEC) fairness actions, including, but not limited to, the following cases:

- *Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, Inc. et al.*, No. SACV1100436-GW (FFMx), United States District Court, Central District of California

- *Acevedo v. Lawyers Title Insurance Corporation*, Case No. 03-CH-07718, Circuit Court of Cook County, Illinois, County Department, Chancery Division

- *In re ACS Shareholders Litigation*, Master File No. 3:06-CV-1592-M, United States District Court, Northern District of Texas, Dallas Division

- *In re Adolor Corporation Shareholders Litigation*, C.A. No. 6997-VCN, Court of Chancery of the State of Delaware

- *In re Affiliated Computer Services ERISA Litiga*tion, Master File No. 3:06-CV-1592-M, Northern District of Texas, Dallas Division

- *In re AIG ERISA Litigation*, Master File No.: 04-CV-9387 (JES) (AJP), United States District Court, Southern District of New York

- *In re AirGate PCS, Inc. Securities Litigation*, Civil Action No.: 1:02-CV-1291-JOF, United States District Court, Northern District of Georgia, Atlanta Division

- *Akins v. Worley Catastrophe Response, LLC*, Civil Action No. 12-2401, United States District Court, Eastern District of Louisiana

- *Alakayak v. All Alaskan Seafoods, Inc.*, Case No. 3AN-95-4676 CIV, Superior Court for the State of Alaska, Third Judicial District at Anchorage

- *Allen v. HealthPort Technologies, LLC*, Case No. 12-CA-013154, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida General Civil Division

- *Alper v. Warnock Ford, Inc.*, Docket No.: MRS-L-1644-10, Superior Court of New Jersey, Morris County

- *Altier v. Worley Catastrophe Response, LLC*, Civil Action No. 11-00241, United States District Court, Eastern District of Louisiana

- *In re American Italian Pasta Company Securities Litigation* (AIPC and Ernst Settlements), Consolidated Civil Action No. 05-CV-0725-W-ODS, United States District Court for the Western District of Missouri, Western Division

- *In re Andrx Corporation, Inc., Taztia™ XT Securities Litigation*, CASE NO.: 02-60410, United States District Court, Southern District of Florida

- *Arias v. Award Homes, Inc.*, Case No. M54183, Superior Court of California, County of Monterey

- *Arteaga v. MODA Furniture, Inc.*, Docket No: L-000980-05, Superior Court of New Jersey, Morris County

- *In re Assicurazioni Generali S.p.A. Holocaust Insurance Litigation*, MDL 1374, United States District Court, Southern District of New York

- *In re Atlas Energy, Inc. Shareholders Litigation*, C.A. No. 5990-VCL, Court of Chancery, State of Delaware

- *Austrian Banks Holocaust Litigation*, Case Nos. 01-3017, 01-3019, 01-3024, 01-3025, United States District Court for the Southern District of New York

- *Balschmiter v. TD Auto Finance LLC*, 2:2013cv01186, United States District Court, Eastern District of Wisconsin

- *Baptista v. Mutual of Omaha Insurance Co.*, CA 10-467 ML, United States District Court, District of Rhode Island

- *Bauman v. Superior Financial Corp.*, Civ. Action No. 4-01-CV-00756 GH, United States District Court, Eastern District of Arkansas, Western Division

- *In re Bear Stearns Companies, Inc. ERISA Litigation*, Case No. 08-MDL-1963, United States District Court, Southern District of New York

- *In re Beazer Homes USA, Inc. ERISA Litigation*, Civil Action No. 1:07-CV-00952 (RWS), United States District Court for the Northern District of Georgia, Atlanta Division

- *In re Beckman Coulter, Inc. Securities Litigation*, Case No.: 8:10-cv-1327-JST (RNBx), United States District Court, Central District of California

- *Benzion v. Vivint, Inc.*, Case No. 12-CV-61826-WJZ, United States District Court, Southern District of Florida, Fort Lauderdale Division

- *In re BigBand Networks, Inc. Securities Litigation*, Master File No. 07-CV-5101 SBA, United States District Court, Northern District of California, Oakland Division

- *In re BISYS Securities Litigation*, Civil Action No. 04-CV-3840 (JSR), United States District Court, Southern District of New York

- *Black v. Metso Paper USA, Inc.*, Civil Action No. 3:05-CV-1951, United States District Court for the Middle District of Pennsylvania

- *Blanco v. KeyBank USA, N.A.*, Case No.: 1-03-CV-524, United States District Court, Northern District of Ohio, Eastern Division

- *Board of Commissioners of the Port of New Orleans v. Virginia Harbor Services Inc.*, No. SACV11-00437-GW (FFMx)

- *Bosland v. Warnock Dodge, Inc.*, Docket No.: MRS-L-844-06, Superior Court of New Jersey, Morris County

- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*, Case No. C06-1505 MJP, United States District Court, Western District of Washington at Seattle

- *Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, Case No. 8:02-CV-609-T-30EAJ, United States District Court, Middle District of Florida, Tampa Division

- *Brattain v. Richmond State Hospital*, Cause No. 49D11-0108-CP-1309, Cause No. 49D110108-CP-1309, Marion Superior Court, County of Marion, State of Indiana

- *Brey Corp. v. Life Time Improvements, Inc.*, Civil Action No. 349410-V, Circuit Court for Montgomery County, Maryland

- *Brieger v. Tellabs, Inc.*, Case No. 1:06-cv-1882, United States District Court, Northern District of Illinois, Eastern Division

- *Broad St. Partners Fund v. Dods*, Case No. 2011 CH 001505, State of Illinois, County of Du Page, Circuit Court of the Eighteenth Judicial Circuit

- *Brown v. Hayt, Hayt & Landau*, LLC, Docket No.: L-7042-07, Superior Court of New Jersey, Essex County

- *Brumfield v. Countrywide Home Loans, Inc.*, 1:08-CV-93-HSO-JMR, Mississippi Southern District Court

- *Burns v. First American Bank*, Case No. 04 C 7682, United States District Court for the Northern District of Illinois, Eastern Division

- *In re Calpine Corporation ERISA Litigation*, Master File No. C 03-CV-1685 (SBA), United States District Court, Northern District of California, Oakland Division

- *Canning v. Concord EFS, Inc.*, Docket No. L-6609-02, Superior Court of New Jersey, Law Division: Camden County

- *Capovilla v. Lone Star Technologies, Inc.*, Cause No. 07-02979, District Court of Dallas County, Texas, 14th Judicial District

- *In re Cardinal Health, Inc. ERISA Litigation*, No. C2-04-643 (ALM), United States District Court, Southern District of Ohio, Eastern Division

- *Carlson v. C.H. Robinson Worldwide, Inc.*, Civil Action No. CV 02-3780, United States District Court for the District of Minnesota

- *Carlson v. State of Alaska, Commercial Fisheries Entry Commission*, Case No. 3AN-845790 CI, Superior Court for the State of Alaska, Third Judicial District at Anchorage

- *In re Cbeyond, Inc. Securities Litigation*, Civil Action No. 1:08-cv-1666 (CC), United States District Court, Northern District of Georgia

- *Cement Masons & Plasterers Joint Pension Trust v. TNS, Inc.*, Case No. 1:06 CV 363 CMH/BRP, United States District Court, Eastern District of Virginia

- *Cerda v. Associates First Capital Corporation*, Civil Action No. M-03-146, United States District Court, Southern District of Texas, McAllen Division

- *Chao v. Slutsky*, Civil Action File No. 01-CIV-7593, United States District Court, Eastern District of New York

- *Clayton v. Velociti, Inc.*, Case No. 08-CV-2298-CM/GLZ, United States District Court for the District of Kansas at Kansas City

- *Clearview Imaging, L.L.C. v. Dairyland Insurance Company*, Case No.: 04-11399, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Clearview Imaging, L.L.C. v. Mercury Insurance Company of Florida*, Case No. 03-5170, Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County, Florida, Civil Division

- *Clearview Imaging, L.L.C. v. Nationwide Mutual Insurance Company*, Case No. 04-10396 Division H (consolidated), Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Clearview Imaging, L.L.C. v. Progressive Consumers Insurance Company*, Case No. 034174 Division C, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Clemons v. Thompson*, Docket No.: MON-L-001980-07, United States District Court, Eastern District of New York

- *In re CNX Gas Corporation Shareholders Litigation*, C.A. No. 5377-VCL, Court of Chancery of the State of Delaware

- *Cohen v. JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*, Case No. 04 CV 4098, United States District Court, Eastern District of New York

- *Coleman v. Lincoln Wood Products, Inc.*, 99-CVS-1362, Superior Court of New Jersey, Middlesex County: Law Division

- *Collins v. American Consumer Shows, Inc.*, Civil Action No. 1:10-CV-11912-RGS, United States District Court, District of Massachusetts

- *Commonwealth of Massachusetts v. H&R Block, Inc.*, Civil Action No. 08-2474-BLS1, Suffolk Superior Court

- *In re Connetics Securities Litigation*, Case No. C 07-02940 SI, United States District Court for the Northern District of California

- *In re: The Consumers Trust*, Case No. 05 – 60155 (REG), United States Bankruptcy Court, Southern District of New York

- *Coppess v. Healthways, Inc.*, Case No. 3:10-cv-00109, United States District Court, Middle District of Tennessee, Nashville Division

- *Corsello v. Verizon New York, Inc.*, Case No. 39610/07, Supreme Court of the State of New York

- *Cotton v. Ferman Management Services Corporation*, Case No.: 02-08115, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Cottrell v. Gardner*, Civ. Action No. CV-2002-121(I), Superior Financial Corp. Derivative Action, State of Arkansas, Sebastian County, Arkansas

- *In re CP Ships Ltd. Securities Litigation*, Case No. 8:05-MD-1656-T-27TBM, United States District Court for the Middle District of Florida

- *Croxall v. Tampa Hund L.P.*, Case No. 03-6201, The Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Cruz v. Condor Capital Corporation*, Docket No. MID-L-2108-06, Superior Court of New Jersey, Middlesex County: Law Division

- *Curtis v. Northern Life Insurance Company*, No. 01-2-18578-1 SEA, Superior Court of Washington for King County

Verkhovskaya Résumé

- *Dandong, et al. v. Pinnacle Performance Limited*, et al., No. 10-cv-8086 (JMF), United States District Court, Southern District of New York

- *In re: DDAVP Indirect Purchaser Antitrust Litigation*, Civil Action No. 05-cv-2237 (CS), United States District Court, Southern District of New York

- *DeCario v. Lerner New York, Inc.*, Case No. BC 317954, Superior Court of the State of California, Los Angeles County

- *In re Del Monte Foods Company Shareholder Litigation*, Consolidated C.A. No. 6027-VCL, Court of Chancery, State of Delaware

- *In re Delphi Financial Group Shareholders Litigation*, Consolidated C.A. No. 7144-VCG, Court of Chancery of the State of Delaware

- *Desai v. ADT Security Services, Inc.*, Case No. 1:11-CV-1925, United States District Court, Northern District of Illinois

- *Di Popolo v. Ramsey Nissan, Inc.*, Docket No. BER-L-10319-09, Superior Court of New Jersey, Bergen County

- *In re Diebold ERISA Litigation*, No. 5:06 CV 0170, United States District Court for the Northern District of Ohio Eastern Division

- *Dishkin v. Tire Kingdom, Inc.*, Case No. 3D08-2088, Circuit Court for Miami-Dade County, Florida

- *Drury v. Countrywide Home Loans, Inc.*, Case No. 6:08-cv-152-ORL-28 DAB, United States District Court, Middle District of Florida, Orlando Division

- *In re Dura Pharmaceuticals, Inc. Securities Litigation*, Master File No. 99-CV-0151-JLS (WMC), United States District Court, Southern District of California

- *Eisenberger v. Boston Service Company, Inc.*, Docket No.: MID-L-10366-09, Superior Court of New Jersey, Middlesex

- *In re Electronic Data Systems Corp. ERISA Litigation*, 6:03-MD-1512 and Lead Case: 6:03CV-126 (ERISA), United States District Court, Eastern District of Texas, Tyler Division

- *In re Emergent Group, Inc. Shareholder Litigation*, Lead Case No. BC455715, Superior Court of the State of California, County of Los Angeles

- *In re: Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, MDL No. 2056, United States District Court for the Western District of Pennsylvania

- *Epstein v. Sears, Roebuck and Co.*, Docket No.: UNN-L-1732-09, Superior Court of New Jersey, Union County: Law Division

- *Estate of Gary Robertson v. ADS Alliance Data Sys., Inc.*, Case No. 8:11-cv-1652-T-33TBM, United States District Court, Middle District of Florida, Tampa Division

- *Estates of Hampton v. Beverly Enterprises-Arkansas, Inc.*, No. CV 2004-95-3, Circuit Court of Bradley County, Arkansas

- *Estep v. Smythe Volvo, Inc.*, Case No. UNN-L-004184-03, Superior Court of New Jersey, Union County: Law Division

- *Evans v. Stewart Title Guaranty Company*, Case No. 04-06630-05, Circuit Court of the 17th Circuit, Broward County, Florida

- *Family Open MRI, Incorporated v. Direct General Insurance Company*, Case No. 03-4175, Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *In re Fannie Mae ERISA Litigation*, Consolidated Civil Action No.: 1:04-cv-01784 (RJL), United States District Court, District of Columbia (Washington, D.C.)

- *Fernando v. Neopost USA, Inc.*, Case No.: BC439856, Superior Court of the State of California, County of Los Angeles

- *Fernando v. Priority Mailing Systems*, Case No. BC439857, Superior Court of the State of California, County of Los Angeles

- *Ferro v. Florida Windstorm Underwriting Assoc.*, Civil 00014808, 17th Judicial Circuit, Broward County, Florida

- *In re FLAG Telecom Holdings, Ltd. Securities Litigation*, Master File No. 02-CV-3400 (CM) (PED), United States District Court, Southern District of New York

- *Flood v. Dominguez*, Case No. 2:08-CV-153, United States District Court for the Northern District of Indiana

- *Kellman v. Forever 21 Retail, Inc.*, Case No. 12-32841 CA 05, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida

- *Francis v. A&E Stores, Inc.*, Case No. 06 CV 1638(CS)(GAY), United States District Court, Southern District of New York

- *Franco v. Ace Parking Management Inc.*, Case No. BC 392809, Superior Court of the State of California, Los Angeles County

- *Fray-Witzer v. Metropolitan Antiques, LLC*, Civil Action No. 02-5827, Commonwealth of Massachusetts, Superior Court, Department of the Trial Court, Suffolk Division

- *Fray-Witzer v. Olde Stone Land Survey Company, Inc.*, C.A. No.: 2008-04175, Superior Court C.A. No. 2008-04175, Commonwealth of Massachusetts

- *In re Fremont General Corporation Litigation*, CV07-02693 JHN(FFMX), United States District Court for the Central District of California

- *Friedman v. Rayovac Corp.*, Case No. 02-C-0308-C, United States District Court for the Western District of Wisconsin

- *Froumy v. Stark & Stark*, Case No. 3:09-cv-04890, United States District Court, District of New Jersey

- *FW Transportation, Inc. v. Associates Commercial Corp.*, Case No. C200000084, District Court of Johnson County, Texas, 18th Judicial District

- *In re General Electric Company Securities Litigation*, Civ. No. 09-CIV-1951 (DLC), United States District Court, Southern District of New York

- German Forced Labor Compensation Program (GFLCP)

- *In re Gilead Sciences Securities Litigation*, Master File No. C-03-4999-SI, United States District Court, Northern District of California

- *Gilley v. Ernie Haire Ford, Inc.*, Case No.: 02-8101, Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *In re Goodrich Shareholders Litigation*, Index No. 13699/2011 (Consolidated), Supreme Court of the State of New York, County of Nassau: Commercial Division

- *Graham v. Town & Country Disposal of Western Missouri, Inc.*, Case No.: 4:10-CV-00551, United States District Court for the Western District of Missouri

- *Greenstein v. Nations Title Agency of Florida, Inc.*, Case No.502007CA014085XXXMBAA, Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida

- *Griffin v. Flagstar Bancorp*, Inc., Case No. 2:10-cv-10610, United States District Court, Eastern District of Michigan, Southern Division

- *Groen v. PolyMedica Corporation*, Civil Action No. 07-3352, Commonwealth of Massachusetts, Superior Court Department, Middlesex County

- *Gulf Coast Injury Center, LLC v. Nationwide Mutual Fire Insurance Company*, Case No.: 08-CA-012621, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida

- *Hall v. The Children's Place Retail Stores, Inc.*, Civil Action No. 1:07-cv-08252-SAS (Consolidated), United States District Court, Southern District of New York

- *Hamilton v. ATX Services Inc.*, Case No. 08-0030-CV-W-SOW, United States District Court for the Western District of Missouri, Western Division

- *Hargrave v. TXU Corp.*, Case No. 3:02-CV-2573-K, United States District Court, Northern District of Texas, Dallas Division

- *Harris v. First Regional Bancorp*, Case No.: CV10-7164 CJC (MLGx), United States District Court Central District of California

- *Harris v. Koenig*, Case No. 1:02-CV00618 (GK), United States District Court for the District of Columbia

- *In re Hartford Financial Services Group Inc. ERISA Litigation*, Master File: 3:08-CV-01708 (PCD), United States District Court, District of Connecticut

- *Haynes v. Baptist Health*, 240 S.W.3d 576 (2006), Supreme Court of Arkansas

- *In re: Hearst-Argyle Shareholder Litigation*, Index No. 09-Civ-600926, Supreme Court of the State of New York, County of New York

- *Hellmers v. Countrywide Home Loans, Inc.*, Civil Action No. 07-7703, United States District Court, Eastern District of Louisiana

- *Hess v. Oriole Homes Corp.*, Civil Action No. 07-7703, Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida

Verkhovskaya Résumé

- *Hill v. American Medical Security Life Insurance Company*, C.A. No. W-06 CA 332, United States District Court, Western District of Texas, Waco Division

- *Hill v. Countrywide Home Loans, Inc.*, Case No. A-0178441, United States District Court, Eastern District of Texas

- *Holley v. Kitty Hawk, Inc.*, Case No. 3-00 CV 0828-P, United States District Court for the Northern District of Texas, Dallas Division

- *In re Holocaust Victim Assets Litigation* (Swiss Banks) (HVAP), Master Docket No. CV-964849 , United States District Court, Eastern District of New York

- *Horton v. Cavalry Portfolio Services, LLC*, Case No. 13 CV0307 JAH WVG, United States District Court, Southern District of California

- *Hudson United Bank v. Chase*, Docket No.: L-235-05, Superior Court of New Jersey, Hunterdon County

- *Hughley v. Maryland Casualty Company*, Case No.: 06-21428-CIV-ALTONAGA, United States District Court for the Southern District of Florida, Miami Division

- *Hunt v. PacifiCare Life and Health Insurance Company*, Case No. 37-2009-00088839-CUIC-CTL

- *Hutson v. Baptist Health*, Case No. CV 08-8221, Pulaski Circuit/County Court [Arkansas]

- *Hutt v. Martha Stewart Living Ommimedia, Inc.*, Index No. 651249/2012, Supreme Court of New York, County of New York

- *In re ICG Communications, Inc. Securities Litigation*, Civil Action No. 00-cv-1864-REBBNB (Consolidated), United States District Court for the District of Colorado

- *In re: InfoSonics Securities Litigation*, Civil Action No. 06-CV-1231-JLS (WMC), District Court for the Southern District of California

- *In re ING Groep, N.V. ERISA Litigation*, Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia, Atlanta Division

- *In re International Business Machines Corp. Securities Litigation*, Civil Action No. 1:05-cv6279 (AKH), United States District Court, Southern District of New York

- International Commission on Holocaust Era Insurance Claims (ICHEIC)

- *In re Iowa Ready-Mixed Concrete Antitrust Litigation*, Case No. 5:10-CV004038-MWB, United States District Court, Northern District of Iowa, Western Division

- *In re J. Crew Group, Inc. Shareholders Litigation*, Case No. 6043-CS, Court of Chancery of the State of Delaware

- *In re JDS Uniphase Corporation ERISA Litigation*, Master File No. C 03-04743 CW, United States District Court, Southern District of West Virginia at Beckley

- *Kalow & Springut, LLP v. Commence Corporation*, Case No. 07-3443 (FLW/JJH), United States District Court for the District of New Jersey

- *Kay v. Wells Fargo & Company*, Case No. 07-01351 WHA, United States District Court, Northern District of California

- *In re: King Pharmaceuticals, Inc. Securities Litigation*, No. 2:03-CV-77, United States District Court, Eastern District of Tennessee, Greeneville Division

- *Krakauer v. DISH Network, LLC*, Civil Action No. 1:14-cv-00333-CCE-JEP, United States District Court, Middle District of North Carolina

- *Kreher v. City of Atlanta, Georgia*, Case No. 1:04-cv-2651, United States District Court, Northern District of Georgia

- *Kubacki v. Peapod, LLC*, Case No. 13 C 729, United States District Court for the Northern District of Illinois, Eastern Division

