**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            ykrivoshey@bursor.com
            breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail:  scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MCMILLION, JESSICA ADEKOYA, and IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>                              Defendant. | Case No. 4:16-cv-03396-YGR<br><br>**DECLARATION OF YEREMEY KRIVOSHEY IN SUPPORT OF PLAINTIFF'S MOTIONS *IN LIMINE***<br><br>Date: April 12, 2019<br>Time:<br>Courtroom: 1<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

I, Yeremey Krivoshey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Defendant Rash Curtis & Associates' (Non-Retained) Expert Witness Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)(C) and Defendant's Written Summary of the Opinions of Non-Retained, Percipient Witness[es].

3.      Trial Exhibit 504 (bates stamped RCA 272-278) was produced on October 23, 2017, two days before the October 25, 2017 fact discovery deadline, and three days after the deposition of Defendant's Rule 30(b)(6) witness.  Notably, Trial Exhibit 504 was contained in the same late production as the stricken Trial Exhibit 508.  Plaintiff would suffer the same prejudice from allowing Trial Exhibit 504 to come in at this stage as Trial Exhibit 508, as Plaintiff did not have the chance to depose Defendant's Rule 30(b)(6) witness as to the contents thereof.  For clarity, only bates numbers RCA-272 and RCA 274-278 of Trial Exhibit 504 were produced formally for the first time on October 23, 2017 (after the 30(b)(6) deposition).  RCA-273, although not bates stamped at the time, was attached as Exhibit 6 to the 8/24/17 Declaration of Robert Keith in Support of Defendant Rash Curtis & Associates' Supplemental Opposition to Plaintiff's Motion for Class Certification

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Trial Exhibit 505 (bates stamped RCA 012718-012724).  Trial Exhibit 505 contains heavy redactions, and the document was never listed on any of Defendant's privilege logs.  Defendant never produced Trial Exhibit 505 in its redacted form until January 22, 2019, after the January 11, 2019 deadline to exchange exhibits had passed.

5.      On January 10, 2019, Plaintiff McMillion, Plaintiff Adekoya, and Defendant settled all the claims at issue in this case with respect to McMillion and Adekoya.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.      Trial Exhibit 580 is a copy of excerpts from the June 20, 2017 Deposition of Steven Kizer in *Rash Curtis & Associates, Inc. v. Kizer*, Case No. FCS048565, pending in the Superior Court of the State of California, County of Solano.  This deposition was taken two months after the April 13, 2017 deposition of Steven Kizer in the present case, *which Defendant failed to attend*. Plaintiff was not provided any notice of the state court deposition.

7.      Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiff's January 17, 2019 email to Defendant's counsel requesting that Defendant provide its "deposition transcript designations as soon as possible."  Plaintiff stated that "[w]e need those to be able to exchange motions in limine and believe they should have been exchanged with the exhibits list."

8.      Attached hereto as **Exhibit 4** is a true and correct copy of Colin Weir's November 12, 2018 Expert Report.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed in Walnut Creek, California this 15th day of February, 2019.

*/s/ Yeremey Krivoshey*

Yeremey Krivoshey

**EXHIBIT 1**

Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>    Defendant. | Case No.:  4:16-cv-03396-YGR JSC<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' (NON-RETAINED) EXPERT WITNESS DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(a)(2)(C)** |

Pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, and paragraph 10 of the Court's Standing Order in Civil Cases, Defendant Rash Curtis & Associates hereby discloses the following persons as percipient witnesses who may testify at trial with technical expertise akin to an expert:

**1.    Robert Keith:** Mr. Keith is one of Rash Curtis' Executive Vice Presidents, and, as such, he may provide non-retained (percipient witness) expert testimony regarding the setup and configuration of the collection software, platforms, and dialing systems historically used by Rash Curtis (including, but not limited to: (1) Beyond ARM, (2) the so-called "VIC dialer," (3) Global Connect's dialing equipment and software, and (4) TCN's dialing equipment and software), as well as the custom programming, configurations, and data storage implemented by Rash Curtis' collection software vendor, DAKCS.  Mr. Keith may also provide testimony regarding whether the VIC, Global Connect, and/or

- 1 -

TCN telephone dialing equipment contained a number generator; that is, a device that can actually and independently create, either randomly or sequentially, telephone numbers which do not otherwise exist in the system. Mr. Keith may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment possesses the "present capacity" to generate (again, either randomly or sequentially) such telephone numbers and to dial those telephone numbers. Mr. Keith may also testify as to whether Rash Curtis used or utilized an artificial or prerecorded voice in connection with the subject telephone calls at issue. Finally, Mr. Keith may also provide testimony regarding Rash Curtis policies and procedures regarding skip-tracing of telephone numbers and other data enrichment techniques, as well as his review of Rash Curtis' collection notes and other business records to determine whether a specific telephone number was obtained by skip-tracing and/or from Rash Curtis' client (the debtor's creditor) with prior express consent (and any purported revocation of consent). A written summary of Mr. Keith's opinions, as well as the documents he reviewed in connection with the formation of those opinions, is attached hereto as **Exhibit A**.

      **2.**    **Chris Paff:** Mr. Paff is one of Rash Curtis' Executive Vice Presidents, and, as such, he may provide non-retained (percipient witness) expert testimony regarding the setup and configuration of the collection software, platforms, and dialing systems historically used by Rash Curtis (including, but not limited to: (1) Beyond ARM, (2) the so-called "VIC dialer," (3) Global Connect's dialing equipment and software, and (4) TCN's dialing equipment and software), as well as the custom programming, configurations, and data storage implemented by Rash Curtis' collection software vendor, DAKCS. Mr. Paff may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment contained a number generator; that is, a device that can actually and independently create, either randomly or sequentially, telephone numbers which do not otherwise exist in the system. Mr. Paff may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment possesses the "present capacity" to generate (again, either randomly or sequentially) such telephone numbers and to dial those telephone numbers. Mr. Paff may also testify as to whether Rash Curtis used or utilized an artificial or prerecorded voice in connection with the subject telephone calls at issue. Finally, Mr. Paff may also provide testimony regarding Rash Curtis policies and

procedures regarding skip-tracing of telephone numbers and other data enrichment techniques, as well as his review of Rash Curtis' collection notes and other business records to determine whether a specific telephone number was obtained by skip-tracing and/or from Rash Curtis' client (the debtor's creditor) with prior express consent (and any purported revocation of consent). A written summary of Mr. Paff's opinions, as well as the documents he reviewed in connection with the formation of those opinions, is attached hereto as **Exhibit B**.

3.      **Dan Correa:** Mr. Correa is Rash Curtis' Senior Director of Operations, and, as such, he may provide non-retained (percipient witness) expert testimony regarding the setup and configuration of the collection software, platforms, and dialing systems historically used by Rash Curtis (including, but not limited to: (1) Beyond ARM, (2) the so-called "VIC dialer," (3) Global Connect's dialing equipment and software, and (4) TCN's dialing equipment and software), as well as the custom programming, configurations, and data storage implemented by Rash Curtis' collection software vendor, DAKCS. Mr. Correa may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment contained a number generator; that is, a device that can actually and independently create, either randomly or sequentially, telephone numbers which do not otherwise exist in the system. Mr. Correa may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment possesses the "present capacity" to generate (again, either randomly or sequentially) such telephone numbers and to dial those telephone numbers. Mr. Correa may also testify as to whether Rash Curtis used or utilized an artificial or prerecorded voice in connection with the subject telephone calls at issue. Finally, Mr. Correa may also provide testimony regarding Rash Curtis policies and procedures regarding skip-tracing of telephone numbers and other data enrichment techniques, as well as his review of Rash Curtis' collection notes and other business records to determine whether a specific telephone number was obtained by skip-tracing and/or from Rash Curtis' client (the debtor's creditor) with prior express consent (and any purported revocation of consent). A written summary of Mr. Correa's opinions, as well as the documents he reviewed in connection with the formation of those opinions, is attached hereto as **Exhibit C**.

DEFENDANT RASH CURTIS & ASSOCIATES' (NON-RETAINED) EXPERT WITNESS DISCLOSURE

**4.**      __Nick Keith:__ Mr. Keith is Rash Curtis' Information Technology Manager, and, as such, he may provide non-retained (percipient witness) expert testimony regarding the setup and configuration of the collection software, platforms, and dialing systems historically used by Rash Curtis (including, but not limited to: (1) Beyond ARM, (2) the so-called "VIC dialer," (3) Global Connect's dialing equipment and software, and (4) TCN's dialing equipment and software), as well as the custom programming, configurations, and data storage implemented by Rash Curtis' collection software vendor, DAKCS.  Mr. Keith may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment contained a number generator; that is, a device that can actually and independently create, either randomly or sequentially, telephone numbers which do not otherwise exist in the system.  Mr. Keith may also provide testimony regarding whether the VIC, Global Connect, and/or TCN telephone dialing equipment possesses the "present capacity" to generate (again, either randomly or sequentially) such telephone numbers and to dial those telephone numbers.  Mr. Keith may also testify as to whether Rash Curtis used or utilized an artificial or prerecorded voice in connection with the subject telephone calls at issue.  Finally, Mr. Keith may also provide testimony regarding Rash Curtis policies and procedures regarding skip-tracing of telephone numbers and other data enrichment techniques, as well his review of Rash Curtis' collection notes and other business records to determine whether a specific telephone number was obtained by skip-tracing and/or from Rash Curtis' client (the debtor's creditor) with prior express consent (and any purported revocation of consent).  A written summary of Mr. Keith's opinions, as well as the documents he reviewed in connection with the formation of those opinions, is attached hereto as **Exhibit D**.

Dated: November 12, 2018

ELLIS LAW GROUP LLP

By _____

Mark E. Ellis
Attorney for Defendant
RASH CURTIS & ASSOCIATES

- 4 -

# EXHIBIT A

Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>Defendant. | Case No.:  4:16-cv-03396-YGR JSC<br><br>**WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS ROBERT KEITH PURSUANT TO FED. R. CIV. P. 26(a)(2)(C)** |

1.      Robert Keith is expected to testify that he is an Executive Vice President at Rash Curtis & Associates.  He is expected to testify that he has been in the collection business for over 20 years and has been employed at Rash Curtis for over 10 years in several capacities, including Collection Manager, and, for the last several years, as Executive Vice President.  He is expected to testify that he is familiar with the collection policies and procedures used by Rash Curtis during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra McMillion, Jessica Adekoya and Ignacio Perez.  He is expected to testify that he personally reviewed Rash Curtis' collection notes/business records reflecting Rash Curtis' collection activities and communications as to each Plaintiff.  He is expected to testify that he also reviewed the materials provided to Rash Curtis by its creditor-clients at the times the relevant accounts here were assigned to Rash Curtis for collection He is expected to testify that he also spoke with various managers at Rash Curtis, including Nick Keith and

- 1 -

Dan Correa, from Rash Curtis' Internet Technology and Collection Departments, respectively, to assist him in his review and understanding of the business records and collection policies and procedures. He is expected to testify that he personally reviewed other records and information stored in Rash Curtis' electronic collection files as to each named Plaintiff, and that all of these file materials are kept by Rash Curtis in its ordinary course of its business.

2.      Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis' collection notes reflecting its collection attempts as to Sandra McMillion. These collection notes are business records created and stored in Rash Curtis' collection software as part its regular course of business. Each of the entries or notations was created contemporaneously, by Rash Curtis' collection software or by its collectors, with the events noted. These collection notes/business records reflect the phone calls placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software typically generates a record of when a call is placed by Rash Curtis. Rash Curtis' collectors are both trained and required by company policy to invariably and accurately document their collection efforts, including the substance of their conversations with debtors. Mr. Keith's review of Rash Curtis' records show it did not obtain Ms. McMillion's cell phone number ending in 0589 by skip-tracing. Rather the cell phone was obtained by Rash Curtis from its creditor-client, Marin General Hospital, at the times it referred Ms. McMillion's various accounts to Rash Curtis for collection.

3.      Mr. Keith is expected to testify that he personally reviewed copies of Ms. McMillion's medical records which Marin General Hospital ("MGH") provided to Rash Curtis when it assigned Sandra McMillion's debts for collection. These records document that Ms. McMillion voluntarily provided her cell phone number ending in 0589 to MGH related to medical services on at least five separate occasions, including on June 28, 2015, July 1, 2015, July 30, 2015, September 2, 2015 and October 1, 2015. Mr. Keith's review of Rash Curtis' records confirms Rash Curtis did not obtain her cell phone number ending in 0589 by skip-tracing; rather her phone number was supplied by MGH at the time of the assignments.

4.      Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis' collection notes reflecting its collection communications to Jessica Adekoya related to collection

1   attempts for the debt she incurred on behalf of her minor son, Adeleke.  As stated above, these business

2   records were generated and saved stored in the ordinary course of business and were made

3   contemporaneously with the events reflected therein.

4        5.      Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis'

5   collection notes for Geraldine Caldwell, the mother of Ms. Adekoya.  These collection notes/business

6   records are kept in the ordinary course of business and reflect the phone calls placed by Rash Curtis,

7   whether the phone call was manually or automatically dialed, whether it was successful in connecting

8   with the phone number called, and the outcome of the call.  Rash Curtis' collection software

9   automatically records when a call is placed by Rash Curtis' or received.  Rash Curtis' collectors are both

10  trained and required by company policy to invariably document all of their collection communications

11  accurately, including the substance of their conversations with debtors.

12       6.      Mr. Keith is expected to testify that he personally reviewed copies of Adeleke Adekoya's

13  medical records from Doctors Medical Center ("DMC").  Adeleke is Ms. Adekoya's son.  These records

14  were provided to Rash Curtis by DMC when it assigned her account to Rash Curtis for collection and

15  are kept in the ordinary course of business.  These records indicate that Ms. Adekoya, provided her phone

16  number ending in 5496, without restriction, to DMC in connection with her son's treatment.  DMC, in

17  turn, provided that phone number to Rash Curtis at the time of its referral of Ms. Adekoya's debt for

18  collection.  Mr. Keith's review of the records confirms Rash Curtis did not obtain Adekoya's phone

19  number ending in 5496 by skip tracing.

