Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
Lawrence K. Iglesias - 303700
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com
liglesias@ellislawgrp.com

Attorneys for Rash Curtis RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA McMILLION, JESSICA ADEKOYA, AND IGNACIO PEREZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>          Rash Curtis. | Case No.: 4:16-cv-03396-YGR JSC<br><br>**RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD PURSUANT TO CIVIL L.R. 6-3 AND 7-11** |

## I. INTRODUCTION

On November 6, 2018, this Court issued its Case Management and Pretrial Scheduling Order No. 2. (Declaration of Mark E. Ellis ("Ellis Decl."), ¶ 2; **Exhibit 1**, 11/6/18 Order, ECF Doc. No. 246.) In the Court's Order, it set *Daubert* motions to be heard on March 19, 2019, and trial to begin on May 6, 2019, or some *forty-eight days later*. (*Id.*)

On November 12, 2018, Plaintiff filed his proposed Class Notice, which proposed a **sixty day opt out period**, knowing that the Court's Pretrial Scheduling Order only left forty-eight days between the hearings on Defendant's *Daubert* motions and the start of trial. (Ellis Decl., ¶ 3; **Exhibit 2**, Plaintiff's Proposed Class Notice, ECF Doc. No. 249, p. 7, filed on 11/12/18.)

On January 28, 2019, Rash Curtis filed its *Daubert* motions to strike some or all of the opinion testimony of all three of Plaintiff's experts, set to be heard on March 19, 2019. Important to this motion is the fact that Plaintiff's proposed class notice plan is wholly dependent on Plaintiff's experts' testimony as to their ability, through their proposed methodologies, to accurately identify the correct class members. (*See* **Exh. 2**, Proposed Class Notice, ECF Doc. No. 249 *passim*.)

Now Plaintiff brings an administrative motion to "shorten time" to try and push through a class notice plan even before Rash Curtis's *Daubert* motions are heard, and hard upon the trial date.

Defendant submits that the Court should not rule on Plaintiff's proposed notice plan before the Court rules on Rash Curtis's *Daubert* motions on March 19, 2019. Plaintiff's proposed notice plan depends upon the same testimony and the unreliable methodologies, used by Plaintiff's experts (as discussed in great detail in Rash Curtis's *Daubert* motions).

## II. LEGAL STANDARD

"[T]he **court** must direct to class members the best notice that is practicable under the circumstances,…". Fed. R Civ. P. 23(c)(2)(B) (emphasis added).

Civil Local Rule 6-3, governing motions to change time, requires among other things that the moving party set forth with particularity the reasons for the requested shortening of time, describe the efforts the party has made to obtain a stipulation to the time change, and to identify the substantial harm or prejudice that would occur if the Court did not change the time. Civ. L.R. 6-3.

- 1 -

RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD

## III. ARGUMENT

Plaintiff's administrative motion to shorten time is not a motion to shorten any timeframe or deadline imposed by this Court or the federal rules. *Cf.* Civ. L.R. 6-3. Instead, Plaintiff's administrative motion seeks to amend his own proposed class notice plan, and is an attempt to persuade the Court to grant Plaintiff's proposed class notice plan ***before*** Rash Curtis's *Daubert* motions are even heard. Plaintiff is also attempting to circumvent this Court's November 6, 2018 Pretrial Scheduling Order No. 2, which set the hearing on *Daubert* motions for March 19, 2019. (**Exh. 1,** 11/6/18 Order.)

Notably, Plaintiff filed his Proposed Notice on November 12, 2018 proposing ***a 60 day*** opt out period ***after*** the Court's November 6, 2018 Pretrial Scheduling Order had been issued. In other words, Plaintiff already knew that the Court's Pretrial Scheduling Order did not provide for 60 days between the hearings on the *Daubert* motions and the trial date. Plaintiff's request frankly appears to be an attempt to circumnavigate Rash Curtis' *Daubert* challenges to his experts, upon whose opinion testimony his classes are predicated, and this should not be permitted.

As the Court is aware, Rash Curtis contends that Plaintiff's experts' methodology for identifying the class is overbroad and unreliable because it is based off of an erroneous assumption, to wit: that ***each and every*** phone number stored in Rash Curtis' phone fields 5-10 was obtained by skip tracing. The analytical gap in Plaintiff's reasoning is evident from his motion for proposed class notice which asserts:

> Plaintiff has identified class membership in part based on Rash Curtis's account records and account classification procedures. Telephone numbers that Rash Curtis obtains from creditors are placed into phone fields 1-4, while phone numbers that Rash Curtis obtains through skip tracing are placed into phone fields 5-10. Rash Curtis produced account records for all phone numbers contained in phone fields 1-4 and fields 5-10 within the class period. [¶] Plaintiff's expert, Colin B. Weir, eliminated all instances of accounts where a number in phone fields 5-10 also appeared in phone fields 1-4. **This process eliminated all numbers within the dataset that Rash Curtis may have obtained from a creditor**. [Emphasis added.]

