**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IGNACIO PEREZ,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**RASH CURTIS & ASSOCIATES,**<br><br>Defendant**.** | CASE NO. 16-cv-03396-YGR<br><br>**PRETRIAL ORDER NO. 2 RE: *DAUBERT* MOTIONS, SELECT MOTIONS *IN LIMINE*, AND PROPOSED JURY INSTRUCTIONS & QUESTIONNAIRE**<br><br>Re: Dkt. Nos. 252, 253, 254, 262, 285, 286, 293, 295 |

Plaintiff Ignacio Perez[1] bring this class action against defendant Rash Curtis & Associates ("Rash Curtis") alleging that defendant called plaintiff and class members without consent.[2]

On September 6, 2017, the Court certified four classes including Perez as a class representative, both for injunctive relief pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3).[3] (Dkt. No. 81, ("Cert. Order").) On February 2, 2018, the Court ruled on the parties' cross-motions for summary judgment. (Dkt. No. 167 ("SJ Order").) In that order, the Court granted plaintiffs' motion for partial summary judgment regarding the dialer systems Rash Curtis used to make the phone calls at issue and held that those dialers constitute Automatic Telephone Dialing Systems ("ATDSs") within the meaning of the TCPA. (*Id.* at 2.) The Court also granted plaintiffs' motion for partial summary judgment on the issue of prior express consent regarding

---

[1] On March 5, 2019, parties stipulated to voluntary dismissal of prior plaintiffs Sandra McMillion and Jessica Adekoya. (*See* Dkt. No. 292.)

[2] More specifically, plaintiff allege violations of the (i) Telephone Consumer Protection Act, 47 U.S.C. Sections 227, *et seq.* (the "TCPA"); (ii) Fair Debt Collection Practices Act, 15 U.S.C. section 1692, *et seq*. (the "FDCA"); and (iii) the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code section 1788, *et seq*., (the "Rosenthal Act"). (Dkt. No. 1 ("Compl.").)

[3] Plaintiffs moved for class certification with respect to their TCPA claims noting their intent to pursue the FDCPA and Rosenthal Act claims on an individual basis. (Dkt. No. 66 at 2.)

Perez and held that Rash Curtis never possessed prior express consent to call Perez himself. (*Id.* at 3, 11, 12.) On June 18, 2018, the Court denied Rash Curtis's motion to reconsider its summary judgment order. (Dkt. No. 199 ("Reconsideration Order").) On January 23, 2019, the Court denied plaintiffs' motion for terminating sanctions. (Dkt. No. 250, ("Sanctions Order").)

Now before the Court are defendant's *Daubert* motions to strike and exclude the opinions of plaintiff's expert witnesses Randall A. Snyder (Dkt. No. 254 ("Snyder Motion")), Anya Verkovskaya (Dkt. No. 252 ("Verkovskaya Motion")), and Colin B. Weir (Dkt. No. 253 ("Weir Motion")).[4] In addition, in anticipation of trial, the parties have filed motions *in limine* (Dkt. No. 261, 262) and proposed jury instructions (Dkt. No. 285 ("Jury Instructions")).

Having carefully reviewed the pleadings, the papers submitted, and oral arguments on March 19, 2019 and March 29, 2019, and for the reasons set forth more fully below, the Court **DENIES** defendant's motions to strike or exclude and addresses the relevant motions *in limine* and proposed jury instructions and objections thereto as described below.

## MOTIONS TO STRIKE AND EXCLUDE EXPERTS

### I. BACKGROUND

The background giving rise to this action is well-known and the Court will not repeat it here.[5] (*See, e.g.*, SJ Order at 3-5.) Further, it has been a particularly litigious case.

Relevant to the instant *Daubert* motions, plaintiff offers in support of its case the opinions of three experts: Randall A. Snyder (Dkt. Nos. 254-2, 254-3 ("Snyder Rep.")), Anya Verkovskaya (Dkt. No. 252-2 ("Verkovskaya Rep.")), and Colin B. Weir (Dkt. No. 253-2 ("Weir Rep.")).

