UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IGNACIO PEREZ,**<br>    Plaintiff**,**<br>vs.<br>**RASH CURTIS & ASSOCIATES,**<br>    Defendant**.** | CASE NO. 16-cv-03396-YGR<br><br>**PRETRIAL ORDER NO. 3 RE: REMAINING MOTION *IN LIMINE*** <br><br>Re: Dkt. Nos. 261, 262, 263 |

On April 4, 2019, the Court addressed plaintiff's motions *in limine* Nos. 3, 5, 6, and 8.[1] (Dkt. No. 315 ("Pretrial Order No. 2") at 8-9.) Accordingly, remaining before the Court are plaintiff's motions *in limine* Nos. 1, 2, and 9 and defendant's corresponding motion *in limine* No. 1. (*Id.* at 9.) Relevant to the issues presented therein, on September 6, 2017, the Court certified four classes with Perez as a class representative, both for injunctive relief pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3). (Dkt. No. 81 ("Cert. Order").) On February 2, 2018, the Court ruled on the parties' cross-motions for summary judgment. (Dkt. No. 167 ("SJ Order").) On June 18, 2018, the Court denied Rash Curtis's motion to reconsider its summary judgment order. (Dkt. No. 199 ("Reconsideration Order").) On January 23, 2019, the Court denied plaintiffs' motion for terminating sanctions. (Dkt. No. 250 ("Sanctions Order").)

Having carefully reviewed the pleadings, the papers submitted, and oral arguments on March 19, 2019 and March 29, 2019, and for the reasons set forth more fully below, the Court **GRANTS** plaintiff's motions *in limine* No. 1, **DENIES** defendant's motion *in limine* No. 1, **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion *in limine* No. 2, and **DENIES WITHOUT PREJUDICE** plaintiff's motion *in limine* No. 9.

---

[1] As noted by the Court in Pretrial Order No. 2 and confirmed therein, in light of defendant's withdrawals of various exhibits, plaintiff withdrew motions *in limine* Nos. 4 and 7.

## I. INTRODUCTION

The background giving rise to this action is well-known, and the Court will not repeat it here. (*See, e.g.*, SJ Order at 3-5.) Parties' remaining motions *in limine* all concern whether defendant should be allowed to present at trial specific documents and evidence in support of their contention that they did not obtain certain phone numbers, including the 5193 number belonging to plaintiff Perez, via skip-tracing. (*See* Dkt. Nos. 261 ("Plaintiff's MIL"), 262 ("Defendant's MIL").)

Plaintiff avers that because of (i) defendant's failure to produce many of the documents at issue until shortly before the deadline for completion of fact discovery, (ii) defendant's prior statements regarding the existence of some of these documents in response to plaintiff's requests, and (iii) the Court's previous decision to exclude some of these documents pursuant to Rule 37, the Court should now prohibit defendant from using these documents or presenting evidence related to the issue of whether defendant obtained certain phone numbers via skip tracing at trial. (*See* Plaintiff's MIL at 1-8, 21-24.) Defendant disagrees, arguing that defense counsel produced the documents as soon as he learned of their existence and before the discovery deadline. Moreover, defendant argues that the documents were not responsive to plaintiff's prior document requests and plaintiff knew of the information conveyed by the documents as early as April 2017. (*See* Defendant's MIL.)

## II. ANALYSIS

### A. Plaintiff's Motion *in limine* No. 1 & Defendant's Motion *in limine* No. 1

#### 1. Exhibits at Issue

Exhibit 506 is a screenshot from the Beyond (2.1.31.2) RCA ("Beyond") software program dated October 12, 2017 at 12:24 PM showing an ACA Advance Trace Report for Daniel Reynoso. (Dkt. No. 307-1 at ECF 50 ("Trace Report").) Defendant asserts that Exhibit 506 "shows the skip-traced information which Defendant received from Experian on May 8, 2015." Defendant further avers that because "the telephone number ending in 5193, which allegedly belongs to Plaintiff Perez, was not included in the information received from Experian . . . it was not obtained through

1  this skip-tracing report[.]"  (Dkt. No. 307 ("Def. Suppl. Decl.") ¶ 10 (emphasis in original).)[2]

2  Below is an image of Exhibit 506.

(Trace Report.)

Exhibit 507 is another screenshot from the Beyond software program reflecting an Edit Tracking Report for Daniel Reynoso.  (Dkt. No. 307-1 at ECF 52 ("Tracking Report").)  Defendant avers that Exhibit 507 "shows that the 5193 number was removed from the 'Phone' field, *i.e.*, phone field number 1, at 3:27 p.m. on June 7, 2016."  (Def. Suppl. Decl. ¶ 11.)  On the next page is an image of Exhibit 507.

