PAGES 1 – 71

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

IGNACIO PEREZ, ON BEHALF           )
OF HIMSELF AND ALL OTHERS          )
SIMILARLY SITUATED,                )
                                   )
            PLAINTIFFS,            )     NO. C-16-3396 YGR
                                   )
  VS.                              )     MONDAY, APRIL 29, 2019
                                   )
RASH CURTIS & ASSOCIATES,          )     OAKLAND, CALIFORNIA
                                   )
                                   )     PRETRIAL CONFERENCE
            DEFENDANT.             )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**              BURSOR FISHER, P.A.
                                1990 N. CALIFORNIA BLVD., STE. 940
                                WALNUT CREEK, CALIFORNIA 94596
                         BY:    TIMOTHY FISHER, ESQUIRE
                                YEREMEY O. KRIVOSHEY, ESQUIRE
                                BLAIR REED, ESQUIRE

                                BURSOR & FISHER
                                888 SEVENTH AVENUE
                                NEW YORK, NEW YORK 10019
                         BY:    SCOTT A. BURSOR, ESQUIRE

**FOR DEFENDANT:**              ELLIS LAW GROUP LLP
                                1425 RIVER PARK DRIVE, STE. 400
                                SACRAMENTO, CALIFORNIA 95815
                         BY:    MARK E. ELLIS, ESQUIRE
                                ANTHONY P.J. VALENTI, ESQUIRE
                                LARRY IGLESIAS, ESQUIRE

**REPORTED BY:**                DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                                OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1    MONDAY, APRIL 29, 2019                    10:00 A.M.

2                     P R O C E E D I N G S

3          THE CLERK:  CALLING CIVIL ACTION 16-3396 IGNACIO

4    PEREZ VERSUS RASH CURTIS & ASSOCIATES.

5       COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

6          MR. ELLIS:  GOOD MORNING, YOUR HONOR.  MARK ELLIS --

7          THE COURT:  MR. ELLIS, HOLD ON.  I ALWAYS START WITH

8    PLAINTIFFS.

9          MR. ELLIS:  OKAY.

10         THE COURT:  I DON'T CARE WHO YOU ARE, WHAT COLOR YOU

11   ARE, WHAT GENDER YOU ARE, I ALWAYS START WITH PLAINTIFFS.

12         MR. BURSOR:  HI.  GOOD MORNING, YOUR HONOR.  SCOTT

13   BURSOR FROM BURSOR & FISHER FOR THE PLAINTIFFS AND THE CLASS.

14      WITH ME AT COUNSEL TABLE ARE MY PARTNERS TIM FISHER, ON

15   THIS SIDE OF THE CONFERENCE TABLE, YEREMEY KRIVOSHEY, ON THE

16   OTHER SIDE OF THE CONFERENCE TABLE, AND OUR ASSOCIATE BLAIR

17   REED.

18         THE COURT:  OKAY.  GOOD MORNING.  ALL RIGHT.

19         MR. ELLIS:  GOOD MORNING, YOUR HONOR.  MARK ELLIS,

20   ELLIS LAW GROUP, LLP.  AND WITH ME TODAY IS ANTHONY VALENTI,

21   ONE OF MY ASSOCIATES, AND LARRY IGLESIAS.

22         THE COURT:  OKAY.  GOOD MORNING.

23      LOTS TO DO.  SO, IN TERMS OF YOUR STATEMENT, YOU WANTED

24   CLARIFICATION ON SOME OF THE EXHIBITS WHICH I WILL GIVE TO

25   YOU.
```

```
1         AND ON THE TOPIC OF THE NATURE OF THE EVIDENCE, I CAN
2    ASSUME WHAT I BELIEVE TO BE YOUR PERSPECTIVES ON WHETHER OR
3    NOT A JURY PROVIDES A COURT WITH A FACTUAL DETERMINATION FROM
4    THEIR PERSPECTIVE ON WILLFULNESS, BUT I'VE NOT HAD BRIEFING ON
5    THE TOPIC.  SO BECAUSE I HAVEN'T HAD BRIEFING AND I HAVEN'T
6    ASKED YOU SPECIFICALLY, I LEFT MYSELF WHAT I CALL WIGGLE ROOM
7    BY SAYING THAT I WOULD INSTRUCT THE JURY AS APPROPRIATE
8    BECAUSE YOU HAVEN'T, AS I WORKED THROUGH THE ISSUES, I
9    REALIZED YOU HAD NOT BRIEFED THAT ISSUE.  MY -- AND I'VE
10   OUTLINED IN MY ORDER WHAT I THINK THE LEGAL PARAMETERS ARE.
11        THAT EVIDENCE IS ONLY RELEVANT ON THAT TOPIC OF
12   WILLFULNESS.  AND SO IF THE JURY IS NOT MAKING A DETERMINATION
13   ON WILLFULNESS, IT IS NOT RELEVANT.  IF A JURY IS, THEN IT IS.
14             MR. ELLIS:  SO --
15             THE COURT:  WOULD YOU LIKE TO SAY SOMETHING,
16   MR. ELLIS?
17             MR. ELLIS:  YES, YOUR HONOR.
18        I THINK I CAN HELP EVERYONE WITH THIS.  IN LOOKING THROUGH
19   THE DOCUMENTS IN PREPARATION FOR TODAY'S HEARING, I THINK... I
20   THINK PLAINTIFFS ARE RIGHT.  I THINK UNDER THE -- IF YOU LOOK
21   AT THE PLAIN LANGUAGE OF THE STATUTE, IT SAYS "THE COURT".
22   AND THEY CITED IN THE SUBMISSION THAT WE JUST DID THE DISTRICT
23   COURT OF OREGON DECISION.
24        AND SO ALTHOUGH I HATE TO AGREE WITH PLAINTIFFS ON
25   ANYTHING, IN THIS CASE I THINK THAT... I THINK THAT I WOULD
```

1    CONCEDE THAT THIS SHOULD BE DECIDED BY YOU, YOUR HONOR.  AND

2    BECAUSE OF THAT, I DON'T THINK THAT ANY OF THE EVIDENCE ON

3    WILLFULNESS IS RELEVANT TO THE JURY'S DETERMINATION.

4          **MR. BURSOR:**  I AGREE, YOUR HONOR.  I JUST WANT TO

5    MAKE CLEAR, WE THINK THAT -- WE HAVE NOT BRIEFED WHETHER YOUR

6    HONOR NEEDS AN ADVISORY RULING FROM THE JURY.  OUR POSITION IS

7    YOU DO NOT.  YOU ARE QUALIFIED TO MAKE A DETERMINATION OF

8    WILLFULNESS WITHOUT ANY INPUT FROM THE JURY.

9       AND WE UNDERSTOOD THIS ISSUE TO RELATE PRIMARILY TO

10   EXHIBITS 504 AND 505 WHICH WE HAD A MOTION IN LIMINE ON AND

11   THE MOTION IN LIMINE WAS GRANTED IN PART, DENIED IN PART, BUT

12   EVEN THE PARTS THAT WERE DENIED, I DON'T THINK THE OBJECTIONS

13   WERE OVERRULED.  WE WOULD STILL HAVE THE ABILITY TO MAKE THOSE

14   OBJECTIONS AT TRIAL, AND THEN YOUR HONOR WOULD RULE AT THEM AT

15   TRIAL.  FOR EXAMPLE, WHETHER THE DEFENDANTS HAD LAID THE

16   FOUNDATION FOR BUSINESS RECORDS EXCEPTION, AND SO FORTH.

17      BUT IF THOSE... IF THOSE DOCUMENTS RELATE ONLY TO

18   WILLFULNESS AND YOUR HONOR IS GOING TO BE DECIDING WILLFULNESS

19   AND THAT IS NOT GOING TO BE PRESENTED TO THE JURY, WHICH I

20   THINK IS THE CORRECT RESULT, THEN I DON'T THINK WE NEED TO

21   SPEND A LOT OF TIME ON THOSE OBJECTIONS BECAUSE ONLY YOUR

22   HONOR IS GOING TO SEE THEM.  AND, YOU KNOW, IT WILL BE A

23   SITUATION WHERE YOUR HONOR COULD BE LOOKING AT THEM, AND IF WE

24   ARE OBJECTING, WE ARE OBJECTING.  IT'S NOT WHERE YOU HAVE TO

25   SEND A JURY OUT OF THE ROOM OR ALL THAT TYPE OF THING.

1    SO I THINK IF THAT'S RIGHT, WE DON'T NEED TO WORRY ABOUT

2    IT RIGHT NOW AND WE CAN WORRY ABOUT IT DURING PHASE II, IF AND

3    WHEN THERE IS A PHASE II.

4         **MR. ELLIS:**  I DISAGREE.  504 AND 505 ARE COMING IN

5    FOR DIFFERENT REASONS THAN AS TO WILLFULNESS AND TO INTENT.

6    IN FACT, THEY COME IN FOR THE REASON OF DEALING WITH THE

7    SKIP-TRACING ISSUE, WHICH TO ME AT THIS POINT IN TIME, GIVEN

8    THE COURT'S RULINGS ON MR. PEREZ AND HIS INDIVIDUAL CLAIM, IS

9    REALLY GOING TO BE THE BIGGEST FACTUAL ISSUE OF THE TRIAL.

10   THAT IS, IS THERE A CONNECTION BETWEEN MR. PEREZ AND THE

11   CLASS?  AND IS HE A PROPER REPRESENTATIVE OF A SKIP-TRACED

12   CLASS.

13       THAT'S WHERE I THINK THE BATTLE LINES WILL BE DRAWN NEXT

14   WEEK.  AND SO IN ANY EVENT, I UNDERSTAND YOUR RULINGS FROM

15   YOUR TRIAL ORDER NO. 3, AND I DON'T HAVE ANYTHING TO ARGUE AT

16   THAT POINT IN TIME -- AT THIS POINT IN TIME.

17       **THE COURT:**  LET'S TALK ABOUT, AS A WAY OF GETTING TO

18   NEXT WEEK, LET'S TALK ABOUT THE VERDICT FORM THAT -- I SENT

19   YOU A COURTESY COPY ON FRIDAY.  AND THE REASON THAT I WANT TO

20   DO THAT IS BECAUSE WHAT THE JURY IS DECIDING IS ACTUALLY

21   IMPORTANT.

22       AT ONE POINT I WONDERED, GIVEN THE RULINGS THAT I MADE,

23   YOU KNOW, WHETHER THE DEFENDANTS, AS MUCH AS THEY -- WELL, I

24   DIDN'T KNOW -- LET'S GO THROUGH THIS FIRST BEFORE I TALK ABOUT

25   THAT.

1    I'M -- SO I'D LIKE TO KNOW, BECAUSE I'VE SEEN THE EVIDENCE

2    THAT HAS BEEN DISPUTED.  I HAVEN'T SEEN ALL OF THE EVIDENCE.

3    IN ONE OF THE VERSIONS OF THE VERDICT FORM THAT WAS GIVEN TO

4    ME, THERE WAS THIS WHOLE ISSUE ON THE CLASS.  AND I DIDN'T

5    UNDERSTAND THAT BECAUSE THE JURY DOESN'T HAVE A ROLE IN

6    DECIDING CLASS ISSUES.  THAT'S A JUDICIAL ISSUE.

7    BUT IN THE JURY INSTRUCTIONS, WHICH I ALSO SENT AT THE

8    SAME TIME, THERE WAS AN ENTIRE INSTRUCTION.  AND IT WAS --

9    IT'S ON PAGE 22 OF WHAT I SENT YOU -- WHERE THE FOUR CLASSES

10   WERE DEFINED, SKIP-TRACE CLASS 1, SKIP-TRACE CLASS 2,

11   NON-DEBTOR CLASS 1 AND NON-DEBTOR CLASS 2.  BUT I TEND TO ONLY

12   INSTRUCT JURIES ON TOPICS WHICH ARE RELEVANT TO THEIR

13   DECISIONS.

14   AND SO I DIDN'T UNDERSTAND WHAT THE THOUGHT PROCESS WAS

15   WITH ME READING AN INCREDIBLY LONG, TEDIOUS INSTRUCTION ABOUT

16   FOUR DIFFERENT SUBCLASSES AND HOW THAT TRANSLATED TO WHAT WE

17   WERE ACTUALLY ASKING THEM TO DO IN THE VERDICT FORM.

18   SO SOMEONE EXPLAIN TO ME, ONE, WHY WE ARE INSTRUCTING THEM

19   ON THESE VARIOUS CLASSES WHEN THEY ARE NOT BROKEN DOWN IN ANY

20   WAY, SHAPE, OR FORM IN THE VERDICT FORM, AND WHAT IS IT THAT

21   WE ARE TRYING TO GET THEM TO DECIDE, IF ANYTHING, ON THESE --

22   ON THAT TOPIC?  AND HOW -- SO THAT'S PART ONE.

23   AND THEN I WOULD LIKE TO KNOW WHAT THE EVIDENCE IS, TOO,

24   SO THAT I CAN THINK ABOUT IT BEFORE I HAVE TO DEAL WITH IT

25   NEXT WEEK.

1          WHO WANTS TO START?

2                **MR. ELLIS:**  YOU WANT ME TO GO?

3                **MR. BURSOR:**  IF YOU WANT TO GO, I HAVE ANSWERS, BUT

4     IF YOU WANT TO GO FIRST, THAT'S FINE.

5                **MR. ELLIS:**  OKAY, YOUR HONOR.

6          SO, YOU KNOW, THE ISSUE I SEE AS WE'RE COMING TO TRIAL IS

7     WHICH PHONE NUMBERS HAVE BEEN SKIP-TRACED.  AND WE START THAT

8     WITH MR. PEREZ AS AN INDIVIDUAL.  AND THAT HAS EFFECTIVELY

9     BECOME ONE OF THE ELEMENTS IN THIS CASE.

10         SO THE JURY INSTRUCTIONS, YOU KNOW, HAVE THE NORMAL TCPA

11    JURY INSTRUCTION IN THE DOCUMENTS THAT YOU SENT TO US... IN

12    THE JURY INSTRUCTIONS THAT YOU SENT US, AND THEN IT HAS THE

13    CLASS.  AND I DO THINK THEY ARE SOMEWHAT INCONSISTENT IN THAT

14    REGARD BECAUSE THE WAY THAT THIS CASE HAS COME TO THIS POINT

15    IS THAT THE NUMBER -- THERE IS -- THERE'S GOING TO BE THE

16    ISSUE OF MR. PEREZ'S INDIVIDUAL LIABILITY.

17         AND THE COURT HAS ALREADY DETERMINED TWO THINGS, AT LEAST

18    WITH RESPECT TO THAT.  THAT IS THAT THE DIALER THAT HE WAS

19    CALLED WITH IS AN ATDS, RIGHT, AND, SECONDLY, THAT AS TO

20    MR. PEREZ, THERE WAS NO PRIOR EXPRESS CONSENT.

21         SO FOR ALL PRACTICAL PURPOSES, LET'S JUST BE HONEST HERE,

22    WE'RE DEALING WITH, AT LEAST AS TO HIM, THE ISSUE IS GOING TO

23    BE HOW MANY VIOLATIONS ARE THERE.

24                **THE COURT:**  RIGHT.

25                **MR. ELLIS:**  OKAY.

1          **THE COURT:**  I AGREE WITH YOU SO FAR.

2          **MR. ELLIS:**  SO NOW WE SWITCH TO THE CLASS.

3      SO, YES, THERE IS A CERTIFIED CLASS BUT YOU HAVE NOT

4  DETERMINED IN THAT CLASS CERTIFICATION OR IN ANY OF THE ORDERS

5  THAT WE HAVE THAT ARE EXTANT AT THIS POINT IN TIME AS TO

6  WHETHER -- HOW MANY OF THOSE -- WHETHER ANY, ALL, SOME, PART

7  OF THE CLASS MEMBERS WERE -- THEIR NUMBERS WERE OBTAINED BY

8  SKIP-TRACING.

9          **THE COURT:**  CORRECT.

10          **MR. ELLIS:**  AND THAT'S GOING TO BE -- THAT IS GOING

11  TO BE WHERE THE BATTLE LINE IS HERE.  BECAUSE -- LET ME GO

12  FURTHER.

13      ASSUMING THAT, AND I THINK THE EVIDENCE IS GOING TO SHOW

14  YOUR HONOR, THAT THERE'S 26 PHONE CALLS TO MR. PEREZ.  IF

15  WE'RE DEALING WITH THE FIRST CAUSE OF ACTION OF THE COMPLAINT,

16  THE NEGLIGENT VIOLATION OF THE TCPA, THAT'S GOING TO GIVE US

17  WHAT, $13,000 IN DAMAGES.

18      IF THE COURT FINDS TREBLE DAMAGES IN THE SECOND OR

19  BIFURCATED PART OF THE TRIAL, THEN WE ARE GOING TO HAVE

20  $26,000 IN DAMAGES.

21      BUT IF THE JURY COMES BACK, IN MY VIEW, AND FINDS THAT --

22  AND, AGAIN, I BELIEVE THIS IS GOING TO BE THE PLAINTIFFS'

23  BURDEN OF PROOF BECAUSE THIS IS HOW THEY SET UP THEIR CLASS

24  AND EACH ONE OF THE CLASSES HAS THIS AS A REQUIREMENT, IF THE

25  JURY COMES BACK AND FINDS THAT THEY HAVE NOT MET THEIR BURDEN

1     OF PROOF OF SHOWING THAT SOME, ANY, OR ALL OF THE CLASS

2     MEMBERS WERE SKIP-TRACED, BECAUSE -- AND ALONG WITH IT THEY

3     FIND THAT MR. PEREZ'S NUMBER WAS NOT SKIP-TRACED --

4     SKIP-TRACING HAS NOTHING TO DO WITH THE PRIMA FACIE CASE OR

5     THE DEFENSES, BUT IT'S AN IMPORTANT ELEMENT THERE, WHICH IS

6     WHY -- AND LET'S BE CLEAR ABOUT THIS.  PLAINTIFFS ARE FIGHTING

7     SO HARD ON THOSE DOCUMENTS AND WE ARE FIGHTING SO HARD GOING

8     BACK, WE NOW HAVE A CASE.  BUT IF -- A VICTORY FOR ME IN THIS

9     CASE IS HAVE THE JURY FIND THERE WAS NO SKIP-TRACING HERE, AND

10     WE'VE NOW HAD A CASE THAT'S BEEN GOING ON FOR FIVE YEARS AND

11     THE DAMAGES ARE $26,000 AND, BY THE WAY, THE TCPA DOESN'T GIVE

12     ATTORNEYS' FEES.

13       IF THEY HAVE THEIR WAY AND THE JURY COMES BACK, THEN WE'VE

14     GOT A CASE THAT MAY BE WORTH $250 MILLION, BUT AS I'VE SAID

15     BEFORE, THAT IS MONOPOLY MONEY WITH MY MOM AND POP OUTFIT.

16       SO IF I HAVE NOT ARTICULATED THIS BEFORE, I HAVE NOW

17     ARTICULATED.  THAT IS WHAT THE TRIAL NEXT WEEK IS ALL ABOUT.

18         **THE COURT:**  SO --

19        **MR. BURSOR:**  I HAVE A VERY DIFFERENT VIEW OF THAT.

20         **THE COURT:**  ALL RIGHT.  LET ME HEAR YOUR VIEW.

21        **MR. BURSOR:**  SO, JUST TO ADDRESS YOUR HONOR'S

22     QUESTION FIRST, THE JURY DOES NOT DECIDE CLASS CERTIFICATION.

23     YOUR HONOR DECIDES CLASS CERTIFICATION.

24         **THE COURT:**  RIGHT, BUT YOU DO -- OKAY.  I AGREE WITH

25     THAT.  AND I'VE ALSO SAID, BECAUSE I'VE HAD TO DEAL WITH THIS,

1    AND I THINK WE'RE FINE GOING INTO TRIAL, WHICH IS THAT YOU

2    ACTUALLY HAVE TO HAVE A MEMBER OF THE CLASS.

3         **MR. BURSOR:**  RIGHT.  AND YOUR HONOR HAS DECIDED AT

4    THE CLASS CERT STAGE THAT WE'VE PRESENTED SUFFICIENT EVIDENCE

5    TO SHOW THAT MR. PEREZ IS A MEMBER OF THE CLASS.  AND THERE IS

6    NO CONTRARY EVIDENCE THAT I'VE SEEN TO DATE, EVEN AMONG THE

7    STRICKEN MATERIALS, BUT BE THAT AS IT MAY, THAT'S NOT FOR THE

8    JURY TO DECIDE.  YOUR HONOR DETERMINED THAT MR. PEREZ WAS AN

9    APPROPRIATE CLASS REPRESENTATIVE, AND SO NOW WE ARE HAVING

10   TRIAL.

11       AND SO YOUR HONOR'S QUESTION WAS, WHAT IS IT THAT THE JURY

12   DECIDES.  AND THAT'S WHAT WE HAVE ON THE VERDICT -- AND WHY

13   WOULD THE JURY NEED TO BE INSTRUCTED ABOUT CLASS

14   CERTIFICATION?

15       SO, MY VIEW, AND I AM PRETTY SURE IT'S CORRECT, THAT THE

16   JURY NEEDS TO BE INSTRUCTED ABOUT CLASS CERTIFICATION BECAUSE

17   THEY NEED TO KNOW THE DECISION YOUR HONOR MADE BECAUSE THEY

18   ARE BEING ASKED --

19       **THE COURT:**  NO, THEY DON'T NEED TO KNOW EXACTLY WHAT

20   I MADE.  THEIR DECISION IS GOING TO BE INDEPENDENT OF MY

21   DECISION.  MY DECISION WAS BASED UPON A RECORD THAT I HAD IN

22   FRONT OF ME AT THE TIME.

23       DO YOU AGREE, BECAUSE I THINK THAT MR. ELLIS IS PROBABLY

24   RIGHT, THAT IT IS AN ISSUE AS TO WHETHER OR NOT THERE IS

25   SUFFICIENT EVIDENCE -- I MEAN, WHETHER YOU MEET YOUR BURDEN ON

1    SKIP-TRACING.  I CERTAINLY SAID YOU HAD ENOUGH TO PRESENT.  I

2    NEVER SAID THAT YOU -- I MEAN, I DIDN'T GRANT SUMMARY JUDGMENT

3    ON THAT TOPIC.

4              **MR. BURSOR:**  WELL, THERE WAS NO MOTION FOR SUMMARY

5    JUDGMENT ON THAT TOPIC.

6              **THE COURT:**  RIGHT.

7              **MR. BURSOR:**  BECAUSE IT IS A CLASS CERT ISSUE.  BUT

8    YOUR HONOR DECIDED TO CERTIFY THE CLASS.

9       SO WHAT IS IT THAT THE JURY IS GOING TO BE ASKED TO DO?

10   ARE THEY GOING TO BE ASKED TO SECOND-GUESS YOUR CLASS

11   CERTIFICATION DECISION?  NO.

12             **THE COURT:**  YOU SAID YOU HAD ENOUGH EVIDENCE TO

13   PRESENT A JURY ON THE NATURE OF THIS CLASS -- ON WHETHER OR

14   NOT YOU COULD PROVE A CLAIM, A TCPA CLAIM FOR A CLASS, A

15   PARTICULAR KIND OF CLASS.

16             **MR. BURSOR:**  YES.  AND WE DO.

17             **THE COURT:**  OKAY.

18             **MR. BURSOR:**  BUT WHAT IS THE QUESTION THAT THE JURY

19   IS GOING TO BE ASKED TO ANSWER?  THAT'S WHY WE ARE LOOKING AT

20   THE VERDICT FORM BECAUSE THAT'S WHERE THOSE QUESTIONS ARE.

21   OKAY?

22      SO YOUR HONOR HAS A NOTE IN THE JURY INSTRUCTION AT

23   PAGE 22 ABOUT THE CLASS DEFINITIONS:  WHY DO I EVEN HAVE TO DO

24   THIS, RIGHT?

25      AND THE REASON YOUR HONOR HAS TO TELL THE JURY WHAT THE

1  CLASS IS IS BECAUSE QUESTIONS 4 AND FOLLOWING ON THE VERDICT

2  FORM, I THINK IT'S 4 THROUGH --

3        **MR. ELLIS:**  11.

4        **MR. BURSOR:**  4 THROUGH 11, ALL THOSE QUESTIONS

5  REQUIRE THE COURT -- PARDON ME, REQUIRE THE JURY TO DETERMINE

6  WHETHER PHONE CALLS WERE MADE TO CLASS MEMBERS AND HOW MANY.

7     SO IN ORDER TO DO THAT, THEY NEED TO KNOW THE CLASS

8  DEFINITION.  AND THEY ALSO NEED TO KNOW THAT THE CLASS

9  DEFINITION IS SET IN STONE.  THEY DO NOT GET TO CHANGE THE --

10  THEY DON'T DECIDE WHO'S IN THE CLASS --

11        **THE COURT:**  NO, THEY DON'T, BUT THEY DO GET TO

12  DECIDE, IT SEEMS TO ME, AS TO WHETHER -- WHETHER CALLS WERE

13  MADE TO PERSONS WHOSE CELLULAR PHONE WAS OBTAINED BY

14  SKIP-TRACING.

15        **MR. BURSOR:**  THAT'S THE SAME THING AS SAYING WHETHER

16  THEY WERE -- HOW MANY CALLS WERE MADE TO CLASS MEMBERS.

17        **THE COURT:**  NO.  IT'S A TWO-STEP PROCESS.

18     THE FIRST STEP IS, WERE THE CALLS MADE TO MEMBERS THROUGH

19  SKIP-TRACING OR WERE CALLS MADE TO PHONE NUMBERS OBTAINED

20  THROUGH SKIP-TRACING?

21     AND THE SECOND QUESTION IS, IF THE ANSWER TO THAT QUESTION

22  IS "YES", THEN HOW MANY?

23        **MR. BURSOR:**  SO YOU'RE LOOKING AT QUESTION 4, FOR

24  EXAMPLE.

25        **THE COURT:**  I WENT BACK TO THE CLASS DEFINITION, BUT

THIS IS -- I MEAN, LOOK, THE REASON THAT I SENT THESE THINGS

IN ADVANCE WAS TO TALK ABOUT THEM AND, TWO, I ONLY USED YOUR

VERSIONS OF IT IN A WAY THAT I CLEANED UP.

SO THIS VERDICT FORM AND THESE JURY INSTRUCTIONS WERE NOT

SET IN STONE.  THEY ARE THERE SO WE CAN HAVE AN INTELLIGENT

DISCUSSION.

AS I SAID, ALL I'VE EVER SAID WAS THAT THERE IS SUFFICIENT

EVIDENCE TO PRESENT TO THE JURY.  I HAVE NEVER SAID THAT YOU

HAVE PROVED YOUR BURDEN, AND YOU HAVE NEVER BROUGHT THAT

MOTION.

SO IT IS, I THINK, A THRESHOLD QUESTION TO KNOW WHETHER

THE JURY BUYS YOUR PRESENTATION OF THE EVIDENCE AND AGREES

WITH YOU THAT THE CALLS WERE MADE TO CELL PHONES OBTAINED

BY -- THROUGH SKIP-TRACING.

**MR. BURSOR:**  SURE.

**THE COURT:**  YOU HAVE TO PROVE THAT.

**MR. BURSOR:**  I AGREE WITH THAT.  BUT, YOUR HONOR --

WELL, I AGREE WITH THAT WITH RESPECT TO THE CLASS CLAIM, BUT

NOT WITH RESPECT TO MR. PEREZ'S CLAIM.

**THE COURT:**  NO, OF COURSE NOT.  THAT'S WHAT WE ARE

TALKING ABOUT.  HE'S EASY.  WE ARE TALKING ABOUT CLASS CLAIM.

SO THAT GOES TO EACH ONE OF THESE -- TO EACH ONE OF THESE

SUBCLASSES.  BECAUSE IF YOU CANNOT PROVE THAT, THEN

EVERYTHING -- THEN THERE IS NO QUESTION OF WHETHER OR WHY, AND

I DON'T LIKE TO GIVE JURORS INSTRUCTIONS WITHOUT THERE BEING A

1    REASON TO GIVE THEM TO THEM.

2           **MR. BURSOR:**  SO IF WE -- IF WE CANNOT PROVE THAT

3    THERE WAS A PHONE CALL MADE TO A CLASS MEMBER OBTAINED VIA

4    SKIP TRACING, THAT THAT EVER HAPPENED, I WOULD THINK IT -- IT

5    WOULD BE -- THAT WOULD BE A DECISION FOR YOUR HONOR TO MAKE,

6    AND THEN YOU WOULD DECERTIFY THE CLASS.  I DON'T THINK YOU

7    WOULD ASK THE JURY DID THAT HAPPEN?

8           **THE COURT:**  I DON'T KNOW -- WELL, WE CAN HAVE A

9    DEBATE ABOUT THAT.

10       SO, WHAT, YOU'RE EXPECTING THEM TO BRING A MOTION FOR

11   DECERTIFICATION AFTER TRIAL?  YOU SAID YOU COULD PROVE DAMAGES

12   AND YOUR CAUSE OF ACTION BASED UPON -- WELL, THAT'S A VERY

13   ODD --

14          **MR. BURSOR:**  IT'S NOT ODD AT ALL, YOUR HONOR, BECAUSE

15   THE CLASS CERT ISSUE IS FOR YOU AND YOU ALONE TO DECIDE.

16       IF YOU ARE TALKING ABOUT IS THERE A CLASS AND WHAT SHOULD

17   IT BE AND IS THERE A PROPER REPRESENTATIVE AND WHO THAT IS,

18   YOU ARE THE ONLY PERSON WHO CAN MAKE THOSE DECISIONS.  THE

19   JURY CANNOT MAKE THOSE DECISIONS.

20       THE DECISIONS FOR THE JURY TO MAKE ON THE VERDICT FORM, AS

21   YOUR HONOR LAID IT OUT BASED ON WHAT WE SUBMITTED, I THINK IS

22   CORRECT, WHICH IS HOW MANY PHONE CALLS WERE MADE TO CLASS

23   MEMBERS.

24       NOW, IF MR. ELLIS IS RIGHT, AND WE CAN'T SHOW THAT THERE

25   WAS EVER A PHONE CALL MADE TO SOMEONE WHOSE NUMBER WAS

