**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            ykrivoshey@bursor.com
            breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff and the Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IGNACIO PEREZ, on Behalf of Himself and all Others Similarly Situated,<br><br>                             Plaintiff,<br><br>        v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>                             Defendant. | Case No. 4:16-cv-03396-YGR<br><br>**DECLARATION OF YEREMEY KRIVOSHEY IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO DEFENDANT'S OPENING STATEMENT SLIDES 10, 14-15, AND 17-19**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

I, Yeremey Krivoshey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      Attached hereto as **Exhibit 1** is a true and correct excerpts from Defendant's proposed PowerPoint presentation slides 10, 14-15, and 17-19.

3.      Plaintiff emailed Defendant the visuals he intends to use at opening at 5:04 p.m. on May 1, 2019.  Defendant waited until 8:35 p.m. to email its PowerPoint presentation, three and a half hours after receiving Plaintiff's visuals.

4.      Attached hereto as **Exhibit 2** is a true and correct excerpts from the March 19, 2019 hearing transcript.  Well after the parties' deadline to make deposition designations, Defendant designated deposition excerpts that it stated would be used <u>solely</u> for purposes of impeachment.  At the March 19, 2019 hearing, Defendant conceded that it only intended to use deposition designations for impeachment, not its case in chief.

5.      Attached hereto as **Exhibit 3** is a true and correct excerpts from the April 29, 2019 Pretrial Conference Transcript.  At the April 29, 2019 pretrial conference, the parties and the Court agreed that the Court will determine the issue of willfulness and intent under the TCPA outside the purview of the jury, in "Phase 2."

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed in Walnut Creek, California this 2nd day of May, 2019.


By:   */s/ Yeremey Krivoshey*
                Yeremey Krivoshey

DECLARATION OF YEREMEY KRIVOSHEY IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO
DEFENDANT'S OPENING STATEMENT SLIDES
CASE NO. 4:16-cv-03396-YGR

1

**EXHIBIT 1**

## Defendant Rash Curtis' Policies & Procedures

- For example, Steven Kizer, a former Rash Curtis employee who will be a witness here, has testified, as to the phone numbers in fields 5 through 10, that:

  "Those numbers can come from a variety of sources.  Let me give you some examples: they can come from the client; client supplied – I went to the doctor and they said, in an emergency you can then call – you can call my mom, you can call my sister, you can call my best friends.  Here are their phone numbers. . . ."

  (Kizer Depo., p. 70.)

Defendants Opening Stmt –
Page  10

# Cellphone No. Ending in 5193

- Daniel R. was a patient at Sutter Hospital in Sacramento, and he provided his cellphone number (ending in 5193) to Sutter during the course of his medical treatment.

- Sutter, a client of Rash Curtis, assigned Mr. R's outstanding debt to Rash Curtis for collection on May 7, 2015.

- The info about Mr. R and his account was transmitted to Rash Curtis electronically.

# Cellphone No. Ending in 5193

- One piece of info provided by Sutter Hospital to Rash Curtis was the cellphone number ending in 5193.

- Rash Curtis called the cellphone (ending in 5193) attempting to collect the debt purportedly owed by Daniel R.

- Rash Curtis' call logs show that it attempted 26 calls to the cellphone number ending in 5193 - all of which were placed through its dialing system "Global Connect."

- None of the calls were placed through the VIC or TCN dialers.

Defendants Opening Stmt –
Page  15

# Rash Curtis' Calls to Phone No. Ending in 5193

- When Rash Curtis made these calls, the cellphone number ending in 5193 was owned by Plaintiff Ignacio Perez.

- It did not know this when it made the calls – Rash Curtis believed it was calling Mr. R.

- Perez had independently provided his cellphone number ending in 5193 to Sutter General Hospital in connection with medical services for himself – admittedly, Rash Curtis was not calling about those services.

fppt.com

# Rash Curtis' Calls to Phone No. Ending in 5193

- The first 25 phone calls were unsuccessful.

- The first time Rash Curtis actually reached Mr. Perez, and talked with him, was on June 7, 2016.

- On June 7, 2016, Perez told Rash Curtis he was not Mr. R, and asked it not to call his cellphone again.

- After talking to Perez and being told the 5193 number was no longer affiliated with Mr. R., Rash Curtis took the 5193 number completely out of its database so it could not call it again.

