1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Yeremey O. Krivoshey (SBN 295032)
Blair E. Reed (SBN 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            breed@bursor.com
            ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SBN 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO PEREZ, on Behalf of Himself and All Others Similarly Situated, | Case No. 4:16-cv-03396-YGR |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE** |
| v. | |
| RASH CURTIS & ASSOCIATES, | Date: January 14, 2020 |
| Defendant. | Time: 2:00 p.m. |
| | Courtroom: 1 |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      **PLEASE TAKE NOTICE THAT** on January 14, 2020 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, 4th Floor in the Courtroom of Judge Yvonne Gonzalez Rogers, Plaintiff Ignacio Perez ("Plaintiff" or "Class Representative"), by and through his undersigned counsel of record, will move and hereby does move, pursuant to Fed. R. Civ. P. 23(h) and 54(d), for an order awarding attorney's fees, reimbursement of litigation costs and expenses, and payment of a class representative service award.

      This motion is made on the grounds that an award of attorney's fees, reimbursement of litigation costs and expenses, and payment of a class representative service award is proper, given that Plaintiff won a judgment awarding $267,349,000 to the certified Classes, ECF No. 370, thus Plaintiff and Class Counsel have conferred a substantial benefit to the Class, and such awards are permitted under the laws of this Circuit.

      This motion is based on: (1) this Notice of Motion and Motion, (2) the Memorandum of Points and Authorities in support thereof, (3) the Declarations of Scott A. Bursor and Ignacio Perez in Support of Plaintiff's Motion for an Award of Attorney's Fees, Costs and Expenses, and Service Award for the Class Representative filed herewith, (4) the papers and pleadings on file, and (5) the arguments of counsel at the hearing on the Motion.

<strong>CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED</strong>

      Whether the Court should award attorney's fees, reimbursement of litigation costs and expenses, and payment of a class representative service award.

Dated:  September 23, 2019            Respectfully submitted,

                              **BURSOR & FISHER, P.A.**

                              By:   */s/ Scott A. Bursor*
                                    Scott A. Bursor

                              Scott A. Bursor (SBN 276006)
                              2665 S. Bayshore Dr., Suite 220
                              Miami, FL 33133
                              Telephone: (305) 330-5512

1

2

Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

3

4

5

6

7

8

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Yeremey O. Krivoshey (SBN 295032)
Blair E. Reed (SBN 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            ykrivoshey@bursor.com
            breed@bursor.com

9

*Class Counsel*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS
AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

ii

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ...................................................................................................1

II.   CLASS COUNSEL'S REQUESTED ATTORNEY'S FEE AWARD IS
      FAIR AND REASONABLE...................................................................................2

      A.    The Percentage Of The Benefit Method................................................3

            1.    Class Counsel Achieved Extraordinary Results For The Class....................4

            2.    Plaintiff's Novel Claims Carried Substantial Litigation Risk .......................5

            3.    Market Rates As Reflected By Awards In Similar Cases ............................7

            4.    The Contingent Nature Of The Fee And Financial Burden
                  Borne By Class Counsel................................................................10

      B.    A Lodestar Cross-Check Is Not Required .................................................11

III.  CLASS COUNSEL'S EXPENSES WERE REASONABLE AND
      NECESSARILY INCURRED................................................................................12

IV.   THE REQUESTED SERVICE AWARD FOR THE CLASS
      REPRESENTATIVE IS FAIR AND REASONABLE.......................................12

V.    CONCLUSION ......................................................................................................14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS
AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Blair v. CBE Grp., Inc.*,
   309 F.R.D. 621 (S.D. Cal. 2015) ................................................................. 5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................... 2

*Charvat v. Travel Servs.*,
   2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ...................................................... 5

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................................ 5

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
   2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ............................................. 8

*Ebarle v. Lifelock, Inc.*,
   2016 WL 5076203 (N.D. Cal. Sep. 20, 2016) ............................................ 11

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ....................................................................... 2

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ................................................................... 5

*Gene And Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ....................................................................... 5

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .............................................. 11

*Hageman v. AT & T Mobility LLC*,
   2015 WL 9855925 (D. Mont. Feb. 11, 2015) ............................................... 8

*Hamilton v. Maryland Cas. Co.*,
   27 Cal. 4th 718 (2002) ................................................................................. 1

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 2, 3

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................... 12

*Hashw v. Dep't Stores Nat'l Bank*,
   182 F. Supp. 3d 935 (D. Minn. 2016) .......................................................... 5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS
AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

iv

*High-Tech Employee Antitrust Litig.*,
　2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................. 14

*Ibarra v. Wells Fargo Bank, N.A.*,
　2018 WL 5276295 (C.D. Cal. Sep. 28, 2018) ................................................................. 13

