UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.  4:16-cv-03396-YGR

**ORDER: (1) GRANTING IN PART, DENYING IN PART MOTION TO ALTER JUDGMENT OR AMEND THE JUDGMENT IN FAVOR OF DEFENDANT; (2) DENYING MOTION TO REDUCE, RECONSIDER, AMEND, OR VACATE THE JUDGMENT'S UNCONSTITUTIONALLY EXCESSIVE DAMAGES; (3) DENYING MOTION TO VACATE THE JUDGMENT AND FOR TERMINATING SANCTIONS BASED UPON MISCONDUCT OF COUNSEL, OR, IN THE ALTERNATIVE, FOR NEW TRIAL, OR FURTHER RELIEF AS DETERMINED BY THE COURT; (4) GRANTING IN PART AND DENYING IN PART MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE**

Re: Dkt. Nos. 371, 374, 379, 414

**IGNACIO PEREZ,**

Plaintiff,

v.

**RASH CURTIS & ASSOCIATES,**

Defendant.

The context of this action is well-known.  Plaintiff Ignacio Perez brings this putative class action against defendant Rash Curtis & Associates ("Rash Curtis") alleging that defendant called plaintiff and class members without consent, in violation of several laws.  This case arises from Rash Curtis' alleged violations of the (i) Telephone Consumer Protection Act, 47 U.S.C. sections 227, *et seq.* (the "TCPA"); (ii) Fair Debt Collection Practices Act, 15 U.S.C. sections 1692, *et seq.* (the "FDCPA"); and (iii) the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code sections 1788, *et seq.*, (the "Rosenthal Act").  On September 6, 2017, this Court certified the four classes with Perez as the class representative, both for injunctive relief pursuant to Rule 23(b)(2) and damages pursuant to Rule 23(b)(3).  Following a one-week trial, a jury found in favor of Perez and the class, and against defendant Rash Curtis, awarding over $267 million.  At the close of trial, the Court encouraged the parties to attempt to settle the matter given the prospect of significant post-trial work, including appeals.  Despite the size of the award, plaintiffs maintained

United States District Court
Northern District of California

a request for treble damages requiring additional judicial findings regarding willfulness. Ultimately, plaintiffs withdrew the request.   Thereafter, the parties filed several post-judgment motions.

For its part, defendant Rash Curtis brings three motions, namely a motion: (1) to alter judgment or amend the judgment in favor of defendant (the "motion to alter or amend") (Dkt. No. 374); (2) to reduce, reconsider, amend, or vacate the judgment's unconstitutionally excessive damages (the "motion to reconsider") (Dkt. No. 379); and (3) to vacate the judgment and for terminating sanctions based upon misconduct of counsel, or, in the alternative, for new trial, or further relief as determined by the Court (the "motion to vacate").  (Dkt. No. 414.)  Plaintiff Perez brings a motion for an award of attorneys' fee, costs, and expenses and service award for Perez (the "motion for attorneys' fees").  (Dkt. No. 371.)

Having carefully reviewed the record, the papers submitted on each motion, the parties' oral arguments at the hearings held on November 18, 2019, and February 26, 2020, and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) the motion to alter or amend is **GRANTED IN PART** and **DENIED IN PART**; (2) the motion to reconsider is **DENIED**; (3) the motion to vacate is **DENIED**; and (4) the motion for attorneys' fees is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

As the facts of the case are well-known, only the background relevant to the instant motions are summarized as follows.  Thus:

On May 13, 2019, a jury verdict was entered that each member of the classes shall recover from defendant the amount of $500 per call made in violation of the TCPA, for an aggregate award in favor of the classes of $267,349,000.00.  (Dkt. No. 347.)  While the sum is large, the math was not, namely $500 for each of the calls identified in the evidence presented to the jury.

In response to the Court's order from the bench on May 13, 2019, the parties filed proposed final judgments on May 15, 2019.  (Dkt. Nos. 353, 359.)  Perez proposed a form of final judgment on the issues decided by the jury, and did not include any then outstanding or remaining issues to be decided.  (Dkt. No. 359 at 1-3.)  Rash Curtis submitted a letter brief stating that "any

United States District Court
Northern District of California

2

judgment that could be entered at this point in time would only be partial, not disposing of all claims, and thus not final."  (Dkt. No. 353-1 at 1.)  As of that date, Perez still maintained that the purported violations were willful and knowing within the meaning of 47 U.S.C. § 227(b)(3)(C), and Rash Curtis argued that the statutory damage amount as applied here was unconstitutional. (*Id.*)  Thus, Rash Curtis requested that "final judgment be held in abeyance while the parties negotiate settlement before Magistrate Hixson."  (*Id.* at 2.)

On September 9, 2019, Perez withdrew the claim that defendant violated the TCPA "willfully or knowingly[,]" and requested that the Court enter "final judgment in the form that [was] previously submitted, Doc. 359."  (Dkt.No. 369 at 1.)  That same day, the Court entered Perez's previously submitted proposed final judgment as the final judgment in the case.  (Dkt. No. 370.)

On September 23, 2019, Perez filed the motion for attorneys' fees. (Dkt. No. 371.)  On October 7, 2019, Rash Curtis filed the motion to alter or amend, and the motion to reconsider. (Dkt. Nos. 374, 379.)  After receiving a letter brief from plaintiff on October 15, 2019, (Dkt. No. 383) the Court stayed briefing on all then-pending motions, and indicated that the briefing schedule would be reset at the subsequent status conference to be set the week of October 21, 2019.  (Dkt. No. 384.)  The Court reset the briefing for these motions, and heard these motions, including a motion for approval of plaintiffs' proposed notice to class members, on November 17, 2019.  (Dkt. No. 402.)  At the hearing, the Court granted Perez's motion for approval of plaintiffs' proposed notice to class members.  (*Id.*)

On January 21, 2020, Rash Curtis filed the motion to vacate which the Court heard on February 26, 2020.  (Dkt. No. 414, 422.)

## II.   ANALYSIS

### A.   Motions to Alter Judgment or Amend the Judgment Under Fed. R. Civ. P. 59 and 60 (Dkt. No. 374)

Under Rule 59(e), "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  A motion to amend a judgment under Rule 59(e) is appropriate if "(1) the motion is necessary to correct manifest errors of law or fact

upon which the judgment is based; (2) the moving party presents newly discovered or previously

unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an

intervening change in controlling law." *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d

1058, 1063 (9th Cir. 2003) (internal quotation marks omitted).

Under Rule 60(b), "a court may relieve a party or its legal representative from a final

judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or

excusable neglect; (2) newly discovered evidence that, within reasonable diligence, could not have

been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously

called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the

judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an

earlier judgment that has been reversed or vacated; or applying it prospectively is no longer

equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The parties' briefing identifies four issues, namely whether: (1) Rash Curtis meets the

standards for altering or amending the final judgment; (2) the judgment should be amended to

reflect that Rash Curtis prevailed on the TCPA claim for willful and/or knowing violations and on

the request for injunctive relief; (3) the judgment should be amended to reflect the claims on

which Rash Curtis prevailed at the summary judgment stage; and (4) the judgment should be

amended to state that any residue of the class damages award which are not claimed by a member

of the class is released back to defendant.  The Court addresses each in turn below.

### 1.    Whether the Appropriate Standards Are Met

Rash Curtis avers that the judgment should be amended under Federal Rules of Civil

Procedure 50, 52, 59, and 60.  Quoting *Miller v. Transam Press, Inc.*, 709 F.2d 524, 527 (9th Cir.

1983), Rash Curtis contends that "identifying the applicable Rule is not essential: a post-judgment

motion's 'nomenclature is not controlling.'"  (Dkt. 374 at 7.)  *Miller* further provides that "[t]he

court will construe it, however styled, to be the type proper for the relief requested."  709 F.2d at

527.  *See also Gonzales v. City of Antioch*, No. 14-cv-04728-KAW, 2015 WL 8293834, at *1

(N.D. Cal. Dec. 15, 2015) ("The moving party's designation of any such motion [by which to

obtain post-judgment relief] is not controlling.").  Perez disputes that any of the standards to

1  amend have been satisfied under Rules 50, 52, 59, and 60.

2       Perez's arguments do not fully persuade.  The Court agrees that Rash Curtis does not meet

3  the standards under Rules 50 or 52.  First, Rule 50(a)(2) permits a party to move for judgment as a

4  matter of law "at any time before the case is submitted to a jury," and Rule 50(b) permits a party

5  whose motion for judgment as a matter of law was denied to "file a renewed motion" after the

6  judgment.  Fed. R. Civ. P. 50.  Here, Rash Curtis did not make a motion under Rule 50 before the

7  case was submitted to the jury, so this rule is inapplicable.

8       Second, Rule 52 applies "[i]n an action tried on the facts without a jury or with an advisory

9  jury."  Fed. R. Civ. P. 52(a)(1).  Here, there was a jury trial, and this rule is not otherwise

10  applicable.

11       However, the Court finds that Rash Curtis is appropriately advancing arguments under

12  Rules 59 and 60.   Rash Curtis argues that the Court erred in entering the form of judgment

13  proposed by plaintiff and class counsel in May 2019.  (*See* Dkt. No. 379 at 2 ("Court's final

14  judgment . . . fails to enter judgment in favor of Rash Curtis . . . ."), 3 ("Court's final judgment . . .

15  fails to address . . . injunctive relief . . . ."), 6 (substantively same); Dkt. No. 396 at 5 ("[T]he relief

16  requested is proper under the Federal Rules; justice and a far and accurate record of the

17  adjudications requires a correct, completed final judgment."); 9 ("Rash Curtis did <u>not</u> consent, was

18  <u>not</u> given "notice," and had <u>no</u> opportunity to respond to Plaintiff's September 9, 2019 letter

19  before the Court entered a purported 'final' judgment later that same day." (emphasis original)).)

