UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.  4:16-cv-03396-YGR

**ORDER GRANTING IN PART PROPOSED PLAN OF DISTRIBUTION OF SETTLEMENT PROCEEDS, INCLUDING AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND SERVICE AWARD FOR THE CLASS REPRESENTATIVE**

Re: Dkt. No. 451

**IGNACIO PEREZ**,

Plaintiff,

v.

**RASH CURTIS & ASSOCIATES**,

Defendant.

The context of this action is well-known. To summarize, following a one-week trial, a jury found in favor of plaintiff Ignacio Perez, individually, and the class members, and against defendant Rash Curtis & Associates ("Rash Curtis"), awarding over $267 million ("*Perez I*").  The size of the award was the result of a mathematical calculation assessing statutory damages of $500 for each call made in violation of the Telephone Consumer Protection Act, 47 U.S.C. sections 227, *et seq.* (the "TCPA").[1]

With such an obviously enormous award, at the close of trial, the Court encouraged the parties to attempt to settle the matter given the prospect of significant post-trial work, including appeals.  Ultimately, plaintiff Perez and defendant, through its bankruptcy counsel, agreed to an assignment of defendant's bad faith claim against its insurer. (Dkt. No. 392.)  Based thereon, plaintiff Perez filed suit in *Perez v Indian Harbor Insurance Company, et al.*, 19-cv-7288-YGR ("*Perez II*") in his fiduciary capacity.  That case is also pending before this Court and an appeal of

---

[1] Plaintiff not only brought TCPA claims on behalf of a putative class against Rash Curtis but claims arising from alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. sections 1692, *et seq.* (the "FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code sections 1788, *et seq.*, (the "Rosenthal Act").

United States District Court
Northern District of California

1   the judgment in *Perez I* proceeded. (Dkt. No. 431.)

2       Plaintiffs have now entered into a settlement agreement with the defendant insurance

3   company in *Perez II* to resolve the action for payment of seventy-five million, six hundred

4   thousand dollars ($75,600,000; "Settlement Amount"). Plaintiff thus:

5       seeks an order (1) confirming the court's prior approval of the
        Assignment; (2) approving Perez's entry into the *Perez II* Settlement
6       Agreement ("Agreement") as fiduciary and class representative for the
        class was authorized and fair, reasonable, and equitable; (3) approving the
7       selection of [an] Administrator for distribution of the recovery; (4)
        approving the plan for distribution of the recovery as fair, reasonable and
8       adequate; (5) determining that the Final Judgment in *Perez I* will be
        deemed satisfied upon the Administrator's receipt of payment; and (6)
9
10      dismissing the *Perez II* lawsuit with prejudice upon the Administrator's
        receipt of payment, per the Agreement.

11

12  The Ninth Circuit issued a limited remand to the Court to address these issues giving the Court

13  jurisdiction to do so.  (Dkt. No. 452.)

14      Having tried the underlying action, having presided over the incredibly litigious pretrial

15  process, including having written numerous orders discussing the issues giving rise to the

16  judgment in this case and *Perez II*, having read and considered the instant motion, and good cause

17  appearing, the Court issues the following **FINDINGS AND ORDERS**:[2]

18      **A.    The Assignment**

19      The Court affirms its prior approval of the Assignment.  *See* October 25, 2019 Order

20  Approving the October 11, 2019 Assignment. (Dkt. No. 392.)

21      **B.    *Perez II* Settlement**

22      With respect to the settlement of *Perez II*, even though it is not a class action, but was

23  brought by plaintiff Perez in his fiduciary capacity, the Court evaluates the settlement using the

24  same core principles it would apply with any class action settlement.  In reviewing the proposed

25  settlement, a court need not address whether the settlement is ideal or the best outcome, but only

26

27      [2]  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court
28  finds this motion appropriate for decision without oral argument.  Accordingly, the Court
    **VACATES** the motion hearing set for **October 5, 2021**.

2

whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The *Hanlon* court identified factors, many of which are relevant to assessing the settlement here, namely: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; and (6) the experience and views of counsel.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The underlying judgment in this action was well-founded and grounded both in the plain language of the statute and in a jury's finding.  While an appellate court may have decided to reduce the award, there is no authority currently existing which provides an objective basis to do so.  That said, and as noted above, the amount was high and the practical ability to recover the same was low.  As expected, defendant intended to file for bankruptcy.  Notice of this motion was given to class members on the website established before the trial of *Perez I*.

The settlement in *Perez II*, which will be applied here, was completed at arm's length.  Bad faith claims are difficult to prove, but once they are, they can be lucrative.  That plaintiffs' counsel could achieve a result which is 75 times the policy limits, and the highest monetary award on record for a TCPA case, demonstrates that the settlement is more than adequate and fair.  This Court does not often offer praise, expecting high performance from all counsel.  Here though, experienced counsel has done an excellent job on behalf of plaintiff and the class and vigorously pursued the claim despite numerous hurdles.