- *Kubota v. Walker*, Cause Number 06-02446, District Court of Dallas County, Texas, 95th Judicial District

- *The Lafayette Life Insurance Company v. City of Menasha*, Cause No. 4:09-CV-64TLS-APR, United States District Court, Northern District of Indiana, Hammond Division (Lafayette)

- *In re LDK Solar Securities Litigation*, Master File No. C 07-05182 WHA, United States District Court, Northern District of California

- *In re Lear Corp. ERISA Litigation*, Master File: 2:06-CV-11735 (AJT-VMM), United States District Court, Eastern District of Michigan

- *Lehmann v. Ivivi Technologies, Inc.*, Docket No. C-343-09, Superior Court of New Jersey, Bergen County, Chancery Division

- *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 09-MD-2017 (LAK), United States District Court, Southern District of New York

- *In re Lernout & Hauspie Securities Litigation* (Directors and FLV Settlements), Civil Action No. 00-CV-11589 (PBS), United States District Court for the District of Massachusetts

- *In re Lernout & Hauspie Securities Litigation* (KPMG Settlement), Case No. 04-CV-1738, United States District Court for the District of Massachusetts

- *Leslie Niederklein v. PCS Edventures!.com, Inc.*, Civil Action No. 1:10-cv-00479-CWD, United States District Court, District of Idaho

- *Lilly v. Oneida Ltd. Employee Benefits Admin. Comm.*, Case No. 6:07-cv-00340 (NPM/ATB), United States District Court, Northern District of New York

- *In re Limelight Networks, Inc. Securities Litigation*, Master File No. CV07-01603-PHXSRB, United States District Court, District of Arizona

- *Lofton v. Verizon Wireless (VAW) LLC*; Case No. C 13-05665 YGR, United States District Court for the Northern District of California, Oakland Division

- *Long v. Eschelon Telecom, Inc.*, File Number 27-CV-07-6687, Fourth Judicial District of the State of Minnesota, County of Hennepin

- *Lopera v. The Receivable Mgmt. Servs. Corp.*, Case No. 12-CV-9649, United States District Court for the Northern District of Illinois, Eastern Division

- *The Louisiana Municipal Police Employees Retirement System v. Deloitte & Touche LLP*, C.A. No. 04-621 (LDW), United States District Court, Eastern District of New York

- *Mann & Company, PC v. C-Tech Industries, Inc.*, Civil Action No. 1:08CV11312-RGS, United States District Court, District of Massachusetts

- *Mann v. Lawyers Title Insurance Corporation*, Case No. 03 CH 15223, Circuit Court of Cook County, Illinois, County Department, Chancery Division

- *Mantzouris v. Scarritt Motor Group, Inc.*, Case No. 8:03CV0015-T-30-MSS, United States District Court, Middle District of Florida, Tampa Division

- *In re Marine Hose Antitrust Litigation* (Bridgestone, Dunlop, Parker, Trelleborg, and Yokohama Settlements), Master Docket No. 08-MDL-1888-Graham/Turnoff, United States District Court, Southern District of Florida, Miami Division

- *In re Marsh ERISA Litigation*, Master File No.: 04 cv 8157 (CM), United States District Court, Southern District of New York

- *In re Martek Biosciences Corp. Securities Litigation*, Civil Action No. MJG 05-1224, United States District Court, District of Maryland, Northern Division

- *Martin v. aaiPharma, Inc.*, Master File No: 7:04-CV-27-D, United States District Court, Eastern District of North Carolina

- *Martin v. Dun & Bradstreet, Inc.*, Case No. 1:12-cv-00215, United States District Court for the Northern District of Illinois

- *Martin v. Foster Wheeler Energy Corporation*, Case No. 3:06-CV-00878, United States District Court, Central District of California

- *In re Massey Energy Co. Securities Litigation*, Civil Action No. 5:10-cv-00689-ICB, United States District Court for the Northern District of California

- *Mayer v. Administrative Committee of the Smurfit-Stone Container Corporation Retirement Plans*, Case No. 1:09-cv-02984, United States District Court, Northern District of Illinois

- *Mayes v. The Geo Group, Inc.*, Case No. 5:08-cv-248/RS/EMT, United States District Court, Northern District of Florida, Panama City Division

- *Mayotte v. Associated Bank, N.A.*, Case No. 2:07-CV-00033, United States District Court, Northern District of Florida, Panama City Division

- *In re MBNA Corp. Securities Litigation*, Case No. 1:05-CV-00272-GMS CONSOLIDATED, United States District Court, District of Delaware

- *Meadows v. Clearwater Bay Marketing, LLC*, Cause No. 49C01-0812-PL-054708, Marion Circuit Court, Civil Division, Marion County, Indiana

- *Means v. River Valley Financial Bank*, Cause No. 49D12-0704-PL016504, Marion Superior Court, County of Marion, State of Indiana

- *In re Merck & Co. Inc. Vytorin ERISA Litigation*, Civil Action No. 08-CV-1974 (DMC), United States District Court, District of New Jersey

- *Merrimon v. UNUM Life Insurance Company of America*, CIV. NO. 2:10-cv-00447-NT, United States District Court, District of Maine

- *In re Metavante Technologies, Inc. Shareholder Litigation*, Consolidated Case No. 09-CV5325 State of Wisconsin, Milwaukee County Circuit Court

- *Mey v. Herbalife International, Inc.*, Civil Action No. 01-C-263, Circuit Court of Ohio County, West Virginia

- *Mey v. Honeywell Int'l, Inc., et al.*, Case No. 2:12-cv-1721, United States District Court the for Southern District of West Virginia

- *In re Micromuse, Inc. Securities Litigation*, Case No. C-04-0136 BZ, United States District Court, Northern District of California

- *Milford & Ford Associates, Inc. v. Cell-Tek, LLC*, C.A. NO. 1:09-CV-11261-DPW, United States District Court, District of Massachusetts

- *Miller v. Weltman, Weinberg & Reis Co.*, L.P.A., Docket No. MID-L-006248-07, Superior Court of New Jersey, Law Division: Middlesex County

- *In re: MK Resources Company Shareholders Litigation*, C.A. Nos. 1692-VCS and 1598VCS, Court of Chancery, New Castle County, State of Delaware

- *Montalvo v. Tripos, Inc.*, Case No. 4:03CV995SNL, United States District Court, Eastern District of Missouri

- *Moore v. The Hertz Corporation*, 03-11772 Div. K, Circuit Court of the Thirteenth Judicial Circuit of State of Florida in and for Hillsborough, County Civil Division

- *In re Morgan Asset Management, Inc.* (Kelsoe and Weller Settlements), Administrative Proceeding File No. 3-13847, United States of America Before the Securities and Exchange Commission

- *Morrison v. MoneyGram International, Inc.*, Case No. 08-CV-01121 (PJS/JJG), United States District Court for the District of Minnesota

- Mortgage Settlement Consumer Restitution Program (Foreclosure Restitution Program and Bank of America Victims Program)

- *In re Motive, Inc. Securities Litigation*, Civil Action No. A-05-CV-923-LY and Case No. A06-CA-017-LY, United States District Court, Western District of Texas

- *Mozenter v. Nalco Holding Company*, Case No. 2011-MR-001043 (Consolidated), United States of America, State of Illinois, County of Dupage, Circuit Court of the Eighteenth Judicial Circuit

- *Mulhern v. MacLeod d/b/a ABC Mortgage Company*, Civil Action No. 2005-01619, Commonwealth of Massachusetts

- *In re: National City Corporation Securities, Derivative & ERISA Litigation*, Case No. 08-nc70000, United States District Court for the Northern District of Ohio, Eastern Division

- *The People of the State of New York v. SKS Associates, LLC*, IAS Part 58, Index No. 400908/12, Supreme Court of the State of New York, County of New York

- *Norflet v. John Hancock Life Insurance Company*, Civil No. 3:04cv1099 (JBA), United States District Court, District of Connecticut

- *In re Novamed, Inc. Shareholders Litigation*, Consolidated C.A. No. 6151-VCP, Court of Chancery State of Delaware

- *NSL Capital Management v. Gorman*, Docket No. C-48-08, Superior Court of New Jersey, Chancery Division, Monmouth County

- *Nthenge v. Pressler and Pressler, LLP*, Master File No. C-00-1211-PH United States District Court for the Northern District of California

- *In re: NX Networks Securities Litigation*, Civil Action Nos. 00-CV-11850-JLT and 01-CV10377-JLT, United States District Court, District of Massachusetts

- *Obermeyer v. MarineMax East, Inc.*, Case No. 08-54007-CA-24, Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida

- *Olivo v. Homecomings Financial LLC*, Index No. 4625/06, Supreme Court of the State of New York, Nassau County

- *Open MRI of Pinellas, Inc. v. Atlanta Casualty Insurance Company*, Case No.: 03-7721, Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida

- *Ori v. Fifth Third Bank and Fiserv, Inc.*, Case No. 08-CV-00432-LA, United States District Court, Eastern District of Wisconsin

- *In re: Ortiz v. Aurora Health Care, Inc.*, Case No. 2:12-cv-00295-LA, United States District Court for the Eastern District of Wisconsin

- *Osborn v. EMC Corporation*, Case No. C 04-00336 JSW, Northern District of California, San Francisco Division

- *In re OSI Pharmaceuticals, Inc. Securities Litigation*, Master File No. 2:04-CV-05505-JSWDW, United States District Court, Eastern District of New York

- *Otte v. Life Insurance Company of North America*, Civ. No. 09 CV 11537 RGS, United States District Court, District of New Hampshire

- *Overby v. Tyco International Ltd.*, Case No. 02-CV-1357-B, United States District Court, District of New Hampshire

- *Ownby v. Citrus County, Florida*, Case No. 2004-CA-1840, Circuit Court of the Fifth Judicial Circuit of the State of Florida, in and for Citrus County, Civil Division

- *In re: Pacific Gateway Exchange, Inc. Securities Litigation*, Master File No. C-00-1211-PJH, United States District Court for the Northern District of California

- *Paliotto v. Johnny Rockets Group, Inc.*, 1:06-cv-02253-RCL, United States District Court for the District of Columbia (Washington, D.C.)

- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*, C.A. No. 7715-VCP, Court of Chancery of the State of Delaware

- *In re Par Pharmaceutical Securities Litigation*, Master File No. 2:06-cv-03226 (ES) (SCM), United States District Court, District of New Jersey

- *Parker v. American Medical Security Group, Inc.*, Civil Action File No. 04-1-1980-42, Superior Court of Cobb County, State of Georgia

- *Parthiban v. GMAC Mortgage Corporation*, SACV05-768-ODW (MLGx), United States District Court, Central District of California, Southern Division

- *Paskowitz v. Ernst & Young, LLP* (Motive, Inc.), Civil Action No. A-08-CA-188-LY, United States District Court for the Western District of Texas, Austin Division

- *Patel v. Baluchi's Indian Restaurant*, Civ. Action No.: 08 CIV 9985 (RJS)(THK), United States District Court, Southern District of New York

- *Payson v. Capital One Home Loans, LLC* (FLSA and KWPA Settlements), Case No. 07-CV2282-JTM/DWB , United States District Court for the District of Kansas at Kansas City

- *Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, Case No. 12CV-884-JPS, United States District Court, Eastern District of Wisconsin

- *Pereira v. Foot Locker, Inc.*, Civil Action No. 07-CV-2157-JCJ, United States District Court, Eastern District of Pennsylvania

- *Perez v. Rent-A-Center, Inc.*, Civil Action File No. 01-CIV-7593, Superior Court of New Jersey, Law Division: Camden County

- *Pettway v. Harmon Law Offices, P.C.*, Civil Action No. 03-10932-RGS, United States District Court, District of Massachusetts

- *In re: PFF Bancorp, Inc. ERISA Litigation*, No. CV 08-01093-SVW (PLAx), United States District Court, Central District of California

- *Pickett v. Triad Financial Corporation*, Docket No.: MID-L-007727-05, Superior Court of New Jersey, Middlesex County

- *In Re: Platinum and Palladium Commodities Litigation*, Master File No. Civ 3617 (WHP), United States District Court, Southern District of New York

- *Police and Fire Retirement System of the City of Detroit*, Plymouth County Retirement System v. SafeNet, Inc., Case No. 06 Civ. 5797 (PAC)

- *Pollitt v. DRS Towing, LLC*, Case No. 3:10-cv-1285, United States District Court of New Jersey, Trenton Vicinage

- *In re Potash Antitrust Litigation (II)*, MDL Dkt. No. 1996, No. 1:08-CV-6910, United States District Court for the Northern District of Illinois

- *Premier Open MRI, LLC v. Progressive American Ins. Co.*, Case No. 04-00021, Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida

- Project HEART: Holocaust Era Asset Restitution Taskforce

- *Provo v. China Organic Agriculture, Inc.*, Case No.: 08-cv-10810, United States District Court, Southern District of New York

- *Puritan Budget Plan, Inc. v. Amstar Insurance Company*, Case No. 04-10428, Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida

- *Quaak v. Dexia, S.A.*, No.: 03-CV-11566 (PBS), United States District Court, District of Massachusetts

- *Ragsdale v. SanSai USA, Inc.*, Case Number 07-cv-1246 WQH (CAB), United States District Court, Southern District of California

- *Ramirez v. GreenPoint Mortgage Funding, Inc.*, Case No. 08-CV-00369 TEH, United States District Court for the Northern District of California

- *Raspante v. Harris Interactive et al.*, C.A. 9148-VCP, Court of Chancery, State of Delaware

- *Raul v. Western Liberty Bancorp*, Case No. A-12-668865-B, District Court of Clark County, Nevada

- *In re RBC Dain Rauscher Overtime Litigation*, Master File: 06-03093 JRT-FLN, United States District Court, District of Minnesota

- *In re RCN Corporation ERISA Litigation*, Master File No.: 04-CV-5068 (FLW), United States District Court, District of New Jersey

- *In re Ready-Mixed Concrete Antitrust Litigation*, Case No. 1:05-cv-00979-SEB-VSS, United States District Court for the Southern District of Indiana, Indianapolis Division

- *In re Reliant Securities Litigation*, Civil Action No. H-02-1810 (CONSOLIDATED), United States District Court, Southern District of Texas, Houston Division

- *In re RenaissanceRe Holdings Ltd. Securities Litigation*, Master No. 1:05-cv-06764-WHP, United States District Court, Southern District of New York

- *In re R.H. Donnelley Corp. ERISA Litigation*, Case No. 09-CV-07571 (RWG/MTM), United States District Court, Northern District of Illinois

- *Rolark v. Lawyers Title Insurance Corporation*, Case No. 03 CH 13789, Circuit Court of Cook County, Illinois County Department, Chancery Division

- *Rubin v. MF Global, Ltd.*, Case No. 08 Civ. 2233 (VM,) United States District Court, Southern District of New York

- *Rupp v. Thompson*, Court File No. C5-03-347, State of Minnesota District Court, County of Lyon, Fifth Judicial District

- *S. Parker Hardware Mfg. Corp. v. AT&T Corp.*, Docket No. BER-L-162-06, Superior Court of New Jersey, Bergen County

- *Saint Pete MRI v. Hartford*, Case No.: 10-03925, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida

- *Saint Pete MRI v. Auto Club South Insurance Company*, Case No.: 10-CA-013134, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida

- *Sam v. White*, Cause No. 49D06-1006-PL-027492, State of Indiana, Marion Superior Court No. 6, Civil Division

- *Santos v. Silver*, Docket No.: MID-L-08188-07, Superior Court of New Jersey, Middlesex County

- *Scher v. Oxford Health Plans, Inc.*, AAA No. 11 193 00548 05, American Arbitration Association

- *In re Schering-Plough Corp. Enhance ERISA Litigation*, Civil Action No. 08-CV-1432 (DMC), United States District Court, District of New Jersey

- *In re Schering-Plough Corp. ERISA Litigation*, Civil Action No. 03-1204 (KSH), United States District Court, District of New Jersey

- *Schmitz v. Liberty Mutual Insurance Company*, Civil Action No. 4:08-cv-02945, United States District Court for the Southern District of Texas Houston Division

- *In re Scottish Re Group Securities Litigation*, Master File No. 06-cv-5853 (SAS), United States District Court, Southern District of New York

- *In re Sears, Roebuck & Co. ERISA Litigation*, Case No. 02-C-8324, United States District Court, Northern District of Illinois

- *SEC v. Anderson*, Civil Action No. 05-1128 (D. Minn.)

- *SEC v. Gen-See Capital Corporation and Richard S. Piccoli*, Civil Action 09-cv-00014S, United States District Court, Western District of New York

- *SEC v. RenaissanceRe Holdings Ltd.*, Case No. 1:07-cv-00865 RWS, United States District Court, Southern District of New York

- *In re SEC v. Rockford Funding Group*, Docket 1:09-cv-10047-PGG, United States District Court, Southern District of New York

- *In re SEC v. Take-Two Interactive Software, Inc.*, Civil Action No. 09-cv-03113, United States District Court, Southern District of New York

- *SEC v. Tecumseh Holdings Corporation*, 03 Civ. 5490 (SAS), United States District Court, Southern District of New York

- *SEC v. The BISYS Group, Inc.*, Civil Action No. 07-cv-04010-KMK, United States District Court, Southern District of New York

- *SEC v. Value Line, Inc.*, A.P. File No. 3-13675, Securities and Exchange Commission

- *SEC v. WexTrust Capital, LLC*, Case No. 08-cv-7104 (DC), United States District Court, Southern District of New York

- *SEC v. Zomax, Inc.*, Civil Action No. 04-1155 (DWF/SRN), United States District Court, District of Minnesota

- *Serino v. Kenneth Lipper v. PricewaterhouseCoopers, LLP*, Index No. 04/602106, Supreme Court of the State of New York, County of New York

- *In re Sexy Hair Concepts, LLC*, Case No. 1:10-bk-25919-GM, United States Bankruptcy Court for the Central District of California, San Fernando Valley Division

- *In re SFBC International Securities & Derivative Litigation*, Case No. 2:06-cv-000165-SRC, United States District Court, District of New Jersey

- *Shamblin v. Obama For America, et al.*, Case No. 8:13-cv-02428-VMC-TMB, United States District Court, Middle District of Florida, Tampa Division

- *Shane v. Edge*, Case No. 3:10-CV-50089, United States District Court for the Northern District of Illinois, Northern Division

- *Sheikh v. Maxon Hyundai, Inc.*, Docket No: L-000476-09, Superior Court of New Jersey, Union County

- *Silke v. Irwin Mortgage Corporation*, Cause No. 49D03-0304-PL-000697, State of Indiana, Marion Superior Court, Civil Division

- *Sivsubramanian v. DNC Health Corp.*, Case No. 2:10-cv-03522-VBF (FMOx), United States District Court, Central District of California at Los Angeles

- *In re SLM Corporation Securities Litigation*, Case No. 08-Civ-1029 (WHP), United States District Court, Southern District of New York

- *Smith v. Mill-Tel, Inc.*, Case No. 08-CV-2016-JAR/JPO, United States District Court, District of Kansas, at Kansas City

Verkhovskaya Résumé

- *Smolkin v. Leviton Manufacturing Co., Inc.*, Case No.: 03-C-04-008929, Circuit Court for Baltimore County

- *Soden v. East Brunswick Buick-Pontiac-GMC, Inc.*, Docket Nos. L-2510-03 and L-5617-03, Superior Court of New Jersey, Middlesex County

- *Sokoloski v. Stewart Title Guaranty Company Settlement*, Case No. 3:08-cv-00236-AWT, United States District Court, District of Connecticut

- *Sonoda v. Amerisave*, Case No. CV11-01803-EMC, United States District Court for the Northern District of California, San Francisco Division

- *Southeast Texas Medical Associates, LLP v. VeriSign, Inc.*, Case No. 1-05-CV-035550, Superior Court of the State of California, County of Santa Clara

- *Special Situations Fund III, L.P. v. Quovadx, Inc.*, Case No. 04-cv-01006-RPM, United States District Court for the District of Colorado

- *Steele v. GE Money Bank*, Case No. 08-CV-1880 United States District Court for the Northern District of Illinois

- *Stein v. Pactiv Corporation*, Case No. 10-CH-35455, Circuit Court of Cook County, Illinois, County Department, Chancery Division

- *In re Sterling Financial Corporation Merger Litigation*, No. 13-2-03848-4 (Consolidated with Case Nos. 13-2-03904-9 and 13-2-03986-3), Superior Court of Washington in and for Spokane County

- *In re: Sterling Financial Corporation Securities Class Action*, Civil Action No. 07-2171, United States District Court, Eastern District of Pennsylvania

- *Stoffels v. SBC Communications, Inc.*, Case No. 5:05-CA-00233-WWJ, United States District Court for the Western District of Texas, San Antonio Division

- *In re Stone & Webster, Inc. Securities Litigation*, Civil Action No. 00-CV-10874-RWZ, United States District Court, District of Massachusetts

- *In re: Supervalu, Inc. Securities Litigation*, Civil Action No. 02-CV-1738 (JEL/JGL), United States District Court, District of Minnesota