20       7.      Mr. Keith is expected to testify that he personally reviewed copies of Jessica Adekoya's

21  medical records from DMC.  These records were provided to Rash Curtis by DMC, are kept in the

22  ordinary course of business by Rash Curtis, and indicate that Ms. Adekoya, provided her phone number

23  ending in 5496, without restriction, to DMC in connection with her own treatment.  DMC, in turn,

24  provided that phone number to Rash Curtis.

25       8.      Mr. Keith is expected to testify that he personally reviewed copies of Geraldine

26  Caldwell's medical records from DMC.  These records were provided to Rash Curtis by DMC, have

27  been kept in the ordinary course of business by Rash Curtis, and they indicate that Ms. Caldwell's

28  daughter, Jessica Adekoya, is listed as a contact.

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS ROBERT KEITH

9.      Mr. Keith is expected to testify that he personally reviewed a copy of a screenshot of a so-called "ECA Advanced Trace Report" which Rash Curtis obtained on Ms. Adekoya.  Rash Curtis uses "ECA Advanced Trace Reports," which it obtains from Experian, to "fill in the blanks" as to demographic information it may be missing as to particular debtors.  The screenshot does not show or reflect a cell phone number ending in 5496.  This means Rash Curtis did not obtain the cell phone number ending in 5496 by ECA skip-tracing.  If the number had been ECA skip-traced, it would be listed on this report.

10.     Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis' collection notes as to debtor Daniel Reynoso.  These collection notes are created and stored by Rash Curtis' collection software as part of its regular business practices, and each of the entries therein is created contemporaneously, as discussed above, at the time of the events noted, and the system is designed for accuracy, and the collectors are also so trained.

11.     Mr. Keith is expected to testify that he personally reviewed copies of Daniel Reynoso's medical records from Sutter General Hospital.  These records were provided to Rash Curtis by Sutter General Hospital when it assigned Mr. Reynoso's account to Rash Curtis for collection, and have been kept in the ordinary course of business by Rash Curtis.  The records show that Mr. Reynoso provided his phone number ending in 5193, with no restrictions, to Sutter General Hospital in connection with his treatment.  Sutter General Hospital, in turn, provided that phone number to Rash Curtis in connection with its referral to Rash Curtis of Daniel Reynoso's debt for collection.  Mr. Keith's review of the records confirm Rash Curtis did not skip-trace Reynoso's phone number to obtain the number ending in 5193.

12.     Mr. Keith is expected to testify that he personally reviewed a copy of a screenshot of an "ECA Advanced Trace Report" which Rash Curtis obtained from Experian on Mr. Reynoso.  It does not show a phone number ending in 5193.  These records are generated and kept in the ordinary course of business.  The absence of the phone number ending in 5193 on this report means Rash Curtis did not obtain the phone number it called ending in 5193 by ECA skip-tracing.

13.     Mr. Keith is expected to testify that he personally reviewed a copy of a screenshot of a so-called "Edit Tracking Report" for Daniel Reynoso's account.  This record is generated and kept by Rash Curtis in the ordinary course of its business. This edit tracking report details that on June 7, 2016,

- 4 -

at 3:27 p.m., the phone number ending in 5193 was removed from Rash Curtis' database.  If one of Rash Curtis' collection employees had manually added the phone number ending in 5193 to Reynoso's account, it would be shown on this report as a "new value;" however, it does not.  This also confirms the phone number ending in 5193 was provided to Rash Curtis by Sutter General Hospital when it electronically assigned Reynoso's debt to Rash Curtis for collection and not added by skip-tracing (via ECA or otherwise).  This document establishes that Rash Curtis did not skip-trace (via ECA or otherwise) the phone number ending in 5193; rather, it was provided to Rash Curtis by its creditor-client, Sutter General Hospital, when Rash Curtis received the debt referral.

14. Mr. Keith is expected to testify that he personally reviewed a copy of a letter received by Rash Curtis & Associates, and it purports to serve as a "cease and desist" request made by Plaintiffs' counsel on behalf of Ms. McMillion.  The letter is dated March 4, 2016 and was provided by Plaintiffs' counsel to Rash Curtis and is kept in the ordinary course of business.  Mr. Keith's review of Rash Curtis' collection notes confirms this is the first written "cease and desist" request which Rash Curtis received from Ms. McMillion.  The letter indicates it was received by Rash Curtis on March 9, 2016.

15. Mr. Keith is expected to testify that his review of Rash Curtis' collection notes and business records demonstrates that Ms. McMillion was treated on various dates by various health care providers for which she was charged.  Ms. McMillion did not fully pay for treatment, and her *multiple collection accounts* were sent to Rash Curtis for collection by Marin General Hospital.

16. Mr. Keith is expected to testify that Rash Curtis' collection notes indicate it really only spoke with Ms. McMillion on two occasions.  Mr. Keith is expected to testify that Ms. McMillion testimony, that she spoke with Rash Curtis' collectors numerous times in 2016, is categorically untrue. Rash Curtis' records demonstrate it only spoke with her on February 2, 2016 and on February 17, 2016.

17. Mr. Keith is expected to testify that Rash Curtis was provided Ms. McMillion's cell phone number ending in 0589 on December 17, 2015, when its client (and Ms. McMillion's creditor), Marin General Hospital, referred two Accounts (Nos. 2578480 and 2578480) to Rash Curtis for collection. Rash Curtis began calling Ms. McMillion's cell phone number ending in 0589 on December 23, 2015. Rash Curtis called Ms. McMillion again on December 24, 2015; it spoke to an unidentified woman who stated she was a "representative" of Ms. McMillion and wanted to know about the nature of the call.  Mr.

Keith is expected to testify that the Rash Curtis collector properly terminated the call without providing any information because the call recipient could not be positively identified as the debtor herself.

18.     Mr. Keith is expected to testify that, despite calling the 0589 number between December 24, 2015 and February 2, 2016 (a period of 40 days), Rash Curtis was never able to have a "live conversation" with Ms. McMillion.  Mr. Keith is expected to testify that Rash Curtis' attempts to call Ms. McMillion were not intended to harass her, but only to talk to her.

19.     Mr. Keith is expected to testify that, at 4:00 p.m. on February 2, 2016, Rash Curtis left a voice message on Ms. McMillion's cell phone number ending in 0589.  Thirty minutes later, Ms. McMillion called into Rash Curtis and orally requested that Rash Curtis stop calling her.  Rash Curtis honored Ms. McMillion's oral cease-and-desist request and made no further calls to her *on that account* between February 2, 2016 and February 15, 2016.

20.     Mr. Keith is expected to testify that, on February 15, 2016, MGH referred to Rash Curtis a new McMillion medical account (No. 2603552) for collection for medical services rendered to Ms. McMillion on September 2, 2015.  That account also showed Ms. McMillion's cell phone number ending in 0589 had been provided to MGH on the September 2, 2015 date of service.

21.     Mr. Keith is expected to testify that, the next day, February 16, 2016, Rash Curtis called Ms. McMillion's cell phone number at 8:09 a.m. *on this new and different collection account*, but was unable to reach her.  Rash Curtis called her again on Account No. 2603552 on the following day, February 17, 2016.  This time, Rash Curtis was able to reach Ms. McMillion.  She cut off our collector while receiving the "mini-Miranda" admonition by making an oral cease-and-desist request.  Rash Curtis terminated the call, and placed no further calls to her *on this account* (No. 2603552).  Mr. Keith is expected to testify that he reviewed Rash Curtis' collection notes as to Ms. McMillion, and all of the phone calls were made between 8:00 a.m. and 9:00 p.m. Virtually all of Rash Curtis' attempts to talk with her were unsuccessful.

22.     Mr. Keith is expected to testify that, as shown by Rash Curtis' records, on January 5, 2015, Ms. Adekoya took her minor son, Adeleke Adekoya, to Doctors Medical Center ("DMC") in San Pablo, California. As shown in Rash Curtis' records, Ms. Adekoya provided her cell phone number ending in 5496 to DMC, and listed herself as her son's contact, during this visit. Ms. Adekoya ultimately

- 6 -

became indebted in connection with the medical services DMC rendered to her son. This debt (No. 2446237) for Adekoya's son's treatment, was referred to Rash Curtis for collection on May 14, 2015. The records also show Ms. Adekoya personally sought treatment at DMC in 2015, and she *voluntarily* provided her cell phone number ending in 5496.   Rash Curtis was provided with the cell phone number she had provided to DMC when DMC referred her son's debt (No. 2446237) for collection on May 14, 2015.   From May 15, 2015, to March 10, 2016, the collection notes indicate that despite numerous attempts to reach her, it was unsuccessful in reaching Ms. Adekoya by phone. Rash Curtis' repeated attempts to reach her were not for purposes of harassment, but to talk to her.   On March 10, 2016, Ms. Adekoya finally answered her cell phone; she told the Rash Curtis representative that she was in a "hurry" because she was at work, and she asked the representative to email her at an email address she provided. Between March 14 and March 16, 2016, Rash Curtis placed three more calls to Ms. Adekoya's cell phone, but, again, was unable to reach her. Rash Curtis' notes reflect its collectors made attempts to talk to Ms. Adekoya's mother, Geraldine Denise Caldwell, about her own debt at the same phone number ending in 5496.

23.     Mr. Keith is expected to testify that, on March 16, 2016, Rash Curtis' collection notes indicate it called Ms. Adekoya at her work number ending in 9400. Ms. Adekoya orally told Rash Curtis not to call her work number ending in 9400; she did not tell Rash Curtis to cease calling the 5496 number. Rash Curtis' notes demonstrate Rash Curtis honored Ms. Adekoya's request, removed her work number ending in 9400, and placed no further calls to that number. On April 18, 2016, at 6:40 p.m., the collection notes indicate Rash Curtis received a cease and desist as to the number ending in 5496 from Ms. Adekoya, and the notes establish Rash Curtis never called that number again. Mr. Keith's review of the collection notes confirms all of the calls were made between 8:00 a.m. and 9:00 p.m.

24.     Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis' collection notes which reflect the referral of a new collection account from Marin General Hospital to Rash Curtis (Account 2763532) on December 13, 2016.  This account was for a debt owed by Ms. McMillion to Marin General Hospital in connection with Ms. McMillion's June 27, 2016 date of service. Mr. Keith's review of Rash Curtis' other supplemental collection notes and business records indicate that, in addition to Account 276353, Marin General Hospital referred Rash Curtis an additional six

- 7 -

1  accounts owed by Ms. McMillion since this lawsuit was filed.  Mr. Keith's review of the TCN call logs

2  produced by Rash Curtis indicate that the January 25, 2017 calls to Ms. McMillion were made in

3  reference to Account 2763532, and not in reference to any of her prior accounts on which she purportedly

4  revoked her prior express consent.

5       25.     Mr. Keith is expected to testify that he personally reviewed copies of Ms. McMillion's

6  medical records from Marin General Hospital provided by Marin General Hospital to Rash Curtis when

7  it sent these new collection accounts.  The records indicate that Ms. McMillion was admitted to Marin

8  General Hospital on June 27, 2016, and she provided her cell phone number ending in 0589 on that visit.

9  The records further indicate that Ms. McMillion signed Marin General Hospital's Conditions of

10  Admission form on June 27, 2016, agreeing to "promptly pay all hospital bills…"  Finally, the records

11  indicate that, Ms. McMillion continued to provide her cell phone number ending in 0589 to Marin

12  General Hospital even after this lawsuit was filed, such as on June 27, 2016, and again on November 15,

13  2016.

14       26.     Mr. Keith is expected to testify that he personally reviewed copies of Rash Curtis'

15  collection notes for Ms. Caldwell's debt (Account 1993006).  These collection notes indicate that Rash

16  Curtis made calls to the cell phone number ending in 5496 in connection with Ms. Adekoya's mother's

17  (Ms. Caldwell's) account between January 8, 2014 and January 11, 2014.  Mr. Keith's review of the call

18  logs produced by Rash Curtis indicate that the January 8, 2014 call was placed before Rash Curtis

19  requested a skip-tracing report on Ms. Caldwell.  Rash Curtis, therefore, must have necessarily received

20  the 5496 number when Doctors Medical Center referred the Account 1993006 to Rash Curtis on January

21  8, 2014.  Mr. Keith's review of the Global Connect call logs confirms that the January 2014 phone calls

22  were made in reference to Account 1993006, and not in reference to Ms. Adekoya's debt (Account

23  2446237).  Likewise, the phone calls placed on April 27, 2016 and April 28, 2016 were also made in

24  reference to Account 1993006, not Account 2446237.

25       27.     Mr. Keith is expected to testify that, during the relevant time periods of the class,

26  including during the collection communications made by Rash Curtis to Plaintiffs, Rash Curtis employed

27  three different telephone dialing systems: (1) VIC; (2) Global Connect; and (3) TCN.  None of these

28  three telephone dialing systems has the present capacity to generate telephone numbers, using either a

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS ROBERT KEITH

1  random or sequential number generator, and then dial those telephone numbers.  Rather, these platforms

2  only dial phone numbers from a pre-generated list compiled by an individual.

3        28.    Mr. Keith is expected to testify that the collection notes as to each Plaintiff reflect

4  collection calls that were made manually or by the three telephone dialing systems Rash Curtis used

5  from 2012 to the present ("VIC," "Global Connect," and "TCN").  The collection notes further reflect

6  almost all of the attempted phone calls were dropped with no connection to the recipient's cell phone or

7  voicemail, some phone calls "skipped" which means they did not connect (not that they were skip-

8  traced), some phone calls were never answered, and some phone calls connected but no prerecorded or

9  artificial message was left.  Mr. Keith's review of the records confirms these (no contact/no connection)

10  scenarios reflect the overwhelming majority of the attempted calls.  Mr. Keith's review of Rash Curtis'

11  collection notes indicate Rash Curtis talked with Mr. Perez on only one occasion, and when he told Rash

12  Curtis to cease calling, it honored that request.  Likewise, Mr. Keith's review of the collection notes as

13  to Ms. McMillion and Ms. Adekoya reflect that Rash Curtis talked with each of the women on a couple

14  of occasions, and whenever they asked Rash Curtis to stop calling (on a particular account) Rash Curtis

15  in fact stopped calling on that account.