(**Exh. 2,** 11/12/18 Proposed Notice, p. 2, internal citations to evidence omitted, emphasis added.)

Plaintiff's conclusion (quoted in bold-face above) is ***not*** supported by the evidence, and it is untrue. While it is true that Rash Curtis reserves fields 1-4 for phone numbers it obtains from its creditor-clients with prior express consent, *it is not likewise true that **all** phone numbers stored in fields*

- 2 -

*5-10 are obtained through skip tracing*. Nor is it true that Mr. Weir's removal of duplicate numbers found in both fields 1-4 and 5-10 "eliminated all numbers within the dataset that Rash Curtis may have obtained from a creditor" as Plaintiff asserts. Phone numbers stored in fields 5-10 come from a ***variety of sources***, and they include a mish-mash of numbers obtained from sources wholly unrelated to skip tracing. Plaintiff's key witness, Steve Kizer, testified that:

> Q: Where do those numbers come from?
>
> A: **Those numbers can come from a variety of sources**. Let me give you some examples: **They can come from the client; client supplied**. I went to the doctor and they said in emergency you can then call – you can call my mom; you can call my sister; you can call my best friends. Here are their phone numbers. I can incur a debt for a water bill with the City of Antioch, and they'll ask for four or five – I forget what it is – **reference numbers**. Who can we call in case we can't reach you, type of speech. Those numbers should be in Phone Fields 4 through 5 – or 4 through 10, I'm sorry, over on the side. … You can get them by skip tracing. … **You can also get phone numbers when you talk to John Doe or the wife**. I talked to John and John says, hey, look, I need to make payments. I say, no problem John. You can make $100 payments. I'll go and grab the checkbook and get you set up. And while I have you on the phone, in case something should happen in the future like your cell phone should no longer work or your home should get disconnected, or I just need to reach you to talk about your payments, what other number can I call you at, what other number can I leave a message at. **He may also supply additional phone numbers**.

(Ellis Decl., ¶ 4; **Exhibit 3**, 4/13/17 Deposition of Steve Kizer, pp. 70:11-72:15, emphasis added.)

In short, Mr. Kizer testified that phone numbers stored in fields 5-10 are not obtained *solely* from skip tracing only; rather, he noted: "**[t]hey could have come in 100 different ways. It could have even been given to us by the client.**" (Ellis Decl., ¶ 5; **Exhibit 4**, 7/6/17 Deposition of Steve Kizer, p. 269:9-15, emphasis added.) Plaintiff's experts' assertions that their methodologies have eliminated all phone numbers Rash Curtis may have obtained from its creditor-clients is false if Mr. Kizer's testimony is true. (*Id.*) Indeed, Mr. Weir conceded he was not "asked to opine about what a number being in phone fields one through four means, or five through ten means." (Ellis Decl., ¶ 6; **Exhibit 5**, 12/11/18 Deposition of Colin Weir, p. 62:17-20.) Plaintiff has distorted the testimony of his own expert. Plaintiff has been aware that phone fields 5-10 were used to store non skip-traced phone numbers from a "variety of sources" (even including phone numbers "obtained from a creditor") *for almost two years*. Yet, Plaintiff is apparently bent on misleading the Court that there is a one-to-one

- 3 -

RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD

correlation between phone fields 5-10 and skip tracing. There is no evidence supporting this assumption

Rash Curtis submits that Plaintiff's instant administrative motion to "shorten time" is probably brought for the purpose of attempting to obtain permission from the Court to send his proposed class notice to a group of persons broader than the class is defined, and before Rash Curtis's *Daubert* motions are heard. This is likely because Plaintiff is seeking to find a new class representative, knowing that the class list, created by Anya Verkhovskaya, ***does not even contain the name of Plaintiff Ignacio Perez, or his 5193 phone number in dispute!*** (Ellis Decl., ¶ 7; **Exhibit 6,** excerpts from Plaintiff's proposed class list, organized sequentially by phone number, and devoid of the 9162715193 number, p. 848, skipping from 9162715053 directly to 9162715257.) In short, according to Plaintiff's experts, Mr. Perez is not a member of the very class he purports to represent! (*Id.*)