---

[4] Also before the Court are two administrative motions. (Dkt. Nos. 293, 295.) As stated on the record during the March 19, 2019 hearing, and confirmed herein, having carefully considered the briefing and arguments submitted, the Court **GRANTS** plaintiff's administrative motion to shorten the duration of the class notice period and **DENIES** defendant's administrative motion for leave to file a decertification motion.

[5] Plaintiff alleges that defendant repeatedly called him on his telephone using an ATDS and/or an artificial or prerecorded voice. (Compl. ¶¶ 2, 4, 6.) Plaintiff offers evidence that to make these calls, defendant employs three dialers, namely, the (i) DAKCS/VIC Software System ("DAKCS/VIC"), (ii) Global Connect system ("Global Connect"), and (iii) TCN (collectively, "Dialers"). Parties have extensively litigated defendant's use and the function of these Dialers. (*See* SJ Order, Reconsideration Order, Sanctions Order.)

Defendant now moves to strike from the record the testimony of and exclude from testifying at trial all three experts. (*See, e.g.*, Snyder Motion at 1.)

All three motions focus primarily on plaintiff's experts' methodology for identifying which telephone numbers in Rash Curtis' account database Rash Curtis obtained via skip-tracing and any analysis or opinion based thereupon. (*See, e.g. id.* at 2-8.) Defendant's account database supports storage of up to ten "telephone number" fields for each account. (Dkt. No. 212 at 3.) Telephone fields numbers 1 through 4 are reserved for phone numbers that defendant purportedly receives from its creditor-clients, whereas phone numbers obtained via skip tracing are loaded into phone fields 5 through 10. (*See* Dkt. No. 212-1, Ex. 2 at 14:11-15:7, 15:14-16) ("[P]hone field 1 through 4 are what comes in from the client, whatever phone number comes in from the client.").)

Plaintiff's experts rely on the data in defendant's account database, and inferences extracted therefrom, to determine which and how many phone numbers allegedly called by defendant were obtained using skip-tracing. (Snyder Rep. ¶¶ 83-101.) This information also forms the basis of plaintiff's process for identifying class members, tabulating class size, and estimating class damages.[6] (*See* Verkovskaya Rep.; Weir Rep.) Defendant's *Daubert* motions contend that in forming their opinions and conducting their analysis, plaintiff's experts rely on a *false* assumption that Rash Curtis obtained <u>each, and every</u> phone number placed in fields 5 through 10 via skip-tracing, despite the fact that defendant's representatives have suggested that "not every number in [fields 5 through 10] was obtained through skip-tracing." (Snyder Motion at 2.) These opinions were developed over the course of the litigation and in light of the information disclosed by defendant.

## II. LEGAL STANDARD regarding EXPERT OPINIONS

Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the witness is qualified, and their opinion is relevant and reliable. An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702. Fed. R.

---

[6] The four classes certified in this case are each limited to persons whose phone numbers Rash Curtis obtained through skip tracing. (*See* Cert. Order at 15-16.)

3

Evid. 702, Advisory Committee Notes (2000 amendments). An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable. *See Thompson v. Whirlpool Corp.*, 2008 WL 2063549, at *3 (W.D. Wash. 2008) (citing *Daubert*, 509 U.S. at 589–90). The trial judge has discretion to determine reasonable measures of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

**III. ANALYSIS**

**A. Opinion of Randall A. Snyder**

Snyder's opinion addresses:

(1) the functions of automatic telephone dialing (Snyder Rep. ¶¶ 17-31);

(2) the reliability of dialing system software manuals and user guides (*id.* ¶¶ 32-37);

(3) the nature and function of the specific dialing systems allegedly used by defendants (*id.* ¶¶ 38-58);