\\

\\

\\

---

[2] The Court notes that defendant filed its April 1, 2019 "Declaration . . . Regarding Defendant's Initial Disclosures and Document Productions" without permission or leave from the Court.  Although the Court did request during the *March 29*, 2019 conference that defendant file its Rule 26(a) Initial Disclosures as well as any supplemental *disclosures*, the Court did not request that or give defendant permission to file any declaration or other filing regarding defendant's production of documents or other matters related to parties' motions *in limine*.  (*See* Dkt. No. 303 at 52:3-14.)  Although, for purposes of efficiency, the Court will consider the contents of defendant's submission, this is the Court's final warning to defense counsel to abide by the local rules and standing orders of this Court.  Moreover, the Court notes that the exhibits attached to defendant's submission are replete with annotation, which the Court finds unnecessary and inappropriate.

United States District Court
Northern District of California

| Field | Date/Time | Emp # | Old Value | New Value | Debtor |
|---|---|---|---|---|---|
| PHONE6 | 5/9/2012 11:46 AM | 67 | 2396275108 | | 1443416 |
| PHONE | 6/7/2016 3:27 PM | 157 | 9162715193 | | 1443416 |
| SPOUSEEMPPHONE | 6/15/2016 2:41 PM | 42 | 9164243071 | | 1443416 |

(Tracking Report (emphasis supplied by defense counsel).)  In light of the gravity of plaintiff's request that the Court exclude these documents, the Court summarizes herein a chronology of their history within the instant action.

   2.   History of Disclosure

In plaintiff's first set of requests for production of documents, which plaintiff served on September 21, 2016, request No. 1 sought "all documents and communications concerning plaintiffs."  (*See* Dkt. No. 314-1 at ECF 10-14 ("March 29, 2017 Letter") at ECF 10.)  On October 24, December 5, and December 6, 2016 defendant produced a number of documents in response to that request, including the collection notes for Daniel Reynoso, the debtor to whom plaintiff Perez's phone number ending in 5193 previously belonged.  (*See* Def. Suppl. Decl. ¶ 5; *see also* Dkt. No. 307-1 at ECF 9-14 ("Def. Production").)[3]  Plaintiff served its second set of requests for production on February 8, 2017, to which defendant served responses on March 13, 2017.  (March 29, 2017 Letter at 1.)

On March 29, 2017, plaintiff sent defendant's counsel a meet-and-confer letter regarding these requests and productions.  (*See id.*)  Therein, plaintiff asserted, among other things, that defendant "failed to produce any documents concerning the plaintiffs or any calls made to their

---

[3]  The Court notes that defendant submitted a redacted version of this file, which removed all of debtor Reynoso's personal and identifying information, including his name and phone number.  It is not clear whether the same redactions were present on the document originally produced to plaintiff on October 24, 2016.

4

cellular phones from Beyond." (*Id.* at 2.) The letter also attached, as Exhibit 1, "an example of how Beyond displayed account files" and asked that defendant "produce all Beyond files as they are kept in the normal course of business relating to Request No. 1." (*Id.*) Exhibit 1 to the March 29 letter, like Exhibits 506 and 507, is a screenshot from defendant's Beyond software. (*See* March 29, 2017 Letter, Ex. 1.) The resulting meet-and-confer failed.

On April 13, 2017, plaintiff's counsel deposed defendant's former employee, Steve Kizer. (*See* Dkt. No. 307-1 at ECF 66-83 ("Def. Excerpts of Kizer Depo."); *see also* Dkt. No. 314-1 at ECF 28-34 ("Pla. Excerpts of Kizer Depo.").) During his deposition, plaintiff's counsel provided Kizer with a copy of defendant's collection notes for Reynoso's account. (*See id.* at 4:1-4; 115:3-25; *see also* Def. Production.) With respect to the history section of that document, Kizer explained that the first entry represented a request for "an ECA Advance" on May 7, 2015 at 4:24 p.m. (Def. Excerpts of Kizer Depo at 120:10-18.) Kizer elaborated that "Trace ECA is software. What they do is they send the account to an ECA. ECA then returns the account with assets, bankruptcy scores and a bank card. That you don't get in DAKCS. That only shows up in Beyond." (*Id.* at 120-18-22.) Plaintiff's counsel then asked Kizer "You mean that the result of a skip trace would not be shown in DAKCS, but it would show up in Beyond?" (*Id.* at 120:23-24.) Kizer replied "Correct." (*Id.* at 120:25.)