```
 1    SKIP-TRACED --
 2              THE COURT:  IT'S NOT ONE.  I MEAN, THE WHOLE POINT --
 3    AND THIS IS, IN PART, THE ISSUE THAT I TRIED LAST FALL WAS
 4    THAT IN ORDER TO PROVE A CASE, YOU DO NOT HAVE TO PROVE THAT
 5    EACH AND EVERY PHONE CALL, RIGHT?  IT'S A PREPONDERANCE
 6    STANDARD.  IT'S NOT BEYOND A REASONABLE DOUBT.  IT IS NOT
 7    CLEAR AND CONVINCING EVIDENCE, IT'S PREPONDERANCE.
 8        AND SO THE QUESTION IS, WHAT DOES THE WEIGHT OF THE
 9    EVIDENCE SHOW?
10              MR. BURSOR:  I THINK I CAN EXPLAIN IT BY REFERENCE TO
11    THE VERDICT FORM, YOUR HONOR.
12        THE FIRST QUESTION ON THE VERDICT FORM THAT DEALS WITH
13    THIS IS QUESTION 5 WHERE YOUR HONOR WOULD ASK THE JURY THROUGH
14    THE VERDICT FORM:  STATE THE NUMBER OF CALLS RASH CURTIS MADE
15    WITH ITS GLOBAL CONNECT DIALER TO CLASS MEMBERS' CELLULAR
16    TELEPHONE NUMBERS DURING THE CLASS PERIOD WITHOUT THEIR PRIOR
17    EXPRESS CONSENT.
18        AND I'M GOING TO PRESENT EVIDENCE AND THEN I'M GOING TO
19    ARGUE TO THE JURY THAT THERE WERE 501,043 SUCH CALLS THAT WE
20    PROVED THROUGH THE TESTIMONY OF MR. SNYDER AND MS. VERKOVSKAYA
21    AND MR. WEIR WHO WENT THROUGH THE CALL LOGS AND FOUND WHICH
22    PHONE CALLS WERE MADE TO SKIP-TRACED NUMBERS.  SO I'M GOING TO
23    SAY THAT'S 501,043.
24        AND IF THE JURY WRITES THAT IN RESPONSE TO QUESTION 5, AND
25    I BELIEVE THAT'S WHAT'S GOING TO HAPPEN, THEY WILL HAVE
```

1    DETERMINED THAT ALL THOSE CALLS WERE MADE TO CLASS MEMBERS,

2    MEANING THAT THEY WERE SKIP-TRACED.

3        NOW, I EXPECT MR. ELLIS IS GOING TO STAND UP DURING

4    CLOSING ARGUMENTS AND SAY THAT THAT NUMBER SHOULD BE ZERO

5    BECAUSE WE NEVER PROVED BEYOND A PREPONDERANCE OF THE EVIDENCE

6    THAT ANY OF THOSE NUMBERS WAS SKIP-TRACED BECAUSE HE HAS A

7    THEORY ABOUT HOW OUR EXPERTS' METHODOLOGY WAS WRONG AND FAILED

8    TO IDENTIFY SKIP-TRACED NUMBERS.

9        SO THE JURY WILL DECIDE IF THEY BELIEVE THAT, THAT OUR

10   EXPERTS' METHODOLOGY WAS SO FLAWED THAT EVERY ONE OF THE PHONE

11   CALLS THAT THEY SAY WAS MADE TO CLASS MEMBERS WASN'T, THEN

12   THEY WILL WRITE A ZERO.

13       BUT THAT'S NOT WHAT'S GOING TO HAPPEN BECAUSE ALL OF THE

14   EVIDENCE IN THIS CASE SHOWS THAT THE CALL LOGS -- THE CALL

15   LOGS STARTED WITH 14 MILLION, OVER 14 MILLION PHONE CALLS.

16   AND THEN SNYDER AND VERKOVSKAYA AND WEIR NARROWED THEM DOWN TO

17   JUST THE CALLS THAT WERE MADE TO THE SKIP-TRACED NUMBERS

18   BELONGING TO CLASS MEMBERS MEETING CERTAIN CRITERIA.

19       AND IF THAT'S RIGHT, THE JURY WILL HAVE -- IF THE JURY

20   WRITES OUR NUMBER, THAT MEANS THEY BELIEVED THAT WE DID THAT

21   CORRECTLY.  IF THE JURY WRITES DOWN A ZERO, THAT MEANS THEY

22   BELIEVE THAT WE FAILED TO PROVE THAT THOSE NUMBERS WERE

23   SKIP-TRACED AND WERE MADE TO CLASS MEMBERS.

24            **THE COURT:**  SO WHEN YOU GET TO THE -- LET'S TAKE

25   NO. 5.  DOES 5 RELATE TO ONLY ONE OF THESE SUBCLASSES OR ALL

1   OF THE SUBCLASSES?

2           **MR. BURSOR:**  YOUR HONOR, 5 RELATES TO --

3           **THE COURT:**  OR WHICH ONES -- TELL ME -- WE'VE GOT

4   SUBCLASS A, B, C, AND D.  WHICH QUESTIONS RELATE TO EACH OF

5   THOSE SUBCLASSES?

6           **MR. BURSOR:**  WELL, YOUR HONOR, WE TALKED ABOUT THIS

7   AT THE LAST HEARING THAT WE WANTED TO BREAK OUT THE VERDICT

8   FORM NOT BY SUBCLASSES BUT BY DIALER FOR THE REASONS I

9   EXPLAINED AT THE LAST HEARING BECAUSE THERE COULD BE A

10  POST-TRIAL ISSUE ABOUT ONE DIALER AND NOT ANOTHER DIALER.

11      SO I THINK THIS RELATES TO ALL FOUR CLASSES BECAUSE --

12  PARDON ME.

13      5 RELATES TO THE GLOBAL CONNECT DIALER.  SO, YEAH,

14  SKIP-TRACE CLASS 1 INCLUDES PEOPLE CALLED WITH THE GLOBAL

15  CONNECT DIALER.  SKIP-TRACE CLASS 2 INCLUDES CLASS MEMBERS WHO

16  RECEIVED CALLS WITH PRERECORDED VOICE.

17          **THE COURT:**  RIGHT.

18          **MR. BURSOR:**  SO 5 RELATES TO CLASS A AND 6 RELATES TO

19  CLASS B.

20      5 -- SO 5 IS A AND C, AND 6 IS B AND D, I BELIEVE.

21          **MR. ELLIS:**  I DON'T THINK THAT'S RIGHT.  I THINK 7

22  DEALS WITH THE VIC DIALER.

23          **MR. BURSOR:**  WELL, BUT --

24          **THE COURT:**  LOOK, LET ME GET -- I'M GOING TO CREATE A

25  CHART HERE SO THAT I HAVE YOUR PERSPECTIVES.  AND MAYBE

```
1    THERE'S OVERLAP, MAYBE THERE'S NOT, BUT I WANT TO KNOW.