# KEY ISSUES

- **<u>Key Issue No. 1</u>:**  Whether Mr. Perez's cellphone number ending in 5193 was obtained by skip tracing.

  Rash Curtis believes the evidence will show it was not.

fppt.com

**EXHIBIT 2**

PAGES 1 - 54

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

```
SANDRA MCMILLION, ET AL.,      )
                               )
            PLAINTIFFS,        )    NO. C-16-3396 YGR
                               )
   VS.                         )    TUESDAY, MARCH 19, 2019
                               )
RASH CURTIS & ASSOCIATES,      )    OAKLAND, CALIFORNIA
                               )
                               )    MOTION TO STRIKE/EXCLUDE
                               )    EXPERT WITNESS OPINIONS
            DEFENDANT.         )
_____)
```

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFFS:**            BURSOR FISHER, P.A.
                              1990 N. CALIFORNIA BLVD., STE. 940
                              WALNUT CREEK, CALIFORNIA 94596
                       BY:    TIMOTHY FISHER, ESQUIRE
                              YEREMEY O. KRIVOSHEY, ESQUIRE
                              SCOTT A. BURSOR, ESQUIRE
                              BLAIR REED, ESQUIRE


**FOR DEFENDANT:**             ELLIS LAW GROUP LLP
                              1425 RIVER PARK DRIVE, STE. 400
                              SACRAMENTO, CALIFORNIA 95815
                       BY:    MARK E. ELLIS, ESQUIRE
                              ANTHONY P.J. VALENTI, ESQUIRE
                              LARRY IGLESIAS, ESQUIRE


**REPORTED BY:**               DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                              OFFICIAL COURT REPORTER

         TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1          **THE COURT:**  OKAY.

2      ALL RIGHT.  NOW, ON THESE DISCOVERY DESIGNATIONS, I DON'T

3  SEE OBJECTIONS.  SO EVERYBODY IS FINE?  IS THAT MY

4  UNDERSTANDING THAT YOU'VE GIVEN EACH OTHER THE DESIGNATIONS

5  BUT THERE'S NO OBJECTIONS?

6          **MR. FISHER:**  YOUR HONOR, WE HAD A MOTION IN LIMINE

7  RELATED TO DEFENDANT'S DESIGNATIONS WHICH WE ASSERTED WERE

8  LATE.

9      DEFENDANT THEN CLARIFIED THAT THEY ONLY INTEND TO USE THE

10  EXCERPTS THAT THEY DESIGNATED FOR IMPEACHMENT PURPOSES, WHICH

11  THEN MAKES IT FAIR GAME.

12      IF THAT'S THE CASE, THEN THE MOTION IN LIMINE I THINK IS

13  MOOT.  I THINK THAT'S NO. 7, YOUR HONOR, OUR NO. 7.

14      BUT IF THEY WERE TO SEEK TO INTRODUCE THOSE EXCERPTS

15  DURING THEIR CASE-IN-CHIEF, WE WOULD ASSERT A TIMELINESS

16  OBJECTION.

17      AND THEN I DON'T THINK DEFENDANTS MADE ANY OBJECTIONS TO

18  OUR DESIGNATIONS.

19          **MR. ELLIS:**  THAT'S CORRECT.

20          **THE COURT:**  OKAY.  GREAT.  BECAUSE I CAN TELL YOU,

21  THAT IS USUALLY A SATURDAY FOR ME GOING THROUGH EVERYBODY'S

22  FIGHTING OVER THOSE DARN DESIGNATIONS.

23      ALL RIGHT.  THE QUESTIONNAIRE.  SO LET ME TALK TO YOU A

24  LITTLE BIT ABOUT JURY SELECTION.

25      I LIKE JURY TRIALS.  I LIKE MY JURORS.  I SPEND A LOT OF

**EXHIBIT 3**

PAGES 1 - 71

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

| | | |
|---|---|---|
| IGNACIO PEREZ, ON BEHALF | ) | |
| OF HIMSELF AND ALL OTHERS | ) | |
| SIMILARLY SITUATED, | ) | |
| | ) | |
| PLAINTIFFS, | ) | NO. C-16-3396 YGR |
| | ) | |
| VS. | ) | MONDAY, APRIL 29, 2019 |
| | ) | |
| RASH CURTIS & ASSOCIATES, | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | PRETRIAL CONFERENCE |
| DEFENDANT. | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**          BURSOR FISHER, P.A.
                            1990 N. CALIFORNIA BLVD., STE. 940
                            WALNUT CREEK, CALIFORNIA 94596
                  BY:  TIMOTHY FISHER, ESQUIRE
                            YEREMEY O. KRIVOSHEY, ESQUIRE
                            BLAIR REED, ESQUIRE