*In re Activision Sec. Litig.*,
　723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................ 7

*In re Capital One Telephone Consumer Protection Act Lit.*,
　80 F. Supp. 3d 781 (N.D. Ill. Feb. 12, 2015) ........................................................... 3, 4, 5

*In re Google Referrer Header Privacy Litig.*,
　869 F.3d 737 (9th Cir. 2017) .......................................................................................... 11

*In re Lithium Ion Batteries Antitrust Litig.*,
　2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) ........................................................... 2, 10

*In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*,
　2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ............................................................ passim

*In re Optical Disk Drive Prods. Antitrust Litig.*,
　2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) .................................................................. 9

*In re Pac. Enters. Sec. Litig.*,
　47 F.3d 373 (9th Cir. 1995) .............................................................................................. 7

*James v. JPMorgan Chase Bank, N.A.*,
　2017 WL 2472499 (M.D. Fla. June 5, 2017) .................................................................... 8

*Kifafi v. Hilton Hotels Retirement Plan*,
　999 F. Supp. 2d 88 (D.D.C. 2013) ................................................................................. 13

*Kolinek v. Walgreen Co.*,
　311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................................... 5

*Krakauer v. Dish Network, L.L.C.*,
　2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ............................................................ passim

*Martin v. AmeriPride Servs., Inc.*,
　2011 WL 2313604 (S.D. Cal. June 9, 2011) ..................................................................... 7

*Meyer v. Portfolio Recovery Associates*,
　707 F.3d 1036 (9th Cir. 2012) .......................................................................................... 5

*Morris v. Lifescan, Inc.*,
　54 Fed. App'x 663 (9th Cir. 2003) .................................................................................... 7

*Purdy v. Pacific Automobile Ins. Co.*,
　157 Cal. App.3d 59 (1984) ............................................................................................... 1

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................... 13

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..................................................... 5

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................................ 8

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995)............................................................... 13, 14

*Vandervort v. Balboa Capital Corp.*,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014) .................................................................. 8

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................... 7

*Velez v. Novartis Pharm. Corp.*,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................................... 14

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
  271 F.R.D. 668 (D. Wyo. 2011) ..................................................................... 5, 7

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................ 3, 9, 10, 11

*Weil v. Metal Techs. Inc.*,
  2018 WL 2971030 (S.D. Ind. June 13, 2018) .................................................... 13

*Williams v. MGM-Pathe Comm'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ........................................................................... 7

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...................................................... 5

**RULES**

Fed. R. Civ. P. 23 ................................................................................... 2, 4, 12

Fed. R. Civ. P. 54(d)................................................................................... 2, 12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS
AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

vi

1

## I.  INTRODUCTION

2        Plaintiff Ignacio Perez and Class Counsel achieved an historic result in this case.  They won

3   the first and only TCPA class action trial against a debt collector.  They also won the first and only

4   TCPA class action trial involving skip-tracing.  The jury awarded 100% of the relief Plaintiff

5   sought.  And the $267,349,000 trial judgment, ECF No. 370, is one of the largest trial judgments

6   ever obtained in a consumer class action.  For this extraordinary result, Class Counsel seek a fee of

7   one-third of the judgment, plus reimbursement of litigation costs and expenses incurred to date.

8        At the outset, it is important to recognize that this fee application is different from most.

9   There is no settlement here.[1]  This case was tried to verdict and judgment has been entered.  There

10  is no pot of money to distribute, at least not yet.  Defendant's counsel recently stated in writing that

11  Defendant will file for bankruptcy protection, and that it will "tie the case up in righteous appeals

12  for years."  Bursor Decl. ¶ 17.  Class Counsel anticipates thousands of additional hours of work

13  will be required to defeat any appeals, to navigate a likely bankruptcy filing, to obtain assignment

14  of Defendant's rights under the insurance policy either through settlement or through bankruptcy,

15  and to pursue full recovery from Defendant's insurer.  *Id.* ¶ 21.

16       A fee of one-third of the judgment is reasonable given the extraordinary result Class

17  Counsel obtained, the risks they faced (and continue to face), and the time, money, and resources

18  they invested (and continue to invest).  Indeed, Class Counsel's work is not yet nearly done.  Class

19

20  [1] In 2016 and 2017, Defendant and its insurer, X.L. America, Inc., rejected four written offers to

21  settle this action for amounts below the policy limits.  *See* Bursor Decl. ¶¶ 4-8.  On August 16,
    2017, the parties participated in a mediation where Plaintiff made a demand below the policy limit

22  and the Defendant and its insurer walked out without making any offer to settle.  *Id.* ¶¶ 7-8.
    Thereafter Defendant and its insurer rejected multiple invitations to resume mediation, refused to