20  In other words, Rash Curtis is arguing either that the "motion is necessary to correct manifest

21  errors of law or fact," "the motion is necessary to prevent manifest injustice," and to correct

22  mistakes resulting from using plaintiff's proposed form of judgment.  As discussed at the

23  November 18, 2019 hearing, the Court admits that it erred in accepting the proposed final

24  judgment form from Perez, without awaiting or permitting any response from Rash Curtis, despite

25  the Court's routine practice to the contrary.  (Dkt. No. 406 at 5.)  The Court's admission, coupled

26  with Rash Curtis' arguments, plainly satisfies the standards required by Rules 59 and 60.  Thus,

27  the Court finds that this motion is appropriately brought under Rules 59 and 60.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2. Amendments Regarding Claims for Willful and/or Knowing Violations and Injunctive Relief

Rash Curtis requests to amend the final judgment to reflect that Perez withdrew his claim that Rash Curtis willfully and knowingly violated the TCPA, and withdrew his request for injunctive relief.   Citing to Federal Rule of Civil Procedure 41(b), Rash Curtis asserts that Perez's withdrawal of the willful and knowing claim and of the request for injunctive relief "operates as an adjudication on the merits."   Rash Curtis further avers that Perez did not put forth any affirmative evidence at trial that he or the class was entitled to injunctive relief, that Rash Curtis' evidence at trial demonstrated that it stopped using the same dialing platform, and that the last call to the named plaintiff was the call where Perez asked defendant to stop calling.

Perez opposes these requests.  Citing *Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 689 (9th Cir. 2005), Perez contends that a plaintiff's withdrawal of a claim is treated as a motion to amend the complaint to remove that claim.  Perez further concedes that he abandoned the request for injunctive relief prior to trial, (Dkt. No. 395 at 7) but avers that the Court should not make a merits determination on the issue of the injunctive relief, as it was not the subject of trial, and there was no verdict concerning the new dialer used by Rash Curtis.

Perez's argument as to the willful and knowing claim do not persuade.  As indicated on the record, the Court's acceptance of Perez's proposed form of judgment was in error, and in no way reflected the Court's granting of Perez's withdrawal of his willful and knowing claim through amendment of the operative complaint.   Indeed, the Court never made a "good cause" determination, one way or the other, to amend the pleadings pretrial.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment."); *Neidermeyer v. Caldwell*, 718 F. App'x 485, 488 (9th Cir. 2017) ("Moreover, when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the good cause standard of Federal Rule of Civil Procedure 16(b)(4), which provides that  a schedule may modified only for good cause and with the judge's consent, rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." (internal quotation marks omitted)). Having not made such a ruling, the Court declines to do so here.   Thus, the Court dismisses with

United States District Court
Northern District of California

1    prejudice Count I for the willful and knowing violation of the TCPA.

2         Regarding the withdrawal of the request for injunctive relief, Rash Curtis' arguments do

3    not persuade.  Here, the request for injunctive relief was not a separate claim in the operative

4    complaint, but one of several remedies requested by plaintiff and the class based on the four

5    claims.  (*See* Dkt. No. 1 at 17.)  Rash Curtis cites no authority demonstrating the appropriateness

6    of amending the judgment to include the disposition of such a remedy.

7         Accordingly, the Court: (1) **GRANTS** Rash Curtis' request to amend the judgment to reflect

8    the dismissal with prejudice of Count I, the willful and/or knowing violations of the TCPA claim;[1]

9    and (2) **DENIES** Rash Curtis' request to amend the final judgment with regard to Perez's request

10   for injunctive relief.  Thus, the final judgment shall be amended to reflect that Count I, the

11   knowing and/or willful violation of the TCPA claim is **DISMISSED WITH PREJUDICE**.

12             **3.    Amendment Regarding Claims at the Summary Judgment Stage**

13        Rash Curtis requests to amend the final judgment to reflect that it succeeded at summary

14   judgment on the claims brought under 15 U.S.C. § 1692 *et. seq.* and Cal. Civ. Code. §§ 1788.11(d)

15   and (e).   Rash Curtis highlights that the form final judgment submitted by Perez only related to

16   the jury verdict, and did not include past holdings in this case, including from the order granting

17   partial summary judgment in Rash Curtis' favor.

18        Perez opposes Rash Curtis' request to amend the judgment to reflect Rash Curtis' success

19   at summary judgment.  Perez avers that there is no need to alter or amend the judgment to include

20   defendant's victory on those claims for partial summary judgment because "[o]rders granting

21   partial summary judgment are interlocutory orders that merge into the final judgment."  (Dkt. 395

22   at 8-9 (citing *Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 897 (9th Cir.

23   2001) ("[I]nterlocutory orders . . . merge into that final judgment."); *Worldwide Church of God v.*

24   *Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) (noting that prior

25

26        ───────────────────
          [1]  To the extent that Rash Curtis is requesting to amend the judgment to reflect an
27   adjudication on the merits beyond a dismissal with prejudice, the Court **DENIES** that request.  Rash
     Curtis cites to no authority providing that anything beyond a dismissal with prejudice is warranted
28   in this instance.

1  interlocutory orders are "merged into the final judgment").)

2      Perez's arguments do not persuade.  First, Perez's cited authority is inapposite, where such

3  authority concerns the appealability of issues raised in the district court.  Second, Perez does not

4  articulate any specific harm or compelling reason against permitting the amendment, especially

5  where it would accurately reflect the disposition of issues and claims decided earlier in the case.

6      Accordingly, the Court **GRANTS** Rash Curtis' request: the final judgment shall be amended

7  to reflect that Rash Curtis succeeded at summary judgment on the claims brought under 15 U.S.C.

8  § 1692 *et. seq.* and Cal. Civ. Code §§ 1788.11(d) and (e).

9          **4.      Amendment Regarding Residual Clause**

10     Rash Curtis requests to amend the final judgment to state that "any residue of the class

11 damages award which is not distributed to a member of the classes releases back to Defendant

12 Rash Curtis."  In support, Rash Curtis cites to *Holtzman v. Turza*, 828 F.3d 606, 608 (7th Cir.

13 2016), an opinion where the Seventh Circuit held that TCPA lawsuits do not create a common-

14 fund, and, ultimately, affirmed the district court decision that the surplus or residue returns to the

15 defendant.  *Id.* at 609 ("The district judge's decision that any surplus goes back to Turza cannot be

16 called either a legal blunder or an abuse of discretion.").   Because of the significance of

17 *Holtzman*, the Court requested that Perez address the issue of reversion in TCPA cases, and the

18 *Holtzman* decision specifically, in his reply in support of his motion for attorneys' fees.  (*See* Dkt.

19 Nos. 405, 409, 411.)

20     Having reviewed the parties' briefing, Rash Curtis' arguments do not persuade given the

21 binding precedent of Ninth Circuit authority.  First, Ninth Circuit authority indicates that common

22 funds are created under similar statutory regimes that provide discrete monetary penalties per

23 violation.  *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

24 1990) (holding the "district court did not abuse its discretion by calculating attorneys' fees as a

25 percentage of the total fund" in a similar statutory regime where discrete violations totaled either

26 $250 or $500).  *Holtzman* and its progeny do not control.

27     Second, district courts in this circuit uniformly treat TCPA class settlements as creating

28 common funds.  *See, e.g., Pimental v. Google Inc.*, Case No. 4:11-cv-02585-YGR, 2013 WL

8

United States District Court
Northern District of California

1   12177158, at *3 (N.D. Cal. June 26, 2013) (awarding attorney's fees of 25% of the "common

2   fund" in TCPA class settlement); Settlement Approval Order and Final Judgment, *West v. Cal.*

3   *Serv. Bureau, Inc*., Case No. 4:16-cv-03124-YGR, Dkt. No. 128 (N.D. Cal. Jan. 23, 2019)

4   (awarding attorney's fees of 33.33% of the common fund in TCPA class settlement).  Further,

5   courts within the Ninth Circuit treat TCPA class settlements as common funds even where the

6   settlements are claims-made (*i.e.* provide for reversion back to defendant of unused funds) or

7   provide for *cy pres*.  *See, e.g., Dakota Med., Inc. v. RehabCare Grp., Inc*., No. 1:14-cv-02081-

8   DAD-BAM, 2017 WL 4180497, at *7-8, 14 (E.D. Cal. Sept. 21, 2017) (awarding 33.33% as

9   attorney's fees in TCPA class settlement, while noting that it was not known whether there would

10  be undistributed funds or the need for *cy pres* until after distribution); *Hageman v. AT&T Mobility*

11  *LLC*, Case No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *3-4 (D. Mont. Feb. 11, 2015)

12  (awarding $15 million in attorney's fees in TCPA class settlement "under the common fund" rule,

13  while noting that approximately $5 million of the fund will be distributed *cy pres*); *Vandervort v.*

14  *Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33.33% as attorney's

15  fees in a TCPA claims-made settlement).

16      Third, in the Ninth Circuit, it is an abuse of discretion to base attorney's fees "on the class

17  members' claims against the fund rather than on a percentage of the entire fund or on the

18  lodestar." *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997);

19  *Young v. Polo Retail, LLC*, No. C-02-04546 VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28,

20  2007) ("The fact that the class will recover about half of the total settlement gives the court pause.

21  The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee

22  award, drawing on an expansive reading of [*Boeing*].") (citing *Williams*, 129 F.3d at 1026).  *See*

23  *also Six Mexican Workers*, 904 F.2d at 1311 ("The Supreme Court has stated that attorneys' fees

24  sought under a common fund theory should be assessed against every class members' share, not

25  just the claiming members." (citing, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980))).

26      Accordingly, the Court **DENIES** Rash Curtis' request to amend the final judgment to

27  include a residue statement which would contradict the common fund created in this TCPA action.

28  Thus, in light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Rash Curtis'

motion to amend or alter.

**B.     Motion to Reduce, Reconsider, Amend, or Vacate the Judgment's Unconstitutionally Excessive Damages (Dkt. No. 379)**

Rash Curtis' motion to overturn or reduce the damages verdict raises three issues, namely whether: (1) the "law of the case" bars Rash Curtis from raising arguments about the unconstitutionality of the TCPA as applied here; (2) the award is statutorily excessive; and (3) the award is unconstitutionally excessive.  The Court addresses each in turn below.

**1.     Whether "Law of the Case" Bars Rash Curtis' Arguments**

Perez contends that Rash Curtis' arguments as to the constitutionality of the award are barred by "law of the case."  Rash Curtis disagrees.

By way of background, in general, the "law of the case" doctrine has more applicability and force when an earlier decision is decided by the appellate court.  *See Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993))).  *See also id.* ("[T]he impact of the doctrine will vary, depending upon judicial perspective: 'The legal effect of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court.  All rulings of a trial court are subject to revision at any time before the entry of judgment.  A trial court may *not*, however, reconsider a question decided by an appellate court.'" (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (emphasis original)).  The doctrine commonly "arises in the context of a single court adhering to its own rulings," and in "such a situation, the doctrine does not constitute a limitation on the court's power."  *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949 (C.D. Cal. 1996) (internal quotation marks omitted).  "Because a court has the inherent power to alter its own prior rulings, the doctrine is merely an expression of good sense and wise judicial practice."  *Id.* (internal quotation marks omitted).