The Court finds the *Perez II* Settlement Agreement ("Agreement") fair, reasonable, and equitable, and therefore, appropriate for the plaintiff to execute as an authorized fiduciary and class representative.  The Agreement is attached as Exhibit 1 to the August 19, 2021 Declaration of Scott A. Bursor in Support of Plaintiff's Notice of Motion and Motion for the Court to Approve the Proposed Plan of Distribution.  Accordingly, the Court finds the Settlement Amount shall be held in trust by Perez through the Administrator for the benefit of the class members.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.    Selection of an Administrator

After a competitive process, plaintiffs recommend Digital Settlement Group, LLC to serve as Administrator.  The Court has reviewed the proffer and approves of the Administrator who intends to facilitate the collection of class members' data to transmit to class counsel; create and host a website containing detailed information about the recovery, including important dates, deadlines, and Frequently Asked Questions; facilitate payments to class members; and assist in facilitating the tax reporting process.  These actions are likely to reach as many class members as is reasonably likely.

The Court hereby appoints Digital Settlement Group, LLC as Administrator to hold, administer and disburse the Settlement Amount, to report periodically to the Court and the parties about the status of the distributions including one within 30 days of the anticipated second distribution, and to file a final accounting within 60 days of the final distribution in accordance with this District's Guidelines for Class Settlements.

## D.    Plan of Distribution

The plan of distribution has five components: (1) distribution of funds to class members; (2) payment of an incentive award; (3) payment of administration fees; (4) payment of litigation expenses; (5) payment of attorneys' fees.   The Court addresses each.

### 1.    Distribution of Funds to Class Members

Consistent with the jury's verdict and the Court's Final Judgment, and plaintiff's proposal, the proceeds from the Settlement Amount, net of attorneys' fees and expenses and the costs of administration, shall be distributed to class members (including to plaintiff Perez) *pro rata* based on the number of telephone calls each Class Member received, as shown by the same call logs upon which the trial verdict was based.  This will ensure a fair distribution among the various class members.  Given the evidence in this case, distributions will also occur without the need for a claims form which should increase participation.

The Court has reviewed the plan set forth in the August 19, 2021 declaration of Mark Schey and finds it fair, adequate, and reasonable, including that the intent is to not require a *cy pres* recipient, instead favoring, and anticipating, a second round of distributions.  To the extent

4

1  any funds remain after a second round of distributions pursuant to the Plan of Distribution,

2  plaintiff Perez shall make an application to the Court for the appointment of an appropriate *cy pres*

3  recipient.  No reversion shall be made.

### 2.    Payment of an Incentive Award

5      In general, a district court should evaluate named plaintiff's requested award using relevant

6  factors including "the actions the plaintiff has taken to protect the interests of the class, the degree

7  to which the class has benefitted from those actions . . . [and] the amount of time and effort the

8  plaintiff expended in pursuing the litigation." *Staton v. Boeing*, 327 F.3d 938, 977.  "Such awards

9  are discretionary . . . and are intended to compensate class representatives for work done on behalf

10  of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

11  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West*

12  *Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  The Ninth Circuit has emphasized that

13  district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the

14  adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163

15  (9th Cir. 2013).

16      Here, the plaintiff came forward to represent the interests of 61,705 class members, with

17  very little personally to gain, as plaintiff's individual alleged damages were $1,149.26.  Plaintiff

18  participated fully through discovery and throughout trial, including testifying.  He also then

19  participated in a second lawsuit.  Because the laws are not self-enforcing, it is appropriate to give

20  incentives to those who come forward with little to gain and at personal risk and who work to

21  achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the

22  requested disbursement of $25,000 to plaintiff Perez as a service award for his participation and

23  role as class representative in *Perez I* and his efforts as a fiduciary for the class members in *Perez*

24  *II*.

### 3.    Payment of Administration Fees

26      Plaintiffs seek disbursements for Administration expenses as incurred up to a cap of

27  $650,000 but estimates the actual cost of administration to be $392,680.

28      This constitutes approximately 0.86 percentage of the Settlement Fund.  Again, the Court

5

United States District Court
Northern District of California

1   has reviewed the plan and finds it reasonable in order to reach the 61,705 class members and

2   distribute the funds to them, including a likely second round of distributions.  The Court finds the

3   amount reasonable.

4   **4.      Payment of Litigation Expenses**

5   Plaintiffs seek disbursements for expenses of $5,856,525.80 which constitutes:

6   a.   $556,525.80 in expenses incurred in litigating *Perez I* ($277,416.28) and *Perez II*

7   ($279,109.52);

8   b.   $300,000 class counsel payment to Fincorp for brokering a litigation funding

9   agreement; and

10   c.   $5,000,000 class counsel payment to Omni Net Expense, effectively as its investment

11   share for funding the litigation by providing $10 million in funding.  An issue is raised

12   in terms of how to characterize the five million dollars.  Class counsel calls it an

13   "expense." It is also a fifty percent return on investment to a non-party.  Omni

14   apparently retained Blank Rome LLP and its Vice Chair of Insurance Recovery

15   Practice Group, Linda Kornfeld, to assist with the litigation.  According to class

16   counsel, prior to the disclosure of the Omni Agreement and the involvement of new

17   counsel, defendant Indian Harbor's largest settlement offer was $2.5 million.  Thus,

18   perhaps a portion of it could qualify as attorneys' fees.