- *In re Suprema Specialties, Inc. Securities Litigation*, Master File No. 02-168 (WHW), United States District Court, District of New Jersey

- *Sutterfield v. Carney*, Case No. C-04-0893 BZ, United States District Court, Northern District of California

- *In re Symbol Technologies, Inc. Securities Litigation*, Case No. 02-CV-1383 (LDW), United States District Court, Eastern District of New York

- *In re Take-Two Interactive Securities Litigation and SEC v. Brant*, No. 1:06-cv-00803-RJS, United States District Court, Southern District of New York

- *Taylor v. McKelvey* (Monster Worldwide, Inc.), Civil Action No.: 06-cv-8322 (AKH), United States District Court, Southern District of New York

- *In re TD Banknorth Shareholders Litigation*, Consolidated C.A. No. 2557-VCL, Court of Chancery of the State of Delaware

- *In re Ticketmaster Entertainment Shareholder Litigation*, Case No. BC407677, Superior Court for the State of California, County of Los Angeles, Central Civil West

- *In re: Tyson Foods, Inc. Securities Litigation*, Civil Action No. 01-425-SLR, United States District Court for the District of Delaware

- *Matter of UBS Financial Services Inc. of Puerto Rico*, File No. 3-14863, United States of America Before the Securities and Exchange Commission

- *Ultra Open MRI Corporation v. Hartford Casualty Insurance Company*, Case No. 07-CA009132, Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division

- *Ultra Open MRI Corporation v. Nationwide Assurance Company*, Case No. 03-010725, Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, Division H

- *United Consumer Financial Services Company v. William Carbo v. A&M Merchandising, Inc.*, Case No. L-3438-02, Superior Court of New Jersey, Law Division: Hudson County

- *Valley National Bank v. Cahn*, Docket No. L-0504-04, Superior Court of New Jersey, Law Division, Mercer County

- *Valuepoint Partners, Inc. v. ICN Pharmaceuticals, Inc.*, Case No. SACV 03-989 DOC (Anx), United States District Court, Central District of California

- *In re Vaso Active Pharmaceuticals Derivatives Litigation*, Master Docket No. 04-10792 (RCL) (Consolidated Derivative Action), United States District Court, District of Massachusetts

- *In re Vaso Active Pharmaceuticals Securities Litigation*, Master Docket No. 04-10708 (RCL), United States District Court, District of Massachusetts

- *Veal v. Crown Auto Dealerships, Inc.*, Case No. 8:04-CV-0323-T-27 MSS, United States District Court, Middle District of Florida, Tampa Division

- *In re Viisage Technology, Inc. Securities Litigation*, Civil Action No. 05-cv-10438-MLW, United States District Court, District of Massachusetts

- *In re VisionAmerica, Inc. Securities Litigation*, Master File No. 3-00-0279, United States District Court, Middle District of Tennessee, Nashville Division

- *Von Friewalde v. Boeing Aerospace Operations, Inc.*, C.A. No. SA06CA0236-OG, United States District Court for the Western District of Texas, San Antonio Division

- *In re Vonage Initial Public Offering (IPO) Securities Litigation*, Docket No. 07-CV-177 (FLW/TJB), United States District Court, District of New Jersey

- *Walker v. Hill Wallack LLP*, Case No. MID-L-003480-08, Superior Court of New Jersey, Middlesex County, Law Division

- *Walter v. Level 3 Communications, Inc.*, Civil Action No. 09-cv-0658-REB-CBS, United States District Court, District of Colorado

- *In re Warner Chilcott Limited Securities Litigation*, Case No. 06-CV-11515-WHP, United States District Court, Southern District of New York

- *Warren v. Orkin Exterminating Company, Inc.*, Civil Action No. 01-1-8395-35, Superior Court of Cobb County, State of Georgia

- *Wells v. DTD Enterprises, Inc.*, Case No. L-9012-07, Superior Court of New Jersey, Middlesex County, Law Division

- *Brown v. Wells Fargo & Company*, Case No. 11-1362 (JRT/JJG), United States District Court, District of Minnesota

- *Wenger v. Brunswick Buick Pontiac GMC, Inc. and Soden v. East Brunswick Buick Pontiac GMC Inc.*, Docket Nos. L-2510-03 and L-5617-03, Superior Court of New Jersey, Middlesex County

- *Wenger v. Cardo Inc.*, et al., Docket No.: MID-L-4924-07, Superior Court of New Jersey – Middlesex County: Law Division

- *Wenger v. Freehold Subaru, LLC*, Civil Action, Docket No. MON-L-4003-10, Superior Court of New Jersey, Monmouth County – Law Division

- *Williams v. CBE Group*, Case No.: 2:11-cv-3680-PS, United States District Court, District of New Jersey

- *Wisniak v. Mirant Americas Generation, LLC*, Civil Action No. 1:03-CV-2049-BBM, United States District Court for the Northern District of Georgia, Atlanta Division

- *Wyatt v. El Paso Corporation*, Civil Action No. H-02-2717, United States District Court, Southern District of Texas, Houston Division

- *Herrera v. Wyeth ERISA Litigation*, Civil Action: 08 Civ. 04688 (RJS), United States District Courts, Southern District of New York

- *Yarviv v. AT&T Corp.*, Docket No. SOM-L-272-05, Superior Court of New Jersey, Law Division: Somerset County

- *Yingling, et al. v. eBay, Inc.*, C 09 01733 JW (PVT), United States District Court, Northern District of California, San Jose Division

- *Yost v. First Horizon*, Civil Action No. 08-02293, United States District Court, Western District of Tennessee

- *Young v. Heimbuch*, Case No: CV10-8914 ODW (MANx), United States District Court, Central District of California

- *In re: YRC Worldwide, Inc. ERISA Litigation*, Case No. 2:09-cv-02953, United States District Court, District of Kansas

- *Zametkin v. Fidelity Management & Research Company*, No. 1:08-cv-10960-MLW, United States District Court, District of Massachusetts

- *Zelnick v. Citation Homes, Inc.*, Case No. 413861, Superior Court of California, County of San Mateo

- *Zilhaver v. UnitedHealth Group Incorporated*, No. 06-C-2237, United States District Court, District of Minnesota

- *In re Zomax, Inc. Securities Litigation*, Case No. 05-cv-01128, United States District Court, District of Minnesota

# EXHIBIT B

Exhibit B

1. *Hopkins v. Modernize, Inc.*, No. 17-4008 (D. Mass.)

2. *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-6314 (N.D. Cal.)

3. *Fitzgerald v. Universal Pictures, et al.*, No. 16-1193 (M.D. Fla.)

4. *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla.)

5. *Duchene v. Westlake Servs., LLC*, No. 13-157 (W.D. Penn.)

6. *Ikuseghan v. Multicare Health System*, No. 14-5539 (W.D. Wash.)

7. *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-5665 (N.D. Cal.)

8. *Krakauer v. DISH Network, LLC*, No. 14-333 (M.D.N.C.)

# EXHIBIT C

Exhibit C

1.  *Hopkins v. Modernize, Inc.*, No. 17-4008 (D. Mass.)

2.  *Youngman v. A&B Ins. & Fin., Inc.*, No. 16-1478 (M.D. Fla.)

3.  *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-6314 (N.D. Cal.)

4.  *Cordoba v. DIRECTV, LLC*, No. 15-3755 (N.D. Ga.)

5.  *Johansen v. One Planet Ops Inc.*, No. 16-121 (S.D. Ohio)

6.  *Morris v. Solar City Corp.*, No. 15-5107 (N.D. Cal.)

7.  *In re Collecto, Inc. Telephone Consumer Protection Act Litig.*, No. 14-md-2513 (D. Mass.)

8.  *Krakauer v. DISH Network, LLC*, No. 14-333 (M.D.N.C.)

9.  *In re: Monitronics Int'l, Inc., Telephone Cons. Protection Act Litig.*, No. 13-md-2493 (N.D. W. Va.)

10. *Mey v. Venture Data, LLC*, No. 14-123 (N.D. W. Va.)

11. *Flowers v. Twilio, Inc.*, No. RG16804363 (Cal. Sup. Ct., Alameda Cnty.)

12. *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla.)

13. *Duchene v. Westlake Servs., LLC*, No. 13-157 (W.D. Penn.)

14. *Mey v. Frontier Commc'ns Corp.*, No. 13-1191 (D. Conn.)

15. *Biringer v. First Family Ins., Inc.*, No. 14-566 (N.D. Fla.)

16. *Nguyen v. Vantiv LLC*, No. 15-2436 (N.D. Cal.)

17. *Ikuseghan v. Multicare Health System*, No. 14-5539 (W.D. Wash.)

18. *Lofton v. Verizon Wireless (VAW)* LLC, No. 13-5665 (N.D. Cal.)

19. *Desai v. ADT Security Systems, Inc.*, No. 11-1925 (N.D. Ill.)

20. *Fitzgerald v. Universal Pictures, et al.*, No. 16-1193 (M.D. Fla.)

21. *Heidarpour v. Central Payment Co. LLC*, No. 15-139 (M.D. Ga.)

**EXHIBIT 3**

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:    ltfisher@bursor.com
           apersinger@bursor.com
           ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MCMILLION, JESSICA ADEKOYA, and IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>                    Defendant. | Case No. 16-cv-03396-YGR<br><br>**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RASH CURTIS & ASSOCIATES** |

PROPOUNDING PARTY: Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez

RESPONDING PARTY: Rash Curtis & Associates

SET NUMBER: Two

Pursuant to the provisions of Federal Rule of Civil Procedure 34 and the Civil Local Rules, Plaintiffs request that Defendant Rash Curtis & Associates ("Defendant" or "Rash Curtis") respond to the following Requests for Production of Documents within the time allowed by law. The production shall occur at the offices of Bursor & Fisher, P.A., at 1990 North California Boulevard, Suite 940, Walnut Creek, California 94596.

As soon as practicable, the parties shall meet and confer in good faith regarding an appropriate protocol for the production of documents. In lieu of such an agreement, the production of electronically stored information shall be in PDF format, and hardcopy documents shall be scanned and produced as PDF images. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). All documents must be searchable through Optical Character Recognition ("OCR"). When subjecting documents to an OCR process, the settings of the OCR software shall maximize text quality over processing speed. Any settings such as "autoskewing," "auto-rotation," and the like should be turned on when documents are run through the OCR process. Notwithstanding the above, Microsoft Excel files or other spreadsheet programs, database files, videos, and any other file types that reasonably require viewing in their native format for full understanding of their content shall be produced in their native format. The production of electronically stored documents shall also include all attendant metadata. Where such attendant metadata is not available, any available bibliographic coding shall be produced in its stead.

All documents must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the

production.

## DEFINITIONS

The following definitions and instructions are incorporated by reference whenever applicable in this document:

1.      The term "ANY" shall also mean "ALL" and vice versa.  As used herein, the singular shall always include the plural and the present tense shall also include the past tense.  The words "AND" as well as "OR" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all DOCUMENTS or things that might otherwise be construed to be outside its scope.

2.      The term "AUTOMATIC TELEPHONE DIALING SYSTEM" or "ATDS" means equipment which has the capacity to store or produce telephone numbers to be called; and to dial such numbers. AUTOMATIC TELEPHONE DIALING SYSTEM ("ATDS") is defined by 47 U.S.C. § 227(a)(1).

3.      The term "SKIP-TRACED CALL RECIPIENTS" shall mean all persons whose cellular telephone numbers YOU, your agents or anyone else acting on your behalf, obtained through the use of skip-tracing AND to whom YOU, your agents or anyone else acting on your behalf, placed PHONE CALLS to such persons' cellular telephones after obtaining their cellular telephone numbers through the use of skip tracing.

4.      The term "COMMUNICATIONS" refers to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and including without limitation, DOCUMENTS, as defined above.

5.      The term "COMPLAINT" shall mean the Complaint filed by PLAINTIFFS in this action.

6.      The term "CONCERN" (or a form thereof) shall mean comprising, constituting, dealing with, discussing, reflecting, evidencing, pertaining to, prepared for, representing, supporting, demonstrating, corroborating, proving, refuting, disputing, rebutting, contradicting, relating or referring to, stating, describing, recording, noting, embodying, containing, mentioning,

involving, studying, analyzing, discussing, evaluating, or relevant to.  As indicated, the term necessarily includes information which is in opposition to as well as in support of the position(s) and claim(s) of the DEFENDANT in this action.

7.      The term "CLASS PERIOD" shall mean the period beginning four years prior to the filing of this action, through present.

8.      The terms "DEFENDANT" and "YOU" shall mean Defendant and any relevant predecessors, successors, subsidiaries, departments, divisions, committees, and/or affiliates, and including, without limitation, any organization or entity which it manages or controls, together with all present and former directors, officers, employees, agents, representatives, attorneys, or any persons acting, or purporting to act, on its behalf, including any call center or consulting firms retained, employed, or consulted by DEFENDANT in connection with PHONE CALLS.

9.      The term "DOCUMENTS" shall mean all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated, or made, in any form, now or formerly in the possession, custody, or control of any DEFENDANT, its agents, employees and attorneys, or any of them, including, but not limited to, letters, facsimiles, correspondence, telegrams, memoranda, agreements, intra- and interoffice communications, e-mails, text messages, SMS messages, drafts, working papers, data sheets, indexes, purchase orders, requisitions, plans, studies, tests, trials, summaries, analyses, reports, presentations, results of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, engineering calculations, bills of materials, drawings, sketches, charts, spreadsheets, displays, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs, slides, public statements, newspaper or other media releases, public and governmental filings, opinions, and any other writings or recordings.  If any document was, but is no longer in any DEFENDANT'S possession or subject to any DEFENDANT'S control, identify the document.

10. The term "PHONE CALL" shall mean any calls made to a cellular phone by YOU, your agents or anyone else acting on your behalf, through the use of ATDS.

11. The term "PLAINTIFFS" shall mean Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez.

12. The term "TELEPHONE DIALING EQUIPMENT" shall mean any telecommunications, telemarketing or computer equipment used to make PHONE CALLS.

13. The term "THIRD PARTIES" shall mean ALL persons who are listed as reference parties on ANY debtor's account in YOUR DAKCS OR Beyond ARM software.

14. The term "REFERENCE NUMBERS" shall mean ALL cellular telephone numbers listed as a reference number on ANY debtor's account in YOUR DAKCS OR Beyond ARM software.

15. The use of the singular form of any word includes the plural and vice versa.

**<u>INSTRUCTIONS</u>**

16. These interrogatories are directed to Defendant Rash Curtis & Associates.

17. If a person other than Defendant is known or believed to have in its possession, custody, or control documents or information responsive to any request, please state the name of the entity, the kind or nature of the documents or information known or believed to be maintained, any process you have initiated to retrieve these documents and the date it will be available to Plaintiffs, or information sufficient to make it available to Plaintiffs through Plaintiffs' efforts.

18. In responding to these requests, furnish all information and documents, including information contained in or on any document, that is known or available to you from all files or other sources that contain responsive documents, wherever located, and whether active, in storage, or otherwise, including all documents in the possession of your attorneys and any accountants, other professional persons or experts, investigators, or other persons acting on your behalf, or under you or your attorneys' control, employment, or direction.

19. The obligation to produce the documents specified below is of a continuing nature; your responses to these document requests are to be supplemented to the full extent required by the

Federal Rules of Civil Procedure, including Rule 26(e), and the Civil Local Rules of this jurisdiction, and if at any time you acquire possession, custody, or control of any additional documents specified below, such documents are to be furnished promptly to counsel for Plaintiffs at the address provided above, unless another place is mutually agreed-upon by counsel.

20.     Where only a portion of a document relates or refers to the subject indicated, the entire document is to be produced nevertheless, along with all attachments, appendices, and exhibits.

21.     All documents shall be produced as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features.

22.     All documents produced in response to these requests shall be organized and labeled to correspond with the request to which they respond, and each response to these requests shall identify the documents being produced in response to each request by Bates stamp number or otherwise.

23.     If there are no documents responsive to any request specified below, you shall so state in writing, produced at the time and place that documents are demanded to be produced by this request.

24.     If any document or portion thereof is withheld under a claim of privilege, the withholding party shall produce so much of the document as is not subject to the possible claim of privilege, and shall furnish a statement, or "privilege log," signed by the party's counsel, which identifies each document or portion thereof for which a privilege is claimed, including the following information:

a.     The date of the document;

b.     The name and title of the person who wrote, authored, prepared, signed, or originated the document, or the person who knows about the information contained therein;

c.     The name and title of the recipient or recipients of the document;

d.     All persons to whom copies of the documents were furnished, along with

PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO                                              5
DEFENDANT RASH CURTIS & ASSOCIATES
CASE NO. 16-CV-03396-YGR

such persons' job titles or positions;

    e.    A brief description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

    f.    The specific basis upon which the privilege is claimed; and

    g.    With respect to any claim of privilege relating to an attorney, or action, advice or work product of an attorney, the identity of the attorney involved.

25.    If any portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

26.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by claims of privilege), regardless of whether you consider the entire document to be relevant or responsive to the requests.

27.    Whenever a document is not produced in its entirety, including all attachments, or is produced in redacted form, so indicate on the document, state with particularity the reason or reasons it is not being produced in its entirety, and describe to the best of your knowledge, information, and belief and with as much particularity as possible, those portions of the document that are not being produced.

28.    If you withhold any information or documents requested herein on the grounds that it is protected by a confidentiality order, protective order, court order or other agreement, identify the relevant request for production, the specific grounds on which your objection is based, the nature of the information, the identity of the document withheld including the Bates number if any, identify the lawsuit or other proceeding or transaction to which the order or agreement relates, the parties to the confidentiality or protective order and provide a copy of the order or agreement.

29.    Pursuant to Federal Rule of Civil Procedure 26(b)(2), you must identify and describe, specifically and in detail, any and all electronically stored information you have designated as "not reasonably accessible because of undue burden or cost."  This rule requires that you "identify, by category or type, the sources containing potentially responsive information that

you are neither searching nor producing.  The identification should . . . provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."  See Fed. R. Civ. P. 26(b)(2) advisory committee comment.

30.     If any document requested herein has been lost, discarded, or destroyed, the document so lost, discarded, or destroyed shall be identified in a writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the documents.

## **DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to identify every call recipients' first name, last name, area code, cellular telephone number, date, and result of each call for ALL campaigns ran through OR processed by ANY Global Connect dialer in which THIRD PARTIES were the focus within the CLASS PERIOD.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to identify every call recipients' first name, last name, area code, cellular telephone number, date, and result of each call for ALL campaigns ran through OR processed by ANY VIC OR DAKCS dialer in which THIRD PARTIES were the focus within the CLASS PERIOD.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to identify every call recipients' first name, last name, area code, cellular telephone number, date, and result of each call for ALL campaigns ran through OR processed by ANY Global Connect dialer in which REFERENCE NUMBERS were the focus within the CLASS PERIOD.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to identify every call recipients' first name, last name, area code, cellular telephone number, date, and result of each call for ALL campaigns ran through OR processed by ANY VIC OR DAKCS dialer in which REFERENCE NUMBERS were the focus within the CLASS PERIOD.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS sufficient to identify every SKIP-TRACED CALL RECIPIENTS' first name, last name, area code, cellular telephone number, date, and result of each call to a SKIP-TRACED CALL RECIPIENT within the CLASS PERIOD.

Dated: February 8, 2017                    **BURSOR & FISHER, P.A.**

By:___*/s/ Yeremey O. Krivoshey*____
Yeremey O. Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:   ltfisher@bursor.com
           apersinger@bursor.com
           ykrivoshey@bursor.com

1

**PROOF OF SERVICE**

2

    I am a resident of the State of California, over the age of eighteen years, and not a party to

3

the within action. My business address is Bursor & Fisher, P.A., 1990 North California Blvd., Suite

940, Walnut Creek, CA  94596.  On February 8, 2017, I served the within document(s):

4

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT**

5

**RASH CURTIS & ASSOCIATES**

6

☐    by placing a copy of the document(s) listed above for collection and mailing

7

    following the firm's ordinary business practice in a sealed envelope with postage

thereon fully prepaid for deposit in the United States mail at Walnut Creek,

8

California addressed as set forth below.

9

☐    by depositing a true copy of the same enclosed in a sealed envelope with delivery

fees provided for an Overnight/Federal Express pick up box or office designated

10

for overnight delivery, and addressed as set forth below.

11

☐    By causing personal delivery of a copy of the document(s) listed above to the

person(s) at the address(es) set forth below.

12

☐    by facsimile transmission on that date.  This document was transmitted by using a

13

    Brother MFC-9970CDW facsimile machine that complies with California Rules

of Court Rule 2003(3), telephone number (925) 407-2700.  The transmission was

reported as complete and without error.

14

☒    by e-mail transmission on that date.  These documents were transmitted via e-

15

    mail to the following e-mail addresses as set forth below.

16

Mark E. Ellis
Amanda N. Griffith

17

ELLIS LAW GROUP LLP
740 University Avenue, Suite 100

18

Sacramento, CA 95825
Tel: (916) 283-8820

19

Fax: (916) 283-8821
Email: mellis@ellislawgrp.com

20

        agriffith@ellislawgrp.com

21

22

    I declare under penalty of perjury under the laws of the State of California that the above is

true and correct, executed on February 8, 2017, at Walnut Creek, California.