16        29.    Mr. Keith is expected to testify that Rash Curtis' collection notes, which he has personally

17  reviewed, for the February 16, 2016 call to Ms. McMillion provide: "GC021616:09:25 4156320589-

18  PHONE ANSWERD [SIC] NO LINKBACK."  The first two letters, "GC," mean the call was placed

19  using Global Connect.  The next ten digits, "021616:09:25," mean the call was placed on February 16,

20  2016 at 09:25 hours, or 9:25 a.m.  The next ten digits, "4156320589," mean the call was placed to phone

21  number (415) 632-0589.  The phrase "Phone Answered No Linkback" means that either Ms. McMillion

22  or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the

23  other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on

24  her voicemail.

25        30.    Mr. Keith is expected to testify that Rash Curtis' collection notes, which he has personally

26  reviewed, for the February 17, 2016 call to Ms. McMillion read: "GC021716:16:13 4156320589-

27  PHONE ANSWERD [SIC] NO LINKBACK."  The first two letters, "GC," mean the call was placed

28  using Global Connect.  The next ten digits, "021716:16:13," mean the call was placed on February 16,

2016 at 16:13 hours, or 4:13 p.m. The next ten digits, "4156320589," mean the call was placed to phone number (415) 632-0589. The phrase "Phone Answered No Linkback" means that either Ms. McMillion or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on her voicemail.

31.     Mr. Keith is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, do not show calls made to Ms. McMillion on February 25, 2017. However, Rash Curtis' TCN call logs (produced on November 3, 2017) show that a call was made on February 25, 2017 at approximately 11:42 a.m. The call result was a "machine hang-up." This means that the TCN dialer detected that Ms. McMillion's voicemail answered the call, and it terminated the call without leaving a prerecorded artificial or message on her voicemail.

32.     Mr. Keith is expected to testify that Rash Curtis' TCN call logs, which he has personally reviewed, show that the second February 25, 2017 call was made at approximately 12:49 p.m. The call result was a "machine hang-up." This means that the TCN dialer detected that Ms. McMillion's voicemail answered the call, and it terminated the call without leaving a pre-recorded or artificial message on her voicemail.

33.     Mr. Keith is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the April 27, 2016 call to Ms. Adekoya show: "GC042716:16:32 5106925496-PHONE ANSWER [SIC] NO LINKBACK." The first two letters, "GC," mean the call was placed by Global Connect. The next ten digits, "042716:16:32," mean the call was placed on April 27, 2016 at 16:32 hours, or 4:32 p.m. The next ten digits, "5106925496," mean the call was placed to phone number (510) 692-5496. The phrase "Phone Answered No Linkback" means that either Ms. Adekoya or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on her voicemail.

34.     Mr. Keith is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the April 28, 2016 call to Ms. Adekoya indicate: "GC042816:18:18 5106925496-PHONE ANSWER NO LINKBACK." The first two letters, "GC," mean the call was placed using Global

- 10 -

Connect.  The next ten digits, "042816:18:18," mean the call was placed on April 28, 2016 at 18:18 hours, or 6:18 p.m.  The next ten digits, "5106925496," mean the call was placed to phone number (510) 692-5496.  The phrase "Phone Answered No Linkback" means that either Ms. Adekoya or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a pre-recorded or artificial voice message on her voicemail.

35.     Mr. Keith is expected to testify that Rash Curtis' collection notes,  which he has personally reviewed, for debtor Daniel Reynoso indicate that no prerecorded or artificial voice messages were ever left on Mr. Perez's cell phone number ending in 5193.  To the contrary, several entries list the call result: "NML – MACHINE."  "No Message Left" means the Global Connect dialer detected an answering machine or voicemail and terminated the call without leaving a prerecorded or artificial voice message on his voicemail. The other call results indicate several calls were "skipped" or not made, the number dialed was "busy," or "invalid," or the call was answered but there was no linkback, meaning the Global Connect dialer did not detect a live person on the other end, and therefore terminated the call without leaving any prerecorded or artificial voice message on Mr. Perez's voicemail.

36.     Mr. Keith is expected to testify that Rash Curtis received the cell phone number ending in 5193 on May 7, 2015, when Sutter General Hospital referred Daniel Reynoso's account to Rash Curtis for collection.  From May 7, 2015 until June 7, 2016, Rash Curtis believed the cell phone number ending in 5193 belonged to Mr. Reynoso, and Rash Curtis also believed it possessed Mr. Reynoso's prior express consent to call that number in connection with its attempts to collect the debt which Mr. Reynoso owed to Sutter General Hospital.  It was not until June 7, 2016, the date on which Rash Curtis was finally able to first reach someone at the cell phone number ending in 5193, that Rash Curtis actually learned that the 5193 number had been reassigned to Mr. Perez and no longer belonged to Mr. Reynoso.  During this call, Mr. Perez informed Rash Curtis that he did not know Mr. Reynoso.  In response, Rash Curtis removed the 5193 number from its collection software database and never called it again.  From May 7, 2015, until June 7, 2016, Rash Curtis was acting with a good faith belief that it possessed valid prior express consent to call the 5193 number in order to reach Mr. Reynoso.

37.     Mr. Keith is expected to testify that when one of Rash Curtis' managers wants to generate a list of phone numbers he or she wants Global Connect (or TCN) to call, he or she does so using Rash

- 11 -

1  Curtis' debt collection software.  First, the manager enters certain criteria (such as account age, balance

2  owed, etc.) which filters through all of our active collection accounts and narrows the universe of

3  accounts to some subset.  The debt collection software then exports certain information, usually

4  including the collection account numbers, the debtors' first and last name, and one or more phone

5  numbers for each account, into what is known as a "tab-delimited" file.  This file is then uploaded to the

6  Global Connect (or TCN) software system via Global Connect's (or TCN's) website.  Only then will

7  Global Connect (or TCN) begin placing telephone calls to the telephone numbers contained in the "tab-

8  delimited" file.  In other words, a significant and substantial amount of human intervention is required

9  in order for Rash Curtis' telephone dialing platforms to place any telephone calls.

10       38.      Mr. Keith is expected to testify that Rash Curtis' collection notes, which are stored in its

11  debt collection software, are not "searchable."  In order to ascertain whether we called a "wrong

12  number," we would need to examine every single line entry of every collection note for every account

13  referred to us during the last five years. Accordingly, it is essentially impossible to know whether a

14  particular number called is a "wrong number" and belongs to a third-party or other non-debtor, and

15  compiling a list of such numbers is simply not feasible given the limitations of Rash Curtis' debt

16  collection software.

17       39.      Mr. Keith is expected to testify that he is not personally aware of Rash Curtis ever loading

18  a phone number from phone fields 5 through 10 which Rash Curtis did not first obtain from one of its

19  creditor-clients into its dialers to be autodialed. The only human errors which resulted in the phone

20  numbers from the wrong phone fields being loaded into one of Rash Curtis' dialers in the past involved

21  an isolated incident and only involved phone numbers which Rash Curtis had first obtained prior express

22  consent to dial.

23       40.      Mr. Keith is expected to testify that it is Rash Curtis' policy, procedure, and practice to

24  only load phone numbers stored in fields 1 through 4 into its dialers (Global Connect, TCN, and VIC).

25  It is Rash Curtis' policy, procedure, and practice not to load phone numbers from fields 5 through 10

26  into Rash Curtis' dialers. If a phone number which appears in phone fields 5 through 10 was loaded into

27  Rash Curtis' dialers, it was because the phone number was separately stored in phone fields 1 through

28  4, and not because it was loaded from a field reserved for skip-traced phone numbers.

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS ROBERT KEITH

41.      Mr. Keith is expected to testify that sometimes Rash Curtis receives a phone number from one of its creditor-clients, stores the phone number in phone fields 1 through 4, and then subsequently obtains the same phone number from skip-tracing and stores it separately in phone fields 5 through 10. The same phone number then is simultaneously stored in phone fields 1-4 and 5-10. Under those circumstances, if that phone number is loaded into one of Rash Curtis' dialers, it is because it was separately stored in phone fields 1 through 4, and not because it was stored in or loaded from phone fields 5 through 10 or obtained through skip-tracing.  Cell phone numbers which Rash Curtis first discovers from skip-tracing, and which were not first provided to Rash Curtis by one of its creditor-clients or the debtor, are not loaded into Rash Curtis' dialers, and it is Rash Curtis' invariable policy not to do so.

42.      Mr. Keith is expected to testify that Rash Curtis did *not* skip-trace Plaintiff Ignacio Perez's cell phone number.  On May 7, 2015, Sutter General Hospital referred a debt, known as Account 2432181, to Rash Curtis for collection.  When Sutter General Hospital referred Account 2432181 for collection, it also sent Mr. Perez's cell phone number ending in 5193, which was contained on the patient information facesheet Sutter General Hospital provided.

43.      Mr. Keith is expected to testify that it is possible that a number placed in fields 5-10 may have been placed there by human error, not because it was skip-traced.  It is also possible that a telephone number may have been manually transferred from one account to another on which Rash Curtis was no longer actively collecting.

Dated: November 12, 2018

Mark E. Ellis

- 13 -

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS ROBERT KEITH

# EXHIBIT B

1 | Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
2 | Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
3 | 1425 River Park Drive, Suite 400
Sacramento, CA  95815
4 | Tel: (916) 283-8820
Fax: (916) 283-8821
5 | mellis@ellislawgrp.com
avalenti@ellislawgrp.com
6 | liglesias@ellislawgrp.com

7 | Attorneys for Defendant RASH CURTIS & ASSOCIATES

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SANDRA McMILLION, JESSICA ADEKOYA, | Case No.:  4:16-cv-03396-YGR JSC
AND IGNACIO PEREZ, on Behalf of
12 | Themselves and all Others Similarly Situated, | **WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS CHRIS PAFF PURSUANT TO FED. R. CIV. P. 26(a)(2)(C)**
13 | Plaintiffs,
14 | v.
15 | RASH CURTIS & ASSOCIATES,
16 | Defendant.

17

18 | 1. Chris Paff is expected to testify that he is an Executive Vice President at Rash Curtis &

19 | Associates.  He is expected to testify that he has been in the collection business for over 17 years and

20 | has been employed at Rash Curtis for practically his entire career in several capacities, including

21 | Collection Manager, and, for the last several years, as Executive Vice President.  He is expected to testify

22 | that he is familiar with the collection policies and procedures used by Rash Curtis during the relevant

23 | time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra

24 | McMillion, Jessica Adekoya and Ignacio Perez.  He is expected to testify that he personally reviewed

25 | Rash Curtis' collection notes/business records reflecting Rash Curtis' collection activities and

26 | communications as to each Plaintiff.  He is expected to testify that he also reviewed the materials

27 | provided to Rash Curtis by its creditor-clients at the times the relevant accounts here were assigned to

28 | Rash Curtis for collection He is expected to testify that he also spoke with various managers at Rash

- 1 -

Curtis, including Nick Paff and Dan Correa, from Rash Curtis' Internet Technology and Collection Departments, respectively, to assist him in his review and understanding of the business records and collection policies and procedures. He is expected to testify that he personally reviewed other records and information stored in Rash Curtis' electronic collection files as to each named Plaintiff, and that all of these file materials are kept by Rash Curtis in its ordinary course of its business.

2.      Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes reflecting its collection attempts as to Sandra McMillion. These collection notes are business records created and stored in Rash Curtis' collection software as part its regular course of business. Each of the entries or notations was created contemporaneously, by Rash Curtis' collection software or by its collectors, with the events noted. These collection notes/business records reflect the phone calls placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call. Rash Curtis' collection software typically generates a record of when a call is placed by Rash Curtis. Rash Curtis' collectors are both trained and required by company policy to invariably and accurately document their collection efforts, including the substance of their conversations with debtors. Mr. Paff's review of Rash Curtis' records show it did not obtain Ms. McMillion's cell phone number ending in 0589 by skip-tracing. Rather the cell phone was obtained by Rash Curtis from its creditor-client, Marin General Hospital, at the times it referred Ms. McMillion's various accounts to Rash Curtis for collection.

3.      Mr. Paff is expected to testify that he personally reviewed copies of Ms. McMillion's medical records which Marin General Hospital ("MGH") provided to Rash Curtis when it assigned Sandra McMillion's debts for collection. These records document that Ms. McMillion voluntarily provided her cell phone number ending in 0589 to MGH related to medical services on at least five separate occasions, including on June 28, 2015, July 1, 2015, July 30, 2015, September 2, 2015 and October 1, 2015. Mr. Paff's review of Rash Curtis' records confirms Rash Curtis did not obtain her cell phone number ending in 0589 by skip-tracing; rather her phone number was supplied by MGH at the time of the assignments.

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS CHRIS PAFF

4.      Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes reflecting its collection communications to Jessica Adekoya related to collection attempts for the debt she incurred on behalf of her minor son, Adeleke.  As stated above, these business records were generated and saved stored in the ordinary course of business and were made contemporaneously with the events reflected therein.

5.      Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes for Geraldine Caldwell, the mother of Ms. Adekoya.  These collection notes/business records are kept in the ordinary course of business and reflect the phone calls placed by Rash Curtis, whether the phone call was manually or automatically dialed, whether it was successful in connecting with the phone number called, and the outcome of the call.  Rash Curtis' collection software automatically records when a call is placed by Rash Curtis' or received.  Rash Curtis' collectors are both trained and required by company policy to invariably document all of their collection communications accurately, including the substance of their conversations with debtors.

6.      Mr. Paff is expected to testify that he personally reviewed copies of Adeleke Adekoya's medical records from Doctors Medical Center ("DMC").  Adeleke is Ms. Adekoya's son.  These records were provided to Rash Curtis by DMC when it assigned her account to Rash Curtis for collection and are kept in the ordinary course of business.  These records indicate that Ms. Adekoya, provided her phone number ending in 5496, without restriction, to DMC in connection with her son's treatment.  DMC, in turn, provided that phone number to Rash Curtis at the time of its referral of Ms. Adekoya's debt for collection.  Mr. Paff's review of the records confirms Rash Curtis did not obtain Adekoya's phone number ending in 5496 by skip tracing.

7.      Mr. Paff is expected to testify that he personally reviewed copies of Jessica Adekoya's medical records from DMC.  These records were provided to Rash Curtis by DMC, are kept in the ordinary course of business by Rash Curtis, and indicate that Ms. Adekoya, provided her phone number ending in 5496, without restriction, to DMC in connection with her own treatment.  DMC, in turn, provided that phone number to Rash Curtis.

- 3 -

8.      Mr. Paff is expected to testify that he personally reviewed copies of Geraldine Caldwell's medical records from DMC.  These records were provided to Rash Curtis by DMC, have been kept in the ordinary course of business by Rash Curtis, and they indicate that Ms. Caldwell's daughter, Jessica Adekoya, is listed as a contact.