Rash Curtis is not merely speculating that Plaintiff's proposed class list is overbroad. Plaintiff's class list, which is based on Snyder's, Weir's, and Verkhovskaya's methodologies rests on the assumption that **all** numbers in phone fields 5-10 correlate to numbers obtained by skip tracing. But Mr. Kizer testified this was not true. Indeed, as one example, Plaintiff's class list contains the name and phone number of at least one person (Diane Steele) whose phone number we know was not skip traced, and thus, she could never be a member of any of the certified classes. (**Exh. 6**, p. 930.) Debtor Diane Steele voluntarily provided her cell phone number (ending in 6429) to her creditor, and Rash Curtis's client, Contra Costa County Health Services. (Ellis Decl., ¶ 8; **Exhibit 7**, Hospital Demographic Information for Diane Steele.) As it just so happens, Ms. Steele previously sued Rash Curtis alleging *inter alia* that Rash Curtis had violated the TCPA by calling her cell phone number after she had revoked her prior express consent. (Ellis Decl., ¶ 9; **Exhibit 8**, Complaint entitled *Steele v. Rash Curtis & Associates,* filed 12/15/17, Eastern District of California, Case No. 2:17-cv-02626-JAM-AC, at p. 3, ¶ 10.)

Notably, Ms. Steele never contested that Rash Curtis originally obtained her prior express consent to call the 6429 number from its creditor-client. And yet, the phone number appears on Plaintiff's class list only because Ms. Steele's spouse, Steve Milligan, was a joint cell phone subscriber.

- 4 -

RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD

Milligan too had provided the same phone number to the same creditor, who in turn, provided it to Rash Curtis. (Ellis Decl., ¶ 10; **Exhibit 9**, Hospital Demographic Information for Steve Milligan.) In other words, the 6429 number was voluntarily provided to Contra Costa County Health Services who referred Steele and Milligan's respective accounts for collection to Rash Curtis; it was <u>not</u> obtained through skip tracing. But Steele's number was nevertheless picked up by Plaintiff's experts' proposed methodology for identifying (a) "non-debtor" class members whose phone numbers were, (b) obtained through skip tracing. Ms. Steele was clearly a debtor, her number was clearly not obtained through skip tracing, and Rash obtained it **<u>with consent</u>**. (**Exh. 8**.) These issues, fully briefed in Rash Curtis' *Daubert* motions, must be ruled on before class notice is disseminated.

More damning, however, is the fact while Steele is improperly listed as a non-debtor (when she was) and as someone who did not give consent (when she did) and whose number was stored in fields 5-10 (it was also in fields 1-4, since she gave it with consent), class representative Perez' cell number was ***never*** in phone fields 5-10 as it was not obtained through skip tracing. (*See* **Exh. 6,** p. 848, skipping from 9162715053 directly to 9162715257, ***and not containing Mr. Perez' number, 9162715193***.) Even Plaintiff's overbroad, redefined "fields 5-10" class does not include Mr. Perez.

The Court should deny Plaintiff's belated administrative motion, so as to first rule on Rash Curtis's *Daubert* motions - before making any decision about class notice. Fed. R. Civ. P. 23(c)(2)(b). (**Exh. 1.**) To rule on class notice, and send it out before the *Daubert* motions, wastes judicial and the parties' resources, and puts the class notice cart before the *Daubert* horse.

Plaintiff's proposed class notice is the product of unreliable methodology and a lack of correlation between skip tracing and the numbers stored in fields 5-10. Rash Curtis is entitled to be heard on these issues before Plaintiff sows the toxic seed of an overbroad class notice. Fed. R. Evid. 702. Allowing Plaintiff to disseminate the proposed class notice to this overbroad and flawed list of purported class members will cause irreparable harm to Rash Curtis. Neither the parties, nor the Court, can "unring the bell" once a class notice is sent. Plaintiff was aware that there would be fewer than sixty days between the hearing on *Daubert* motions and trial at the time he filed his proposed class notice with a 60-day opt out period.

- 5 -

RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's administrative motion.

Dated: March 8, 2019

                        ELLIS LAW GROUP LLP

                        By _____
                            Mark E. Ellis
                            Attorney for Rash Curtis
                            RASH CURTIS & ASSOCIATES

RASH CURTIS' OPPOSITION TO PLAINTIFF'S REQUEST THAT THE COURT APPROVE THE PENDING NOTICE PLAN AND MOTION TO SHORTEN DURATION OF CLASS NOTICE PERIOD