(4) defendant's use of a prerecorded voice when calling landline and cellular numbers (*id.* ¶¶ 59-65);

(5) the nature and function of call detail records ("CDRs"), including the ascertainability of the origin of the phone numbers contained therein, namely whether the numbers were obtained via skip-tracing (*id.* ¶¶ 66-101);

(6) whether plaintiff Perez meets the general requirements of a representative class member, including that defendant obtained his phone number via skip-tracing (*id.* ¶¶ 102-106); and

(7) defendant's knowledge that its conduct violated the TCPA (*id.* ¶ 107).[7]

Defendant devotes the bulk of its motion to its argument the Court should strike and exclude Snyder's testimony regarding (5) the nature and function of CDRs and (6) Perez's satisfaction of the class representative requirements. Defendant contends that Snyder's "opinions regarding skip-

---

[7] The Court notes that plaintiff has agreed to exclude the opinion presented in paragraph 107 of Snyder's report. Accordingly, the Court **DENIES AS MOOT** defendant's motion with respect to that opinion.

4

tracing lack foundation and are subject to a speculative 'analytical gap' that cannot be crossed with the facts which were given and upon which he relied." (Snyder Motion at 2.) Specifically, defendant argues that Snyder's opinion relies on a false assumption that Rash Curtis used skip-tracing to obtain each and every one of the numbers found in fields 5 through 10 of defendant's account database. (*Id.*) Defendant contends that although fields 5 through 10 "contain skip-traced numbers, not every number in those fields was obtained through skip-tracing." (*Id.*) Therefore, according to Rash Curtis, because Snyder did not request or obtain the documents necessary to determine accurately which phone numbers were procured through skip-tracking, his opinions regarding the ascertainability of the proposed class members and the suitability of plaintiff Perez as a class representative are speculative, unsupported, and lacking adequate foundation. (*Id.* at 6.)

Plaintiff disputes Rash Curtis' assertion that Snyder so improperly relied. (Dkt. No. 257 ("Snyder Opp.") at 18.) However, the Court need not resolve the accuracy of defendant's contention because any arguments that Snyder based his opinions on an improper assumption go to the weight, not the admissibility of his testimony. *See California v. Kinder Morgan Energy Partners, LP*, 613 Fed.Appx. 561, 564 (9th Cir. 2015) (finding that the validity of an assumption underlying an expert's opinion goes to the weight and not admissibility of that opinion); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (stating that under *Daubert*, "[t]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable") (internal quotations omitted).

Defendant also argues that the Court should also strike and exclude Snyder's opinion regarding the dialing system itself, namely topics (1), (2), (3), and (4). (Snyder Motion at 6-8, 21-23.) Specifically, Rash Curtis avers that Snyder's testimony regarding automatic telephone dialing and dialing systems, including the Dialers used by defendant will not aide the trier of fact because the Court has already determined that Rash Curtis's Dialers constitute ATDSs within the meaning of the TCPA. (*Id.* at 22.) Defendant also argues that these opinions should be excluded on the grounds that Snyder based them on nothing more than his review of the Dialers' manuals and failed to inspect the actual equipment. (*Id.* at 7.)

As a preliminary matter, the Court notes that much of Snyder's testimony regarding

automatic telephone dialing and dialers represents general background information not specific to this case or the Dialers at issue. (*See* Snyder Rep. ¶¶ 17-37.) Moreover, Snyder's testimony regarding the specific Dialers at issue here, including their capacity to use a prerecorded voice, does not, as defendant contends, assert an impermissible legal conclusion that those dialers constituted ATDSs within the meaning of the TCPA. (*See* Snyder Rep. ¶¶ 38-65.) He discusses only the Dialers' function and capacities. (*See id.*) As the function and capacities of these devices bear on the central factual issues before the trier of fact, Snyder's opinions on these topics are relevant. **The Motion is Denied.**