Plaintiff's counsel next asked "[w]ould this also be a skip trace for a phone number or can you tell?" (*Id.* at 121:1-2.) Kizer replied, "I can't tell you because – well, there's no phone number up there. So I would have to go through the notes and see when it was pulled out and a how many times it was pulled out." (*Id.* at 121:3-6.) Counsel asked Kizer what he meant by "pulled out[.]" (*Id.* at 121:7.) Kizer explained "[t]hat [it] means somebody has removed a number . . . ." (*Id.* at 121:8.) Kizer elaborated that the 5193 number was removed from the home field, which indicated that it was a resident number. (*Id.* at 121:14-20 ("Collector No. 23, it's the fourth one from the bottom on June 7, 2016 at 3:28 dialed that 5193 number. It was a Global Connect. That's . . . what GC stands for resident number. That means it was put in the home field. Gave them the QA. That's – the QA is this call is being recorded. No such person. Remove phone number . . . .").) Later plaintiff's counsel referred Kizer back to the second page of the collection

1    notes for Reynoso and asked, "do you know why there would be no phone number listed in the

2    phone line?" (*Id.* at 123:21-23.) Kizer replied "[b]ecause in June of 2016 somebody determined it

3    was a bad number, and they removed it." (*Id.* 124:1-2.) Kizer later elaborated that the "5193

4    [number] was dialed by Global Connect, and it was transferred to Collector 23 on June 7th at 3:28.

5    It was a residential number. That collector gave them, this call is being recorded, gave them the

6    QA. Okay. They said, hey, there's no such person here. They then removed, RMV, removed the

7    phone number." (*Id.* at 127:4-10.)

8    Kizer also explained, while examining a DAKCS database screen, that "Beyond would

9    have tremendously much more information, critical information" than that available in DAKCS.

10   (Pla. Excerpts of Kizer Depo. at 117:23-25.) He further explained that Beyond would contain

11   "Phone Fields 2 through 10, phone field fax, extra remark line along the bottom where notes are

12   put. Insurance information, whether the insurance is billed or not. You would have also have

13   subtabs for – in the header for where a check was taken and where additional skip information was

14   stored."[4] (*Id.* at 118:7-13 (quoted verbatim).)

15   On April 17, 2017, plaintiff filed his first motion to compel defendant to produce all skip

16   tracing information related to plaintiff and all ECA Advance Trade Reports. (Dkt. No. 40 at 1-2.)

17   Therein, and importantly, plaintiff averred that defendant ***failed to produce any documents from***

18   ***its Beyond software and failed to produce any skip tracing information***. (*See id.*) On April 21,

19   2017, Magistrate Judge Corley issued an order summarizing plaintiff's request as seeking "records

20   from other software systems" (referring to Beyond), "records related to skip traces Defendant

21   performed to locate Plaintiffs[,]" and "communications with third-party creditors regarding

22   Plaintiffs' accounts." (Dkt. No. 43 at 2.) Judge Corley ordered that "Defendant shall come to the

23   April 27, 2017 hearing prepared to discuss whether each category of documents exists" and

24   "whether Defendant has begun to search for those documents." (*Id.*)

---

[4] The Court notes that in plaintiff's April 4, 2019 submission, plaintiff incorrectly quotes Kizer as having said "You would have also have subtabs for – in the header for where a check was taken and where additional skip *tracing* information was stored." (Dkt. No. 314 ("Pla. Addt'l Sub.") at 5 (emphasis supplied).)

During the discovery hearing (which occurred on May 1, 2017) defendant's counsel, Mark Ellis, represented to Judge Corley that he had "never heard of" the Beyond system. (Dkt. No. 314-1 at ECF 16-19 ("May 1 Hearing Transcript") at 5:23-6:8.) Thereafter, the parties engaged in a meet-and-confer at the courthouse at the direction of Judge Corley, which plaintiff's counsel memorialized in a letter dated and emailed the same day. (*See* Dkt. No. 314-1 at ECF 21-24 ("May 1, 2017 Letter").) Therein, plaintiff's counsel summarized that defendant had agreed to (1) "review whether any ECA or Accurint files existed *concerning* any named Plaintiff[,]" (2) "review whether any paper account files exist from any creditor *regarding* any named Plaintiff[,]" and (3) "discuss with its client whether a production from the Beyond software can be made with regards to any of the named Plaintiffs." (*Id.* at 1 (emphasis supplied).) Plaintiff's counsel also noted that the parties had agreed that "[s]hould Defendant discover any of the above documents, it will produce them on or by May 8, 2017." (*Id.*) During the May 1 meet-and-confer, plaintiff provided defendant's counsel with a copy of the transcript from the April 13, 2017 deposition of Steven Kizer.[5] (*See* Dkt. No. 314-1 at ECF 26 ("May 1, 2017 Email").)

On May 8, 2017, defendant responded in writing. (*See* Dkt. No. 314-1 at ECF 36-39 ("May 8, 2017 Letter").) With respect to plaintiff's Request No. 1, defendant represented that "[n]o ECA reports were generated for Ms. McMillion or Mr. Perez." (*Id.* at 1.) Defendant further stated that:

> [T]here is simply no way to generate any additional, responsive documents using the 'Beyond' software besides the collection notes which have already been produced. I understand the collection notes you have were generated using the DOS-based version of DAKCS which includes all collection notes. If my client was to generate the collection notes from the 'Beyond' software platform, it would include all of the same information but may not include some of the older collection notes that are otherwise included when generated using the DOS-based platform. Consequently, you already have everything which my client can produce in this regard.