2        SO WITH RESPECT TO -- AND IF MULTIPLE VERDICT FORM

3    QUESTIONS RELATE TO SUBCLASSES, LET ME KNOW.  BUT I WANT TO

4    KNOW YOUR PERSPECTIVE.

5        SO WITH RESPECT TO SUBCLASS... SO THIS IS SUB A,

6    SKIP-TRACE CLASS 1.  WHICH QUESTIONS ON THE VERDICT FORM

7    RELATE TO THAT CLASS?

8            MR. BURSOR:  MAY I HAVE JUST ONE MOMENT, YOUR HONOR?

9            THE COURT:  YES.  WE'RE GOING TO GO THROUGH EACH OF

10   THESE.  SO IF YOU ALL NEED A FEW MINUTES, THAT'S FINE.

11               (PAUSE IN THE PROCEEDINGS.)

12           MR. BURSOR:  OKAY.  SO THERE'S THREE DIALERS.

13           THE COURT:  RIGHT.

14           MR. BURSOR:  AND THERE'S TWO THEORIES OF LIABILITY.

15   ONE THEORY OF LIABILITY IS YOU CALLED WITHOUT CONSENT TO A

16   SKIP-TRACED NUMBER AND A SECOND THEORY OF LIABILITY IS YOU DID

17   THAT WITH A PRERECORDED MESSAGE.  ALL RIGHT?

18       SO SUBCLASS A INCLUDES THE VIC DIALER AND THE GLOBAL

19   CONNECT DIALER.  AND WE ALSO HAVE, YOUR HONOR, AT SOME POINT

20   DURING THE CLASS PERIOD THE GLOBAL CONNECT DIALER BEGAN TO BE

21   REFERRED TO AS THE TCN DIALER.  BUT I BELIEVE THOSE TWO

22   DIALERS ARE ONE IN THE SAME, ALTHOUGH THE CALL LOGS CAME OUT

23   THERE WERE SEPARATE CALL LOGS FOR EACH VERSION.  MY

24   UNDERSTANDING IS IT WAS UPDATED.

25           MR. ELLIS:  SO I NEED TO CORRECT TO COUNSEL.  SO
```

THERE ARE THREE DISTINCT DIALERS.  GLOBAL CONNECT IS NOT TCN.

**MR. BURSOR:**  WELL, THERE MAY BE A DISPUTE ABOUT THAT THAT WE CAN ADDRESS LATER.

BUT QUESTION 4 ON THE VERDICT FORM CONCERNS ONLY THE GLOBAL CONNECT DIALER.  JUST ASKS JURORS WHETHER CALLS WERE MADE USING THAT DIALER.

**THE COURT:**  SO THAT WOULD BE ALL CLASSES, THOUGH, ALL FOUR?

**MR. BURSOR:**  THAT WOULD CONCERN ALL FOUR CLASSES.

QUESTION 5 CONCERNS ALL THE PHONE CALLS MADE WITH THE GLOBAL CONNECT DIALER TO CLASS MEMBERS.  SO THAT IS, AGAIN, ALL FOUR CLASSES.

QUESTION 6 CONCERNS ONLY THOSE CALLS MADE WITH GLOBAL CONNECT THAT INCLUDED A PRERECORDED MESSAGE.  NOW, THOSE TWO NUMBERS ARE GOING TO BE THE SAME BECAUSE WE'VE LIMITED OUR CLASS LIST TO PHONE CALLS THAT THE EXPERTS' ANALYSIS CONCLUDED SHOWED INDICIA THERE WAS A PRERECORDED VOICE, WHICH MEANS THEY WERE ANSWERED AND THEY WERE SIX SECONDS OR MORE IN DURATION.

IS THERE ANOTHER CRITERIA OTHER THAN THAT?

**MR. KRIVOSHEY:**  NO.

**MR. BURSOR:**  OKAY.

SO WE ARE ONLY PRESENTING EVIDENCE ON CALLS THAT WERE ANSWERED AND WERE SIX SECONDS OR LONGER IN DURATION FROM THE GLOBAL CONNECT DIALER.

SO, WHEN I STAND UP IN FRONT OF THE JURY IN CLOSING

1    ARGUMENT, I'M GOING TO TELL THEM THAT THE ANSWER TO QUESTIONS

2    5 AND 6 ARE THE SAME.  IT'S 501,043 SUBJECT TO POTENTIAL

3    CHANGE IN THAT NUMBER BASED ON WHETHER THERE ARE ANY OPT-OUTS

4    RECEIVED BETWEEN NOW AND THE OPT-OUT DEADLINE BECAUSE IT

5    HASN'T PASSED YET.  SO THAT NUMBER MAY GO DOWN.

6        QUESTION 7 CONCERNS ONLY THE VIC DIALER, BUT, AGAIN, THAT

7    IS GOING TO INCLUDE PEOPLE IN ALL FOUR CLASSES.  WE DESIGNED

8    THE VERDICT FORM NOT TO GO CLASS BY CLASS BECAUSE THAT'S NOT

9    REALLY IMPORTANT.  WHAT'S IMPORTANT IS THE DIALERS BECAUSE OF

10   OUR CONCERN ABOUT POST-TRIAL ISSUES RELATING TO ONE OR OTHER

11   DIALER.

12       SO QUESTION 7 CONCERNS ALL THE CALLS MADE BY THE VIC

13   DIALER --

14           THE COURT:  WHAT'S THE NUMBER THERE?

15           MR. BURSOR:  THE NUMBER FOR QUESTION 8 IS CALLS BY

16   THE VIC DIALER TO CLASS MEMBERS IS 2,591, SUBJECT TO POTENTIAL

17   REDUCTION IF THERE ARE OPT-OUTS BETWEEN NOW AND WHEN WE GIVE

18   THE OPENING STATEMENT.

19       AND EVERY ONE OF THOSE CALLS, BECAUSE OUR EXPERTS USED THE

20   CRITERIA THEY USED TO ONLY COUNT THE PHONE CALLS THAT HAD

21   INDICIA OF A PRERECORDED MESSAGE BEING USED, THE ANSWER TO

22   QUESTIONS 8 AND 9 AGAIN THE SAME.  AS OF RIGHT NOW IT'S 2,591.

23   THESE ARE ALL IN TABLE 4 OF MR. WEIR'S REPORT.

24       SO QUESTION 8 CONCERNS CLASSES A AND C AND QUESTION 9

25   CONCERN CLASSES B AND D.  BUT, AGAIN, THAT'S NOT WHAT'S

IMPORTANT.  WHAT'S IMPORTANT IS WE WANT IT TO GO DIALER BY

DIALER BECAUSE CLASS BY CLASS IS NOT THE BEST WAY TO DO IT

HERE.

SO THEN QUESTION 10 CONCERNS THE TCN DIALER.  NOW, THIS IS

WHERE PERHAPS WE'RE GOING TO NEED TO ADDRESS THIS ISSUE

BECAUSE I AM NOW HEARING FOR THE FIRST TIME THAT THERE'S A

DISPUTE AS TO WHETHER TCN AND GLOBAL CONNECT WERE THE SAME

THING.

OUR EXPERTS TREATED THEM SEPARATELY.  THE TERMINOLOGY OF

THE TCN DIALER WAS NOT LEARNED ABOUT UNTIL AFTER THE CLASS

CERT ORDER.  BUT WE ACTUALLY WERE GOING TO PROPOSE A FIX TO

THIS IN THE JURY INSTRUCTIONS.  I'M NOT SURE -- WE DON'T HAVE

IT CRAFTED FOR TODAY BECAUSE WE REALIZED THIS THIS MORNING.

WE THINK IT IS A MINOR ISSUE.

BUT QUESTION 10, IN OUR VIEW, CONCERNS ALL FOUR CLASSES

BECAUSE WHERE WE USED GLOBAL CONNECT IN THE CLASS CERT ORDER

WE NOW UNDERSTAND THAT TO MEAN GLOBAL CONNECT AND TCN AND/OR

TCN BECAUSE IT'S THE SAME -- GLOBAL CONNECT BECAME TCN AT SOME

POINT DURING THE CLASS PERIOD IS OUR UNDERSTANDING, BUT WE

WANT TO DOUBLE-CHECK THAT AND CONFIRM IT BEFORE WE MAKE A

PROPOSAL FOR HOW TO REMEDY THAT NARROW ISSUE.

AND THEN 11, WE -- 11 CONCERNS, AGAIN, CLASSES A AND C

BECAUSE THE CALLS MADE WITH THE TCN DIALER, THE EXPERTS DID

NOT LIMIT THEIR ANALYSIS TO ONLY THOSE THAT SHOWED A

PRERECORDED MESSAGE.  SO OUR CLAIMS CONCERNING THE CALLS MADE