                            BURSOR & FISHER
                            888 SEVENTH AVENUE
                            NEW YORK, NEW YORK 10019
                  BY:  SCOTT A. BURSOR, ESQUIRE

**FOR DEFENDANT:**          ELLIS LAW GROUP LLP
                            1425 RIVER PARK DRIVE, STE. 400
                            SACRAMENTO, CALIFORNIA 95815
                  BY:  MARK E. ELLIS, ESQUIRE
                            ANTHONY P.J. VALENTI, ESQUIRE
                            LARRY IGLESIAS, ESQUIRE

**REPORTED BY:**          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                            OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1        AND ON THE TOPIC OF THE NATURE OF THE EVIDENCE, I CAN

2   ASSUME WHAT I BELIEVE TO BE YOUR PERSPECTIVES ON WHETHER OR

3   NOT A JURY PROVIDES A COURT WITH A FACTUAL DETERMINATION FROM

4   THEIR PERSPECTIVE ON WILLFULNESS, BUT I'VE NOT HAD BRIEFING ON

5   THE TOPIC.  SO BECAUSE I HAVEN'T HAD BRIEFING AND I HAVEN'T

6   ASKED YOU SPECIFICALLY, I LEFT MYSELF WHAT I CALL WIGGLE ROOM

7   BY SAYING THAT I WOULD INSTRUCT THE JURY AS APPROPRIATE

8   BECAUSE YOU HAVEN'T, AS I WORKED THROUGH THE ISSUES, I

9   REALIZED YOU HAD NOT BRIEFED THAT ISSUE.  MY -- AND I'VE

10  OUTLINED IN MY ORDER WHAT I THINK THE LEGAL PARAMETERS ARE.

11       THAT EVIDENCE IS ONLY RELEVANT ON THAT TOPIC OF

12  WILLFULNESS.  AND SO IF THE JURY IS NOT MAKING A DETERMINATION

13  ON WILLFULNESS, IT IS NOT RELEVANT.  IF A JURY IS, THEN IT IS.

14            MR. ELLIS:  SO --

15            THE COURT:  WOULD YOU LIKE TO SAY SOMETHING,

16  MR. ELLIS?

17            MR. ELLIS:  YES, YOUR HONOR.

18       I THINK I CAN HELP EVERYONE WITH THIS.  IN LOOKING THROUGH

19  THE DOCUMENTS IN PREPARATION FOR TODAY'S HEARING, I THINK... I

20  THINK PLAINTIFFS ARE RIGHT.  I THINK UNDER THE -- IF YOU LOOK

21  AT THE PLAIN LANGUAGE OF THE STATUTE, IT SAYS "THE COURT".

22  AND THEY CITED IN THE SUBMISSION THAT WE JUST DID THE DISTRICT

23  COURT OF OREGON DECISION.

24       AND SO ALTHOUGH I HATE TO AGREE WITH PLAINTIFFS ON

25  ANYTHING, IN THIS CASE I THINK THAT... I THINK THAT I WOULD
```

1    CONCEDE THAT THIS SHOULD BE DECIDED BY YOU, YOUR HONOR.  AND

2    BECAUSE OF THAT, I DON'T THINK THAT ANY OF THE EVIDENCE ON

3    WILLFULNESS IS RELEVANT TO THE JURY'S DETERMINATION.

4            **MR. BURSOR:**  I AGREE, YOUR HONOR.  I JUST WANT TO

5    MAKE CLEAR, WE THINK THAT -- WE HAVE NOT BRIEFED WHETHER YOUR

6    HONOR NEEDS AN ADVISORY RULING FROM THE JURY.  OUR POSITION IS

7    YOU DO NOT.  YOU ARE QUALIFIED TO MAKE A DETERMINATION OF