23  negotiate, and did not make a settlement offer until after the jury had rendered its verdict.  *Id.*
    ¶¶ 8-13.  Based on these facts, Class Counsel believes there is a strong claim against the insurer for

24  its bad faith failure to settle this action within the policy limits.  Plaintiff and Class Counsel thus
    expect to obtain assignment of Defendant's rights under the insurance policy, and to pursue

25  recovery of the full amount of the judgment from the insurer.  *Id.* ¶¶ 14-21.  *See, e.g., Hamilton v.
    Maryland Cas. Co.*, 27 Cal. 4th 718, 725 (2002) ("Where the underlying action has proceeded to

26  trial and a judgment in excess of the policy limits has been entered against the insured, the insurer
    is ordinarily liable for all that is insured for the entire amount of that judgment …."); *Purdy v. Pacific*

27  *Automobile Ins. Co.*, 157 Cal. App.3d 59, 74 (1984) (affirming trial court verdict against insurer for
    bad faith failure to settle within policy limits, and holding the insurer liable for the entire judgment

28  despite the insured's insolvency and bankruptcy).

Counsel will be required to continue advancing expenses, and to continue working on collection efforts, bankruptcy litigation, and bad faith litigation against the insurer, possibly for years.

Despite this ongoing work, Fed. R. Civ. P. 23(h) and 54(d)(2) require Class Counsel to file this fee application now.  For these reasons, and those explained in more detail below, Plaintiff and Class Counsel respectfully request an Order:

(1) Awarding Class Counsel a reasonable fee of one-third (33.33%) of the judgment, totaling $89,116,333.33;

(2) Awarding Class Counsel reimbursement for reasonable litigation costs and expenses, in the amount of $314,179.97;

(3) Awarding Mr. Perez a class representative service award of $50,000.

## II.  CLASS COUNSEL'S REQUESTED ATTORNEY'S FEE AWARD IS FAIR AND REASONABLE

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common fund doctrine is most often applied to funds created by settlements.  But it is also a basis for a fee award on a litigated judgment.  *See, e.g.*, *id.* at 481-82 (applying the common fund doctrine to affirm a district court's fee award on a class action judgment); *Krakauer v. Dish Network, L.L.C.*, 2018 WL 6305785, at *4-5 (M.D.N.C. Dec. 3, 2018) (applying the common fund doctrine to award fees on a TCPA class action judgment after plaintiff and the class prevailed at trial).

In common fund cases, the Ninth Circuit permits district courts to award attorney's fees under either the "percentage-of-the-benefit" method or the "lodestar" method.  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  The percentage method, however, is nearly always employed*.  See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *7 (N.D. Cal. Aug. 16,

2019) ("[T]he primary basis of the fee award remains the percentage method."), quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002).

A percentage fee was awarded on the $75.5 million settlement in *In re Capital One Telephone Consumer Protection Act Lit.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. Feb. 12, 2015), which remains the largest TCPA class settlement to date.  In the order approving the settlement, the court explained why a percentage fee award, and not a lodestar-based fee, was appropriate:

> Here, had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions.  An *ex ante* agreement based on lodestar requires a client to monitor counsel, and the class-member "clients" here had little incentive to do so.  There are approximately 17.5 million class members in this case, the prospective relief is minimal, and none of the class members suffered tangible damages beyond the inconvenience of receiving one or more debt-collection calls to their cell phones on ostensibly overdue credit card bills.  The class would not have negotiated a compensation scheme that required a level of monitoring the class members were not interested in or capable of providing.  Instead, the class would have chosen the compensation scheme that required the least monitoring to align the incentives of the class and its counsel – the percentage method.  The court will therefore apply the percentage method as well.

*In re Capital One*, 80 F. Supp. 3d at 795.  Similarly, in *Krakauer v. Dish Network, L.L.C.*, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018), one of only a handful of class TCPA cases to ever go to trial, Judge Catherine C. Eagles awarded 33.33% of the $61 million judgment in attorney's fees.

### A.     The Percentage Of The Benefit Method

The Ninth Circuit established 25% of the common fund as a starting benchmark.  *Hanlon*, 150 F.3d at 1029.  "While the benchmark is not per se valid, the Ninth Circuit has recognized that requesting the 25% benchmark award only shows the reasonableness of a fee request."  *In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) (quotations omitted) (hereafter, "*In re NCAA*").  "[I]n most common fund cases, the award exceeds the [25%] benchmark."  *Id.* (quotations omitted).