Here, for the first time, Rash Curtis is bringing an *as applied* challenge to the damages award.  Previously, Rash Curtis brought several *facial* attacks as to the general constitutionality of

the statute and the then-potential damages award.  (*See* Dkt. No. 81 at 13, 14 n.13 (Order Granting Plaintiffs' Motion for Class Certification, discussing defendant's arguments regarding the facial constitutionality of damages under statute); Dkt. No. 344 at 3-4, 6 (defendant's trial brief, raising facial constitutional arguments).)  While there is some overlap as to these arguments, the Court cannot conclude that Rash Curtis has already raised an as applied challenge such that it is now barred by the "law of the case" doctrine.

Moreover, Rash Curtis' as applied challenge is appropriate for consideration at this point with the motion to reconsider given that damages could not have been fixed prior to the jury verdict or entry of judgment.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) (holding that it is "not appropriate to evaluate the excessiveness of the award" prior to knowing the amount of damages or who will ultimately claim the benefit of any damages); *j2 Global Comm., Inc. v. Protus IPSol*, No. CV 06-00566 DDP (AJWx), 2008 WL 11335051, at *9 (C.D. Cal. Jan. 14, 2008) ("The Court finds that the question of excessive damages [under the TCPA] will be ripe for adjudication after issuance of a verdict . . . . A due process challenge to excessive damages may be raised post-trial." (internal citations omitted)).

Accordingly, the Court concludes that Rash Curtis' arguments as to the constitutionality of the award are not barred by the "law of the case" doctrine.

### 2.    Statutory Excessiveness of the Award

Rash Curtis avers that the class award in this action – approximately $267 million – is statutorily excessive.  Rash Curtis requests that the Court therefore decrease the award.

The TCPA unambiguously provides: "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . (B) an action to recover for actual monetary loss from such a violation or to receive $500 in damages for each such violation, *whichever is greater* . . . ."  47 U.S.C. § 227(b)(3)(B) (emphasis supplied).  The phrase unambiguously provides for an award of actual monetary loss *or,* as a baseline, $500 for each violation, i.e. "whichever is greater."

Rash Curtis requests that the Court follow *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 (W.D. Tex. 2001), in construing the above language to mean that the award provides "up

United States District Court
Northern District of California

to" $500 in award, and not necessarily $500 for each violation.  Instead of relying on the express statutory language, Rash Curtis requests that the Court employ tools of statutory construction to ignore the plain words of the statute, and instead interpret the phrase as being a cap on damages, instead of a requirement that they be no less than $500.

Rash Curtis' arguments do not persuade.  First, the statutory language of the TCPA is unambiguous.  Nothing in the language suggests that the damage amount was meant to be read as "up to" $500 as Rash Curtis or *Blastfax* suggests.

Second, no district court in this circuit or the Ninth Circuit approvingly cite to *Blastfax*. *See Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS (MDD), 2011 WL 6300050, at *6, n.2 (S.D. Cal. Dec. 15, 2011) (preliminary approving class action settlement, but declining to address arguments citing to *Blastfax* "whether the TCPA should be interpreted to require $500 per violation or 'up to' $500 per violation").  Indeed, courts in this district are clear that the TCPA statute means what is means—that each violation is $500.  *See, e.g.*, *Drew v. Lexington*, No. 16-cv-00200-LB, 2016 WL 9185292, at *11 (N.D. Cal. Aug. 11, 2016) ("The TCPA provides for a statutory minimum of $500 per violation."); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, C-13-00229 JCS, 2013 WL 6571629, at *16 (N.D. Cal. Aug. 19, 2013) ("[The TCPA] sets a floor for statutory damages of $500 per violation.").

Third, other authority relied upon by Rash Curtis in the motion to reconsider rejects *Blastfax*'s statutory interpretation.  *See Golan v. Veritas Entm't, LLC*, 4:14CV00069 ERW, 2017 WL 3923162, at *2 (E.D. Mo. Sept. 7, 2017) ("*Golan I*") ("The Court will not apply the reasoning of *American Blastfax* to this case. The TCPA statute clearly states the damages are $500 per violation for violations using automated telephone equipment.") *aff'd*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962 (8th Cir. 2019) ("*Golan II*") ("[W]e agree with the Golans that nothing in the relevant provisions itself – which provides for recovery of 'actual monetary loss' or '$500 in damages' per violation, whichever is greater – allows for a reduction of statutory damages . . . . As they correctly argue, '$500 means $500.'"); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 951 (C.D. Ill. 2017) ("*Dish Network I*") ("Dish argues that the Court should interpret the TCPA to allow an award 'up to' $500 per violation . . . . At least one district court has accepted

this argument . . . . This Court respectfully disagrees . . . . The Court must honor this language.").

Accordingly, the Court **DENIES** the motion to reconsider on the ground that the award is statutorily excessive.

### 3.    Unconstitutional Excessiveness of the Award

Rash Curtis avers that the class' approximately $267 million award is unconstitutionally excessive. Specifically, Rash Curtis contends that the amount is so grossly excessive as to its conduct and to its ability to pay that it violates due process, and that the Court should therefore reduce the per violation amount to a lesser amount.

Rash Curtis' arguments do not persuade. Rash Curtis does not identify any – and the Court can find none – Ninth Circuit authority on how a district court should reduce damages that are found to be unconstitutionally excessive. In a prior case, the Ninth Circuit recognized that "[a] statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919)). However, the Ninth Circuit reserved judgment on whether a "district court may be entitled to reduce the award if it is unconstitutionally excessive." *Bateman*, 623 F.3d at 723 (non-TCPA case). No further authority – from the Ninth Circuit or reasoning from district courts in this circuit – have since been promulgated.

Rash Curtis' out of circuit authority – showing instances where an imposed statutory damage amount is lowered – are factually inapposite and do not persuade. *See Golan I*, 2017 WL 3923162, at *2-4 (reducing damages from $1.6 billion to $32 million to reflect "the severity of the offense, a six-day telemarketing campaign which placed 3.2 million telephone calls"); *Golan II*, 930 F.3d at 962-63 (Eighth Circuit affirming, and further noting that defendant "plausibly believed it was not violating the TCPA" as it "had prior consent to call the recipients" with regards to certain issues); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 466 (D. Md. 2012) (reducing TCPA award from over a hundred million dollars to just over $10 million at plaintiff's request, but court further reducing award to $1 million, and noting that it did so without ruling or

13

United States District Court
Northern District of California

1   "suggesting that a $10 million award would necessarily be unconstitutional"); *Dish Network I*, 256

2   F. Supp. 3d at 952, 982-83 (holding that $8.1 billion dollar award is excessive and violates due

3   process, and that a statutory damages of $280,000,000, representing approximately 20% of after-

4   tax profits for 2016, is appropriate and constitutionally proportionate, reasonable and consistent

5   with due process).

6        Rash Curtis argues that using these cases as benchmark, the Court should impose $1 per

7   violation instead of $500 per violation.  (*See* Dkt. No. 397 at 15-16 ("Rash Curtis submits the

8   Court should reduce the damages more than the district courts in *Dish Network* ($17 per violation)

9   or *Golan* ($10 per violation) or *Universal Elections* ($9 per total call).  Defendant recognizes that

10   the reduction in *Blastfax* (to 7 cents per violation) may have been on the far end of the spectrum of

11   reductions.  Defendant therefore proposes a middle-ground approach in which this Court would

12   impose $1 in damages for each proven violation, for an aggregate award of $534,698.").)

13        Rash Curtis' authority and its request do not persuade.  First, except for *Dish Network I*,

14   which considered the net profits of one year in its reduction of the damages amount, none of these

15   cases contain any methodology for how a district court is to reduce an alleged unconstitutionally

16   excessive damages amount.  Instead, each case above arbitrarily reduced the damages amount to a

17   lower number without any well-reasoned analysis.  The Court therefore declines to follow this

18   approach.[2]

19        Second, the after-tax profit methodology utilized in *Dish Network I* – the only case

20   providing *any* methodology – has since been recently reversed by the Seventh Circuit in *United*

21   *States v. Dish Network, L.L.C.,* --- F.3d ---, 2020 WL 1471844 (7th Cir. Mar. 26, 2020) ("*Dish*

22   *Network II*").  In *Dish Network II*, the Seventh Circuit instructed on remand that the district court

23   in determining a constitutional range of damages "is to start from harm rather than wealth, then

24   _____

25       [2]  The Court further highlights the arbitrary nature of Rash Curtis' request: based on the
record, the judgment per-class member is roughly $6,614, which suggests that each class member
26   is receiving approximately 13-times the statutory damage amount of $500 per violation under the
TCPA.  Based on Rash Curtis' request that each violation be reduced to $1, each class member's
27   recovery would go from $6,614 to approximately $13.  The Court sees no basis – absent clear and
guiding methodology for which there is none – for reducing the statutory damages award more
28   than 99%.

United States District Court
Northern District of California

1    add an appropriate multiplier, after the fashion of the antitrust laws (treble damages) or admiralty

2    (double damages), to reflect the fact that many violations are not caught and penalized." *Id.* at *8.

3    *See also id*. at *7-8 ("The Telephone Consumer Protection Act does not include a provision that a

4    court should consider a violator's ability to pay . . . . Normally the legal system bases civil

5    damages and penalties on harm done, not on the depth of the wrongdoer's pocket.")  However,

6    even if the Court were to follow *Dish Network II*, non-binding precedent on the Court, Rash Curtis

7    makes no showing – only an arbitrary request to base each violation on $1 – as to the actual harm

8    suffered by plaintiff and the class to be used in lieu of the TCPA statutory amount of $500.  The

9    Court therefore declines to follow *Dish Network II*.[3]

10         The Court rejects these benchmarks and the above authority for three additional reasons.

11    First, to the extent that Rash Curtis argues that Congress lacked a rational basis in enacting the

12    TCPA, *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036 (9th Cir. 2012) would suggest

13    otherwise.  In *Meyer,* the Ninth Circuit analyzed an "as-applied due process challenge to the

14    TCPA." *Id.* at 1045.  The Ninth Circuit noted that the property interested identified is its "interest

15    in conducting a debt collection business—an economic interest," and that "[w]here a fundamental

16    right is not implicated . . . government action need only have a rational basis to be upheld against a

17    substantive due process attack.  If a statute is not arbitrary, but implements a means of achieving a

18    legitimate governmental end, it satisfies due process." *Id.* (internal quotation marks omitted).