19   For the reasons set forth below, the Court finds that traditional litigation expenses are appropriate

20   generally but not those related to litigation financing.

21   The Court has reviewed the submission with respect to the request for $556,525.80 and

22   finds these amounts to be reasonable expenses to Bursor & Fisher, P.A., which shall be

23   reimbursed the same.  This amount related to filing expenses, transcript expenses, expert expenses,

24   mediation expenses, notice administration fees, eDiscovery expenses, third party litigation support

25   expenses, postage and delivery fees, catering and meal expenses, and travel and lodging expenses.

26   (Bursor Decl., Ex. 14.)

27   With respect to the reimbursement of monies expended for litigation financing, the Court

28   finds on principal that those amounts should not be charged to the class.  First, those amounts are

6

not recognized statutorily.  Second, class counsel has not provided this Court with any authority that litigation funding has been reimbursed in other cases.  Third, debate in the legal community remains regarding the pros and cons of such entities.  While it may have been useful in this case, the Court is not inclined to approve such expenses on this record, and without vigorous debate before deliberation.  Many plaintiff firms self-finance, and presumably have complex lines of credit with financial institutions.  To allow such an expense here might suggest that other class counsel should or could request reimbursement for their own financing arrangements.  Thus, the Court is not inclined to approve costs which fundamentally relate to the cost of doing business.  To the extent those expense included fees for legal services, that portion is addressed below.

### 5.   Payment of Attorneys' Fees

In this Court's prior order, the Court found that payment of fees in the amount of one-third were fair and reasonable and confirms that finding here without repeating the analysis.  The Court does note that class counsel's billings for both cases total $5,830,155.00.  A fee award of 33.33% of the recovery given the Settlement Amount would result in a distribution of $25.2 million representing a multiplier of 4.32 over the base lodestar.  With respect to the attorneys hired under the Omni Agreement, the Court has been provided with no detailed information.  Because it cannot evaluate the attorneys' fees, it cannot treat them as attorneys' fees.  In any event, the cross-check would relate to the loadstar multiplier which here is higher than usual.

Class counsel requests that the amount be increased seven percent to a total of 40.3 percent if the Court refuses to award the payment to Fincorp and Omni Net Expense as expenses on the grounds that plaintiff Perez's retainer agreement included a clause that he would pay 40 percent if the action proceeded to trial and that it should not be "penalized" for incurring the $5.3 million.  It is not clear how class counsel can argue this is a "penalty" while at the same time arguing that the amount they obtained was significantly higher than they could have achieved on their own, and by definition, increasing their own lodestar multiplier.  Class counsel submitted that the addition of counsel hired under the Omni Agreement increased the value of the settlement by 50%.  If true, then without the addition of specialized counsel, class counsel here would have received a distribution closer to 50 percent of $25.2 million or $12.6 million, rather than approximately $20

million ($25.2 million less $5.3 million for litigation funding). There is no penalty.

Further, undoubtedly the $5.3 million is significantly more than the legal billings as Omni counsel only became involved in the second case, and class counsel billed $5.8 million for both cases.  For the Court to blindly pay out an investment award, even with the impact of experienced co-counsel, would open a Pandora's box of issues and effectively undermine the transparency required by settlements due to class members.

That said, and given the recovery to the class, the Court will authorize distribution of thirty-seven percent of the Settlement Amount to account for the fact that one of the two cases did in fact go to trial and under the agreement with plaintiff Perez, class counsel could have sought authorization of forty percent for that matter.  Thirty-seven percent totals $27,972,000 which increases class counsel's lodestar to 4.8 and will address, in part, class counsel's independent decision to enter into a litigation funding agreement.

## II.    CONCLUSION

As the Administrator, DSG shall distribute the Settlement Funds consistent with the contents of this Order including (i) payment of $25,000 to plaintiff Perez as an incentive award; (ii) reimbursement to class counsel of $556,525.80 for authorized expenses; (iii) payment of attorneys' fees to class counsel in the amount of 37 percent of the Settlement Funds or $27,972,000.  The balance of $46,421,474.20 shall be paid pro rata per call representing $86.82 per call out of the statutory award of $500.00 per call.

Within five business days of the Administrator's receipt of payment of the Settlement Funds, class counsel shall file a notice in *Perez I* indicating that judgment has been satisfied and file a dismissal with prejudice in *Perez II.*

This Order terminates Docket Number 451.

**IT IS SO ORDERED.**

Dated: October 1, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

United States District Court
Northern District of California

8