23

24

*Debbie Schroeder*

25

_____
Debbie Schroeder

26

27

28

PROOF OF SERVICE
CASE NO. 16-CV-03396-YGR

**EXHIBIT 4**

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:    ltfisher@bursor.com
            ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MCMILLION, JESSICA ADEKOYA, and IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>     v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>                      Defendant. | Case No. 16-cv-03396-YGR<br><br>**PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RASH CURTIS & ASSOCIATES** |

PROPOUNDING PARTY: Plaintiffs Sandra McMillion, Jessica Adekoya, and Ignacio Perez

RESPONDING PARTY: Rash Curtis & Associates

SET NUMBER: Three

Pursuant to the provisions of Federal Rule of Civil Procedure 34 and the Civil Local Rules, Plaintiffs request that Defendant Rash Curtis & Associates ("Defendant" or "Rash Curtis") respond to the following Requests for Production of Documents within the time allowed by law.  The production shall occur at the offices of Bursor & Fisher, P.A., at 1990 North California Boulevard, Suite 940, Walnut Creek, California 94596.

As soon as practicable, the parties shall meet and confer in good faith regarding an appropriate protocol for the production of documents.  In lieu of such an agreement, the production of electronically stored information shall be in PDF format, and hardcopy documents shall be scanned and produced as PDF images.  Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).  All documents must be searchable through Optical Character Recognition ("OCR").  When subjecting documents to an OCR process, the settings of the OCR software shall maximize text quality over processing speed.  Any settings such as "autoskewing," "auto-rotation," and the like should be turned on when documents are run through the OCR process.  Notwithstanding the above, Microsoft Excel files or other spreadsheet programs, database files, videos, and any other file types that reasonably require viewing in their native format for full understanding of their content shall be produced in their native format.  The production of electronically stored documents shall also include all attendant metadata.  Where such attendant metadata is not available, any available bibliographic coding shall be produced in its stead.

All documents must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the

---

PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION TO
DEFENDANT RASH CURTIS & ASSOCIATES
CASE NO. 16-CV-03396-YGR

1

production.

## **DEFINITIONS**

The following definitions and instructions are incorporated by reference whenever applicable in this document:

1.      The term "ANY" shall also mean "ALL" and vice versa.  As used herein, the singular shall always include the plural and the present tense shall also include the past tense.  The words "AND" as well as "OR" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all DOCUMENTS or things that might otherwise be construed to be outside its scope.

2.      The term "CONCERN" (or a form thereof) shall mean comprising, constituting, dealing with, discussing, reflecting, evidencing, pertaining to, prepared for, representing, supporting, demonstrating, corroborating, proving, refuting, disputing, rebutting, contradicting, relating or referring to, stating, describing, recording, noting, embodying, containing, mentioning, involving, studying, analyzing, discussing, evaluating, or relevant to.  As indicated, the term necessarily includes information which is in opposition to as well as in support of the position(s) and claim(s) of the DEFENDANT in this action.

3.      The term "CLASS PERIOD" shall mean the period beginning four years prior to the filing of this action, through present.

4.      The terms "DEFENDANT" and "YOU" shall mean Defendant and any relevant predecessors, successors, subsidiaries, departments, divisions, committees, and/or affiliates, and including, without limitation, any organization or entity which it manages or controls, together with all present and former directors, officers, employees, agents, representatives, attorneys, or any persons acting, or purporting to act, on its behalf, including any call center or consulting firms retained, employed, or consulted by DEFENDANT in connection with PHONE CALLS.

5.      The term "DOCUMENTS" shall mean all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated, or made, in any form, now or formerly in the possession, custody, or

control of any DEFENDANT, its agents, employees and attorneys, or any of them, including, but

not limited to, letters, facsimiles, correspondence, telegrams, memoranda, agreements, intra- and

interoffice communications, e-mails, text messages, SMS messages, drafts, working papers, data

sheets, indexes, purchase orders, requisitions, plans, studies, tests, trials, summaries, analyses,

reports, presentations, results of investigations, reviews, bulletins, proposals, estimates, appraisals,

recommendations, critiques, engineering calculations, bills of materials, drawings, sketches, charts,

spreadsheets, displays, notices, diaries, books, desk calendars, appointment books, messages,

instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical

records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs,

slides, public statements, newspaper or other media releases, public and governmental filings,

opinions, and any other writings or recordings.  If any document was, but is no longer in any

DEFENDANT'S possession or subject to any DEFENDANT'S control, identify the document.

6.    The use of the singular form of any word includes the plural and vice versa.

**INSTRUCTIONS**

7.    These requests for production are directed to Defendant Rash Curtis & Associates.

8.    If a person other than Defendant is known or believed to have in its possession, custody, or control documents or information responsive to any request, please state the name of the entity, the kind or nature of the documents or information known or believed to be maintained, any process you have initiated to retrieve these documents and the date it will be available to Plaintiffs, or information sufficient to make it available to Plaintiffs through Plaintiffs' efforts.

9.    In responding to these requests, furnish all information and documents, including information contained in or on any document, that is known or available to you from all files or other sources that contain responsive documents, wherever located, and whether active, in storage, or otherwise, including all documents in the possession of your attorneys and any accountants, other professional persons or experts, investigators, or other persons acting on your behalf, or under you or your attorneys' control, employment, or direction.

10.    The obligation to produce the documents specified below is of a continuing nature;

your responses to these document requests are to be supplemented to the full extent required by the Federal Rules of Civil Procedure, including Rule 26(e), and the Civil Local Rules of this jurisdiction, and if at any time you acquire possession, custody, or control of any additional documents specified below, such documents are to be furnished promptly to counsel for Plaintiffs at the address provided above, unless another place is mutually agreed-upon by counsel.

11.     Where only a portion of a document relates or refers to the subject indicated, the entire document is to be produced nevertheless, along with all attachments, appendices, and exhibits.

12.     All documents shall be produced as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features.

13.     All documents produced in response to these requests shall be organized and labeled to correspond with the request to which they respond, and each response to these requests shall identify the documents being produced in response to each request by Bates stamp number or otherwise.

14.     If there are no documents responsive to any request specified below, you shall so state in writing, produced at the time and place that documents are demanded to be produced by this request.

15.     If any document or portion thereof is withheld under a claim of privilege, the withholding party shall produce so much of the document as is not subject to the possible claim of privilege, and shall furnish a statement, or "privilege log," signed by the party's counsel, which identifies each document or portion thereof for which a privilege is claimed, including the following information:

      a.     The date of the document;

      b.     The name and title of the person who wrote, authored, prepared, signed, or originated the document, or the person who knows about the information contained therein;

      c.     The name and title of the recipient or recipients of the document;

d.   All persons to whom copies of the documents were furnished, along with such persons' job titles or positions;

e.   A brief description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

f.   The specific basis upon which the privilege is claimed; and

g.   With respect to any claim of privilege relating to an attorney, or action, advice or work product of an attorney, the identity of the attorney involved.

16.   If any portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

17.   You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by claims of privilege), regardless of whether you consider the entire document to be relevant or responsive to the requests.

18.   Whenever a document is not produced in its entirety, including all attachments, or is produced in redacted form, so indicate on the document, state with particularity the reason or reasons it is not being produced in its entirety, and describe to the best of your knowledge, information, and belief and with as much particularity as possible, those portions of the document that are not being produced.

19.   If you withhold any information or documents requested herein on the grounds that it is protected by a confidentiality order, protective order, court order or other agreement, identify the relevant request for production, the specific grounds on which your objection is based, the nature of the information, the identity of the document withheld including the Bates number if any, identify the lawsuit or other proceeding or transaction to which the order or agreement relates, the parties to the confidentiality or protective order and provide a copy of the order or agreement.

20.   Pursuant to Federal Rule of Civil Procedure 26(b)(2), you must identify and describe, specifically and in detail, any and all electronically stored information you have designated as "not reasonably accessible because of undue burden or cost." This rule requires that

you "identify, by category or type, the sources containing potentially responsive information that you are neither searching nor producing.  The identification should . . . provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."  See Fed. R. Civ. P. 26(b)(2) advisory committee comment.

21.     If any document requested herein has been lost, discarded, or destroyed, the document so lost, discarded, or destroyed shall be identified in a writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the documents.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to identify ALL persons within the CLASS PERIOD for whom YOU have had a debt collection account in their name, including the account number and telephone number for all such individuals.

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to identify ALL telephone numbers YOU obtained through skip tracing within the CLASS PERIOD.


Dated:  August 25, 2017                          **BURSOR & FISHER, P.A.**

                                                 By:___*/s/ Yeremey O. Krivoshey*___
                                                        Yeremey O. Krivoshey

                                                 L. Timothy Fisher (State Bar No. 191626)
                                                 Yeremey O. Krivoshey (State Bar No.295032)
                                                 1990 North California Blvd., Suite 940
                                                 Walnut Creek, CA  94596
                                                 Telephone: (925) 300-4455
                                                 Email:   ltfisher@bursor.com
                                                          ykrivoshey@bursor.com

1

## PROOF OF SERVICE

2

I am a resident of the State of California, over the age of eighteen years, and not a party to

3

the within action. My business address is Bursor & Fisher, P.A., 1990 North California Blvd., Suite

940, Walnut Creek, CA  94596.  On August 25, 2017, I served the within document(s):

4

5

**PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT RASH CURTIS & ASSOCIATES**

6

☒   by placing a copy of the document(s) listed above for collection and mailing

7

following the firm's ordinary business practice in a sealed envelope with postage
thereon fully prepaid for deposit in the United States mail at Walnut Creek,
California addressed as set forth below.

8

9

☐   by depositing a true copy of the same enclosed in a sealed envelope with delivery
fees provided for an Overnight/Federal Express pick up box or office designated
for overnight delivery, and addressed as set forth below.

10

11

☐   By causing a personal delivery of a copy of the document(s) listed above to the
person(s) at the address(es) set forth below.

12

☐   by facsimile transmission on that date.  This document was transmitted by using a

13

Brother MFC-9970CDW facsimile machine that complies with California Rules
of Court Rule 2003(3), telephone number (925) 407-2700.  The transmission was
reported as complete and without error.

14

☐   by e-mail transmission on that date.  These documents were transmitted via e-

15

mail to the following e-mail addresses as set forth below.

16

Mark E. Ellis
Anthony P. J. Valenti

17

ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400

18

Sacramento, CA 95815
Tel: (916) 283-8820

19

Fax: (916) 283-8821
Email: mellis@ellislawgrp.com

20

avalenti@ellislawgrp.com

21

I declare under penalty of perjury under the laws of the State of California that the above is

22

true and correct, executed on August 25, 2017, at Walnut Creek, California.

23

24

_____
Debbie Schroeder

25

26

27

28

PROOF OF SERVICE
CASE NO. 16-CV-03396-YGR

**EXHIBIT 5**

1  Mark E. Ellis - 127159
   Anthony P. J. Valenti - 284542
2  ELLIS LAW GROUP, LLP
   740 University Avenue, Suite 100
3  Sacramento, CA  95825
   Tel: (916) 283-8820
4  Fax: (916) 283-8821

5  Attorneys for Defendant RASH CURTIS & ASSOCIATES

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | SANDRA McMILLION, JESSICA ADEKOYA,   | Case No.:  4:16-cv-03396-YGR
    AND IGNACIO PEREZ, on Behalf of
12 | Themselves and all Others Similarly Situated,   | **DEFENDANT'S RESPONSES TO
                                                       PLAINTIFFS' SECOND SET OF
13 |        Plaintiffs,                              | INTERROGATORIES**

14 | v.

15 | RASH CURTIS & ASSOCIATES,

16 |        Defendant.

17

18 | PROPOUNDING PARTY:          PLAINTIFFS SANDRA McMILLION, JESSICA ADEKOYA,

19 |                     AND IGNACIO PEREZ

20 | RESPONDING PARTY:          DEFENDANT RASH CURTIS & ASSOCIATES

21 | SET NUMBER:          TWO

22      This responding party has not fully completed its investigation of the facts relating to this case,

23 has not fully completed its discovery in this action, and has not completed its preparation for the trial.

24 All the answers contained herein are based upon such information and documents which are presently

25 available and specifically known to this responding party and disclose only those contentions which

26 presently occur to such responding party.  It is anticipated that further discovery, independent

27 investigation, legal research and analysis will supply additional facts, add meaning to the known facts,

28 as well as establish entirely new factual conclusions and legal contentions, all of which may lead to

- 1 -

1  substantial additions, changes in and variations from the contentions herein set forth. The following

2  responses are given without prejudice to responding party's right to produce evidence of any

3  subsequently discovered fact or facts which this responding party may later recall. Responding party

4  accordingly reserves the right to change any and all answers herein as additional facts are ascertained,

5  analyses are made, legal research is completed and contentions are made.

6  The answers contained herein are made in a good faith effort to supply as much factual

7  information and as much specification of legal contentions as is presently known but should in no way

8  be in prejudice of responding party in relation to further discovery, research and analysis.

9  **INTERROGATORY NO. 8:**

10  IDENTIFY ALL debtor's accounts in YOUR DAKCS OR Beyond ARM software bearing a "SKP"

11  status code or marker during the CLASS PERIOD.

12  **RESPONSE TO INTERROGATORY NO. 8:**

13  Objection; this interrogatory is vague and ambiguous, overbroad and oppressive, unduly

14  burdensome and harassing, and seeks information that is neither relevant nor reasonable calculated to

15  lead to the discovery of admissible evidence. Without waiving the foregoing objection(s), this

16  responding party responds as follows: None.

17  Dated: June 26, 2017

ELLIS LAW GROUP LLP

By _____

Anthony P. J. Valenti
Attorney for Defendant
RASH CURTIS & ASSOCIATES

- 2 -

DEFENDANT'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

1

# VERIFICATION

2    I, Bob Keith, declare:

3    I am the Executive Vice President, Legal Department of RASH CURTIS & ASSOCIATES,

4    Defendant to the within action.

5    I have read the foregoing responses to DEFENDANT'S RESPONSES TO PLAINTIFF'S

6    SECOND SET OF INTERROGATORIES, and the same is true of my own knowledge, except as to

7    those matters which are therein stated on information and belief, and as to those matters, I believe them

8    to be true.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing is

10   a true and correct statement.

11   Executed on the 26th day of June, 2017 at Vacaville, CA,

12                                       RASH CURTIS & ASSOCIATES

13

14                              By: _____

15                                       Bob Keith
                                         Executive Vice President, Legal Department
16

17

18

19   *McMILLION, ADEKOYA, PEREZ v. RASH CURTIS*
     Case No. 4:16-cv-03396-YGR
20   Northern District of California

21

22

23

24

25

26

27

28

                                       - 3 -

1

**CERTIFICATE OF SERVICE**

2

I, Jennifer Mueller, declare:

3

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or

4

interested in the within entitled cause. My business address is 740 University Avenue, Suite 100,

5

Sacramento, CA 95825.

6

On June 26, 2017, I served the following document(s) on the parties in the within action:

7

**DEFENDANT'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

8

9

| X | **BY MAIL**: I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |

10

11

12

13

14

15

| L. Timothy Fisher<br>Annick M. Persinger<br>Yeremey Krivoshey<br>Bursor & Fisher, P.A.<br>1990 N. California Boulevard<br>Suite 940<br>Walnut Creek, CA 94596 | Attorneys for Plaintiffs<br>Sandra McMillion, Jessica Adekoya and Ignacio Perez |

16

17

18

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on June 26, 2017.

19

20

By

Jennifer Mueller

21

22

23

24

25

26

27

28

- 4 -

**EXHIBIT 6**

2/1/2019
Case 4:16-cv-03396-YGR Document 259-1 Filed 02/11/19 Page 106 of 191
Bursor & Fisher, P.A. Mail - McMillion v. Rash Curtis & Associates, Case No. 4:16-cv-03396-YGR



Yeremey Krivoshey <ykrivoshey@bursor.com>

## McMillion v. Rash Curtis & Associates, Case No. 4:16-cv-03396-YGR

**Anthony Paul John Valenti** <AValenti@ellislawgrp.com>
**To:** Yeremey Krivoshey <ykrivoshey@bursor.com>
Cc: "L. Timothy Fisher" <ltfisher@bursor.com>, Rosanne Estrella <restrella@ellislawgrp.com>, Crystal Strong <cstrong@ellislawgrp.com>, Mark Ellis <mellis@ellislawgrp.com>, Cheri Bowden <cbowden@ellislawgrp.com>, jsmith <jsmith@bursor.com>, Paula Crary <pcrary@ellislawgrp.com>, Jennifer Mueller <jmueller@ellislawgrp.com>

Wed, Jun 28, 2017 at 9:49 AM

Yeremey,

What my client will testify to under oath is not in question. I'm just telling you what I've learned in talking to my client's contact over at Global Connect. He was the one that told me Global Connect saves every campaign list that is uploaded by one of its clients.

And, as noted in Rash Curtis' responses to your client's second set of interrogatories (which, by the way, were timely served by mail on Monday), Rash Curtis does not use the "SKP" status code on any of its collection accounts. I know this probably contradicts what your star witness, Steve Kizer, testified to, but he simply has no clue what he is talking about. He was a compliance manager responsible for training new collectors, not generating campaign lists or notating collection accounts.

Again, it was my understanding, based on discussions with my client's Global Connect representative, that the tab-delimited files uploaded to Global Connect are often named by GC's clients and that name might be useful in determining the selection and filtering criteria used to generate the campaign lists. I did not, however, indicate that Rash Curtis did, in fact, name its files in such a fashion or, in fact, store multiple versions of the campaign lists which it regularly generates. I merely suggested that this might be a possible solution to your problem regarding ascertainability of the proposed classes. Nevertheless, I will ask my client to start storing a redundant copy of each and every campaign list it generates during the pendency of the litigation, despite my own personal opinion that such "evidence" is not relevant to your specific claims.

*Anthony P. J. Valenti*

**Attorney at Law | Associate**

**Ellis Law Group, LLP**

740 University Avenue, Suite 100

Sacramento, CA 95825

Tel: (916) 283-8820

Fax: (916) 283-8821

avalenti@ellislawgrp.com

WARNING: The information contained in this e-mail is intended for the use of the individual or entity to which it is addressed, and may be privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify us immediately at the telephone number listed above, or by return e-mail to avalenti@ellislawgrp.com and delete this communication in a manner that permanently removes it from any computer drive in your possession. This document was not intended or written to be used and it cannot be used for the purpose of avoiding tax penalties that may be imposed on the taxpayer.

**From:** Yeremey Krivoshey [mailto:ykrivoshey@bursor.com]
**Sent:** Wednesday, June 28, 2017 9:04 AM
**To:** Anthony Paul John Valenti
**Cc:** L. Timothy Fisher; Rosanne Estrella; Crystal Strong; Mark Ellis; Cheri Bowden; jsmith; Paula Crary; Jennifer Mueller
**Subject:** RE: McMillion v. Rash Curtis & Associates, Case No. 4:16-cv-03396-YGR

Is your client willing to testify under oath that GC retains every single campaign list? I suspect that we're going to get a lot of "I don't know" responses, which is the problem. Rash Curtis has a duty not to destroy any records relevant to this litigation, while GC does not. You've essentially admitted that Rash Curtis destroyed all of its campaign lists, and are now pointing to a third party, as if their retention is relevant to Defendant's duty.

**EXHIBIT 7**



**Yeremey Krivoshey <ykrivoshey@bursor.com>**

---

## McMillion v. Rash Curtis & Associates, Case No. 4:16-cv-03396-YGR

**Anthony Paul John Valenti** <AValenti@ellislawgrp.com>                     Sat, Jul 22, 2017 at 3:27 PM
To: Yeremey Krivoshey <ykrivoshey@bursor.com>, Mark Ellis <mellis@ellislawgrp.com>
Cc: "L. Timothy Fisher" <ltfisher@bursor.com>, Rosanne Estrella <restrella@ellislawgrp.com>, Crystal Strong
<cstrong@ellislawgrp.com>, Paula Crary <pcrary@ellislawgrp.com>, Cheri Bowden <cbowden@ellislawgrp.com>, jsmith
<jsmith@bursor.com>, Jennifer Mueller <jmueller@ellislawgrp.com>


It's not prejudicial; it's accurate and illustrative.  As I told you before, your clients (let's be honest, really you) do not
get to substitute their (your) judgment for my own client's judgment in how to best conduct a diligent search for
documents responsive to your ridiculously overbroad and burdensome requests for production. (to which  valid
objections were made).  I agreed to take all 28 of your search terms to my client and I offered up five management-
level custodians.  Unfortunately, the volume of the emails responsive to your overbroad search terms is not
reasonably accessible because of undue burden or cost.  *See* Rule 26(b)(2)(B). And I **never** agreed to produce emails
that were merely responsive to your search terms.  They were simply a way to try and cull the herd in order to find
what you are actually entitled to, which are only the non-privileged, relevant emails responsive to your requests at
issue.  As indicated in my portion of the dispute statement, your search terms do not even address some of your
requests, and we've complied with others already.  To the extent you want seven, one-month samples of call logs
containing only calls made to numbers pulled from fields 4-10 or accounts marked SKP, I've explained that it isn't
possible to segregate that information.  The best  I can do is get you the information from 7,000,000+ calls which is
entirely useless since it would only contain the number called not where it came from or whether the related account
was marked SKP (although, to my knowledge, none of Rash Curtis' accounts are marked SKP, despite what that liar
Steven Kizer told you when you had him <u>alone</u> at a deposition you didn't properly serve notice of).