9.      Mr. Paff is expected to testify that he personally reviewed a copy of a screenshot of a so-called "ECA Advanced Trace Report" which Rash Curtis obtained on Ms. Adekoya.  Rash Curtis uses "ECA Advanced Trace Reports," which it obtains from Experian, to "fill in the blanks" as to demographic information it may be missing as to particular debtors.  The screenshot does not show or reflect a cell phone number ending in 5496. This means Rash Curtis did not obtain the cell phone number ending in 5496 by ECA skip-tracing.  If the number had been ECA skip-traced, it would be listed on this report.

10.     Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes as to debtor Daniel Reynoso.  These collection notes are created and stored by Rash Curtis' collection software as part of its regular business practices, and each of the entries therein is created contemporaneously, as discussed above, at the time of the events noted, and the system is designed for accuracy, and the collectors are also so trained.

11.     Mr. Paff is expected to testify that he personally reviewed copies of Daniel Reynoso's medical records from Sutter General Hospital.  These records were provided to Rash Curtis by Sutter General Hospital when it assigned Mr. Reynoso's account to Rash Curtis for collection, and have been kept in the ordinary course of business by Rash Curtis.  The records show that Mr. Reynoso provided his phone number ending in 5193, with no restrictions, to Sutter General Hospital in connection with his treatment.  Sutter General Hospital, in turn, provided that phone number to Rash Curtis in connection with its referral to Rash Curtis of Daniel Reynoso's debt for collection.  Mr. Paff's review of the records confirm Rash Curtis did not skip-trace Reynoso's phone number to obtain the number ending in 5193.

12.     Mr. Paff is expected to testify that he personally reviewed a copy of a screenshot of an "ECA Advanced Trace Report" which Rash Curtis obtained from Experian on Mr. Reynoso.  It does not show a phone number ending in 5193.  These records are generated and kept in the ordinary course of

- 4 -

business. The absence of the phone number ending in 5193 on this report means Rash Curtis did not obtain the phone number it called ending in 5193 by ECA skip-tracing.

13. Mr. Paff is expected to testify that he personally reviewed a copy of a screenshot of a so-called "Edit Tracking Report" for Daniel Reynoso's account. This record is generated and kept by Rash Curtis in the ordinary course of its business. This edit tracking report details that on June 7, 2016, at 3:27 p.m., the phone number ending in 5193 was removed from Rash Curtis' database. If one of Rash Curtis' collection employees had manually added the phone number ending in 5193 to Reynoso's account, it would be shown on this report as a "new value;" however, it does not. This also confirms the phone number ending in 5193 was provided to Rash Curtis by Sutter General Hospital when it electronically assigned Reynoso's debt to Rash Curtis for collection and not added by skip-tracing (via ECA or otherwise). This document establishes that Rash Curtis did not skip-trace (via ECA or otherwise) the phone number ending in 5193; rather, it was provided to Rash Curtis by its creditor-client, Sutter General Hospital, when Rash Curtis received the debt referral.

14. Mr. Paff is expected to testify that he personally reviewed a copy of a letter received by Rash Curtis & Associates, and it purports to serve as a "cease and desist" request made by Plaintiffs' counsel on behalf of Ms. McMillion. The letter is dated March 4, 2016 and was provided by Plaintiffs' counsel to Rash Curtis and is kept in the ordinary course of business. Mr. Paff's review of Rash Curtis' collection notes confirms this is the first written "cease and desist" request which Rash Curtis received from Ms. McMillion. The letter indicates it was received by Rash Curtis on March 9, 2016.

15. Mr. Paff is expected to testify that his review of Rash Curtis' collection notes and business records demonstrates that Ms. McMillion was treated on various dates by various health care providers for which she was charged. Ms. McMillion did not fully pay for treatment, and her *multiple collection accounts* were sent to Rash Curtis for collection by Marin General Hospital.

16. Mr. Paff is expected to testify that Rash Curtis' collection notes indicate it really only spoke with Ms. McMillion on two occasions. Mr. Paff is expected to testify that Ms. McMillion testimony, that she spoke with Rash Curtis' collectors numerous times in 2016, is categorically untrue. Rash Curtis' records demonstrate it only spoke with her on February 2, 2016 and on February 17, 2016.

- 5 -

17.     Mr. Paff is expected to testify that Rash Curtis was provided Ms. McMillion's cell phone number ending in 0589 on December 17, 2015, when its client (and Ms. McMillion's creditor), Marin General Hospital, referred two Accounts (Nos. 2578480 and 2578480) to Rash Curtis for collection. Rash Curtis began calling Ms. McMillion's cell phone number ending in 0589 on December 23, 2015. Rash Curtis called Ms. McMillion again on December 24, 2015; it spoke to an unidentified woman who stated she was a "representative" of Ms. McMillion and wanted to know about the nature of the call. Mr. Paff is expected to testify that the Rash Curtis collector properly terminated the call without providing any information because the call recipient could not be positively identified as the debtor herself.

18.     Mr. Paff is expected to testify that, despite calling the 0589 number between December 24, 2015 and February 2, 2016 (a period of 40 days), Rash Curtis was never able to have a "live conversation" with Ms. McMillion. Mr. Paff is expected to testify that Rash Curtis' attempts to call Ms. McMillion were not intended to harass her, but only to talk to her.

19.     Mr. Paff is expected to testify that, at 4:00 p.m. on February 2, 2016, Rash Curtis left a voice message on Ms. McMillion's cell phone number ending in 0589. Thirty minutes later, Ms. McMillion called into Rash Curtis and orally requested that Rash Curtis stop calling her. Rash Curtis honored Ms. McMillion's oral cease-and-desist request and made no further calls to her *on that account* between February 2, 2016 and February 15, 2016.

20.     Mr. Paff is expected to testify that, on February 15, 2016, MGH referred to Rash Curtis a new McMillion medical account (No. 2603552) for collection for medical services rendered to Ms. McMillion on September 2, 2015. That account also showed Ms. McMillion's cell phone number ending in 0589 had been provided to MGH on the September 2, 2015 date of service.

21.     Mr. Paff is expected to testify that, the next day, February 16, 2016, Rash Curtis called Ms. McMillion's cell phone number at 8:09 a.m. *on this new and different collection account*, but was unable to reach her. Rash Curtis called her again on Account No. 2603552 on the following day, February 17, 2016. This time, Rash Curtis was able to reach Ms. McMillion. She cut off our collector while receiving the "mini-Miranda" admonition by making an oral cease-and-desist request. Rash Curtis terminated the call, and placed no further calls to her *on this account* (No. 2603552). Mr. Paff is expected

- 6 -

to testify that he reviewed Rash Curtis' collection notes as to Ms. McMillion, and all of the phone calls were made between 8:00 a.m. and 9:00 p.m. Virtually all of Rash Curtis' attempts to talk with her were unsuccessful.

22.     Mr. Paff is expected to testify that, as shown by Rash Curtis' records, on January 5, 2015, Ms. Adekoya took her minor son, Adeleke Adekoya, to Doctors Medical Center ("DMC") in San Pablo, California. As shown in Rash Curtis' records, Ms. Adekoya provided her cell phone number ending in 5496 to DMC, and listed herself as her son's contact, during this visit.  Ms. Adekoya ultimately became indebted in connection with the medical services DMC rendered to her son. This debt (No. 2446237) for Adekoya's son's treatment, was referred to Rash Curtis for collection on May 14, 2015. The records also show Ms. Adekoya personally sought treatment at DMC in 2015, and she *voluntarily* provided her cell phone number ending in 5496.   Rash Curtis was provided with the cell phone number she had provided to DMC when DMC referred her son's debt (No. 2446237) for collection on May 14, 2015.  From May 15, 2015, to March 10, 2016, the collection notes indicate that despite numerous attempts to reach her, it was unsuccessful in reaching Ms. Adekoya by phone. Rash Curtis' repeated attempts to reach her were not for purposes of harassment, but to talk to her.  On March 10, 2016, Ms. Adekoya finally answered her cell phone; she told the Rash Curtis representative that she was in a "hurry" because she was at work, and she asked the representative to email her at an email address she provided. Between March 14 and March 16, 2016, Rash Curtis placed three more calls to Ms. Adekoya's cell phone, but, again, was unable to reach her. Rash Curtis' notes reflect its collectors made attempts to talk to Ms. Adekoya's mother, Geraldine Denise Caldwell, about her own debt at the same phone number ending in 5496.

23.     Mr. Paff is expected to testify that, on March 16, 2016, Rash Curtis' collection notes indicate it called Ms. Adekoya at her work number ending in 9400.  Ms. Adekoya orally told Rash Curtis not to call her work number ending in 9400; she did not tell Rash Curtis to cease calling the 5496 number. Rash Curtis' notes demonstrate Rash Curtis honored Ms. Adekoya's request, removed her work number ending in 9400, and placed no further calls to that number. On April 18, 2016, at 6:40 p.m., the collection notes indicate Rash Curtis received a cease and desist as to the number ending in 5496 from Ms.

- 7 -

Adekoya, and the notes establish Rash Curtis never called that number again. Mr. Paff's review of the collection notes confirms all of the calls were made between 8:00 a.m. and 9:00 p.m.

24.    Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes which reflect the referral of a new collection account from Marin General Hospital to Rash Curtis (Account 2763532) on December 13, 2016. This account was for a debt owed by Ms. McMillion to Marin General Hospital in connection with Ms. McMillion's June 27, 2016 date of service. Mr. Paff's review of Rash Curtis' other supplemental collection notes and business records indicate that, in addition to Account 276353, Marin General Hospital referred Rash Curtis an additional six accounts owed by Ms. McMillion since this lawsuit was filed. Mr. Paff's review of the TCN call logs produced by Rash Curtis indicate that the January 25, 2017 calls to Ms. McMillion were made in reference to Account 2763532, and not in reference to any of her prior accounts on which she purportedly revoked her prior express consent.

25.    Mr. Paff is expected to testify that he personally reviewed copies of Ms. McMillion's medical records from Marin General Hospital provided by Marin General Hospital to Rash Curtis when it sent these new collection accounts. The records indicate that Ms. McMillion was admitted to Marin General Hospital on June 27, 2016, and she provided her cell phone number ending in 0589 on that visit. The records further indicate that Ms. McMillion signed Marin General Hospital's Conditions of Admission form on June 27, 2016, agreeing to "promptly pay all hospital bills…" Finally, the records indicate that, Ms. McMillion continued to provide her cell phone number ending in 0589 to Marin General Hospital even after this lawsuit was filed, such as on June 27, 2016, and again on November 15, 2016.

26.    Mr. Paff is expected to testify that he personally reviewed copies of Rash Curtis' collection notes for Ms. Caldwell's debt (Account 1993006). These collection notes indicate that Rash Curtis made calls to the cell phone number ending in 5496 in connection with Ms. Adekoya's mother's (Ms. Caldwell's) account between January 8, 2014 and January 11, 2014. Mr. Paff's review of the call logs produced by Rash Curtis indicate that the January 8, 2014 call was placed before Rash Curtis requested a skip-tracing report on Ms. Caldwell. Rash Curtis, therefore, must have necessarily received

the 5496 number when Doctors Medical Center referred the Account 1993006 to Rash Curtis on January 8, 2014. Mr. Paff's review of the Global Connect call logs confirms that the January 2014 phone calls were made in reference to Account 1993006, and not in reference to Ms. Adekoya's debt (Account 2446237). Likewise, the phone calls placed on April 27, 2016 and April 28, 2016 were also made in reference to Account 1993006, not Account 2446237.

27.     Mr. Paff is expected to testify that, during the relevant time periods of the class, including during the collection communications made by Rash Curtis to Plaintiffs, Rash Curtis employed three different telephone dialing systems: (1) VIC; (2) Global Connect; and (3) TCN. None of these three telephone dialing systems has the present capacity to generate telephone numbers, using either a random or sequential number generator, and then dial those telephone numbers. Rather, these platforms only dial phone numbers from a pre-generated list compiled by an individual.

28.     Mr. Paff is expected to testify that the collection notes as to each Plaintiff reflect collection calls that were made manually or by the three telephone dialing systems Rash Curtis used from 2012 to the present ("VIC," "Global Connect," and "TCN"). The collection notes further reflect almost all of the attempted phone calls were dropped with no connection to the recipient's cell phone or voicemail, some phone calls "skipped" which means they did not connect (not that they were skip-traced), some phone calls were never answered, and some phone calls connected but no prerecorded or artificial message was left. Mr. Paff's review of the records confirms these (no contact/no connection) scenarios reflect the overwhelming majority of the attempted calls. Mr. Paff's review of Rash Curtis' collection notes indicate Rash Curtis talked with Mr. Perez on only one occasion, and when he told Rash Curtis to cease calling, it honored that request. Likewise, Mr. Paff's review of the collection notes as to Ms. McMillion and Ms. Adekoya reflect that Rash Curtis talked with each of the women on a couple of occasions, and whenever they asked Rash Curtis to stop calling (on a particular account) Rash Curtis in fact stopped calling on that account.

29.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the February 16, 2016 call to Ms. McMillion provide: "GC021616:09:25 4156320589-PHONE ANSWERD [SIC] NO LINKBACK." The first two letters, "GC," mean the call was placed

- 9 -

using Global Connect.  The next ten digits, "021616:09:25," mean the call was placed on February 16, 2016 at 09:25 hours, or 9:25 a.m.  The next ten digits, "4156320589," mean the call was placed to phone number (415) 632-0589.  The phrase "Phone Answered No Linkback" means that either Ms. McMillion or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on her voicemail.

30.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the February 17, 2016 call to Ms. McMillion read: "GC021716:16:13 4156320589-PHONE ANSWERD [SIC] NO LINKBACK."  The first two letters, "GC," mean the call was placed using Global Connect.  The next ten digits, "021716:16:13," mean the call was placed on February 16, 2016 at 16:13 hours, or 4:13 p.m.  The next ten digits, "4156320589," mean the call was placed to phone number (415) 632-0589.  The phrase "Phone Answered No Linkback" means that either Ms. McMillion or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on her voicemail.