### B. Opinion of Colin B. Weir

Weir's report identifies 534,698 autodialed calls made to telephone numbers belonging to class members. (*See* Weir Rep. ¶ 15.) In so tabulating, Weir used Rash Curtis' account database. Specifically, Weir aggregated a list of phone numbers appearing in phone fields 5 through 10 and subtracted from that list those numbers also appearing in fields 1 through 4. (*Id.* ¶ 9.) This calculation resulted in a list of 1,484,646 unique phone numbers. (*Id.*) Following additional calculations, Weir determined that Rash Curtis placed 534,698 calls to class members using one of the Dialers. (*Id.* ¶ 15.)

In attacking's Weir's method for calculating the number of calls made to class members' numbers, defendant again argues that Weir improperly assumed that Rash Curtis obtained every number found in phone fields 5 through 10 via skip-tracing. (Weir Motion at 4.) Instead, Rash Curtis avers, "the phone numbers stored in fields five through ten come from a variety of sources." (*Id.* at 5.) Defendant further suggests that Weir's methodology "is nothing more than simple multiplication and will not assist the trier of fact[.]" (*Id.*)

As discussed above, defendant's argument that Weir's methodology relied on a false assumption that Rash Curtis obtained all of the numbers maintained in phone fields 5 through 10 via skip-tracing goes to the weight, not the admissibility, of Weir's opinion. *See also Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) (noting that issues regarding the correctness of an expert's opinion, as opposed to its relevancy and reliability, "are a matter of weight, not admissibility"). Additionally, the Court disagrees with defendant's

characterization of the complexity of the calculations underlying Weir's analysis. While a juror may be able to do simple math calculations, it would be unreasonable to expect jurors to analyze over a million telephone calls. Thus, in this context, the Court finds the opinions regarding the comparison, tabulation, and multiplication of the telephone calls at issue is within the scope of Rule 702. **The Motion is Denied.**

### C. Opinion of Anya Verkovskaya

Verkovskaya's class member data tabulation report opines on the number of wireless telephone numbers belonging to individuals other than the debtors associated with the number in defendant's database and called by defendant within the class period.[8] (*See* Verkovskaya Rep.) She so calculates using the defendant's debtor database information. (*See id.*) Defendant again argues that Verkovskaya's tabulation "lacks foundation and is subject to a speculative 'analytical gap' that cannot be crossed with the facts which were given and upon which she relied." (Verkovskaya Motion at 1.) As with Snyder and Weir's opinions, Rash Curtis avers that Verkovskaya's analysis relies on a false assumption that "*every* number found in phone fields 5 through 10 . . . was skip[-]traced[.]" (*Id.*) Defendant also contends that Verkovskaya's methodology uses an algorithm that is "not testable" and "is also based on other 'blackbox' information and unobservable, proprietary processes of LexisNexis and others." (Verkovskaya Motion at 6.)

As discussed above, defendant's argument that Verkovskaya's methodology relied on a false assumption that Rash Curtis obtained all of the numbers maintained in phone fields 5 through 10 via skip-tracing goes to the weight, not the admissibility, of her opinion. The same is true of defendant's argument that the third-party sources Verkovskaya used provided inaccurate data. *See Krakauer v. Dish Network L.L.C.*, No. 1:14-cv-333, 2015 WL 5227693, at *8-9 (M.D.N.C. Sept. 8, 2015) (declining to exclude opinion of Verkovskaya based on argument that she did not test the reliability of data from Lexis or Nexxa). **The Motion is Denied.**

---

[8] Verkovskaya identified 40,420 telephone numbers that fit these criteria. (Verkovskaya Rep. ¶ 26.)

7

**PLAINTIFF'S MOTIONS *IN LIMINE***

As a preliminary matter, the Court confirms in light of defendant's withdrawals, plaintiff withdrew Motions *in limine* Nos. 4 and 7. (*See* Dkt. No. 303 at 15:2-3, 23:6-16.) In addition, as reflected in the Amended Exhibit List, defendant has withdrawn exhibits 501, 502, 514, and 515, accordingly that portion of Motion *in Limine* No. 5 is moot. (*See* Dkt. No. 304.)