---

[5] The Court notes that defendant's counsel Mark Ellis represented to the Court during the March 29, 2019 pretrial conference that he asked his client to provide screenshots of the two documents at issue, the ECA Trace Report and the Edit Tracking Report, *immediately* upon receiving Kizer's deposition and then produced it within ten days thereafter. (*See* Dkt. No. 314-1 at ECF 5-8 ("March 29, 2019 Pretrial Transcript") at 6:15-7:15.) However, it seems that Mr. Ellis first received the transcript of Kizer's deposition well before the October 2017 production of the documents at issue here. (*See* May 1, 2017 Email.)

7

1  (*Id.* at 2 (emphasis in original).)  Defendant also indicated that it would be "supplementing [its]
2  document production to include the documents received from Ms. McMillion's and Ms.
3  Adekoya's original creditors."  (*Id.* at 1.)  On May 8 and 9, 2017, defendant produced first and
4  second supplemental productions in response to plaintiff's first set of requests.  (*See* Dkt. No. 307-
5  1 at ECF 16-20.)

6  Over five months later, and on the eve of the discovery cutoff, defendant switched gears
7  and defense counsel claimed that he first learned that one could create a screenshot of the ECA
8  Advance Trace and Edit Tracking Reports on October 12, 2017.  (Def. Suppl. Decl. ¶ 14.)  "Once
9  [Ellis] learned of this information, the screenshots were immediately captured and printed out on
10 paper.  Thus, these documents came into existence on October 12-13, 2017[.]"  (*Id.*)

11 On October 15, 2017, defendant produced, via mail and email, a third supplemental
12 document production in response to plaintiff's first set of document requests.  (*See* Dkt. No. 307-1
13 at ECF 23-25 ("Oct. 15, 2017 Prod."); Dkt. No. 307-1 at ECF 27.)  Among the documents
14 produced on October 15 was a redacted copy of the screenshot of the ECA Advance Trace Report
15 for debtor Daniel Reynoso or Exhibit 506.[6]  (*See* Oct. 15, 2017 Prod. at ECF 24.)  This production
16 came nine days shy of the fact discovery cutoff date of October 25, 2017.[7]  (*See* Dkt. No. 23.)
17 Between the October 15 production and the October 25 cutoff, plaintiff conducted four depositions
18 of defendant's employees – Nick Keith (October 16, 2017), Dan Correa (October 20, 2017),
19 Robert "Bob" Keith (October 24, 2017), and Chris Paff (October 24, 2017).  (*See* Dkt. Nos. 307-2
20 at ECF 82 ("N. Keith Depo. Cover"); 307-2 at ECF 84 ("Correa Depo. Cover"); 307-2 at ECF 86
21 ("R. Keith Depo. Cover"); 307-2 at ECF 88 ("Paff Depo. Cover").)

22 On October 23, 2017, two days prior to the fact discovery cutoff and one day prior to the
23 depositions of Bob Keith and Chris Paff, defendant produced, via mail and email, a fourth

---

[6] The only redaction from the document appears to be the first five digits of Reynoso's social security number.  (*See* Oct. 15, 2017 Prod. at ECF 24.)

[7] Defendant's reliance on the fact that the Court had "continued to October 30, 2017" the deadline for fact discovery at the time of defendant's third supplemental production is misplaced.  (*See* Def. Suppl. Decl. ¶ 14.)  The Court so ordered on October 13, 2017, only two days before defendant's third supplemental production.  (*See* Dkt. No. 107.)

8

supplemental document production in response to plaintiff's first set of document requests. (*See* Dkt. No. 307-1 at ECF 30-44 ("Oct. 23, 2017 Prod."); Dkt. No. 307-1 at ECF 46-48.) Contained therein were unredacted copies of the ECA Advance Trace Report (Exhibit 506) and the Edit Tracking Report (Exhibit 507). (*See* Oct. 23, 2017 Prod. at ECF 42-43.) The Court is not aware that defendant ever served a supplement Rule 26 disclosure or offered to continue depositions given the significant shift and production of new evidence.