```
 1    WITH THE TCN DIALER ARE SOMEWHAT NARROWER.  WE HAVE ONLY ONE

 2    THEORY OF LIABILITY ON THAT ONE THAT THE CALLS WERE MADE

 3    WITHOUT CONSENT.  WE'RE NOT PRESENTING EVIDENCE THAT THE TCN

 4    CALLS WERE MADE WITH PRERECORDED VOICES.

 5        SO CLASSES B AND D ARE NOT DEALT WITH IN 10 OR 11.  BUT,

 6    AGAIN, THERE WAS A REASON -- IT WAS NOT AN OVERSIGHT THAT WE

 7    DID THIS DIALER BY DIALER INSTEAD OF CLASS BY CLASS BECAUSE --

 8        THE COURT:  I'M NOT -- I DIDN'T SUGGEST IT WAS.  I'M

 9    TRYING TO UNDERSTAND THE LOGIC.

10        AND WHAT IS THE NUMBER?

11        MR. BURSOR:  THE NUMBER HERE FOR -- THE ANSWER TO

12    QUESTION 11, WE'RE GOING TO SAY, BASED ON MR. WEIR'S TABLE 4

13    IS 31,064.  AGAIN, SUBJECT TO POTENTIAL REDUCTION IF THERE ARE

14    OPT OUTS BETWEEN NOW AND WHEN WE IMPANEL THE JURY.

15        THE COURT:  ALL RIGHT.  MR. ELLIS, YOUR STATEMENTS

16    REGARDING TCN BEING DIFFERENT FROM GLOBAL CONNECT.

17        MR. ELLIS:  SO, I MEAN, IF WE WENT BACK AND LOOKED AT

18    ALL THE BRIEFING AND EVEN YOUR ORDERS IN THIS CASE, WE WOULD

19    FIND THAT IN ALL OF THOSE ORDERS YOU GOT IT EXACTLY RIGHT WHEN

20    YOU TALKED ABOUT THE EVOLUTION OF THE DIALERS IN THIS CASE.

21        THE VIC IS THE EARLIEST DIALER, YOU MAY RECALL, YOUR

22    HONOR.  THAT'S REALLY WHAT WE WERE DEALING WITH BACK IN 2012,

23    2013.  IT THEN MORPHED -- WHEN I SAY "MORPHED", BECAME A NEW

24    PLATFORM WITH GLOBAL CONNECT, AND THEN ULTIMATELY TO TCN.  SO,

25    YOU KNOW, I KEEP HEARING FROM CLASS COUNSEL THAT THEY DON'T
```

1    KNOW THESE THINGS, BUT THEY DO.

2        AND, IN FACT, IF YOU LOOK AT PAGE 22 OF THE DRAFT JURY

3    INSTRUCTIONS THAT WERE DEALING ABOUT WHERE THE INTRODUCTION TO

4    A CLASS ACTION IS LAID OUT, YOU WILL SEE IN SKIP-TRACE CLASS 1

5    UNDER A, THAT THEY TALK ABOUT DAKCS VIC DIALER IN GLOBAL

6    CONNECT, AND THEY DON'T TALK ABOUT TCN.

7        YOU CAN THEN GO DOWN TO C ON THAT PAGE, THE NON-DEBTOR

8    CLASS 1, AND YOU SEE THEY TALK ABOUT DAKCS VIC DIALER AND

9    GLOBAL CONNECT.

10        WHAT THEY ARE TALKING ABOUT IN KIND OF CODE, WHAT CLASS

11    COUNSEL IS TALKING ABOUT IN CODE IS THAT IF THE JURY COMES

12    BACK AND FINDS THAT THERE'S A TCN DIALER -- AND, BY THE WAY,

13    NEITHER VIC NOR TCN, THOSE DIALERS WERE NOT USED WITH

14    MR. PEREZ.  ONLY GLOBAL CONNECT WAS.

15        SO THE -- LET'S JUST PULL THE SHEET OFF THIS.  THE PROBLEM

16    WITH THIS IS, TO THE EXTENT THAT WE ARE USING, YOU KNOW,

17    MR. PEREZ TO BE THE CLASS REPRESENTATIVE OF CLASS MEMBERS THAT

18    WERE CALLED WITH THESE OTHER DIALERS, THERE'S PROBABLY A

19    PROBLEM THERE.  AND I THINK THAT'S WHAT CLASS COUNSEL IS

20    ALLUDING TO IN SOME SORT OF POST-TRIAL PROBLEM.

21        BUT SETTING THAT ASIDE, BECAUSE -- SETTING ALL OF THAT

22    ASIDE, AS WE SEE GOING BACK IN THE PROPOSED VERDICT FORM TO

23    NO. 1 WHERE THE -- AND THIS IS ON PAGE 2 OF THE VERDICT FORM,

24    UNDER A, PLAINTIFF PEREZ'S INDIVIDUAL CLAIMS, BUT THIS ISSUE

25    IS FOUND STARTING ON THE THIRD PAGE UNDER B, CLASS MEMBERS

1    CLAIMS, ITEM 4, THERE'S ANOTHER OPTION THAT THE COURT HAS PUT

2    THERE, DID RASH CURTIS OBTAIN CLASS MEMBERS' CELLULAR

3    TELEPHONE NUMBERS VIA SKIP-TRACING AND CALL THEM ON THEIR

4    CELLULAR TELEPHONE DURING THE CLASS PERIOD WITH THE GLOBAL

5    CONNECT DIALER AND WITHOUT THEIR PRIOR CONSENT?

6         NOW, I THINK THERE'S A WHOLE BUNCH OF STUFF IN THERE THAT

7    WILL PROBABLY HAVE TO BE BROKEN DOWN IN A SPECIAL VERDICT, BUT

8    I THINK THE COURT'S -- I KNOW YOU ARE NOT MAKING A FIRM

9    DECISION THERE, BUT THE SKIP-TRACING PART OF THIS IS GOING TO

10   BE KEY.

11        NOW, IF I WAS A COMMITTEE OF ONE DRAFTING THE JURY

12   INSTRUCTIONS, WOULD I HAVE A JURY INSTRUCTION LIKE PROPOSED

13   JURY INSTRUCTION NO. 32 AT PAGE 22 THAT IS THAT DENSE?  I

14   PROBABLY WOULD NOT IF I WAS A COMMITTEE OF ONE.

15        I WOULD SAY THAT YOU ARE BEING ASKED TO DETERMINE WHETHER

16   OR NOT THEIR CLASS MEMBERS CALLED WITH AN ATDS WITHOUT PRIOR

17   EXPRESS CONSENT AND BY USING A NUMBER THAT WAS SKIP-TRACED.

18        AND THAT WOULD KIND OF CUT THROUGH SOME OF THE DENSITY

19   HERE BECAUSE I DON'T KNOW IF THIS IS EXACTLY WHAT YOU WERE

20   SAYING, YOUR HONOR, I DO THINK THAT THAT IS GOING TO BE

21   GOBBLEDYGOOK TO A JURY.

22        SO WHEN I CAME IN THIS MORNING, THE THINGS THAT I WANTED

23   TO TALK ABOUT ARE PRECISELY THIS SPECIAL VERDICT FORM AND HOW

24   IT FITS IN WITH THE JURY INSTRUCTIONS.

25             **THE COURT:**  WELL, GIVEN WHAT I'VE HEARD AND GIVEN

1    WHAT THE ISSUES ARE, I MEAN, LOOK, I'M NOT HERE TO TAKE SIDES.

2    I'M HERE TO GIVE YOU A FORUM FOR TRYING YOUR CASE IN FRONT OF

3    A JURY.

4        EACH OF YOU HAVE -- IF YOU COULDN'T RESOLVE THIS, IT'S

5    BECAUSE YOU DON'T AGREE AND YOU CAN'T REACH A COMPROMISE,

6    RIGHT?  SO FAIR TRIALS ARE ONES WHERE EACH SIDE GETS TO

7    PRESENT WHAT THEY HAVE BASED UPON THE RULES OF EVIDENCE, AND

8    YOU'RE ENTITLED TO A FAIR DECISION BY THE JURY.  AND VERDICT

9    FORMS ARE THERE IN PART TO MAKE SURE THAT THE JURY UNDERSTANDS

10   WHAT THEIR JOB IS AND WHAT IT IS THEY ARE BEING SOUGHT TO

11   ANSWER.

12       SO IT SEEMS TO ME BASED UPON WHAT YOU SAY AND WHAT I KNOW

13   OF THE CASE AT THIS STAGE IN THE GAME AND WHERE THINGS ARE, IT

14   SEEMS TO ME THAT IT IS ACCURATE TO SAY THAT... I COULD ASK THE

15   JURY TO STATE THE NUMBER OF CALLS MADE WITH THE DIALER TO

16   CELLULAR TELEPHONE NUMBERS OBTAINED THROUGH SKIP-TRACING

17   DURING THE CLASS PERIOD.  BECAUSE THAT'S THE ISSUE FOR THE

18   DEFENSE.

19       SO I DON'T HAVE TO HAVE A SEPARATE QUESTION, BUT IT SEEMS

20   TO ME THAT IT WOULD BE APPROPRIATE TO ADD THAT PHRASE IN THERE

21   BECAUSE THAT'S THE -- THAT'S A BIG ISSUE, AND IT DOESN'T

22   CHANGE THE QUESTION.  RIGHT?  THAT IS, IT DOESN'T CHANGE THE

23   QUESTION IN TERMS OF WHAT YOUR PROOF IS.

24           **MR. BURSOR:**  THAT SOUNDS CORRECT.  I MEAN, THE JURY

25   IS BEING ASKED -- THE ISSUE IS HOW IS THE QUESTION WORDED.

1    AND YOUR HONOR'S DRAFT PRESENTED --

2         **THE COURT:**  I'M LOOKING AT IT.  NO. 5.  IF WE LOOK AT

3    NO. 5 AS AN EXAMPLE, OR WE COULD DO IT IN NO. 4, AND PROBABLY

4    4 IS BETTER:  DID RASH CURTIS MAKE CALLS WITH ITS GLOBAL

5    CONNECT DIALER TO CLASS MEMBERS' CELLULAR TELEPHONE NUMBERS

6    OBTAINED THROUGH SKIP-TRACING DURING THE CLASS PERIOD WITHOUT

7    THEIR PRIOR WRITTEN CONSENT?

8         THAT SEEMS TO ME TO BE THE QUESTION.

9         **MR. BURSOR:**  SO I THOUGHT WHERE YOUR HONOR WAS GOING

10   IS YOU WERE TRYING TO ELIMINATE THE CONCEPT OF CLASS SO THAT

11   YOU DON'T HAVE TO READ THE GOBBLEDYGOOK CLASS DEFINITION.

12        **THE COURT:**  LOOK, I'M HAPPY -- I CAN CHANGE THAT --

13   THE REASON THAT THAT PAGE IS IN THERE IS BECAUSE THAT'S THE

14   WAY IN WHICH YOU GAVE IT TO ME.  IT WAS A JOINT INSTRUCTION,

15   AND I TEND NOT TO THROW OUT JOINT INSTRUCTIONS WITHOUT HAVING

16   A DISCUSSION.

17        I ACTUALLY THINK THAT THE WAY YOU BROKE IT DOWN WAS A MUCH

18   MORE LOGICAL, SIMPLER STATEMENT OF WHAT THESE VARIOUS CLASSES

19   ARE.  SO I CAN CRAFT SOMETHING AS MR. ELLIS SUGGESTED THAT IS

20   MUCH SIMPLER THAN GIVING THEM THE FOUR TECHNICAL COURT-DEFINED

21   CLASSES, AND THEN I CAN SHARE THAT WITH YOU, AND YOU SEE WHAT

22   YOU THINK.  BUT I CAN DO IT MUCH SIMPLER THAN WHAT YOU GAVE

23   ME, BUT I PUT IN HERE WHAT YOU GAVE ME.

24        **MR. BURSOR:**  SO, YOUR HONOR, I'M VERY AMENABLE TO

25   THAT.  BUT MY -- I JUST HAVE ONE CONCERN.  IF THAT CAN BE DONE

1   BY STIPULATION, THEN I'M HAPPY TO DO THAT.  I'VE DONE --

2        **THE COURT:**  IF YOU WANT TO TAKE A CRACK AT IT, I HAVE

3   PLENTY TO DO.  SO YOU CAN TAKE A CRACK AT IT.  IF YOU GUYS CAN

4   AGREE, THAT'S GREAT.

5        **MR. BURSOR:**  EVERY CLASS ACTION TRIAL THAT I'VE EVER

6   DONE, THE JURY HAS BEEN TOLD WHAT THE CLASS WAS THAT WAS

7   CERTIFIED IN LANGUAGE IDENTICAL TO THE CLASS CERT ORDER.  SO

8   THAT'S WHY WE DID THIS.

9        **THE COURT:**  OKAY.

10       **MR. BURSOR:**  OBVIOUSLY THIS IS NOT POETRY HERE, BUT

11  IT'S WHAT --

12       **THE COURT:**  BUT HAVE YOU EVER SEEN A NINTH CIRCUIT

13  DECISION THAT SOMEHOW TURNED ON THE COURT'S DESCRIPTION OF THE

14  CLASSES TO THE JURY?

15       **MR. BURSOR:**  I HAVEN'T, BUT I'M VERY CONCERNED

16  BECAUSE, FOR EXAMPLE, I KNOW WHEN YOU GIVE CLASS NOTICE, YOU

17  HAVE TO PUT THE CLASS DEFINITION IN THE NOTICE.  IT'S ONE OF

18  THE REQUIREMENTS SO PEOPLE CAN TELL IF THEY ARE A CLASS MEMBER

19  OR NOT.

20       **THE COURT:**  BUT WE ARE NOT ASKING PEOPLE TO TELL US

21  WHETHER OR NOT THEY'RE --

22       **MR. BURSOR:**  BUT WE'RE ASKING JURORS TO SAY HOW MANY

23  PHONE CALLS WERE MADE TO CLASS MEMBERS.  AND IF THE PHRASE

24  "CLASS MEMBERS" IS GOING TO BE ON THE VERDICT FORM, THEN THEY

25  NEED TO KNOW WHAT THE CLASS DEFINITION IS.

1       SO I THOUGHT WHERE YOU WERE GOING WAS, YOU -- I THOUGHT

2   WHERE YOU WERE GOING WAS TO ELIMINATE THAT PHRASE FROM THE

3   VERDICT FORM AND JUST SAY HOW MANY PHONE CALLS WERE MADE TO

4   NUMBERS THAT WERE OBTAINED VIA SKIP-TRACING DURING A CERTAIN

5   TIME PERIOD.  AND WE CAN JUST WRITE IN THE CLASS PERIOD.  WE

6   DON'T NEED TO WRITE CLASS PERIOD, WE CAN JUST PUT THE DATES

7   THERE TO ELIMINATE THE NEED TO INSTRUCT THE JURY ON THE CLASS

8   AT ALL, BUT I ALSO, I WOULD -- THAT WOULD STRIKE ME AS UNUSUAL

9   AND I WOULD BE WORRIED ABOUT THAT.

10      **THE COURT:**  LOOK, IF PEOPLE AGREE, THEN THERE IS NOT

11  AN ISSUE.  AND I ACTUALLY THINK THAT IT IS OUR JOB TO HAVE

12  JURIES ONLY DECIDE THINGS THAT ARE AT ISSUE, NOT THINGS THAT

13  AREN'T AT ISSUE.

14      SO IF THERE'S AGREEMENT -- IS THERE AGREEMENT ON THE CLASS

15  PERIOD?  ARE THERE DATES THAT CAN BE INSERTED?

16      **MR. ELLIS:**  I THINK WE DO AGREE.  I THINK, ALTHOUGH

17  DO WE HAVE A START DATE IN 2012?

18      **MR. BURSOR:**  YOUR HONOR GAVE US A START DATE IN THE

19  ORDER AND THE END DATE IS THE DATE NOTICE IS DISSEMINATED --

20      **MR. ELLIS:**  I ASSUME THAT --

21      **MR. BURSOR:**  -- WHICH WE NOW HAVE.

22      **MR. ELLIS:**  THE START DATE WOULD BE FOUR YEARS BEFORE

23  THE DATE THE COMPLAINT WAS FILED AND WOULD RUN UP UNTIL

24  WHEN -- IS THE NOTICE PERIOD GOING TO END ON FRIDAY?

25      **MR. BURSOR:**  IT'S THE DATE THE NOTICE IS

1    DISSEMINATED.  SO I AM SURE WE CAN MAKE A STIP AND GIVE THAT

2    TO YOUR HONOR.

3          **MR. ELLIS:**  WE CAN DO THAT.

4          **THE COURT:**  I'M GOING TO PUT THAT ON YOUR LIST, WHICH

5    IS TO STIPULATE TO THE NOTICE AND WE CAN -- TO THE NOTICE

6    PERIOD, CLASS PERIOD, AND WE CAN CHANGE THAT.

7          **MR. BURSOR:**  SO THEN WHEN YOUR HONOR INSTRUCTS THE

8    JURY, YOU CAN PUT THE ACTUAL DATES.  YOU DON'T HAVE TO SAY

9    "CLASS PERIOD".

10          **MR. ELLIS:**  AND, MR. BURSOR, I AM HAPPY TO WORK WITH

11    YOU OVER THE NEXT COUPLE OF DAYS TO COME UP WITH SOMETHING

12    DIFFERENT THAN --

13          **THE COURT:**  WE ARE -- WE ARE A WEEK AWAY FROM TRIAL

14    SO WE ARE GOING TO START USING PROPER LANGUAGE IN THE

15    COURTROOM.  IF YOU WANT TO TALK TO HIM, TALK TO HIM IN THE

16    HALL.

17          **MR. ELLIS:**  OKAY.  I APOLOGIZE, YOUR HONOR.

18          **THE COURT:**  IT'S ALL RIGHT.

19       IN TERMS OF -- BACK TO THIS ISSUE OF CLASS MEMBERS, I MEAN

20    WHAT I ASK CAN SAY IS THAT THE COURT HAS PREVIOUSLY DEFINED

21    CLASS MEMBERS.  AND THEN SAY, IN GENERAL THIS IS THE WAY IT

22    BREAKS DOWN.  AND THEN USE THAT DESCRIPTION AS THE DEFINED

23    TERM FOR WHAT A CLASS MEMBER IS, WHICH THEN GETS TRANSPOSED

24    INTO THE VERDICT FORM.

25       YOU KNOW, IT IS FORM OVER SUBSTANCE TO THINK THAT A JURY

```
1    IS GOING TO REALLY TAKE THOSE TECHNICAL -- I, FRANKLY, THINK

2    THAT THOSE TECHNICAL CLASS DESCRIPTIONS ARE GOING TO BE LESS

3    INFORMATIVE THAN A DEFINITION THAT SAYS THAT IT'S THE COURT'S

4    DUTY TO DEFINE THE CLASS.  THE COURT HAS DONE THAT.  SO THAT

5    YOU UNDERSTAND, HERE ARE THE FOUR CLASSES.  THERE ARE TWO

6    CLASSES THAT DO THIS, TWO CLASSES THAT DO THAT, AND WE ARE

7    DEFINING THAT AS CLOSE MEMBERS.

8        AGAIN, IF YOU WANT TO TAKE A STAB AT WRITING IT, THAT IS

9    FINE.  I DON'T THINK THAT IT IS REVERSIBLE ERROR TO BE MORE

10   CLEAR TO A JURY.

11            MR. BURSOR:  WELL, YOUR HONOR, MY SUGGESTION WOULD BE

12   THAT WE -- MR. ELLIS AND I BETWEEN US COME UP WITH AN

13   APPROPRIATE PARAPHRASE OF THESE FOUR CLASSES THAT IS ALONG THE

14   LINES THAT YOUR HONOR IS DESCRIBING.

15       I THINK IT CAN BE BOILED DOWN TO ONE SENTENCE; PERSONS

16   WHOSE NUMBERS WERE DIALED WITH THE AUTO DIALERS WHOSE NUMBERS

17   WERE OBTAINED VIA SKIP-TRACING.  BUT WE'LL EXCHANGE OUR VIEWS

18   ON THAT AMONGST OURSELVES, AND THEN WE WILL EITHER PRESENT

19   YOUR HONOR WITH A STIPULATED PARAPHRASE OF THE CLASS

20   DEFINITION THAT YOU CAN USE, OR IF MR. ELLIS AND I CANNOT

21   REACH AGREEMENT, WE'LL SUBMIT TO YOU, YOU KNOW, HERE'S THE

22   PLAINTIFF'S VERSION AND HERE'S THE DEFENDANT'S VERSION, AND

23   THEN YOU CAN CHOOSE WHICH ONE THE COURT THINKS IS THE BEST

24   PARAPHRASE.

25            THE COURT:  OR NOT, DO MY OWN.
```

1           **MR. BURSOR:**  OR DO YOUR OWN, YEAH.

2           **THE COURT:**  THAT'S FINE.

3           **MR. BURSOR:**  I THINK WE SHOULD DO THAT QUICKLY.

4           **THE COURT:**  I THINK THAT'S FINE.

5       SO LET ME -- SO THAT YOU KNOW, THE EVIDENCE -- THE

6   DECISION THAT I MADE, AND THIS IS WHY I CONTINUE TO PUSH BACK

7   ON YOUR NOTION THAT SOMEHOW THE JURY NEEDS TO BE INSTRUCTED

8   ABOUT WHAT I DECIDED.

9       THE EVIDENCE REGARDING PEREZ HAS BOTH INDIVIDUAL VALUE,

10  PROBATIVE VALUE, AND CLASS PROBATIVE VALUE.  AND I DO NOT

11  BELIEVE THAT IT IS APPROPRIATE, GIVEN THE LITIGATION THAT HAS

12  OCCURRED ON OTHER ISSUES THAT WILL NOT BE PRESENTED TO THE

13  JURY, FOR THE JURY TO BE PREDISPOSED TO BELIEVE THAT I BELIEVE

14  THAT THAT EVIDENCE MEANS SOMETHING IN PARTICULAR.  AND THAT IS

15  THE REASON WHY I WILL NOT INSTRUCT THEM ON MY VIEW OF THE

16  EVIDENCE.  SO --

17          **MR. BURSOR:**  SO IF I COULD JUST MAYBE MAKE THIS MORE

18  CONCRETE SO THAT WE CAN DEAL WITH WHAT'S ACTUALLY GOING TO

19  HAPPEN INSTEAD OF HYPOTHETICALS.

20      SO IN EVERY CLASS TRIAL THAT I'VE DONE, FIRST THING I DO

21  IS STAND UP AND SAY WHO I REPRESENT.  AND, YOU KNOW, YOUR

22  HONOR APPOINTED US TO REPRESENT A CLASS OF PEOPLE WHO HAD

23  THEIR PHONES CALLED WITH AN AUTO DIALER.

24      BECAUSE THERE'S GOING TO BE JURORS WHO ARE GOING TO SAY,

25  MR. BURSOR DIDN'T PROVE TO ME THAT THIS CLASS -- THAT THIS

1    SHOULD BE A CLASS.  THERE'S GOING TO BE JURORS WHO ARE GOING

2    TO THINK MAYBE I DON'T WANT TO HAVE A CLASS HERE.  THERE

3    WASN'T ANY EVIDENCE THAT THIS CLASS SHOULD BE CERTIFIED.  AND

4    I DON'T WANT TO AWARD ANYTHING TO A CLASS.  I DON'T KNOW WHO

5    THE CLASS IS.  NOBODY PROVED A CLASS TO ME.  THAT'S A BIG

6    PROBLEM.

7         I'VE DONE VOIR DIRE -- I'VE DONE FIVE CLASS ACTION JURY

8    TRIALS, WHICH I THINK MAY BE MORE -- WELL, I DON'T KNOW.

9    THERE'S VERY FEW CLASS ACTION JURY TRIALS.  BUT IN EVERY ONE

10   OF THOSE, THERE'S BEEN VOIR DIRE WHERE PROSPECTIVE JURORS --

11   YOU KNOW, YOU GET SOME THAT SAY, I DON'T LIKE CLASS ACTIONS.

12   I DON'T THINK THERE SHOULD BE A CLASS ACTION.  THEY NEED TO BE

13   TOLD THAT THEY DON'T GET TO MAKE THAT DECISION BECAUSE YOUR

14   HONOR ALREADY MADE THAT DECISION, AND THAT'S WHAT'S HAPPENED

15   IN EVERY CASE I'VE DONE WHERE THERE HAS BEEN A CLASS ACTION

16   JURY TRIAL.

17        **THE COURT:**  THAT'S INTERESTING.  THAT WAS NOT MY

18   EXPERIENCE.  WELL, WE'LL SEE WHAT YOU FIND DURING VOIR DIRE.

19        **MR. BURSOR:**  YOUR HONOR, IT IS ESPECIALLY IMPORTANT

20   HERE WHERE IT SEEMS LIKE THE WHOLE DEFENSE STRATEGY IS TO

21   RE-LITIGATE CLASS CERT.  IT SEEMS LIKE THAT'S THEIR DEFENSE

22   STRATEGY.

23        **THE COURT:**  NO.  THE DEFENSE STRATEGY IS THAT THE

24   CALLS WERE NOT OBTAINED BY SKIP-TRACING.

25        **MR. BURSOR:**  I DON'T THINK THAT'S RIGHT BECAUSE EVERY