8    WILLFULNESS WITHOUT ANY INPUT FROM THE JURY.

9        AND WE UNDERSTOOD THIS ISSUE TO RELATE PRIMARILY TO

10   EXHIBITS 504 AND 505 WHICH WE HAD A MOTION IN LIMINE ON AND

11   THE MOTION IN LIMINE WAS GRANTED IN PART, DENIED IN PART, BUT

12   EVEN THE PARTS THAT WERE DENIED, I DON'T THINK THE OBJECTIONS

13   WERE OVERRULED.  WE WOULD STILL HAVE THE ABILITY TO MAKE THOSE

14   OBJECTIONS AT TRIAL, AND THEN YOUR HONOR WOULD RULE AT THEM AT

15   TRIAL.  FOR EXAMPLE, WHETHER THE DEFENDANTS HAD LAID THE

16   FOUNDATION FOR BUSINESS RECORDS EXCEPTION, AND SO FORTH.

17       BUT IF THOSE... IF THOSE DOCUMENTS RELATE ONLY TO

18   WILLFULNESS AND YOUR HONOR IS GOING TO BE DECIDING WILLFULNESS

19   AND THAT IS NOT GOING TO BE PRESENTED TO THE JURY, WHICH I

20   THINK IS THE CORRECT RESULT, THEN I DON'T THINK WE NEED TO

21   SPEND A LOT OF TIME ON THOSE OBJECTIONS BECAUSE ONLY YOUR

22   HONOR IS GOING TO SEE THEM.  AND, YOU KNOW, IT WILL BE A

23   SITUATION WHERE YOUR HONOR COULD BE LOOKING AT THEM, AND IF WE

24   ARE OBJECTING, WE ARE OBJECTING.  IT'S NOT WHERE YOU HAVE TO

25   SEND A JURY OUT OF THE ROOM OR ALL THAT TYPE OF THING.

1      **THE COURT:**  I AGREE WITH YOU SO FAR.

2          **MR. ELLIS:**  SO NOW WE SWITCH TO THE CLASS.

3      SO, YES, THERE IS A CERTIFIED CLASS BUT YOU HAVE NOT

4   DETERMINED IN THAT CLASS CERTIFICATION OR IN ANY OF THE ORDERS

5   THAT WE HAVE THAT ARE EXTANT AT THIS POINT IN TIME AS TO

6   WHETHER -- HOW MANY OF THOSE -- WHETHER ANY, ALL, SOME, PART

7   OF THE CLASS MEMBERS WERE -- THEIR NUMBERS WERE OBTAINED BY

8   SKIP-TRACING.

9          **THE COURT:**  CORRECT.

10         **MR. ELLIS:**  AND THAT'S GOING TO BE -- THAT IS GOING

11   TO BE WHERE THE BATTLE LINE IS HERE.  BECAUSE -- LET ME GO

12   FURTHER.

13     ASSUMING THAT, AND I THINK THE EVIDENCE IS GOING TO SHOW

14   YOUR HONOR, THAT THERE'S 26 PHONE CALLS TO MR. PEREZ.  IF

15   WE'RE DEALING WITH THE FIRST CAUSE OF ACTION OF THE COMPLAINT,

16   THE NEGLIGENT VIOLATION OF THE TCPA, THAT'S GOING TO GIVE US

17   WHAT, $13,000 IN DAMAGES.

18     IF THE COURT FINDS TREBLE DAMAGES IN THE SECOND OR

19   BIFURCATED PART OF THE TRIAL, THEN WE ARE GOING TO HAVE

20   $26,000 IN DAMAGES.

21     BUT IF THE JURY COMES BACK, IN MY VIEW, AND FINDS THAT --

22   AND, AGAIN, I BELIEVE THIS IS GOING TO BE THE PLAINTIFFS'

23   BURDEN OF PROOF BECAUSE THIS IS HOW THEY SET UP THEIR CLASS

24   AND EACH ONE OF THE CLASSES HAS THIS AS A REQUIREMENT, IF THE

25   JURY COMES BACK AND FINDS THAT THEY HAVE NOT MET THEIR BURDEN