"Courts consider the following factors to determine whether to apply either an upward or downward adjustment from that benchmark: (1) the results obtained by counsel; (2) the risks and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE CASE NO. 4:16-cv-03396-YGR

3

complexity of issues in the case; (3) whether the attorney's fees were entirely contingent upon success and whether counsel risked time and effort and advanced costs with no guarantee of compensation; (4) whether awards in similar cases justify the requested fee; and (5) whether the class was notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request." *In re NCAA*, 2017 WL 6040065, at *2.[2]

### 1.  Class Counsel Achieved Extraordinary Results For The Class

The benefit obtained for the class is foremost among the factors in determining a reasonable fee.  In this case, Class Counsel's success in obtaining a judgment for 100% of the relief sought, in an amount exceeding $267 million, weighs heavily in favor of an upward departure from the 25% benchmark.  The jury found that Defendant made 534,698 phone calls to Class Members in violation of the TCPA, which resulted in a judgment of $267,349,000.  There are 40,420 unique phone numbers on the class list.  Trial Tr. at 291:8-12; *id*. at 318:11-12; *id*. at 324:11-15.  Simply dividing the $267,349,000 judgment by 40,420 Class Members amounts to $6,614 per Class Member.  If Class Counsel are awarded the 33.33% fee they seek, the average recovery per Class Member will be approximately $4,402 net of fees and expenses.  Class Counsel expects this will be the largest per-class-member recovery in any TCPA case.  By far.  It is almost double the per-class-member recovery in *Krakauer*, where a $61 million judgment was awarded to a class with approximately 18,000 members.  *Krakauer*, 2018 WL 6305785, at *3.  A 33.33% fee was awarded in *Krakauer*, where the judgment obtained was approximately $3,388 per class member, and $2,259 per class member net of the attorney's fees.

The largest TCPA settlement to date was made in *In re Capital One*, which settled for $75.5 million.  The judgment here is more than 3 times that amount.  On a per-class-member basis, though, the result here is even more favorable.  In *In re Capital One* the recovery per class member was "a relatively diminutive $2.72."  80 F. Supp. 3d at 789.  Here, the amount of the judgment per-

---

[2] The September 9, 2019 Final Judgment, ECF No. 370, instructs Class Counsel to file a proposed notice plan in accordance with Fed. R. Civ. P. 23(h)(2) within 28 days of the entry of Final Judgment.  ECF No. 370, at 2.  Should any class members file objections after being provided notice of the present motion, Plaintiff will supplement his motion responding to any such objections.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

4

class-member, $6,614, is more than two thousand times larger than *In re Capital One*.  It is also hundreds of times larger than the typical recoveries in TCPA class settlements.[3]  This extraordinary result weighs heavily in favor of an upward adjustment from the 25% benchmark.

### 2.   Plaintiff's Novel Claims Carried Substantial Litigation Risk

The second factor looks to the risk and novelty of the claims at issue.  This case was both risky and novel.  So far as we are aware, this is the first and only TCPA class case concerning debt collection or skip-tracing to ever go to trial.

Defendant vigorously litigated this case and raised numerous significant defenses.  There was a substantial risk that the class would not be certified given Defendant's argument that individual issues of consent predominated over common ones, and that it would be impossible to identify class members.  While Class Counsel believed the motion to certify the classes was meritorious, court decisions on whether to certify TCPA class claims against debt collectors were mixed.  *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification).  Indeed, obtaining class certification and maintaining class certification through trial is exceedingly difficult in the debt collection context.  *See, e.g., Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) ("Courts have recognized that similar TCPA actions involving debt collections require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor during the transaction that resulted in the debt owed.") (quotations omitted); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) ("This will require an individual

---

[3] *See, e.g., Rose v. Bank of Am. Corp.*, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014) ($20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) ($25 merchandise voucher);  *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) ($33.20 per class member); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ($13.75 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30 per class member); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ($45 per class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per class member); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) ($48.37 per class member).

1

2

review of loan documents and other files related to the underlying debt obligation.  These questions require individual inquiries that would predominate over the class action.").

3

4

5

6

7

8

9

10

There was substantial risk at the summary judgment stage as well.  Defendant's summary judgment motion asserted Defendant had consent to call the Plaintiff and presented a lengthy factual record in support.  *See* ECF Nos. 140, 140-1, 140-2, 140-3, 140-4, 140-5, 140-6, 140-7. Class Counsel defeated that summary judgment motion, and won summary judgment for the Plaintiff on two key issues:  holding Defendants' dialers were ATDSs and that Defendant lacked consent to call Mr. Perez.  ECF No. 167.  Defendant twice sought reconsideration and amendment of the summary judgment order.   ECF Nos. 199 and 218.  These motions presented significant risk to the class claims.