19    "Here, Congress had several goals when it passed the TCPA, including prohibiting the use of

20    automatic telephone dialing systems to communicate with others by telephone in a manner that

21    invades privacy." *Id.*  Therefore, "[p]rohibiting the use of automatic dialers to call cellular

22    telephones without express prior consent is a rational means of achieving this objective." *Id.*

23    Thus, the *Meyer* decision would suggest that the Court is bound by the Ninth Circuit's conclusion

24    that Congress had a valid and rationale reason in enacting the TCPA including its statutorily

25

26         [3] Moreover, even if the Court were to undertake a similar after-tax profit methodology as
articulated in *Dish Network I*, there is nothing in the record that would permit the Court in

27    reaching an answer. Unlike in *Dish Network I*, Rash Curtis did not offer any evidence as to its
after-tax profits during the time period of the violations.  Thus, the Court cannot and does not

28    follow this now reversed methodology.

United States District Court
Northern District of California

imposed damages to deter communications invading privacy.

Second, other courts that have considered whether a specific TCPA class award is unconstitutionally excessive have rejected such arguments. *See Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) (holding that argument regarding potential damages from TCPA class action resulting in "crippling numbers" is a "nonstarter" because of the purpose of the statute in combatting unsolicited transmissions, that the "statute accomplishes that purpose by making the practice prohibitively expensive, which is acceptable means of accomplishing the statute's goal of deterrence," and "the Due Process clause of the Fifth Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations"); *Italia Foods, Inc. v. Marinov Enterprises*, 07 C 2494, 2007 WL 4117626, at *4 (N.D. Ill. Nov. 16, 2007) (holding that TCPA statutory damages do not constitute excessive fines or violate due process). *See also Dish Network II*, 2020 WL 1471844, at *7 (noting that the aggregate total damages award, including from TCPA statute, is "a huge number, but it is not possible to evaluate it separately from the penalty per violation, which is a normal number for an intentional wrong").

Third, on a total absolute numerical amount, the TCPA award in this matter is not the highest imposed by a district court in this circuit last year, suggesting that the amount here is not unconstitutionally excessive. *See Wakefield v. ViSalus, Inc.*, 3:15-cv-01857-SI, 2019 WL 2578082, at *1 (D. Ore. June 24, 2019) ("After three days of trial, the jury returned a verdict finding that Defendant placed four violative calls to Plaintiff Lori Wakefield and 1,850,436 violative calls to the other class members. The statutory minimum damages under the TCPA is $500 per call. Therefore, the minimum statutory damages award totals $925,220,000.").

Thus, in light of: (1) that the Ninth Circuit has found that Congress had a rational basis in enacting the TCPA in combatting invasions of privacy in communications; (2) the generally large awards generated in TCPA cases; and (3) the facts specifically here where the harm occurred over a multi-year period totaling more than 500,000 telephone calls without express consent, the amount here cannot be said to be either "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable," or that such an award would violate the statute's goal

of deterring the business practice at issue.  The Court therefore concludes that the damages awarded here under the TCPA statutory framework are not unconstitutionally excessive.

Finally, to the extent that Rash Curtis argues that the award is unconstitutionally excessive under the constitutional guideposts precluding grossly excessive punishments, such an argument is foreclosed by the Court's previous rulings in this matter.  Rash Curtis "acknowledges that, in granting class certification in 2017, this Court concluded that [*State Farm Mutual Automobile Ins. Co. v.] Campbell* and [*BMW of N. Am., Inc. v.*] *Gore* were inapplicable because they involved punitive, rather than statutory damages.  (Dkt. No. 397 at 14 (citing Dkt. No. 81 (Order Granting Plaintiffs' Motion for Class Certification) at 14, n.13).)  Despite this acknowledgement, Rash Curtis again cites to the same authority to argue that the award is unconstitutional as a grossly excessive punishment.  Rash Curtis provides no recent authority to cause the Court to revisit its prior holding, and the Court therefore declines to do so.

The Court and the parties in this case recognize that the damages award in this case is significant.  That the statute could lead to such a result is not surprising and evidences the fervor with which the United States Congress was attempting to regulate the use of autodialers for non-consensual calls.  Unquestionably, cases such as these plead for settlement.  However, the unilateral slashing of an award does not only ignore the plain words of the statute, the task is devoid of objectivity.  Rash Curtis' request that the award be reduced from $267 million to $534,698 begs the question: why is *that amount* fair or constitutional?  Why is $1.5 million not more fair? Or $15 million? Or $150 million? At a certain point it becomes too big to collect.  We still know not where that threshold is, nor is it the Court's province to speculate.  However, "[s]omeone whose maximum penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct."  *Dish Network II*, 2020 WL 1471844 at *7.

Accordingly, the Court **DENIES** that the award is unconstitutionally excessive.  Thus, in light of the foregoing, the Court **DENIES** the motion to reconsider.

United States District Court
Northern District of California

**C.      Motion to Vacate the Judgment and For Terminating Sanctions Based Upon Misconduct of Counsel, or in the Alternative, For New Trial, or in the Alternative, Further Relief as Determined by the Court (Dkt. No. 414)**

Rash Curtis' motion to vacate requests that the Court issue an order setting aside the judgment and terminating the case in Rash Curtis' favor; or, alternatively, issue an order granting a new trial; or, alternatively, issue an order vacating the judgment and granting further relief as deemed appropriate by the Court pursuant to Rule 60 and the Court's inherent authority pursuant to *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-45, 57 (1991).

Under Fed. R. Civ. P. 60(b), "a court may relieve a party or its legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, within reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

The motion to vacate here is based on the following five identified grounds of fraud and misconduct of class counsel, namely their:

(1)      alleged misconduct in providing false and inconsistent testimony regarding settlement negotiations in 2016-2017;

(2)      alleged scheme to obtain in an improper manner Rash Curtis' confidential and privileged business records from former employee Steven Kizer, and subsequent misuse of such records;

(3)      alleged scheme to prevent Rash Curtis from cross-examining Kizer both during deposition and at trial;

(4)      alleged orchestration of misleading testimony by expert witnesses Randall Snyder to obtain class certification, and by Colin Weir at trial; and

(5)      alleged misconduct by making improper, and knowingly false, statements during closing argument.

18

United States District Court
Northern District of California

1    "Federal Rule of Civil Procedure 60(b) provides that a judgment may be set aside from fraud upon

2    the court. One species of fraud upon the court occurs when an 'officer of the court' perpetrates

3    fraud affecting the ability of the court or jury to impartially judge a case." *Pumphrey v. K.W.*

4    *Thompson Tool Co.*, 62 F.3d 1128, 1130 (9th Cir. 1995) (citing *In re Intermagnetics America,*

5    *Inc.,* 926 F.2d 912, 916 (9th Cir. 1991); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.

6    1989)).  "Fraud" for purposes of Rule 60 is broadly interpreted and "includes both attempts to

7    subvert the integrity of the court and fraud by an officer of the court," and "it must involve an

8    unconscionable plan or scheme which is designed to improperly influence the court in its

9    decision." *Pumphrey,* 62 F.3d at 1131 (internal quotation marks omitted).  "[T]he inquiry as to

10   whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so

11   much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of

12   whether the alleged fraud harms the integrity of the judicial process[.]"  *Intermagnetics*, 926 F.2d

13   at 917.

14           Parties moving for relief under Rule 60(d)(3) must meet a "demanding" standard to show

15   "fraud on the court."  *See Zagorsky- Beaudoin v. Rhino Entm't Co*., No. CV-18-03031-PHX-JHT,

16   2019 WL 5960084, at *3 (D. Ariz. Nov. 12, 2019) (quoting *United States v. Beggerly*, 524 U.S.

17   38, 47 (1998)).  Pursuant to Rule 60(d)(3), there must *also* be proof of "an unconscionable plan or

18   scheme which is designed to improperly influence the court in its decision."  *See United States v.*

19   *Sierra Pac. Indus., Inc*., 862 F.3d 1157, 1168 (9th Cir. 2017); *In re Levander*, 180 F.3d 1114,

20   1119 (9th Cir. 1999) (holding that "fraud upon the court" encompasses "only that species of fraud

21   which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court

22   so that the judicial machinery can not perform in the usual manner its impartial task of adjudging

23   cases that are presented for adjudication."); *United States v. Sierra Pac. Indus*., 100 F. Supp. 3d

24   948, 955 (E.D. Cal. 2015) ("Although one of the concerns underlying the 'fraud on the court'

25   exception is that such fraud prevents the opposing party from fully and fairly presenting his case,

26   this showing alone is not sufficient.") (quotations omitted).

27           District courts within the Ninth Circuit require the same "demanding" showing of "fraud

28   on the court" to overturn a judgment pursuant to Rule 60(b)(3).  *See, e.g., Bryant v. Thomas*,

09CV1334 WQH-MDD, 2015 WL 5243878, at *9 (S.D. Cal. Sept. 8, 2015) (requiring losing party to prove "fraud on the court" to prevail under Rule 60(b)(3); *Warren v. Uribe*, No. 2:10-cv-2120-MCE-EFB P, 2015 WL 8207526, at *6 (E.D. Cal. Dec. 8, 2015) (evaluating "fraud on the court" within confines of Rule 60(b)(3)); *Yuan v. City of Los Angeles*, CV 10-1453-RSWL-SPx, 2016 WL 3024104, at *2 (C.D. Cal. May 26, 2016) ("In any case, in order to set aside a judgment or order because of fraud upon the court under Rule 60(b), it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.") (internal markings omitted); *Guerra v. Just Mortg., Inc.*, No 2:10-CV-00029-KJD-NJK, 2013 WL 4101876, at *2 (D. Nev. Aug. 13, 2013) ("Because the power to vacate the judgment for fraud is so great, the Ninth Circuit has held that only fraud on the court may vacate a judgment under Rule 60(b)(3).") (citing *United States v. Estate of Stonehill*, 660 F.3d 415, 443–44 (9th Cir. 2011)).