Yeremey, I've tried to work with you on this, but your entire case is frivolous; your clients' depositions confirmed that
much.  Your supervising partner has refused our request for a stipulation for leave to file a supplemental opposition
to your motion for class certification, and you've done next to nothing to address the real issues at the heart of this
discovery dispute: your overbroad requests.  You're asking my client to go back through 5 years of emails to find some
"smoking gun" so you can get treble damages when you don't even have a valid TCPA claim in the first place.


*Anthony P. J. Valenti*

**Attorney at Law | Associate**

**Ellis Law Group, LLP**

740 University Avenue, Suite 100

Sacramento, CA 95825

Tel: (916) 283-8820

Fax: (916) 283-8821

avalenti@ellislawgrp.com

**EXHIBIT 8**

Page 1

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3

4    SANDRA MCMILLION, JESSICA

     ADEKOYA, and IGNACIO PEREZ,

5    on Behalf of Themselves and

6    all Others Similarly Situated,

7              Plaintiffs,

8

         vs.                        No. 4:16-cv-03396-YGR

9

     RASH CURTIS & ASSOCIATES,

10             Defendant.

11   _____

12

13

14           VIDEOTAPED DEPOSITION OF NICK KEITH

15              Walnut Creek, California

16             Monday, October 16, 2017

17                   Volume 1

18

19

20

21   Reported by:

22   JODI L. BOSETTI

     CSR No. 11316, RPR

23   JOB No. 2730696

24

25   PAGES 1 - 93

Page 14

1      Q   Okay.  So it has their demographic

2   information, including their telephone numbers.  And I

3   don't mean to pin you in.  I'm not saying that

4   necessarily every account has a phone number.  I'm

5   just saying that's typically the kind of fields that        09:45

6   are contained in those files; is that right?

7      A   Correct.

8      Q   And so -- and then it also has the -- the

9   amount of money they actually owe; is that right?

10     A   Correct.                                             09:45

11     Q   And when these -- so when these files come

12  in, if there's multiple phone numbers for one debtor,

13  how are they separated, or if they are?

14     MR. ELLIS:  The question is vague and ambiguous.

15         You can answer.                                      09:45

16     THE WITNESS:  There's multiple phone number

17  fields.

18  BY MR. KRIVOSHEY:

19     Q   Okay.  What kind of phone number fields are

20  there?                                                      09:46

21     A   I'm not sure what you mean.

22     Q   Well, you said there's multiple, so describe

23  the multiple phone number fields.

24     A   We have phone number fields listed 1 through

25  9.                                                          09:46

Page 15

1        Q   Okay.  There's no phone field 10?

2        A   I don't recall.

3        Q   Okay.  Do these phone number fields signify

4    something else or are they just randomly placed in

5    these phone number fields when they come in?          09:46

6        A   There are significant places where the phone

7    numbers have to be put in.

8        Q   Okay.  So when an account first comes in,

9    what is -- for example, what does phone field 1

10   signify?                                              09:46

11       A   Usually the primary telephone number that's

12   provided from the client.

13       Q   Okay.  What about phone field 2?

14       A   It is -- phone field 1 through 4 are from

15   what comes in from the client, whatever phone number  09:47

16   comes in from the client.

17       Q   Okay.  Is there -- so what is -- phone field

18   number 2, though, is that an employment number, a

19   spouse number, or is it not designated?

20       A   Typically an employment phone number, but I   09:47

21   can't speak for every single phone number on the

22   accounts.

23       Q   Okay.  How about phone field 3?

24       A   That doesn't have any special meaning.  It's

25   a phone number that came from the client.             09:47

Page 64

1        Q   And there -- there's -- it's an e-mail thread

2     and you're on some of these e-mails too.  You were on

3     some of those e-mails, right?

4        A   It appears, yes.

5        Q   And this was -- all of these e-mails appear    11:12

6     to be written between February 24th and February 25th

7     of 2014; is that correct?

8        A   Yes.

9        Q   Turn to the third page, please.  There's an

10    e-mail from you on February 24th at 4:57 p.m.  Do you    11:13

11    see that?

12       A   Yes.

13       Q   And you say, "Hello.  I was talking to Chris

14    and Bob, and Chris's theory is if we have all ECA and

15    Accurint skip tracing phone numbers placed in fields 5   11:13

16    through 10, we can make the dialer in Global not call

17    these phone numbers and only the first four fields,

18    which are always reserved for client-given phone

19    numbers or approved phone numbers by the debtor.

20    Global also can spit out a no cell phone exception      11:14

21    report so we know the reason Global did not call this.

22    This can save us money on costs."  Do you see that?

23       A   Yes.

24       Q   And so after February 24, 2014, did Rash

25    Curtis ensure that all ECA and Accurint skip tracing    11:14

Page 65

1   phone numbers were placed in phone fields 5 through

2   10?

3       MR. ELLIS:  Lacks foundation, calls for

4   speculation.  As phrased, it's argumentative.

5           You can answer.                           11:14

6       THE WITNESS:  Ask the question one more time.

7       MR. KRIVOSHEY:  Can you repeat my question,

8   please.

9           (Record read.)

10      MR. ELLIS:  Same objections.                  11:15

11      THE WITNESS:  Yes.

12      MR. KRIVOSHEY:  And --

13      MR. ELLIS:  Hold on one second, Yeremey.

14          Jodi, just for the record, it's Accurint,

15   A-C-C-U-R-I-N-T.                                  11:15

16   BY MR. KRIVOSHEY:

17      Q   And when did Rash Curtis transition to

18   placing ECA and Accurint's skip tracing phone numbers

19   into phone fields 5 through 10?

20      MR. ELLIS:  Again, lacks foundation, calls for  11:16

21   speculation.

22          You can answer if you know.

23      THE WITNESS:  I don't remember.

24   BY MR. KRIVOSHEY:

25      Q   Was it in 2014?                            11:16

Page 66

1        MR. ELLIS:  Same objections.

2            You can answer if you know.

3        THE WITNESS:  I don't remember for sure.

4   BY MR. KRIVOSHEY:

5        Q   Do you remember if it was in 2015?        11:16

6        A   I don't remember for sure.

7        Q   Do you remember it if it was in 2016?

8        A   I still don't remember.

9        Q   When is your first memory of Rash Curtis

10  placing skip trace phone numbers from ECA and Accurint   11:16

11  into phone fields 5 through 10?

12        MR. ELLIS:  Again, same objections.

13            You can answer.

14        THE WITNESS:  2014.

15  BY MR. KRIVOSHEY:                                      11:17

16        Q   Okay.  So in 2014, for those phone numbers

17  placed in fields 5 through 10, if that happened, were

18  numbers and phone fields 5 through 10 called by VIC?

19        A   Since that happened?

20        Q   No, in 2014.                                 11:18

21        A   In 2014, I don't know.

22        Q   What about in 2015?

23        A   I don't know.

24        Q   Has that happened at any point from 2014

25  through the present?                                   11:18

Page  71

1          THE WITNESS:  I don't know.

2     BY MR. KRIVOSHEY:

3          Q   Do -- are you aware of any cell phone scrubs

4     done prior to August 3rd, 2015?

5          A   I don't remember.                              11:24

6          Q   And then the first sentence of this e-mail

7     says, "We need a field where we can store cell phones

8     in the header ASAP."  Do you see that?

9          A   Yes.

10         Q   So as of August 3rd, 2015, did Rash Curtis   11:25

11    not have a field where -- to store cell phones?

12         A   I don't remember.

13         Q   Okay.  So on page 2, at the very bottom

14    there's an e-mail dated August 4, 2015, at 3:01 from

15    you.  And it carries over on to the next page.  Do you  11:26

16    see that?

17         A   Yes.

18         Q   And so you said, "We are currently waiting

19    from a spin from Dakcs that will get all phone

20    numbers," in parenthesis, "Sequence 1 through 4,"      11:27

21    closed paren, "that were entered by employee No. 99,

22    Dakcs from any day after DOR, which will be from any

23    ECAs or batching from skip tracing vendors.  When

24    these are gathered, they will place them into sequence

25    5 through 10"; do you see that?                        11:27

1      A    Yes.

2      Q    Do you remember if Dakcs did a spin to

3  collect all numbers that were in sequence 1 through 4

4  that were entered by employees into phone fields 5

5  through 10?                                              11:28

6      MR. ELLIS:   The question is vague and ambiguous.

7          You can answer.

8      THE WITNESS:   Yeah.

9  BY MR. KRIVOSHEY:

10     Q    And when did that happen?                       11:28

11     A    I don't remember.

12     Q    Was that -- do you remember if it happened in

13  after August 4th of 2015?

14     A    I don't remember the date.

15     Q    Do you remember if it happened before then?    11:28

16     A    No, I don't remember.

17     Q    Do you recall Dakcs ever running a spin to

18  get numbers in sequence 1 through 4 that were entered

19  by employees and put those numbers into phone fields 5

20  through 10 before August 24, 2015?                      11:28

21     A    I don't remember.

22     Q    What is DOR?

23     A    Date of referral.

24     Q    So are you saying here that numbers entered

25  by employees after the date of referral come from ECA   11:29

Page 73

1    or from skip trace vendors?

2         A   The question one more time.

3         Q   Are you saying that numbers entered by

4    employees from any day after DOR are from ECAs or from

5    skip tracing vendors?                                    11:29

6         MR. ELLIS:  I'm sorry, now I need that -- I need

7    that reread, please.

8              (Record read.)

9         MR. ELLIS:  It's vague and ambiguous.

10             You can answer if you understand it.          11:30

11        THE WITNESS:  Not all of them.

12   BY MR. KRIVOSHEY:

13        Q   Was -- is Dakcs able to do a spin to collect

14   all numbers that were obtained from ECAs or other skip

15   tracing vendors?                                        11:30

16        A   No.

17        MR. ELLIS:  You're asking -- oh, I'm sorry.

18             You're asking for his current state of mind?

19        MR. KRIVOSHEY:  Current state of mind, yes.

20        MR. ELLIS:  Okay.  You can answer.                 11:30

21        THE WITNESS:  No.

22   BY MR. KRIVOSHEY:

23        Q   So then what were you exactly asking for

24   Dakcs to do at that time?

25        A   At that time we were asking for the spin.      11:31

Page 74

```
 1        Q    To do what?

 2        A    To move phone numbers from sequences 1

 3   through 4 to sequences 5 through 10.

 4        Q    And which phone numbers specifically?

 5        A    Employee -- or numbered by -- excuse me.    11:31

 6   Phone numbers entered by employee No. 99.

 7        Q    What is employee No. 99?

 8        A    That is an automated number.  It's not a real

 9   employee number.  It's a batching number.

10        Q    So all numbers entered by employee No. 9 --    11:31

11   99, then, would be entered automatically and not by an

12   employee; is that correct?

13        A    Correct.

14        Q    Is Dakcs able to do a spin to collect all

15   numbers entered by employee No. 99?                      11:31

16        A    No.

17        Q    Was it ever able to do that?

18        A    I'm not sure.

19        Q    So did Dakcs -- was Dakcs able to do the spin

20   that you were asking it to do?                           11:32

21        A    Yes.

22        Q    So then Dakcs was able to pull numbers

23   entered by employee No. 99, correct?

24        A    Previously you said "all numbers."

25        Q    Entered by employee No. 99.                    11:32
```

Page 75

1      A    Right.  But all numbers or just the numbers?

2      Q    So which numbers can Dakcs pull from employee

3   No. 99 and which can it not pull?

4      MR. ELLIS:  The question is vague and ambiguous.

5   It -- I would suggest that we start with what actually   11:33

6   happened and then we can move from there, because I am

7   not -- I have no idea what you guys are talking about

8   at this point in time.  The record is a mess.

9   BY MR. KRIVOSHEY:

10     Q    What numbers from employee No. 99 is Dakcs     11:33

11  able to pull?

12     A    The phone numbers that are currently living

13  in the edit tracking history.

14     Q    Is it still able to pull those numbers today?

15     MR. ELLIS:  Lacks foundation, calls for           11:34

16  speculation.

17         You can answer if you know.

18     THE WITNESS:  Which numbers?

19  BY MR. KRIVOSHEY:

20     Q    The numbers entered by employee No. 99 that    11:34

21  currently exist.

22     A    Not all, no.

23     Q    Which numbers can it not pull today?

24     A    Phone numbers that no longer lived in edit

25  tracking history.                                       11:34

Page 77

1   We didn't just -- we didn't get an actual file.

2   BY MR. KRIVOSHEY:

3       Q   What is a TeamViewer exercise?  What do you

4   mean?

5       A   A TeamViewer is where we can basically -- I      11:36

6   can look at what they're looking at.  So we would go

7   over the results or the change or the spin and we

8   would look at it, make sure everything looked right

9   and it would go.  There's not actually any type of

10  file, it's not an export.                              11:36

11      Q   And what would they be looking at it on?

12      A   Usually -- usually it would be their inquiry.

13      Q   What is that?

14      A   It's a -- it's a part of their software to

15  where they can pull accounts.  Basically it's just    11:37

16  going to give you back the information.

17      Q   I understand.  And so where -- when you say

18  you were looking at it with them, were you in their

19  offices or how did that work?

20      A   With a TeamViewer, I was watching their        11:37

21  computer through my computer.

22      Q   I understand.

23          Okay.  And then the second bullet point of

24  that e-mail, it says, "ECA are currently being

25  remapped to only upload new phone numbers from 5      11:38

Page 78

1    through 10."  Do you see that?

2         A    Yes.

3         Q    What did you mean there?

4         A    That the ECA return would be remapped to

5    field phones 5 through 10 if there was a return phone      11:38

6    number.

7         Q    Okay.  So are you saying that if an ECA

8    lookup has a phone number, it would automatically put

9    into phone fields 5 through 10; is that the goal?

10        A    Correct.                                          11:38

11        Q    And did that system ever get put in place?

12        A    Yes.

13        Q    Do you know when that was?

14        A    I don't have a date.

15        Q    But it would be fair to say that it wasn't       11:38

16   before the date of this e-mail?

17        MR. ELLIS:  I'm going to object.  Lacks

18   foundation, calls for speculation.

19        THE WITNESS:  I don't remember.

20   BY MR. KRIVOSHEY:                                          11:39

21        Q    Okay.  And the fourth bullet point there

22   says, "We are currently and since the beginning of me

23   starting in IT, keep all files that have been sent to

24   us electronically for any backup.  In case of a suit,

25   we can prove these phone numbers were provided on the      11:39

Page 79

1    clients' file."  Do you see that?

2        A    Yes.

3        Q    And so, you say, "And since the beginning of

4    me starting in IT."  Are you referring to 2011?

5        A    Yes.                                          11:39

6        Q    And if -- and so for files that are sent

7    electronically by a client, where are those files

8    stored?

9        A    There's different locations.

10       Q    Are you able to retrieve them?                11:40

11       A    Yes.

12       Q    How quickly?

13       A    It depends on the file.

14       Q    Would it be more than a week?

15       A    Typically, no.                                11:40

16       Q    Okay.

17       A    Okay.  Correction on that.  This would be for

18   files that were sent to us from the client, like a new

19   business file, not any other electronic files.  This

20   is specifically meaning for the file that was sent to  11:41

21   us from the client, as in going back up to No. 3,

22   numbers provided by the client.  No. 4 is referring to

23   that.  And it's not all electronic files for backup.

24   It is particularly from the client.  I just want to

25   point that out.                                        11:41

**EXHIBIT 9**

```
1                  UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3

4    SANDRA MCMILLION, JESSICA

     ADEKOYA, and IGNACIO PEREZ,

5    on Behalf of Themselves and

     all Others Similarly Situated,

6

7             Plaintiffs,

8    v.                              No. 4:16-cv-03396-YGR

9    RASH CURTIS & ASSOCIATES,

10            Defendant.

11

12

13

14   _____

15

16

17             DEPOSITION OF DANIEL CORREI

18             Walnut Creek, California

19             Friday, October 20, 2017

20                    Volume 1

21

     Reported by:

22   KELLY WILLIAMS

     CSR No. 6442

23

     JOB No. 2730682

24

25   PAGES 1 - 89
```

                                              Page 1

1    27 an e-mail dated September 15, 2015?

2              (Plaintiffs' Exhibit No. 27 was marked)    10:27

3              MR. KRIVOSHEY:  Q.  Do you have Exhibit 27?

4         A.    Yes.

5         Q.    What is Exhibit 27?

6         A.    Looks like it's an e-mail.

7         Q.    What is the date of the e-mail?

8         A.    At the top of this page it says "September

9    15th, 2015."

10        Q.    It looks like you are on this e-mail thread as

11   well, correct?

12        A.    Correct.

13        Q.    All right.                                 10:27

14             So if you turn to the second page, there's an

15   e-mail from Diane Anderson where she says "...we need to

16   dig into some skip list this week."  Do you see that?

17        A.    Let's see.

18        Q.    It's the second paragraph there.            10:27

19        A.    Yes.

20        Q.    What is a skip list?

21        A.    That would be a list of -- we'd pull a list of

22   accounts with -- that haven't had contact and see if

23   there's anything that we can manually skip trace on.

24        Q.    Okay.  So how would that process work?

25        A.    You see a name, and you'd Google it.  You'd    10:28

                                                    Page 51

1    take a look at, you know, just internet sites, see what

2    you could find, if you can find who the person is in a

3    particular city or where they're working, maybe they're

4    a business owner, Google it, make a call.  That's all

5    done manually.

6         Q.   So say that you found a number for those

7    people.  Where would that number go?

8         A.   Without contact, it would go into fields 5         10:28

9    through 10.

10        Q.   Okay.  And with contact?

11        A.    If they are giving us a consent to call, it

12   would go into 1 through 4.

13        Q.   And why would the numbers for the ones with no

14   contact -- why would they go into fields phone -- phone

15   fields 5 through 10?

16        A.   We don't have consent to call.              10:29

17        Q.   You don't have consent to call numbers in

18   phone fields 5 through 10?

19        A.   Correct.

20        Q.   Okay.  You can put that aside.

21             That was Exhibit 27, right?

22        A.   Uh-huh.

23             MR. ELLIS:  Yes.

24             MR. KRIVOSHEY:  May I have the court reporter

25   mark as Exhibit 28 an e-mail dated April 12th, 2013?

1    messaging campaign.

2         Q.   So for a messaging campaign, Rash Curtis today

3    will scrub cell phones?

4         A.   Uh-huh.

5              MR. ELLIS:  Is that yes?                     10:52

6              THE WITNESS:  Yes.  Sorry.

7              MR. KRIVOSHEY:  Q.  So that means for a

8    messaging campaign today, no cell phones will be called?

9         A.   That means that for a mess- -- a type of

10   message campaign, cell phone numbers could be excluded.

11        Q.   What do you mean by could be?  So not always?

12        A.   We -- it depends.  If we have it -- a consent

13   to call it, we're going to call it.

14        Q.   How do you determine if you have consent to

15   call that number?

16        A.   From our clients in the fields 1 through 4.    10:53

17        Q.   Okay.  So you -- you will cell phone scrub --

18   Rash Curtis today cell phone scrubs messaging campaigns

19   for phone fields 5 through 10 --

20        A.   Yes.

21        Q.   -- is that correct?

22        A.   No, we don't message the 5 through 10.

23        Q.   Just don't call them, period?

24        A.   Yeah, we're not messaging cell phones in 5

25   through 10, period.

                                             Page 59

1      Q.    Do you know -- so earlier -- correct me if I'm

2   wrong, I think you said that skip trace numbers are

3   placed in phone fields 5 through 10; is that right?

4      A.    Correct.

5      Q.    Do you know when Rash Curtis initiated that

6   system?                                                    11:06

7      A.    Been years.  I don't remember exactly when.

8      Q.    Do you know if it was 2013?

9      A.    2013, 2014, somewhere around there.

10     Q.    Could it have been in 2015?

11     A.    I can't comment on that, but I know it -- I

12  know it was around 2013, 2014, somewhere around there.    11:06

13     Q.    So before Rash Curtis had a system where skip

14  trace phone numbers were placed in 5 through 10, where

15  did the skip trace phone numbers go?

16     A.    They would have been -- they could have been

17  put in one of the fields -- the only other field they

18  probably -- that probably would have been used would be

19  a job field.  Job field falls in the 1 through 4

20  number -- 1 through 4 fields.                             11:06

21     Q.    Okay.

22     A.    So if they skip trace, they had a lead on a

23  possible place of employment, they would have put it in

24  that place of employment field.