31.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, do not show calls made to Ms. McMillion on February 25, 2017.  However, Rash Curtis' TCN call logs (produced on November 3, 2017) show that a call was made on February 25, 2017 at approximately 11:42 a.m.  The call result was a "machine hang-up."  This means that the TCN dialer detected that Ms. McMillion's voicemail answered the call, and it terminated the call without leaving a prerecorded artificial or message on her voicemail.

32.     Mr. Paff is expected to testify that Rash Curtis' TCN call logs, which he has personally reviewed, show that the second February 25, 2017 call was made at approximately 12:49 p.m.  The call result was a "machine hang-up."  This means that the TCN dialer detected that Ms. McMillion's voicemail answered the call, and it terminated the call without leaving a pre-recorded or artificial message on her voicemail.

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS CHRIS PAFF

33.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the April 27, 2016 call to Ms. Adekoya show: "GC042716:16:32 5106925496-PHONE ANSWERD [SIC] NO LINKBACK." The first two letters, "GC," mean the call was placed by Global Connect. The next ten digits, "042716:16:32," mean the call was placed on April 27, 2016 at 16:32 hours, or 4:32 p.m. The next ten digits, "5106925496," mean the call was placed to phone number (510) 692-5496. The phrase "Phone Answered No Linkback" means that either Ms. Adekoya or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a prerecorded or artificial voice message on her voicemail.

34.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for the April 28, 2016 call to Ms. Adekoya indicate: "GC042816:18:18 5106925496-PHONE ANSWERD NO LINKBACK." The first two letters, "GC," mean the call was placed using Global Connect. The next ten digits, "042816:18:18," mean the call was placed on April 28, 2016 at 18:18 hours, or 6:18 p.m. The next ten digits, "5106925496," mean the call was placed to phone number (510) 692-5496. The phrase "Phone Answered No Linkback" means that either Ms. Adekoya or her voicemail answered the call, but the Global Connect dialer did not detect any live person on the other end, and therefore terminated the call without leaving a pre-recorded or artificial voice message on her voicemail.

35.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which he has personally reviewed, for debtor Daniel Reynoso indicate that no prerecorded or artificial voice messages were ever left on Mr. Perez's cell phone number ending in 5193. To the contrary, several entries list the call result: "NML – MACHINE." "No Message Left" means the Global Connect dialer detected an answering machine or voicemail and terminated the call without leaving a prerecorded or artificial voice message on his voicemail. The other call results indicate several calls were "skipped" or not made, the number dialed was "busy," or "invalid," or the call was answered but there was no linkback, meaning the Global Connect dialer did not detect a live person on the other end, and therefore terminated the call without leaving any prerecorded or artificial voice message on Mr. Perez's voicemail.

36.     Mr. Paff is expected to testify that Rash Curtis received the cell phone number ending in 5193 on May 7, 2015, when Sutter General Hospital referred Daniel Reynoso's account to Rash Curtis

- 11 -

for collection.  From May 7, 2015 until June 7, 2016, Rash Curtis believed the cell phone number ending in 5193 belonged to Mr. Reynoso, and Rash Curtis also believed it possessed Mr. Reynoso's prior express consent to call that number in connection with its attempts to collect the debt which Mr. Reynoso owed to Sutter General Hospital.  It was not until June 7, 2016, the date on which Rash Curtis was finally able to first reach someone at the cell phone number ending in 5193, that Rash Curtis actually learned that the 5193 number had been reassigned to Mr. Perez and no longer belonged to Mr. Reynoso.  During this call, Mr. Perez informed Rash Curtis that he did not know Mr. Reynoso.  In response, Rash Curtis removed the 5193 number from its collection software database and never called it again.  From May 7, 2015, until June 7, 2016, Rash Curtis was acting with a good faith belief that it possessed valid prior express consent to call the 5193 number in order to reach Mr. Reynoso.

37.     Mr. Paff is expected to testify that when one of Rash Curtis' managers wants to generate a list of phone numbers he or she wants Global Connect (or TCN) to call, he or she does so using Rash Curtis' debt collection software.  First, the manager enters certain criteria (such as account age, balance owed, etc.) which filters through all of our active collection accounts and narrows the universe of accounts to some subset.  The debt collection software then exports certain information, usually including the collection account numbers, the debtors' first and last name, and one or more phone numbers for each account, into what is known as a "tab-delimited" file.  This file is then uploaded to the Global Connect (or TCN) software system via Global Connect's (or TCN's) website.  Only then will Global Connect (or TCN) begin placing telephone calls to the telephone numbers contained in the "tab-delimited" file.  In other words, a significant and substantial amount of human intervention is required in order for Rash Curtis' telephone dialing platforms to place any telephone calls.

38.     Mr. Paff is expected to testify that Rash Curtis' collection notes, which are stored in its debt collection software, are not "searchable."  In order to ascertain whether we called a "wrong number," we would need to examine every single line entry of every collection note for every account referred to us during the last five years. Accordingly, it is essentially impossible to know whether a particular number called is a "wrong number" and belongs to a third-party or other non-debtor, and

- 12 -

compiling a list of such numbers is simply not feasible given the limitations of Rash Curtis' debt collection software.

39.     Mr. Paff is expected to testify that he is not personally aware of Rash Curtis ever loading a phone number from phone fields 5 through 10 which Rash Curtis did not first obtain from one of its creditor-clients into its dialers to be autodialed. The only human errors which resulted in the phone numbers from the wrong phone fields being loaded into one of Rash Curtis' dialers in the past involved an isolated incident and only involved phone numbers which Rash Curtis had first obtained prior express consent to dial.

40.     Mr. Paff is expected to testify that it is Rash Curtis' policy, procedure, and practice to only load phone numbers stored in fields 1 through 4 into its dialers (Global Connect, TCN, and VIC). It is Rash Curtis' policy, procedure, and practice not to load phone numbers from fields 5 through 10 into Rash Curtis' dialers. If a phone number which appears in phone fields 5 through 10 was loaded into Rash Curtis' dialers, it was because the phone number was separately stored in phone fields 1 through 4, and not because it was loaded from a field reserved for skip-traced phone numbers.

41.     Mr. Paff is expected to testify that sometimes Rash Curtis receives a phone number from one of its creditor-clients, stores the phone number in phone fields 1 through 4, and then subsequently obtains the same phone number from skip-tracing and stores it separately in phone fields 5 through 10. The same phone number then is simultaneously stored in phone fields 1-4 and 5-10. Under those circumstances, if that phone number is loaded into one of Rash Curtis' dialers, it is because it was separately stored in phone fields 1 through 4, and not because it was stored in or loaded from phone fields 5 through 10 or obtained through skip-tracing. Cell phone numbers which Rash Curtis first discovers from skip-tracing, and which were not first provided to Rash Curtis by one of its creditor-clients or the debtor, are not loaded into Rash Curtis' dialers, and it is Rash Curtis' invariable policy not to do so.

42.     Mr. Paff is expected to testify that Rash Curtis did *not* skip-trace Plaintiff Ignacio Perez's cell phone number.  On May 7, 2015, Sutter General Hospital referred a debt, known as Account 2432181, to Rash Curtis for collection.  When Sutter General Hospital referred Account 2432181 for

- 13 -

collection, it also sent Mr. Perez's cell phone number ending in 5193, which was contained on the patient information facesheet Sutter General Hospital provided.

43.      Mr. Paff is expected to testify that it is possible that a number placed in fields 5-10 may have been placed there by human error, not because it was skip-traced.  It is also possible that a telephone number may have been manually transferred from one account to another on which Rash Curtis was no longer actively collecting.

Dated: November 12, 2018

Mark E. Ellis

- 14 -

# EXHIBIT C

Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>       Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>       Defendant. | Case No.:  4:16-cv-03396-YGR JSC<br><br>**WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS DAN CORREA PURSUANT TO FED. R. CIV. P. 26(a)(2)(C)** |

     1.     Dan Correa is expected to testify that he is Senior Director of Operations at Rash Curtis & Associates.  He is expected to testify that he has been in the collection business for over 23 years and has been employed at Rash Curtis for over 7 years in several capacities, including Collection Manager, and, for the last several years, as Senior Director of Operations.  He is expected to testify that he is familiar with the collection policies and procedures used by Rash Curtis during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra McMillion, Jessica Adekoya and Ignacio Perez.

     2.     Mr. Correa is expected to testify that, during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs, Rash Curtis employed three different telephone dialing systems: (1) VIC; (2) Global Connect; and (3) TCN.  None of these three telephone

- 1 -

dialing systems has the present capacity to generate telephone numbers, using either a random or sequential number generator, and then dial those telephone numbers. Rather, these platforms only dial phone numbers from a pre-generated list compiled by an individual.

3.    Mr. Correa is expected to testify that it is Rash Curtis' policy, procedure, and practice to store skip-traced numbers in phone fields 5 through 10.  He is expected to testify that it is Rash Curtis' policy, procedure, and practice to store phone numbers which Rash Curtis' has prior express consent to call in phone fields 1 through 4.  He is expected to testify that Rash Curtis' skip-tracing efforts can result in the same phone number being stored in both phone fields 1 through 4 and phone fields 5 through 10. He is expected to testify that not all phone numbers stored in phone fields 5 through 10 were obtained via skip-tracing.  In fact, the phone numbers stored in phone fields 5 through 10 may have been obtained from a number of different sources other than skip-tracing, including from Rash Curtis' creditor-client or the debtor (if phone fields 1-4 are full) or from a third party (such as a personal reference, employer, guarantor, etc.).

4.    Mr. Correa is expected to testify that it is Rash Curtis' policy, procedure, and practice to only load phone numbers stored in fields 1 through 4 into its dialers (Global Connect, TCN, and VIC). It is Rash Curtis' policy, procedure, and practice not to load phone numbers from fields 5 through 10 into Rash Curtis' dialers. If a phone number which appears in phone fields 5 through 10 was loaded into Rash Curtis' dialers, it was because the phone number was separately stored in phone fields 1 through 4, and not because it was loaded from a field reserved for skip-traced phone numbers.

5.    Mr. Correa is expected to testify that sometimes Rash Curtis receives a phone number from one of its creditor-clients, stores the phone number in phone fields 1 through 4, and then subsequently obtains the same phone number from skip-tracing and stores it separately in phone fields 5 through 10.  The same phone number then is simultaneously stored in phone fields 1-4 and 5-10. Under those circumstances, if that phone number is loaded into one of Rash Curtis' dialers, it is because it was separately stored in phone fields 1 through 4, and not because it was stored in or loaded from phone fields 5 through 10 or obtained through skip-tracing.  Cell phone numbers which Rash Curtis first discovers from skip-tracing, and which were not first provided to Rash Curtis by one of its creditor-

- 2 -

clients or the debtor, are not loaded into Rash Curtis' dialers, and it is Rash Curtis' invariable policy not to do so.

Dated: November 12, 2018

Mark E. Ellis

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS DAN CORREA

# EXHIBIT D

Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA  95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>    Defendant. | Case No.:  4:16-cv-03396-YGR JSC<br><br>**WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS NICK KEITH PURSUANT TO FED. R. CIV. P. 26(a)(2)(C)** |

1.      Nick Keith is expected to testify that he is Information Technology Manager at Rash Curtis & Associates.  He is expected to testify that he has been in the collection business for over 11 years and has been employed at Rash Curtis for over 10 years in several capacities, including as a Collector, and, for the last several years, as Information Technology Manager.  He is expected to testify that he is familiar with the collection policies and procedures used by Rash Curtis during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs Sandra McMillion, Jessica Adekoya and Ignacio Perez.

2.      Mr. Keith is expected to testify that, during the relevant time periods, including during the collection communications made by Rash Curtis to Plaintiffs, Rash Curtis employed three different telephone dialing systems: (1) VIC; (2) Global Connect; and (3) TCN.  None of these three telephone dialing systems has the present capacity to generate telephone numbers, using either a random or

- 1 -

sequential number generator, and then dial those telephone numbers. Rather, these platforms only dial phone numbers from a pre-generated list compiled by an individual.

3.      Mr. Keith is expected to testify that, on most debtor accounts, Rash Curtis performs a service called "contact enrichment," which includes skip-tracing. Rash Curtis uses contact enrichment even on accounts which were assigned to Rash Curtis with one or more phone numbers originally provided by the debtor or Rash Curtis' creditor-client. Contact enrichment is a service that Rash Curtis provides for many of its clients, regardless of whether or not Rash Curtis possessed prior express consent to call a phone number provided to Rash Curtis when the account was assigned for collection.

4.      Mr. Keith is expected to testify that it is Rash Curtis' policy, procedure, and practice to only load phone numbers stored in fields 1 through 4 into its dialers (Global Connect, TCN, and VIC). It is Rash Curtis' policy, procedure, and practice not to load phone numbers from fields 5 through 10 into Rash Curtis' dialers. If a phone number which appears in phone fields 5 through 10 was loaded into Rash Curtis' dialers, it was because the phone number was separately stored in phone fields 1 through 4, and not because it was loaded from a field reserved for skip-traced phone numbers. During contact enrichment, many debtor accounts become auto-populated with the same phone number in multiple phone fields.

5.      Mr. Keith is expected to testify that the Global Connect telephone dialing platform contained custom programming which prevented it from loading phone numbers from phone fields 5 through 10. If the same phone number which appeared in phone fields 5 through 10 was loaded into Global Connect, it was because the phone number was concurrently being stored in phone fields 1 through 4, and was obtained from another source (with prior express consent) prior to being skip-traced and separately stored in fields 5 through 10. Global Connect did not prevent outgoing calls to phone numbers which were simultaneously stored in phone fields 1 through 4 and 5 through 10, but it was incapable of loading phone numbers which were only stored in phone fields 5 through 10.

Dated: November 12, 2018

_____
Mark E. Ellis

WRITTEN SUMMARY OF THE OPINIONS OF NON-RETAINED, PERCIPIENT WITNESS NICK KEITH

## CERTIFICATE OF SERVICE

I, Rosanne Estrella, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause.  My business address is 1425 River Park Drive, Suite 400, Sacramento, CA 95815.