Plaintiff's Motion *in Limine* No. 3 to preclude defendant from introducing needlessly cumulative trial testimony and wasting the jury's time is **DENIED WITHOUT PREJUDICE** to reasserting at trial. The fact that multiple witnesses may testify as to similar material is not in and of itself cumulative. Further the Court has imposed time limits to ensure that the parties are being efficient with the presentation of evidence. *See U.S. v. Elksnis*, 528 F.2d 236, 239 (9th Cir. 1975) ("The district court has considerable discretion even with admittedly relevant evidence in rejecting that which is cumulative.").

Plaintiff's Motion *in Limine* No. 5 as it relates to exhibits 580 and 581 is **DENIED WITHOUT PREJUDICE** to reasserting at trial given the defendant's proffer that such documents would only be used for impeachment or rebuttal purposes. Obviously, defendant would have to have the proper foundation even in that context.

Plaintiff's Motion *in Limine* No. 6 to preclude defendant from introducing evidence regarding a purported "good faith defense" to make autodialed calls to plaintiff and class members is **GRANTED IN PART** and **DENIED IN PART**.

With respect to plaintiff Perez, defendant may not assert that it acted in good faith in calling Perez and therefore is not liable under the TCPA to him for the calls. However, Rash Curtis may argue that because it had a good faith belief that it possessed prior express consent to call the phone number belonging to plaintiff Perez, defendant is not liable for treble damages under the statute. The Court has previously ruled that Rash Curtis did not have prior express consent to call plaintiff Perez. (SJ Order at 11-12; *see also* Reconsideration Order.) Therefore, defendant may not assert a good faith defense as to whether Rash Curtis violated the TCPA by calling plaintiff Perez. However, whether Rash Curtis had a good faith belief that it possessed prior express consent to call the phone number belonging to plaintiff Perez bears on plaintiff's

claim for treble damages, which requires that a defendant engaged in *knowing and/or willful* violations of the TCPA. *See* Compl. ¶ 60; *see also* 47 U.S.C. § 227(b)(3)(C).

With respect to the class, defendant may present evidence that it had prior express consent to call class members. As, the TCPA specifically exempts a caller from liability if the caller has received "prior express consent" from the *recipient* to be called. 47 U.S.C. § 227(b)(1)(A). The Ninth Circuit has not addressed whether other general good faith defenses may be raised in a TCPA claim. *See Springer v. Fair Isaac Corp.*, No. 14-cv-02238-TLN-AC, 2015 WL 7188234, \*3 (E.D. Cal. Nov. 16, 2015). Accordingly, courts within the Ninth Circuit have allowed for TCPA defendants to raise prior express consent defenses, which is a form of good faith defense. *Scatterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Reardon v. Uber Technologies, Inc.*, No. 14-CV-05678-JST, 2015 WL 4451209, at \*6 (N.D. Cal. July 19, 2015); *Chyba v. First Financial Asset Management, Inc.*, No. 12-cv-1721-RTB (WVG), 2014 WL 1744136, at \*10 (S.D. Cal. Apr. 30, 2014). Moreover, for the same reasons regarding treble damages stated above, even if defendant does not have evidence of prior express consent to call class members, Rash Curtis may present evidence that it had a good faith *belief* that it possessed prior express consent to a phone number belonging to a class member and is therefore not liable for treble damages under the TCPA.

Plaintiff's Motion *in Limine* No. 8 to preclude defendant and its counsel from making any statements or arguments to the jury regarding defendant's ability to pay any judgment in this case or the impact a significant verdict could have on defendant's business is **GRANTED.** The parties now agree that the Court will determine damages after findings by the jury. (*See* Dkt. No. 309 60:25 – 61:1-7.) Accordingly, any such statements are irrelevant and lack probative value.