On December 11, 2017, plaintiff filed a motion for partial summary judgment. (Dkt. No. 138.) In support of defendant's cross-motion, and in opposition to plaintiff's motion, defendant submitted a declaration by its Executive Vice President, Bob Keith, which attached and finally interpreted the meaning and relevance of Exhibits 506 and 507, then referred to as Exhibits 18 and 19, respectively.[8] (*See* Dkt. No. 140-1 at ¶¶ 12, 13.) With respect to Exhibit 506, Bob Keith represented that the exhibit constituted "a screenshot of an 'ECA Advanced Trace Report'" which Rash Curtis obtained from Experian on Reynoso" that "does not show a phone number ending in 5193." (*Id.* ¶ 12.) Based thereupon, Bob Keith asserted that "[t]he absence of the phone number ending in 5193 on this report means Rash Curtis did not obtain the phone number it called ending in 5193, by skip tracing." (*Id.*)

Regarding Exhibit 507, Bob Keith represented that the exhibit reflected "a screenshot of a so-called 'Edit Tracking Report' for Daniel Reynoso's account" which "details that on June 7, 2016 at 3:27 pm, the phone number ending in 5193 was removed from Rash Curtis' database." (*Id.* ¶ 13.) Bob Keith also suggested that had "one of Rash Curtis' collection employees [] manually added the phone number ending in 5193 to Reynoso's account, it would be shown on this report as a 'new value,'" however the report does not so reflect. (*Id.*) Based thereupon, Bob Keith averred that Exhibit 507 confirmed that "the phone number ending in 5193 was provided by Rash Curtis by Sutter General Hospital when it electronically assigned Reynoso's debt to Rash Curtis for collection and not added by skip-tracing." (*Id.*)

---

[8] Defendant also attached to their cross-motion/opposition Exhibits 506 (redacted) and 507 as Exhibits 18 and 19, respectively. (*See* Dkt. No. 140-7 at ECF 134-37.)

1       In his January 8, 2018 opposition to defendant's cross-motion for partial summary
2  judgment, plaintiff requested that the Court strike Exhibits 506 and 507, on the grounds that
3  defendant had previously represented, on May 1, 2017, that "[n]o ECA reports were generated for
4  . . . Mr. Perez" and that "there is simply no way to generate any additional, responsive documents
5  using the 'Beyond' software besides the collection notes which have already been produced."
6  (Dkt. No. 151 at 10 (citing May 1, 2017 Letter at 1-2).)  Plaintiff specifically requested that the
7  Court "strike Exhibits [506] and [507], and *not permit their use in the future*."  (*Id.* at 12
8  (emphasis supplied).)

9       In its response, defendant argued that the documents should not be excluded because (1)
10 their prior statement that "[n]o ECA reports were generated for *Mr. Perez*" remains true because
11 "the ECA report in question (Exhibit [506]) is for *Mr. Reynoso*[;]" (2) the ECA Advance Trace
12 Report is obtained from Experian through LexisNexis and "[n]either the ECA report nor the Edit
13 Tracking report may be printed" therefore "there *is* no way to generate these files *using the*
14 *'Beyond' software*" – "[t]he only way to obtain printable images [Exhibits 506 and 507] is to
15 capture a screenshot and save it as an image file[;]" and (3) plaintiff received Exhibit 506 on
16 October 15, 2017 and received both exhibits on October 23, 2017, and yet "elected not to question
17 Rash Curtis' employees about these documents during their depositions, which were held on
18 October 16, 2017, October 20, 2017, and October 24, 2017[,]" and "also elected not to propound
19 any interrogatories or requests for admission regarding these documents[.]"  (Dkt. 157 at 13-15
20 (emphasis in original).)

21      On February 2, 2018, the Court issued its Order regarding the parties' cross-motions for
22 summary judgment.  (*See* SJ Order.)  Therein, the Court found that "defendant's representation
23 that plaintiffs 'already [had] everything that [Rash Curtis] can produce' in regard to ECA Advance
24 Trace and Edit Tracking Reports relevant to Perez's claim" was "inconsistent with defendant's
25 current position that Exhibits [506] and [507] 'conclusively establish that Mr. Perez's 519[3]
26 number was not skip-traced." (*Id.* at 12 n.9.)  Based thereupon, the Court struck the exhibits and
27 reiterated that the Court had previously cautioned defendant "that 'delaying and sandbagging
28 tactics' would not be tolerated and would result in monetary and/or evidentiary sanctions."  (*Id.*

United States District Court
Northern District of California

1   (citing Cert. Order at 9 n.9).)

2   On March 30, 2018, defendant filed a motion for reconsideration of its motion for
3   summary judgment in light of *ACA International v. Federal Communications Commission*. (Dkt.
4   No. 189 ("Reconsideration Motion").) Although defendant's motion correctly summarized the
5   Court's order as having held that "Rash Curtis did not possess Mr. Perez's prior express consent
6   for any of the calls placed to his cell phone number ending in 5193" (*id.* at 5), defendant did not
7   request that the Court reconsider its striking of Exhibits 506 and 507 (*see, generally*, *id.*). Mention
8   of Exhibits 506 and 507 did not reappear on the docket until parties filed their unresolved Motions
9   *in limine* on February 15, 2019. (Plaintiff's MIL; Defendant's MIL.)