```
1    TIME --
2              THE COURT:  OF COURSE YOU DON'T.
3              MR. BURSOR:  -- EVERY TIME I HEAR MR. ELLIS DESCRIBE
4    THE EVIDENCE HE'S GOING TO PRESENT, HE TALKS ABOUT WHETHER
5    MR. PEREZ -- HE WANTS TO PROVE THAT MR. PEREZ IS NOT THE
6    APPROPRIATE REPRESENTATIVE OF THIS CLASS.  THEY DON'T GET TO
7    DECIDE THAT.
8              THE COURT:  NO, THEY DON'T.
9              MR. BURSOR:  RIGHT.  BUT EVERY TIME HE DESCRIBES WHAT
10   HE'S GOING TO DO NEXT WEEK, THAT'S WHAT HE SAYS.
11             MR. ELLIS:  I DON'T THINK IT IS.  AND IT'S NOT WHAT
12   I'M GOING TO DO.  I'VE BEEN PERFECTLY TRANSPARENT ABOUT WHAT
13   OUR POSITION IS.  AND IT'S -- I UNDERSTAND THAT THE CLASS HAS
14   BEEN CERTIFIED, BUT CLASS CERTIFICATION IS DIFFERENT THAN
15   WINNING THE TRIAL.
16             MR. BURSOR:  THE ISSUE, YOUR HONOR, IS THE CLASS WAS
17   CERTIFIED.  CERTIFIED BY WHOM?  DID I DO IT?  DID I RUN AN
18   ADVERTISEMENT IN THE NEWSPAPER TO CERTIFY THE CLASS?
19             THE COURT:  LOOK, WE WILL EXPLAIN TO THE JURY THAT
20   YOU ARE REPRESENTING A CLASS OF PEOPLE.  THAT'S -- BUT I AM
21   NOT HERE TO TAKE SIDES AND I WILL NOT ALLOW YOU TO USE THE
22   OFFICE OF THE JUDICIAL BRANCH.  WE -- TO SOMEHOW BOLSTER YOUR
23   CLAIMS.
24             MR. BURSOR:  IT'S NOT BOLSTERING, YOUR HONOR, BECAUSE
25   I'M GOING TO BRING IN ONE CLASS MEMBER, PEREZ.  NOW, THERE'S A
```

1    RISK THAT THE JURY IS GOING TO GO BACK TO THE ROOM AND SAY,

2    HOW CAN HE HAVE A CLASS OF -- I'M GOING TO SAY THERE'S 46,000

3    SOME PEOPLE IN THIS CLASS, AND HE BROUGHT ONE HERE?

4           **THE COURT:**  THAT'S YOUR CHOICE.

5           **MR. BURSOR:**  IT'S NOT MY CHOICE.  THAT'S ALL WE'RE

6    REQUIRED --

7           **THE COURT:**  IT IS YOUR CHOICE BECAUSE THERE ARE BEEN

8    PLENTY OF CLASS ACTIONS WHERE PLAINTIFFS' LAWYERS BRING IN

9    MORE THAN ONE.

10       THERE IS NO REQUIREMENT.  ONE IS SUFFICIENT.  AND I CAN

11   ADVISE THEM THAT ONE IS SUFFICIENT.  BUT IT IS YOUR CHOICE.

12   YOU COULD HAVE FOUND OTHER MEMBERS.  CLASS COUNSEL FREQUENTLY

13   DO BECAUSE THEY AREN'T SATISFIED WITH JUST ONE.

14       BUT THAT'S ON YOU.  THAT'S NOT ON ME.

15          **MR. BURSOR:**  THAT'S AN APPROPRIATE CHOICE FOR US TO

16   MAKE WHEN WE'VE GOT ONE, AND THAT'S FINE, BUT IT IS NOT

17   APPROPRIATE FOR A JUROR TO SAY THEY SHOULD HAVE BROUGHT MORE

18   BECAUSE I DON'T BELIEVE A CLASS SHOULD BE CERTIFIED IF THERE'S

19   ONLY ONE.

20          **THE COURT:**  WHAT IF THEY DON'T BELIEVE HIM?

21          **MR. BURSOR:**  IF THEY DON'T BELIEVE HIM, THEN THEY

22   SHOULD DISCREDIT HIS TESTIMONY.

23          **THE COURT:**  IF THEY DON'T BELIEVE HIM --

24          **MR. BURSOR:**  THAT HE'S NOT REQUIRED TO PROVE -- HE'S

25   NOT REQUIRED TO PROVE NUMEROSITY, TYPICALITY, ADEQUACY, ALL

1    THOSE THINGS BECAUSE WE DID THAT, PROVED THEM TO YOU, TO YOUR

2    HONOR.  AND THEY DON'T GET TO SECOND-GUESS THAT.

3        AND IF THEY DON'T KNOW THAT, AND THE DEFENSE ARGUMENTS ARE

4    GOING TO BE THIS, YOU KNOW, HE'S NOT AN APPROPRIATE

5    REPRESENTATIVE.  THIS CLASS --

6            **THE COURT:**  IF HE ARGUES THAT, THEN I CAN INSTRUCT

7    THE JURY.

8        I CERTAINLY HAVEN'T -- YOU KNOW, IN THE LAST ONE I DID,

9    THEY CERTAINLY -- THAT WAS NOT ARGUED BY DEFENSE COUNSEL.  IT

10   WASN'T AN ISSUE.  AND IF IT BECOMES AN ISSUE, THEN I WILL FIX

11   IT.

12       BUT, YOU KNOW, JUST BECAUSE -- WELL, LIKE I SAID, THE LAST

13   ONE I DID THEY BROUGHT IN MORE PLAINTIFFS THAN JUST THE ONE.

14   AND I UNDERSTAND YOU ARE ENTITLED TO IT.  AND I UNDERSTAND

15   THAT THAT IS ALL YOU HAVE TO DO.  BUT JUST BECAUSE IT IS ALL

16   YOU HAVE TO DO DOESN'T MEAN IT IS GOING TO BE PERSUASIVE.

17           **MR. BURSOR:**  BECAUSE I DON'T HAVE TO PROVE CLASS

18   CERTIFICATION.  I DON'T HAVE TO DO THAT AT THE TRIAL.

19           **THE COURT:**  YOU DO HAVE TO PROVE BY A PREPONDERANCE

20   OF THE EVIDENCE EACH OF THE ELEMENTS OF YOUR CLAIMS.  THAT'S

21   WHAT YOU HAVE TO DO.

22           **MR. BURSOR:**  AND TO DO THAT I DON'T NEED ANY MORE

23   THAN ONE.

24           **THE COURT:**  WELL, YOU TAKE YOUR SHOT WHETHER OR NOT A

25   JURY BELIEVES IT BASED UPON ONE PERSON.  THAT'S ALL IT IS.

```
 1    RIGHT?

 2        WE DO HE SAID/SHE SAID TRIALS ALL THE TIME.  THEY ARE

 3    GOING TO COME IN AND THEY'RE GOING TO HAVE THEIR PEOPLE, AND

 4    THEY'RE GOING TO SAY, NO, THAT'S NOT HOW WE DID IT.  AND THEN

 5    THE JURY IS GOING TO DECIDE.

 6            MR. BURSOR:  WELL, YOUR HONOR, I THINK THAT I COME IN

 7    AT A HUGE DISADVANTAGE IF SOME LAWYER WHO CLAIMS TO REPRESENT

 8    A CLASS AND THE COURT DOESN'T -- THE JURORS DON'T UNDERSTAND

 9    THAT IT WAS YOUR HONOR THAT CERTIFIED THE CLASS, IT WASN'T ME,

10    IT WAS YOUR HONOR THAT APPOINTED THE CLASS REPRESENTATIVE, IT

11    WASN'T ME.

12            THE COURT:  AND SO WHAT DO YOU WANT THAT TO MEAN?

13            MR. BURSOR:  I JUST WANT --

14            THE COURT:  WHAT DO YOU WANT THAT TO MEAN?  THAT

15    SOMEHOW I'M TAKING SIDES?

16            MR. BURSOR:  NO.  YOU HAVE MADE A DECISION --

17            THE COURT:  ALL I'M SAYING IS THAT YOU CAN TRY YOUR

18    CASE.  THAT'S ALL I'VE EVER SAID.

19            MR. BURSOR:  THAT'S NOT TRUE.  YOUR HONOR MADE A

20    RULING THAT WE CAN TRY OUR CASE AS A CLASS ACTION.

21            THE COURT:  RIGHT.  BASED UPON THE EVIDENCE.  BUT I

22    DIDN'T SAY I AGREED WITH IT.

23            MR. BURSOR:  ABSOLUTELY.

24            THE COURT:  I SAID YOU COULD TRY IT.

25            MR. BURSOR:  AS A CLASS ACTION.
```

1            THE COURT:  CORRECT.

2            MR. BURSOR:  THAT'S WHAT I WANT TO COMMUNICATE TO THE

3    JURY, THAT YOU MADE THAT DECISION.  NOT ME.  I DIDN'T RUN AN

4    AD IN THE NEWSPAPER TO DO A CLASS ACTION.  THIS IS A CLASS

5    ACTION.  THE REASON THIS CASE IS A CLASS ACTION IS BECAUSE

6    YOUR HONOR DECIDED THAT THIS CASE --

7            THE COURT:  THE REASON THIS IS A CLASS ACTION IS

8    BECAUSE YOU BROUGHT THE SUIT.  IT'S NOT AS IF I WENT OUT.

9            MR. BURSOR:  BUT YOU CAN'T -- I CAN'T SHOW UP AND PAY

10   $400 AT THE FILING CLERK'S OFFICE AND THEN GET A JURY IN THE

11   BOX AND TELL THEM I REPRESENT A CLASS.  I HAVE TO HAVE YOUR

12   HONOR APPROVE THAT THROUGH A RIGOROUS PROCESS, WHICH WE DID,

13   AND YOU RULED.  AND YOU RULED THAT THIS CASE CAN AND SHOULD BE

14   TRIED ON A CLASS ACTION BASIS.

15           THE COURT:  I WILL THINK ABOUT IT.  IT SOUNDS TO ME

16   LIKE YOU WANT A LEG UP AND I TEND NOT TO GIVE LEGS UP.

17           MR. BURSOR:  I JUST WANT AN EVEN PLAYING FIELD.

18           THE COURT:  I AM NOT SURE THAT'S WHAT YOU ARE ASKING

19   FOR, BUT I'LL THINK ABOUT IT.

20           MR. BURSOR:  YOUR HONOR, IF WE'VE EXHAUSTED THAT

21   SUBJECT, I'D JUST LIKE TO, JUST SO THAT WE CAN HAVE THE

22   HIGHEST PROBABILITY OF SUCCESS IN THE DISCUSSIONS THAT

23   MR. ELLIS AND I ARE GOING TO HAVE AFTER THIS HEARING, IF WE

24   CAN JUST WALK THROUGH THE VERDICT FORM A LITTLE BIT MORE

25   CAREFULLY STEP BY STEP SO THAT WE KNOW EXACTLY WHAT WE NEED TO

```
1    DO TO GET BACK TO YOU?

2              MR. ELLIS:  WITH ALL DUE RESPECT, I THINK FROM THE

3    HOUR THAT WE'VE SPENT ON THIS, I THINK I KNOW WHAT WE NEED TO

4    DO, AND I THINK THAT WE SHOULD JUST GET DOWN AND DO THE HARD

5    WORK TO GET IT DONE AND THEN PRESENT IT TO THE COURT.

6              THE COURT:  I'M AVAILABLE THIS WEEK.  I CAN ALWAYS

7    GET ON THE PHONE IF YOU NEED ME TO GET ON THE PHONE.

8              MR. BURSOR:  SO, THE ONLY THING THAT I WANTED TO

9    CLARIFY, YOUR HONOR, IS QUESTION 1 BECAUSE THE PLAINTIFF DOES

10   NOT NEED TO PROVE SKIP-TRACING TO PROVE HIS CLAIM.

11       QUESTION 1 IS PERFECTLY FINE AS WRITTEN, AND THE OTHER

12   OPTION IS NOT CORRECT AND WILL NOT BE USED.  THE ISSUE DOES

13   NOT COME UP UNTIL QUESTION 4.

14             THE COURT:  I THINK THAT'S RIGHT.

15             MR. BURSOR:  OKAY.

16             MR. ELLIS:  SO I JUST -- I AM NOT GOING TO ARGUE IT,

17   I DON'T THINK IT'S RIGHT.  I THINK THAT MR. PEREZ DOES NEED TO

18   DEMONSTRATE THAT HIS PHONE NUMBER WAS OBTAINED BY

19   SKIP-TRACING, BUT WE HAVE TALKED ABOUT THIS.  I AM MAKING THAT

20   JUST FOR THE RECORD.

21             THE COURT:  NOTED.

22       ALL RIGHT.  LET'S GO THROUGH THE JURY INSTRUCTIONS IN CASE

23   THERE IS ANYTHING ELSE OUT THERE.

24       ARE THERE ANY JURY INSTRUCTIONS THAT YOU WANT TO DISCUSS?

25             MR. BURSOR:  YES, YOUR HONOR.  IF WE COULD START WITH
```

```
1    THE PRE-EVIDENCE JURY INSTRUCTIONS?

2         THE COURT:  GIVE ME THE NUMBERS YOU WANT TO DISCUSS.

3         MR. BURSOR:  JUST LIMITED TO THE PRE-EVIDENCE

4    INSTRUCTIONS, I WOULD LIKE TO DISCUSS NO. 15, WHICH APPEARS ON

5    PAGE 14.

6         THE COURT:  OKAY.

7         MR. BURSOR:  I THINK THAT IS THE ONLY --

8         THE COURT:  ANY FROM THE DEFENSE?

9    MR. ELLIS:  NO.

10        THE COURT:  LET'S GO TO THAT ONE THEN.

11        MR. BURSOR:  YOUR HONOR, MAY I?

12        THE COURT:  YOU MAY.  I MEAN, THIS IS JUST IN HERE IN

13   CASE YOU AGREE TO ANY STIPULATED FACTS.  THE STIPULATED FACTS

14   TO WHICH YOU AGREED I DON'T THINK ARE FOR THE JURY.

15        MR. BURSOR:  I THINK THEY NEED THEM BECAUSE ONE OF

16   THE REASONS TO STIPULATE TO FACTS IS TO STREAMLINE THE

17   PRESENTATION OF EVIDENCE.

18        THE COURT:  OKAY.  SO LET ME -- I LOOKED AT THEM AND

19   I DIDN'T THINK THERE WAS ANYTHING OF PARTICULAR NOTE.  HOLD

20   ON.

21        MR. BURSOR:  SO I HAVE A VERY SPECIFIC PROPOSAL --

22        THE COURT:  I'M LOOKING AT DOCKET 291, WHICH ARE YOUR

23   TRIAL STIPULATIONS.  WHICH IS THE ONE THAT YOU....

24        MR. BURSOR:  I THINK THAT CONCERNED EXHIBITS AND

25   AUTHENTICITY, THINGS OF THAT NATURE.
```

1          **THE COURT:**  NO.  THIS IS DOCKET NO. 291 ARE THE

2    PROPOSED -- IS THE PROPOSED ORDER FOR TRIAL STIPULATIONS.

3    THAT IS THE ONLY -- THOSE ARE THE ONLY TRIAL STIPULATIONS THAT

4    HAVE BEEN FILED THAT I KNOW OF.

5          **MR. BURSOR:**  DO YOU HAVE IT?

6          **THE COURT:**  IS THERE A DOCKET NUMBER?

7          **MR. BURSOR:**  YES.  DOCKET NO. 260, YOUR HONOR.  IT'S

8    THE JOINT PRETRIAL CONFERENCE STATEMENT.

9          **THE COURT:**  THOSE AREN'T TRIAL STIPS.  UNLESS YOU'VE

10   STIPULATED IN THERE, THAT'S WHY I HAVE A SPECIFIC DOCUMENT

11   THAT I ASK YOU TO FILE THAT ARE CALLED "TRIAL STIPULATIONS".

12         **MR. BURSOR:**  WELL, YOUR HONOR, ONE OF THE THINGS THAT

13   YOUR HONOR --

14         **THE COURT:**  YOU SAID DOCKET -- WHICH DOCKET NUMBER?

15         **MR. BURSOR:**  260.  IT'S THE JOINT PRETRIAL CONFERENCE

16   STATEMENT.

17         **THE COURT:**  HOLD ON.  LET ME GET IT.

18         **MR. BURSOR:**  I HAVE ONE HERE IF YOU WOULD LIKE.

19         **THE COURT:**  I DON'T WANT YOURS.  THANK YOU.

20              (PAUSE IN THE PROCEEDINGS.)

21         **THE COURT:**  OKAY.

22         **MR. BURSOR:**  DO YOU HAVE DOCKET 260, YOUR HONOR?

23         **THE COURT:**  I DO.

24         **MR. ELLIS:**  YOUR HONOR, I DON'T HAVE THAT WITH ME.  I

25   DIDN'T KNOW WE WERE --

```
1              MR. BURSOR:  I CAN GIVE MR. ELLIS THE COPY I HAD FOR

2    YOUR HONOR.

3              THE COURT:  THAT'S FINE.

4              MR. ELLIS:  THANK YOU.

5              MR. BURSOR:  IT'S THE PRETRIAL CONFERENCE STATEMENT,

6    YOUR HONOR, THAT WE FILED IN ADVANCE OF THE FIRST PRETRIAL

7    CONFERENCE.  WE FILED IT APRIL 26.

8        I'M SORRY.  WE FILED IT FEBRUARY 15TH.

9              THE COURT:  I HAVE IT.

10             MR. BURSOR:  SO --

11             THE COURT:  WHICH IS THE ONE THAT YOU WANT ME TO

12   INSTRUCT THE JURY ON?  JUST GIVE ME THE NUMBER.

13             MR. BURSOR:  IF YOU GO TO PAGE 9.

14             THE COURT:  I WAS ON PAGE 19 WITH YOUR STIPULATIONS.

15             MR. BURSOR:  I WAS ON PAGE 9 WITH THE UNDISPUTED

16   FACTS THAT THE PARTIES AGREED TO.

17             THE COURT:  I SEE.  ALL RIGHT.

18             MR. BURSOR:  WHICH THERE WERE QUITE A FEW, AND --

19             THE COURT:  OKAY.

20             MR. BURSOR:  SO THE PARTIES INCLUDED 45 FACTS

21   NUMBERED 1 THROUGH 45 AS UNDISPUTED FACTS.

22             THE COURT:  I SEE.

23             MR. BURSOR:  MY UNDERSTANDING WAS, ONE OF THE REASONS

24   WE DID THAT WAS TO STREAMLINE THE PRESENTATION OF EVIDENCE SO

25   WE DON'T HAVE TO RE-PROVE ALL THESE THINGS SO THAT WE CAN GET
```

1    THE CASE DONE IN 11 HOURS OR LESS, WHICH WAS THE BASIS FOR MY

2    SAYING THAT AT A PRIOR CONFERENCE.

3        SO MY PROPOSAL IS THAT I VIEW THESE AS STIPULATIONS.  IF

4    WE FILE A JOINT DOCUMENT SAYING THESE FACTS ARE UNDISPUTED,

5    THEY ARE STIPULATED TO.  SO I THINK THAT THEY SHOULD BE

6    INSERTED AT PAGE 14 WITH THE EXCEPTION -- ALL OF THEM SHOULD

7    BE WITH THE EXCEPTION OF THOSE THAT WOULD RELATE ONLY TO

8    PHASE II WILLFULNESS/GOOD FAITH ISSUES.

9            **THE COURT:**  OKAY.  IT'S BEING PRINTED FOR ME.  HOLD

10   ON.

11                   (PAUSE IN THE PROCEEDINGS.)

12           **THE COURT:**  MR. ELLIS?

13       **MR. ELLIS:**  SO BY AND LARGE, LOOKING THROUGH THIS, I

14   WOULD TEND TO AGREE, BUT I'M BEING ASKED TO LOOK AT THIS AGAIN

15   KIND OF ON THE FLY.

16       I WOULD LIKE TO HAVE 24 HOURS TO AGREE OR DISAGREE BY

17   GOING THROUGH AND, AGAIN, I THINK THAT I COULD WORK WITH

18   MR. BURSOR TO COME UP WITH A DOCUMENT.

19           **THE COURT:**  DID YOU PRINT THAT, FRANCES?

20           **THE CLERK:**  YES.

21           **THE COURT:**  THANK YOU.

22       **MR. BURSOR:**  YOUR HONOR, I AM NOT SURE IF MR. ELLIS

23   IS DONE, BUT IF I MAY.

24       I DON'T THINK WE NEED TO WORK ON IT BECAUSE WE ALREADY

25   WORKED ON IT WHEN WE AGREED TO IT.  AND THE ONLY ISSUE TO ME

```
1     IS, THERE ARE SIX OF THEM --

2              THE COURT:  ALL RIGHT.  LET'S GO THROUGH THIS.

3        ANY OBJECTION TO 1?

4              MR. ELLIS:  NO.

5              THE COURT:  2?

6              MR. ELLIS:  NO.

7              THE COURT:  3?

8              MR. ELLIS:  NO.  I AM NOT SURE THAT'S RELEVANT, BUT I

9     HAVE NO OBJECTION.

10             THE COURT:  4?

11             MR. ELLIS:  NO.

12             THE COURT:  5?

13             MR. ELLIS:  NO.

14             THE COURT:  6?

15             MR. ELLIS:  NO.

16             THE COURT:  7?

17             MR. ELLIS:  NOPE.

18             THE COURT:  8?

19             MR. ELLIS:  NOPE.

20             THE COURT:  9?

21             MR. ELLIS:  NOPE.

22             THE COURT:  10?

23             MR. ELLIS:  NOPE.

24             THE COURT:  11?

25             MR. ELLIS:  NOPE.
```

```
 1              THE COURT:  12?