```
 1    OF PROOF OF SHOWING THAT SOME, ANY, OR ALL OF THE CLASS
 2    MEMBERS WERE SKIP-TRACED, BECAUSE -- AND ALONG WITH IT THEY
 3    FIND THAT MR. PEREZ'S NUMBER WAS NOT SKIP-TRACED --
 4    SKIP-TRACING HAS NOTHING TO DO WITH THE PRIMA FACIE CASE OR
 5    THE DEFENSES, BUT IT'S AN IMPORTANT ELEMENT THERE, WHICH IS
 6    WHY -- AND LET'S BE CLEAR ABOUT THIS.  PLAINTIFFS ARE FIGHTING
 7    SO HARD ON THOSE DOCUMENTS AND WE ARE FIGHTING SO HARD GOING
 8    BACK, WE NOW HAVE A CASE.  BUT IF -- A VICTORY FOR ME IN THIS
 9    CASE IS HAVE THE JURY FIND THERE WAS NO SKIP-TRACING HERE, AND
10    WE'VE NOW HAD A CASE THAT'S BEEN GOING ON FOR FIVE YEARS AND
11    THE DAMAGES ARE $26,000 AND, BY THE WAY, THE TCPA DOESN'T GIVE
12    ATTORNEYS' FEES.
13        IF THEY HAVE THEIR WAY AND THE JURY COMES BACK, THEN WE'VE
14    GOT A CASE THAT MAY BE WORTH $250 MILLION, BUT AS I'VE SAID
15    BEFORE, THAT IS MONOPOLY MONEY WITH MY MOM AND POP OUTFIT.
16        SO IF I HAVE NOT ARTICULATED THIS BEFORE, I HAVE NOW
17    ARTICULATED.  THAT IS WHAT THE TRIAL NEXT WEEK IS ALL ABOUT.
18            THE COURT:  SO --
19          MR. BURSOR:  I HAVE A VERY DIFFERENT VIEW OF THAT.
20            THE COURT:  ALL RIGHT.  LET ME HEAR YOUR VIEW.
21          MR. BURSOR:  SO, JUST TO ADDRESS YOUR HONOR'S
22    QUESTION FIRST, THE JURY DOES NOT DECIDE CLASS CERTIFICATION.
23    YOUR HONOR DECIDES CLASS CERTIFICATION.
24            THE COURT:  RIGHT, BUT YOU DO -- OKAY.  I AGREE WITH
25    THAT.  AND I'VE ALSO SAID, BECAUSE I'VE HAD TO DEAL WITH THIS,
```