11

12

13

14

15

16

There was also substantial risk that *ACA Int'l v. FCC, et al* pending in the D. C. Circuit, or *Marks v. Crunch San Diego*, pending in the Ninth Circuit, would change the law with regard to the definitions of ATDS and prior express consent.  The results of those cases were far from certain and, even after the D.C. Circuit's ruling, district courts were split as to the its meaning.  *See, e.g.*, Rash Curtis & Associates' Notice of Additional Supplemental Authority in Support of Defendant's Motion for Reconsideration, ECF No. 196.

17

18

19

20

21

22

23

24

25

26

27

Plaintiff also faced substantial risk due to Defendant's sandbagging, discovery abuse, and false testimony.  *See, e.g,* Order Re: Cross Motions for Summary Judgment, ECF No. 167, at 12 n. 9 ("The Court previously warned defendant that 'delaying and sandbagging tactics' would not be tolerated"); Pretrial Order No. 3 Re: Remaining Motion *in Limine*, ECF No. 320, at 13 ("defendant did not acknowledge that it had shifted positions and contradicted prior representations to the Court and opposing counsel").  Class Counsel had to navigate an unlevel playing field.  Defendant had possession of all of the key documents and information Plaintiff needed to prosecute the case. Defendant repeatedly withheld information and provided false testimony regarding important issues to be decided at trial.  To overcome these abuses Class Counsel had to file, and win, seven motions to compel discovery, just to obtain the evidence needed to present the claims at trial.  *See* ECF Nos. 40, 51, and 98-103.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

6

Plaintiff also faced substantial risk at trial.  As the Court will recall, multiple defense witnesses testified that Defendant's dialers did not call skip-traced numbers in phone fields 5 through 10.  And defense counsel emphatically urged the jury to find that Defendant made zero calls in violation of the TCPA.  Trial Tr. at 719:14-17 ("Did he prove to us that each one of those phone calls was the phone number that we used was obtained by skip-tracing.  If he didn't, I'm going to suggest to you, the number is zero, not 540,000."); *id*. at 758:25-759:21 ("Question 4: Did Rash Curtis make calls with its Global Connect dialer to class members' cellular telephone numbers obtained through skip-tracing during the class period without their prior express consent? …  If you find that not all of the calls were made to numbers obtained by skip-tracing, you have to say no.  Even if you find everyone in the class was a non-debtor.").  If the jury had been persuaded by those falsehoods, Plaintiff would have lost the trial and likely would have been saddled with Defendant's costs of litigation.

The extreme risk that both litigation and trial presented in this case weighs heavily in favor of an upward departure from the 25% benchmark.

### 3.   Market Rates As Reflected By Awards In Similar Cases

Although the Ninth Circuit has established a benchmark fee of 25%, it is not uncommon for courts in this Circuit to award fees above that benchmark.  One court in this District has stated the benchmark "should be set at 30%," to "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions."  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (awarding 32.8% of the recovery); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33.33% of the recovery); *Williams v. MGM-Pathe Comm'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33.33% of total fund awarded); *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, 664 (9th Cir. 2003) (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing five class actions where federal district courts approved attorney fee awards ranging from 30% to 33.3%); *Martin v. AmeriPride Servs., Inc.*, 2011 WL 2313604, at *8 (S.D.

1  Cal. June 9, 2011) (noting that "courts may award attorney's fees in the 30%-40% range"); *Singer*

2  *v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (approving

3  attorney fee award of 33.33% of the common fund and holding that award was similar to awards in

4  three other cases where fees ranged from 33.33% to 40%); *Rippee v. Boston Mkt. Corp.*, Case No.

5  05-CV-1359 TM (JMA), ECF No. 70, at 7 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee in a

6  common fund settlement).

7      In TCPA settlements as well, courts often award percentage fees of more than 25% percent.

8  *See, e.g.*, *Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 4180497, at *10 (E.D. Cal. Sept.

9  21, 2017) (awarding one-third of common fund in attorney's fees); *Vandervort v. Balboa Capital

10  Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33.33%); *Hageman v. AT & T

11  Mobility LLC*, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding one-third of the

12  common fund recovery in attorney's fees); *James v. JPMorgan Chase Bank, N.A.*, 2017 WL

13  2472499, at *2 (M.D. Fla. June 5, 2017) (approving a request for a 30% attorney's fee).  In *West v.

14  Cal. Service Bureau, Inc.*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), this Court

15  approved a 33.33% fee in a TCPA settlement.

16      Class Counsel's requested fee is also reasonable when compared to the attorney's fees

17  awarded in *Krakauer*, where a TCPA class action was litigated through trial to a $61 million

18  judgment.  Judge Eagles awarded 33.33% of that judgment as attorney's fees.  *Krakauer*, 2018 WL

19  6305785, at *4-5.