"Liberal application is not encouraged, as fraud on the court should be read narrowly, in the interest of preserving the finality of judgments." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (quotation marks omitted). "Mere nondisclosure of evidence is typically not enough to constitute fraud on the court, and perjury by a party or witness, by itself, is not normally fraud on the court." *Estate of Stonehill*, 660 F.3d at 444 (quotation marks omitted). *See also id.* ("Because the power to vacate for fraud on the court is so great, and free from procedural limitations . . . we have held that not all fraud is fraud on the court.") (quotation marks and citations omitted). A "dispute of fact is not 'fraud' or misrepresentation." *Scott v. Donahoe*, No. CV-13-03927-RSWL-SH, 2015 WL 546020, at *5 (C.D. Cal. Feb. 10, 2015). Even forgery that "may have reached the court" does not, by itself, constitute fraud on the court. *Latshaw*, 452 F.3d at 1104. "Perjury or nondisclosure" must be "so fundamental that it undermined the workings of the adversary process itself." *Estate of Stonehill*, 660 F.3d at 445. And, "[e]ven where there is clear and convincing evidence of fraud on the court, courts will not disturb judgment unless the misconduct had some effect on the judgment." *Bryant*, 2015 WL 5243878, at *9.

"Further, the fraud must not be discoverable by due diligence before or during the proceedings." *Sathianathan v. Smith Barney, Inc.*, No. C 04-02130 SBA, 2009 WL 537158, at *3

20

United States District Court
Northern District of California

1    (N.D. Cal. Mar. 3. 2009) (quotations omitted).  *See also Carson Indus., Inc. v. Am. Techs.*

2    *Network, Corp.*, Case No. 14-cv-01769 NC, 2016 WL 3212453, at *3 (N.D. Cal. June 10, 2016)

3    (holding that a party moving to overturn a judgment pursuant to Rule 60(b)(3) must show that the

4    new evidence "was not available to it during the litigation before the entry of judgment"); *Jones v.*

5    *Haw. Residency Programs, Inc.*, Civ. No. 07-00015 HG-KSC, 2017 WL 2974927, at *3 (D. Haw.

6    July 12, 2017) ("Rule 60(b)(3) requires that the evidence of fraud be previously undiscoverable by

7    due diligence before or during the proceedings.").  Arguments concerning fraud or misconduct

8    that are discoverable by a party during the litigation but that had not been brought to the district

9    court's attention until after entry of judgment are generally deemed waived.  *See Sathianathan*,

10   2009 WL 537158, at *9.  Accordingly, judgments will not be overturned based on fraud or

11   misconduct where a defendant "had an opportunity to address [the] issue with the Court before

12   and during trial."  *United States v. Int'l Fidelity Ins. Co.*, CV 16-8064-DSF-(AGRx), 2019 WL

13   6971381, at *2 (C.D. Cal. Apr. 2, 2019).  And, the newly discovered evidence must be "of such

14   magnitude that production of it earlier would have been likely to change the disposition of the

15   case." *McEuin v. Crown Equipment Corp.*, No. Civ. 97-365-HA, at *5 (D. Or. Oct. 26, 2000).

16        Here, each of the five grounds identified above fail to meet the demanding standard

17   required under Rule 60.  As discussed below, many of the identified grounds have already been

18   adjudicated by the Court in prior orders, and the grounds in the motion to vacate are nothing more

19   than requests to reconsider, and without meeting any of the standards required for reconsideration.

20   *See* N.D. Cal. L.R. 7-9(b) (identifying the three grounds for reconsideration as a material

21   difference in law or facts; the emergence of new material facts or change of law; and a manifest

22   failure by the Court to consider material facts or dispositive legal arguments).

23        <u>First</u>, with regard to class counsel's representations made during the settlement

24   negotiations in 2016-2017: the Court **DENIES** the motion to vacate on this ground.  The Court

25   already adjudicated the issue of the enforceability of the offers made during the settlement

26   negotiations.  (*See generally* Dkt. No. 41 (order denying motion to enforce the settlement

27   agreement).)  As the Court then identified, even Rash Curtis' own emails "suggest that it did not

28   intend to be bound absent a signed, written settlement agreement."  (*Id.*at 2.)  Nothing in the

1    record demonstrates any fraud or falsity in the identified declarations made by class counsel that

2    would warrant any relief from the Court, especially in the form of vacating the final judgment,

3    ordering a new trial, or imposing any terminating sanctions on class counsel.  To the extent that

4    this ground is based on materials that are potentially subject to the California state mediation

5    privilege, Rash Curtis fails to demonstrate how materials submitted in posttrial briefing would

6    require the Court to vacate the verdict reached by the jury at trial.

7          Second, with regard to materials obtained from Kizer: the Court **DENIES** the motion to

8    vacate on this ground.  Rash Curtis has not shown any diligence in bringing the motion to vacate

9    on this ground.  Rash Curtis' sole new evidence that class counsel had fraudulently induced Kizer

10   to produce ESI is an October 25, 2019 declaration from Kizer.  (*See* Declaration of Mark E. Ellis,

11   Ex. 18, Dkt. Nos. 414-1, 414-9 ("10/25/2019 Kizer Declaration").)  But, Kizer's identity was

12   known to Rash Curtis during the pendency of the litigation.  Moreover, Kizer's new declaration,

13   where he evidences confusion regarding events that occurred three years ago, cannot substantiate

14   Defendant's burden pursuant to Rule 60.  *See McEuin*, 2000 WL 33950826, at *5 ("Defendants'

15   post-judgment acquisition of a declaration from a potential witness, the identity of whom was

16   known to both parties before trial, fails to compel the court to grant a new trial because of 'newly

17   discovered evidence.'").  Further, even if the declaration were timely, the record demonstrates that

18   Rash Curtis failed to demonstrate any diligence on this ground: it never sought to quash the

19   subpoena and never filed a protective order on the materials in the possession of Kizer.  Rash

20   Curtis cannot use its own litigation failures as basis for overturning a trial judgment. *See Int'l*

21   *Fidelity Ins. Co.*, 2019 WL 6971381, at *2 ("Failing to properly litigate a case is not grounds for

22   relief under Rule 60(b)(3). Nor is Rule 60(b)(3) an avenue for a party to litigate a pre-trial

23   evidentiary issue post-judgment because it neglected to do so before trial.").  And, despite

24   statements to the contrary, Rash Curtis did, in fact, receive the documents produce by Kizer to

25   class counsel.  (*See* Dkt. No. 416-1, at 47, 54-56 ("It just came in. Thanks.").)

26         Third, with regard to Preventing Rash Curtis from Deposing Kizer and Cross-Examining

27   Kizer at Trial: the Court **DENIES** the motion to vacate on this ground.  Rash Curtis fails to

28   demonstrate any diligence in excluding Perez's deposition of Kizer, or any diligence in attempting

United States District Court
Northern District of California

United States District Court
Northern District of California

to cross-examine Kizer at trial.  Rash Curtis did not once seek to exclude, and did not otherwise object to Kizer's deposition testimony at trial.  Moreover, Rash Curtis itself agreed not to call Kizer as a witness during the trial.  *See* Trial Tr. at 653:7-10 ("Mr. Ellis: . . . . So, yesterday I consulted with Mr. Bursor and the decision was made by me and agreed to by him that we were not going to put Mr. Kizer on the stand this morning. So that is the last witness, and so both sides, I believe, have rested"); *id*. at 6:53:13-15 ("The Court: And you're not going to show the deposition testimony? Mr. Ellis: I am not.").  Indeed, Rash Curtis' counsel chose not call Kizer as a witness during trial despite representing, earlier in the trial, that "he will be testifying because we subpoenaed him for Friday morning." Trial Tr. at 7:4-5; *id*. at 14611-14 ("[W]ith respect to Mr. Kizer, I did go ahead and subpoena him for Friday. So he's going to show up. And at that point in time if they want to put video clips in, that's fine.").  Accordingly, any objections regarding Mr. Kizer's deposition testimony have been waived, and cannot form the basis of a request to vacate the final judgment**.**  *See Sathianathan*, 2009 WL 537158, at *9.

Fourth, with regard to expert testimony from Snyder and Weir: the Court **DENIES** the motion to vacate on these grounds.  As for Snyder's testimony, the Court concludes that Rash Curtis failed to demonstrate any diligence on this ground.  Rash Curtis did not advance any expert testimony to rebut Snyder's opinions, and also chose not to depose Snyder for purposes of class certification.  (Dkt. No. 416-1 at 4.)  Indeed, none of the declarations Rash Curtis submitted in support of its opposition brief to class certification mention Snyder's opinion.  Kizer's new declaration contending that Snyder miscited his testimony is not "new evidence" that would otherwise meet the demanding standard required under Rule 60 to vacate a final judgment.

As for Weir's testimony, the Court concludes that Rash Curtis fails to demonstrate any basis of fraud or misconduct.   Significantly, Rash Curtis stipulated to the relevant facts concerning skip tracing such that Weir could present a computation of the number of calls made to class members without having to rely on Snyder with regards to skip tracing.  Rash Curtis fails to identify specifically any fraud or misconduct based on these opinions, which were based on facts to which Rash Curtis agreed.  Moreover, a party cannot overturn a judgment based on purported fraud by an expert witness where, as here, the party had an opportunity to cross-examine the

23

expert as to the purported fraud through cross-examination at trial.  *See Anthony California, Inc. v. Fire Power Co., Ltd.*, Case No. EDCV 15-876 JGB (SPx), 2018 WL 6240845, at *4 (C.D. Cal. Aug. 9, 2018) ("Defendants argue Plaintiff committed fraud on the court by permitting Buss to give his opinion of damages that included the Moran parties' liability after  Plaintiff made express representations to the Court that it would not bring in those claims . . . . Defendants had an opportunity to challenge this alleged fraud, and did so . . . in cross examination of Buss at trial . . . . Accordingly, the Court DENIES the 60(d) Motion.") (quotation marks and citations omitted); *Levander*, 180 F.3d at 1120 (explaining fraud on the court claim cannot lie if the moving party had the opportunity to challenge the alleged fraud during the original proceedings).  *See also Bailey v. United States*, 250 F.R.D 446, 451 (D. Ariz. Feb. 12, 2008) ("Rule 60(b)(3) is not to reward the lazy litigant who did not adequately investigate his or her case, or who did not vigorously cross-examine a witness.") (quotation marks omitted).  Finally, to the extent that Rash Curtis contends that Weir's expert testimony was improper, the Court already ruled on this issue when it denied Rash Curtis' *Daubert* motion.  (*See* Dkt. No. 315 (pretrial order).)

        Fifth, with regard to class counsel's statements made during closing arguments: the Court **DENIES** the motion to vacate on this ground.  Class counsel's statements made in the closing followed the Court's instructions permitting Class Counsel to address "what's been presented at trial and what hasn't." *See Venson v. Altamirano*, 749 F.3d 641, 654 (7th Cir. 2014) ("[I]t is hard to make the case that any of the lines of inquiry amounts to misconduct given that the district court overruled the defense objections in each instance").  Rash Curtis made this same objection during trial, and the Court explicitly permitted Class Counsel to "say what's been present at trial and what hasn't."  Rash Curtis presents no new grounds to cause the Court to revisit its past decision, and further fails to demonstrate that such permitted statements made during the closing arguments would warrant the relief sought in the motion to vacate.