25     Q.    If they skip traced and got a cell phone, a

Page 69

1    personal cell phone, where would that go?

2         A.   That would go in our REM numbers which is 5

3    through 10.

4         Q.   Okay.  But I'm asking before Rash Curtis

5    instituted the 5 through 10 system, where would these

6    cell phone -- skip trace cell phones go?

7         A.   Most skip trace numbers have always gone        11:07

8    through there; but as far as if they were put maybe as a

9    home number or something, I don't recall that ever being

10   done or told to -- that was never instructed.  The only

11   time we would put something in a home field which is

12   part of 1 through 4 is with debtor contact where we know

13   that's a good contact number.  So that would -- okay --

14   that would be an instance where they would put it in the

15   1 through 4.  They now know it's a home number.  They

16   have consent, they spoke with someone or it's the main

17   contact number, but they're not going to put it in a     11:08

18   home field if they don't know if it's a home number.

19        Q.   Are you familiar with how skip trace numbers

20   that come from places like Accurint?

21        A.   Yes.

22        Q.   Okay.  So is it true that numbers that Rash

23   Curtis obtains now through software are automatically    11:08

24   placed in phone fields 5 through 10?

25        A.   Yes.

                                              Page 70

```
 1        Q.   Was there a time that companies like Accurint

 2   and other programs that Rash Curtis used for skip

 3   tracing that those numbers that were obtained through

 4   that method were put in other phone fields other than 5

 5   through 10?

 6        A.   No, we didn't put them in those other fields.

 7        Q.   So from the beginning of the time that you

 8   worked at Rash Curtis, you believe that Accurint put

 9   in -- numbers into phone fields 5 through 10?            11:09

10        A.   Yes.

11        Q.   And so you think that that was starting in

12   2010?

13        A.   Yes, through software, yes.  That's what

14   you're asking.                                           11:09

15             MR. KRIVOSHEY:  I'm going to have the court

16   reporter mark as Exhibit 31 an e-mail dated February

17   7th, 2017.

18             (Plaintiffs' Exhibit No. 31 was marked)   11:11

19             MR. KRIVOSHEY:  Q.  Do you have Exhibit 30 --

20   did I give you one -- do you have Exhibit 31?

21        A.   Yes.

22        Q.   What is it?

23        A.   An e-mail.

24        Q.   And what's the date of this e-mail?

25        A.   February 7th, 2017.
```

                                                         Page 71

**EXHIBIT 10**

**From:**      Natasha Paff <natasha@rashcurtis.com>
**Sent:**      2/25/2014 12:17:04 PM
**To:**        Nick Keith <nick@rashcurtis.com>; Steve Kizer <steve.kizer@rashcurtis.com>; Bob Keith <bob.keith@rashcurtis.com>; Chris Paff <chris.paff@rashcurtis.com>
**Cc:**        Terry Paff <terry.paff@rashcurtis.com>
**Subject:**   RE: Cell Phone - Auto Dial

**Attachments:** image001.jpg, image002.jpg

Hi Nick,

I appreciate your prompt response.  I will review this matter in more detail with Chris directly.

Thank you

**Natasha**

*Natasha L Paff*
CAO

RASH·CURTIS
ASSOCIATES
&
**Professional Recovery Systems**

*Debt Collection Specialist*
190 S. Orchard Avenue, Suite A-205
Vacaville, CA 95688
http://www.rashcurtis.com
Direct 707-454-2005  or 800-929-3935
Fax 707-454-2052
Cell 707-592-0889

Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents  If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them.  Thank you

**From:** Nick Keith
**Sent:** Tuesday, February 25, 2014 10:35 AM
**To:** Natasha Paff; Steve Kizer; Bob Keith; Chris Paff
**Cc:** Terry Paff
**Subject:** RE: Cell Phone - Auto Dial

Hi Natasha,

We can make this happen it would show CEL. Although it would greatly clutter or Master screen if we added it in – we can place this in the Vic Dialer screen sequence 5-10 where we can pull if they are CEL or not.



Keith
EXHIBIT NO. 9
10/16/17
J. BOSETTI, CSR 11316

The only thing we were trying to avoid is another 3rd party vendor cost and custom for our system to input this information and I believe this is why Chris came up with a more immediate and costless solution.

Please let me know how everyone would like me to proceed and I will make it happen. ☺

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**

RASH CURTIS

&
**Professional Recovery Systems**

*Debt Collection Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001

Please consider the environment before printing this email.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Natasha Paff
**Sent:** Tuesday, February 25, 2014 10:32 AM
**To:** Steve Kizer; Nick Keith; Bob Keith; Chris Paff
**Cc:** Terry Paff
**Subject:** RE: Cell Phone - Auto Dial

I believe the client would like to see a dedicated field for cell phones.   What is the current description of the fields you are referring to in your email below?

The priority is identifying a dedicated field for the cell phone number. The description doesn't necessarily need to read cell phone (although this would be nice).  How difficult is it to change the description?

Thank you

**Natasha**

*Natasha L Paff*
CAO

RASH CURTIS

&
**Professional Recovery Systems**

*Debt Collection Specialist*
190 S. Orchard Avenue, Suite A-205
Vacaville, CA 95688
http://www.rashcurtis.com
Direct 707-454-2005  or 800-929-3935
Fax 707-454-2052
Cell 707-592-0889

Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Steve Kizer
**Sent:** Monday, February 24, 2014 10:23 PM
**To:** Nick Keith; Bob Keith; Chris Paff
**Cc:** Terry Paff; Natasha Paff
**Subject:** RE: Cell Phone - Auto Dial

Hi,
Would this resolve the clients request to block or have the control to not call cell phones? Are the clients going to want to see an actual field labeled cell phones?

Sincerely,

## *Steven Kizer*

*Steven Kizer*
*Compliance Director*

RASH·CURTIS
ASSOCIATES
&
**Professional Recovery Systems**

*Debt Collection Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
Steve.kizer@rashcurtis.com
Office 866-454-2000
Direct 707-359-2809
Fax 707-454-2001

Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Nick Keith
**Sent:** Monday, February 24, 2014 4:57 PM
**To:** Bob Keith; Steve Kizer; Chris Paff
**Cc:** Terry Paff; Natasha Paff
**Subject:** RE: Cell Phone - Auto Dial
**Importance:** High

Hello,

I was talking to Chris and Bob and Chris's Theory is if we have all ECA, and Accurint skip tracing phone numbers placed in fields 5-10 we can make the dialer and global not call these phone numbers and only the first four fields which are ALWAYS reserved for client given phone numbers or approved phone numbers by the debtor. Global also can spit out a no cell phone exception report so we know the reason global did not call this. This can save us money on a custom.

Does this work for everyone?

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**

RASH CURTIS

&
**Professional Recovery Systems**

*Debt Collection Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2046
Direct 707-454-2046
Fax 707-454-2001

**Please consider the environment before printing this email.**

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**EXHIBIT 11**

**From:**       Nick Keith <nick@rashcurtis.com>
**Sent:**       5/12/2016 5:11:50 PM
**To:**         Bob Keith <bob.keith@rashcurtis.com>
**Cc:**         Chris Paff <chris.paff@rashcurtis.com>
**Subject:**    RE: Work on making sure cell phones in field 5+ don't get gc

**Attachments:** image001.png

---

Wow I really don't remember that? Don't see it in my e-mails either.  I'll send an e-mail to customs to change our custom and make sure it doesn't populate anything in fields 5+.

### Nick Keith,

**Nick Keith**
**Lead IT Analyst**



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001
Please consider the environment before printing this email.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents.  If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them.  Thank you

**From:** Bob Keith
**Sent:** Thursday, May 12, 2016 5:04 PM
**To:** Nick Keith <nick@rashcurtis.com>
**Cc:** Chris Paff <chris.paff@rashcurtis.com>
**Subject:** RE: Work on making sure cell phones in field 5+ don't get gc

Yes. I thought you were on the earlier emails. You were going to speak to Dakcs about it. We need to eliminate human error.

### Thanks

### Bob Keith

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*





*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com

 Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Nick Keith
**Sent:** Thursday, May 12, 2016 4:57 PM
**To:** Bob Keith <bob.keith@rashcurtis.com>
**Cc:** Chris Paff <chris.paff@rashcurtis.com>
**Subject:** RE: Work on making sure cell phones in field 5+ don't get gc

I didn't know that. Isn't there places to choose what numbers are being called on the global set up?

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001

 Please consider the environment before printing this email.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Bob Keith
**Sent:** Thursday, May 12, 2016 4:56 PM
**To:** Nick Keith <nick@rashcurtis.com>
**Cc:** Chris Paff <chris.paff@rashcurtis.com>
**Subject:** RE: Work on making sure cell phones in field 5+ don't get gc

Right but then we had humans put the wrong lines on GC.

**Thanks**

**Bob Keith**

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*



*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com

Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Nick Keith
**Sent:** Thursday, May 12, 2016 8:22 AM
**To:** Bob Keith <bob.keith@rashcurtis.com>
**Cc:** Chris Paff <chris.paff@rashcurtis.com>
**Subject:** RE: Work on making sure cell phones in field 5+ don't get gc

??? We made it so ECA's don't put phone numbers in the top fields and the rest of the numbers would be what came from the client. The collectors should be putting skip traced number's into the lower fields. This was implemented probably 6+ months ago.

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001

Please consider the environment before printing this email.

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you



**From:** Bob Keith

**Sent:** Thursday, May 12, 2016 8:20 AM
**To:** Nick Keith <nick@rashcurtis.com>
**Cc:** Chris Paff <chris.paff@rashcurtis.com>
**Subject:** Work on making sure cell phones in field 5+ don't get gc

Hi,
Any more information on blocking these fields? Was ion my calendar to follow up on.

## Thanks

## Bob Keith

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*



*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com

 Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**EXHIBIT 12**

**From:**     Nick Keith <nick@rashcurtis.com>
**Sent:**     8/4/2015 5:45:52 PM
**To:**       Bob Keith <bob.keith@rashcurtis.com>; Chris Paff <chris.paff@rashcurtis.com>
**Cc:**       Terry Paff <terry.paff@rashcurtis.com>; Natasha Paff <natasha@rashcurtis.com>
**Subject:**  RE: Cell Phones

**Attachments:**  image001.png, image002.png

---

Might be time to invest in some transfer agents?

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001

Please consider the environment before printing this email.

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Bob Keith
**Sent:** Tuesday, August 04, 2015 5:45 PM
**To:** Chris Paff <chris.paff@rashcurtis.com>; Nick Keith <nick@rashcurtis.com>
**Cc:** Terry Paff <terry.paff@rashcurtis.com>; Natasha Paff <natasha@rashcurtis.com>
**Subject:** RE: Cell Phones

Maybe have half the office manual dialing cells while the other have are global or on vic. Or pop all and use FOTI message on the land lines.

**Thanks**

**Bob Keith**

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*


Keith
EXHIBIT NO. 10
10|16|17
J. BOSETTI, CSR 11316



*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
Bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com
Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Chris Paff
**Sent:** Tuesday, August 04, 2015 3:30 PM
**To:** Nick Keith <nick@rashcurtis.com>; Bob Keith <bob.keith@rashcurtis.com>
**Cc:** Terry Paff <terry.paff@rashcurtis.com>; Natasha Paff <natasha@rashcurtis.com>
**Subject:** RE: Cell Phones

Used the cell phone scrub today on queues h0-h4 and actually still had phones to call – 15k – however, if you listen to the floor you can hear the difference it makes calling land lines only. Hopefully we can have this resolved in a few days…

Potential Poe's will still be listed in Poe phone number 2 when skip tracing manually.

## Chris Paff

*Chris Paff*
*Executive Vice President of Collections and Operations*



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
Chris.paff@rashcurtis.com
Direct 707-454-2004
Fax 707-454-2001
http://www.rashcurtis.com
Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Nick Keith
**Sent:** Tuesday, August 04, 2015 3:01 PM
**To:** Bob Keith <bob.keith@rashcurtis.com>

Hello,

We have discussed the cell phones today and here is what we came up with as of now.

1) We are currently waiting from a spin from Dakcs that will get all phone numbers (sequence 1-4) that were entered by employee number 99 **\*Dakcs\*** from any day after DoR which would be from any ECA's or batching from skip tracing vendors. When these are gathered they will place them into sequence 5-10
2) ECA are currently being remapped to only upload new phone numbers from 5-10. We are looking into the possibility of just using Dakcs Logic since Dakcs logic already has these going to these sequences.
3) Collectors are to only use the first four sequences for verified phone numbers and/or phone numbers that have been provided by the client.
4) We are currently (And since the beginning of me starting in IT) keep all files that have been sent to us electronically for any back up in case of a suit we can prove these phone numbers were provided on the clients file.

Chris is there any more you would like to add right now?

## Nick Keith,

**Nick Keith**
**Lead IT Analyst**



*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001

**Please consider the environment before printing this email.**

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

**From:** Bob Keith
**Sent:** Monday, August 03, 2015 9:09 PM
**To:** Nick Keith <nick@rashcurtis.com>
**Cc:** Terry Paff <terry.paff@rashcurtis.com>; Chris Paff <chris.paff@rashcurtis.com>; Natasha Paff <natasha@rashcurtis.com>
**Subject:** Re: Cell Phones

We should be safe if we get them from the client. So we need a field that only the number the client gave us goes there. Other skip and auto loads have to be barred from this field.

**Thanks**

**Bob Keith**

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*

*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
Bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com
P Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

On Aug 3, 2015, at 6:33 PM, Nick Keith <nick@rashcurtis.com> wrote:

We will make the change in the screen in the morning and Chris lets go over some type of process where the scrub will automatically move the cell phone over to this new field.

Now the tricky part is getting the cell phone numbers given to us by the client (majority do not list if it's a cell phone or not) . Does it matter if the client specified cell phone in it? And to try and get the system to know not to move these ones approved by the client. Unless we're just going to be safe and always leave these where they are.

I'll see what time works best for you to go over this in the morning.

**Nick Keith,**

**Nick Keith**
**Lead IT Analyst**

*Revenue Recovery Specialist*
190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
http://www.rashcurtis.com
Office 707-454-2000 Ext 2086
Direct 707-454-2046
Fax 707-454-2001
**P Please consider the environment before printing this email.**

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you

On Aug 3, 2015, at 5:16 PM, Terry Paff <terry.paff@rashcurtis.com> wrote:

Chris and Nick,

This is horrible, please make this happen ASAP and keep me in the loop daily as to your progress.

Thanks,

**Terry**

*Terrence L. Paff*
President & CEO

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
terry.paff@rashcurtis.com
Direct  707-454-2002
Fax    707-454-2052
Cell    707-480-0750
www.rashcurtis.com

🌱 Please consider the environment before printing this email.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

**From:** Bob Keith
**Sent:** Monday, August 03, 2015 5:09 PM
**To:** Nick Keith <nick@rashcurtis.com>; Chris Paff <chris.paff@rashcurtis.com>
**Cc:** Terry Paff <terry.paff@rashcurtis.com>; Natasha Paff <natasha@rashcurtis.com>
**Subject:** Cell Phones
**Importance:** High

We need a field where we can store cell phones in the header ASAP. This line needs to be clearly marked as a cell phone. We have to call these manually unless our clients send us the admitting form that shows the debtor gave them this number to call.

We need to start doing cell scrubs immediately. We can do this through global connect. I have 3 TCPA claims just in the last 4 weeks where we are going to have to pay. If we get one of our big clients like Sutter sued they are going to drop us like a hot potato.

There is no limit to this TCPA claims/damage. Todays is asking for 26K. If they didn't give this number to the client we will have to pay.

We are now to big not to do cell phone scrubs.


## Thanks

## Bob Keith

*Bob Keith*
*Executive Vice President*
*Client Services, Legal and Marketing*

<image004.png>

*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
Bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com

🌱 Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT:  If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents.  If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them.  Thank you

&lt;image004.png&gt;

**EXHIBIT 13**

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                    ---o0o---

4   SANDRA McMILLON, JESSICA
    ADEKOYA, and IGNACIO
5   PEREZ, on Behalf of
    Themselves and All Others
6   Similarly Situated,

7        Plaintiffs,
    vs.                        No. 4:16-cv-03396-YGR JSC
8
    RASH CURTIS & ASSOCIATES,
9
         Defendants.
10   _____/

11

12

13

14            DEPOSITION OF COLIN B. WEIR

15

16

17

18           Taken before Kimberly L. Avery

19                CSR No. 5074

20              December 11, 2018

21

22

23           Aiken Welch Court Reporters
             One Kaiser Plaza, Suite 250
             Oakland, California 94612
24       (510) 451-1580/(877) 451-1580
                Fax (510) 451-3797
25              www.aikenwelch.com

Page 40

1   Q.  When is the last time you received data from --
2   if you look at your records -- from class counsel?
3   A.  That may be harder to tell from these records,
4   but I think I received updated data.  The bills from
5   October of this year are reflecting updated account
6   data.
7   Q.  When you say "updated account data," let's be
8   clear what we're talking about.  Are you talking about
9   internal records from Rash Curtis?
10  A.  They are records that reflect a list of the
11  debtor accounts of Rash Curtis and then the phone
12  numbers that were associated with those accounts, where
13  I understand phone fields one through four are related
14  to the debtor, and five through ten are related to
15  parties other than the debtor.
16  Q.  Okay.  So -- and where did you get that
17  information from; where did you gain that knowledge,
18  Mr. Weir?
19  A.  So the literal data was passed on to me through
20  counsel for plaintiffs, and an understanding of what
21  the data consists of was provided both from counsel for
22  plaintiff and through the various declarations of Randy
23  Snyder.
24  Q.  Okay.  And so in coming up with your opinions,
25  you relied upon opinions by Mr. Snyder?

Page 41

1       A.  I think I could have done the work that I've

2    done here just based on the instructions of counsel,

3    but I think the work that I've done is supported by

4    what Mr. Snyder says.

5       Q.  Okay.  But again, let's go back to my question.

6    Did you, in coming up with your opinions, rely upon any

7    opinions that Mr. Snyder has given?

8       A.  Again, I don't think so.  My opinions are

9    driven by the data and the way in which I was asked to

10   analyze the data.  Again, I believe those things are

11   supported by what Mr. Snyder has said.

12      Q.  In terms of communications with class counsel

13   with respect to your engagement in the McMillon case,

14   did you make any handwritten notes --

15      A.  No.

16      Q.  -- at any point in time?

17      A.  My handwriting is basically illegible, so...

18      Q.  So I just want to be clear, so the answer is

19   no, you never took any handwritten notes to basically

20   confirm or document any communication you may have had

21   on the phone, for example, with class counsel; is that

22   correct?

23      A.  That's correct.

24      Q.  And I just want to be clear, you have not

25   purged your file of any documents that I asked for

Page 46

1        A.   There were some, yes.

2        Q.   What were they?

3        A.   Request 15:  "Copies of any and all deposition

4    transcripts in which deponent has testified as an

5    expert witness in any other matter."  Request 13, as it

6    relates to evidence of payments received from any law

7    firm for compensation provided to the deponent as it

8    relates to any case other than this one.

9        Q.   Okay.  Anything else?

10       A.   I'm checking.

11            I believe that's it.

12       Q.   Mr. Weir, did you, in any of the data

13   manipulation that you did in this case in coming up

14   with your opinions, did you -- did you come to any

15   conclusion as to how many of the phone calls that you

16   believe are actionable -- we'll talk about those after

17   a break -- were skiptraced, where the numbers were

18   skiptraced?

19       A.   I'm not offering an opinion about that one way

20   or the other.

21       Q.   I saw that one of the -- you've got a list in

22   your Rule 26 disclosure of materials that you relied

23   upon.

24            Are you familiar with that list?

25       A.   Yes.

Page 47

1    Q.  Okay.  And one of those was a deposition given

2  in April of 2017 by a former Rash Curtis employee by

3  the name of Steven Kizer.

4        Are you familiar with that deposition?

5    A.  I have a recollection of it, but it's been a

6  long time since I've looked at it.

7    Q.  So you've got that in your computer someplace

8  related to this case?

9    A.  I think so, yes.

10   Q.  Okay.  Why didn't you produce that today?

11   A.  I didn't produce documents that had been

12  produced by defendant in the course of the litigation;

13  in other words, documents that would already have been

14  in your possession.

15   Q.  I didn't produce -- is that right?  So you made

16  a determination that you were not going to honor the

17  deposition notice if you thought that I had documents

18  that already had been produced?

19       MR. KRIVOSHEY:  Objection as to form.

20  Argumentative.

21  BY MR. ELLIS:

22   Q.  You can answer.

23   A.  It was the instruction I received in terms of

24  how to prepare the production.

25   Q.  And again, by class counsel?

Page 48

1       A.   Correct.

2       Q.   Okay.

3            MR. ELLIS:   We've been going about an hour.

4   Let's take five minutes.

5            (Break taken.)

6            MR. ELLIS:   We're going to mark this next in

7   order.   This is your Rule 26 report, or what you call a

8   "Declaration," Mr. Weir.