On November 12, 2018, I served the following document(s) on the parties in the within action:

### DEFENDANT'S NON-RETAINED EXPERT WITNESS DISCLOSURE

| | |
|---|---|
| X | **BY MAIL**: I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |

| | |
|---|---|
| L. Timothy Fisher<br>Yeremey Krivoshey<br>Blair E. Reed<br>Bursor & Fisher, P.A.<br>1990 N. California Boulevard<br>Suite 940<br>Walnut Creek, CA 94596 | Attorneys for Plaintiffs<br>Sandra McMillion, Jessica Adekoya and Ignacio Perez |
| Scott A. Bursor<br>Bursor & Fisher, P.A.<br>888 Seventh Avenue<br>New York, NY 10019 | Attorneys for Plaintiffs<br>Sandra McMillion, Jessica Adekoya and Ignacio Perez |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct statement and that this Certificate was executed on November 12, 2018.

By _Rosanne Estrella_____

Rosanne Estrella

- 5 -

**EXHIBIT 2**

| From: | Bob Keith </o=SH11Hosting/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=RashCur.bobkeith-5081714fd> |
|---|---|
| Sent: | Friday, May 5, 2017 10.35 AM |
| To: | Mike Paff <mike.paff@rashcurtis.com> |
| Subject: | Client notes on Reynoso |
| Attach: | Client notes from Reynos.docx |

Client Sutter's notes on Reynoso. They were calling this cell also and no one told them it was bad. I do not want to get Sutter sued though so if that is a possibility don't use.

*Thanks*

*Bob Keith*

Bob Keith
Vice President of Operations



*Revenue Recovery Specialist*

190 S. Orchard Avenue, Suite A-200
Vacaville, CA 95688
bob.keith@rashcurtis.com
Direct 707-454-2042
Fax 707-454-2018
http://www.rashcurtis.com
 Please consider the environment before printing this email.

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION GIVEN WILL BE USED FOR THAT PURPOSE"

NOTICE TO RECIPIENT: If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you





RCA-012719



RCA-012720



RCA-012721

RCA-012722

RCA-012723

NOTE DATE   COLLECTOR   NOTE

| | | |
|---|---|---|
| 20140404 | 097 | PATIENT RIGHTS STATEMENT GIVEN TO PATIENT |
| 20140404 | 097 | pt states he is homeless, unemployed, no childeren. |
| 20140404 | 097 | no mcal online, no cmisp. |
| 20140404 | 097 | scanned pts inactive cmisp med rec numb ⌐          into di. |
| 20140404 | 097 | no current elig showing. will have pt sign referral.dgordon |
| 20140407 | 097 | REVIEWED ACCOUNT |
| 20140407 | 097 | PT HAS NO MCAL/LIHP/CMISP ELIG FOR DOS / FAXED ER REFERRAL |
| 20140407 | 097 | TO NON-ELIG FAX LINE/ SCANNED CONFIRMATION TO DI//PP |
| 20140407 | 097 | MR |
| 20140412 | 097 | Abst cmpl, to AR for 69690246 on 20140412 by HAUGENS |
| 20140421 | 097 | VANGP3 04/21/2014 10:55 GTRBLD |
| 20140421 | 097 | GUARANTOR AMOUNT BILLED |
| 20140421 | 097 | BAL 791.70//PV |
| 20140422 | 097 | CHARITY APPLICATION MAILED |
| 20140422 | 097 | ** Ltr Sutter Medical Assistance Program - Cover Letter gene |
| 20140422 | 097 | rated by Vang, Pang |
| 20140422 | 097 | ** Ltr Sutter Medical Assistance Program - Application v3 ge |
| 20140422 | 097 | nerated by Vang, Pang |
| 20140502 | 097 | MCKINNE 05/02/2014 09:41 Change Patient Address |
| 20140502 | 097 | UNDOMICILED |
| 20140502 | 097 | SACRAMENTO        CA 95822 |
| 20140502 | 097 | RETURNED MAIL RECEIVED |
| 20140502 | 097 | INSUFFICIENT ADDRESS |
| 20140509 | 097 | CLD PT AT          5193 LVM TO CALL          .3369 |
| 20140527 | 097 | CHARITY 30 DAY LETTER SENT |
| 20140527 | 097 | RETURN MAIL. UNABLE TO SEND 30 DAY LTR. FWD TO PFA |
| 20140530 | 097 | HOLLINA 05/30/2014 11:10 Transfer to Pending Bad Debt |
| 20140602 | 097 | Bad address at time of list. Now blanked................... |
| 20140602 | 097 | et LNNBADBAD inde          :945 |
| 20140602 | 097 | THE PL95 WAS NOT SENT - INSUFFICIENT ADDRESS.............. |
| 20140602 | 097 | et MVTO2999 index          1870 |
| 20140603 | 097 | THIS ACCOUNT HAS BEEN SENT TO LIVEVOX TO MAKE CALLS........ |
| 20140603 | 097 | et LIVEVOX index          2449 |
| 20140603 | 097 | Dialing date & time: 06/03/201421:18:06 Dialer att-ans |
| 20140603 | 097 | mach/vm msg left. et LVLEFTMSG index          :7189 |
| 20140605 | 097 | SEG Flag updated, File In Scoring RETURNED on 06/05/14.... |
| 20140605 | 097 | et SEGFINT index ´        8094 |
| 20140627 | 097 | CHARITY 60 DAY PERIOD CLOSED |
| 20150505 | 097 | ** Acct Reassigned: 05/04/2015 From: 22 to: 97 ** |

RCA-012724

**EXHIBIT 3**



Yeremey Krivoshey <ykrivoshey@bursor.com>

---

## McMillion v. Rash Curtis

---

**Yeremey Krivoshey** <ykrivoshey@bursor.com>      Thu, Jan 17, 2019 at 9:56 AM
To: Rosanne Estrella <restrella@ellislawgrp.com>
Cc: "scott@bursor.com" <scott@bursor.com>, Blair Reed <breed@bursor.com>, Mark Ellis <mellis@ellislawgrp.com>,
Anthony Paul John Valenti <AValenti@ellislawgrp.com>, Paula Crary <pcrary@ellislawgrp.com>, Betty Henkle
<bhenkle@ellislawgrp.com>, Tatiana Garrett-Thompson <tgarrett-thompson@ellislawgrp.com>, "L. Timothy Fisher"
<ltfisher@bursor.com>

> Anthony, we also need Defendant's deposition transcript designations as soon as possible. We need those to be able to
> exchange motions in limine and believe they should have been exchanged with the exhibit list. Thanks.

[Quoted text hidden]

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SANDRA MCMILLION, JESSICA
ADEKOYA AND IGNACIO PEREZ, on
Behalf of Themselves and all Others Similarly
Situated,

                              Plaintiffs,

        v.

RASH CURTIS & ASSOCIATES,

                              Defendant.

Case No. 16-cv-03396-YGR

Declaration

of

**COLIN B. WEIR**

November 12, 2018

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a number of cases involving telecommunications issues, including the TCPA, broadband technology and Internet access; technical issues associated with net neutrality; Early Termination Fees (ETFs); Late Fees; wireless handset locking practices, merger/antitrust analysis, determination of Federal Excise Tax burden, ISP-bound traffic studies, area code splits and related numbering policy, Universal Service Fund issues, pricing and regulation of Unbundled Network Elements, analysis of special access rates and pricing trends, and development of a macroeconomic analysis quantifying the economic impact upon the US economy and job markets of overpricing special access services; wireless pricing; and wireline telecommunications tariff and contract pricing.  I have also consulted on a variety of consumer and wholesale products cases, calculating damages relating to telecom products, food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1.  This includes a list of all cases in



Declaration of Colin B. Weir
November 12, 2018
Page 2 of 9

which, during the previous four years, I have testified as an expert at trial or by deposition.  Prior

to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as

a cash department head, grocery/receiving clerk, and price-file maintenance head.


## II.  ENGAGEMENT

2.    I have been asked by Counsel for Plaintiff to examine Defendant's call detail records,

and to summarize some of Defendant's calling behavior.  I have also been asked to tabulate

statutory damages.  I make this declaration based upon my own personal knowledge and, if

called as a witness in this action, I would be able to competently testify as to the facts and

opinions set forth herein

3.    ETI is being compensated at the rate of $600 per hour for my work on this case.  The

opinions expressed in this declaration are my own, and my compensation is not dependent upon

the substance of these opinions or the outcome of the litigation.

4.    The documents, data and other materials that I relied upon in forming my opinions

are identified throughout my report and in Exhibit 2, attached hereto.  In addition, I have relied

upon my educational background and more than 15 years of experience.


## III.  CALL DATA

5.    Counsel for Plaintiff has asked me to analyze Defendant's call detail records

("CDRs") and account data, and to provide information summarizing those records.  The CDRs

contain a record of each call placed on behalf of Defendant.  The CDRs include, among other

things, the date of the call, the dialed telephone number, the account number associated with the

call, and the call disposition (whether the call was answered, busy, went to voicemail, etc.).  The

account data includes a list of each of the accounts managed by Defendant, and "phone fields one

through ten."



Declaration of Colin B. Weir
November 12, 2018
Page 3 of 9

6.   I have been asked to review the telephone numbers that appear in "phone fields five through ten"[1] of Defendant's account data for which phone fields one through four are also currently available, and compare fields five through ten to the telephone numbers in "phone fields one through four" to identify if, and to what extent, there is any overlap between those two groups of fields.  I have then been asked to compare any telephone numbers in fields five through ten that do not overlap fields one through four against the CDRs.

7.   To create the tabulations, I followed the following steps

- Import the Call Detail Records;

- Import the Account/Fields One through Ten data;

- Run a duplicates analysis to identify any overlap between telephone numbers in Fields One through Four and Fields Five through Ten and count and remove any such duplicates;

- Match Account and Telephone Number from CDR to Account data;

- Eliminate non-matched calls;

- Format a month-year date field for each call; and

- Tabulate records by month and call disposition.

8.   I conducted my analysis using Stata.[2]  Stata is commercially available (for sale) to all researchers who conduct statistical analysis, and is widely used in the profession: "Stata is distributed in more than 200 countries and is used by hundreds of thousands of professional

---

[1] In order to be considered a match, the call detail record must first match the account number, and then match a telephone number from fields five through ten for that account.

[2] http://www.stata.com/products/


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 4 of 9

researchers in many fields of research."[3] Stata has been used numerous times in litigation damages contexts.[4]

9.      Defendant has produced a number of instances of "phone fields one through four," including as it exists currently, as it existed historically, and as part of several historical data sets. To be as conservative as possible, I have aggregated all of the available "phone fields one through four" data.  Using this data, I analyzed the same Fields Five through Ten data as in my August 10, 2018 Declaration.  This dataset contains 1,498,684 unique account/telephone number combinations.[5]  Of those, only 1.0% are account/telephone numbers that appear in both Fields One through Four and Fields Five through Ten.  In other words, 99% of telephone numbers in Fields Five through Ten are not also contained in Fields One through Four--a total of 1,484,646 unique account/telephone numbers.

10.  I have prepared such tabulations for each of three vendors making calls on behalf of Defendant.  I provide a high level summary of calls and dispositions below in Tables 1-3, and provide month-by-month detail and all disposition codes in Exhibits 3-5, attached hereto.

| TABLE 1. | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Calls to Fields Five through Ten, by Disposition, June 2012-May 2017, Global Connect** | | | | | |
| Answered | Busy | Invalid | Machine | No Answer | Total[6] |
| 2,943,367 | 707,454 | 1,826,851 | 2,646,162 | 1,560,958 | 9,715,452 |

---

[3] http://www.stata.com/why-use-stata/

[4] *See, e.g.*, *In re: Cellphone Termination Fee Cases,  Ayyad, et al.,  v. Sprint Spectrum, L.P.*,  JCCP No. 4332, Case No. RG03-121510; *In re: ConAgra Foods Inc., * 90 F. Supp. 3d 919,  (C.D. Cal. February 23, 2015).

[5] Where each telephone number is a valid, 10-digit, US telephone number.

[6] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 3.



Declaration of Colin B. Weir
November 12, 2018
Page 5 of 9

| TABLE 2. | | | | | |
|---|---|---|---|---|---|
| **Calls to Fields Five through Ten, by Disposition, January-October 2017, TCN** | | | | | |
| Answered | Busy | Invalid | Machine | No Answer | Total[7] |
| 120,088 | 34,134 | 340,461 | 2,252,642 | 956,447 | 3,750,401 |

| TABLE 3. | | | | | |
|---|---|---|---|---|---|
| **Calls to Fields Five through Ten, by Disposition, June 2012-August 2017, VIC** | | | | | |
| Answered | Busy | Invalid | Voicemail | No Answer | Total[8] |
| 39,935 | 11,757 | N/A | 297,038 | 184,846 | 665,181 |

11.   As can be seen from the Tables above and the corresponding Exhibits, all three vendors placed calls to numbers located in phone fields five through ten of Defendant's account data on a regular basis, totaling more than 14-million calls, including some 3-million calls that were answered.

12.   I was asked to provide subsets of this data to Anya Verkhovskaya, President of Class Experts Group, for further analysis.  From the data as described above, I provided the following:

- A list of all calls placed by Global Connect to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Answered," and that were at least six seconds or longer in duration;

---

[7] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 4.

[8] Certain small disposition categories have been omitted from the table for brevity.  This total includes those additional disposition categories and will exceed the sum of the categories presented.  The full detail is provided in Exhibit 5.


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 6 of 9

- A list of all calls placed by TCN to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Answered," and that were at least six seconds or longer in duration;

- A list of all calls placed by VIC to phone numbers contained in Phone Fields Five through Ten (that were not contained in Fields One through Four), that had a call disposition of "Message - Party Connect," "Message - Hang Up," and "Message - VIC Voice Mail."

13.   I understand that Ms. Verkhovskaya has analyzed the telephone numbers in each of these data sets to determine which telephone numbers were mobile telephone numbers at the time of the call, and to identify telephone numbers where none of the customary, historic users of the number matched, or were a close match to the name of debtor.[9]  Of the telephone records that I provided to Ms. Verkhovskaya, the following data reflect calls to mobile numbers with customary users other than the debtor.

| TABLE 4. | | | |
|---|---|---|---|
| **Calls to Class Members by Call Disposition** | | | |
| Vendor | Disposition | Unique Phone Count | Call Count |
| Global Connect | Answered, ≥6 Seconds | 37,674 | 501,043 |
| TCN | Answered, ≥6 Seconds | 8,478 | 31,064 |
| VIC | Message - Hang Up | 879 | 1,679 |
| VIC | Message - VIC Voice Mail | 153 | 237 |
| VIC | Message - Party Connect | 282 | 675 |

---

[9] Declaration of Anya Verkhovskaya, November 12, 2018.