The Court will address plaintiff's Motions *in limine* Nos. 1, 2, and 9 and defendant's corresponding Motion *in limine* No. 1 in a separate order.

\\
\\
\\
\\

9

**JURY INSTRUCTIONS**

As a preliminary matter, the Court notes that parties have agreed on joint proposed jury instructions numbers 1-28, 31, and 32. (*See* Jury Instructions at 1-2.) Moreover, prior to distribution of the final jury instructions to the jury, the Court will provide parties a draft of the instructions as well as an opportunity for comment and discussion. In advance of that distribution, the Court addresses parties' disputed proposed jury instructions.

Regarding Proposed Instruction No. 29, the Court has already determined that:

(1) Rash Curtis did not have prior express consent to call plaintiff Perez's cellular telephone (*see* SJ Order 11-12; *see also* Reconsideration Order);

(2) the Dialers used by Rash Curtis are ATDSs within the meaning of the TCPA (*see* SJ Order at 6-8; *see also* Reconsideration Order); and

(3) plaintiff Perez is a proper class representative (*see* Cert. Order at 11-12 ).

Accordingly, the Court will not instruct the jury that each of these assertions constitute an affirmative defense that defendant may prove at trial. However, as noted above, Rash Curtis may assert, as a defense to liability for treble damages *only*, that defendant acted in a good faith belief that it had prior express consent to call Perez's phone and, therefore, did not knowingly or willfully violate the TCPA with respect to Perez. The Court will instruct the jury accordingly.

Regarding Proposed Instruction No. 30, the Court will adopt an instruction similar to that proposed by plaintiff. Prior express consent, or lack thereof, is not an element of a TCPA claim but an affirmative defense against such a claim. 47 U.S.C. § 227(b)(1)(A).

The Court **DENIES** plaintiff's objection to defendant's Proposed Instruction No 33 and will allow the jury to ask questions of the witnesses, and the parties, during trial and will instruct the jury accordingly.

The Court **GRANTS** plaintiff's objection to defendant's Proposed Instruction No. 34 and will not instruct the jury on the definition of an ATDS. The Court has already determined, as a matter of law, that the Dialers at issue in this case are ATDSs as defined by the TCPA. (*See* SJ Order at 6-8; *see also* Reconsideration Order.)

The Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's objection to

defendant's Proposed Instruction No. 35. As noted above with respect to plaintiff's Motion *in limine* No. 6, because the Court has already decided that defendant *did not* possess prior express consent to call plaintiff Perez, defendant may not assert that it acted in good faith in calling plaintiff and therefore is not liable under the TCPA for the calls to Perez. (*See* SJ Order at 11-12; *see also* Reconsideration Order.) By contrast, Rash Curtis may argue that because it had a good faith belief that it possessed prior express consent to call the phone number belonging to plaintiff Perez, defendant is not liable *for treble damages* under the statute. Thus, while such evidence is not relevant as to whether Rash Curtis violated the TCPA by calling plaintiff Perez, it is probative on plaintiff's claim for treble damages, which requires that a defendant engaged in *knowing and/or willful* violations of the TCPA. *See* Compl. ¶ 60; *see also* 47 U.S.C. § 227(b)(3)(C). By extension, the evidence that defendant had prior express consent to call class members is relevant. *See Scatterfield*, 569 F.3d at 955; *Reardon*, 2015 WL 4451209, at \*6; *Chyba*, 2014 WL 1744136, at \*10. The Court will instruct the jury accordingly.