   3. Analysis

11  With respect to the pending motions *in limine*, the Court finds that the same
12  inconsistencies infect defendant's current argument as existed at the summary judgment stage.
13  The Court is unpersuaded by defense counsel's repeated representations he "was not aware
14  that screenshots of the ECA Advance Trace and Edit Tracking Reports" could be created and
15  produced until October 12, 2017 and "had no idea what an ECA trace was" until he *first received*
16  the transcript for the deposition of Steve Kizer just days before the October 15 and 23, 2017
17  production of Exhibits 506 and 507. (*See*, *e.g.*, Def. Suppl. Decl. ¶ 14; March 29, 2019 Hearing
18  Transcript at 5:3-17.)

19  First, as a preliminary matter, the duty imposed by Rule 26(e) is one placed upon the party,
20  here the defendant, not counsel. Fed. R. Civ. P. 26(e) ("a party who has . . . responded to [a] . . .
21  request for production . . . must supplement or correct its . . . response"). Second, the Court's
22  comprehensive review shows that as early as March 29, 2017, Ellis did have information
23  indicating that one could create a screenshot of the Beyond software, which house the ECA
24  Advance Trace and Edit Tracking Reports. On that day, Ellis received a letter from plaintiff's
25  counsel attaching a screenshot from the Beyond software. (*See* March 29, 2017 Letter at 2
26  ("Exhibit 1 attached to this letter shows an example of how Beyond displays account files. Please
27  produce all Beyond files as they are kept in their normal course of business relating to Request
28  No. 1.")). Third, a month later Ellis received a transcript of Steve Kizer's deposition testimony,

11

1  which Ellis now credits with enlightening him as to the relevance of the ECA Trace reports to
2  whether a particular number was obtained via skip-tracing, as early as May 1, 2017, following the
3  parties meet-and-confer on that date.[9] (*See* May 1, 2017 Email (email from Yeremy Krivoshey to
4  Mark Ellis dated May 1, 2017 and attaching "Kizer Transcript.PDF").)

Fourth, and most importantly, defendant was ordered by Judge Corley and agreed to look for ECA and paper account files *concerning* any named plaintiff, including Perez, and to determine whether it could produce information housed in the Beyond software. Despite receiving information to the contrary, defendant then represented to plaintiff that such files did not exist, and such a production could not be made. Over a month *after* Ellis received an example of a screenshot of the Beyond software and seven days *after* he received the transcript of Kizer's deposition, which highlighted the importance of the information in Beyond to determining whether skip-tracing occurred, defendant represented to plaintiff that:

(1) "[n]o ECA reports were generated for Ms. McMillion or Mr. Perez[;]"

(2) "there is simply no way to generate any additional, responsive documents using the 'Beyond' software besides the collection notes which have already been produced[;]" and

(3) "[i]f [defendant] was to generate the collection notes from the 'Beyond' software platform, it would include all of the same information but may not include some of the older collection notes that are otherwise included when generated using the DOS-based platform."

(*See id.*; *see also* May 8, 2017 Letter at 1-2.)

Finally, defendant received notice that the Court's prior exclusion of Exhibits 506 and 507

---

[9] Counsel's averment is further undermined by his own argument that as a result of Kizer's deposition, "the information contained in [Exhibits 506 and 507] was made known to *Plaintiffs* by no later than April 2017 . . . relieving Rash Curtis of any duty to supplement" under Rule 26(e)(1)(A). (Defendant's MIL at 4 (emphasis supplied).) Defendant cannot argue, on the one hand, that as of Kizer's April 2017 deposition plaintiff's counsel was aware of the information contained within the subject exhibits and therefore defendant had no duty to supplement, and on the other that he was unaware of the potential need to produce the subject exhibits until he receive the transcript of Kizer's deposition in early October 2017, when he had, in fact, received the transcript on May 1, 2017.

12

included exclusion for the trial. Plaintiff's previous request that the Court exclude Exhibits 506 and 507 specifically asked that the Court "strike Exhibits [506] and [507], and *not permit their use in the future*." (Dkt. No. 151 at 12 (emphasis supplied).) The Court granted that request and struck the exhibits pursuant to Rule 37(c)(1).[10] (*See* SJ Order at 12 n.9.) Defendant could have filed a motion asking the Court to reconsider its exclusion of Exhibits 506 and 507 but did not so file. (*See* Reconsideration Motion.)