 2              MR. ELLIS:  NOPE.

 3              THE COURT:  13?

 4              MR. ELLIS:  NOPE.

 5              THE COURT:  14?

 6              MR. ELLIS:  NOPE.

 7              THE COURT:  15?

 8              MR. ELLIS:  NOPE.

 9              THE COURT:  16?

10              MR. ELLIS:  NOPE.

11              THE COURT:  17?

12              MR. ELLIS:  NOPE.

13              THE COURT:  18?

14              MR. ELLIS:  NOPE.

15              THE COURT:  19?

16              MR. ELLIS:  NO.

17              THE COURT:  20?

18              MR. ELLIS:  NO, YOUR HONOR.

19              THE COURT:  21?

20              MR. ELLIS:  GIVEN THE CONVERSATION THAT WE'VE JUST

21      HAD, I DO HAVE SOME HESITATION, BUT IT IS TRUE.  SO 21 IS

22      TRUE.  SO I GUESS I DON'T, BUT, AGAIN, I'M CONCERNED ABOUT THE

23      IMPRIMATUR OF THE COURT --

24              THE COURT:  I'LL LOOK AT 21.

25          22?
```

1          **MR. ELLIS:**  NO OBJECTION.

2          **MR. BURSOR:**  I WOULD -- I DON'T THINK 22 IS RELEVANT.

3          **THE COURT:**  23?

4          **MR. ELLIS:**  NO OBJECTION.

5          **THE COURT:**  24?

6          **MR. ELLIS:**  NO OBJECTION.

7          **THE COURT:**  25?

8          **MR. ELLIS:**  NO OBJECTION.

9          **THE COURT:**  26?

10         **MR. ELLIS:**  NO OBJECTION.

11         **THE COURT:**  27?

12         **MR. ELLIS:**  NO OBJECTION.

13         **THE COURT:**  28?

14         **MR. ELLIS:**  NO OBJECTION.

15         **THE COURT:**  29.

16         **MR. ELLIS:**  NO OBJECTION.

17         **THE COURT:**  30?

18         **MR. BURSOR:**  RELEVANCE.

19         **MR. ELLIS:**  NO OBJECTION.  IT'S GOOD FOR THE GOOSE,

20    GOOD FOR THE GANDER.

21         **THE COURT:**  I GET BOTH OF THAT.  I'M MAKING NOTES AS

22    TO WHICH ONES YOU ARE NOW... TAKING YOU EACH WITH A GRAIN OF

23    SALT.

24      LET'S GO.  31?

25         **MR. ELLIS:**  NO OBJECTION.

1          **THE COURT:**  32?

2          **MR. ELLIS:**  I DON'T THINK THAT'S RELEVANT.

3          **MR. BURSOR:**  NO OBJECTION TO THAT ONE.

4          **THE COURT:**  ARE YOU ASKING FOR IT?

5          **MR. BURSOR:**  YES.  I'M ASKING FOR ALL OF THEM EXCEPT

6    THE ONES I OBJECT TO.

7          **THE COURT:**  I WANT IT ON THE RECORD.

8          **MR. BURSOR:**  OKAY.

9          **THE COURT:**  33?

10          **MR. ELLIS:**  NO OBJECTION.

11          **MR. BURSOR:**  NO OBJECTION.

12          **THE COURT:**  34?

13          **MR. ELLIS:**  AGAIN, I OBJECT TO THAT BECAUSE OF THE

14    LANGUAGE OF THE COURT.

15          **THE COURT:**  35?

16          **MR. ELLIS:**  NO OBJECTION.

17          **MR. BURSOR:**  NO OBJECTION.

18          **THE COURT:**  36?

19          **MR. BURSOR:**  PARDON ME.  I'M SORRY.  35 I OBJECT TO.

20    AND I THINK THAT THAT IS A PHASE II ONLY RELEVANCE BECAUSE I

21    DON'T THINK THAT THERE WILL BE EVIDENCE ABOUT MR. REYNOSO

22    PRESENTED IN FRONT OF THE JURY BECAUSE THAT GOES ONLY TO THE

23    ISSUE OF MR. PEREZ'S CONSENT OR LACK OF CONSENT AND A GOOD

24    FAITH BASIS FOR THE BELIEF AND CONSENT.

25       SO 35, WE OBJECT TO RELEVANCE EXCEPT FOR PHASE II.

```
 1              THE COURT:  COMMENT?

 2              MR. ELLIS:  OKAY.  I WANT IT.

 3              THE COURT:  36?

 4              MR. ELLIS:  NO OBJECTION.

 5              MR. BURSOR:  NO OBJECTION.

 6              THE COURT:  37?

 7              MR. ELLIS:  NO OBJECTION.

 8              MR. BURSOR:  NO OBJECTION.

 9              THE COURT:  38?

10              MR. ELLIS:  NO OBJECTION.

11              MR. BURSOR:  OBJECTION.  THAT IS A PHASE II ONLY

12    RELEVANCE ISSUE FOR THE SAME REASONS AS 35.

13              THE COURT:  39?

14              MR. BURSOR:  SAME OBJECTION.

15              THE COURT:  40?

16              MR. BURSOR:  SAME OBJECTION.  AND ADDITIONALLY, YOUR

17    HONOR, WITH 40, IT'S ALSO RULE 403 CONFUSION OF ISSUES

18    OBJECTION.

19       I DON'T KNOW IF YOUR HONOR RECALLS THIS FROM THE CLASS

20    CERT ORDER, BUT THERE WAS A DISCUSSION ABOUT MR. PEREZ AND HIS

21    JOB AS A HEALTHCARE AID.  AND IN CONNECTION WITH THAT, IN THE

22    COURSE OF HIS WORK, HE HAD PROVIDED HIS PHONE NUMBER TO SUTTER

23    GENERAL HOSPITAL.  AND YOUR HONOR WROTE ABOUT THIS AT SOME

24    LENGTH.

25       SO HE GAVE HIS PHONE NUMBER TO SUTTER GENERAL HOSPITAL FOR
```

1    REASONS OF HIS JOB, BUT THERE WAS NEVER AN ACCOUNT OR A DEBT

2    THAT PEREZ OWED TO SUTTER, AND IT WAS NEVER REFERRED TO TO THE

3    DEFENDANT, AND SO THAT IS A BIG TIME RULE 403 CONFUSION OF

4    ISSUES THING.

5         **MR. ELLIS:**  SO I'M GOING TO WANT IT AND -- FOR THE

6    RECORD.  AND IT'S NOT SIMPLY AS MR. BURSOR SAID.  MR. PEREZ

7    WAS ALSO TREATED AT SUTTER AND HAD CONSENTED AND GIVEN CONSENT

8    TO SUTTER TO CALL HIS CELL PHONE.  THAT'S JUST FOR THE RECORD.

9         **MR. BURSOR:**  BUT YOUR HONOR RULED ON CONSENT ALREADY

10   FOR PEREZ.

11       IF ANYTHING, THE ONLY POSSIBLE RELEVANCE IT COULD HAVE IS

12   PHASE II, AND IT DOESN'T HAVE RELEVANCE EVEN FOR PHASE II

13   BECAUSE THIS WAS NEVER -- THIS WAS NEVER COMMUNICATED TO RASH

14   CURTIS UNTIL AFTER THE LAWSUIT WAS FILED, WELL AFTER THE PHONE

15   CALLS WERE MADE.

16       **THE COURT:**  ALL RIGHT.  41?

17       **MR. BURSOR:**  SAME OBJECTION, YOUR HONOR.  41 IS

18   PHASE II ONLY, BUT IT'S NOT EVEN PHASE II BECAUSE OF THE

19   ISSUES WE JUST DISCUSSED.

20       YOUR HONOR HAS ADDRESSED THIS IN A PRIOR ORDER, SO I WOULD

21   ENCOURAGE YOUR HONOR TO CHECK THAT PRIOR ORDER YOU MADE.

22       **MR. ELLIS:**  SO I'M GOING TO WANT IT.  IN TERMS OF

23   403, THE JURY IS APPARENTLY GOING TO BELIEVE THAT THIS WAS AN

24   IMMACULATE SET OF PHONE CALLS TO MR. PEREZ JUST OUT OF THE

25   BLUE.  THERE'S GOING TO HAVE TO BE SOME BACKGROUND FOR AN

1    UNDERSTANDING OF HOW THIS HAPPENED.

2          **MR. BURSOR:**  IT DIDN'T HAPPEN THIS WAY, AND YOUR

3    HONOR ALREADY DETERMINED THAT.

4          **MR. ELLIS:**  YOU JOINED IN THIS UNDISPUTED FACT, TOO.

5          **MR. BURSOR:**  I DON'T DISPUTE THAT FACT IS TRUE.  THIS

6    IS A TRUE FACT.  BUT YOUR HONOR DETERMINED THAT THIS FACT WAS

7    NOT PERTINENT TO HOW RASH CURTIS GOT HIS PHONE NUMBER.

8          **THE COURT:**  42?

9          **MR. ELLIS:**  NO OBJECTION.

10          **MR. BURSOR:**  NO OBJECTION.

11          **THE COURT:**  43?

12          **MR. ELLIS:**  NO OBJECTION.

13          **MR. BURSOR:**  NO OBJECTION.

14          **THE COURT:**  44?

15          **MR. ELLIS:**  NO OBJECTION.

16          **MR. BURSOR:**  SAME OBJECTION, YOUR HONOR.

17          **THE COURT:**  ALL RIGHT.  45?

18          **MR. ELLIS:**  AGAIN, NO OBJECTION TO THE MEAT OF THE

19    STATEMENT.  WHAT I OBJECT TO IS SAYING THE COURT HAS ALREADY

20    DETERMINED.

21          **THE COURT:**  ALL RIGHT.  I'LL LOOK AT THEM.

22          **MR. BURSOR:**  NO OBJECTION, YOUR HONOR.  I WOULD TAKE

23    OUT THE DOCKET NUMBERS, BUT NO OBJECTION.

24          **THE COURT:**  OKAY.

25          **MR. BURSOR:**  YOUR HONOR, IF I MAY, JUST ONE MORE NOTE

```
1    ON THIS POINT, IS THAT 44, WHICH WE OBJECT TO, 44 IS VERY
2    IMPORTANT BECAUSE THAT'S THE BASIS FOR ALL OUR OBJECTIONS TO
3    THE USE OF THIS MATERIAL EVEN IN PHASE II BECAUSE 44 SAYS IT'S
4    UNDISPUTED THAT RASH CURTIS DID NOT OBTAIN THE INFORMATION
5    FROM SUTTER UNTIL AFTER THE CASE COMMENCED, WHICH IS WHY THE
6    EVIDENCE CAN'T EVEN BE RELEVANT IN PHASE II BECAUSE THEY
7    COULDN'T HAVE HAD -- THIS COULDN'T HAVE BEEN THEIR BASIS FOR A
8    GOOD FAITH BELIEF TO MAKE PHONE CALLS IN THE PAST WHEN THEY
9    DIDN'T GET THE INFORMATION UNTIL THE FUTURE.
10       SO AT THE TIME THE PHONE CALLS WERE MADE, THEY DIDN'T HAVE
11   ANY OF THE INFORMATION FROM SUTTER.
12            MR. ELLIS:  MAY I RESPOND JUST FOR THE RECORD?
13            THE COURT:  YOU MAY.
14            MR. ELLIS:  SO, AGAIN, THIS IS A MISCHARACTERIZATION
15   OF THE EVIDENCE.  WHY, WHEN ALL OF THE DEMOGRAPHIC INFORMATION
16   WITH RESPECT TO MR. REYNOSO CAME ON OVER ELECTRONICALLY WHEN
17   THE DEBT WAS ASSIGNED, WE THEN WENT BACK IN DISCOVERY AND
18   ACTUALLY GOT THE RECORDS THAT CONFIRMED THE DEMOGRAPHIC
19   INFORMATION.
20       THANK YOU.
21            THE COURT:  ALL RIGHT.  NEXT SET OF INSTRUCTIONS;
22   ANYTHING YOU WANT TO TALK ABOUT?
23            MR. BURSOR:  YES, YOUR HONOR.  IN THE --
24            THE COURT:  JUST GIVE ME THE NUMBERS FIRST.
25            MR. BURSOR:  PAGE 19 --
```

1          **THE COURT:**  OTHER THAN WHAT WE HAVE TALKED ABOUT.

2          **MR. BURSOR:**  SORRY.  WE HAVE AN ISSUE ON PAGE 19 AND

3    PAGE 24.

4          **THE COURT:**  ALL RIGHT.  ANYTHING ELSE?

5          **MR. BURSOR:**  SHOULD I JUST GO WITH THAT?

6          **THE COURT:**  NO.

7      DEFENSE, ANYTHING?

8          **MR. ELLIS:**  NO, YOUR HONOR.

9          **THE COURT:**  ALL RIGHT.  SO LET'S GO TO PAGE 19.

10         **MR. BURSOR:**  MAY I PROCEED?

11         **THE COURT:**  YOU MAY.

12         **MR. BURSOR:**  YOUR HONOR, ON PAGE 19, DOWN AT LINE 24,

13   THERE'S A STATEMENT THAT SAYS:

14           "THE DEFENDANT DENIES THIS CLAIM AND ALSO CONTENDS

15            THAT ITS CALLS TO PLAINTIFF'S CELLULAR TELEPHONE

16            NUMBER WERE WITH PRIOR EXPRESS CONSENT.  THE

17            DEFENDANT HAS THE BURDEN OF PROOF ON THESE

18            AFFIRMATIVE DEFENSES.  THE PLAINTIFF DENIES

19            DEFENDANT'S AFFIRMATIVE DEFENSES."

20       AND THEN THERE'S A FOOTNOTE.

21       OUR VIEW IS THAT SHOULD ALL BE STRICKEN BECAUSE YOUR HONOR

22   HAS ALREADY DETERMINED THE ISSUE OF CONSENT.  SO THE JURY

23   SHOULD NOT BE TOLD DEFENDANT DISPUTES CONSENT.  SO EITHER

24   EVERYTHING BELOW LINE 24 SHOULD BE STRICKEN OR, ALTERNATIVELY,

25   IT SHOULD BE THE DEFENDANT DENIES THIS CLAIM PERIOD.  BUT THAT

```
1    WOULD BE REDUNDANT OF 23.

2         SO I THINK FROM 24 DOWN HAS TO BE STRICKEN, AND THAT IS

3    CONSISTENT WITH YOUR HONOR'S INSTRUCTION THAT YOU PUT ON

4    PAGE 20 WHERE YOU SAY PLAINTIFF DOES NOT HAVE TO PROVE THAT

5    DEFENDANT LACKED PRIOR EXPRESS CONSENT.

6         AND ALSO I THINK THERE'S ELSEWHERE WHERE YOU ARE

7    INSTRUCTING THE JURY THAT YOU ALREADY DETERMINED THERE WAS NO

8    PRIOR EXPRESS CONSENT.

9              MR. ELLIS:  YOUR HONOR?

10             THE COURT:  YOU MAY.

11             MR. ELLIS:  SO, AGAIN, I WANT TO PRESERVE THAT I DO

12   BELIEVE THAT WE HAD PRIOR EXPRESS CONSENT AS I'VE ARGUED OVER

13   THE LAST COUPLE OF YEARS.  BUT FOR PURPOSES OF GIVEN YOUR

14   RULINGS, FOR PURPOSES OF THIS, I ACTUALLY AGREE WITH

15   MR. BURSOR AND THAT SHOULD BE TAKEN OUT.

16             THE COURT:  I AGREE AS WELL.  AGAIN, THESE WERE

17   THINGS THAT YOU ALL PROPOSED, AND YOU DIDN'T HAVE SOME OF MY

18   RULINGS, SO I'LL FIX THAT.  AND THEN BASED UPON OUR DISCUSSION

19   THIS MORNING, PAGE 24 IT SEEMS TO ME IT PROBABLY SHOULD COME

20   OUT.

21        AGREED?

22             MR. BURSOR:  AGREED, YOUR HONOR.

23             MR. ELLIS:  CORRECT, YOUR HONOR.

24             THE COURT:  IS THERE ANYTHING ELSE THAT YOU WANT TO

25   DISCUSS IN THE JURY INSTRUCTIONS?
```

```
 1            MR. ELLIS:  ACTUALLY FOR THE RECORD, YOUR HONOR, I

 2   THINK YOU SAID PAGE 24.  I THINK IT'S PAGE 19 AT LINES 24

 3   THROUGH --

 4            THE COURT:  NOW LOOK AT PAGE 24.

 5            MR. ELLIS:  OKAY.  I AM SORRY.

 6            THE COURT:  24 IS THE --

 7            MR. BURSOR:  IT'S THE TREBLE DAMAGES INSTRUCTION,

 8   YOUR HONOR.

 9            THE COURT:  DO YOU SEE THAT, MR. ELLIS?

10            MR. ELLIS:  I DO.

11            THE COURT:  SO IT SEEMS TO ME THAT COMES OUT.

12            MR. ELLIS:  I AGREE.

13            THE COURT:  OKAY.  SO NOTHING ELSE THEN ON JURY

14   INSTRUCTIONS?

15            MR. BURSOR:  YOUR HONOR, ONE OTHER -- I MENTIONED IT

16   BEFORE.  I DON'T WANT TO BE REDUNDANT ON IT, BUT THE CLASS

17   DEFINITION ISSUE ON 22 I THINK WE ARE GOING TO ADDRESS BOTH

18   THE TCN ISSUE AND WHAT IS THE APPROPRIATE -- THE TCN DIALER

19   ISSUE, NUMBER ONE, WHICH MAYBE WE ARE NOT GOING TO REACH

20   AGREEMENT ON, BUT ALSO NUMBER TWO, THE APPROPRIATE PARAPHRASE

21   FOR THAT IF YOU WANT TO USE IT THERE.

22            THE COURT:  OKAY.  BUT YOU'RE GOING TO TAKE A STAB AT

23   IT IS MY UNDERSTANDING.

24            MR. BURSOR:  YES.  FROM MY PERSPECTIVE, I WOULD

25   APPRECIATE YOUR HONOR GIVING US A TIGHT DEADLINE ON US DOING
```

1   THAT.

2          **THE COURT:**  WHEN DO YOU THINK YOU CAN GET IT BACK TO

3   ME?

4          **MR. BURSOR:**  BY WEDNESDAY?

5          **MR. ELLIS:**  WEDNESDAY AT FIVE PACIFIC STANDARD?

6          **MR. BURSOR:**  YEAH.

7          **MR. ELLIS:**  THAT'S FINE.

8          **THE COURT:**  SO REVISED INSTRUCTIONS DUE BY WEDNESDAY

9   AT FIVE P.M.  THAT WILL INCLUDE THE REVISED INSTRUCTION ON

10  CLASS ACTION, THE STIPULATION ON THE CLASS PERIOD WHICH WOULD

11  BE IN THERE AS WELL, AND I THINK CLASS ACTION/CLASS MEMBERS

12  DEFINED.

13         **MR. ELLIS:**  YOUR HONOR, IS THE COURT GOING TO -- ON

14  THESE UNDISPUTED FACTS THAT WE JUST WENT THROUGH, IS THE COURT

15  GOING TO DRAFT SOMETHING OR DOES IT WANT US TO PUT

16  SOMETHING --

17         **THE COURT:**  I'M NOT EXPECTING YOU TO DRAFT ANYTHING.

18  I AM GOING TO GO THROUGH AND DECIDE, AND WILL LET YOU KNOW

19  WHICH OF THOSE WILL GET INCLUDED IN THE JURY INSTRUCTIONS ON

20  THE PRE-INSTRUCTION SET.  THEY WON'T GO IN THE

21  POST-INSTRUCTION SET.  AND THEN YOU WILL KNOW IF THERE'S

22  SOMETHING ELSE YOU NEED TO PROVE OR WE CAN TALK ABOUT IT AT

23  THE NEXT GO AROUND.

24         **MR. BURSOR:**  YOUR HONOR, WOULD IT BE HELPFUL FOR US

25  TO PROVIDE THAT DOCUMENT TO YOU IN A WORD FORMAT TO MAKE YOUR

```
1    JOB EASIER?