```
 1    THIS IS -- I MEAN, LOOK, THE REASON THAT I SENT THESE THINGS

 2    IN ADVANCE WAS TO TALK ABOUT THEM AND, TWO, I ONLY USED YOUR

 3    VERSIONS OF IT IN A WAY THAT I CLEANED UP.

 4       SO THIS VERDICT FORM AND THESE JURY INSTRUCTIONS WERE NOT

 5    SET IN STONE.  THEY ARE THERE SO WE CAN HAVE AN INTELLIGENT

 6    DISCUSSION.

 7       AS I SAID, ALL I'VE EVER SAID WAS THAT THERE IS SUFFICIENT

 8    EVIDENCE TO PRESENT TO THE JURY.  I HAVE NEVER SAID THAT YOU

 9    HAVE PROVED YOUR BURDEN, AND YOU HAVE NEVER BROUGHT THAT

10    MOTION.

11       SO IT IS, I THINK, A THRESHOLD QUESTION TO KNOW WHETHER

12    THE JURY BUYS YOUR PRESENTATION OF THE EVIDENCE AND AGREES

13    WITH YOU THAT THE CALLS WERE MADE TO CELL PHONES OBTAINED

14    BY -- THROUGH SKIP-TRACING.

15              MR. BURSOR:  SURE.

16              THE COURT:  YOU HAVE TO PROVE THAT.

17              MR. BURSOR:  I AGREE WITH THAT.  BUT, YOUR HONOR --

18    WELL, I AGREE WITH THAT WITH RESPECT TO THE CLASS CLAIM, BUT

19    NOT WITH RESPECT TO MR. PEREZ'S CLAIM.

20              THE COURT:  NO, OF COURSE NOT.  THAT'S WHAT WE ARE

21    TALKING ABOUT.  HE'S EASY.  WE ARE TALKING ABOUT CLASS CLAIM.

22       SO THAT GOES TO EACH ONE OF THESE -- TO EACH ONE OF THESE

23    SUBCLASSES.  BECAUSE IF YOU CANNOT PROVE THAT, THEN

24    EVERYTHING -- THEN THERE IS NO QUESTION OF WHETHER OR WHY, AND

25    I DON'T LIKE TO GIVE JURORS INSTRUCTIONS WITHOUT THERE BEING A
```

```
1    TIME --

2              THE COURT:  OF COURSE YOU DON'T.

3              MR. BURSOR:  -- EVERY TIME I HEAR MR. ELLIS DESCRIBE

4    THE EVIDENCE HE'S GOING TO PRESENT, HE TALKS ABOUT WHETHER

5    MR. PEREZ -- HE WANTS TO PROVE THAT MR. PEREZ IS NOT THE

6    APPROPRIATE REPRESENTATIVE OF THIS CLASS.  THEY DON'T GET TO

7    DECIDE THAT.

8              THE COURT:  NO, THEY DON'T.

9              MR. BURSOR:  RIGHT.  BUT EVERY TIME HE DESCRIBES WHAT

10   HE'S GOING TO DO NEXT WEEK, THAT'S WHAT HE SAYS.

11             MR. ELLIS:  I DON'T THINK IT IS.  AND IT'S NOT WHAT

12   I'M GOING TO DO.  I'VE BEEN PERFECTLY TRANSPARENT ABOUT WHAT

13   OUR POSITION IS.  AND IT'S -- I UNDERSTAND THAT THE CLASS HAS

14   BEEN CERTIFIED, BUT CLASS CERTIFICATION IS DIFFERENT THAN

15   WINNING THE TRIAL.

16             MR. BURSOR:  THE ISSUE, YOUR HONOR, IS THE CLASS WAS

17   CERTIFIED.  CERTIFIED BY WHOM?  DID I DO IT?  DID I RUN AN

18   ADVERTISEMENT IN THE NEWSPAPER TO CERTIFY THE CLASS?

19             THE COURT:  LOOK, WE WILL EXPLAIN TO THE JURY THAT

20   YOU ARE REPRESENTING A CLASS OF PEOPLE.  THAT'S -- BUT I AM

21   NOT HERE TO TAKE SIDES AND I WILL NOT ALLOW YOU TO USE THE

22   OFFICE OF THE JUDICIAL BRANCH.  WE -- TO SOMEHOW BOLSTER YOUR

23   CLAIMS.

24             MR. BURSOR:  IT'S NOT BOLSTERING, YOUR HONOR, BECAUSE

25   I'M GOING TO BRING IN ONE CLASS MEMBER, PEREZ.  NOW, THERE'S A
```

```
1    DO TO GET BACK TO YOU?
2            MR. ELLIS:  WITH ALL DUE RESPECT, I THINK FROM THE
3    HOUR THAT WE'VE SPENT ON THIS, I THINK I KNOW WHAT WE NEED TO
4    DO, AND I THINK THAT WE SHOULD JUST GET DOWN AND DO THE HARD
5    WORK TO GET IT DONE AND THEN PRESENT IT TO THE COURT.
6            THE COURT:  I'M AVAILABLE THIS WEEK.  I CAN ALWAYS
7    GET ON THE PHONE IF YOU NEED ME TO GET ON THE PHONE.
8            MR. BURSOR:  SO, THE ONLY THING THAT I WANTED TO
9    CLARIFY, YOUR HONOR, IS QUESTION 1 BECAUSE THE PLAINTIFF DOES
10   NOT NEED TO PROVE SKIP-TRACING TO PROVE HIS CLAIM.
11      QUESTION 1 IS PERFECTLY FINE AS WRITTEN, AND THE OTHER
12   OPTION IS NOT CORRECT AND WILL NOT BE USED.  THE ISSUE DOES
13   NOT COME UP UNTIL QUESTION 4.
14           THE COURT:  I THINK THAT'S RIGHT.
15           MR. BURSOR:  OKAY.
16           MR. ELLIS:  SO I JUST -- I AM NOT GOING TO ARGUE IT,
17   I DON'T THINK IT'S RIGHT.  I THINK THAT MR. PEREZ DOES NEED TO
18   DEMONSTRATE THAT HIS PHONE NUMBER WAS OBTAINED BY
19   SKIP-TRACING, BUT WE HAVE TALKED ABOUT THIS.  I AM MAKING THAT
20   JUST FOR THE RECORD.
21           THE COURT:  NOTED.
22      ALL RIGHT.  LET'S GO THROUGH THE JURY INSTRUCTIONS IN CASE
23   THERE IS ANYTHING ELSE OUT THERE.
24      ARE THERE ANY JURY INSTRUCTIONS THAT YOU WANT TO DISCUSS?
25           MR. BURSOR:  YES, YOUR HONOR.  IF WE COULD START WITH
```