20      Although at first glance the size of the judgment here might appear to create a "megafund,"

21  Judge Claudia Wilken explained in *In re NCAA* why megafund principles and analysis are not

22  applicable to a case like this:

23          This is not a mass tort or fraud case in which mere disclosure of a
           government investigation all but guarantees the creation of a
24          megafund, notwithstanding what counsel does or does not do;
           instead, this case went from zero recovery to megafund **solely**
25          because of counsel's efforts and expenditures of expert fees and
           other expenses.  Relatedly, the size of the common fund obtained
26          in this case is not "merely a factor of the size of the class."  A
           megafund was created in this case despite the size of the classes,
27          not because of it.  And above-benchmark fees frequently are
           awarded where megafunds must be shared by hundreds of
28

> thousands, if not millions, of class members.  Here, there are
> approximately 53,748 class members.
>
> So while applying the so-called "increase-decrease" principle may
> be appropriate in certain cases, it is tenuous here, where the size of
> the fund is not merely a factor of the size of the classes but is
> instead directly related to the efforts of plaintiffs' counsel, who
> achieved exceptional, megafund results for a relatively discrete set
> of class members.

*In re NCAA*, 2017 WL 6040065, at \*6-7 (emphasis in original).

Here, as in *In re NCAA*, the judgment exists "***solely*** because of counsel's efforts and expenditures of expert fees and other expenses."  *Id*.  The judgment here is larger than the settlement in *In re NCAA*, with fewer class members, resulting in an even greater recovery per class member.

|  | *In re NCAA* (settlement) | *Perez v. Rash Curtis* (judgment) |
|---|---|---|
| Amount Recovered | $208,664,445 | $267,349,000 |
| Class Members | 53,748 | 40,420 |
| Recovery Per Class Member | $3,882.27 | $6,614.28 |

So Judge Wilken's rationale for rejecting the "increase-decrease principle" in *In re NCAA* applies here even more strongly.  Here too, "the size of the fund is not merely a factor of the size of the classes but is instead directly related to the efforts of plaintiffs' counsel, who achieved exceptional, megafund results for a relatively discrete set of class members."  *See id.* at \*6-7.

Even if the Court were to consider this judgment a megafund, there is no rule in the Ninth Circuit "requiring an automatic reduction in attorney fees."  *In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at \*12 (N.D. Cal. Dec. 19, 2016).  *See also Vizcaino*, 290 F.3d at 1047 (rejecting categorical "megafund" rule).  In *In re NCAA*, Judge Wilken analyzed the empirical rates of attorney's fees in megafund cases:

> As a court in this District recognized, "in most common fund
> cases, the award exceeds the [25%] benchmark."  And this Court
> has referred to "the many cases in this circuit that have granted fee
> awards of 30% or more."

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

9

1
2
3
4
5
6
7
8
9
10

… A study of attorneys' fees, known as the EMG Study, looked at awards in 458 class actions between 2009 and 2013, finding that 21% was the midpoint for fees where the recovery exceeded $100 million. The largest recoveries, over $100 million, had mean and median fee percentages ranging from 16.6% to 25.5%, depending on the year. Twenty-one percent is the mid-point of that range and below the average award of 22.3% for the highest recoveries (above $67.5 million). The report finds that "[o]n average, fees were 27% of gross recovery during the 2009-2013 period, which is higher than the average fee percentage of 23% that we reported in our analyses of the 1993-2008 period." And of the 53 settlements in this District, the mean and median awards were 26% and 25%, respectively, matching the mean and median percentages found more broadly in the 144 settlements surveyed in the Ninth Circuit. Further, of the 19 antitrust settlements between 2009 and 2013, with a mean recovery of $501.09 million and a median recovery of $37.3 million, the mean and median fee percentages were 27% and 30%.

11

*Id.*, at *2, (citations omitted).

12    In *Vizcaino*, 290 F.3d 1043, the Ninth Circuit attached an Appendix listing "Percentage-

13    Based Attorneys' Fee Awards in Common Fund Cases of $50-200 million." "[O]f the three

14    common funds of nearly equivalent size cited by the Ninth Circuit in [*Vizcaino*], ***all three cases***

15    ***awarded fees at or above the 25 percent benchmark*.**" *In re NCAA*, 2017 WL 6040065, at *5

16    (emphasis in original). In *In re Lithium Ion Batteries Antitrust Lit.*, 2019 WL 3856413, at *7 (N.D.