        Accordingly, in light of the foregoing, the Court **DENIES** Rash Curtis' motion to vacate.

        **D.      Motion for an Award of Attorneys' Fees, Costs, and Expenses and Service Award for the Class Representative (Dkt. No. 371)**

        In their motion for attorneys' fees, class counsel requests attorneys' fees in the amount of

one-third (33.33%) of the $267,349,000 class award, totaling approximately $89,116,333.33.

Class counsel further seeks to recover expenses for nontaxable expenses, in the amount of

$277,416.28.[4]  Finally, class counsel requests a service award for Perez in the amount of

$50,000.00.  The Court addresses each of these three issues.

### 1.    Legal Framework

"In a certified class action, the court may award reasonable attorney's fees and nontaxable

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme

Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

fund as a whole." *Boeing*, 444 U.S. at 478. The common fund doctrine is most often applied to

funds created by settlements, but it is also a basis for a fee award on a litigated judgment. *See, e.g.*,

*id.* at 481-82 (applying the common fund doctrine to affirm a district court's fee award on a class

action judgment); *Krakauer v. Dish Network, L.L.C.*, 1:14-CV-333, 2018 WL 6305785, at *4-5

(M.D.N.C. Dec. 3, 2018) (applying the common fund doctrine to award fees on a TCPA class

action judgment after plaintiff and the class prevailed at trial).

In common fund cases, the Ninth Circuit permits district courts to award attorney's fees

under either the "percentage-of-the-benefit" method or the "lodestar" method.  *See Fischel v.*

*Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1029 (9th Cir. 1998).  *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

---

[4] Class counsel originally sought to recover $314,179.97 in costs from the class award.
(*See* Dkt. No. 371.)  At the February 26, 2020 hearing, in response to comments made by the
Court, class counsel stated that they would be filing a bill of costs to collect the taxable costs
against Rash Curtis.  Class counsel later filed its bill of costs seeking $49,001.90.  (*See* Dkt. No.
423.)  Class counsel also indicated in its supplemental filing that they have since incurred
additional expenses of $12,238.21.  (Dkt. No. 424 at 18.)  Rash Curtis objects and opposes the bill
of costs.  (*See* Dkt. Nos. 425 (opposition), 426 (objections).)  As of the date of this order, the bill
of costs remain pending.  The Court, therefore, subtracts the taxable costs, $49,001.90, from the
$314,179.97 figure in calculating the nontaxable costs in which class counsel seeks to recover
against the class award, and adds $12,238.21 to the figure above.  The Court otherwise declines to
address these taxable costs, which are not properly included in the motion for attorneys' fees.

United States District Court
Northern District of California

934, 949 (9th Cir. 2015).  However, "the primary basis of the fee award remains the percentage

method," with the lodestar used "as a cross-check on the reasonableness of a percentage

figure."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002).  In determining

the reasonableness of a fee request, the Ninth Circuit has directed courts to consider: (1) the

market rate for the particular field of law; (2) whether counsel achieved exceptional results for the

class; (3) whether the case was risky for class counsel; (4) whether the case was handled on a

contingency basis; and (5) the burdens class counsel experienced while litigating the case.  *Online

DVD*, 779 F.3d at 954-55.  The Ninth Circuit has held that a fair fee award must include

consideration of the contingent nature of the fee and the risk counsel assumed.  *See, e.g.*, *id.* at

954-55 & n. 14; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th

Cir. 1994).

### 2. Attorney Fees' Award[5]

#### a. Percentage of the Common Fund[6]

With respect to common fund cases, the Ninth Circuit has established a twenty-five

percent starting benchmark for class action attorneys' fees awards.  *Hanlon*, 150 F.3d at 1029.

"While the benchmark is not per se valid, the Ninth Circuit has recognized that requesting the 25%

benchmark award only shows the reasonableness of a fee request."  *In re Nat'l Collegiate Athletic

Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, 4:14-md-2541-CW, 2017 WL 6040065, at *2

(N.D. Cal. Dec. 6, 2017) (quotation marks omitted) (hereafter, "*In re NCAA*").  "[I]n most

common fund cases, the award exceeds the [25%] benchmark."  *Id.*  (quotation marks omitted).

"Courts consider the following factors to determine whether to apply either an upward or

downward adjustment from that benchmark: (1) the results obtained by counsel; (2) the risks and

---

[5] Rash Curtis' arguments that class counsel waived their request for attorneys' fees do not
persuade.  Rash Curtis' cited authority is inapposite, and in no way reflects that class counsel
waived any request by failing to include it in a pretrial brief, especially where a request for
attorneys' fees was in the operative complaint.  Moreover, the attorneys' fees derive from the class
award.

[6] As discussed in the Court's analysis regarding whether to permit amendment of the final
judgment to include a residual clause, the Court rejects Rash Curtis' arguments regarding
*Holtzman* and whether a common fund is created in TCPA class actions.  *See supra* Section II.A.4.

complexity of issues in the case; (3) whether the attorney's fees were entirely contingent upon success and whether counsel risked time and effort and advanced costs with no guarantee of compensation; (4) whether awards in similar cases justify the requested fee; and (5) whether the class was notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request." *Id.* Here, class counsel seeks 33.33 percent. The Court reviews the five factors in analyzing the request.[7]

1. *Extraordinary Results*

In the motion for attorneys' fees, class counsel notes that this is the largest per-class member recovery in any TCPA case. As a comparison, the class award here is almost double the per-class-member recovery in *Krakauer*, where a $61 million judgment was awarded to a class with approximately 18,000 members. *Krakauer*, 2018 WL 6305785, at *3. Significantly, a 33.33% fee was awarded in *Krakauer*, where the judgment obtained was approximately $3,388 per class member, and $2,259 per class member net of the attorney's fees. *Id.* Moreover, class counsel notes that the class award is larger than the largest TCPA settlement to date, in *In re Capital One Telephone Consumer Protection*, which settled for $75.5 million. 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015). The judgment here is more than 3 times that amount, and the per-class-member basis is even more favorable –the recovery per class member in *In re Capital One* was "a relatively diminutive $2.72." *Id.* at 789.

Here, the amount of the judgment per-class-member, $6,614, is more than two thousand times larger than *In re Capital One*, and is generally more than is recovered in typical TCPA cases. *See, e.g.*, *Rose v. Bank of Am. Corp.*, Case Nos. 5:11-CV-02390-EJD, 5:12-CV-04009-EJD, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014) ($20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142-EMC, Dkt. No. 94 (N.D. Cal. Apr. 2, 2012) ($25

---

[7] In connection with the motion for attorneys' fees, Rash Curtis objects to the disclosure of mediation materials, and asks the Court to strike paragraphs 4 through 21 of the declaration of Scott Bursor because it contains inadmissible mediation conduct and statements. In light of the subsequently executed assignment between the parties, providing that the assignment document and referenced materials are subject to disclosure to the Court between the parties, the Court **DENIES AS MOOT** these objections.

1   merchandise voucher); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn.

2   2016) ($33.20 per class member); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D.

3   Cal. 2015) ($13.75 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill.

4   2015) ($30 per class member); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL

5   4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("around $45" per class member); *Gehrich v. Chase Bank

6   USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per class member); *Charvat v. Travel

7   Servs.*, No. 12 CV 5746, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) ($48.37 per class member)

8        Thus, the Court concludes that the results in this litigation are extraordinarily good, and

9   that this factor therefore weighs in favor of an upward departure from the 25% benchmark.

10       2.   *Litigation Risk*

11       In the motion, class counsel aver that there was substantial litigation risk to this action.

12   While class counsel believed the motion to certify the classes was meritorious, court decisions on

13   whether to certify TCPA class claims against debt collectors are mixed.  *Compare Meyer*, 707

14   F.3d at 1042 (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541 F.3d

15   318, 328-29 (5th Cir. 2008) (reversing class certification).  Indeed, obtaining class certification

16   and maintaining class certification through trial is exceedingly difficult in the debt collection

17   context.  *See, e.g., Blair v. CBE Grp., Inc*., 309 F.R.D. 621, 630 (S.D. Cal. 2015) ("Courts have

18   recognized that similar TCPA actions involving debt collections require extensive individual fact

19   inquiries into whether each individual gave 'express consent' by providing their wireless number

20   to the creditor during the transaction that resulted in the debt owed.") (quotation marks omitted).

21   Class counsel also highlights that there was also substantial risk due to Rash Curtis sandbagging,

22   discovery abuse, and false testimony (*see, e.g,* Dkt No. 167, Order Re: Cross Motions for

23   Summary Judgment, at 12 n. 9 ("The Court previously warned defendant that 'delaying and

24   sandbagging tactics' would not be tolerated"); Dkt. No. 320, Pretrial Order No. 3 Re: Remaining

25   Motion *in Limine*, at 13 ("defendant did not acknowledge that it had shifted positions and

26   contradicted prior representations to the Court and opposing counsel")), and that there was

27   substantial risk at trial.  *See, e.g.*, Trial Tr. at 719:14-17 ("Did he prove to us that each one of those

28   phone calls was the phone number that we used was obtained by skip-tracing. If he didn't, I'm

going to suggest to you, the number is zero, not 540,000."); *id.* at 758:25-759:21 ("Question 4: Did Rash Curtis make calls with its Global Connect dialer to class members' cellular telephone numbers obtained through skip-tracing during the class period without their prior express consent? … If you find that not all of the calls were made to numbers obtained by skip-tracing, you have to say no. Even if you find everyone in the class was a non-debtor.").

Having reviewed the record in this matter, the Court agrees that class counsel faced significant litigation risk during several stages.  The record reveals that the magistrate judge overseeing discovery disputes in this matter referenced that it was one of the most contentious during her judicial tenure.  The Court finds that this factor weighs in favor of an upward departure from the 25% benchmark.