9            THE WITNESS:   You've already marked that as

10  Exhibit 2.

11           MR. ELLIS:   Did I?   Okay.

12           You are right.

13  BY MR. ELLIS:

14      Q.   What I'd like to do for a second is go back to

15  what you have as Exhibit 2, documents reviewed in our

16  Exhibit 2.

17      A.   I'm with you there.

18      Q.   So I see that one of the things that you

19  reviewed was the class action complaint filed June 17,

20  2016.

21           Do you see that?

22      A.   Yes.

23      Q.   All right.   And was there anything in

24  particular of interest that you used in formulating any

25  of your opinions that you gave in your Declaration?

Page 49

1    A.  I think it sets out the concept of the theory

2  of liability in terms of violations of the TCPA.

3    Q.  And before this case, before McMillon, had you

4  worked on any other TCPA cases?

5    A.  I'm trying to remember whether the other

6  engagements began -- some of the other engagements

7  began at approximately the same time, but this was --

8  in terms of testifying about the TCPA -- is one of the

9  earlier engagements in that regard.

10    Q.  Okay.  And I take it you are not -- you are

11  not -- you have not been engaged in this case to

12  provide any legal opinions as to, for example, what's

13  an autodialer or not an autodialer; is that correct?

14    A.  That's correct, I'm not offering an opinion

15  about what constitutes an autodialer.

16    Q.  Okay.  And whether or not there's jurisdiction

17  here under the TCPA, you are not here to offer any

18  opinions on that; you are here to essentially assume

19  that there is jurisdiction under the TCPA and kind of

20  progress from there, correct?

21    A.  So -- multi-part question.  I'll give the

22  multi-part answer.  I am not offering opinions about

23  jurisdiction or other legal affairs, and the Reference

24  Manual on Scientific Evidence, as it relates to damages

25  quantification, does contain the instruction that a

Page 50

1    damages quantifier would assume that plaintiffs are

2    able to establish their theory of liability, and that

3    it be set forth from there.

4        Q.  Well, let me ask you about that.  What are you

5    referring to when you say "the damages," is there

6    some -- is there some Bible on damages that people in

7    your field use?

8        A.  Well, as I said, there's something known as the

9    Reference Manual on Scientific Evidence.  It relates to

10   many topics:  Consumer surveys, regression analyses,

11   damages generally.  I don't know that I've read the

12   whole thing, but sometimes people are shocked at this

13   idea of assuming that liability is established, and

14   that tends to be necessary because damages work, for

15   whatever reason, tends to happen before liability is

16   established.  And if you can't come up with a theory of

17   liability to match your damages and assume that that

18   will be borne out at trial, then you can't really do a

19   damages analysis.

20          So I quote that just as a reference to say

21   there's an authority that says whatever plaintiffs'

22   theory of liability is, you should assume that

23   defendants will be held liable for that harm.

24       Q.  Okay.  All right.  And then it looks like you

25   looked at 47 U.S. Code 227.

Page 52

1    identify those things.

2         Q.  What was it?  Was there something, however, a

3    concept or an opinion, that you gleaned from Mr.

4    Snyder's declarations that you have utilized in coming

5    up with your opinions here?

6         A.  Not in this declaration, I don't think so.

7    Again, I understand that what Mr. Snyder says dovetails

8    with plaintiffs' theory of liability and from my

9    understanding of work that I've done.  But if Mr.

10   Snyder was not offering testimony, that wouldn't change

11   the functional analysis that I've performed here.

12        Q.  And I see that again, here is the deposition of

13   Steve Kizer, April 13th, 2017.

14             Did you review that entire deposition?

15        A.  I don't recall one way or the other.

16        Q.  If you had, would it be in your billing

17   records?

18        A.  The record would just say, potentially,

19   "reviewed documents" or "reviewed the transcript," but

20   I don't know that it would say "reviewed full

21   transcript," or something like that.

22        Q.  Then I see, "GC call detail records."

23             Do you see that?

24        A.  Yes.

25        Q.  And when you say the "GC call detail records,"

Page 53

1    tell me exactly what you mean by that.

2         A.   There was a series of files produced.   They

3    were text-based data files that were call logs for

4    certain time periods in the case.

5         Q.   So this is where we have to like drill down on

6    this.   When you say "call logs," were they -- were they

7    debt collector notes from communications, or were they

8    actually call logs demonstrating that phone calls had

9    been made from Rash Curtis on a particular calling

10   platform?

11        A.   Thank you for trying to clarify that.

12             What I would say is from my seat -- and I

13   understand that many people may see things

14   differently -- I use the term "call detail record,"

15   which is literally the phone dialing record and

16   information about the call, synonymously with call

17   logs, which would be a reflection of the calls that are

18   made.

19             So when I use the term "call log," I am

20   referring to the call detail records that show that a

21   call was placed, what the disposition of the call was,

22   the duration of the call, what number was called,

23   information such as that.   I'm not looking at the other

24   potential interpretation of the word "call log," where

25   somebody has made a note or a log of the interactions

Page 54

1    over the call.

2        Q.  Right, which would typically be electronic also

3    today with debt collectors.  They are working on a

4    computer, right?  There's a dialing system that

5    interfaces with their computer, with their collection

6    software, and as they talk with people, they make notes

7    and so forth and so on.  That's the distinction I'm

8    trying to make.

9            When you say "call detail records," you are

10   talking about what in this case would be vendors of

11   Rash Curtis and the records that they kept on their

12   systems, their dialing platforms of phone calls that

13   went out and -- were they phone calls that went in?

14       A.  To the best of my knowledge, these are outbound

15   calls, and these would be -- again, as you've drawn the

16   distinction, basically -- they are not billing records

17   in the sense that they are on a bill, but they are

18   similar to the type of detail that you might see on a

19   phone bill.

20       Q.  Like a Verizon bill?

21       A.  The call was placed on Monday, it was placed at

22   this number, it lasted three minutes.  There's a little

23   bit more detailed information, but that's the type of

24   information, not the notes that someone is taking from

25   the debt collector's office.

Page 55

1      Q.  Okay.  All right.  And so the GC call detail,

2  the TCN call detail, and what you call the VIC call

3  detail, that's what we're talking about.  We're talking

4  about just the records of the outbound phone calls and

5  any information that were associated with that from

6  these three vendors?

7      A.  Right.  Again, close to what somebody might be

8  familiar with, a layperson, with seeing on a phone

9  bill, a list of the calls placed, what number was

10  called, the duration of the call, the call disposition,

11  whether it was answered and went to voicemail, that

12  sort of thing.

13     Q.  The next category are "defendant's account

14  data, including account number and fields one through

15  ten."

16          What was made up with that account data, if you

17  could tell me?

18     A.  So my best recollection of that data is that it

19  contains a unique account number identifier for a

20  person who is in the debt collection system, as well as

21  who that person is.  There may be address information,

22  although I was not focused on the address information,

23  and then a list of fields, I call them phone fields one

24  through ten.  And in not all instances were there ten

25  numbers, but there would always be the ability to store

Page 56

1    ten numbers associated with that particular account.

2    And I received that as -- I think it was an Excel

3    spreadsheet.

4        Q.  So tell me the process that you utilized, if

5    any, in attempting to merge the account data with the

6    call detail records to see if you could -- if it was

7    possible to associate a particular debtor or nondebtor

8    with a phone number.  How did you do that?

9        A.  So steps 1 and 2 would be to take the

10   information that was provided to me and import it into

11   the Stata program.  So that would be taking the raw

12   text data files, which I call the call detail records

13   here, from the three companies, and just have it in a

14   usable database format.  I'm going to describe this at

15   the high level.  There are some more details, and if

16   you want to get into that, I'll let you ask questions

17   about that.

18          Step two would be to import this account data,

19   which is the information about the account, the debtor,

20   and then the phone field data about numbers associated

21   with that account.

22          And we did some data cleaning.  So, for

23   example, if one of the phone fields contained

24   gibberish, we would eliminate that data.  Or if it

25   contained what might have been a phone number but

Page 57

1  didn't conform to what a usual North American phone

2  number looks like, on the basis of trying to be

3  conservative, we would remove that from the analysis.

4          Once those two collections of data are

5  available, the statistical software platform can -- the

6  technical term is merge the two data sets, but it

7  basically compares data set 1 with data set 2 on some

8  sort of identifier.  And in this case, the identifier

9  that I used was the combination of the debtor account

10  number and the telephone number that was either dialed

11  in the call detail record or existed in phone fields

12  one through ten for each account in the account data.

13          I did the account and phone number

14  combination -- again to be conservative -- in case some

15  of the fields -- phone numbers in fields one through

16  ten were repeated for different accounts.  So you might

17  have one account where a number is in phone field one

18  through four and another where it's in field five

19  through ten.

20          Once you run that merge, you have three

21  categories of information, calls that have no matches

22  from the account data --

23      Q.  To the -- that is, no match between the

24  defendant's account data and the call detail record?

25      A.  You have to --

Page 59

1     A.  I do, although if you could let me rephrase it

2   just so that I think the terminology might be a little

3   bit clearer.

4     Q.  That's fine.

5     A.  Within each data set there are data records.

6     Q.  Right.

7     A.  Each record will contain from the call detail

8   record some information that is not in the account data

9   even when there is a match, and each account record

10  will contain some information that is not in the call

11  detail records even if there's a match.

12         So when you were using the term "information,"

13  I thought that that might get confusing.  So if you are

14  thinking about the Venn diagram, what I would say is

15  there will be a circle representing the call detail

16  records; there will be a circle representing the

17  account records.

18     Q.  Right.

19     A.  And then agnostic to what is in each of those

20  records, other than what we are comparing, which is the

21  account and phone number, there will be some records

22  that appear only in the call detail records but not in

23  account data; there will be some records that appear

24  only in the account data, or at least potentially in

25  the account data but not the call detail records; and

Page 60

1  then there will be the intersection in the Venn diagram

2  where there are records that are a match in the call

3  detail record and the account data.  And those are the

4  records, the subset of records that are the focus of my

5  report.

6       Q.  Right.  In that subset of records, and we're

7  going to look at your -- look at your spreadsheets in a

8  second, but in that subset where the two Venn

9  diagrams -- the two circles come together in the Venn

10 diagram, how many distinct phone numbers, when you look

11 at GC, TCN and VIC, are we talking about?

12      A.  Let me see if that information is in the

13 report.

14           So there are approximately 14 million calls in

15 the middle of the Venn diagram.  Those are reflected in

16 Tables 1, 2 and 3 of the Declaration by vendor, and are

17 reflected in a little bit greater detail in Exhibits 3,

18 4 and 5.

19           I don't think I have put in here how many

20 unique telephone numbers are comprised in each of those

21 subsets, but the upper limit would be approximately

22 1.5 million, which were the possible combinations left

23 in the account data.  So it would almost certainly be a

24 little bit less than that.

25      Q.  So can you tell me how many actual debtors

Page 62

1      A.  I didn't -- I was not asked to determine

2  whether one was a debtor or not.  If -- if my

3  understanding is correct, there would be very few

4  debtors in the list.  But again, I haven't been asked

5  to make that determination one way or the other.

6      Q.  Okay.  So now I want to go back to Mr. Kizer's

7  testimony.  You did rely upon that testimony, or you

8  did not?

9      A.  To be honest, I don't think I'm relying on it

10 in my final report, because I don't even remember what

11 I would have taken from it.

12     Q.  So he, Mr. Kizer, testifies to what numbers

13 go -- what types of numbers would go in one through

14 four and what would go in five through ten.

15         Does that kind of refresh your recollection

16 about what he testified to?

17     A.  That would have been my best guess, but I have

18 not been asked to opine about what a number being in

19 phone fields one through four means, or five through

20 ten means.

21     Q.  Well, do you know what it means?

22     A.  Again, I understand that Mr. Snyder testifies

23 that numbers in phone fields five through ten reflect

24 numbers that have been skiptraced, but again --

25     Q.  Whether that's true or not, you don't know.

Page 63

1   And as I understand your testimony, you are not relying

2   upon his opinions anyway for coming up with your

3   damages analysis?

4       A.   I was asked to analyze phone calls made to

5   numbers contained in fields five through ten.  I'm not

6   offering an opinion about what it means to be in fields

7   five through ten.

8       Q.   Okay.  So do you know as you sit here today

9   whether phone numbers in phone fields five through ten

10  include land lines?

11      A.   I'm fairly certain that there are both mobile

12  phones and land lines in fields five through ten.

13      Q.   Did you do anything to discriminate in the

14  numbers between the two?

15      A.   As to this report, no, I did not.

16      Q.   And this is the report -- you understand your

17  testimony at trial is going to be framed by this

18  Declaration, this Rule 26 report.

19           You understand that?

20      A.   I do understand that.

21      Q.   And you understand that the court is not going

22  to permit you to give opinions outside of this report.

23           Do you understand that?

24      A.   I understand that, but your questions are

25  broader, and so I'm trying to answer your questions as

Page 64

1    phrased.  And if you need to ask a specific question

2    about, Are you offering testimony at trial, then I need

3    that detail in the question.

4         Q.  Well, okay.  So Mr. Weir, don't take this the

5    wrong way, you seem like a perfectly pleasant person,

6    but I would characterize you as a professional expert

7    witness, and I will characterize you that way at trial,

8    not to hide the ball.

9              So you've -- you've probably given more expert

10   depositions than I've taken over 30 years of practice,

11   and I practice in the area of professional malpractice.

12   So when you come back to me and say, I expect you to

13   ask a very specific question, I think I'm asking

14   specific questions.

15             I'm not trying to fight with you, Colin, I'm

16   not.  I'm just telling you, you know, you've been doing

17   this a long time.  Let's -- I won't play games with

18   you; please don't play games with me.

19             So my question again, to just be clear, of

20   these 14 million calls that you've talked about, how

21   many of those calls went to debtors as opposed to

22   nondebtors, you just don't know?

23        A.  It was not part of my assignment to make that

24   determination, so I did not make that determination.

25        Q.  Okay.  I just want to -- I just want a clear

Page 65

1   answer.  It is true, is it not, that of the 14 million

2   calls that were made, how many went to debtors and how

3   many went to nondebtors, you just don't know?

4       A.  It was not part of my assignment, so I did not

5   endeavor to find out one way either or the other.

6       Q.  Likewise, how many of those 14 million calls

7   that may be in phone fields five through ten were

8   skiptraced or not skiptraced was not a part of your

9   engagement either, and you have no opinion on that,

10  true?

11      A.  It was not part of my assignment to determine

12  which calls were skiptraced.  It was my assignment to

13  determine which calls were placed to numbers contained

14  in fields five through ten --

15          (Reporter clarification.)

16          THE WITNESS:  -- determine which calls were

17  made to phone numbers in fields five through ten.

18  BY MR. ELLIS:

19      Q.  Now, I'm going to go ahead and mark excerpts

20  from Mr. Kizer's April 13th deposition, so this will be

21  next in order.

22          (Defendant's Exhibit No. 7 marked for

23          Identification.)

24  BY MR. ELLIS:

25      Q.  So let me just ask you -- I'm going to get to

Page 67

```
 1   whether the number was to a mobile phone or a land
 2   line.  It was the responsibility of another expert to
 3   determine which numbers were mobile phones.
 4   BY MR. ELLIS:
 5       Q.  And in that regard, did anyone tell you what
 6   Rash Curtis' policy and procedure was to -- withdraw
 7   that.
 8           Did you gain any understanding as to where
 9   numbers that were obtained with what we call prior
10   express consent of the call -- of the call party, where
11   they would go?
12           MR. KRIVOSHEY:  Objection as to form.
13           THE WITNESS:  Again, I'm not offering an
14   opinion about that.  If you are asking about my
15   understanding, I've been led to believe that numbers in
16   phone fields five through ten would be skiptraced
17   numbers and other numbers would be contained in fields
18   one through four.
19   BY MR. ELLIS:
20       Q.  Okay.  And do you understand the materiality of
21   whether a number is supplied to Rash Curtis with prior
22   express consent or not?
23           MR. KRIVOSHEY:  Objection as to form.
24           THE WITNESS:  It may have some legal bearing on
25   whether that number is in or out of the case, but in
```

Page 69

1    to make a clarification to the last answer.  I didn't

2    use a service such as LexisNexis or TransUnion as the

3    basis of my November 12th report.  I do rely upon

4    information from the North American Numbering Plan.  I

5    think that's different than what you are asking about,

6    but I just want to make sure the record is clear.

7         Q.  Well, we hadn't gotten there yet, but what is

8    the North American Numbering Plan?

9         A.  That's the general organization of telephone

10   numbers issued and operating within the United States

11   and the greater North American area.

12        Q.  Okay.  And you accessed that database?

13        A.  Either I accessed it or a member of my staff

14   did.

15        Q.  Who would the member of the staff that accessed

16   it be?

17        A.  That might have been Dr. Lee Selwyn.

18        Q.  Okay.  And what was the purpose of accessing

19   that database?

20        A.  The purpose of accessing that database was to

21   generate a list of valid U.S. area codes, which are

22   sometimes known as NPA codes and NXX codes --

23             (Reporter clarification.)

24             THE WITNESS:  Capital NXX -- codes, such that I

25   could review the defendants' account data and remove

Page 70

1   from it any telephone number that did not comport with

2   a valid U.S. area code, NPA code, or NXX code.

3   BY MR. ELLIS:

4       Q.  And how did you do that, how did you eliminate

5   telephone numbers that did not seem to have a valid

6   prefix code?

7       A.  I would compare the NPA code from the

8   defendants' accounts data against the list of valid NPA

9   codes from the North American Numbering Plan.  Where

10  they matched, we would keep the record; where they

11  weren't a match, the data would be eliminated from the

12  analysis.

13      Q.  But this --

14      A.  And I would do the same thing with the NXX

15  codes.

16      Q.  I'm sorry.  I kept interrupting you.

17          Did you get your answer out?

18      A.  Yes, I did, finally.

19      Q.  Okay.

20      A.  So if you want to go back, thank you for

21  letting me clarify the answer, and we went off on a

22  tangent, but you had a question about whether or not I

23  was offering opinions about whether the numbers have or

24  have not been skiptraced.  The answer is, I'm not

25  offering an opinion one way or the other.  I have an

Page 96

1    your damages opinion?

2         MR. KRIVOSHEY:  Objection.  Mischaracterizes

3    the report and the testimony.

4         THE WITNESS:  That's not quite right.  The

5    first step in my analysis was to go through the call

6    detail records and identify in broad strokes calls that

7    were placed to the phone fields five through ten

8    numbers that were not also placed -- or that were not

9    also numbers listed in phone fields one through four.

10   The result of that initial step are those three

11   exhibits that we just looked through together.

12         After that, I provided a collection of those

13   calls, a subset of those calls to Ms. Verkhovskaya, and

14   those calls meet the criteria that I describe in my

15   report in paragraph 12.  So for the calls by Global

16   Connect, the information I provided were phone calls

17   placed to fields -- numbers in fields five through ten,

18   not contained in fields one through four, that had a

19   call disposition of answered and that were at least six

20   seconds or longer in duration.

21   BY MR. ELLIS:

22        Q.  So let me just -- where did the six-second

23   limitation come from?

24        A.  I was given an instruction from counsel that

25   that is the information that I was to provide to

Page 101

 1    based on the testimony of Mr. Snyder.

 2            But again, you asked for my understanding; I'm

 3    offering it.  I'm not offering an opinion about that

 4    one way or the other.

 5    BY MR. ELLIS:

 6        Q.  With respect to this Table 4, do you know

 7    whether any of these numbers were skiptraced?

 8        A.  As per our prior colloquy, it's not my

 9    assignment to make a determination whether they have

10    been skiptraced.  It was my assignment to determine

11    that they were in fields five through ten and not also

12    in fields one through four.

13        Q.  With respect to these numbers in Table 4, do

14    you know whether any of these are land lines?

15        A.  Assuming that Ms. Verkhovskaya has done the

16    analysis that she claims to have done, then none of

17    them are land lines at the time of the call.

18        Q.  But do you know; do you have an opinion?

19        A.  Again, I would just say that she's gone through

20    what I understand to be a reasonable process to

21    determine the mobile status of the call, and if she's

22    done what she said, then these would be calls to mobile

23    numbers and not land lines as of the time of the call.

24        Q.  With respect to these numbers, do you know

25    whether or not any of these -- any of the people called

Page 106

1    correct?

2         A.   That's where I discuss statutory damages.

3         Q.   So ultimately, you take the call count and

4    multiply that times either $500 or $1,500, correct?

5         A.   I think -- I'm not going to speak for class

6    counsel, but they are seeking their normal statutory

7    damages of $500, or anywhere up to the permissible

8    trebling of those damages for the willful nature of the

9    calls.

10        Q.   So with respect to Table 5, which is "Statutory

11   Damages ATDS Class," what do you understand the ATDS

12   class to be?

13        A.   Again, I believe that's an autodialer class.

14        Q.   Okay.  To skiptrace numbers?

15        A.   I'm not offering an opinion about that one way

16   or the other.

17        Q.   Well, okay.  But again, have you read the

18   court's class certification order?