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
November 12, 2018
Page 7 of 9

## IV. STATUTORY DAMAGES

14.   Plaintiffs allege that Defendant knowingly and willfully has placed calls to individuals in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").[10]  I have been informed by Counsel for Plaintiffs that Plaintiffs and members of the proposed classes are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).  Or in the alternative, Plaintiffs and members of the classes are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).[11]

15.   I also understand that the calls identified by Ms. Verkhovskaya (as summarized above in Table 4) are the calls for which Plaintiffs are seeking such statutory damages.  Using these data, I have tabulated statutory damages as below in Table 5-6.

| TABLE 5. | | | |
|---|---|---|---|
| **Statutory Damages: ATDS Class** | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 501,043 | $751,564,500 | $250,521,500 |
| TCN | 31,064 | $46,596,000 | $15,532,000 |
| VIC | 1,679 | $2,518,500 | $839,500 |
| VIC | 237 | $355,500 | $118,500 |
| VIC | 675 | $1,012,500 | $337,500 |
| TOTAL | 534,698 | $802,047,000 | $267,349,000 |

---

[10] *See, generally,* Class Action Complaint, filed June 17, 2016.

[11] *Id.,* at 14.



Declaration of Colin B. Weir
November 12, 2018
Page 8 of 9

| TABLE 6. | | | |
|---|---|---|---|
| Statutory Damages: Pre-Recorded/Artificial Voice Class[12] | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 501,043 | $751,564,500 | $250,521,500 |
| VIC | 1,679 | $2,518,500 | $839,500 |
| VIC | 237 | $355,500 | $118,500 |
| VIC | 675 | $1,012,500 | $337,500 |
| TOTAL | 503,634 | $755,451,000 | $251,817,000 |

16.  I have also been asked to tabulate damages for the named Plaintiffs: Perez,

McMillion, and Adekoya.  I present these tabulations in Tables 7-9 below.

| TABLE 7. | | | |
|---|---|---|---|
| Statutory Damages: Perez | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 14 | $21,000 | $7,000 |
| Note: Call count reflects calls of Disposition Answered, ≥6 Seconds. | | | |

| TABLE 8. | | | |
|---|---|---|---|
| Statutory Damages: McMillion | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 2 | $3,000 | $1,000 |
| TCN | 2 | $3,000 | $1,000 |
| Note: Call count reflects calls of Disposition Answered, for dates after February 2, 2016. | | | |

---

[12] Declaration of Randall Snyder, November 12, 2018, at 20-21.



Declaration of Colin B. Weir
November 12, 2018
Page 9 of 9

| TABLE 9. | | | |
| --- | --- | --- | --- |
| Statutory Damages: Adekoya | | | |
| Vendor | Call Count | Willful Damages ($1,500) | Non-Willful Damages ($500) |
| Global Connect | 2 | $3,000 | $1,000 |
| Note: Call count reflects calls of Disposition Answered, for dates after April 18, 2016. | | | |

## V.  RESERVATION OF RIGHTS

My testimony is based upon the information and data presently available to me.  I understand that discovery is ongoing.  Additional, different and/or updated data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony, and anticipate supplementing this testimony when such data becomes available.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts, this 12th day of November, 2018.

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

## Statement of Qualifications

## COLIN B. WEIR

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

1

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony:

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated,v.Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler  Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated), on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.



**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated,  v.  Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.



**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.*, Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC,* Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company,* Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC,* Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

7



**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016; Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.

9



*Statement of Qualifications – Colin B. Weir*

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March  31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark  Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf  of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of  Wolf Popper LLP;  Declaration filed February 27, 2015;  Rebuttal Declaration filed April 30, 2015.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf  themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted August 11, 2014; Deposition on September 30, 2014; Declaration submitted July 9, 2018.



**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of  Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,**  *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.



**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation,* Master Case No. 10-6334 (SDW) MDL No. 2228, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company,* Civ. Act. No. 07-5325 (JLL), on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.



*Statement of Qualifications – Colin B. Weir*

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and  *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer  Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.



# Exhibit 2

# Documents Reviewed

- Class Action Complaint, filed June 17, 2016

- 47 U.S. Code  227

- May 30, 2017 Declaration of Randall Snyder

- October 16, 2017 Declaration of Randall Snyder

- November 12, 2018 Declaration of Randall Snyder

- November 12, 2018 Declaration of Anya Verkhovskaya

- Deposition of Steven Kiser, April 13, 2017

- GC Call Detail Records

- TCN Call Detail Records

- VIC Call Detail Records

- Defendant's Account Data (including account number and fields one through ten)

- TransUnion reverse call data

- North American Numbering Plan Administration, valid US NPA, NXX codes

https://www.nationalnanpa.com/

# Exhibit 3

# Global Connect Data

Global Connect

| Month | Answered | Busy | Fax | Invalid | Machine | No Answer | Total |
|---|---|---|---|---|---|---|---|
| June-2012 | 14,611 | 4,767 | 207 | 12,282 | 17,236 | 12,886 | 61,989 |
| July-2012 | 31,278 | 9,158 | 556 | 28,415 | 32,633 | 24,951 | 126,991 |
| August-2012 | 33,046 | 5,408 | 582 | 34,879 | 29,697 | 21,625 | 125,237 |
| September-2012 | 23,825 | 1,607 | 360 | 25,844 | 19,652 | 12,600 | 83,888 |
| October-2012 | 32,724 | 2,986 | 458 | 37,359 | 28,693 | 22,651 | 124,871 |
| November-2012 | 29,915 | 3,063 | 445 | 33,957 | 25,421 | 18,614 | 111,415 |
| December-2012 | 24,459 | 2,441 | 587 | 26,282 | 21,997 | 12,132 | 87,898 |
| January-2013 | 13,868 | 1,490 | 274 | 15,296 | 12,218 | 7,062 | 50,208 |
| February-2013 | 26,809 | 3,096 | 705 | 27,853 | 23,394 | 14,291 | 96,148 |
| March-2013 | 23,539 | 3,535 | 746 | 21,309 | 21,417 | 11,014 | 81,560 |
| April-2013 | 8,601 | 797 | 228 | 7,411 | 8,096 | 4,559 | 29,692 |
| May-2013 | 27,193 | 2,760 | 646 | 28,253 | 24,201 | 12,426 | 95,479 |
| June-2013 | 23,538 | 4,139 | 567 | 23,087 | 18,877 | 11,260 | 81,468 |
| July-2013 | 23,013 | 4,218 | 571 | 24,530 | 20,960 | 11,253 | 84,545 |
| August-2013 | 29,841 | 11,174 | 694 | 23,335 | 26,939 | 17,946 | 109,929 |
| September-2013 | 26,420 | 9,985 | 751 | 18,593 | 25,620 | 16,365 | 97,734 |
| October-2013 | 26,817 | 7,732 | 626 | 15,854 | 24,416 | 14,264 | 89,709 |
| November-2013 | 32,237 | 8,820 | 750 | 24,558 | 27,661 | 13,535 | 107,561 |
| December-2013 | 22,022 | 4,663 | 383 | 21,279 | 20,356 | 15,363 | 84,066 |
| January-2014 | 31,583 | 6,481 | 654 | 30,113 | 29,527 | 12,754 | 111,112 |
| February-2014 | 42,151 | 8,195 | 730 | 41,807 | 39,756 | 18,212 | 150,851 |
| March-2014 | 59,395 | 42,405 | 839 | 49,665 | 47,954 | 34,496 | 234,754 |
| April-2014 | 77,626 | 22,283 | 1,181 | 53,636 | 57,841 | 61,522 | 274,089 |
| May-2014 | 52,402 | 7,576 | 669 | 27,577 | 34,296 | 32,277 | 154,797 |
| June-2014 | 49,055 | 14,495 | 627 | 26,467 | 36,314 | 23,128 | 150,086 |
| July-2014 | 60,244 | 14,277 | 943 | 46,248 | 49,591 | 24,745 | 196,048 |
| August-2014 | 54,190 | 14,695 | 1,006 | 42,650 | 46,475 | 34,512 | 193,528 |
| September-2014 | 27,705 | 17,712 | 449 | 47,691 | 30,058 | 139,108 | 262,723 |
| October-2014 | 48,209 | 16,012 | 666 | 25,834 | 42,608 | 34,762 | 168,091 |
| November-2014 | 50,568 | 16,134 | 605 | 27,090 | 46,336 | 27,609 | 168,342 |
| December-2014 | 69,028 | 19,564 | 855 | 38,085 | 61,743 | 30,694 | 219,969 |
| January-2015 | 68,502 | 31,277 | 766 | 44,650 | 65,318 | 32,311 | 242,824 |
| February-2015 | 67,008 | 15,191 | 665 | 37,582 | 58,496 | 35,843 | 214,785 |
| March-2015 | 65,178 | 12,625 | 328 | 38,492 | 51,555 | 36,754 | 204,932 |
| April-2015 | 55,953 | 7,776 | 463 | 36,488 | 56,902 | 21,910 | 179,492 |
| May-2015 | 42,286 | 9,102 | 316 | 28,439 | 42,541 | 17,589 | 140,273 |
| June-2015 | 46,782 | 10,538 | 200 | 34,823 | 50,190 | 22,482 | 165,015 |
| July-2015 | 57,727 | 10,395 | 288 | 38,340 | 59,410 | 28,579 | 194,739 |
| August-2015 | 58,678 | 37,575 | 486 | 28,856 | 48,221 | 33,095 | 206,911 |
| September-2015 | 70,659 | 35,835 | 431 | 25,264 | 57,842 | 34,149 | 224,180 |
| October-2015 | 65,651 | 18,827 | 488 | 25,874 | 55,650 | 34,611 | 201,101 |
| November-2015 | 62,155 | 13,110 | 694 | 26,470 | 46,243 | 31,394 | 180,066 |
| December-2015 | 60,969 | 7,263 | 631 | 29,160 | 48,359 | 28,421 | 174,803 |
| January-2016 | 47,092 | 4,971 | 379 | 20,465 | 40,146 | 20,321 | 133,374 |
| February-2016 | 52,121 | 5,832 | 302 | 22,398 | 50,325 | 24,401 | 155,379 |

Global Connect

| Month | Answered | Busy | Fax | Invalid | Machine | No Answer | Total |
|---|---|---|---|---|---|---|---|
| March-2016 | 67,925 | 7,206 | 385 | 33,440 | 59,726 | 27,782 | 196,464 |
| April-2016 | 66,729 | 7,075 | 268 | 32,142 | 67,426 | 23,605 | 197,245 |
| May-2016 | 34,557 | 3,793 | 153 | 14,643 | 35,706 | 13,285 | 102,137 |
| June-2016 | 27,899 | 3,807 | 118 | 12,293 | 25,684 | 9,775 | 79,576 |
| July-2016 | 77,166 | 18,461 | 369 | 41,092 | 72,247 | 32,613 | 241,948 |
| August-2016 | 121,338 | 25,585 | 693 | 60,597 | 107,787 | 47,151 | 363,151 |
| September-2016 | 115,107 | 22,572 | 625 | 54,093 | 106,116 | 52,478 | 350,991 |
| October-2016 | 99,517 | 13,176 | 485 | 41,264 | 91,669 | 40,396 | 286,507 |
| November-2016 | 109,307 | 16,158 | 546 | 53,596 | 106,566 | 47,856 | 334,029 |
| December-2016 | 95,463 | 17,488 | 422 | 44,187 | 87,425 | 37,108 | 282,093 |
| January-2017 | 94,461 | 26,125 | 350 | 41,275 | 90,011 | 32,880 | 285,102 |
| February-2017 | 71,598 | 22,970 | 273 | 34,005 | 67,155 | 30,150 | 226,151 |
| March-2017 | 42,288 | 10,515 | 164 | 18,495 | 41,028 | 14,141 | 126,631 |
| April-2017 | 2,982 | 507 | 11 | 1,117 | 3,853 | 1,117 | 9,587 |
| May-2017 | 357 | 31 | 1 | 72 | 582 | 145 | 1,188 |
| | | | | | | | |
| Total | 2,943,367 | 707,454 | 30,660 | 1,826,851 | 2,646,162 | 1,560,958 | 9,715,452 |

**Exhibit 4**

**TCN Data**

| Month | Answered | Answered Hangup | Answered Linkcall | Answered Linkcall Abandoned | Busy | TCN Invalid | Invalid Unknown NPA-NXX | Machine Delivered | Machine Hangup | Machine Undeliverable | No Answer | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January-2017 | 1,576 | 0 | 82 | 9 | 565 | 4,641 | 37 | 0 | 30,255 | 0 | 11,778 | 48,943 |
| February-2017 | 5,852 | 0 | 196 | 32 | 1,556 | 13,491 | 59 | 0 | 77,474 | 0 | 33,510 | 132,170 |
| March-2017 | 9,872 | 1 | 688 | 186 | 2,250 | 24,026 | 93 | 0 | 154,907 | 0 | 66,706 | 258,729 |
| April-2017 | 17,853 | 11 | 1,162 | 247 | 3,407 | 41,102 | 281 | 0 | 282,662 | 0 | 126,349 | 473,074 |
| May-2017 | 16,742 | 8 | 1,655 | 261 | 2,986 | 43,941 | 174 | 0 | 285,125 | 0 | 118,961 | 469,853 |
| June-2017 | 18,691 | 4 | 1,088 | 150 | 2,883 | 50,206 | 152 | 1,066 | 312,006 | 784 | 130,888 | 517,918 |
| July-2017 | 17,426 | 11 | 1,827 | 127 | 2,911 | 45,724 | 177 | 4,428 | 305,125 | 3,191 | 125,980 | 506,927 |
| August-2017 | 10,557 | 0 | 2,965 | 127 | 4,990 | 42,097 | 307 | 3,236 | 270,665 | 2,218 | 113,182 | 450,344 |
| September-2017 | 11,123 | 2 | 3,183 | 148 | 6,300 | 39,468 | 305 | 7,267 | 273,844 | 5,290 | 113,158 | 460,088 |
| October-2017 | 10,396 | 0 | 2,051 | 76 | 6,286 | 35,765 | 325 | 608 | 260,579 | 334 | 115,935 | 432,355 |
| Total | 120,088 | 37 | 14,897 | 1,363 | 34,134 | 340,461 | 1,910 | 16,605 | 2,252,642 | 11,817 | 956,447 | 3,750,401 |