The Court **GRANTS** plaintiff's objection to defendant's Proposed Instruction No. 36 and will not instruct the jury regarding the purported "safe harbor" defense. As the Court has previously noted, the D.C. Circuit's decision in *ACA International v. Federal Communications Commission* is not binding upon this Court. *See* Reconsideration Order at 6 (citing 885 F.3d 687 (D.C. Cir. 2018)); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049-50 (9th Cir. 2018) (finding that "[b]ecause the D.C. Circuit exercised its authority to set aside the FCC's interpretations of the definition of an ATDS in the 2014 order, 28 U.S.C. § 2342, and any prior FCC rules that were reinstated by that order, we conclude that the FCC's prior orders on that issue are no longer binding on us" and applying statutory interpretation to determine the definition of an ATDS). Moreover, the D.C. Circuit in *ACA International* set aside "not only [the Federal Communications Commission's ("FCC")] allowance of a one-call safe harbor, but also its treatment of reassigned numbers more generally." 885 F.3d 687, 708 (D.C. Cir. 2018). Therefore, the *ACA* court "set aside the Commission's treatment of reassigned numbers as a whole, *id.* at 709, and no portion of the FCC's "reasonable reliance approach," as described by defendant, remains following *ACA International*. Although defendant is correct that the decision in *ACA*

11

*International* did not seem to contemplate leaving in place a "strict liability regime," nor did the court suggest that it was leaving in its place a "reasonable reliance" standard. *See id.* at 706-710. Defendant extends too far.

Further, in the wake of *ACA International*, the FCC has adopted new rules to create a safe harbor from TCPA liability for inadvertent calls to reassigned and recycled numbers that apply only to those callers who use the FCC's new database of reassigned numbers to determine if a number has been reassigned. *See* Second Report and Order, *In re Advanced Methods to Target and Eliminate Unlawful Robocalls*, CG Docket No. 17-59, FCC 18-177 (Dec. 12, 2018), *available at* https://docs.fcc.gov/public/attachments/FCC-18-177A1.pdf. In so adopting, the FCC expressed a desire to create a narrow safe harbor from TCPA liability and explicitly declined to adopt a more expansive version. *Id.* at 13. Additionally, the FCC characterized the court's decision in *ACA International* as favorably describing the then-proposed safe harbor for callers that check the database as "consistent with the Commission's past practice of taking a reasonable reliance approach *when interpreting* the TCPA," *id.* at 14 (emphasis supplied), further undermining that "reasonable reliance" represents a "standard" for dealing with reassigned numbers following *ACA International*.

The Court **DEEMS WITHDRAWN** defendant's Proposed Instruction No. 37, which addresses statutory damages, because, as noted above, the parties now agree that the Court will determine damages after findings by the jury. (*See* Dkt. No. 309 60:25 – 61:1-7.) Therefore, the Court need not instruct the jury on how to calculate damages.

The Court **GRANTS** plaintiff's objection to defendant's Proposed Instruction No. 38. Whether plaintiff Perez "is an adequate class representative" and "is a member of each of the certified classes" (Jury Instructions at 64) are legal issues for the Court. (*See* Cert. Order at 11-12.)

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motions to strike or exclude the opinions of plaintiff's expert witnesses and addresses the relevant motions *in limine* and disputed proposed jury instructions as referenced above.

12

Additionally, attached hereto as **Exhibit A** is a draft of the juror questionnaire. Any comments thereupon shall be submitted to the Court by no later than **Monday, April 15, 2019**.

This Order terminates Docket Numbers 252, 253, 254, 293, and 295.

**IT IS SO ORDERED.**

Dated: April 4, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# JUROR QUESTIONNAIRE

**Please PRINT your answers**

To Be Completed by Jurors called to the Courtroom of the Hon. Yvonne Gonzalez Rogers for the Trial of:

*Ignacio Perez, et al v. Rash Curtis & Associates*     Case Number: 4:16-cv-03396-YGR