Defendant's current request that the Court "vacate its prior order . . ." would set a dangerous precedent. (*See* Defendant's MIL.) To do so would merely encourage defendants either to ignore their affirmative obligations to produce discovery or, at a minimum, disclose the nature of the existing information, especially in light of the amount of judicial oversight provided on these precise issues. Even then, defendant did not acknowledge that it had shifted positions and contradicted prior representations to the Court and opposing counsel. Further it never did or offered to do anything to cure the prejudice to plaintiff. The Court cannot countenance this manner of gamesmanship and if the consequences are significant at trial such is the price to be paid, both in terms of this case and as a deterrent in other cases. For these reasons, the Court **CONFIRMS** its prior decision striking Exhibits 506 and 507 and thus, **GRANTS** plaintiff's motion *in limine* No. 1 and **DENIES** defendant's motion *in limine* No. 1.[11]

---

[10] Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(e) requires a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—*must supplement* or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e) (emphasis supplied).

[11] Defendant's argument that Rule 37 as applied to Rule 26 "requires some sort of bad faith [or] willful conduct" that does not exist here fails. First, such a requirement applies only where the Rule 37(c)(1) sanction, and subsequent exclusion of the subject evidence, will result in the functional dismissal of a claim. *See R&R Sails v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citations omitted). Each of the authorities upon which defendant relies for the assertion that striking of evidence on the grounds that a party failed to supplement requires "a knowing concealment" evaluate and are based upon a prior iteration of Rule 26(e). (*See* Defendant's MIL at 3-4 (citing *Bunch v. U.S.*, 680 F.2d 1271, 1280 (9th Cir. 1982) (finding that before relevant evidence may be struck, the court must "determine . . . whether the [party's] failure to [supplement

**B. Plaintiff's Motion *in limine* No. 2**

Plaintiff's motion *in limine* No. 2 concerns Trial Exhibits 504 and 505.[12] (*See* Plaintiff's MIL at 5-8.)

Exhibit 504 (bearing bates stamp RCA 272-278) consists of records from Sutter General Health regarding non-party debtor Daniel Reynoso. (Dkt. No. 263-4 at ECF 34-41 ("Ex. 504").) Defendant previously attached one page of Exhibit 504, RCA 273, as Exhibit 6 to the August 24, 2017 Declaration of Robert Keith filed in support of defendant's supplemental opposition to plaintiff's motion for class certification. (*See* Dkt. No. 71-2 at ECF 24-25.) Defendant produced Exhibit 504, as a whole, for the first time on October 23, 2017, two days before the October 25, 2017 original fact discovery deadline.[13] (*See* Plaintiff's MIL at 5.) However, unlike with Exhibits 506 and 507 addressed above, plaintiff does not contend that defendant previously represented that it did not have these records or that it had produced everything with respect to an applicable document request. (*See id.*) Moreover, one can find in RCA 273, which plaintiff received in August of 2017—well before the fact discovery deadline and the deposition of defendant's Rule 30(b)(6) witness, much of the information found in elsewhere in Exhibit 504. (*See* Ex. 504.) Finally, the Court has not previously struck Exhibit 504 pursuant to Rule 37(c)(1). The motion on

---

its response] was a knowing concealment").) In so finding, *Bunch*, and the other cases to which defendant cites, relied upon language in Rule 26(e) that a party must amend a prior response "if he obtains information upon the basis of which . . . he knows that the response . . . is no longer true and the circumstances are such that a failure to amend the response is in substance *a knowing concealment*." 680 F.2d at 1280 (emphasis supplied). In 2007, the Supreme Court adopted amendments to the Federal Rules of Civil Procedure, including to Rule 26(e), and removed the "knowing concealment" language therefrom. *See* Letter from Chief Justice John G. Roberts, Jr. to Honorable Nancy Pelosi, April 30, 2017, *available at* https://www.supremecourt.gov/orders/courtorders/frcv07p.pdf. As a result of this amendment, Rule 26(e) now reads as the Court has noted herein. *See supra*, n. 11. Second, in light of the representations made to plaintiff, a basis for a finding of bad faith on the part of defendant exists.

[12] In connection with his motion *in limine* No. 2, plaintiff filed an administrative motion to seal certain portions of the declaration plaintiff's counsel submitted in support thereof. (Dkt. No. 263. Specifically, plaintiff seeks to seal Exhibit 504 in light of the personal, medical, and financial information regarding a non-party displayed therein. (*See* Dkt. No. 263-1.) Good cause appearing, the Court **GRANTS** plaintiff's administrative motion to file under seal.

[13] Defendant does not contest or otherwise address this portion of plaintiff's argument with respect to Exhibit 504 in its opposition. (*See* Dkt. No. 273.)

14

1    this basis is denied.

2          Plaintiff moves to exclude Exhibits 504 and 505 as impermissible hearsay.  (*See* Plaintiff's

3    MIL at 6.)  Exhibit 505 (bearing bates stamp RCA 12718-12724) appears to be an email chain

4    between Bob Keith and Mike Paff dated May 5, 2017 re: "Client notes on Reynoso" which states

5    on the first page: "They were calling this cell also and no one told them it was bad.  I do not want

6    to get Sutter sued though so if that is a possibility don't use."  (Dkt. No. 262-1 at ECF 46-53 ("Ex.