2              THE COURT:  YES.  IT WOULD SAVE A FEW MINUTES.

3              MR. BURSOR:  WE WILL DO THAT.

4              THE COURT:  THAT WOULD BE APPRECIATED.

5              MR. ELLIS:  DO YOU THINK THAT MAY GO INTO THE JURY

6    BINDER THAT YOU'RE GOING TO BE PUTTING TOGETHER?

7              THE COURT:  GIVEN HOW LENGTHY IT IS, YES.  I

8    TYPICALLY -- I WOULDN'T GIVE THEM ALL THE INSTRUCTIONS, BUT

9    GIVEN HOW MANY FACTS THERE ARE, IT SEEMS TO ME TO BE

10   APPROPRIATE TO GIVE THAT TO THEM.

11      NOW, WHAT I COULD DO IS JUST GIVE THEM A DOCUMENT THAT

12   SAYS THESE ARE THE STIPULATED FACTS RATHER THAN ALL OF THE

13   INSTRUCTIONS, WHICH I THINK IS EASIER, BUT IF YOU HAVE ANY

14   COMMENTS ON THAT FRONT, LET ME KNOW.

15             MR. BURSOR:  YOUR HONOR, IT'S... I'VE SEEN JUDGES DO

16   IT BOTH WAYS WHERE THEY -- THE JUDGE ALWAYS SEEMS TO READ THE

17   JURY INSTRUCTIONS TO THE JURORS.

18             THE COURT:  WE HAVE TO READ THEM.

19             MR. BURSOR:  SOME JUDGES PRINT THEM OUT AND SEND IT

20   INTO THE ROOM AND SOME DON'T.  I WANT TO KNOW WHICH KIND OF

21   JUDGE YOUR HONOR IS.

22             THE COURT:  POST-INSTRUCTIONS WILL ABSOLUTELY GO INTO

23   THE JURY ROOM.  I DON'T TYPICALLY GIVE THEM THE

24   PRE-INSTRUCTIONS SET BUT I ALSO DON'T TYPICALLY HAVE 40

25   STIPULATED FACTS.
```

1          SO MY VIEW IS THAT I WILL GIVE THEM THE PRE-INSTRUCTIONS

2     WITH THE STIPULATED FACTS THAT I BELIEVE SHOULD GO IN THERE.

3     MY PREFERENCE IS TO JUST GIVE THEM THE STIPULATED FACTS AND TO

4     NOT GIVE THEM THE OTHER PAGES OF GENERIC INSTRUCTIONS.  BUT IF

5     YOU FEEL STRONGLY ON THAT, NOW IS THE TIME TO LET ME KNOW.

6          **MR. BURSOR:**  I FEEL STRONGLY THAT YOUR HONOR'S

7     PREFERENCE IS CORRECT AND THAT YOUR HONOR SHOULD GIVE THEM

8     JUST THE STIPULATED FACTS FROM THE PRE-INSTRUCTION AND THEN

9     ALL OF THE INSTRUCTIONS FROM THE POST-TRIAL INSTRUCTIONS.

10          **MR. ELLIS:**  I AGREE.

11          **THE COURT:**  ALL RIGHT.  GREAT.  THAT'S WHAT I WILL DO

12     THEN.

13          OKAY.  THE OTHER THING THAT YOU WANTED TO TALK ABOUT WERE

14     EXHIBITS.

15          NOW I HAVE GONE THROUGH AND I HAVE -- LET'S DO THE

16     LOGISTICS FIRST.  I BELIEVE I NOW HAVE ALL OF YOUR EXHIBITS,

17     SO I DON'T KNOW THAT YOU NEED TO BRING IN EVERYTHING ELSE.

18     THAT IS, I BELIEVE I HAVE A COPY SET THAT IS THE COURT.

19          YOU DO HAVE TO BRING IN THE OFFICIAL EXHIBIT LIST -- THE

20     OFFICIAL SET OF EXHIBITS THAT GO -- THAT MY COURTROOM DEPUTY

21     MANAGES AND THAT WILL, IN FACT, GO INTO THE JURY ROOM.

22          WE'VE GOTTEN THOSE IN VARIOUS WAYS.  I DON'T KNOW IF YOU

23     WANT TO PUT THOSE IN FILE FOLDERS AND THEN YOU PULL OUT THE

24     FILE FOLDER AND THAT'S THE ONE THAT HAPPENS, OR IF YOU'VE GOT

25     THEM IN BINDERS, BUT SHE NEEDS -- SHE'S GOING TO NEED THE

1    OFFICIAL SET WITH THE TAG, AND I DON'T TOUCH THOSE.  SO....

2            **MR. ELLIS:**  SO WE HAVE GOT ALL OF OURS PUT TOGETHER.

3    WHAT I WOULD -- I WAS GOING TO BRING THREE SETS DOWN.  YOU

4    KNOW, ONE FOR THE DEPUTY, THE OFFICIAL SET, ONE FOR YOU, ONE

5    FOR THE WITNESSES.  AND WHAT I THOUGHT THAT WE DO SINCE WE

6    PULLED, YOU KNOW, WE HAVE STIPULATIONS, PULLING DOCUMENTS AND

7    STUFF, WHAT I WOULD DO, YOUR HONOR, IS I WOULD TAKE YOUR SET

8    BACK BECAUSE I THINK THIS IS OUT OF DATE, UNLESS YOU HAVE

9    WRITTEN ON IT.  I JUST DON'T KNOW IF YOU WANT TWO SETS --

10           **THE COURT:**  I DON'T WANT TWO SETS.  I ONLY WANT ONE

11   SET.

12       WHAT DO YOU MEAN IT IS OUT OF DATE?

13           **MR. ELLIS:**  SINCE THE LAST TIME WHEN WE BROUGHT THE

14   EXHIBITS IN AND WE TALKED ABOUT THEM, YOU KNOW, THEN WE TALKED

15   ABOUT WE'RE TAKING THE COMPLAINT OUT AND THE ANSWER OUT --

16           **THE COURT:**  OKAY.  IF YOU ARE JUST TAKING THINGS OUT,

17   LEAVE MY SET ALONE.  DO NOT BRING ME ANOTHER SET.

18           **MR. ELLIS:**  OKAY.

19           **THE COURT:**  BECAUSE I DON'T KNOW IF I WROTE OR TAGGED

20   OR CIRCLED SOMETHING AND I DON'T LIKE TO GIVE THOSE BACK.

21           **MR. ELLIS:**  WOULD YOU LIKE ANOTHER SET FOR YOUR LAW

22   CLERK?

23           **THE COURT:**  I DON'T THINK SO.  THIS IS A BENCH

24   TRIAL -- IT'S NOT A BENCH TRIAL.  I WOULD IF IT WAS A BENCH

25   TRIAL, BUT I DON'T NEED A THIRD SET.

1    AND DO WE HAVE THEM ELECTRONIC?  NO.  I DON'T KNOW THAT WE

2    NEED THEM ELECTRONIC.  BUT SOME OF THESE THINGS -- SO ON THE

3    PLAINTIFFS' SIDE, DO YOU HAVE A QUESTION OF DELIVERY?

4           **MR. BURSOR:**  YES.

5    WELL, WE CAN PROVIDE A SET FOR THE COURTROOM DEPUTY.  I

6    DON'T HAVE ANY QUESTION ABOUT THAT.  WE CAN DO THAT IN ANY

7    FORMAT THE DEPUTY PREFERS OR YOUR HONOR PREFERS.

8    MY QUESTION HAS TO DO WITH THE USE OF EXHIBITS DURING THE

9    TRIAL AND HOW THEY ARE GOING TO BE SHARED WITH THE JURORS.  I

10   KNOW YOUR HONOR HAS THIS PROJECTOR, AND IT WORKS GREAT.  IF

11   THERE IS A LIVE WITNESS ON THE STAND AND WE ARE HERE WORKING

12   WITH THE DOCUMENTS, BUT WE HAVE THREE WITNESSES WHO ARE GOING

13   TO TESTIFY BY VIDEOTAPE DEPOSITION.  AND SO I CAN'T MANIPULATE

14   THE EXHIBITS WHILE THE VIDEO IS PLAYING.  IT IS NOT GOING TO

15   WORK.

16   SO WHAT I WOULD PROPOSE IS THAT FOR THOSE WITNESSES, WE BE

17   PERMITTED TO HAND THE JURORS A BINDER THAT HAS THE EXHIBITS

18   THAT THE -- THAT THEY ARE GOING TO SEE THE WITNESS DISCUSS ON

19   THE SCREEN.  YOU WILL SEE A LOT OF TESTIMONY THAT IS PLAYED ON

20   THE VIDEOTAPE IS, DO YOU HAVE EXHIBIT 24?  CAN YOU TURN TO

21   PAGE 19?  DO YOU SEE WHERE IT SAYS THIS?  AND THEN TESTIMONY

22   ABOUT THAT POINT.  AND IT'S HARD TO FOLLOW UNLESS YOU ALSO

23   HAVE THE DOCUMENT EITHER ON THE ELMO OR IN YOUR HAND.

24   SO WE KNOW -- I THINK ALL OF THOSE EXHIBITS ARE STIPED TO

25   ADMIT SO THEY ARE IN EVIDENCE.  AND IT'S A RELATIVELY SMALL

1    NUMBER.  SO WHAT MY EXPECTATION WOULD BE IS THAT DURING THE

2    DAY, THE DAY OR DAYS THAT THE VIDEOS ARE PLAYED, WHAT I WOULD

3    LIKE TO DO IS HAVE EIGHT BINDERS FOR THE EIGHT JUROR THAT EACH

4    HAS THE FOUR OR FIVE DOCUMENTS IN THE BINDER TABBED SO THAT

5    WHEN THEY SEE THE WITNESS FLIP TO THE PAGE, THEY CAN ALSO FLIP

6    TO THE PAGE AND FOLLOW WHAT IS BEING SAID.

7          **THE COURT:**  ANY OBJECTION?

8          **MR. ELLIS:**  NO.

9          **THE COURT:**  I NEED YOU TO GIVE ME ONE OF THOSE

10   BINDERS, TOO.  THE JURY DOESN'T GET ANYTHING I DON'T GET AND

11   MAKE SURE YOU HAVE AN EXTRA COPY FOR MR. ELLIS SO WE ALL NEED

12   TO BE ON THE SAME PAGE.  NO ONE GETS ANYTHING THAT THE OTHER

13   SIDE DOESN'T GET.

14         **THE CLERK:**  ARE THEY GOING TO MATCH THE EXHIBIT

15   NUMBERS?

16         **THE COURT:**  SO THERE SHOULD BE A STIPULATION BY THE

17   PARTIES THAT -- AND SO YOU NEED TO LET THEM KNOW, THAT EITHER

18   YOU CAN SAY IT TO THE JUROR BEFORE THE TESTIMONY IS PLAYED OR

19   I CAN DO IT, BUT THAT THERE IS A STIPULATION THAT IN THE

20   TESTIMONY BEING PLAYED ON THE VIDEOTAPE, EXHIBIT 18 IS

21   EXHIBIT -- IS TRIAL EXHIBIT 504.

22         **MR. BURSOR:**  YOUR HONOR, THAT SHOULD NOT BE NECESSARY

23   BECAUSE WE MAKE SURE TO USE THE SAME EXHIBIT NUMBERS FOR TRIAL

24   THAT WE USED AT THE DEPOSITION SO I THINK IT'S GOING TO BE THE

25   SAME IN EVERY INSTANCE.

1           **THE COURT:**  I KNOW THE LAST ORDER I DID I WAS USING

2     TWO DIFFERENT NUMBERS.  SO 504 AND 506 WERE 18 AND 19 OR

3     SOMETHING LIKE THAT, AND SOME OTHER ITERATION.  IF IT IS THE

4     SAME, GREAT.  IF IT IS NOT THE SAME, I WANT TO MAKE SURE YOU

5     HAVE A STIPULATION WORKED OUT IN ADVANCE.

6           **MR. ELLIS:**  RIGHT.

7           **MR. BURSOR:**  UNDERSTOOD.

8           **THE COURT:**  OKAY.

9           **MR. ELLIS:**  YOUR HONOR, IN THAT REGARD, JUST TO MAKE

10    SURE, AS YOU WELL KNOW, IN THE MORNING OF TRIAL DAYS THINGS

11    ARE GOING FAST, THAT I'M NOT SEEING THIS FOR THE FIRST TIME

12    THAT MORNING SO IF I HAVE AN OBJECTION --

13          **THE COURT:**  IT SHOULD BE 24 HOURS IN ADVANCE AT A

14    MINIMUM.

15          **MR. BURSOR:**  WELL, THEY HAVE HAD THE DESIGNATIONS

16    SINCE JANUARY AND THERE'S NO OBJECTIONS TO THEM --

17          **THE COURT:**  THEY NEED TO SEE THE BINDER SO WE MAKE

18    SURE -- THERE ARE TOO MANY TIMES IN TRIAL WHERE SOMEONE SAYS

19    THEY FORGOT TO DO X.  GIVE THEM THE BINDER 24 HOURS IN

20    ADVANCE, IF NOT MORE.  THAT'S --

21          **MR. BURSOR:**  WILL DO.

22          **THE COURT:**  ALL RIGHT.

23          **MR. BURSOR:**  YEP.

24          **THE COURT:**  IF IT'S GOING TO THE JURY, THAT'S WHAT I

25    WANT DONE.

1          **MR. BURSOR:**  YOUR HONOR, MAY WE DO -- IT'S SUCH A

2    SMALL NUMBER OF DOCUMENTS.  I THINK IT IS FEWER THAN TEN

3    DOCUMENTS.  CAN WE DO ONE BINDER THAT HAS THEM ALL?  THERE'S

4    GOING TO BE THREE WITNESSES.  RATHER THAN THREE DIFFERENT

5    BINDERS?

6          **THE COURT:**  THAT'S FINE.  THAT'S BETTER.

7          **MR. ELLIS:**  I AGREE.

8          **THE COURT:**  ARE THERE ANY EXHIBITS THAT YOU WANT THE

9    JURY TO HAVE, IN WHICH CASE IT WOULD BE BETTER TO HAVE THEM

10   ALL IN ONE?

11         **MR. ELLIS:**  I DON'T THINK SO.  AS OF RIGHT NOW I

12   THINK WE'RE FINE.

13         **THE COURT:**  OKAY.  ARE THERE GOING TO BE EXHIBITS

14   THAT ARE BEST PROVIDED TO THE JURY IN ELECTRONIC FORMAT?  AND

15   BY THAT I MEAN LIKE, YOU KNOW, WHERE THE PRINT IS SO SMALL

16   THAT HAVING IT ELECTRONICALLY AVAILABLE WOULD ALLOW THEM TO

17   MAGNIFY?

18         **MR. ELLIS:**  I THINK THERE MAY BE ON SOME OF THE

19   SPREADSHEETS THAT WERE PUT TOGETHER BY PLAINTIFFS' EXPERTS.

20         **MR. BURSOR:**  THE ANSWER, YOUR HONOR, IS I DON'T KNOW.

21   BUT WE WORKED HARD TO MAKE SURE THE SPREADSHEETS WE ARE GOING

22   TO USE IN FRONT OF THE JURY ARE THE ONE-PAGE EXCERPTS AND THAT

23   THEY ARE VERY LEGIBLE.  AND I ANTICIPATED THAT THOSE I WOULD

24   USE ON THE PROJECTOR.  BUT I ALWAYS PREFER TO HAVE THE JURORS

25   HAVE IT IN THEIR HAND.

1          **THE COURT:**  I DON'T TEND TO DO THAT -- I DON'T TEND

2     TO LET THEM DO THAT UNLESS EVERYBODY IS AGREEING THAT THE JURY

3     IS GOING TO TAKE IN EXHIBIT BINDERS, OR SOMETHING LIKE THAT.

4          **MR. BURSOR:**  WELL --

5          **THE CLERK:**  THEY ALL HAVE SCREENS.  THEY CAN SEE THE

6     DOCUMENT.

7          **MR. BURSOR:**  THAT'S WHY MY REQUEST FOR THE BINDERS

8     RELATED ONLY TO THE VIDEOTAPE.  SO YOUR HONOR'S PREFERENCE IS,

9     IF IT'S NOT THAT SITUATION, IF IT'S A LIVE WITNESS, WE CAN USE

10    THE PROJECTOR, YOU WANT US TO DO THAT AND YOU DON'T WANT THE

11    JURORS TO HAVE IT IN THEIR HAND.

12         **THE COURT:**  I TAKE IT YOU ARE GOING TO SEEK TO ADMIT

13    CERTAIN OF THESE CHARTS?

14         **MR. BURSOR:**  THEY HAVE BEEN STIPED TO ADMIT.  THERE'S

15    A SMALL NUMBER OF THEM, AND THEY'RE ALL ONE PAGE EACH.

16         **THE COURT:**  THEY HAVE THE SCREENS AND THEY WILL TAKE

17    NOTES.

18         **MR. BURSOR:**  OKAY.

19         **THE COURT:**  LOOK, IF YOU WANT TO -- I'M NOT SURE

20    MR. ELLIS WANTS TO STIP TO HAVE THEM KEEP COPIES OF THOSE.

21    I'M NOT GOING TO GIVE THEM COPIES ABSENT AN AGREEMENT.

22         **MR. BURSOR:**  WELL, IN MY EXPERIENCE, YOUR HONOR, AND

23    I KNOW YOUR HONOR HAS DONE MANY MORE TRIALS THAN I HAVE, BUT I

24    HAVE SEEN JUDGES WHO, AT THE END OF THE TRIAL, THEY SEND ALL

25    THE EXHIBITS INTO THE JURY ROOM JUST BY DEFAULT, AND I'VE SEEN

1   JUDGES WHERE THEY MAKE THE JURORS, IF THEY WANT AN EXHIBIT,

2   SEND OUT A NOTE SAYING SEND US THE --

3        **THE COURT:**  EVERYTHING GOES IN.

4        **MR. BURSOR:**  EVERYTHING GOES IN?

5        **THE COURT:**  EVERYTHING GOES IN THAT HAS BEEN

6   ADMITTED.

7        **MR. BURSOR:**  THAT'S BEEN ADMITTED INTO EVIDENCE.

8   THAT'S FINE.

9        **THE COURT:**  OKAY.  SO, AGAIN, IF PEOPLE -- TYPICALLY

10  IF BOTH SIDES HAVE THEIR CHARTS THAT BOTH SIDES WANT THE

11  JURORS TO HAVE COPIES OF THEIR CHARTS, THEN I USUALLY GET A

12  STIPULATION AND EVERYBODY CAN HAVE THEIR OWN COPY.

13      WHEN ONLY ONE SIDE HAS IT, I DON'T TEND TO GET A

14  STIPULATION SO NO ONE GETS IT.  EVERYTHING GOES IN.

15      AND TO THAT POINT, AND IT'S IN MY STANDING ORDER, THE JURY

16  NEEDS AN INDEX TO GO IN WITH THE EXHIBITS.  YOU ARE REQUIRED

17  TO DO THAT DAILY.  SO THAT WHEN THE JURY FINISHES AND

18  ARGUMENTS FINISH AND WE SEND THEM IN THERE, I'M GOING TO ASK

19  YOU FOR A COPY OF THAT INDEX BECAUSE THEY WANT THOSE EXHIBITS.

20  AND I'M NOT GIVING YOU A LOT OF TIME TO PREP IT.  SO YOU DO IT

21  ON A DAILY BASIS SO YOU ARE READY TO HAVE THAT THING READY TO

22  GO, AND EMAIL IT TO ME OR WHATEVER SO WE CAN PRINT IT UP.

23      THEN SOMEONE WILL BE REQUIRED TO WORK -- TO BE HERE AND TO

24  GO THROUGH EACH OF THOSE EXHIBITS.  I NEED ONE PERSON FROM

25  EACH SIDE WHO IS RESPONSIBLE WITH MY COURTROOM DEPUTY, AND THE

1    THREE OF YOU WILL GO THROUGH AND AGREE THAT EVERYTHING HAS

2    BEEN ADMITTED, IT IS APPROPRIATE TO GO INTO THE JURY ROOM.

3    AND THAT GETS DONE IMMEDIATELY AFTER TRIAL.  OKAY?

4        THIS ISN'T A BIG DOCUMENT CASE, BUT IN BIG DOCUMENT CASES

5    IT'S A PROBLEM.

6        ALL RIGHT.  ANY OTHER -- WELL, TO THE EXTENT THAT

7    THERE'S -- AND WE CAN TALK ABOUT IT, BUT TO THE EXTENT THAT

8    THERE IS ELECTRONIC VERSIONS OF THINGS THAT ARE TOO SMALL,

9    IT'S ALWAYS GOOD IF I CAN SEND IN AN ELECTRONIC VERSION.  BUT

10   I ALSO HAVE TO RESERVE -- I DON'T THINK ANYONE IS IN TRIAL SO

11   IT SHOULDN'T BE A PROBLEM TO GET THE COMPUTER.

12       **MR. BURSOR:**  YOUR HONOR, WE STARTED OUT THE HEARING

13   TALKING ABOUT 504 AND 505 AND OUR VIEW THAT OUR IN LIMINE

14   MOTION WAS OVERRULED, BUT THAT'S WITHOUT PREJUDICE.  MANY OF

15   THE OBJECTIONS REQUIRE A FOUNDATION TO BE LAID, AND SO FORTH.

16       **THE COURT:**  RIGHT.

17       **MR. BURSOR:**  GIVEN YOUR HONOR'S PREFERENCE FOR

18   DEALING WITH AS MUCH AS POSSIBLE IN ADVANCE --

19       **THE COURT:**  I DON'T THINK THAT SOME OF THOSE CAN BE

20   DEALT WITH IN ADVANCE.  THEY ARE GOING TO LAY THE FOUNDATION.

21   IF YOU WANT TO OBJECT, IF YOU DON'T THINK IT IS SUFFICIENT,

22   OBJECT, BASED UPON WHAT THE TESTIMONY IS, I'LL RULE.

23       **MR. BURSOR:**  OKAY.

24       YOUR HONOR, I THINK THE ONLY OTHER THING THAT WE HAD WAS

25   YOUR HONOR HAD REQUESTED THAT WE BRING AN ORDER CONCERNING

1    BRINGING EQUIPMENT INTO THE COURTHOUSE.

2         **THE COURT:**  THOSE ARE USUALLY EMAILED, BUT I CAN TAKE

3    THEM.

4         **MR. BURSOR:**  DO YOU WANT IT HANDED UP OR WE CAN DO

5    BOTH?

6         **THE COURT:**  YOU CAN DO BOTH IS FINE.

7         **THE CLERK:**  THEY SHOULD BE E-FILED, TOO.

8         **MR. ELLIS:**  OKAY.  THANK YOU.

9         **THE COURT:**  OKAY.  THERE ARE -- MR. ELLIS, ANY

10   QUESTIONS ON EXHIBITS?

11        **MR. ELLIS:**  NO, YOUR HONOR.

12        **THE COURT:**  WELL, I WENT THROUGH ALL OF THE

13   OBJECTIONS THAT WERE NOTED ON THE LIST, WHICH IS WHAT I

14   THOUGHT PEOPLE WANTED TO TALK ABOUT IN PART TODAY.

15        LET ME JUST SAY THAT WITH RESPECT TO THOSE EXHIBITS FOR

16   WHICH THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN ASSERTED, 80, 81,

17   82, THOSE OBJECTIONS ARE OVERRULED.  THERE IS NO

18   ATTORNEY-CLIENT PRIVILEGE.

19        ALL THE OTHER OBJECTIONS THAT WERE NOTED WHEN I LOOKED AT

20   THE EXHIBITS, I THINK MOST OF THOSE I HAVE TO DEAL WITH AT

21   TRIAL.

22        OKAY?

23        **MR. ELLIS:**  THANK YOU, YOUR HONOR.

24        YOUR HONOR, CAN I ASK A TECHNICAL PROCEDURAL QUESTION?

25        **THE COURT:**  YOU MAY.