17    Cal. Aug. 16, 2019), this Court awarded 30 percent of a $113.45 million common fund as

18    attorney's fees. As Judge Wilken noted, "[f]ar lesser results (with 20% recovery of damages or

19    less) have justified upward departures from the 25% benchmark" in megafund cases. *In re NCAA*,

20    2017 WL 6040065, at *3. Here, Class Counsel obtained a judgment for 100% of the classwide

21    damages. There can be no stronger showing to support an upward departure from the 25%

22    benchmark.

23       **4.    The Contingent Nature Of The Fee And Financial Burden
              Borne By Class Counsel**

24       Class Counsel advanced $314,179.97 in out-of-pocket expenses to pay for experts, notice to

25    the class, and all other litigation expenses, with no guarantee of repayment. Class Counsel worked

26    on this case for more than three years with no payment, and no guarantee of payment absent a

27    successful outcome. And the work of Class Counsel is not yet done. Class Counsel anticipates

28

thousands of additional hours of work will be necessary to defeat any appeals, to navigate a likely bankruptcy filing, to obtain assignment of Defendant's rights under the insurance policy, and to pursue full recovery from Defendant's insurer, which rejected numerous offers to settle this action within the policy limits. *See supra* footnote 1.   Class Counsel will likely be required to continue advancing expenses, and to continue working on collection efforts and bad faith litigation against the insurer for years to come.

Taking on this litigation was a risky endeavor for Class Counsel.  And it remains fraught with risk now, even after the trial has been won, due to the likely appeals, bankruptcy filing, and anticipated litigation with Defendant's insurer.  Thus, like all of the other factors, the contingent nature of the fee and the financial burden borne by Class Counsel weigh heavily in favor of an upward departure from the 25% benchmark.

**B.    A Lodestar Cross-Check Is Not Required**

Courts in the Ninth Circuit sometimes look to a lodestar calculation as a cross-check on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050.  But the court is "not required to do so." *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ("Although not required to do so, the district court took an extra step, cross-checking this result by using the lodestar method.") (underlining added). *See also Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *11 (N.D. Cal. Sep. 20, 2016) (awarding $10.2 million in attorney's fees while "declin[ing] to conduct a lodestar cross-check"); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) (holding that no lodestar cross-check was required over the objections of class members and the New York attorney general, and approving a $11,250,000 fee (25% of fund) even though the relevant court dockets "show no litigation activity of substance other than the filing of the complaints").

In any event, there will be no windfall here because there is no settlement.  At this point there is a judgment, a likely bankruptcy, and a likely claim against the insurer for its bad faith refusal to settle this action within the policy limits. *See supra* footnote 1.  Regardless of the amount of the fee award, Class Counsel will receive no "windfall" because there is no money to

pay it.  Instead, Class Counsel will face thousands of hours of additional work to defeat any appeals, to navigate a likely bankruptcy filing, and to pursue full recovery from Defendant's insurer.  These endeavors remain uncertain and fraught with risk.

Class Counsel recognize that the Northern District has published Procedural Guidance For Class Action Settlements which suggest that a lodestar calculation should be included in the motion for preliminary approval of class settlements.  *See* https://www.cand.uscourts.gov/ ClassActionSettlementGuidance at ¶ 6.  That procedural guidance does not apply because there is no settlement and this is not a motion for preliminary approval.  This case was tried to verdict, judgment has been entered, and Class Counsel now seek an award of fees and costs pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2).

### III.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED

Under Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement.  "The prevailing view is that expenses are awarded in addition to the fee percentage."  *Krakauer*, 2018 WL 6305785, at *6 (awarding $481,317.73 in expenses on top of the 33.33% attorney's fees).  Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client.  *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

To date, Class Counsel has incurred out-of-pocket costs and expenses of $314,179.97.  An itemized listing of each of these expenses is attached as Exhibit A to the Declaration of Scott A. Bursor.  Each of these expenses was necessarily and reasonably incurred to bring this case through trial, and they reflect market rates for the various categories of expenses incurred.  Bursor Decl. ¶ 25.  These expenses amount to less than two-tenths of one percent of the judgment.

### IV.   THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE

In recognition of his efforts on behalf of the Class, Ignacio Perez seeks a service award of $50,000 for his time and effort serving as the Class Representative in this litigation.