3.  *Comparable Case Awards*

Class counsel highlights that courts often award percentage fees of more than 25% in the TCPA settlement context.  *See, e.g.*, *Dakota Med.*, 2017 WL 4180497, at *10 (awarding one-third of common fund in attorney's fees); *Vandervort*, 8 F. Supp. 3d at 1210 (awarding 33%); *Hageman*, 2015 WL 9855925, at *4 (awarding one-third of the common fund recovery in attorney's fees); *James v. JPMorgan Chase Bank, N.A.*, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving a request for a 30% attorney's fee).  Class counsel also cites to *West*, Case No. 4:16-cv-03124-YGR, Dkt. No. 128, where this Court approved a 33.33% fee in a TCPA settlement.  Moreover, citing to *In re NCAA*, class counsel emphasizes that the judgment exists "solely because of counsel's efforts and expenditures of expert fees and other expenses." *In re NCAA*, 2017 WL 6040065, at *6-7.  The judgment here is larger than the settlement in *In re NCAA*, with fewer class members, resulting in an even greater recovery per class member.  *See id*.

Having reviewed the cited authority, the Court agrees that the market rate for comparable settlements indicates that a higher award is warranted in this matter, and concludes that the comparable case awards factor weighs in favor of an upward departure from the 25% benchmark. This is so where the class award exists because of counsel's efforts these past three years, and its expenditures throughout the litigation process, resulting in an approximately $267 million award amount.

United States District Court
Northern District of California

4.  *Contingent Nature of the Fee and the Financial Burden Borne By Class Counsel*

Class counsel highlights that any recovery in this matter was based on contingency fee, and that there was no guarantee of repayment. Moreover, class counsel emphasizes that though this litigation has been pending in this court for years, the appeals process is expected to take additional years, and any recovery is dependent on the outcome of *Perez v. Indian Harbor Insurance Company*, 4:19-cv-07288-YGR (N.D. Cal.).

Thus, in light of the contingent nature of the fee, and the ongoing financial burden borne by class counsel, the Court concludes that this factor weighs in favor of an upward departure from the 25% benchmark.

5.  *Objections From Class Members to the Requested Attorneys' Fees*

Notice was given to class members regarding class counsel's requested attorneys' fees at 33%; no objections were received from any class members.  Thus, this factor weighs in favor of an upward departure from the 25% benchmark.

6.  *Conclusion*

Accordingly, upon objective consideration of the five foregoing factors, the Court finds that the factors weigh in favor of an upward departure from the 25% benchmark to the requested 33% rate.

### b.  **Lodestar Cross-Check**

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness of a fee award.  *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ("Although *not required to do so*, the district court took an extra step, cross-checking this result by using the lodestar method." (emphasis supplied)).  *See also Ebarle v. Lifelock, Inc.*, 15-cv-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sep. 20, 2016) (awarding $10.2 million in attorney's fees while "declin[ing] to conduct a lodestar cross-check" where fees are less than the 25% benchmark); *Ikuseghan v. Multicare Health Sys.*, CASE NO. C14-5539 BHS, 2016 WL 4363198, at *1-2, 2 n. 1 (W.D. Wash. Aug. 16, 2016) (awarding 30% of the settlement fund in attorney's fees under the percentage-of-the-recovery method, not conducting a lodestar cross-check, and explicitly noting that the court was "not making a finding that class

30

counsel's hourly rates are reasonable under the lodestar method"); *Hageman*, 2015 WL 9855925, at *4 (awarding 33.33% ($15 million) of the settlement fund as attorney's fees without conducting a lodestar cross-check); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR, 2012 WL 4076119, at *1 (W.D. Wash. Sep. 17, 2012) ("Use of the percentage method in common fund cases appears to be dominant … As this is a common fund case, the Court will evaluate Class Counsel's fee application pursuant to the percentage-of-the-fund method."); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) (holding that no lodestar cross-check was required over the objections of class members and the New York attorney general, and approving a $11,250,000 fee (25% of fund) even though the relevant court dockets "show no litigation activity of substance other than the filing of the complaints").

However, courts in the Ninth Circuit sometimes examine the lodestar calculation as a crosscheck on the percentage fee award to ensure the reasonableness of the percentage award. *Vizcaino*, 290 F.3d 1050.  The lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000). A court then determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within an accepted range.

Based on the billing records submitted by class counsel, class counsel has spent 5,014.8 hours on this matter multiplied by current billing rates results in a total of $3,181,785.00.  (*See* Dkt. No. 424 at 10 (summary of hours and rates); *see also* Dkt. No. 424-1 at 11 (Bursor Declaration), 41-125 (billing entries).)

However, class counsel avers that the Court should also consider the hours that will be spent in the future.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x. 655, 659 (9th Cir. 2018) (holding that "[t]he district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement"); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including, over the defendants' objection, "125 anticipated future

hours" to be spent on "communicating with the settlement administrator and responding to inquiries from class members" in the lodestar calculation); *Corzine v. Whirlpool Corp*., Case No. 15-cv-05764-BLF, 2019 WL 7372275, at *11 (N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for future work to complete Settlement's claims process through 2026" in the lodestar calculation); *In re Equifax Inc. Customer Data Security Breach Litig*., No. 1:17-md-2800-TWT, 2020 WL 256132, at *39-40 (N.D. Ga. Jan. 13, 2020) (including in the lodestar calculation, over a class member's objection, class counsel's estimate of an anticipated 10,000 hours to be spent in the future to implement and administer a class action settlement); *id*. at *40 ("Excluding such time . . . would misapply the lodestar methodology and needlessly penalize class counsel."); *Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*, Civil Action No. 06-cv-826, 2009 WL 4798155, at *17 (E.D. Penn. Nov. 30, 2009) (holding that "[w]here attorneys provide additional services post-settlement . . . courts should award fees for those services").

In support of requesting that the Court consider the future hours to be spent in this litigation, class counsel identifies the following post-judgment actions that class counsel will need to perform, and provides the following estimates:

> (1) to continue to litigate the pending post-trial motions, as well as Rash Curtis' anticipated motion for attorney's fees on the Fair Debt Collection Practices Act Claim and Rosenthal Fair Debt Collection Practices Act Claim, which Rash Curtis' counsel has stated he intends to file if the judgment is amended or altered to declare Rash Curtis the prevailing party on those claims (*see* 11/25/19 Hearing Tr. at 11:7-9 ("There may be a follow-up attorney's fees motion because under both of those statutes, there is a right to attorney fees.")): **150 hours**;

> (2) to litigate Rash Curtis' pending appeal to the Ninth Circuit: **500 hours**;

> (3) to oppose Rash Curtis' petition for certiorari to the United States Supreme Court: **150 hours**;

> (4) to litigate the bad faith refusal to settle claim against Rash Curtis' insurers to verdict in the trial court, *see Perez v. Indian Harbor Ins. Co., et al.*, Case No.

4:19-cv-07288, currently pending before this Court: **3,500 hours**;[8]

(5) to litigate the insurer's likely appeal of the trial verdict: **500 hours**;

(6) to oppose the insurer's petition for certiorari to the United States Supreme Court: **150 hours**;

(7) to develop a plan for distributing the proceeds of the recovery from the insurer to class members, which will likely require additional expert work to analyze and update the class member lists that have already been compiled from Rash Curtis' call detail records and account databases: **100 hours**;

(8) to seek court approval for the proposed distribution (*see* Dkt. No. 392 at 2 ("Any recovery obtained as a result of the Assignment shall be held in trust until this Court approves a fair, reasonable, and adequate method for distribution the proceeds of the recovery to Class Members.")): **100 hours**; and

(9) to work with the claims administrator to implement the distribution and respond to inquiries from class members: **300 hours**.

Based on this additional work, class counsel estimates that the additional work would require an additional 5,450.0 hours; along with the 5014.8 hours completed thus far, this would total 10,464.8 hours resulting in total calculated attorneys' fees of $6,639,706.30 at a blended rate of $634.48.  (*See* Dkt. No. 424 at 13-14; Dkt. No. 424-1at 13-14.)

The Court reviews the reasonableness of the blended rate and the hours claimed, before determining the reasonableness of the multiplier as cross-checked with the percentage claimed. Thus:

Rate.  "To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by

---

[8]  The Court notes that, to the extent that class counsel is seeking attorneys' fees in the *Perez v. Indian Harbor Ins. Co., et al.*, Case No. 4:19-cv-07288-YGR, (N.D. Cal.), matter, such relief is inappropriate where class counsel is seeking to recover attorneys' fees in this matter for work performed in the *Indian Harbor* matter.  *See* Complaint, *Perez v. Indian Harbor Ins. Co., et al.*, Case No. 4:19-cv-07288-YGR, Dkt. No. 1, at 5 (N.D. Cal. Nov. 5, 2019) (requesting attorneys' fees).

1    lawyers of reasonably comparable skill, experience, and reputation." *G. F. v. Contra Costa Cnty*.,

2    Case No. 13-cv-03668-MEJ, 2015 WL 7571789, at \*14 (N.D. Cal. Nov. 25, 2015). "Generally,

3    when determining a reasonable hourly rate, the relevant community is the forum in which the

4    district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

5          Here, the relevant legal community is the San Francisco Bay Area, specializing in

6    complex, high-stakes litigation.  Courts in this district would generally find that the blended rate of

7    $634.48 is within the reasonable range of rates.  *See, e.g.*, *In re Animation Workers Antitrust*

8    *Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at \*6 (N.D. Cal. Nov. 11, 2016) (finding rates

9    of senior attorneys of between $845 to $1,200 per hour to be reasonable); *Nitsch v. DreamWorks*

10   *Animation SKG Inc*., Case No. 14-CV-04062-LHK, 2017 WL 2423161, at \*9 (N.D. Cal. June 5,

11   2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable);

12   *Loretz v. Regal Stone, Ltd*., 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (approving billing rates

13   ranging from $900 per hour (partners) to $150 per hour (law clerks) for Bay Area plaintiff's

14   counsel in complex civil litigation); *In re High- Tech Employee Antitrust Litig*., Case No. 11-CV-

15   02509-LHK, 2015 WL 5158730, at \*9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490

16   to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law

17   clerks, and litigation support staff); *Rainbow Bus. Solutions v. MBF Leasing LLC*, CASE NO. 10-

18   cv-01993-CW, 2017 WL 6017844, at \*1-2 (N.D. Cal. Dec. 5, 2017) (finding rates between $275

19   to $950 per hour to be reasonable); *In re Anthem, Inc. v. Data Breach Litig*., Case No. 15-MD-

20   02617-LHK, 2018 WL 3960068, at \*16-17 (N.D. Cal. Aug. 17, 2018) (finding rates between $400

21   to $900 per hour to be reasonable).  *See also, West*, Case No. 4:16-cv-03124-YGR, Dkt. No. 128

22   (this Court approving Bursor & Fisher's hourly rates and attorney's fees in full).  Thus, the Court

23   finds that the blended rate of $634.48 is within a reasonable range for rates charged in this district

24   for comparable work.