19        A.   I don't recall if I have or not.  I mean,

20   paragraph 15 really sets forth what I'm talking about

21   here.  I've been instructed that these are the calls

22   for which plaintiffs are going to seek statutory

23   damages.  If they are successful in proving that these

24   calls -- again, this is the assumption of liability --

25   if they are correct that liability could be established

Page 107

1    for these calls, these are the damages.

2           If you are going to hypothesize about some

3    other liability scenario, I would need to know what

4    that is.

5       Q.  Well, I'm only hypothesizing about what the

6    court has ordered here.  And so each one of the four

7    subclasses here have a requirement that the phone call,

8    that the number obtained and then called was a

9    skiptraced telephone number, and that's why I keep

10   asking you about this.  But you've explained to me that

11   that's not within the scope of your engagement or

12   retention here.  You were given some information about

13   numbers, you've taken that information, then you've

14   multiplied it either times the treble damages of 1,500

15   or the non-willful damages of 500, and you've come up

16   with the numbers that are here.  That part doesn't seem

17   hard.

18          And so your ultimate determination is that the

19   non-willful damages are $267,349,000, correct?

20      A.  If liability is established as to the

21   autodialer class, then, yes, that would be the

22   statutory damages for the numbers that I've been told

23   are going to be sought for statutory damages.

24      Q.  I get it.  I'm not trying to -- and then the

25   high number for willful is $802,047,000, correct?

Page 108

1      A.   That's correct.  If liability is established

2  for the autodialer class, those would be the statutory

3  damages for the numbers that I understand plaintiffs

4  are seeking statutory damages for.

5      Q.   And then in Table 6, you've got the

6  "Pre-Recorded/Artificial Voice Class."

7           Do you see that?

8      A.   Yes.

9      Q.   So let me just ask you:  Are you aware again

10  that there is a -- in the class certification order

11  that a pre-recorded artificial voice class was

12  certified?

13      A.   I am aware of that.

14      Q.   That it was certified?

15      A.   It's my understanding that it was.

16      Q.   Again -- all right.

17           Okay.  All right.  And again, with respect to

18  that class, the damages you've calculated for statutory

19  damages fall between 251 million and change and

20  755 million, correct?

21      A.   Those are the numbers that are shown in the

22  table, which show the application of the statutory

23  damages, as I have been instructed would be the

24  appropriate way to do so, against the calls that I

25  understand that plaintiffs are seeking damages for

**EXHIBIT 14**

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    ---o0o---

4   SANDRA McMILLION, JESSICA
    ADEKOYA AND IGNACIO PEREZ, on
5   Behalf of Themselves and all
    Others Similarly Situated,
6
         Plaintiffs,
7   vs.                        No.  4:16-cv-03396-YGR JSC

8   RASH CURTIS & ASSOCIATES,

9        Defendants.
    _____/

10

11

12

13         DEPOSITION OF RANDALL A. SNYDER

14

15

16

17      Taken Before KATHERINE J. KIRBY, CMR, CRR

18              CSR NO. 6418

19            December 17, 2018

20

21

22         Aiken Welch Court Reporters
           One Kaiser Plaza, Suite 250
23         Oakland, California 94612
           (510)451-1580(877)451-1580
24            Fax: (510)451-3797
              www.aikenwelch.com

25

Page 91

1      A.  Yes.

2      Q.  Again, that was the discussion that we were

3   having immediately before we took our lunch break with

4   respect to it is your belief that if a number appears

5   in Phone Fields 5 through 10 and does not also appear

6   in Phone Fields 1 through 4, that is a skiptraced

7   number for purposes of class determination?

8           MR. KRIVOSHEY:  Objection as to form.

9           THE WITNESS:  Well, I don't think I actually

10  said that was the only criteria.  That was one step in

11  the process.

12  BY MR. ELLIS:

13     Q.  What are the other steps?

14     A.  The idea is that under the general procedures

15  and policies of Rash Curtis, my understanding is those

16  phone number Fields 5 through 10 that don't appear in 1

17  through 4 were skiptraced numbers.  But there's another

18  step of determining whether those numbers were

19  associated with somebody having an account with Rash

20  Curtis or they were actually a debtor or they had owned

21  a debt or they should have been called by Rash Curtis

22  so it's a step-by-step process.

23          So that even if -- that's why I said before I

24  don't say "every" or "all" or "absolute."  We're

25  looking at large numbers of records here and mistakes

Page 92

1    do happen.  There's a lot of data entry and mistyping

2    and things like that.  But overall, these records are

3    generally very accurate but it's not just that step.

4    That's the first filtering step.

5             The other step is to see that the number that

6    was skiptraced is not somebody associated with Rash

7    Curtis, that they shouldn't call them.  That's part of

8    what makes up the class.  I understand from the other

9    expert witnesses they've performed that analysis and

10   determined skiptraced numbers that were not debtors to

11   Rash Curtis.

12        Q.  Let's move on to Page 4.  Under Paragraph A you

13   talk about the following documents that you relied upon

14   in this case.  One is the complaint; is that correct?

15        A.  Yes.

16        Q.  We talked about that before.  You told me that

17   it is your assumption that the allegations in the

18   complaint are true for purposes of your opinions?

19        A.  Yes.  If I didn't believe the complaint was

20   true, I wouldn't take the case.

21        Q.  So are you aware that both Ms. McMillion and

22   Ms. Adekoya in the complaint said that they had never

23   given prior expressed consent to their doctors who in

24   turn gave prior expressed consent to Rash Curtis --

25             MR. KRIVOSHEY:  Objection as to form.

Page 108

1    need to reach you to talk about your payment, what

2    other numbers can I call you at.  What other number can

3    I leave a message at.  He may also supply additional

4    numbers."

5              Do you see that?

6         A.  Yes.

7         Q.  To your understanding based upon all this

8    evidence, those numbers go into Phone Fields 5 through

9    10?

10             MR. KRIVOSHEY:  Objection as to form.

11             THE WITNESS:  Yes.  And my understanding from

12   the totality of the evidence is that these Phone Fields

13   5 through 10 are -- the general procedure at Rash

14   Curtis is to put skiptraced numbers in there.  That

15   doesn't mean that's the only numbers they can put in

16   there and I'm not testifying to that but of course the

17   key issue is do these numbers have debtor accounts

18   associated with them.  And if there's a number in there

19   that's not associated at all with a debtor account,

20   that's the additional criteria.

21   BY MR. ELLIS:

22        Q.  Do you remember reading from Mr. Kizer's

23   testimony where he really did not have an understanding

24   of what prior expressed consent is?  Do you remember

25   him saying that?

**EXHIBIT 15**

Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP, LLP
1425 River Park Drive
Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>          Defendant. | Case No.:  4:16-cv-03396-YGR<br><br>**DEFENDANT'S RESPONSES TO PLAINTIFFS' THIRD SET OF INTERROGATORIES [F.R.C.P. 33]** |

PROPOUNDING PARTY:          PLAINTIFFS SANDRA McMILLION, JESSICA ADEKOYA,

                                              AND IGNACIO PEREZ

RESPONDING PARTY:          DEFENDANT RASH CURTIS & ASSOCIATES

SET NUMBER:                       THREE

          This responding party has not fully completed its investigation of the facts relating to this case, has not fully completed its discovery in this action, and has not completed its preparation for the trial. All the answers contained herein are based upon such information and documents which are presently available and specifically known to this responding party and disclose only those contentions which presently occur to such responding party.  It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to

- 1 -

1    substantial additions, changes in and variations from the contentions herein set forth.  The following

2    responses are given without prejudice to responding party's right to produce evidence of any

3    subsequently discovered fact or facts which this responding party may later recall.  Responding party

4    accordingly reserves the right to change any and all answers herein as additional facts are ascertained,

5    analyses are made, legal research is completed and contentions are made.

6        The answers contained herein are made in a good faith effort to supply as much factual

7    information and as much specification of legal contentions as is presently known but should in no way

8    be in prejudice of responding party in relation to further discovery, research and analysis.

9    **INTERROGATORY NO. 9:**

10        IDENTIFY ALL debtors within the CLASS PERIOD, including the name, account number,

11    and telephone number of all such individuals.

12    **RESPONSE TO INTERROGATORY NO. 9:**

13        Objection:

14        This interrogatory is unduly burdensome given that responding to it would require Defendant to

15    review, one by one, each of the estimated 1,250,000 electronically stored debt collection accounts

16    which have been referred to Defendant since June 17, 2012 – a herculean task that would likely take

17    hundreds, if not thousands, of hours to complete, and would impose annihilating costs upon Defendant.

18        Under Federal Rule of Civil Procedure 26(b)(1), discoverable information must be

19    "proportional to the needs of the case, considering the importance of the issues at stake in the action,

20    the amount in controversy, the parties' relative access to relevant information, the parties' resources,

21    the importance of the discovery in resolving the issues, and whether the burden or expense of the

22    proposed discovery outweighs its likely benefit."  Furthermore, under Federal Rule of Civil Procedure

23    26(b)(2)(B), "[a] party need not provide discovery of electronically stored information from sources

24    that the party identifies as not reasonably accessible because of undue burden or cost."  *See also*

25    Advisory Committee Notes regarding 2006 Amendment to F.R.C.P. 26(b)(2) ("The amendment to

26    Rule 26(b)(2) is designed to address issues raised by difficulties in locating, retrieving, and providing

27    discovery of some electronically stored information. Electronic storage systems often make it easier to

28    locate and retrieve information. These advantages are properly taken into account in determining the

reasonable scope of discovery in a particular case. But some sources of electronically stored information can be accessed only with substantial burden and cost. In a particular case, these burdens and costs may make the information on such sources not reasonably accessible.")

As previously explained to Plaintiff's counsel, Defendant does _not_ keep its collection notes, which constitute electronically stored information, in any sort of readily-accessible format from which such records can be easily reviewed for purposes of determining the identity of individuals who may constitute "debtors" under the different statutory definitions and standards explained above.

In addition, this information appears to be directed towards class ascertainability and/or class damages, neither of which are imminently necessary at this time. *See Brooks v. Motsenbocker Advanced Developments, Inc.*, 2008 WL 2446205 (S.D. Cal. 2008) (requiring extensive production of information related to potential damages is inefficient use of the parties' resources where there has been no judicial determination regarding liability and motion for summary judgment is pending). Here, the court has already certified Plaintiffs' classes, and Defendant's anticipated motion for summary judgment is expected to dispose of all of Plaintiffs' claims under the FDPCA, the Rosenthal Act, and the TCPA.

Furthermore, the term "debtor" has different meanings depending on the statutory scheme involved. Generally speaking, California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") defines the term "debtor" as "a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person." Cal. Civ. Code § 1788.2(h) (*but see* Cal. Civ. Code § 1788.18(i), which extends the definition of "debtor" from only natural persons to firms, associations, organizations, partnerships, business trusts, companies, corporations, and limited liability companies). The term "consumer debt" (or "consumer credit"), in turn, is defined as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id.* at § 1788.2(f). A "consumer credit transaction," in turn, is defined as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id.* at § 1788.2(e).

The Rosenthal Act, therefore, defines a "debtor" as any natural person from whom a debt

1  collector seeks to collect a "consumer debt" which is due and owing, or alleged to be due and owing,

2  arising out a "consumer credit transaction" in which property, services or money is ***acquired on credit***

3  primarily for personal, family, or household purposes. *Gouskos v. Aptos Village Garage, Inc.*, 94

4  Cal.App.4[th] 754, 759 (2001).

5      In contrast, the federal Fair Debt Collection Practices Act ("FDCPA") does <u>not</u> define the term

6  "debtor." 15 U.S.C. § 1692a ("Definitions"). Instead, the FDCPA uses the term "consumer," which is

7  defined as "any natural person obligated or allegedly obligated to pay any debt." *Id.* at § 1692a(3).

8  The term "debt," in turn, is defined as "any obligation or alleged obligation of a consumer to pay

9  money arising out of a transaction in which the money, property, insurance, or services which are the

10 subject of the transaction are primarily for personal, family, or household purposes, whether or not

11 such obligation has been reduced to judgment." *Id.* at § 1692a(5).

12     The FDCPA, unlike the Rosenthal Act, does <u>not</u> distinguish between debts arising out of

13 consumer ***credit*** transactions and those which do not. Nonetheless, not all obligations to pay are

14 considered "debts" subject to the FDCPA; rather, the FDCPA is triggered only when an obligation to

15 pay arises out of a "consumer transaction," which must involve "some kind of business dealing or

16 other ***consensual*** obligation." *Turner v. Cook,* 362 F.3d 1219, 1227-1228 (9th Cir. 2004) (*citing

17 Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1371 (11th Cir. 1998) (emphasis added)).

18     In sum, the term "debtors" as used here is vague and ambiguous and, as such, this interrogatory

19 cannot be responded to as phrased. Plaintiffs have asserted causes of action for violations of both the

20 FDCPA and the Rosenthal Act, and it is unclear exactly what information is sought by Plaintiff's

21 interrogatory. Moreover, Plaintiff's interrogatory calls for a legal conclusion and/or speculation to the

22 extent Defendant is expected to discern whether any individual is considered a "debtor" in light of the

23 different statutory definitions and standards explained above.

24     Moreover, this interrogatory calls for information which is protected by the common law and

25 constitutional privacy rights of third-party individuals who are not parties to this action and have not

26 been afforded any opportunity to object to Plaintiff's request. *See Valley Bank of Nevada v. Superior

27 Court*, 15 Cal.3d 652, 656 (1975) (*citing* Cal. Const., Art. 1, § 1). In 1975, the Supreme Court of

28 California recognized that this "inalienable right" of privacy extends "to the details of one's personal

- 4 -

1   life." *Valley Bank of Nevada,* 15 Cal.3d at 656.  The Court held that disclosure of an individual's

2   private information is subject to "a careful balancing of the right of civil litigants to discover relevant

3   facts, on the one hand, with the right of [individuals] to maintain reasonable privacy regarding their

4   [personal information], on the other." *Id.* at 657.

5       Federal courts recognize California's constitutional privacy protections.  *See Walt Disney Co.*

6   *v. DeFabiss*, 168 F.R.D. 281, 283 (C.D. Cal. 1996); *Upjohn Co. v. Hygieia Biological Labs.*, 151

7   F.R.D. 355, 358 (E.D. Cal. 1993); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *A.*

8   *Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 190-193 (C.D. Cal. 2006).  "When the

9   constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling

10  need for discovery, and that compelling need must be so strong as to outweigh the privacy right when

11  these two competing interests are carefully balanced.'"  *Artis v. Deere & Co., 276 F.R.D.* 348, 352

12  (N.D. Cal. 2011) (*quoting Wiegele v. Fedex Ground Package Sys.,* 2007 WL 628041, at *2 (S.D. Cal.

13  2007)).  "[A]ll lawful privacy intrusions must be narrowly drawn and reasonably related in scope to the

14  justification for their initiation." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

15      Finally, this interrogatory is overbroad to the extent that it seeks information related to

16  "debtors" dating back to June 17, 2012.  The FDCPA has a 1-year ***jurisdictional*** limitations period.  15

17  U.S.C. § 1692k(d).  The Rosenthal Act also has a 1-year statute of limitations.  Cal. Civ. Code §

18  1788.30(f).  The court granted class certification with respect to Plaintiffs' ***TCPA claims only***, and

19  Plaintiffs are pursuing their FDCPA and Rosenthal Act claims on an individual basis only.  (*See* Order

20  Granting Plaintiffs' Motion for Class Certification, p. 1, fn. 2; *see also* Plaintiffs' Supplemental

21  Statement Regarding Class Certification, p. 2.)

22  **INTERROGATORY NO. 10:**

23      IDENTIFY ALL telephone numbers within the CLASS PERIOD YOU obtained through skip

24  tracing.

25  **RESPONSE TO INTERROGATORY NO. 10:**

26      Objection:

27      This interrogatory is unduly burdensome given that responding to it would require Defendant to

28  review, one by one, each of the estimated 1,250,000 electronically stored debt collection accounts

- 5 -

1   which have been referred to Defendant since June 17, 2012 – a herculean task that would likely take
2   hundreds, if not thousands, of hours to complete, and would impose annihilating costs upon Defendant.

3   Under Federal Rule of Civil Procedure 26(b)(1), discoverable information must be
4   "proportional to the needs of the case, considering the importance of the issues at stake in the action,
5   the amount in controversy, the parties' relative access to relevant information, the parties' resources,
6   the importance of the discovery in resolving the issues, and whether the burden or expense of the
7   proposed discovery outweighs its likely benefit." Furthermore, under Federal Rule of Civil Procedure
8   26(b)(2)(B), "[a] party need not provide discovery of electronically stored information from sources
9   that the party identifies as not reasonably accessible because of undue burden or cost." *See also*
10  Advisory Committee Notes regarding 2006 Amendment to F.R.C.P. 26(b)(2) ("The amendment to
11  Rule 26(b)(2) is designed to address issues raised by difficulties in locating, retrieving, and providing
12  discovery of some electronically stored information. Electronic storage systems often make it easier to
13  locate and retrieve information. These advantages are properly taken into account in determining the
14  reasonable scope of discovery in a particular case. But some sources of electronically stored
15  information can be accessed only with substantial burden and cost. In a particular case, these burdens
16  and costs may make the information on such sources not reasonably accessible.")

17  As previously explained to Plaintiff's counsel, Defendant does *not* keep its collection notes,
18  which constitute electronically stored information, in any sort of readily-accessible format from which
19  such records can be easily reviewed for purposes of determining which telephone numbers, if any,
20  Defendant obtained through skip-tracing.

21  In addition, this information appears to be directed towards class ascertainability and/or class
22  damages, neither of which are imminently necessary at this time. *See Brooks v. Motsenbocker*
23  *Advanced Developments, Inc.*, 2008 WL 2446205 (S.D. Cal. 2008) (requiring extensive production of
24  information related to potential damages is inefficient use of the parties' resources where there has
25  been no judicial determination regarding liability and motion for summary judgment is pending).
26  Here, the court has already certified Plaintiffs' classes, and Defendant's anticipated motion for
27  summary judgment is expected to dispose of all of Plaintiffs' claims under the FDPCA, the Rosenthal
28  Act, and the TCPA.

1        Moreover, this interrogatory calls for information which is protected by the common law and

2   constitutional privacy rights of third-party individuals who are not parties to this action and have not

3   been afforded any opportunity to object to Plaintiff's request.  *See Valley Bank of Nevada v. Superior*

4   *Court*, 15 Cal.3d 652, 656 (1975) (*citing* Cal. Const., Art. 1, § 1).   In 1975, the Supreme Court of

5   California recognized that this "inalienable right" of privacy extends "to the details of one's personal

6   life."  *Valley Bank of Nevada,* 15 Cal.3d at 656.   The Court held that disclosure of an individual's

7   private information is subject to "a careful balancing of the right of civil litigants to discover relevant

8   facts, on the one hand, with the right of [individuals] to maintain reasonable privacy regarding their

9   [personal information], on the other."  *Id.*at 657.

10        Federal courts recognize California's constitutional privacy protections.  *See Walt Disney Co.*

11   *v. DeFabiss*, 168 F.R.D. 281, 283 (C.D. Cal. 1996); *Upjohn Co. v. Hygieia Biological Labs*., 151

12   F.R.D. 355, 358 (E.D. Cal. 1993); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *A.*

13   *Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 190-193 (C.D. Cal. 2006).    "When the

14   constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling

15   need for discovery, and that compelling need must be so strong as to outweigh the privacy right when

16   these two competing interests are carefully balanced.'"  *Artis v. Deere & Co.,* 276 F.R.D. 348, 352

17   (N.D. Cal. 2011) (*quoting Wiegele v. Fedex Ground Package Sys.,* 2007 WL 628041, at *2 (S.D. Cal.

18   2007)).  "[A]ll lawful privacy intrusions must be narrowly drawn and reasonably related in scope to the

19   justification for their initiation."  *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

20   Dated: September 27, 2017

                    ELLIS LAW GROUP LLP

22                       By _____

23                          Anthony P. J. Valenti
                       Attorney for Defendant
                       RASH CURTIS & ASSOCIATES

## CERTIFICATE OF SERVICE

I, Jennifer Mueller, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause.   My business address is 1425 River Park Drive, Suite 400, Sacramento, CA 95815.

On September 27, 2017, I served the following document(s) on the parties in the within action:

**DEFENDANT'S RESPONSES TO PLAINTIFFS' THIRD SET OF INTERROGATORIES
[F.R.C.P. 33]**

| | |
|---|---|
| X | **BY MAIL**: I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |

| | |
|---|---|
| L. Timothy Fisher<br>Yeremey Krivoshey<br>Bursor & Fisher, P.A.<br>1990 N. California Boulevard<br>Suite 940<br>Walnut Creek, CA 94596 | Attorneys for Plaintiffs<br>Sandra McMillion, Jessica Adekoya and Ignacio Perez |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on September 27, 2017.

By:  _____
Jennifer Mueller

DEFENDANT'S RESPONSES TO PLAINTIFFS' THIRD SET OF INTERROGATORIES [F.R.C.P. 33]