# Exhibit 5

# VIC Data

| Month | 3 Tone Intercept | Area Code Changed | Busy | Call Error | DIAL NEW ENTRY | Fax | Hang Up Salutation | Link Back Transfer | Message - Hang Up | Message - Party Connect | Message - VIC Voice Mail | No Answer | No Ring | On Hold Hang Up | Other | Party Connect | Party Transfer Hang Up | Phone In The Skip Table | UNKNOWN DIRECTIVE 8454 | Unable To Transfer Party | Voice Mail - Hang Up | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| June-2012 | 435 | 0 | 187 | 0 | 0 | 115 | 0 | 0 | 138 | 0 | 0 | 1,294 | 24 | 232 | 45 | 390 | 0 | 0 | 102 | 237 | 2,329 | 5,528 |
| July-2012 | 795 | 0 | 291 | 0 | 0 | 119 | 0 | 0 | 168 | 0 | 0 | 2,030 | 23 | 314 | 46 | 409 | 0 | 0 | 97 | 326 | 2,918 | 7,536 |
| August-2012 | 954 | 0 | 452 | 1 | 0 | 215 | 0 | 1 | 278 | 16 | 17 | 2,764 | 18 | 392 | 99 | 602 | 0 | 0 | 18 | 992 | 3,007 | 9,826 |
| September-2012 | 307 | 0 | 116 | 1 | 0 | 46 | 0 | 2 | 86 | 39 | 76 | 729 | 9 | 154 | 33 | 205 | 0 | 0 | 20 | 190 | 1,299 | 3,312 |
| October-2012 | 861 | 0 | 309 | 0 | 0 | 143 | 0 | 0 | 221 | 0 | 0 | 1,724 | 17 | 249 | 59 | 400 | 0 | 0 | 16 | 219 | 2,679 | 6,897 |
| November-2012 | 797 | 0 | 265 | 1 | 0 | 127 | 0 | 1 | 179 | 47 | 0 | 1,912 | 11 | 194 | 74 | 334 | 2 | 0 | 4 | 371 | 2,436 | 6,755 |
| December-2012 | 948 | 0 | 353 | 1 | 0 | 193 | 0 | 2 | 322 | 29 | 0 | 3,313 | 19 | 225 | 71 | 388 | 0 | 2 | 38 | 888 | 2,946 | 9,738 |
| January-2013 | 1,911 | 0 | 720 | 0 | 102 | 447 | 0 | 0 | 467 | 0 | 0 | 4,625 | 41 | 341 | 126 | 936 | 8 | 0 | 1,802 | 950 | 4,632 | 17,108 |
| February-2013 | 920 | 0 | 411 | 0 | 0 | 183 | 0 | 0 | 215 | 0 | 0 | 2,497 | 22 | 320 | 67 | 465 | 2 | 0 | 20 | 1,404 | 3,483 | 10,009 |
| March-2013 | 745 | 0 | 383 | 0 | 0 | 207 | 0 | 0 | 204 | 0 | 0 | 2,119 | 44 | 299 | 91 | 407 | 0 | 0 | 25 | 1,589 | 3,571 | 9,648 |
| April-2013 | 679 | 0 | 341 | 0 | 0 | 161 | 0 | 0 | 276 | 0 | 0 | 2,326 | 30 | 273 | 109 | 435 | 0 | 0 | 32 | 1,550 | 3,537 | 9,749 |
| May-2013 | 591 | 0 | 297 | 0 | 0 | 143 | 0 | 0 | 182 | 0 | 0 | 1,661 | 20 | 223 | 62 | 323 | 1 | 0 | 10 | 670 | 2,494 | 6,677 |
| June-2013 | 771 | 0 | 388 | 0 | 0 | 132 | 0 | 0 | 192 | 0 | 0 | 2,901 | 20 | 272 | 54 | 437 | 0 | 0 | 6 | 649 | 2,716 | 8,538 |
| July-2013 | 189 | 0 | 142 | 0 | 0 | 34 | 0 | 0 | 54 | 0 | 0 | 651 | 6 | 72 | 51 | 113 | 0 | 0 | 3 | 48 | 1,088 | 2,451 |
| November-2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 |
| December-2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29 | 0 | 0 | 29 |
| January-2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 |
| February-2014 | 971 | 0 | 498 | 0 | 0 | 213 | 0 | 0 | 298 | 0 | 0 | 2,405 | 40 | 315 | 92 | 799 | 0 | 0 | 19 | 229 | 4,027 | 9,906 |
| March-2014 | 323 | 0 | 278 | 0 | 0 | 88 | 0 | 0 | 102 | 0 | 0 | 770 | 17 | 137 | 61 | 395 | 0 | 0 | 11 | 152 | 2,137 | 4,471 |
| April-2014 | 724 | 0 | 333 | 0 | 0 | 164 | 0 | 0 | 176 | 0 | 0 | 1,651 | 42 | 225 | 73 | 744 | 0 | 0 | 12 | 198 | 3,457 | 7,799 |
| May-2014 | 331 | 0 | 302 | 0 | 0 | 114 | 0 | 0 | 115 | 0 | 0 | 1,487 | 52 | 149 | 35 | 459 | 0 | 0 | 16 | 393 | 2,780 | 6,233 |
| June-2014 | 548 | 0 | 788 | 0 | 0 | 330 | 0 | 0 | 224 | 0 | 0 | 2,299 | 48 | 196 | 138 | 904 | 0 | 0 | 3 | 364 | 4,980 | 10,822 |
| July-2014 | 333 | 0 | 207 | 0 | 0 | 182 | 0 | 0 | 136 | 0 | 0 | 1,100 | 29 | 117 | 31 | 373 | 0 | 0 | 4 | 325 | 2,582 | 5,419 |
| August-2014 | 739 | 0 | 358 | 0 | 0 | 200 | 0 | 0 | 174 | 0 | 0 | 1,570 | 18 | 200 | 95 | 522 | 0 | 0 | 5 | 180 | 3,036 | 7,097 |
| September-2014 | 405 | 0 | 224 | 0 | 0 | 171 | 0 | 0 | 206 | 0 | 0 | 1,991 | 182 | 157 | 145 | 352 | 0 | 0 | 10 | 138 | 2,076 | 6,037 |
| October-2014 | 1,476 | 0 | 380 | 1,481 | 0 | 620 | 91 | 71 | 393 | 1,153 | 2,575 | 5,554 | 8 | 134 | 306 | 1,047 | 0 | 0 | 16 | 87 | 5,151 | 20,511 |
| November-2014 | 536 | 0 | 180 | 350 | 0 | 432 | 27 | 22 | 166 | 352 | 800 | 3,208 | 1 | 177 | 174 | 657 | 1 | 0 | 10 | 341 | 5,064 | 12,498 |
| December-2014 | 68 | 0 | 116 | 66 | 0 | 171 | 3 | 2 | 150 | 46 | 89 | 2,241 | 1 | 119 | 203 | 604 | 1 | 0 | 12 | 857 | 4,725 | 9,474 |
| January-2015 | 41 | 0 | 75 | 0 | 0 | 135 | 0 | 0 | 116 | 0 | 0 | 2,049 | 0 | 105 | 143 | 455 | 0 | 0 | 11 | 621 | 3,497 | 7,248 |
| February-2015 | 36 | 0 | 58 | 0 | 0 | 141 | 0 | 0 | 149 | 0 | 0 | 2,373 | 4 | 111 | 123 | 496 | 0 | 0 | 0 | 397 | 3,633 | 7,521 |
| March-2015 | 120 | 0 | 81 | 145 | 0 | 145 | 15 | 8 | 179 | 164 | 367 | 2,562 | 6 | 126 | 122 | 607 | 0 | 0 | 5 | 104 | 4,031 | 8,787 |
| April-2015 | 69 | 0 | 59 | 54 | 0 | 153 | 2 | 7 | 161 | 104 | 184 | 1,952 | 3 | 109 | 70 | 455 | 0 | 0 | 20 | 416 | 3,196 | 7,014 |
| May-2015 | 33 | 3 | 50 | 0 | 0 | 102 | 0 | 0 | 116 | 0 | 0 | 1,823 | 3 | 112 | 62 | 486 | 0 | 0 | 14 | 465 | 3,458 | 6,727 |
| June-2015 | 40 | 0 | 70 | 0 | 0 | 122 | 0 | 0 | 124 | 0 | 0 | 2,656 | 2 | 133 | 181 | 456 | 0 | 0 | 13 | 668 | 3,384 | 7,849 |
| July-2015 | 91 | 1 | 79 | 0 | 0 | 215 | 0 | 0 | 205 | 0 | 0 | 3,926 | 7 | 144 | 121 | 802 | 0 | 0 | 22 | 521 | 4,930 | 11,064 |
| August-2015 | 32 | 0 | 53 | 0 | 0 | 105 | 0 | 0 | 97 | 0 | 0 | 1,412 | 1 | 84 | 37 | 329 | 0 | 0 | 16 | 422 | 2,356 | 4,944 |
| September-2015 | 72 | 2 | 107 | 0 | 0 | 239 | 0 | 0 | 228 | 0 | 0 | 3,167 | 4 | 167 | 95 | 691 | 0 | 0 | 54 | 428 | 5,098 | 10,352 |
| October-2015 | 77 | 0 | 94 | 0 | 0 | 216 | 0 | 0 | 242 | 0 | 0 | 3,920 | 1 | 140 | 98 | 620 | 0 | 0 | 23 | 1,264 | 5,564 | 12,259 |
| November-2015 | 77 | 1 | 105 | 0 | 0 | 183 | 0 | 0 | 183 | 0 | 0 | 3,145 | 2 | 113 | 87 | 610 | 0 | 0 | 10 | 584 | 5,029 | 10,129 |
| December-2015 | 123 | 0 | 209 | 0 | 0 | 313 | 0 | 0 | 288 | 0 | 0 | 6,236 | 1 | 231 | 194 | 1,045 | 0 | 0 | 14 | 717 | 7,856 | 17,227 |
| January-2016 | 65 | 0 | 127 | 0 | 0 | 147 | 0 | 0 | 217 | 0 | 0 | 3,083 | 3 | 201 | 254 | 675 | 3 | 0 | 16 | 1,568 | 5,692 | 12,051 |
| February-2016 | 78 | 0 | 171 | 0 | 0 | 225 | 0 | 0 | 299 | 0 | 0 | 4,911 | 3 | 316 | 159 | 1,347 | 1 | 1 | 78 | 1,399 | 8,853 | 17,841 |
| March-2016 | 63 | 0 | 111 | 0 | 0 | 141 | 0 | 0 | 318 | 0 | 0 | 3,912 | 4 | 264 | 101 | 1,116 | 4 | 0 | 29 | 2,571 | 9,528 | 18,162 |
| April-2016 | 121 | 0 | 177 | 0 | 0 | 212 | 0 | 0 | 407 | 0 | 0 | 5,664 | 10 | 419 | 931 | 2,001 | 1 | 0 | 4 | 2,210 | 13,500 | 25,657 |
| May-2016 | 133 | 0 | 160 | 0 | 0 | 262 | 0 | 0 | 416 | 0 | 0 | 7,316 | 21 | 430 | 155 | 1,935 | 1 | 0 | 5 | 1,923 | 13,845 | 26,602 |
| June-2016 | 132 | 0 | 208 | 0 | 0 | 316 | 0 | 0 | 445 | 0 | 0 | 7,585 | 14 | 474 | 234 | 1,755 | 2 | 0 | 33 | 968 | 12,946 | 25,112 |
| July-2016 | 155 | 0 | 159 | 0 | 0 | 354 | 0 | 0 | 336 | 0 | 0 | 6,711 | 5 | 323 | 297 | 1,357 | 3 | 0 | 17 | 847 | 10,679 | 21,243 |
| August-2016 | 201 | 0 | 200 | 0 | 0 | 358 | 0 | 0 | 435 | 0 | 0 | 11,479 | 8 | 445 | 347 | 1,577 | 2 | 0 | 50 | 2,009 | 13,279 | 30,390 |
| September-2016 | 292 | 0 | 334 | 0 | 0 | 455 | 0 | 0 | 629 | 0 | 0 | 12,442 | 9 | 450 | 3,170 | 2,365 | 0 | 0 | 31 | 2,293 | 18,810 | 41,280 |
| October-2016 | 271 | 0 | 253 | 0 | 0 | 357 | 0 | 0 | 621 | 0 | 0 | 10,596 | 7 | 394 | 3,734 | 2,253 | 4 | 0 | 35 | 3,481 | 20,526 | 42,532 |
| November-2016 | 204 | 0 | 227 | 0 | 0 | 250 | 0 | 0 | 496 | 0 | 0 | 8,714 | 5 | 282 | 2,711 | 1,559 | 2 | 0 | 65 | 1,800 | 14,216 | 30,531 |
| December-2016 | 53 | 0 | 55 | 0 | 0 | 82 | 0 | 0 | 215 | 0 | 0 | 2,609 | 5 | 132 | 407 | 468 | 0 | 0 | 40 | 741 | 6,989 | 11,796 |
| January-2017 | 142 | 0 | 145 | 0 | 0 | 226 | 0 | 0 | 364 | 0 | 0 | 6,188 | 11 | 292 | 576 | 971 | 0 | 0 | 19 | 1,904 | 9,016 | 19,854 |
| February-2017 | 60 | 0 | 89 | 0 | 0 | 78 | 0 | 0 | 210 | 0 | 0 | 3,089 | 2 | 236 | 177 | 684 | 0 | 0 | 54 | 2,733 | 6,286 | 13,698 |
| March-2017 | 12 | 0 | 14 | 0 | 0 | 7 | 0 | 0 | 58 | 0 | 0 | 499 | 0 | 58 | 33 | 120 | 0 | 0 | 19 | 530 | 1,691 | 3,041 |
| April-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 0 | 46 |
| May-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 26 |
| June-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57 | 0 | 0 | 57 |
| July-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 |
| August-2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 2 |
| Total | 20,150 | 7 | 11,757 | 2,100 | 102 | 10,489 | 138 | 116 | 12,676 | 1,950 | 4,108 | 184,846 | 883 | 11,777 | 16,964 | 39,935 | 38 | 3 | 3,172 | 46,932 | 297,038 | 665,181 |