**Name:** _____     **Age:** _____     **Birthplace:** _____

**Residence:** _____ Years: _____ Prior Residence: _____ Years: _____

**Education:** Highest Grade Completed: _____ Degrees: _____

College/Vocational Schools attended: _____ Areas of Study: _____

_____

**Current Occupation/Position:** _____ Length of Service: _____

Employer: _____

Describe Any Supervisory Roles: _____

**Prior Occupation/Position:** _____ Length of Service: _____

Employer: _____

Describe Any Supervisory Roles: _____

**Current Status** (Circle):   Single (living alone/with others)     Married     Separated     Divorced     Widowed

**Occupation & Employer of Adults Living in the Same Household:** _____

_____

**Children:** Age(s) _____ Occupation(s) if employed: _____

_____

**Is English your first language?** YES ☐  NO ☐   IF NO, do you use it regularly at work or home? YES ☐  NO ☐

**Do You OR any CLOSE Family/Friends have military Service or Law Enforcement Training?** YES ☐  NO ☐

**Have You Ever Served on a Jury?**   Circle: YES   NO    Number of times: _____ Date(s) of Service: _____

Circle:   State Court   Federal Court   Both         Circle:  Civil Case     Criminal Case       Both

Did each jury reach a verdict?  YES ☐   NO ☐         Have you ever served as Foreperson? YES ☐   NO ☐

**[CONTINUED ON NEXT PAGE]**

1. **Have You Or Any Family Members Or Friends Ever Worked In Collections or had to Collect a Debt against a third party?** YES ☐ NO ☐

   If yes, provide basic details: _____

2. **Have You Or Any Family Members Or Friends Had Any Experience With Debt Collectors?** YES ☐ NO ☐

   If yes, provide basic details: _____

3. **Have You Ever Been Convicted of a Felony?** YES ☐ NO ☐

   If yes, provide basic details: _____

4. **Have You Ever Testified in any Court Proceeding?** YES ☐ NO ☐

   If yes, describe: _____

5. **Have You Ever Been Involved in a Lawsuit?** YES ☐ NO ☐

   If yes, describe: _____

6. **Do You Have Any Strong Opinions on Class Action Lawsuits?** YES ☐ NO ☐

   If yes, describe: _____

7. **In this case, a class of plaintiffs has sued a corporation. Do you believe the corporation should have settled the case rather than go to trial just because it is a corporation?** YES ☐ NO ☐

   If yes, describe: _____

**Indicate the strength of your opinions on any of the following statement:**
There are too many lawsuits.

   Strongly Agree      Agree      Disagree      Strongly Disagree      No Opinion

**Finish the following sentence by circling an answer:**

   In general, I think Damages Awards from civil lawsuits are_____

   Too high      Too low      Just Right      I am not sure/No opinion

**7. Is there any other issue you would like to discuss with the judge regarding your ability to serve as a juror in this case?** If YES, please describe briefly:
_____
_____
_____
_____

**The following is a list of potential witnesses and persons affiliated with the case. CIRCLE any names of those who you know or with whom you are personally familiar:**

| Individuals | Individuals Cont'd. |
|---|---|
| Adekoya, Jessica | Patterson, Lex |
| Bird, Darrin | Perez, Ignacio |
| Bursor, Scott | Reed, Blair E. |
| Caldwell, Geraldine | Reynoso, Daniel |
| Correa, Dan | Snyder, Randall A. |
| Ellis, Mark E. | Sonognini, Shane |
| Fisher, L. Timothy | Steinheimer, Andrew M. |
| Griffith, Amanda N. | Valenti, Anthony P.J. |
| Iglesias, Lawrence K. | Verkhovskaya, Anya |
| Keith, Bob | Weir, Colin B. |
| Keith, Nick | **Entities** |
| Kizer, Steve | Rash Curtis & Associates |
| Krivoshey, Yeremey O. | Ellis Law Group LLP |
| McMillion, Sandra | Bursor & Fisher, P.A. |
| North, Blake | |
| Paff, Chris | |
| Paff, Terrence | |

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT.**

**SIGNATURE:** _____ **DATE:** _____

**Additional space for Explanations if needed (please include the number of the question):**

_____