7    505") at ECF 47.)  The next five pages are entirely reacted.  (*See id.* at ECF 48-52.)  The last page

8    of the exhibit appears to attach Sutter's notes regarding debtor Reynoso.  (*See id.* at ECF 53.)

9          Plaintiff contends that 504 is not a record "kept in the ordinary course of business by *Rash*

10   *Curtis*" because "at summary judgment, Defendant admitted that it did not receive Exhibit 504

11   from Sutter until after this case started . . . in 2015."  (*Id.* (emphasis supplied).)  However, the

12   exception to the hearsay rule for business records does not require that the records be kept by a

13   party to the litigation but that "the record was kept in the course of a regularly conducted activity

14   of *a* business, organization, occupation, or calling, whether or not for profit[.]"[14]  Fed. R. Evid.

15   803(6)(B).  For this reason, the Court **DENIES** plaintiff's motion *in limine* No. 2 with respect to

16   Exhibit 504 and the final page of Exhibit 505, RCA 12724.

17         However, with respect to the email and subsequent pages of redactions in Exhibit 505, the

18   motion is granted.  defendant's contention that it does not intend to use the email contained in

19   Exhibit 505 to prove the truth of the matter asserted (*see* Dkt. No. 273 ("No. 2 Opp.") at 1), is

20   unpersuasive.  Defendant argues that it intends to offer Exhibits 504 and 505 as "evidence that

21   Sutter itself has the 5193 number[.]"  (*Id.*)  However, Exhibit 505 does not contain reflect the 5193

22   number.  (*See* Ex. 505.)  The only reference thereto is the hearsay statement in the email "They

23   were calling this cell also and no one told them it was bad."  (*See id.* at ECF 47.)  Therefore,

24   defendant does appear to offer the email in Exhibit 505 for the truth of the matter asserted therein,

---

[14] However, defendant will have to establish the conditions of the business record exception "by testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification[.]"  Fed. R. Evid. 803(6)(D).

1  that Sutter had been calling, and therefore had in their records, the 5193 number as belonging to

2  Reynoso. Accordingly, the Court **GRANTS** plaintiff's motion *in limine* No. 2 with respect to all

3  but the final page of Exhibit 505, RCA 12718-12723.

### C. Plaintiff's Motion *in limine* No. 9

Plaintiff's motion *in limine* No. 9 seeks to exclude witness testimony that defendant did not call the phone numbers held in phone fields 5 through 10 that were not also stored in fields 1 through 4, of defendant's debtor database.[15] (*See* Plaintiff's MIL at 21-24.) Plaintiff again relies upon Rule 37(c)(1) to argue that the Court should not permit defendant "to offer contradictory rebuttal evidence at trial in light of its failure to disclose any rebuttal witnesses" in response to plaintiff's disclosure of Colin B. Weir's expert report which shows that defendant "made roughly 14 million calls using its dialers to phone numbers in phone fields 5 through 10 *that were not separately contained in phone fields 1 through 4*." (Plaintiff's MIL at 22-23 (emphasis in original).) However, defendant's decision not to offer a rebuttal *expert* witness or report does not bear on whether another, properly disclosed, non-expert witness may testify in response to plaintiff's expert's testimony. *See* Fed. R. Civ. P. 26(a)(2) (governing disclosure of identity of expert witnesses).

Plaintiff also asserts that defendant's purported testimony violates Federal Rules of Evidence 403 and 1002. (Plaintiff's MIL at 23.) However, this argument relies on attacks regarding the witnesses' credibility, weight of the purported evidence, and factual disputes. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("[I]t is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts.").[16] Accordingly, the Court **DENIES** plaintiff's motion *in limine* No.

---

[15] Phone fields 1 through 4 are reserved for phone numbers that defendant purportedly receives from its creditor-clients, whereas phone numbers obtained via skip tracing are loaded into phone fields 5 through 10. (*See* Dkt. No. 212-1, Ex. 2 at 14:11-15:7, 15:14-16); *id.*, Ex. 1 at 51:20-52:19, 69:5-9, 70:19-71:14.)

[16] *See also* Court's Standing Order re: Pretrial Instructions in Civil Cases ¶ 4.a ("Parties frequently misuse motions *in limine* in an attempt to exclude broad categories of possible evidence. Such motions are routinely denied. Any motion *in limine* must specify the precise exhibits or proffered testimony the party seeks to exclude.").

9 without prejudice to reasserting arguments for exclusion during trial.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motions *in limine* No. 1, **DENIES** defendant's motion *in limine* No. 1, **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion *in limine* No. 2, and **DENIES WITHOUT PREJUDICE** plaintiff's motion *in limine* No. 9.

This Order terminates Docket Numbers 261, 262, and 263.

**IT IS SO ORDERED.**

Dated: April 22, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**