```
 1              MR. ELLIS:  SO IN YOUR PRETRIAL ORDER NO. 1, I THINK

 2      YOU TALK ABOUT THE PHOTOGRAPHS --

 3              THE COURT:  YES.

 4              MR. ELLIS:  -- OF THE WITNESSES?

 5              THE COURT:  YES.

 6              MR. ELLIS:  I THINK I'VE GOT THIS RIGHT, YOU

 7      INDICATED THAT YOU WANTED THOSE TAKEN THE DAY OF TRIAL.  CAN

 8      I -- MY WITNESSES, YOU KNOW, I'M PREPPING THIS WEEK FROM RASH

 9      CURTIS, CAN I TAKE THEIR PICTURES BEFORE THE DAY OF TRIAL?

10              THE COURT:  NO.  YOU'VE GOT TWO GUYS WITH YOU.  DO

11      YOU GUYS HAVE CELL PHONES?

12              MR. VALENTI:  NOT IN THE COURTROOM, YOUR HONOR.

13              THE CLERK:  WELL, THE PICTURES NEED TO BE TAKEN

14      OUTSIDE THE COURTHOUSE ANYWAY.

15              THE COURT:  THAT'S MY POINT.  YOU HAVE CELL PHONES.

16      EVERYONE WHO HAS A CELL PHONE HAS AN AUTOMATIC CAMERA ON THEIR

17      PHONE UNLESS YOU ARE STILL USING SOME FLIP PHONE, MR. ELLIS.

18              MR. ELLIS:  OH, STOP, YOUR HONOR.  YES, I HAVE A 4S.

19              THE COURT:  OKAY.  SO ALL YOU HAVE TO DO IS YOU STAND

20      OUTSIDE, YOU PUT THEM NEXT TO A BLANK WALL, YOU TAKE THEIR

21      PICTURE, AND THEN YOU PRINT IT AND GIVE IT TO ME IN THE

22      MORNING.

23          PART OF THE THING IS, IF THEY ARE HAVING A BAD DAY, THAT'S

24      WHAT THEY LOOK LIKE.  IF THEY ARE HAVING A GOOD DAY, THAT'S

25      WHAT THEY LOOK LIKE.  WE DON'T WANT THEM POSED.  WE DON'T WANT
```

1    YOU, YOU KNOW, NICE BACKGROUND, WHATEVER.  TAKE THEIR PICTURE

2    BEFORE THEY COME IN, AND THEN YOU PRINT THEM UP.  I NEED NINE

3    COPIES, EIGHT FOR THE JURORS AND ONE FOR ME.

4         **MR. BURSOR:**  WE ARE REQUIRED TO EXCHANGE ANY

5    DEMONSTRATIVES FOR THE OPENING STATEMENT, I THINK, ON

6    WEDNESDAY.

7         **THE COURT:**  CORRECT.

8         **MR. BURSOR:**  I PREVIOUSLY ASKED FOR PERMISSION TO USE

9    HEAD SHOTS IN THE OPENING STATEMENTS.  OBVIOUSLY THOSE CAN'T

10   BE TAKEN THE DAY OF.

11        **THE COURT:**  YOU CAN USE THEM IN CLOSING.

12        **MR. BURSOR:**  I WAS -- WE HAVE SIX OR SEVEN

13   WITNESSES --

14        **THE COURT:**  YOU CAN USE YOUR OWN.  I'M ASKING FOR

15   PHOTOS DAY OF.

16        **MR. BURSOR:**  THAT'S ALL I'M ASKING IS, CAN I JUST USE

17   MY OWN PHOTOS IN THE OPENING?

18        **THE COURT:**  YEAH.

19        **MR. BURSOR:**  OKAY.

20        **THE COURT:**  ALL RIGHT.  OTHER QUESTIONS?

21        **MR. BURSOR:**  YOUR HONOR, JUST GENERALLY ON

22   SCHEDULING?

23        **THE COURT:**  UH-HUH.

24        **MR. BURSOR:**  WE HAVE BEEN WORKING REALLY HARD TO

25   STREAMLINE, AND IT LOOKS LIKE WE ARE RIGHT ON THE CUSP.  YOUR

1    HONOR GAVE US 11 HOURS PER SIDE AND OPENING STATEMENTS ARE

2    GOING TO HAPPEN ON THE MONDAY.  AND THAT'S GOING TO COUNT

3    AGAINST OUR 11 HOURS, BUT THAT WILL LEAVE A LITTLE EXTRA TO

4    SPILL OVER INTO THE FOLLOWING WEEK.  AND I'M VERY INTERESTED

5    IN TRYING TO MAKE THAT NOT HAPPEN.  SO IS --

6         **THE COURT:**  SO, I DON'T UNDERSTAND WHAT YOU MEAN BY

7    THAT.

8         **MR. BURSOR:**  I WOULD VERY MUCH LIKE TO HAVE THE TRIAL

9    BEGIN AND END IN THE SAME WEEK.  AND BASED ON THE TIME THAT

10   YOU'VE GIVEN US --

11        **THE COURT:**  YOU ARE NOT GOING TO BE HERE FOR

12   DELIBERATIONS?

13        **MR. BURSOR:**  WELL, I WANT THE JURY TO GET THE CASE ON

14   FRIDAY.  I'M STAYING UNTIL THERE IS A VERDICT.

15      ONE QUESTION IS, THE 11 HOURS THAT YOU GAVE US WILL APPLY

16   TO BOTH PHASE I AND PHASE II; IS THAT RIGHT?

17        **THE COURT:**  WE HAVEN'T HAD A DISCUSSION ABOUT

18   PHASE II UNTIL TODAY.

19        **MR. BURSOR:**  OKAY.

20      SO I WOULD URGE THAT THAT BE THE TOTAL TIME ALLOWED FOR

21   BOTH PHASES AND HAVE THERE BE NO ADDITIONAL TIME FOR PHASE II.

22   JUST WHATEVER IS LEFT OF YOUR 11 HOURS YOU GET TO USE TO

23   ENCOURAGE THE PARTIES TO NOT WASTE TIME DURING THE TRIAL AND

24   MOVE THINGS ALONG.

25        **MR. ELLIS:**  I DON'T AGREE.  11 HOURS IS GOING TO GO

1    FAST, AND WE ARE TALKING ABOUT PHASE II FOR THE FIRST TIME

2    TODAY.  I MAY STIPULATE TO --

3           **THE COURT:**  HERE'S THE OTHER THING.  IF THERE'S A

4    SCHEDULING ISSUE, MR. BURSOR, IS THIS A SCHEDULING PROBLEM FOR

5    YOU?

6           **MR. BURSOR:**  IT'S NOT A PROBLEM, I JUST WANT TO BE

7    EFFICIENT.  I DON'T WANT TO HAVE THE TRIAL SPAN TWO WEEKS IF

8    IT CAN BE RESOLVED IN ONE WEEK.

9           **MR. ELLIS:**  I AGREE WITH THAT.  I WANT TO BE

10   EFFICIENT, TOO, BUT, YOU KNOW, WE ARE STANDING AT THE PODIUM

11   ON THE LAST DAY.  WE ARE NOW TALKING ABOUT SPLITTING

12   POTENTIALLY TWO TRIALS AND USING THE SAME TIME PERIOD.  I

13   JUST -- I WOULD HAVE TO THINK ABOUT THAT, YOUR HONOR.

14          **THE COURT:**  I HAVE TO THINK ABOUT IT, TOO.  HERE'S --

15   ONE IS, WHEN I ORIGINALLY SET THOSE TIMES, I WAS CERTAINLY

16   THINKING, BECAUSE IT WAS TEED UP THAT WAY AND I HADN'T WORKED

17   THROUGH ALL THE ISSUES, THAT THE ISSUE OF GOOD FAITH WAS PART

18   OF THE TRIAL.  AND SO TECHNICALLY I HAD CONSIDERED THAT

19   ALREADY.

20      NOW, YOU STILL HAVE TO, YOU KNOW, WHEN YOU DO THINGS IN

21   MULTIPLE PHASES, IT'S NOT ALWAYS THAT EASY.  BUT IT SEEMS TO

22   ME THAT WHILE WE ARE SITTING HERE WAITING FOR A VERDICT,

23   THAT'S WHEN I DO PHASE II.  I MEAN THAT'S WHEN I WOULD

24   TYPICALLY DO IT.  SO WE ARE SITTING HERE ANYWAY, AND WE ARE

25   ALL HERE.  AND WHEN I'VE GOT A BENCH TRIAL, YOU KNOW, I AM

1   MUCH MORE APT TO TELL YOU TO MOVE ON, STOP REPEATING

2   YOURSELVES.  IF I HAVE QUESTIONS, I ASK QUESTIONS.  I AM MUCH

3   MORE INVOLVED MYSELF IN A TRIAL WHEN IT'S JUST ME.

4       SO, YOU LET ME KNOW WHAT YOU THINK YOU NEED, MR. ELLIS.

5   AND YOU CAN LET ME KNOW BY WEDNESDAY WHEN YOU PUT THIS OTHER

6   STUFF IN.

7               **MR. ELLIS:**  THANK YOU, YOUR HONOR, I WILL.

8               **THE COURT:**  DO WE HAVE YOUR -- DID YOU ALL SIGN THE

9   STIPULATION?

10              **THE CLERK:**  I DON'T THINK THEY HAVE.

11              **THE COURT:**  AS PART OF MY STANDING ORDER, I HAVE A

12   PROCEDURAL STIPULATION WHICH I ASK YOU ALL TO SIGN AND TO

13   FILE.  I WILL LOOK FOR IT.  IF YOU HAVEN'T DONE IT, I NEED YOU

14   TO DO THAT.

15      AND THAT, IN EFFECT, ALLOWS -- SOMETHING HAPPENS TO ME, IT

16   ALLOWS ANOTHER JUDGE TO TAKE THE VERDICT.  IT ALLOWS EXHIBITS

17   TO GO IN WITHOUT OBJECTIONS.  IT ALLOWS ME TO EXCUSE THE

18   JURORS IF YOU ARE NOT IN THE COURTROOM.  IT'S ALL PROCEDURAL

19   ISSUES, AND I WOULD LIKE THAT TO BE INITIALED.  AND IF YOU

20   HAVE ANY CONCERNS, THEN WE CAN TALK ABOUT THEM.  I'LL

21   DOUBLE-CHECK ON THAT.

22      OKAY.  ANY OTHER ISSUES?

23              **MR. BURSOR:**  NO, YOUR HONOR.  NOT FROM PLAINTIFFS.

24              **MR. ELLIS:**  NO, YOUR HONOR.

25              **THE COURT:**  OKAY.  ALL RIGHT.  THEN I WILL SEE YOU ON

1    MONDAY.  IF YOU NEED ME, SEND A NOTE TO MY COURTROOM DEPUTY

2    AND WE CAN GET ON THE PHONE.

3         WE ARE ADJOURNED.

4              **MR. ELLIS:**  THANK YOU, YOUR HONOR.

5              **MR. BURSOR:**  THANK YOU.

6

7              (PROCEEDINGS ADJOURNED AT 11:50 A.M.)

8

9                    **CERTIFICATE OF REPORTER**

10             I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

11   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

12   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

13   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15                    *Diane E. Skillman*

16             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

17                  MONDAY, APRIL 29, 2019

18

19

20

21

22

23

24

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**