1

2

3

4

5

6

7

8

9

10

11

        Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Class representative service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Service awards are appropriate when a class representative will not benefit beyond ordinary class members.  For example, where a class representative's claim makes up "only a tiny fraction of the common fund," a service award is justified. *See id.* at 299.[4]

12

13

14

15

16

17

18

19

20

21

22

23

        The requested amount of $50,000 for Mr. Perez is appropriate given the circumstances of this case.  Mr. Perez assisted Class Counsel with the initial investigation of this case and provided detailed information about the calls he had received from Defendant.  Perez Decl. ¶ 2.  For more than 3 years during the course of the litigation, Mr. Perez held regular in person and telephonic meetings with Class Counsel to receive updates on the progress of the case and to discuss strategy. *Id.* ¶ 3.  Mr. Perez sat for a lengthy deposition and testified live at trial. *Id.* ¶ 4.  He spent many hours conferring with counsel in preparation for both. *Id.*  He also travelled from Sacramento to Oakland multiple times to appear at trial. *Id.*  Moreover, Mr. Perez will be required to continue to work with Class Counsel to pursue collection efforts through the likely bankruptcy and insurance litigation. *Id.* ¶ 6; *see also* Bursor Decl. ¶ 26.

24

25

26

27

28

---

[4] Service awards are most often sought in the context of class action settlements.  But service awards have been made on litigated class judgments as well. *See, e.g.*, *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7 (C.D. Cal. Sep. 28, 2018) (awarding $10,000 service award after plaintiff and class prevailed on the merits at summary judgment); *Kifafi v. Hilton Hotels Retirement Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (awarding $50,000 service award in ERISA class action after plaintiff prevailed on the merits at summary judgment); *Weil v. Metal Techs. Inc.*, 2018 WL 2971030, at *5 (S.D. Ind. June 13, 2018) (awarding service award after plaintiff and the class won a bench trial), *vacated and remanded on other grounds by Weil v. Metal Techs. Inc.*, 925 F. 3d 352 (7th Cir. 2019).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES, AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE
CASE NO. 4:16-cv-03396-YGR

13

1

2

Accordingly, a class representative service award of $50,000 for Mr. Perez is fair and reasonable.  *Pan v. Qualcomm, Inc.*, 2017 WL 3252212, at *14 (S.D. Cal. July 31, 2017) (awarding $50,000 service award); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (authorizing $80,000 and $120,000 service awards, in addition to $20,000 award to each for prior settlement); *Van Vranken*, 901 F. Supp. at 300 (awarding $50,000 service award).  *See also Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *24 (S.D.N.Y. Nov. 30, 2010) (citing seven cases where courts approved service awards between $50,000 and $300,000).

## V.  CONCLUSION

Class Counsel advanced $314,179.97 in out-of-pocket costs and expenses, and have worked on this case without payment for more than three years.  Those efforts produced a judgment awarding Class Members more than $267 million.  This is more than three times the amount of the largest TCPA settlement ever made.  It was the best possible outcome, representing 100% of the damages sought by Class Members, amounting to $6,614 per Class Member.  For this result, Class Counsel seek the same percentage fee that Judge Eagleton awarded on the TCPA class action judgment in *Krakauer*, 2018 WL 6305785, at *4–5 (awarding 33.33% of the judgment), and which this Court awarded in the context of a TCPA class settlement in *West v. Cal. Service Bureau, Inc.*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) (awarding 33.33% of the common fund settlement).

Class Counsel recognize that the benchmark for percentage fee awards in the Ninth Circuit is 25%, but upward departures from that benchmark are commonplace.  *See In re NCAA*, 2017 WL 6040065 at *2 ("[I]n most common fund cases, the award exceeds the [25%] benchmark.  And this Court has referred to 'the many cases in this circuit that have granted fee awards of 30% or more.'").  As discussed above, every factor weighs heavily in favor of such an upward departure in this case.

For the foregoing reasons, Plaintiff and Class Counsel Plaintiff respectfully request an Order:

(1) Awarding Class Counsel attorney's fees of one-third (33.33%) of the judgment, totaling $89,116,333.33;

(2) Awarding Class Counsel reimbursement for reasonable litigation costs and expenses, in the amount of $314,179.97;

(3) Awarding Mr. Perez a class representative service award of $50,000.


Dated:   September 23, 2019                     Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:  ___/s/ Scott A. Bursor_____
                                                          Scott A. Bursor

                                                Scott A. Bursor (SBN 276006)
                                                2665 S. Bayshore Dr., Suite 220
                                                Miami, FL 33133
                                                Telephone: (305) 330-5512
                                                Facsimile:  (305) 676-9006
                                                E-Mail:  scott@bursor.com

                                                **BURSOR & FISHER, P.A.**
                                                L. Timothy Fisher (SBN 191626)
                                                Yeremey O. Krivoshey (SBN 295032)
                                                Blair E. Reed (SBN 316791)
                                                1990 North California Blvd., Suite 940
                                                Walnut Creek, CA 94596
                                                Telephone: (925) 300-4455
                                                Facsimile: (925) 407-2700
                                                E-Mail:  ltfisher@bursor.com
                                                          ykrivoshey@bursor.com
                                                          breed@bursor.com

                                                *Class Counsel*