25          Hours. As will be discussed, the extent to which the Court considers future litigation hours

26   to be expended in the recovery of the class award has a significant impact on the multiplier

27   crosscheck.  Here, class counsel provides evidence that it has spent 5014.8 hours to the date of the

28   supplemental filing in support of the motion for attorneys' fees.  Having reviewed the hours

United States District Court
Northern District of California

claimed by class counsel in this matter and the record in this matter the Court finds that the submitted hours for past work is reasonable.  This is so where the litigation was especially contentious and heavily contested, involved numerous motions – including summary judgment, class certification, and *Daubert* motions – discovery disputes, and a jury trial which rendered a verdict in favor of plaintiff and the class.

The Court recognizes that class counsel will indeed incur continued fees in both the appeal of this case and the subsequent litigation.  In light of the earlier cited authority, it is appropriate for the Court to consider the future hours to be spent in reaching an ultimate resolution in this matter including the expectation that the litigation is expected to continue for several years through appeal and litigation against Rash Curtis' insurers.  However, the Court finds that the number of hours estimated for future litigation costs is highly speculative and variable.  Thus, the Court also compares scenarios assuming future litigation hours with a 25 percent reduction (4,088 hours) and a 50 percent reduction (2,725 hours).

<u>Multiplier</u>.  Here, the Court provides a comparison of three scenarios based on the future litigation hours: one with no reduction, a second with a 25% reduction, and a third with a 50% reduction.  The Court calculates the total hours, which includes 5014.8 hours of work performed to this point, and calculates the total fees at the blended rate of $634.48 an hour, and the multiplier as it compares to the requested fee award of 33.33% of the judgment, $89,116,333.33:

- <u>Future Estimated Litigation Hours: 5,450 – no reduction; Total Hours: 10,464.8</u>
  - Multiplier of 13.42 over the base lodestar fee of $6,639,706.30
- <u>Future Estimated Litigation Hours: 4,088 – 25 % reduction; Total Hours: 9,102.8</u>
  - Multiplier of 15.42 over the base lodestar fee of $ 5,775,544.54.
- <u>Future Estimated Litigation Hours: 2,725 – 50% reduction; Total Hours: 7,739.8</u>
  - Multiplier of 18.15 over the base lodestar fee of $4,910,743.30.

In evaluating whether a lodestar multiplier is appropriate, district courts in the Ninth Circuit analyze a number of factors, including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen*

United States District Court
Northern District of California

35

*Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "Foremost among these considerations, however, is the benefit obtained for the class." *In re NCAA*, 2017 WL 6040065, at *7.

As discussed above, these factors weigh in favor of class counsel. The benefit obtained for the class is an extraordinary result, while there was and still is significant risk of nonpayment for class counsel. Moreover, the general quality of the representation and the complexity and novelty of the issues presented weigh in favor of a higher lodestar multiplier.

The Court's comparison of the three scenarios regarding future litigation expenses further demonstrates that the 33.33% percentage claimed is appropriate in this matter. While the multipliers in scenarios considering future litigation hours, 13.42 (5,450 hours), 15.42 (4,088 hours), and 18.15 (2,725 hours), are on the higher-end in this Circuit, all three multipliers are still within the surveyed acceptable range in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 n.6 ("finding a range of .6-19.6, with most (. . . 83%) from 1.0 to 4.0 and a bare majority ( . . . 54%) in the 1.5-3.0 range"). *See also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 341 (9th Cir. 1998) ("[W]e are cognizant that [m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]" (internal quotation marks omitted)). Moreover, the multiplier is also in line with multipliers that have been approved by other courts. *See, e.g.*, *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ.A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (awarding 20% of a $100 million settlement fund in attorneys' fees, which represented a multiplier of 15.6). Although the multiplier in a scenario considering zero future litigation hours results in a multiplier well beyond anything permitted or found in this Circuit, the Court notes that it is appropriate for a court to consider future hours in a lodestar crosscheck. Thus, in light of the foregoing, the Court finds that the lodestar multiplier is reasonable in light of the circumstances of this case, and within the range permitted by the Ninth Circuit.

Accordingly, in light of the above analysis concluding that 33% is a reasonable percentage, and that the lodestar crosscheck reveals a reasonable multiplier, the Court **GRANTS** class counsel's requests for attorneys' fees based on one-third of the percentage of the judgment ($89,116,333.33).

### 3.      Nontaxable Costs

"The prevailing view is that expenses are awarded in addition to the fee percentage." *Krakauer*, 2018 WL 6305785, at *6 (awarding $481,317.73 in expenses in addition to the 33.33% rate for attorney's fees). Class counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Courts routinely approve reimbursement of reasonable non-taxable litigation expenses to be paid out of a common fund. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." (citation omitted)); *Gutierrez-Rodriguez v. R.M. Galicia, Inc*., Case No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) (concluding that the requested expenses for mediation, litigation services, copies, and travel are reasonable); *Couser*, 125 F. Supp. 3d at 1049 ("Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting this case . . . . The Court finds that Class Counsel reasonably incurred the out-of-pocket costs in connection with this litigation, and that such costs were advanced by Class Counsel for the benefit of the Class."); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012 ) (finding that costs for retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs were reasonably incurred for the benefit of the Class and that, "[a]ccordingly, reimbursement of these costs and expenses in their entirety is justified."); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014) ("out-of pocket costs may be recoverable as *attorneys' fees* if 'the charges are not already accounted for in the attorneys' hourly rates.'" (emphasis original)).

Here, while Rash Curtis objects to and opposes class counsel's claimed taxable costs and expenses that would be assessed specifically against Rash Curtis, Rash Curtis does not specifically object to or oppose class counsel's nontaxable costs and expenses that would be taken from the class award. Because the bill of costs claiming taxable costs is still pending with the Clerk of the Court, the Court finds these arguments opposing taxable costs are not appropriately before the Court at this time.

United States District Court
Northern District of California

1    To date, Class Counsel has incurred out-of-pocket nontaxable costs and expenses of

2  $277,416.28.  Having reviewed, the original itemized listing of each of these expenses (*see* Dkt.

3  No. 371-1 at 7-14), as well as the supplemental itemized listing of the expenses (Dkt. No. 424-1 at

4  188-190), the Court finds that claimed amount of $277,416.28 is recoverable.

5    Accordingly, the Court **GRANTS** class counsel's requests for non-taxable costs, in the

6  amount of $277,416.28.

7                              **4.    Service Award**

8    Service awards "are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*,

9  563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives

10  for work done on behalf of the class, to make up for financial or reputational risk undertaken in

11  bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

12  general."  *Id.* at 958-59.  Class representative service awards are committed to the sound discretion

13  of the trial court and should be awarded based upon the court's consideration of: "1) the risk to the

14  class representative in commencing suit, both financial and otherwise; 2) the notoriety and

15  personal difficulties encountered by the class representative; 3) the amount of time and effort spent

16  by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack

17  thereof) enjoyed by the class representative as a result of the litigation."  *See Van Vranken v. Atl.*

18  *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Service awards are especially appropriate

19  when a class representative will not benefit beyond ordinary class members; for example, where a

20  class representative's claim makes up "only a tiny fraction of the common fund," a service award

21  is justified.  *See id.*  "Several courts in this district have indicated that incentive payments of

22  $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."

23  *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb.

24  6, 2012).

25    Here, Perez and class counsel aver that $50,000 is appropriate given the circumstances in

26  this matter. Specifically:

27    •  Perez assisted class counsel with the initial investigation of this case and provided

28      detailed information about the calls he had received from Rash Curtis. (*See* Dkt.

United States District Court
Northern District of California

No. 371-2 at 2.)

- For more than 3 years during the course of the litigation, Perez held regular in person and telephonic meetings with class counsel to receive updates on the progress of the case and to discuss strategy. (*Id.*)

- Perez sat for a lengthy deposition and testified live at trial. (*Id.*)

- Perez spent many hours conferring with counsel in preparation for both.  (*Id.*)

- Perez also traveled from Sacramento to Oakland multiple times to appear at trial. (*Id.*)

- Moreover, Perez will be required to continue to work with class counsel to pursue collection efforts through subsequent litigation.  (*Id.*; *see also* Dkt. No. 371-1 at 5.)

Rash Curtis disputes that Perez is entitled to such a high award. Rash Curtis highlights that Perez's deposition lasted for less than one hour and fifteen minutes, and that Perez was not intimately familiar with the details of this matter. (Dkt. No. 377-1 at 2, 4-28  (Perez's deposition commenced at 10:04 a.m. and concluded at 11:16 a.m.).)  Further, the duration of Perez's trial testimony was of similar length, and Perez left during the first break on the second day of trial and never returned. (*Id.* at 29-38 (Perez called as Plaintiff's first witness and his testimony is concluded before the morning break).)

Having reviewed the record, the Court finds that while Perez is entitled to a service award, the amount requested is beyond the scope of what the Court finds appropriate for Perez in these circumstances.  The Court recognizes that Perez has been actively participating in this litigation for several years, and has spent time and effort in this matter, including being deposed and testifying at trial.  However, the Court finds that Perez's showing on these facts does not demonstrate that he is entitled to a service award in the amount of $50,000.  In light of the totality of circumstances, the Court in its discretion finds that a service award in amount of $25,000 – an amount that is on the higher end for a service award in this district – is more appropriate.  Thus, the Court **GRANTS IN PART**, **DENIES IN PART** the request for a service award for Perez.

Accordingly, in light of the foregoing, the Court **GRANTS IN PART**, **DENIES IN PART** the motion for attorneys' fees.

United States District Court
Northern District of California

### III.    CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

(1) the motion to alter or amend is **GRANTED IN PART** and **DENIED IN PART**;

(2) the motion to reconsider is **DENIED**;

(3) the motion to vacate is **DENIED**; and

(4) the motion for attorneys' fees is **GRANTED IN PART** and **DENIED IN PART**.

In light of the above, the Court further **ORDERS** that: within five (5) days of the date of this Order, Perez and class counsel shall provide Rash Curtis a proposed form of judgment in conformance with this Order for comment.  Rash Curtis will have five (5) days to respond or be deemed to accept the proposal as to form.  The parties are thereafter to meet and confer to resolve any disagreements.  On or before May 1, 2020, the parties shall file a joint status report and the proposed form of judgment, noting either: (1) any areas of disagreement, or (2) agreement as to the proposed form of judgment.

This Order terminates the motions at Docket Numbers 371, 374, 379, and 414.

**IT IS SO ORDERED.**

Dated: April 17, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**